# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CORPORAL B. KURT PRICE, et al.,               :
                                              :
        Plaintiffs,                        :
                                              :    C.A. No. 04-956-GMS
        v.                                 :
                                              :
COLONEL L. AARON CHAFFINCH, et al.,           :
                                              :
        Defendants.                        :

---

SERGEANT CHRISTOPHER FORAKER,                 :
                                              :
        Plaintiff,                         :
                                              :    C.A. No. 04-1207-GMS
        v.                                 :
                                              :
COLONEL L. AARON CHAFFINCH, et al.,           :
                                              :
        Defendants.                        :


## OPENING BRIEF IN SUPPORT OF THE MOTION
## OF THE DEFENDANTS TO BAR CERTAIN COMMUNICATIONS OF
## <u>COUNSEL OR, IN THE ALTERNATIVE, TO DISQUALIFY COUNSEL</u>


Date:  October 14, 2005

           Noel C. Burnham (DE Bar No. 3483)
           Richard M. Donaldson (DE Bar No. 4367)
           Montgomery, McCracken, Walker & Rhoads, LLP
           300 Delaware Avenue, Suite 750
           Wilmington, DE 19801
           (302) 504-7840

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................. 1

    A.    The Parties ................................................................................................. 1

    B.    The Complaints ........................................................................................... 1

    C.    The Stage of the Proceedings ..................................................................... 2

II.    SUMMARY OF ARGUMENT ................................................................................ 2

III.    STATEMENT OF FACTS ..................................................................................... 3

IV.    ARGUMENT ........................................................................................................ 11

    A.    Plaintiffs' Counsel's Current Representation of Ralph Davis Violates the Model Rules of Professional Conduct ....................................................... 11

        1.    Plaintiffs' Counsel's Communications With Ralph Davis About Any Aspect of the Consolidated Lawsuits Are Violations of Rule 4.2 of the Model Rules of Professional Conduct. ..................................... 11

        2.    Defense Counsel's Communications With Davis Outside the Presence of the Neubergers Do Not Violate Rule 4.2 ............................ 14

        3.    Plaintiffs' Counsel's Simultaneous Representation of the Plaintiffs and Ralph Davis Involves a Concurrent Conflict of Interest, Prohibited by Rule 1.7 of the Rules of Professional Conduct ................ 16

    B.    If Plaintiffs' Counsel Refuses to Withdraw Their Representation of Ralph Davis, They Should be Disqualified from Representing Plaintiffs ..................... 17

V.    CONCLUSION ..................................................................................................... 19

## TABLE OF AUTHORITIES

**Page**

### CASES

Belote v. Maritrans Operating Partners, L.P., No. CIV. A. 97-3993,
    1998 WL 136523 (E.D. Pa. Mar. 20, 1998)................................................................. 13

Carter-Herman v. City of Philadelphia, 897 F. Supp. 899 (E.D. Pa. 1995)................................. 12

Dauro v. Allstate Insurance Co., No. Civ. A. 1:00CV138RO, 2003 WL 22225579,
    (S.D. Miss. Sept. 17, 2003), aff'd, 114 Fed. Appx. 130 (5th Cir. 2004)................................. 18

EEOC v. HORA, Inc., No. Civ.A. 03-CV-1429, 2005 WL 1387982,
    (E.D. Pa. June 8, 2005) .................................................................................... 12, 13, 14

End of Road Trust v. Terex Corp., No. 99-477 (GMS), 2002 WL 242464,
    (D. Del. Feb. 20, 2002) ........................................................................................ 17

Hammond v. City of Junction City, 167 F. Supp. 2d 1271 (D. Kan. 2001) ........................... 13, 14

IBM v. Levin, 539 F.2d 271 (3d Cir. 1978)......................................................................... 17

In re Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001)..................................................... 15

Integrated Health Services of Cliff Manor, Inc. v. THCI Co., 327 B.R. 200 (D. Del. 2005)....... 17

Jones v. Daily News Publishing Co., No. Civ. 1999/138, 2001 WL 378846
    (D.V.I. Mar. 16, 2001) ..................................................................................... 13, 18

Jones v. Lilly, 37 F.3d 964 (3d Cir. 1994) ....................................................................... 12

United States v. Sawyer, 878 F. Supp. 295 (D. Mass. 1995)................................................. 15

Upjohn v. United States, 449 U.S. 389, 394-95 (1981) ....................................................... 15

Webb v. E.I. Dupont De Nemours & Co., 811 F. Supp. 158 (D. Del. 1992) ............................ 17

