## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| B. KURT PRICE, WAYNE WARREN;<br>AND CHRISTOPHER FORAKER, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 04-0956 |
| | : | |
| L. AARON CHAFFINCH,<br>individually and in his official capacity as the<br>Superintendent of the Delaware State Police;<br>THOMAS F. MACLEISH, individually and<br>in his official capacity as the Deputy<br>Superintendent of the Delaware State Police;<br>DAVID B. MITCHELL, in his official<br>capacity as Secretary of the Department of<br>Public Safety of the State of Delaware; and<br>DIVISION OF STATE POLICE,<br>DEPARTMENT OF PUBLIC SAFETY,<br>STATE OF DELAWARE, | : : : : : : : : : : | |
| | : | |
| Defendants. | : | |

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
### TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants L. Aaron Chaffinch, Thomas F. MacLeish, David B. Mitchell, and Division

of State Police, Department of Safety & Homeland Security, State of Delaware hereby answer

Plaintiffs' First Amended Complaint as follows:  Defendants deny each and every averment of

Plaintiffs' First Amended Complaint except as expressly admitted below.

1.       It is admitted only that Plaintiffs in this civil action are seeking compensatory and

punitive damages and injunctive relief based on allegations that Defendants violated their rights

under the First Amendment of the United States Constitution.  It is denied that Plaintiffs are

entitled to such relief.  Moreover, Paragraph 1 states conclusions of law to which no responsive

pleading is required.  To the extent paragraph 1 is deemed to contain any factual averments, they

are denied. On the contrary, Defendants took immediate and appropriate action to determine and

protect the health and safety of all individuals who worked or trained or trained at the Firearms

Training Unit ("FTU"), including Plaintiffs.

## I.    JURISDICTION

2.     It is admitted that Plaintiff invokes jurisdiction of the Court pursuant to 28 U.S.C.

§§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202, and the First Amendment of the

United States Constitution.  It is denied that Plaintiffs are entitled to relief pursuant to 42 U.S.C.

§ 1983 or on any other basis.  The remainder of Paragraph 2 states conclusions of law to which

no responsive pleading is required.

## II.    Parties

3.     It is admitted that Plaintiff Corporal B. Kurt Price is a citizen of the United States

and a resident of Kent County, Delaware.  It is further admitted that he is a 19-year veteran of the

Delaware State Police who is assigned to the FTU as a firearms instructor.  The remainder of

Paragraph 3 is denied.

4.     It is admitted that Plaintiff Corporal Wayne Warren is a citizen of the United

States and a resident of Sussex County, Delaware.  It is further admitted that he is a 21-year

veteran of the Delaware State Police who is assigned to the Firearms Training Unit ("FTU") as a

firearms instructor.  The remainder of Paragraph 4 is denied.

5.     It is admitted that Plaintiff Sergeant Christopher D. Foraker is a citizen of the

United States and a resident of New Castle County, Delaware.  It is further admitted that he is a

19-year veteran of the Delaware State Police who is currently a section chief and non-

commissioned officer in charge of the FTU.  The remainder of Paragraph 5 is denied.

-2-

6.      It is admitted that L. Aaron Chaffinch is the Superintendent and highest-ranking officer of the Delaware State Police. It is further admitted that Plaintiffs are suing Colonel Chaffinch in his individual and official capacities. It is also admitted that Col. Chaffinch has been a named defendant in two civil rights actions in which juries returned verdicts in the Plaintiffs' favor. It is denied that Col. Chaffinch is a serial violator of troopers' constitutional rights. It is also denied that Plaintiffs are entitled to any relief against Colonel Chaffinch. On the contrary, since his appointment in October of 2001, Colonel Chaffinch has been cognizant and protective of the constitutional rights of the troopers under his command, including Plaintiffs.

7.      Admitted.

8.      It is denied that Col. Chaffinch or Lt. Col. MacLeish have violated or are continuing to violate Plaintiff's constitutional rights. The remainder of Paragraph 8 is admitted.

