# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CORPORAL B. KURT PRICE, et al.,       :

           Plaintiffs,       :

                           :     C.A. No. 04-956-GMS

        v.               :

COLONEL L. AARON CHAFFINCH, et al.,    :

           Defendants.      :

---

SERGEANT CHRISTOPHER FORAKER,    :

           Plaintiff,       :

                           :     C.A. No. 04-1207-GMS

        v.               :

COLONEL L. AARON CHAFFINCH, et al.,    :

               Defendants.  :

## DECLARATION OF PAUL ECKRICH

Paul Eckrich, Major, Delaware State Police, makes the following declaration pursuant to 28 U.S.C. § 1746:

      1.     I am a Major with the Delaware State Police ("DSP"), in charge of budget and administration.

      2.     On March 17, 2004, I attended a meeting with then-Lt. Col. Thomas MacLeish, Sgt. Christopher Foraker, Cpl. Kurt Price, Cpl. Wayne Warren, and others to discuss the issues relating to the DSP's indoor firing range. Among the issues discussed were tests that had been conducted on the air quality in the firing range.

3.    At the close of the meeting, Lt. Col MacLeish asked the troopers assigned to the Firearms Training Unit whether they needed anything else done concerning their health.

4.    The troopers assigned to the Firearms Training Unity responded that Kurt Price and Wayne Warren were experiencing hearing loss.

I declare under penalty of perjury that the foregoing is true and correct.

*Major Paul Eckrich*
Maj. Paul Eckrich, Delaware State Police

Date:  January 24, 2006



01·30·04          (Range)            Capt. Warren
                                     Lt. Col.

- trip to Las Vegas. Greg        me
  will √, Δ flight           Ralph
  people on flight (Ashley)?

- 5ᵗʰ person at Range? O.T. + amt of
  time/work - (recruits, other depts., in-service, etc.)

- Range -
  - Air handler - hanging ceiling?
    (12·14 ft. ?)
  - bullet trap - 3 yrs ago frangible    material
    due to lead problems
    frangible material clogging up filters +
    heads.

Solution - Δ way we do things. Get
         away from frangible.
  - Clean-fire round - Lawman has it
    lead free at pt. of fire.
  Action Target (Carey's Heating & Air)
  - Recommend they come in + do study.

Greg recommends not shutting
down range at this pt.

what we are    - $2800 for air monitor (Foraker has in Budget)
going to do    - Action target come in and do study (Corey & Ralph
                                                      will w/ me)
               - Clean fire Δ over. √ parts for conversion
               - Alternative sites
               - Wear masks immediately.

02.02.04

Academy Issues

Greg W.
MAC
me

- Range: Greg's rpt. done (less review) - will have done tomorrow.
  I asked for a copy.

✳ - look for McDonald's Range Stuff. old

{ - will finish w/ recruits this week.
  - Feb 11th - SORT will shoot w/ monitors.

  - $1200 to look at air handler (Ventilation System)
    ↳ Carey's Heating & Air (ILL) at Range.

**A - 460**

**D10905**

**Information Record**   _Range Mtng_

D317.04

| Name | 1000 hrs | Subject | FTU . (4) |

Organization _museum conf. rm._   Telephone - Business _LT Col._ / _me_ / _warren_

Address _____   Home _Davis_

_____   Fax _Shlep_ / _J.Y._

_____   Other _____

| Date | Follow-up | Notes |
|---|---|---|
| LT. Col : → | | hand out JY rpt + Homan K's. |
| ✳ | | 5th person - at Range. |
| | | - Agreement in writing w/ Fac. Mgt. who will be responsible for what. |
| | | Priority (1) - Clean Range |
| | | ✓ w/ Fac. Mgt. to see where we are |
| (Responsibility) | | - Range personel → wk on SOP - maintenance |
| | | Ck on Ammo. (Canada Agency) |
| | | Contact mo grup to arrange trip. |
| | | Warren - will contact Fac mgt ("light a fire under them") "we will" |
| | | "meet every 2 weeks" |
| | | Air report done in 2 weeks. |
| | | LT. Col. anything else you guys need to have done health wise. |
| ✳✳ | Hearing | - K.P. losing hearing in both ears. |
| ✳✳ | | W.W. also losing hearing. |

**A - 461**

**D10781**

©1997 Franklin Covey Co. Printed in USA

Original-MO 17429

# Range - Chronology of Events

12-19-03 (Fri) - 1st e-mail from Forelker

01-05-04 (mon)    2nd e-mail from Foraker
~~01-15-04~~    mt w/ MAC, me, Warren, Davis, Alexander

01-30-04    Mting w/ Warren, Davis, Lt. Col. me.
            Warren rec. not to shut down Range at this time

02-02-04    Mting w/ Warren, MAC, me

02-03-04 (approx.)    rec'd Warren Rpt.

02-10-04    Devore, Tiller, MAC, me, Warren Forelker, Bryson

02-25-04    meet w/ Neilson Assoc. Inc
Am.         FTU - Warren Sharp, me   2 from NAI

2-25-04     Carey's - Action Target Presentation
pm.         Fac. mgt. - Academy, Lt. Col. Sharp, me

3-1-04      me, MAC.   & Skip, JY (Lt. Col. gave charge to JY & Skip).

3-4-04      . Foreman, Fac mgt.    MAC, me, Sharp

3-16-04     MAC. & me   (plan)

3-17-04     Museum - FTU - MAC - Sharp, me.
            Yeomans + Skip rpt. handed out.
            2nd NAI rpt. handed out.