Williams v. Pima County, 791 P.2d 1053, 1056-57 (Ariz. Ct. App. 1989)................................ 15

## TABLE OF AUTHORITIES

**Page**

**RULES**

Model Rule of Professional Conduct R. 1.7 ................................................................ 16

Model Rule of Professional Conduct R. 1.7 cmt. 6 ..................................................... 16

Model Rule of Professional Conduct R. 1.7 cmt. 15 ................................................... 16

Model Rule of Professional Conduct R. 4.2 ................................................................ 11

Model Rule of Professional Conduct R. 1.7 cmt. 6 ..................................................... 14

Model Rule of Professional Conduct R. 4.2 cmt. 7 ..................................................... 11

# I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

## A.    The Parties

Plaintiffs B. Kurt Price, Wayne Warren, and Christopher Foraker are troopers in the

Delaware State Police ("DSP"), who, during all relevant times, were assigned to the Firearms

Training Unit ("FTU") of the DSP.  Plaintiff Foraker is a sergeant designated as the non-

commissioned officer in charge ("NCOIC") of the FTU.  Foraker is the immediate supervisor of

Plaintiffs Price and Warren, both of whom maintain the rank of corporal in the DSP.

Defendants are Colonel L. Aaron Chaffinch, former Superintendent of the DSP, Colonel

Thomas F. MacLeish, the current Superintendent, David B. Mitchell, Secretary of Safety and

Homeland Security, and the DSP as an organization.  Cols. Chaffinch and MacLeish are sued

both in their official and individual capacities.  Sec. Mitchell is named in his official capacity

only.

## B.    The Complaints

In the Complaint filed in <u>Price v. Chaffinch</u>, No. 04-956, Plaintiffs contend that, in

violation of 42 U.S.C. § 1983, Cols. Chaffinch and MacLeish retaliated against them because

they complained internally and to the Delaware State Auditor of Accounts about working

conditions at the FTU firing range, including environmental contamination of the range,

inadequacy of the range HVAC system, noise levels, deficient staffing levels and poor

equipment.  In <u>Foraker v. Chaffinch</u>, No. 04-1207, the Complaint alleges that Defendants

retaliated against Plaintiff Foraker for exercising his First Amendment rights to free speech and

petition.

Defendants have answered both Complaints, denying any wrongdoing.

C.    **The Stage of the Proceedings**

Plaintiffs filed the Price Complaint on August 19, 2004.  Plaintiff Foraker filed the

Foraker Complaint on August 30, 2004.  In a Rule 16 Scheduling order dated February 11, 2005,

the Court consolidated the discovery process of the two cases and ordered that discovery end on

December 30, 2005.  Discovery is ongoing.

## II.    SUMMARY OF ARGUMENT

1.    This Motion is compelled by the assertion of counsel for the Plaintiffs, Thomas S.

Neuberger and Stephen J. Neuberger,[1] that they concurrently represent a key managerial

employee of the DSP and a material witness in this case, Ralph Davis.  It is apparent that, as a

result of this representation, the Neubergers have contacted Davis and that Davis has

communicated with Plaintiffs' counsel about this lawsuit.

2.    Davis is presently a captain in the DSP serving as the Director of Planning.  While

many of the events at issue in this case were occurring, he was the Deputy Director of Training,

with the rank of lieutenant, and the commissioned officer directly responsible for the FTU.  From

April 2003 until the DSP closed the FTU firing range in March 2004, Davis was the supervisor

of Foraker, Price, Warren and other potential witnesses in the case.

3.    Davis's deposition in these consolidated actions was taken by Stephen Neuberger on

September 6, 2005.  During that deposition, which was noticed by Plaintiffs' counsel, Davis

testified that he is represented by the Neubergers in these cases.  He further testified that he

would refuse to speak with counsel for the Defendants about the cases without his attorney (i.e.,

one of the Neubergers) present.

---

[1] Defendants note that Plaintiff Foraker has a second attorney in the case, Martin Haverly.  This motion is not addressed to Mr. Haverly or his conduct.

4.    Given his high rank and assignment, Davis is a key management employee of the DSP, a "constituent" of a represented party who would, under ordinary circumstances, be consulting with defense counsel on key issues in the litigation.  Defense counsel has been unable to have those consultations, however, because of the claim that Plaintiffs' counsel also represent Davis.