9.      It is denied that Plaintiff is entitled to attorneys fees and/or costs. The remainder of Paragraph 9 is admitted.

## III.     FACTS GIVING RISE TO THE ACTION

### A.     History of the FTU

10.     It is admitted that the FTU was intended to be a state-of-the-art indoor firearms facility and that it opened in 1998, after several years of planning, design, and construction. It is also admitted that approximately 2000 law enforcement officers used the FTU annually.

11.     Denied.

12.     Denied. Plaintiffs' accusations in Paragraph 12 are outrageous and unfounded.

13.     It is admitted that New Castle County did not issue a Certificate of Occupancy for the facility. It is denied that problems associated with the facility were evident because the Certificate of Occupancy was not issued. Defendants were not in positions responsible for the

FTU in 1998 and are without knowledge or information sufficient to form a belief as to whether, in November 1998, it was visually apparent that the HVAC air handling system was working improperly and was not removing lead and other bullet fragmentation from the air. Accordingly, those allegations are denied.

14.     It is admitted that some troopers working at the FTU experienced a slight elevation of blood lead levels, although those levels were within the range considered medically acceptable. It is denied that the range staff complained of physical symptoms such as nasal secretions until the Plaintiffs in this case discontinued required range maintenance in December 2003.

15.     It is admitted that, in 1999 and 2000, the state of Delaware expended funds to repair and upgrade systems at the FTU. It is denied that Facilities Management sought to hide anything from public scrutiny, to the detriment of the health and safety of the men and women who worked or trained there. The remainder of Paragraph 15 is denied.

16.     It is admitted that, in 2001, the Delaware State Police transitioned to the use of non-lead based, frangible handgun ammunition to reduce lead contaminants and to make the range safer. The remainder of Paragraph 16 is denied.

17.     Denied.

18.     Denied.

19.     Denied.

## B. Plaintiffs Speak Out to Try to Fix
## the Problems at the Range

20.     Admitted.

21.     It is denied that Colonel Chaffinch ever appointed a personal friend as the NCOIC of the FTU; to the contrary, he appointed Sgt. Richard Ashley, a competent trooper. It is also

denied that, during Ashley's tenure, conditions at the range deteriorated. On the contrary, from February 2002 until December 2003, conditions at the range remained stable, and the range functioned as a viable training facility. It is also denied that Colonel Chaffinch or anyone else covered up any alleged deterioration. Lastly, it is denied that Colonel Chaffinch took any action on the grounds that it might expose any alleged inexperience of a "personal friend." On the contrary, Colonel Chaffinch and the command of the FTU conducted themselves according to the policies, procedures, and protocols of the DSP.

22.      Denied. On the contrary, on December 1, 2003, Plaintiff Foraker toured the FTU with Sgt. Ashley, and both observed during that tour that the FTU was a clean, functioning, and useful training facility. Plaintiff Foraker did not identify any problems or safety concerns.

23.      Defendants are without knowledge or information sufficient to form a belief regarding what Plaintiffs Price and Warren may have told Plaintiff Foraker. Accordingly, Paragraph 23 is denied.

24.      Denied.

25.      Denied.

26.      It is admitted that Plaintiff Foraker sent an e-mail to Lt. Col. MacLeish and Major Eckrich on December 19, 2003. The remainder of Paragraph 26 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 26 is deemed to contain any factual averments, they are denied.

27.      It is denied that Lt. Col. MacLeish ignored the health and safety concerns of the Plaintiffs. It is also denied that Lt. Col. MacLeish did not order Plaintiffs to undergo medical or occupational testing. On the contrary, Lt. Col. MacLeish, immediately upon being made aware of the health and safety concerns expressed by Plaintiff Foraker, became concerned for

Plaintiffs' safety and suggested that Plaintiffs undergo physical examinations and blood work. That suggestion was rejected by the captain responsible for the FTU.