3-27-04     MAC, Lt. Avolic, me.

(2) NAI tests
① 2-1-04
② 3-4-04

Provencher + Action Target } bid.

FTU have been to MD. range.

**A - 462**

**D10782**

From:       Yeomans John A (DSP)
Sent:       Monday, March 07, 2005 10:27
To:       MacLeish Thomas F (DSP)
CC:       rjfitzgerald@mmwr.com
BCC:
Subject:    FW: hearing evaluations

Colonel, to follow-up on our recent discussion relative to a hearing standard or policy here is what
Dr. Aaron Green provided to me as to what his policy is regarding "normal hearing".

Clearly there is a threshold and a measure that he utilizes. He indicated that DR. Emmett had
never called him regarding the standards. I will forward this to Dr. Emmett. I have started looking
at a number of other State Police agencies hearing standards and they seem to be fairly
consistent with the standard Dr.Green is utilizing.

I suppose we need to codify it and make sure it is ADA compliant.

# REDACTED

JY

-----Original Message-----
From: Aaron_Green@Bayhealth.Org [mailto:Aaron_Green@Bayhealth.Org]
Sent: Monday, March 07, 2005 09:52
To: Yeomans John A (DSP)
Cc: Ralph_DeFriece@Bayhealth.org; Jack_Dilts@Bayhealth.Org; Rex_Evans@bayhealth.org;
Debbie_Pfaffenhauser@Bayhealth.Org
Subject: hearing evaluations


Captain Yeomans

The officers that have their hearing evaluations performed at Healthworks are usually baseline
tests for the new recruits and annual surveillance test for other officers. And the rare instance
where we evaluated officers for fitness for duty with regards to their hearing impairments. In the
case of the new recruits we would consider a threshold average of 25 dB or less in either ear on
testing at 500, 1000, 2000, and 3000 Hz to be normal. An ENT referral would be recommended
for any baseline test above a threshold average of 25 dB in either ear. Also a mean difference in
acuity between the two ears of 15 dB at lower frequencies (500 to 2000 Hz), or a 30-dB
difference at higher frequencies (3000 to 6000) on baseline audiometry would result in
recommending and ENT referral. The annual surveillance audiograms are considered normal if
there is less than a 10 dB shift from their baseline at 2000, 3000, and 4000 Hz...officers that are
noted to have a shift should have repeat testing in 30 days to determine if the shift was transient
or permanent in which case a revision in their baseline may be required. We also recommend
ENT referral for periodic examinations for findings of 15 dB at the lower frequencies or a high
frequency loss of 20 dB. We would also make and ENT referral for persistent ear pain, drainage,
dizziness, severe persistent tinnitus, or sudden, fluctuating, or rapidly progressive hearing loss
not explained by a history of noise exposure alone.

In terms of fitness for duty and audiogram results, there are a number of variables that influence
our recommendations. All officers that are able to hear  with the pure-tone audiometry at 25 dB or
better in the 2000 -6000 Hz range are cleared immediately. If an ENT referral is made the officer
would be on medical hold pending their ENT evaluation. The difficulty occurs when officers have
a significant hearing impairment either at baseline or found during annual surveillance in excess
of 40dB. Unfortunately pure-tone audiometry may not reflect impairment based on inability to
function as an officer. A more thorough evaluation of fine discrimination of sound is usually

**A - 463**

D20483

required given the enormous role individual differences have on impairment despite the absolute value of standardized testing. Thanks for the opportunity to comment. .... Aaron Green M.D.

---

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message and any attachment(s) is intended only for  the confidential use of the intended recipient(s) named above. This e-mail message and any attachment(s) may contain confidential health information or other confidential information that is legally privileged and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient or the employee agent responsible for  delivering it to the intended recipient, you should be aware that any dissemination, distribution, copying or action taken in  reliance on the content of this e-mail message or any attachment(s) is strictly prohibited.  If this e-mail has been received  in error, please notify us immediately via e-mail at Bonnie_Millman@Bayhealth.org and delete or otherwise destroy the original message, any attachment(s) and copies.  Thank you for your cooperation.

## DISABILITY LEAVE/MODIFIED DUTY ASSIGNMENT DURING REHEBILITATION FROM INJURY OR ILLNESS (22.2.1c)(22.2.4)

**POLICY STATEMENT:** It is the policy of the Delaware State Police to provide reasonable accommodation to allow an injured or ill employee to retain salary and benefits.  Reasonable accommodation may be in the form of workers' compensation benefits, sick leave, and other accrued leave, permanent or temporary reassignment or job-restructuring, or a combination of these functions.

In the event that the illness or injury is or becomes permanent or exceeds the temporary benefits provided and the employee is unable to perform essential job functions, the policies regarding pension or separation shall apply.

1.  **Workers' Compensation**

    A.  Pursuant to 29 Delaware Code, Section 5933, as amended by House Bill No. 474, and 19 Delaware Code, Section 2321, (see Procedure for Handling Workers' Compensation Claims) when an employee qualifies for workers' compensation benefits and is medically restricted from performing a job function assigned by the Division, the employee, for a period of three months from the date such compensation begins shall not be charged sick leave and shall receive from the State the difference, if any, between the total of (1) the amount of such compensation, (2) any disability benefits received under the Federal Social Security Act, and (3) any other employer supported disability program, and the amount of wages to which the officer or employee is entitled on the date such compensation begins, provided the injury or disease for which such compensation is paid is not a direct result of such officer or employee's misconduct and occurs during a period of employment for which the employee is entitled to receive wages.