5.    Thomas and Stephen Neuberger should be ordered to withdraw from their representation of Ralph Davis, because, by simultaneously representing the Plaintiffs in the consolidated actions and management witness Davis counsel have violated Rule 4.2 of the Model Rules of Professional Conduct.[2]

6.    The Court should order Thomas and Stephen Neuberger to withdraw their representation of Ralph Davis because, by simultaneously representing the Plaintiffs and Davis, the Neubergers have created an impermissible and unwaivable conflict of interest that violates Rule 1.7 of the Model Rules of Professional Conduct.

7.    Alternatively, Thomas and Stephen Neuberger should be disqualified from representing Plaintiffs in the <u>Price</u> and <u>Foraker</u> actions.

8.    Defendants are entitled to an order permitting their counsel to have <u>ex parte</u> communications with Ralph Davis.

## III.    STATEMENT OF FACTS

The Complaints of Plaintiffs Price, Warren, and Foraker are a continuation of three years of litigation brought by troopers against the leadership of the Delaware State Police.  Some of the preceding lawsuits are relevant to this Motion.

---

[2] Attorneys practicing before this Court are bound to follow the Model Rules of Professional Conduct.  D. Del. LR 83.6(d)(2); <u>see also</u> <u>End of Road Trust v. Terex Corp.</u>, No. 99-477 (GMS), 2002 WL 242464, at *2 (D. Del. Feb. 20, 2002).

Defendant Aaron Chaffinch became Acting Superintendent of the DSP upon the resignation of his predecessor on September 30, 2001. Chaffinch was "acting" until February 8, 2002, when the Secretary of Safety and Homeland Security (then the Secretary of Public Safety) appointed him Superintendent and promoted him in rank to Colonel. In late February 2002, Chaffinch announced a series of promotions and transfers to become effective April 8, 2002. One of the transfers removed Plaintiff Foraker from the position of NCOIC in charge of the FTU firing range and replaced him with Sgt. Richard Ashley, previously a patrol sergeant at Troop 5 in Bridgeville, Delaware. Foraker sued Chaffinch in this Court over this transfer, claiming that it was retaliation for his "whistleblowing" about a trooper whose performance at the range was sub-par, but who Foraker alleged had Chaffinch's protection. In June 2003, this first Foraker case was tried before Judge Joseph J. Farnan and a jury, and the jury found that Col. Chaffinch had in fact improperly retaliated against Plaintiff Foraker.

As part of the post-verdict settlement, Chaffinch agreed to return Foraker to the position of NCOIC at the FTU firing range, which he did on December 1, 2003. Ashley, the NCOIC between Foraker's removal in April 2002 and his return in December 2003, left the range for the headquarters planning section of the DSP. Foraker remains the NCOIC of the FTU, although the FTU indoor firing range is now closed and firearms training occurs at other ranges in Delaware.

After his return to the FTU in December 2003, Foraker and his subordinates Price and Warren complained to their superiors about working conditions and safety at the firing range. Foraker's immediate supervisor and one of the managers to whom he complained was Lt. Ralph Davis, then the Deputy Director of Training for the DSP. The next higher manager in the DSP chain of command, Capt. Greg Warren, the Director of Training, also received the complaints.[3]

---

[3] Plaintiff Wayne Warren is not related to Captain Greg Warren.

These complaints continued from December 2003 until March 2004 when the DSP shut down the firing range because of environmental contamination. The sources of the contamination and the cause of the general deterioration of conditions at the range are issues in these consolidated actions.

During the time Foraker, Price, and Warren were complaining to their supervisors about the range, both Davis and Greg Warren were themselves engaged in litigation against the leadership of the DSP. Captain Warren had filed suit on September 26, 2003, alleging that Col. Chaffinch and the Governor had refused to promote him because of his political views and political activities. Lt. Davis, Warren's subordinate and Foraker's immediate supervisor, filed suit on February 20, 2004, alleging that Col. Chaffinch had refused to promote him to the rank of captain because he was a white male. Warren settled his lawsuit, and the case was dismissed on July 27, 2004. Warren retired from the DSP shortly after his lawsuit ended. Davis also settled his lawsuit, which was dismissed on September 25, 2004. Davis received his promotion to Captain. During the time he was pursuing his own lawsuit against the DSP leadership, Davis was on the management troopers involved in the DSP's efforts to identify and address health and environmental issues at the range.