28.    Defendants are without knowledge or information sufficient to form a belief regarding whether Plaintiff Foraker e-mailed Major Eckrich. Accordingly, Paragraph 28 is denied.

29.    It is denied that Lt. Col. MacLeish ignored the health and safety concerns of the Plaintiffs. It is also denied that Lt. Col. MacLeish did not order Plaintiffs to undergo medical or occupational testing. On the contrary, Lt. Col. MacLeish, immediately upon being made aware of the health and safety concerns expressed by Plaintiff Foraker, became concerned for Plaintiffs' safety and suggested that Plaintiffs undergo physical examinations. That suggestion was rejected by the captain responsible for the FTU.

30.    Denied.

31.    It is denied that the DSP hierarchy dismissed Plaintiffs' concerns. On the contrary, the DSP hierarchy was and is concerned with the health and safety of all the troopers, including Plaintiffs. It is also denied that Lt. Col. MacLeish told the Plaintiffs to "just put on a paper dust mask to protect yourself" or that it was expected that they would have health problems from working at the FTU. On the contrary, in January 2004, Lt. Col. MacLeish, having been told by the captain responsible for the FTU that Plaintiffs did not require physical examinations, suggested that, as a precautionary measure, Plaintiffs wear paper masks to further protect themselves from any potential airborne dangers. Lastly, it is denied that Defendants MacLeish and Chaffinch did not order Plaintiffs to undergo or occupational testing. On the contrary, immediately upon learning of Plaintiff Foraker's concerns, Lt.Col. MacLeish suggested

that Plaintiffs undergo a physical examination. That suggestion was rejected as unnecessary by the captain responsible for the FTU.

32.    It is admitted that others, including Defendants, were concerned with the conditions at the FTU. It is also admitted that troopers other than Plaintiffs were exposed to those conditions. The remainder of Paragraph 32 is denied.

33.    It is admitted that after the Plaintiffs discontinued maintenance of range equipment, certain trainees experienced health problems.

34.    It is denied that Plaintiffs' concerns were ignored by Defendants. On the contrary, Defendants were and are concerned about the health and safety of all troopers, including Plaintiffs. It is also denied that Plaintiffs continued to work diligently to have the hazardous conditions at the FTU corrected. On the contrary, from December 2003 until March 2004, Plaintiffs refused to take minimal, common-sense steps to reduce problems at the FTU. It is also denied that Plaintiffs ever spoke to a federal authority. The remainder of Paragraph 34 is denied.

### C. The Range is Shut Down Due to Environmental Contamination

35.    It is admitted that the FTU was shut down in March 2004. The remainder of Paragraph 35 is denied.

36.    It is admitted that Gregory Warren, a captain of the DSP and at the same time a litigant against Col. Chaffinch and others, is quoted in a March 20, 2004 Delaware State News article as set forth in Paragraph 36 of the Complaint.

37.    It is admitted that both the Delaware State News and the News Journal newspapers published articles concerning the construction, closing, and environmental issues at the FTU.

### D. Plaintiffs Also Speak to the State Auditor's Office

38.　　　It is admitted that Governor Ruth Ann Minner and leaders in the Delaware General Assembly asked the State Auditor to investigate the FTU. The remainder of Paragraph 38 is denied.

39.　　　It is admitted that, on May 12 and again on July 28, 2004, Plaintiffs met with, were interviewed by, and turned over documents to three investigators of the State Auditor's office. The remainder of Paragraph 39 states conclusions of law to which no responsive pleading is required. To the extent the remainder of Paragraph 39 is deemed to contain any factual averments, they are denied.

40.　　　Defendants are without knowledge or information sufficient to form a belief as to the content of Plaintiffs' speech to the auditors.

41.　　　Paragraph 41 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 41 is deemed to contain any factual averments, they are denied.