    B.  In the event that a sworn employee qualifies for workers' compensation as described above for an injury or illness which occurs in the performance of their duties and was not performing a function or duty that is considered administrative in nature, the employee shall be entitled to these benefits for a period not to exceed twelve months.

A - 465


DEPOSITION EXHIBIT 7
Baylor
7-26-05 KB
PENGAD 800-631-6989

C.   In the event of a job-related injury, the provisions
     of the policy containing the procedures for handling a
     workers' compensation claim will be followed.  It will
     be the responsibility of the Troop Commander/Section
     Chief to ensure that the injured employee's supervisor
     notifies the Human Resources Office of the incident
     and completes the Supervisor's Report of
     Investigation.

D.   Following the period of time described above, either
     three months or twelve months from the date
     compensation begins, an employee may use sick leave to
     provide full regular pay during periods when he/she is
     paid less than full pay under workers' compensation
     benefits.  Such leave will be charged in proportion to
     the difference between workers' compensation pay and
     full pay.  Employees cannot take sick leave with pay
     in excess of hours actually accrued to date.

E.   Following the expiration of sick leave, the
     Superintendent, at his discretion, may authorize the
     employee to use accumulated vacation and/or
     compensatory time to allow the employee to remain on
     the active payroll.

F.   In the event that a period of 1 calendar year has not
     occurred from the date of absence due to a compensable
     illness or injury to the expiration of all available
     leave, the Superintendent may authorize an unpaid
     leave of absence to provide a minimum of a 1 year
     rehabilitation period prior to separation from the
     Division.  The Superintendent, when he believes it to
     be in the best interest of the Division, may approve
     subsequent leaves of absence of up to 6 month
     intervals, however, in no case may the total absence,
     paid, or unpaid, exceed 2 years from the initial date
     that compensation began.

G.   Upon expiration of all approved leave, the employee
     shall be separated from the Division.  Retirement
     benefits may be provided in accordance with 11
     Delaware Code, Chapter 83, Subchapter II and III, or
     29 Delaware Code, Chapter 55.

2.   **Sick Leave**

A.   If an employee is medically restricted from performing
     a job function assigned by the Division, the employee
     may use accumulated sick leave to remain on the active
     payroll.  Upon the expiration of all accrued sick
     leave, the Division may authorize the employee to use
     accumulated vacation leave and/or compensatory time to
     continue full pay and benefits.

B.   In unusual circumstances where the Superintendent
     deems it in the best interest of the Division, and
     when the employee has in excess of five years service,
     and when a high probability exists that the employee
     will return to full service within a reasonable
     period, the Superintendent may authorize the employee
     to borrow ahead up to fifteen days of paid sick leave
     after all accumulated sick leave, compensatory time,
     and vacation is exhausted.

C.   In the event that a period of 1 calendar year has not
     occurred from the date of the original absence due to
     illness or injury to the expirations of all available
     leave of absence to provide a minimum of a 1 year
     rehabilitation period prior to separation from the
     Division.  The Superintendent, when he believes it to
     be in the best interest of the Division, may approve
     subsequent leaves of absence of up to 6 month
     intervals, however, in no case may the total absence,
     paid or unpaid, exceed 2 years from the initial date
     of absence due to the injury or absence.

D.   The Division may require additional documentation and
     may request that the employee be examined at the
     Division's expense by a physician of the Division's
     choice to obtain a second opinion.

E.   Upon expiration of all approved leave, the employee
     shall be separated from the Division.  Retirement
     benefits may be provided in accordance with 11
     Delaware Code, Chapter 83, Subchapter II and III, or
     29 Delaware Code, chapter 55.

A - 467

F.    In the event of an extended illness or non-job-related
      injury of five days or more, the Troop Commander/Section
      Chief will notify the appropriate Operations Officer and
      the Human Resources Office as soon as practicable upon
      learning of the non-job-related illness or injury and
      outline the particular circumstances.  Appropriate
      documentation will be completed by the administrative
      lieutenant/section chief within 5 workdays and forwarded
      to the Director of Human Resources.  The employee will
      be responsible for following the restrictions
      established by medical authorities both when working and
      off duty.  Disciplinary action may be taken against an
      employee who becomes at risk for injury by violating
      medical restriction or by performing physical activities
      or other function away from the job which the employee
      has been restricted from performing on the job or which
      the employee has professed an inability to perform.

G.    Troop Commanders/Section Chiefs with employees on less
      than full duty status will make weekly personal or
      telephonic contact with the employee.  This contact
      will enable the Troop Commander/Section Chief to
      evaluate specific operational needs.  During the
      contact, the Troop Commander/Section Chief will
      ascertain if the employee (or his/her family) is in
      need of assistance from the Division in any manner.
      If a request for assistance cannot be accomplished by
      the Troop Commander/Section Chief, the Director of
      Human Resources shall be advised.  In all cases,
      documentation of the contact will be placed in the
      employee's personnel file at his/her work location.

H.    On the date of the employee being unable to perform in
      a full duty status and continuing for the duration of
      the disability, any prior approval for additional
      part-time employment will be rescinded immediately.
      The approval for part-time employment to the
      Superintendent through the appropriate Field
      Operations Officer advising how working part-time will
      not aggravate the medial condition or injury.

I.    On the date of the employee being unable to perform in
      a full-time status and continuing for the duration of
      the disability, they are not permitted to work special
      duty, or Federally funded jobs, unless permission is
      granted from the appropriate Operations Officer.  The
      employee must advise how working these jobs will not
      aggravate the medical condition or injury.