Capt. Greg Warren, Lt. Davis, Sgt. Foraker, and now Corporals Price and Wayne Warren – top-to-bottom in the Training Academy chain of command – have enjoyed representation in their various and numerous lawsuits by the same lawyer, Thomas S. Neuberger, joined in 2004 by his son, Stephen J. Neuberger. It is important to note, however, that the Warren and Davis lawsuits alleged political or racial discrimination in certain promotion decisions. Thus, while those lawsuits were filed and litigated during times relevant to the instant actions, they are

factually unrelated to the events at the firing range that give rise to the claims of Price, Foraker, and Wayne Warren.

In July 2005, Stephen Neuberger notified defense counsel in the instant lawsuits that Plaintiffs intended to take the deposition of Ralph Davis.  Neuberger served a Notice of Deposition for Davis.  At about the same time, Plaintiffs sought, through requests for production of documents, certain information that might be in the possession of a number of Delaware State government officials, including Davis.  In order to comply with the document requests, the current DSP Superintendent, Col. Thomas F. MacLeish, directed his secretary to send an e-mail to certain DSP officials requesting a search for documents.  The e-mail message instructed those officials to cooperate with the undersigned counsel in the document production.  Davis was one of the recipients of that e-mail.

On September 5, 2005, Stephen Neuberger sent an e-mail to defense counsel Robert Fitzgerald informing Fitzgerald that he represented Davis.  He also declared that communication between Davis and defense counsel would be improper:

> I understand that a written order from Col. MacLeish was sent to *my client Capt. Ralph H. Davis, III*, on Friday morning, September 2nd.  Generally, this e-mail orders him to search his files for certain documents and other information related to the FTU and the NCOIC's of that facility.
>
> Capt. Davis will of course comply with the Colonel's order.
>
> However, I write you because there appears to a typo in the e-mail which relates to you.  The e-mail states that you will be directly contacting Capt. Davis about types of documents to search his files for.  *Obviously this is a mistake because, as you know, you cannot directly communicate with my client under the relevant rules.*

Appendix to Opening Brief In Support Of The Motion Of The Defendants To Bar Certain Communications Of Counsel Or, In The Alternative, To Disqualify Counsel ("Defs.' App."), at A-1 (E-Mail from Stephen J. Neuberger to Robert J. Fitzgerald, Sept. 5, 2005) (emphasis added).

Defense counsel rejected Neuberger's position in an e-mail the next day. See id. at A-2 (E-mail from Edward T. Ellis to Stephen J. Neuberger, Sept. 6, 2005). Defense counsel explained that Davis "is a management employee of the Delaware State Police" who "was the direct supervisor of Chris Foraker, and the second level supervisor of Warren and Price." Id. As such, Davis is a "constituent" of the DSP with whom contact by Plaintiffs' counsel "would be improper under Rule 4.2." Id. Realizing that Davis likely possessed direct and important information concerning the allegations and defenses in the cases, defense counsel also clearly stated his intent "to contact, interview, or otherwise interact with management employees of the DSP as necessary and appropriate for the defense of the lawsuit. Davis is included in this group." Id. Plaintiffs' counsel did not reply to defense counsel's explanation of the applicable rules of conduct.

On September 6, 2005, Stephen Neuberger deposed Davis. After Neuberger had questioned Davis, defense counsel had the following exchanges with Davis and Neuberger concerning Davis's contacts with Plaintiffs' attorneys:

> Q.  Have you had communications – I may have asked this in a slightly different way. Have you had communications with Mr. Neuberger about the content of that e-mail that you got from the Colonel's secretary?
>
> A.  Yes.

Id. at A-3 (Davis Dep. 61:9-13, Sept. 6, 2005).

*          *          *

Q.    When did you retain the Neuberger law firm to represent you in [your own] lawsuit?

MR. NEUBERGER:  Objection.  Attorney/client privilege again.

Id. (Davis Dep. 61:21-23).

\*                    \*                    \*

MR. ELLIS:  You're going to take the position that you are this witness's attorney for purposes of the Foraker, Warren, Price lawsuit?

MR. NEUBERGER:  I think you can certainly ask him that but I am going to take that position.

Id. at A-4 (Davis Dep. 62:9-13).

\*                    \*                    \*

BY MR. ELLIS:

Q.    Your attorney has indicated that he is your attorney for purposes of this current lawsuit.  By "the current lawsuit" I mean the Foraker, Price, Warren lawsuit.  Did you hear that when he said that a couple seconds ago?

A.    Yes, I did.

Q.    I'd like to ask you when that representation began.

Id. (Davis Dep. 62:23 – 63:6).

\*                    \*                    \*

MR. NEUBERGER:  I'll object to that on privilege grounds and instruct Captain Davis not to answer specifically when the representation began.