42.　　　It is admitted that the media reported on Plaintiffs' May 12, 2004, meeting with the auditors. The remainder of Paragraph 42 is denied. It is specifically denied that Col. Chaffinch and/or Lt. Col. MacLeish were incensed or antagonized by Plaintiffs' May 12th remarks. It is also denied that Col. Chaffinch or Lt. Col. MacLeish decided to retaliate against Plaintiffs for any reason or to fabricate reasons to fire them or to drive them from their position as State Troopers. On the contrary, neither Col. Chaffinch nor Lt. Col. MacLeish has retaliated against the Plaintiffs in any way or for any reason. The decision to order fitness for duty examinations for Plaintiffs was a direct and a common sense response to the health and safety concerns that were raised after inspections of the FTU.

43.     Paragraph 43 states conclusions of law to which no responsive pleading is required.

44.     Paragraph 44 states conclusions of law to which no responsive pleading is required.

45.     Denied. Plaintiffs were motivated by a personal desire to attack and embarrass Defendants and the DSP leadership.

46.     Paragraph 46 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 46 is deemed to contain any factual averments, they are denied.

47.     Paragraph 47 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 47 is deemed to contain any factual averments, they are denied.

48.     Paragraph 48 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 48 is deemed to contain any factual averments, they are denied.

49.     Paragraph 49 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 49 is deemed to contain any factual averments, they are denied.

50.     Paragraph 50 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 50 is deemed to contain any factual averments, they are denied.

51.    Paragraph 51 states conclusions of law to which no responsive pleading is required.  To the extent Paragraph 51 is deemed to contain any factual averments, they are denied.

### E. Retaliation against Plaintiffs

52.    Denied.  Rather than being antagonized, Col. Chaffinch and Lt. Col. MacLeish, upon learning of Plaintiffs' concerns, were concerned about the health and safety of all those working or training at the FTU and took immediate, proper, and effective action consistent with their obligations as members of the DSP leadership.

53.    It is admitted that Plaintiffs were ordered to undergo fitness for duty exams because of the concerns raised about working conditions at the FTU.  The remainder of Paragraph 53 is denied.  Col. Chaffinch and Lt. Col. MacLeish have acted consistent with their concern with the health, welfare and safety of all troopers, including Plaintiffs, and have acted consistent with the policies, procedures and protocols of the DSP.

54.    It is admitted that, on July 30 2004, Lt. Col. MacLeish, among others, received an e-mail from Stephen J. Neuberger and that Lt. Col. MacLeish did not reply to that email.  The remainder of Paragraph 54 is denied.  Lt. Col. MacLeish did not interrogate Plaintiff Price.  On the contrary, as is fair and proper for the second highest ranking officer in the DSP, Lt. Col. MacLeish merely requested to speak to Cpl. Price and engaged in a telephone conversation pursuant to a request of the Secretary of Safety and Homeland Security and the president of the troopers' union.

55.    Paragraph 55 and all its subparts are denied.

        (a)    It is denied that Defendants made false charges of misconduct or that any charges were tantamount to threats or suggestions of discharge.  On the contrary, Defendants

merely noted that since December 2003, when Plaintiff Foraker became the NCOIC at the FTU, conditions at the FTU had noticeably deteriorated.

(b)     Denied. Defendants ordered fitness for duty examinations as a result of their concern for the health, safety, and welfare of all troopers, including Plaintiffs.

(c)     It is admitted that Plaintiffs Price and Warren have been placed on light duty status. The remainder of Sub-Paragraph (c) is denied.

56.     Denied. Defendants have correctly noted that after December 2003, when Plaintiff Foraker became the NCOIC of the FTU, conditions at the FTU deteriorated, possibly as a result of Plaintiffs' failure to conduct routine and basic maintenance.

57.     Denied. Lt. Col. MacLeish suggested that Plaintiffs undergo fitness for duty examinations long before Plaintiffs spoke to the Auditor's office. Finally, the fitness for duty examinations were a common sense response to the health concerns brought to light at the FTU.