III-6-37

A - 468

3.    **Reassignment/Job Restructuring**

A.    If an employee suffers a permanent or prolonged disability which requires a restriction from performing job functions, the Division will attempt to provide reasonable accommodation through reassignment, job-restructuring, or reallocation of marginal job functions to co-workers.

1.    Basic police functions including, but not limited to, the activities limited below are considered essential job function of sworn positions regardless of rank and/or assignment and therefore must be able to be performed with or without accommodation except during a temporary rehabilitative period as described in Paragraph 4.

a.    Driving a patrol vehicle for extended periods.

b.    Getting in and out of vehicles.

c.    Affecting a forcible arrest; possible physical confrontation (wrestling with suspects.)

d.    Biannual firearms recertification which involves shooting a semi-automatic pistol and shotgun from standing and kneeling positions during the course of a training day.

e.    Climbing obstacles and traversing rough terrain quickly.

f.    Manual traffic control involving prolonged standing and requiring mental and physical alertness and dexterity.

g.    Working under stressful and dangerous conditions, in inclement weather and for prolonged periods without the benefit of rest of meal breaks, and working rotating shifts.

h.    Communicating effectively with people of various socioeconomic backgrounds and effectively utilizing sense perception discern various stimuli of danger and to maximize operational effectiveness.

2.    The required physical fitness examination measures the physical ability necessary to perform the activities noted above and other essential functions of all sworn positions.

III-6-38

A - 469

Since the fitness examination measures the necessary level of aerobic capacity, muscular strength, muscular endurance, flexibility, and other physical attributes necessary to safely perform essential job functions, the fitness test itself is considered an essential job function.

3. The required medical examination measures the officer's ability to safely and effectively perform the activities noted above and other essential job functions.

B. Reasonable accommodation is a modification of a job assignment or the work environment that allows an individual with a disability to perform the required work assignment. Job restructuring may involve reallocating or redistributing to perform the marginal functions of a job. By definition, the essential functions of a job are not subject to reallocation or redistribution.

C. It is the responsibility of the disabled employee to identify, through medical documentation, that he/she has a disability which can be accommodated without an undue hardship being placed upon the Division and further, that the disability does not prevent the employee from performing all essential functions of a Delaware State Police officer with or without reasonable accommodation. The employee will be required to furnish medical documentation from his/her physician(s) to the Director of Human Resources immediately following the fifth day of absence from work or full-duty status and periodically thereafter. The documentation shall include, but not be limited to:

1. the reason for the disability.

2. the specific length of disability.

3. the prognosis for recovery to full duty status.

4. a statement indicating the employee's fitness to resume the duties of full-time employment (see Section 3, A 1-3) and any physical or other limitations.

A - 470

D.   On the date of the employee being unable to perform in a full-duty status and continuing for the duration of the disability they are not permitted to work special duty, or Federally Funded jobs unless permission is granted from the appropriate Operations Officer.  The employee must advise how working these jobs will aggravate the medical condition or injury.

E.   The Division may require additional documentation of its choosing from a doctor, psychologist, rehabilitation counselor, occupational, or physical therapist, independent living specialist, or other professional with knowledge of the employee's functional limitations.

F.   Following review of all documentation and discussion with the employee and the Director of Human Resources, the Superintendent shall determine whether or not the requested accommodation will be made.  On occasion, competent medical authorities may differ in opinion as to the extent of the injury/illness and the employee's ability to return to full duty.  When there is a difference of opinion, the Superintendent has the discretion of directing the employee back to work in either a position compatible with rehabilitation or a regular assignment.  Any employee directed back to work by the Superintendent may apply for a disability pension if otherwise qualified.  The Pension Board has the option of granting or denying the employee's request.   Denying the employee's request for pension will result in the employee returning to work as directed or having his/her employment terminated.

4.   **Temporary**

A.   A temporary disability is a non-chronic impairment that does not last for a long time, has little or no long-term impact and/or does not substantially limit an employee's major life activities including the ability to function in their assigned position. Temporary disabilities are normally accommodated by injured  leave (see Section 1), sick leave (see Section 2), or temporary reassignment or, job modification (see Section 3).

III-6-40

A - 471

B.   It is the responsibility of the employee to identify through medical documentation (see Section 3-C), the extent of the disability and the prognosis including in an estimated date for full recovery.  As described in Sections 3-E and 3-F above, the Division may seek and follow additional opinions and will thereafter determine the level that the employee may be accommodated.

C.   Due to the limited operational impact on the Division, essential job functions as well as marginal job functions may be reassigned or temporary suspended in order to allow the employee to work during the period of rehabilitation.

D.   On the date of the employee being unable to perform in a full-duty status and continuing for the duration of the disability they are not permitted to work special duty and Federally funded jobs unless permission is granted from the appropriate Operations Officer.  As with outside employment request, the employee must advise how working jobs will not aggravate the medical condition or injury.

E.   A temporary impairment which continues beyond a period of 1 year from the date of the original absence or the date that the employee was unable to perform all required job functions shall be deemed a permanent disability and the policies contained herein shall apply.  No pyramidical application of benefits between is implied or will be allowed.

5.   This policy is intended to comply with the employment provisions of the Americans with Disabilities Act (Title I of the ADA) which is effective for the Division of the State Police of July 26, 1992, and with 19 Delaware Code, Chapter 7, SubChapter III, handicapped Persons Employment Protections.  Pursuant to these laws, an employee who believes that he or she is being discriminated against as a result of a disability as defined by these laws may contact the Equal Employment Opportunity Commission and/or the Anti-discrimination  Section of the Division of Industrial Affairs, Department of Labor of the State of Delaware.