BY MR. ELLIS:

Q.    What are the terms of Mr. Neuberger's representation of you; in other words, are you paying him?

MR. NEUBERGER:  Objection.  Attorney/client privilege.  Instruct the client not to answer.

BY MR. ELLIS:

Q.    Do you have a retainer agreement?

-8-

MR. NEUBERGER:  Again, same objection.  Attorney/client privilege. Instruct Captain Davis not to answer.

Id. (Davis Dep. 63:16 – 64:5).

*                    *                    *

Q.    Are you prepared, Captain Davis, to meet with me outside the presence of Mr. Neuberger or his father to discuss the substance of the Foraker, Price, and Warren lawsuit?

A.    No.

Q.    Are you prepared to meet with me to discuss your actions in terms of supervision of Foraker, Price, and Warren when they were under your command at the Firearms Training Unit?

A.    Without my representative?

Q.    Without your attorney present.

A.    No.

Id. at A-5 (Davis Dep. 66:15 – 67:2).

As a commissioned officer and the supervisor responsible for the FTU during most of the events involved in this lawsuit, Ralph Davis has information about at least ten subjects relevant to these consolidated lawsuits:

1.    Whether the HVAC system at the FTU firing range worked properly during the period when Davis was responsible for the range (approximately 2003 until the DSP shut it down in March 2004);

2.    Whether, as reported in the State Auditor's report, the Plaintiffs ceased performing certain essential maintenance functions at the range without notifying management, thereby allowing environmental conditions at the range to deteriorate catastrophically.

3.    Whether Plaintiff Foraker continued to have DSP recruits shoot at the range after he knew it was unsafe.  (The Delaware State Auditor of Accounts released a report suggesting this to be the case – Davis was Foraker's immediate supervisor and ought to know the answer);

4.    Whether and under what circumstances the bullet trap functioned
      as intended;

5.    Whether Plaintiffs Price and Warren cleaned out the bullet trap,
      when they did so and under what circumstances;

6.    Whether certain equipment at the range was operational (Plaintiffs
      allege it was not; Defendants allege it was.  Davis was the manager
      responsible for the facility.);

7.    Whether Foraker's predecessor, Richard Ashley, by-passed the
      chain of command to have certain changes made to the bullet trap
      system, and, if so, what effect the changes had on the performance
      of range equipment;

8.    Whether Ashley, whom Davis supervised just as he supervised
      Foraker, was incompetent, as Plaintiffs repeatedly allege;

9.    Noise levels at the FTU firing range during the period when Davis
      was responsible for the range;

10.   Whether Davis perceived staffing levels at the range to be adequate
      at different times relevant to the lawsuit and what steps he took to
      remedy levels he thought inadequate;

By asserting an attorney-client relationship with Davis in this lawsuit, Neuberger claims

the right to know what Davis knows about these subjects and to deprive Davis's superiors of that

information except insofar as they can pry it out of him in a deposition.  The Model Rules of

Professional Conduct require the opposite result.  Defendants are entitled to Davis's knowledge

without interference from Plaintiffs' counsel, without revealing their trial strategy to Plaintiffs'

counsel, and without exposing Davis to the divided loyalties inherent in the current

representation.

Plaintiffs' counsel's attempt to represent Davis violates Rules 4.2 and 1.7 of the Model

Rules of Professional Conduct.  Accordingly Defendants ask that this Court bar the Neubergers'

representation of Ralph Davis in this lawsuit and preclude any further communication between

-10-

them.  In the alternative, Defendants ask the Court to disqualify the Neubergers from

representing Foraker, Price and Warren in the consolidated cases.

## IV.    ARGUMENT

Plaintiffs' attorneys purport to represent simultaneously both the Plaintiffs and a manager

of the DSP with direct supervisory responsibility over the Plaintiffs during most of the events at

issue in these lawsuits.  This dual representation violates the applicable rules of professional

conduct, unfairly obstructs Defendants' attempt to litigate the instant lawsuits, requires the

withdrawal of Thomas and Stephen Neuberger from representation of Ralph Davis, and, if

Plaintiffs' counsel refuse this limited remedy, warrants their disqualification as counsel to

Plaintiffs Price, Warren, and Foraker.

### A.    Plaintiffs' Counsel's Current Representation of Ralph Davis Violates the Model Rules of Professional Conduct.

1.    Plaintiffs' Counsel's Communications With Ralph Davis About Any Aspect of the Consolidated Lawsuits Are Violations of Rule 4.2 of the Model Rules of Professional Conduct.