58.     Denied. On the contrary, fitness for duty examinations are a necessary and proper means to insure the safety, welfare, and protection of the employees of the DSP and, ultimately, the citizens of the State of Delaware.

59.     Denied. On the contrary, Plaintiffs Price and Warren are still expected to perform as state police officers while on light duty status.

60.     It is admitted that a trooper on light duty status is prohibited from using his firearm or wearing a uniform. The remainder of paragraph 60 is denied.

61.     It is admitted that Dr. Aaron Green, a doctor associated with Healthworks Corporation, conducted fitness for duty examinations Plaintiffs Price and Warren in June 2004 and on Plaintiff Foraker in July 2004. The remainder of Paragraph 61 is denied.

62.      It is admitted that, on June 18, 2004, Plaintiffs Price and Warren were put on light duty status because their fitness for duty exam revealed significant hearing loss. The remainder of Paragraph 62 is denied.

63.      It is admitted that, on July 18, 2004, Dr. Green expressed his opinion that Plaintiff Foraker was fit for duty.

64.      It is admitted that Plaintiff Foraker, like all other range staff personnel, including Plaintiffs Price and Warren, was scheduled for a second hearing test. The remainder of Paragraph 64 is denied.

65.      Denied. On the contrary, Defendants have no intention, desire, or reason to force Plaintiff Foraker out of the DSP.

### F. The Historic Practice in the DSP regarding Hearing Loss

66.      Denied. On the contrary, every 5 years, troopers under the age of 35 are required to undergo physical examinations that include hearing tests. Those between the ages of 35 and 40 are required to undergo physical examinations, including hearing tests, every 2 years. Those over the age of 40 are required to undergo physical examinations, including hearing tests, every year.

67.      Denied. There are no concerns that drive a policy, practice, or custom of ignoring the hearing ability of troopers because no such policy, practice, or custom exists.

68.      Denied.

69.      It is admitted that a major wore a hearing aid and that this officer was not sent for a fitness for duty exam, placed on light duty, or forcibly retired from the DSP because of it. The remainder of Paragraph 69 is denied.

70.       Denied.

71.       Denied. On the contrary, troopers under the age of 35 are required to undergo physicals which include hearing tests every 5 years. Those between the ages of 35 and 40 are required to undergo physical examinations including hearing tests every 2 years. Those over the age of 40 are required to undergo physical examinations, including hearing tests, every year.

72.       Paragraph 72 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 72 is deemed to contain any factual averments, they are denied.

73.       Paragraph 73 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 73 is deemed to contain any factual averments, they are denied.

74.       Paragraph 74 and its subparts state conclusions of law to which no responsive pleading is required. To the extent Paragraph 74 and its subparts are deemed to contain any factual averments, they are denied.

75.       Paragraph 75 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 75 is deemed to contain any factual averments, they are denied. On the contrary, any actions taken against the Plaintiffs by Defendants were motivated by a desire to protect and maintain Plaintiffs' health and a desire to insure that the DSP provide the highest level of policing for the State of Delaware.

76.       Paragraph 76 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 76 is deemed to contain any factual averments, they are denied.

77.       Paragraph 77 states conclusions of law to which no responsive pleading is required.  To the extent Paragraph 77 is deemed to contain any factual averments, they are denied.

## IV.  ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

78.       Paragraph 78 states conclusions of law to which no responsive pleading is required.  To the extent Paragraph 78 is deemed to contain any factual averments, they are denied.  On the contrary, Defendants' actions were consistent with the demands of the U.S. Constitution.

79.       Paragraph 79 states conclusions of law to which no responsive pleading is required.  To the extent Paragraph 79 is deemed to contain any factual averments, they are denied.  On the contrary, Defendants did not illegally retaliate against or violate the constitutional rights of Plaintiffs.