A - 472

**DISABILITY LEAVE/MODIFIED DUTY ASSIGNMENT DURING REHEBILITATION
FROM INJURY OR ILLNESS** (22.2.1c)(22.2.4)

**POLICY STATEMENT:** It is the policy of the Delaware State Police to
provide reasonable accommodation to allow an injured or ill
employee to retain salary and benefits.  Reasonable accommodation
may be in the form of workers' compensation benefits, sick leave,
and other accrued leave, permanent or temporary reassignment or
job-restructuring, or a combination of these functions.

In the event that the illness or injury is or becomes permanent
or exceeds the temporary benefits provided and the employee is
unable to perform essential job functions, the policies
regarding pension or separation shall apply.

1.   **Workers' Compensation**

   A.   Pursuant to 29 Delaware Code, Section 5933, as amended
        by House Bill No. 474, and 19 Delaware Code, Section
        2321, (see Procedure for Handling Workers'
        Compensation Claims) when an employee qualifies for
        workers' compensation benefits and is medically
        restricted from performing a job function assigned by
        the Division, the employee, for a period of three
        months from the date such compensation begins shall
        not be charged sick leave and shall receive from the
        State the difference, if any, between the total of (1)
        the amount of such compensation, (2) any disability
        benefits received under the Federal Social Security
        Act, and (3) any other employer supported disability
        program, and the amount of wages to which the officer
        or employee is entitled on the date such compensation
        begins, provided the injury or disease for which such
        compensation is paid is not a direct result of such
        officer or employee's misconduct and occurs during a
        period of employment for which the employee is
        entitled to receive wages.

   B.   In the event that a sworn employee qualifies for
        workers' compensation as described above for an injury
        or illness which occurs in the performance of their
        duties and was not performing a function or duty that
        is considered administrative in nature, the employee
        shall be entitled to these benefits for a period not
        to exceed twelve months.

III-6-35

A - 473

D2620

C.   In the event of a job-related injury, the provisions of the policy containing the procedures for handling a workers' compensation claim will be followed.  It will be the responsibility of the Troop Commander/Section Chief to ensure that the injured employee's supervisor notifies the Human Resources Office of the incident and completes the Supervisor's Report of Investigation.

D.   Following the period of time described above, either three months or twelve months from the date compensation begins, an employee may use sick leave to provide full regular pay during periods when he/she is paid less than full pay under workers' compensation benefits.  Such leave will be charged in proportion to the difference between workers' compensation pay and full pay.  Employees cannot take sick leave with pay in excess of hours actually accrued to date.

E.   Following the expiration of sick leave, the Superintendent, at his discretion, may authorize the employee to use accumulated vacation and/or compensatory time to allow the employee to remain on the active payroll.

F.   In the event that a period of 1 calendar year has not occurred from the date of absence due to a compensable illness or injury to the expiration of all available leave, the Superintendent may authorize an unpaid leave of absence to provide a minimum of a 1 year rehabilitation period prior to separation from the Division.  The Superintendent, when he believes it to be in the best interest of the Division, may approve subsequent leaves of absence of up to 6 month intervals, however, in no case may the total absence, paid, or unpaid, exceed 2 years from the initial date that compensation began.

G.   Upon expiration of all approved leave, the employee shall be separated from the Division.  Retirement benefits may be provided in accordance with 11 Delaware Code, Chapter 83, Subchapter II and III, or 29 Delaware Code, Chapter 55.

2.    **Sick Leave**

    A.   If an employee is medically restricted from performing a job function assigned by the Division, the employee may use accumulated sick leave to remain on the active payroll.  Upon the expiration of all accrued sick leave, the Division may authorize the employee to use accumulated vacation leave and/or compensatory time to continue full pay and benefits.

    B.   In unusual circumstances where the Superintendent deems it in the best interest of the Division, and when the employee has in excess of five years service, and when a high probability exists that the employee will return to full service within a reasonable period, the Superintendent may authorize the employee to borrow ahead up to fifteen days of paid sick leave after all accumulated sick leave, compensatory time, and vacation is exhausted.

    C.   In the event that a period of 1 calendar year has not occurred from the date of the original absence due to illness or injury to the expirations of all available leave of absence to provide a minimum of a 1 year rehabilitation period prior to separation from the Division.  The Superintendent, when he believes it to be in the best interest of the Division, may approve subsequent leaves of absence of up to 6 month intervals, however, in no case may the total absence, paid or unpaid, exceed 2 years from the initial date of absence due to the injury or absence.

    D.   The Division may require additional documentation and may request that the employee be examined at the Division's expense by a physician of the Division's choice to obtain a second opinion.

    E.   Upon expiration of all approved leave, the employee shall be separated from the Division.  Retirement benefits may be provided in accordance with 11 Delaware Code, Chapter 83, Subchapter II and III, or 29 Delaware Code, chapter 55.

A - 475

D2622

F.  In the event of an extended illness or non-job-related injury of five days or more, the Troop Commander/Section Chief will notify the appropriate Operations Officer and the Human Resources Office as soon as practicable upon learning of the non-job-related illness or injury and outline the particular circumstances.  Appropriate documentation will be completed by the administrative lieutenant/section chief within 5 workdays and forwarded to the Director of Human Resources.  The employee will be responsible for following the restrictions established by medical authorities both when working and off duty.  Disciplinary action may be taken against an employee who becomes at risk for injury by violating medical restriction or by performing physical activities or other function away from the job which the employee has been restricted from performing on the job or which the employee has professed an inability to perform.