Rule 4.2 of the Rules of Professional Conduct provides as follows:

> In representing a client, a lawyer shall not communicate about the
> subject of the representation with a person the lawyer knows to be
> represented by another lawyer in the matter, unless the lawyer has
> the consent of the other lawyer or is authorized to do so by law or a
> court order.

Comment 7 to Rule 4.2 explains that:

> [T]his Rule prohibits communications with a constituent of the
> organization who supervises, directs or regularly consults with the
> organization's lawyer concerning the matter or has authority to
> obligate the organization with respect to the matter or whose act or

omission in connection with the matter may be imputed to the
organization for purposes of civil or criminal liability.[4]

Ralph Davis is clearly a "constituent" of the Delaware State Police. As a lieutenant

directly responsible for the working conditions of the FTU, he occupied a pivotal place in the

"hierarchical command structure" of a paramilitary organization. EEOC v. HORA, Inc., No.

Civ.A. 03-CV-1429, 2005 WL 1387982, at *12 (E.D. Pa. June 8, 2005) (Defs.' App. A-6 – A-

24); see also Carter-Herman v. City of Phila., 897 F. Supp. 899, 903 (E.D. Pa. 1995) ("It is clear

that the Commissioner, Deputy Commissioners, Chief Inspectors, Inspectors, Staff Inspectors,

Captains, and Lieutenants have managerial responsibility [and therefore fall under Rule 4.2].").

Were it not for the interference by Plaintiffs' counsel that necessitates this Motion, he would

have consulted with defense counsel on the subject of the litigation.

More importantly, Davis is intimately involved with the events in the case, and his

actions as the supervisor of Foraker, Price, and Wayne Warren can be imputed to the DSP. His

testimony about certain of the Plaintiffs' allegations may also be binding on the chain of

command that leads to the Superintendent of the DSP. By way of example, Plaintiffs contend

that in December 2003 and January 2004, working conditions at the range were hazardous to

their health, which led them to "speak out."

Defendants contend that environmental conditions at the firing range deteriorated

catastrophically because the Plaintiffs – without notice to DSP management or anyone else in

state government – simply ceased performing certain preventive maintenance necessary to the

safe operation of the firing range.

---

[4] Comment 7, which controls "the case of a represented organization," applies because Col. Chaffinch and Col.
MacLeish are sued in their official capacities in this action, as is David Mitchell, Secretary of Safety and Homeland
Security. See, e.g., Jones v. Lilly, 37 F.3d 964, 966 (3d Cir. 1994) ("[T]he [Supreme] Court explained that the real
party in interest in an official capacity suit is not the individual but rather the entity of which the officer is an
agent.") (citing Hafer v. Melo, 502 U.S. 21 (1991)).

Davis was the Plaintiffs' supervisor and someone who certainly ought to have knowledge of conditions at the range and how they came to be that way. His role resembles that of the barge captain in <u>Belote v. Maritrans Operating Partners, L.P.</u>, No. CIV. A. 97-3993, 1998 WL 136523 (E.D. Pa. Mar. 20, 1998) (Defs.' App. A-25 – A-31, in which a plaintiff allegedly injured on board the barge sought to have an investigator question the captain of the barge. <u>Id.</u> at *1. The district court concluded that plaintiff's counsel could not contact the captain without the consent of the defendant's attorney:

> As the highest authority on the barge, [the captain] is responsible for vessel maintenance and upkeep. In light of these responsibilities, it is his actions with respect to the maintenance of the barge which will be at issue. [The captain], therefore, is a person whose act or omission in connection with the plaintiff's injury may be imputed to the organization.

<u>Id.</u> at *3 (citations omitted). Davis's testimony about working conditions during this period and management's knowledge of those conditions may be imputed to the DSP for purposes of civil liability as described in Comment 7. <u>See also, e.g.</u>, <u>HORA, Inc.</u>, 2005 WL 1387982, at *12-*13 (concluding that administrative assistant to hotel's general manager and part-owner fell under Rule 4.2 because she may impute liability to her employer).