80.       Paragraph 80 states conclusions of law to which no responsive pleading is required.  To the extent Paragraph 80 is deemed to contain any factual averments, they are denied.

81.       Paragraph 81 states conclusions of law to which no responsive pleading is required.  To the extent Paragraph 81 is deemed to contain any factual averments, they are denied.  On the contrary, Defendants and their agents or employees were aware of and acted consistent with the constitutional rights of Plaintiffs.

82.       Paragraph 82 states conclusions of law to which no responsive pleading is required.  To the extent Paragraph 82 is deemed to contain any factual averments, they are denied.

83.     Paragraph 83 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 83 is deemed to contain any factual averments, they are denied. On the contrary, the actions of Defendants were taken out of respect and concern for Plaintiffs' health and safety, as well as the effectiveness of the FTU as a training facility and the DSP on the whole.

84.     Paragraph 84 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 84 is deemed to contain any factual averments, they are denied. On the contrary, the actions of Defendants were respectful of and consistent with the constitutional rights of Plaintiffs.

85.     Paragraph 85 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 85 is deemed to contain any factual averments, they are denied.

86.     Paragraph 86 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 86 is deemed to contain any factual averments, they are denied. On the contrary, to the extent Plaintiffs suffered actions adverse to them, those actions were motivated by a proper concern for Plaintiffs' health and safety, as well as a concern for the effectiveness of the FTU as a training facility and the DSP as a whole.

87.     Paragraph 87 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 87 is deemed to contain any factual averments, they are denied.

88.     Paragraph 88 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 88 is deemed to contain any factual averments, they are denied.

89.     Paragraph 89 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 89 is deemed to contain any factual averments, they are denied.

90.     Paragraph 90 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 90 is deemed to contain any factual averments, they are denied.

91.     Paragraph 91 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 91 is deemed to contain any factual averments, they are denied.

92.     Paragraph 92 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 92 is deemed to contain any factual averments, they are denied.

## COUNT I (FREE SPEECH CLAUSE)

93.     Defendants incorporate their responses to Paragraphs 1 through 92 as if set forth at length herein.

94.     Paragraph 94 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 94 is deemed to contain any factual averments, they are denied.

95.     Paragraph 95 states conclusions of law to which no responsive pleading is required. To the extent Paragraph 95 is deemed to contain any factual averments, they are denied.

## COUNT II – (PETITION CLAUSE)

96.     Defendants incorporate their responses to Paragraphs 1 through 95 as if set forth

at length herein.

97.     Paragraph 97 states conclusions of law to which no responsive pleading is required.  To the extent Paragraph 97 is deemed to contain any factual averments, they are denied.

98.     Paragraph 98 states conclusions of law to which no responsive pleading is required.  To the extent Paragraph 98 is deemed to contain any factual averments, they are denied.

WHEREFORE, it is admitted that Plaintiffs are seeking the relief set forth in the Complaint, and it is denied that Plaintiffs are entitled to such relief on any basis.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of absolute and qualified immunity.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Defendants abided by all applicable policies, procedures, rules, and laws.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because they have failed to allege a basis upon which punitive damages could be recovered.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because, during all relevant times, Plaintiffs were responsible for the maintenance and safety of the firing range.

WHEREFORE, Defendants request that the Court dismiss the Complaint with prejudice and enter any further relief, including costs and attorneys' fees to Defendants and against Plaintiffs, as this Court deems appropriate.

Respectfully submitted,

Dated: November 7, 2005

Noel C. Burnham (DE Bar No. 3483)
Richard M. Donaldson (DE Bar No. 4367)
Montgomery, McCracken,
   Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
Telephone: (302) 504-7840
Facsimile: (302) 504-7820

Edward T. Ellis
(Admitted Pro Hac Vice)
Robert J. Fitzgerald
(Admitted Pro Hac Vice)
Montgomery, McCracken,
   Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

*Counsel for Defendants*

-18-