G.  Troop Commanders/Section Chiefs with employees on less than full duty status will make weekly personal or telephonic contact with the employee.  This contact will enable the Troop Commander/Section Chief to evaluate specific operational needs.  During the contact, the Troop Commander/Section Chief will ascertain if the employee (or his/her family) is in need of assistance from the Division in any manner. If a request for assistance cannot be accomplished by the Troop Commander/Section Chief, the Director of Human Resources shall be advised.  In all cases, documentation of the contact will be placed in the employee's personnel file at his/her work location.

H.  On the date of the employee being unable to perform in a full duty status and continuing for the duration of the disability, any prior approval for additional part-time employment will be rescinded immediately. The approval for part-time employment to the Superintendent through the appropriate Field Operations Officer advising how working part-time will not aggravate the medial condition or injury.

I.  On the date of the employee being unable to perform in a full-time status and continuing for the duration of the disability, they are not permitted to work special duty, or Federally funded jobs, unless permission is granted from the appropriate Operations Officer.  The employee must advise how working these jobs will not aggravate the medical condition or injury.

III-6-38

A - 476

D2623

3.   **Reassignment/Job Restructuring**

A.   If an employee suffers a permanent or prolonged
     disability which requires a restriction from performing
     job functions, the Division will attempt to provide
     reasonable accommodation through reassignment, job-
     restructuring, or reallocation of marginal job functions
     to co-workers.

1.   Basic police functions including, but not limited
     to, the activities limited below are considered
     essential job function of sworn positions regardless
     of rank and/or assignment and therefore must be able
     to be performed with or without accommodation except
     during a temporary rehabilitative period as
     described in Paragraph 4.

   a.   Driving a patrol vehicle for extended periods.

   b.   Getting in and out of vehicles.

   c.   Affecting a forcible arrest; possible physical
        confrontation (wrestling with suspects.)

   d.   Biannual firearms recertification which
        involves shooting a semi-automatic pistol and
        shotgun from standing and kneeling positions
        during the course of a training day.

   e.   Climbing obstacles and traversing rough
        terrain quickly.

   f.   Manual traffic control involving prolonged
        standing and requiring mental and physical
        alertness and dexterity.

   g.   Working under stressful and dangerous
        conditions, in inclement weather and for
        prolonged periods without the benefit of rest
        of meal breaks, and working rotating shifts.

   h.   Communicating effectively with people of
        various socioeconomic backgrounds and
        effectively utilizing sense perception
        discern various stimuli of danger and to
        maximize operational effectiveness.

2.   The required physical fitness examination
     measures the physical ability necessary to
     perform the activities noted above and other
     essential functions of all sworn positions.

A - 477

D2624

Since the fitness examination measures the necessary level of aerobic capacity, muscular strength, muscular endurance, flexibility, and other physical attributes necessary to safely perform essential job functions, the fitness test itself is considered an essential job function.

3.    The required medical examination measures the officer's ability to safely and effectively perform the activities noted above and other essential job functions.

B.    Reasonable accommodation is a modification of a job assignment or the work environment that allows an individual with a disability to perform the required work assignment.  Job restructuring may involve reallocating or redistributing to perform the marginal functions of a job.  By definition, the essential functions of a job are not subject to reallocation or redistribution.

C.    It is the responsibility of the disabled employee to identify, through medical documentation, that he/she has a disability which can be accommodated without an undue hardship being placed upon the Division and further, that the disability does not prevent the employee from performing all essential functions of a Delaware State Police officer with or without reasonable accommodation.  The employee will be required to furnish medical documentation from his/her physician(s) to the Director of Human Resources immediately following the fifth day of absence from work or full-duty status and periodically thereafter. The documentation shall include, but not be limited to:

1.    the reason for the disability.

2.    the specific length of disability.

3.    the prognosis for recovery to full duty status.

4.    a statement indicating the employee's fitness to resume the duties of full-time employment (see Section 3, A 1-3) and any physical or other limitations.

III-6-40

D.  On the date of the employee being unable to perform in a full-duty status and continuing for the duration of the disability they are not permitted to work special duty, or Federally Funded jobs unless permission is granted from the appropriate Operations Officer.  The employee must advise how working these jobs will aggravate the medical condition or injury.

E.  The Division may require additional documentation of its choosing from a doctor, psychologist, rehabilitation counselor, occupational, or physical therapist, independent living specialist, or other professional with knowledge of the employee's functional limitations.

F.  Following review of all documentation and discussion with the employee and the Director of Human Resources, the Superintendent shall determine whether or not the requested accommodation will be made.  On occasion, competent medical authorities may differ in opinion as to the extent of the injury/illness and the employee's ability to return to full duty.  When there is a difference of opinion, the Superintendent has the discretion of directing the employee back to work in either a position compatible with rehabilitation or a regular assignment.  Any employee directed back to work by the Superintendent may apply for a disability pension if otherwise qualified.  The Pension Board has the option of granting or denying the employee's request.  Denying the employee's request for pension will result in the employee returning to work as directed or having his/her employment terminated.

4.  **Temporary**

A.  A temporary disability is a non-chronic impairment that does not last for a long time, has little or no long-term impact and/or does not substantially limit an employee's major life activities including the ability to function in their assigned position. Temporary disabilities are normally accommodated by injured  leave (see Section 1), sick leave (see Section 2), or temporary reassignment or, job modification (see Section 3).