Rule 4.2 prohibits plaintiff's counsel from discussing any part of this lawsuit with Ralph Davis, or from attempting to block defense counsel from consulting with Davis on matters pertinent to the lawsuit. Counsel cannot evade Rule 4.2 by establishing an attorney-client relationship with a key member of management. <u>See, e.g.</u>, <u>Hammond v. City of Junction City</u>, 167 F. Supp. 2d 1271, 1281-87 (D. Kan. 2001) (concluding that counsel in putative employment discrimination class action violated Rule 4.2 by having improper contacts with defendant's director of human relations even though counsel eventually represented manager on his individual claims of discrimination); <u>Jones v. Daily News Publ'g Co.</u>, No. Civ. 1999/138, 2001

WL 378846, at *3-*5 (D.V.I. Mar. 16, 2001) (concluding that simultaneous representation of former acting city editor and terminated subordinate in their employment discrimination claims against their former employer violated Rule 4.2) appeal dismissed sub nom. Jones v. Innovative Comm. Corp., 125 Fed. Appx. 457 (3d Cir. 2004) (unpublished table decision) (Defs.' App. A-32 – A-36). The Neubergers knew or should have known from the beginning that "[Davis] had managerial responsibilities on behalf of the [DSP] that rendered him off-limits for purposes of any representation [as to the claims of his former subordinates]." Hammond, 167 F. Supp. 2d at 1287. They cannot be allowed to continue representing and communicating with Davis without serious prejudice to Defendants' ability to conduct discovery and properly defend themselves from Plaintiffs' accusations.

2.    Defense Counsel's Communications With Davis Outside the Presence of the Neubergers Do Not Violate Rule 4.2.

Plaintiffs' counsel claim that they represent Ralph Davis and contend that any attempt by defense counsel to interview Davis about the allegations in the Complaint would violate Rule 4.2. Defendants maintain that they have both the right and the duty to consult with their own management employee about issues related to the lawsuits. Out of an abundance of caution, defense counsel has not yet interviewed Davis. Comment 6 to Rule 4.2 suggests that a lawyer who is uncertain whether a communication is permissible may obtain a court order. Plaintiffs' counsel did not pursue this course of action, electing instead to ignore the obvious concern that their contact with Davis violates the rules. See, e.g., HORA, Inc., 2005 WL 1387982, at *17 (disqualifying counsel who committed ethical violations by recklessly "ignoring the unsettled nature of the law" at issue) (quoting Belote, 1998 WL 136523, at *7). Defense counsel now seek an order clarifying the parties' relationships and declaring that ex parte communications with Davis on behalf of the defense are permissible.

Defense counsel's ex parte communications with Davis are appropriate for two reasons. First, Davis is a management employee of the DSP who owes a duty of loyalty to the organization. That duty of loyalty includes a duty to provide his superiors with information about the organization's affairs, including his own management of those affairs. See In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001) ("[A]n employee has a duty to assist his employer's counsel in the investigation and defense of matters pertaining to the employer's business."); United States v. Sawyer, 878 F. Supp. 295, 296 (D. Mass. 1995) ("[A]s an employee of Hancock, Sawyer had an obligation to aid Hancock's in-house counsel with their internal investigation …."); Williams v. Pima County, 791 P.2d 1053, 1056-57 (Ariz. Ct. App. 1989) (holding that employee of sheriff's department had duty to answer questions and cooperate in an internal investigation by employer). That duty extends to being interviewed by higher-ups in the organization's chain of command and their counsel.

Second, Davis's communications with the DSP's legal counsel are privileged communications because they are a fundamental part of the attorney-client relationship. Lawyers need information in order to provide legal advice, and they can get it only by interviewing their clients. In the case of an organization, the attorneys must interview its constituents – like Ralph Davis – who have firsthand knowledge of the facts. See Upjohn v. United States, 449 U.S. 383, 394-95 (1981). It goes without saying that, for the interview and investigation to be meaningful, the attorneys for the other side cannot interfere with that relationship. Id.

3.    Plaintiffs' Counsel's Simultaneous Representation of the Plaintiffs and Ralph Davis Involves a Concurrent Conflict of Interest, Prohibited by Rule 1.7 of the Rules of Professional Conduct.

The attempt by Plaintiffs' counsel to concurrently represent both Plaintiffs and Davis is also a direct conflict of interest that violates Rule 1.7.[5]  It is a virtual certainty that Ralph Davis will give testimony adverse to the Plaintiffs in this lawsuit on one or more of the ten subjects listed above.  If he does so, attorney Neuberger, properly pursuing his duty to Plaintiffs, will be forced to attack Davis's testimony.  This is precisely the "directly adverse conflict" Rule 1.7 is meant to prevent.  See Model Rules of Prof'l Conduct R. 1.7 cmt. 6 ("Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent....  Similarly, a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit.").  Moreover, because the Neubergers will necessarily have to sacrifice their zealous representation of one client for that of another, the conflict is not waivable.  See Model Rules of Prof'l Conduct R. 1.7 cmt. 15

---

[5] Rule 1.7, entitled "Conflict of Interest: Current Clients," provides:

    (a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

        (1)  the representation of one client will be directly adverse to another client; or

        (2)  there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

    (b)  Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

        (1)  the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

        (2)  the representation is not prohibited by law;

        (3)  the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

        (4)  each affected client gives informed consent, confirmed in writing.