III-6-41

A - 479

D2626

B.   It is the responsibility of the employee to identify through medical documentation (see Section 3-C), the extent of the disability and the prognosis including in an estimated date for full recovery.  As described in Sections 3-E and 3-F above, the Division may seek and follow additional opinions and will thereafter determine the level that the employee may be accommodated.

C.   Due to the limited operational impact on the Division, essential job functions as well as marginal job functions may be reassigned or temporary suspended in order to allow the employee to work during the period of rehabilitation.

D.   On the date of the employee being unable to perform in a full-duty status and continuing for the duration of the disability they are not permitted to work special duty and Federally funded jobs unless permission is granted from the appropriate Operations Officer.  As with outside employment request, the employee must advise how working jobs will not aggravate the medical condition or injury.

E.   A temporary impairment which continues beyond a period of 1 year from the date of the original absence or the date that the employee was unable to perform all required job functions shall be deemed a permanent disability and the policies contained herein shall apply.  No pyramidical application of benefits between is implied or will be allowed.

5.   This policy is intended to comply with the employment provisions of the Americans with Disabilities Act (Title I of the ADA) which is effective for the Division of the State Police of July 26, 1992, and with 19 Delaware Code, Chapter 7, SubChapter III, handicapped Persons Employment Protections.  Pursuant to these laws, an employee who believes that he or she is being discriminated against as a result of a disability as defined by these laws may contact the Equal Employment Opportunity Commission and/or the Anti-discrimination  Section of the Division of Industrial Affairs, Department of Labor of the State of Delaware.

A - 480

D2627

### DELAWARE STATE POLICE
### HEADQUARTERS
### June 8, 1992

**MEMORANDUM**

TO:      Colonel Clifford M. Graviet
         Superintendent

FROM:    Mr. John A. Dillman, III
         Director of Personnel

SUBJECT: Disability Leave/Modified Duty Assignment
         During Rehabilitation from Injury or Illness


Please review the enclosed policy draft which I have written to govern the employment conditions of Delaware State Police employees who are or become disabled and are unable to fully meet job requirements.

The policy is designed to comply with the Americans With Disabilities Act which becomes effective, with respect to employment provisions, on July 26, 1992.

The policy further addresses the Division's need to retain a full complement of able-bodied officers who are able to perform full police functions regardless of rank or job assignment. However, the policy also accommodates temporary disabilities during a period of rehabilitation.


JAD:vll

Enclosure: /s/

cc/enc: Lt. Colonel Alan D. Ellingsworth
        Jeffrey M. Taschner


A - 481

D2639

Copy to Sharon Rothwell + Bill
K Lunger 062592.

Copy to gobbn
06 22 92.

Copy to Lisa 06 15 92. (see)

to Jim.
060992. (see)

*old* .

*cover page*

## DISABILITY LEAVE/MODIFIED DUTY ASSIGNMENT DURING
## REHABILITATION FROM INJURY OR ILLNESS

**Policy Statement:**  It is the policy of the Delaware State Police to provide reasonable accommodation to allow an injured or ill employee to retain salary and benefits. ~~during a period of recovery.~~  Reasonable accommodation may be in the form of workers' compensation benefits, sick leave and other accrued leave, *permanent or* temporary reassignment or job-restructuring, or a combination of these functions.

In the event that the illness or injury is or becomes permanent or exceeds the temporary benefits provided, *and the employee is unable to perform* the policies *essential job functions.* regarding pension or separation shall apply.

I.  **Workers' Compensation**

    A.  Pursuant to 29 Delaware Code, 5933, when an employee qualifies for workers' compensation benefits and is medically restricted from performing a job function assigned by the Division, the employee, for a period of three months from the date such compensation begins shall not be charged sick leave and shall receive from the State the difference, if any, between the total of: (1) the amount of such compensation, (2) any disability benefits received under the Federal Social Security Act, and (3) any other employer supported disability program, and the amount of wages to which the officer or employee is entitled on the date such compensation begins, provided the injury or disease for which such compensation is paid is not the direct result of such

A - 482

D2640

officer or employee's misconduct and occurs during a period of employment for which the employee is entitled to receive wages.

B.  In the event that a uniformed employee qualifies for workers' compensation as described above for an injury or illness which occurs in the performance of their duties and was not performing a function or duty that is considered administrative in nature, the employee shall be entitled to these benefits for a period not to exceed twelve months.

C.  Following the period of time described above, either three months or twelve months from the date compensation begins, an employee may use sick leave to provide full regular pay during periods when he or she is paid less than full pay under workers' compensation benefits.  Such leave will be charged in proportion to the difference between workers' compensation pay and full pay.  Employees cannot take sick leave with pay in excess of the hours actually accrued to date.

D.  Following the expiration of sick leave, the Superintendent, at his discretion, may authorize the employee to use accumulated vacation and/or compensatory time to allow the employee to remain on the active payroll.  In the event that authorization is not provided, payment of accumulated leave will be made according to the appropriate general order consistent with the provisions of the contract between the

A - 483

D2641

Department and the Delaware State Troopers Association and consistent with the provisions of the Fair Labor Standards Act.

E.   In the event that a period of one calendar year has not occurred from the date of absence due to a compensable illness or injury to the expiration of all available leave, the Superintendent may authorize an unpaid leave of absence to provide a minimum of a one year rehabilitation period prior to separation from the Division.  The Superintendent, when he believes it to be in the best interest of the Division, may approve subsequent leaves of absence of up to six month intervals, however, in no case may the total absence, paid or unpaid, exceed two years from the initial date that compensation began.