("[R]epresentation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation.").

Such a manifest conflict of interest calls for the withdrawal of Plaintiffs' counsel from their representation of Davis to protect the right of Plaintiffs and Davis as well as the integrity of the process.

**B.    If Plaintiffs' Counsel Refuses to Withdraw Their Representation of Ralph Davis, They Should be Disqualified from Representing Plaintiffs.**

This Court "has inherent power to supervise the professional conduct of attorneys appearing before it." Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., 327 B.R. 200, 204 (D. Del. 2005) (citing United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980)). A court therefore may disqualify an attorney for unethical conduct. Id. While the decision to disqualify always rests in the Court's sound discretion, End of Road Trust v. Terex Corp., No. 99-477 (GMS), 2002 WL 242464, at *2 (D. Del. Feb. 20, 2002) (Defs.' App. A-37 – A-39), to avoid even an appearance of impropriety, doubts should be resolved in favor of disqualification. See, e.g., IBM v. Levin, 579 F.2d 271, 283 (3d Cir. 1978); Webb v. E.I. Dupont De Nemours & Co., 811 F. Supp. 158, 160 (D. Del. 1992).

In this case, disqualification of the Neubergers from any further representation of Plaintiffs is warranted because continued representation of both Plaintiffs and Davis violates the applicable rules of conduct, obstructs Defendants' investigation of the facts of this case and preparation for trial, and the Neubergers in the impossible position of trying (and inevitably failing) to serve clients with opposing interests. In the end, the prejudice caused by this violation to the DSP, the Neubergers' clients, and the sanctity of the adversarial process outweigh any "'countervailing policies, such as permitting a litigant to retain counsel of his choice and enabling attorneys to practice without excessive restrictions.'" End of Road Trust, 2002 WL

-17-

242464, at *2 (quoting <u>Miller</u>, 624 F.3d at 1201); <u>see also</u> <u>Dauro v. Allstate Ins. Co.</u>, No. Civ. A.

1:00CV138RO, 2003 WL 22225579, at *7 n.2 (S.D. Miss. Sept. 17, 2003), <u>aff'd</u>, 114 Fed. Appx.

130 (5th Cir. 2004) (discussing "inherent conflicts" resulting from concurrent representation of

clients) (Defs.' App. A-40 – A-47); <u>Jones</u>, 2001 WL 378846, at *3 (holding that impermissible

conflict of interest required disqualification because the defendant "is entitled to the testimony of

its former manager . . . unencumbered by the untrammeled access of [the plaintiff] to such a

witness").[6]

---

[6] Both Plaintiff's counsel and witness Davis have assured the undersigned that they have, to date, not discussed the substance of the consolidated actions except for the document collection email described in part of this brief. Based on these representations, defendants have not sought disqualification unless the attorneys refuse to terminate their representation of Davis. Had their attorney-client relationship gone beyond the discussion of the document production to the substance of the case, disqualification would be necessary.

## V.    CONCLUSION

For the reasons stated above, Defendants request that the Court grant its Motion and preclude Thomas S. Neuberger and Stephen J. Neuberger from representing Capt. Ralph Davis and bar any additional ex parte communications.  Alternatively, Defendants ask the Court to disqualify the Neubergers from representation of Plaintiffs Price, Warren, and Foraker.

Respectfully submitted,

Date:  October 14, 2005                    _____/s/ Noel C. Burnham_____
                                          Noel C. Burnham (DE Bar No. 3483)
                                          Richard M. Donaldson (DE Bar No. 4367)
                                          Montgomery, McCracken, Walker & Rhoads, LLP
                                          300 Delaware Avenue, Suite 750
                                          Wilmington, DE 19801
                                          Telephone:  (302) 504-7840
                                          Facsimile:  (302) 504-7820

                                          Edward T. Ellis
                                          Robert J. Fitzgerald
                                          Montgomery, McCracken,
                                            Walker & Rhoads, LLP
                                          123 South Broad Street
                                          Philadelphia, PA  19109
                                          (215) 772-1500

                                          *Counsel for Defendants*