F.   Upon expiration of all approved leave, the employee shall be separated from the Division.  Retirement benefits may be provided in accordance with 11 Delaware Code, Chapter 83, Subchapter II and III.

II.  <u>Sick Leave</u>

A.   If an employee is medically restricted from performing a job function assigned by the Division, the employee may use accumulated sick leave to remain on the active payroll of the State.  Upon the expiration of all accrued sick leave, the Division may authorize the employee to use accumulated vacation leave and/or compensatory time to continue full pay and benefits.

A - 484

3

D2642

B.  In unusual circumstances where the Superintendent deems
    it in the best interest of the Division, and when the
    employee has in excess of five years service, and when
    a high probability exists that the employee will return
    to full service within a reasonable period, the
    Superintendent may authorize the employee to borrow
    ahead up to fifteen days of paid sick leave after all
    accumulated sick leave, compensatory time, and vacation
    is exhausted.

C.  In the event that a period of one calendar year has not
    occurred from the date of the original absence due to
    the illness or injury to the expiration of all
    available leave, the Superintendent may authorize an
    unpaid leave of absence to provide a minimum of a one
    year rehabilitation period prior to separation from the
    Division.  The Superintendent, when he believes it to
    be in the best interest of the Division, may approve
    subsequent leaves of absence of up to six month
    intervals, however, in no case may the total absence,
    paid or unpaid, exceed two years from the initial date
    of absence due to the injury or absence.

D.  Upon expiration of all approved leave, the employee
    shall be separated from the Division.  Retirement
    benefits may be provided in accordance with 11 Delaware
    Code, Chapter 83, Subchapter II and III.

A - 485

4

D2643

III. <u>Reassignment/Job-Restructuring</u>

    A.   If an employee suffers a permanent or prolonged disability which requires a restriction from performing job functions, the Division will attempt to provide reasonable accommodation through reassignment, job-restructuring, or reallocation of marginal job functions to co-workers.

        1.   Basic police functions including but not limited to the activities listed below are considered essential job functions of all uniformed positions regardless of rank and/or assignment and therefore must be able to be performed with or without accommodation except during a temporary rehabilitative period as described in Section IV:

        2.   (A)  Driving a patrol vehicle for extended periods.
            (B)  Getting in and out of vehicles.
            (C)  Possible physical confrontations (wrestling with suspects).
            (D)  Firearms training (twice a year for approximately three hours).
            (E)  Climbing obstacles and traversing rough terrain quickly.
            (F)  Manual traffic control.

The required physical fitness examination measures the physical ability necessary to perform the activities noted above and other essential functions of all uniformed positions. Since the fitness examination measures the necessary level of aerobic capacity, muscular strength, muscular endurance, flexibility, and other physical attributes necessary to safely perform

A - 486

D2644

essential job functions, the fitness test itself is
considered an essential job function.

B.    Reasonable accommodation is a modification of a job
      assignment or the work environment that allows an
      individual with a disability to perform the required
      work assignment.  Job restructuring may involve
      reallocating or redistributing the marginal functions
      of a job.  By definition, the essential functions of a
      job are not subject to reallocation or redistribution.

C.    It is the responsibility of the disabled employee to
      identify, through medical documentation, that he or she
      has a disability which can be accommodated without an
      undue hardship being placed upon the Division and
      further, that the disability does not prevent the
      employee from performing all essential functions of a
      Delaware State Police officer (for uniformed positions)
      and of the assigned job function (for all positions)
      with or without reasonable accommodation.

D.    The Division may require additional documentation of
      its choosing from a doctor, psychologist,
      rehabilitation counselor, occupational or physical
      therapist, independent living specialist, or other
      professional with knowledge of the employee's
      functional limitations.

E.    Following review of all documentation and discussion
      with the employee and the Director of Personnel, the

A - 487

6

D2645

Superintendent shall determine whether or not the
requested accommodation will be made.

IV.  <u>Temporary Disability</u>

    A.  A temporary disability is a non-chronic impairment that
does not last for a long time, has little or no long-
term impact and/or does not substantially limit an
employee's major life activities including the ability
to function in their assigned position.  Temporary
disabilities are normally accommodated by injured leave
(see Section I), sick leave (see Section II), or
temporary reassignment or job modification (see Section
III).

    B.  It is the responsibility of the employee to identify,
through medical documentation, the extent of the
disability and the prognosis including an estimated
date for full recovery.  As described in Sections III D
and III E above, the Division may seek and follow
additional opinions and will thereafter determine the
level that the employee may be accommodated.

    C.  Due to the limited operational impact on the Division,
essential job functions as well as marginal job
functions may be reassigned or temporarily suspended in
order to allow the employee to work during the period
of rehabilitation.

    D.  A temporary impairment which continues beyond a period
of one (1) year from the date of the original absence
or the date that the employee was unable to perform all

A - 488

D2646

required job functions shall be deemed a permanent disability and the policies contained herein shall apply.  No pyramidical application of benefits between temporary and permanent disability is implied or will be allowed.

V.  This policy is intended to comply with the employment provision of the Americans with Disabilities Act (Title I of the ADA) which is effective for the Division of State Police on July 26, 1992, and with 19 Delaware Code, Chapter 7, Subchapter III, Handicapped Persons Employment Protections. Pursuant to these laws, an employee who believes that he or she is being discriminated against as a result of a disability as defined by these laws may contact the Equal Employment Opportunity Commission and/or the Anti-discrimination Section of the Division of Industrial Affairs, Department of Labor of the State of Delaware.

06/09/92
JAD:vll

A - 489

D2647