# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CORPORAL B. KURT PRICE, et al.,** | : | |
| Plaintiffs, | : | |
| v. | : | C.A.No.04-956-GMS |
| **COLONEL L. AARON CHAFFINCH, et al.,** | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| **SERGEANT CHRISTOPHER D. FORAKER,** | : | |
| Plaintiff, | : | |
| v. | : | C.A.No.04-1207-GMS |
| **COLONEL L. AARON CHAFFINCH, et al.,** | : | |
| Defendants. | : | |

### PLAINTIFFS' MOTION IN LIMINE TO LIMIT THE CROSS EXAMINATION OF CAPTAIN GLENN DIXON

| | |
|---|---|
| **THE NEUBERGER FIRM, P.A.** | **MARTIN D. HAVERLY, ATTORNEY AT LAW** |
| **THOMAS S. NEUBERGER, ESQ. (#243)** | |
| **STEPHEN J. NEUBERGER, ESQ. (#4440)** | **MARTIN D. HAVERLY, ESQ. (#3295)** |
| Two East Seventh Street, Suite 302 | Two East Seventh Street, Suite 302 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| (302) 655-0582 | (302) 654-2255 |
| TSN@NeubergerLaw.com | Martin@HaverlyLaw.com |
| SJN@NeubergerLaw.com | |

Attorneys for Plaintiffs

Dated: February 28, 2006

**A. Introduction.** Defendants are obviously unhappy with the sworn testimony of Capt. Dixon. After all as an insider with Col. Chaffinch, he was privy to the most revealing statements about his hatred of Sgt. Foraker. For example, referring to Sgt. Foraker, Chaffinch said "**I'm going to get that son of a bitch**." (Dixon 17-18,77; A527-28,542).[1] Joined with the animosity testimony offered by Major David Baylor[2] and Capt. Barbara Conley,[3] these three witnesses offer an array of powerful causation and punitive damages testimony on animosity, malice and ill will.

**B. Discussion.** So to discredit Dixon's testimony, the defense wants to hold a mini-trial and attempt to prove that he is lying about plaintiffs Foraker, Price and Warren because allegedly (a) he is somehow being blackmailed by non-party Capt. Conley, a minor fact witness in these cases and/or (b) he has had an affair with her. (See Tab A - Dixon 98-100 - defense questioning).

Fortunately, the Court ordered the defense to disclose the evidentiary basis for such cross examination. A January 23, 2006 unsworn interrogatory answer is attached, presumably on behalf of one of the two individual defendants. (Tab B).

---

[1] All appendix cites refer to plaintiffs' appendix in support of their motions for summary judgment. Chaffinch also said - "if people f-ck with Chaffinch, I'm going to f-ck back." (Dixon 10,53-54; A526,536-37). Sgt. Foraker is a "real pain in the ass" and is a "f-cking a–hole." (Dixon 16, 76,74; A527,542). Chaffinch has been "angry" at Sgt. Foraker "for a very long time," "since the lawsuit began." (Dixon 14,22-23,52,55; A527,529,536-37). He regularly mocked Sgt. Foraker and joked about his injuries described in his initial lawsuit. (Dixon 14-15,74-75; A527,542). He was angry the entire life of Sgt. Foraker's suit. (Dixon 20,75; A528,542). His "anger increased" after Sgt. Foraker's jury verdict and reinstatement. (Dixon 20-21; A528,402,411). It was regularly discussed among commanders that Chaffinch was "going after Sgt. Foraker." (See Dixon 69; A540). Before leaving headquarters to give the first media tour on April 6, 2004, Chaffinch "pointed his finger saying that he is going to put it on him, on f-cking Foraker." (Dixon 12,51; A526,536). He was "going to put it on Foraker and lay a lot of the blame on Foraker for the range." (Dixon 8,65; A525,539). Chaffinch stated, "[y]ou f-ck with Aaron Chaffinch, I f-ck back." (Dixon 54; A537). He was "gunning after" Sgt. Foraker. (Dixon 68; A540).

[2] For example, Chaffinch was "pissed" off. (Baylor 402; A402).

[3] Chaffinch was going to "stick it to" Sgt. Foraker. (Conley Decl. ¶ 7; A1564-65).

1

Upon examination, the basis for the proposed cross-examination does not survive scrutiny. It is neither based upon the personal knowledge of a competent witness, Fed.R.Evid. 602, nor is it capable of surviving a hearsay challenge. Fed.R.Evid. 801-02. Moreover, if a competent witness were ever offered, any such person was never identified as a Rule 26 witness during discovery and thus they were never subject to a deposition to test the underlying assertions behind their purported testimony. In addition, a mini trial and the delay, prejudice and confusion of the issues which would be caused substantially outweighs the marginal relevance of the testimony offered because it simply lacks any logical probative connection to any issue in the case. Fed.R.Evid. 403. Additionally, the evidence offered does not prove the bias asserted, and is often speculative and subject to many interpretations.

> 1. In the fall of 2003, Conley bragged in the traffic section of HQ that she had gone to an Eagles game with Dixon and later spoke to him on the a cell phone all night as he drove to Virginia. Chaffinch heard this from clerical employees in the traffic section who passed the comments to secretaries in Chaffinch's office who told him.

Chaffinch has no personal knowledge of the alleged remarks. This also is triple hearsay. Indeed, one would expect Chaffinch's loyal secretarial staff to go out of their way to embellish any rumor to help their deposed boss. More importantly, going to a football game or talking on the phone cannot prove blackmail or a sexual act.

> 2. Trooper Pete Fraley saw Conley and Dixon on a Saturday morning at a diner eating, a non-work day. When he greeted them they ducked and appeared embarrassed to be seen.

Again there is no personal knowledge by Chaffinch of the alleged incident. This also is hearsay. It importantly does not witness or prove blackmail or a sexual act. Dixon was Conley's traffic lieutenant in the Traffic Division which she heads. Coffee with a subordinate, even if it occurred, probably on a work day, or even not, would not be unusual. Nor was Fraley a Rule 26 identified witness.

> 3. Persons at HQ have observed Conley and Dixon to spend too much time behind closed doors, in excess of the time necessary to conduct legitimate business. Once Capt. Pulling told Chaffinch that Dixon came out of the office overheated with a cherry-red face.

Again personal knowledge by Chaffinch is lacking. The Pulling remark is hearsay. The other observations are perhaps double, triple or other levels of hearsay, since they are not identified. Again, one would expect Chaffinch's loyal secretarial staff at HQ to go out of their way to embellish any rumor to help their deposed boss. Importantly, this does not prove blackmail or a sexual act. How much time a subordinate manager should spend reporting to his boss is certainly not something to be measured by office rumor, speculation or guess. Nor does an overheated look prove a sexual act any more than anger after sitting through a disciplinary session. Dixon also has a well known history of debilitating migraine attacks. He flushes very easily when he has a bad attack. From time to time he would go behind a closed door try to get to a level where he felt he could safely drive and make it home so he could rest and recover. So a flushed look can have many causes, not all sordid. Again, Pulling also was not a Rule 26 identified witness.

> 4. Lts. Rust and Brown of Dixon's Troop 5 report that he spends too much time on the phone with Conley, in excess of what is needed for business.

Again personal knowledge by Chaffinch is lacking. This is hearsay coming from two loyal cronies of Chaffinch who would be happy to embellish anything about the person whose complaints lead to his premature retirement. Importantly it again simply does not prove blackmail or a sexual act. How much time a Troop Commander should spend on the phone with the Director of Traffic is certainly not something to be measured by office rumor, speculation or guesswork. The time needed for the Traffic Director by phone to attend to traffic or other business at a troop is a matter of speculation and opinion here, and not of fact. And again, neither Rust nor Brown were identified as Rule 26 witnesses.

     5. Carol Warnock reported to Chaffinch that at a party Conley described publically various sexual things she intended to do to Dixon.

Chaffinch has no personal knowledge of the alleged remarks. This also is hearsay. Again, one would expect Chaffinch's loyal secretarial staff to go out of their way to embellish any rumor to help their deposed boss. More importantly, this is not proof of blackmail or does it prove a past sexual act, which is the allegation from the deposition. At best, if the remarks were ever made, this is speculation that an act might one day occur. For example, at a party a woman might boast of hoped for sexual acts with Richard Gere or Harrison Ford, and a man with some sexpot actress. But that is not proof the act ever occurred. Warnock also was never identified as a Rule 26 witness.

     6. At the State Fair in 2003 Dixon's wife Amy said to Chaffinch "Aaron, he loves her" referring to her husband and Conley.

Chaffinch has no personal knowledge of the alleged remarks. This is hearsay and also raises issues of spousal privilege. But now the desperate attempt to impeach a Captain whose only crime is to have told the truth under oath when he was forced to attend a deposition, leads to allegations about what his wife may have said. But again, before a wife has to be called to the stand by either side in the sideshow the defense wants to initiate, such a remark, if ever made reveals no personal knowledge of blackmail. Nor does it attest to having witnessed or heard an admission of a sex act, which again is the allegation from the deposition. In 2003 Dixon still worked in the HQ traffic section as Conley's lieutenant. At the fair Chaffinch could have asked Mrs. Dixon if her spouse was still happy in his job working with Conley. Her response could have been "Yes, Aaron, he loves her," perfectly innocuous in context. Love, a word the Greeks had many words for, also can mean many things: brother or sisterly love, platonic love, sexual love, etc. But for a wife allegedly to have said her husband "loves her" is not proof that anything

4

physical has ever occurred, dirty minds to the contrary. Finally, Mrs. Dixon also was never identified as a Rule 26 witness.

Importantly, this entire line of defense questioning also has nothing to do with any of the issues in the present cases. The defense effort to try to smear Capt. Dixon through friendship with Capt. Conley does not demonstrate why he would be biased towards plaintiffs Sgt. Foraker, Cpl/3 Price or Cpl/3 Warren in the present cases. Simply put, Capt. Conley is not a party to this lawsuit. Instead, she is a simply a mere fact witness to several hostile remarks that Chaffinch made about Sgt. Foraker. That is the extent of her involvement. Thus, such a line of questioning is neither relevant nor probative of any material issue in this case. Fed.R.Evid. 401-02. As a result, any probative value is substantially outweighed by the danger of confusion of the issues and misleading of the jury. Fed.R.Evid. 403.

**C. Conclusion.** Consequently, plaintiffs Move that the defense be prohibited from pursuing this attack on Capt. Dixon in its cross-examination of him and that it be precluded from raising these issues in any way whatsoever in either the <u>Foraker</u> or the <u>Price</u> cases.

                                                Respectfully Submitted,

                                                **THE NEUBERGER FIRM, P.A.**

/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: February 28, 2006                Attorneys for Plaintiffs

5

# Tab A



**WILCOX & FETZER LTD.**

In the Matter Of:

# Price
# v.
# Chaffinch, et al.

C.A. # 04-1207

---

Transcript of:

Captain Glenn D. Dixon

September 21, 2005

---

Wilcox & Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: lhertzog@wilfet.com
Internet: www.wilfet.com

Page 1

```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE
CORPORAL B. KURT PRICE,     )
CORPORAL WAYNE WARREN,      )
and SERGEANT CHRISTOPHER    )
D. FORAKER,                 )
                            )
    Plaintiffs,             )
                            )
      v.                    ) C.A. No. 04-1207
                            )
COLONEL L. AARON CHAFFINCH,)
individually and in his     )
official capacity as        )
Superintendent of the       )
Delaware State Police;      )
LIEUTENANT COLONEL THOMAS   )
F. MacLEISH, individually   )
and in his official         )
capacity as Deputy          )
Superintendent of the       )
Delaware State Police;      )
DAVID B. MITCHELL, in his   )
official capacity as the    )
Secretary of the Department)
of Safety and Homeland      )
Security of the State of    )
Delaware; and DIVISION OF   )
STATE POLICE, DEPARTMENT OF)
SAFETY AND HOMELAND         )
SECURITY, STATE OF          )
DELAWARE,                   )
                            )
    Defendants.             )
```

         Deposition of CAPTAIN GLENN D. DIXON taken
pursuant to notice at the law offices of The Neuberger
Firm, P.A., 2 East 7th Street, Suite 302, Wilmington,
Delaware, beginning at 10:00 a.m., on Wednesday,
September 21, 2005, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.
                      WILCOX & FETZER
        1330 King Street - Wilmington, Delaware 19801
                       (302) 655-0477

Price                                    v.                                Chaffinch, et al.
Captain Glenn D. Dixon              C.A. # 04-1207                    September 21, 2005

Page 2

1  APPEARANCES:
2      THOMAS S. NEUBERGER, ESQUIRE
       THE NEUBERGER FIRM, P.A.
3        2 East 7th Street - Suite 302
         Wilmington, Delaware 19801
4        for the Plaintiffs
5      ROBERT J. FITZGERALD, ESQUIRE
       MONTGOMERY McCRACKEN WALKER & RHOADS, LLP
6        123 South Broad Street
         Avenue of the Arts
7        Philadelphia, Pennsylvania 19109
         for the Defendants
8
   ALSO PRESENT:
9
       CORPORAL WAYNE WARREN
10                - - - - -
11     CAPTAIN GLENN D. DIXON,
12     the witness herein, having first been
13     duly sworn on oath, was examined and
14     testified as follows:
15 BY MR. NEUBERGER:
16   Q.  Captain Dixon, I subpoenaed you to be here
17 today; is that correct?
18   A.  Yes, you did.
19   Q.  And I had subpoenaed you in another case called
20 Conley versus Chaffinch to give testimony on July 13th,
21 2005. Do you remember that?
22   A.  Yes, I do.
23   Q.  Prior to that date, July 13th, 2005, you had
24 never met me before, had you?

Page 3

1   A.  No.
2   Q.  Since then, except for answering some questions
3 on how to get here and sending the subpoena to you, you
4 and I haven't spoken, have we?
5   A.  The other day, whatever day it was, was it
6 Tuesday, I called in reference to another prior meeting
7 that I was going to request a continuance in this. But
8 it didn't work out. But that was the only time.
9   Q.  And I refused to give you a continuance?
10  A.  Yes.
11  Q.  You're being forced to testify today, right?
12  A.  By subpoena.
13  Q.  When I took your deposition on July 13th, 2005,
14 I explained the process. You remember that?
15  A.  Yes.
16  Q.  Since that time are you taking any medications
17 or anything that would interfere with your memory?
18  A.  No.
19  Q.  If I ask you a question today that you don't
20 understand, just ask me to rephrase it. Is that okay?
21  A.  Okay.
22  Q.  Just to quickly skip over something, back in
23 July I asked you a series of questions about your
24 contacts with Aaron Chaffinch over the years. Do you

Page 4

1 remember that?
2   A.  Yes.
3   Q.  You sort of explained about approximately
4 17 years during your career the various kinds of contacts
5 you would have with him, right?
6   A.  Yes.
7   Q.  And presently you're the troop commander of
8 Troop 5 down in Bridgeville, Delaware?
9   A.  I am, yes.
10  Q.  And he was the former troop commander there, for
11 example?
12  A.  Yes.
13  Q.  And he lives within a couple miles of the troop,
14 right?
15  A.  Two miles.
16  Q.  So to set the stage, what I'm going to do is
17 show you a yellowed copy of the Delaware State News dated
18 Wednesday, April 7th, 2004, and it's got a story on the
19 front page that then goes into page 6 about a media tour
20 given the day before by Aaron Chaffinch and Gloria Homer,
21 the Secretary of Administrative Services back at that
22 time.
23      MR. FITZGERALD:  I'll object only to the
24 characterization that it was a tour given by Chaffinch.

Page 5

1 BY MR. NEUBERGER:
2   Q.  Let's just simply say it relates to an event at
3 the Firearms Training Unit the day before. Okay?
4   A.  Okay.
5   Q.  And this is in the record as some sort of an
6 exhibit. I don't know the number right now, but I think
7 that's a sufficient reference to it.
8       What I will do is we will just take a
9 minute and I'll ask you to read through the story.
10  A.  Okay.
11  Q.  I have scratched in red some references to
12 Colonel Chaffinch himself and some things, some
13 references to him in there. But you just take your time
14 and just read through the story and then I'll probably
15 ask you a few questions. Okay?
16  A.  Okay.
17      MR. FITZGERALD:  Before you ask the
18 questions, Tom, I'd like to look at just your markings on
19 it.
20      MR. NEUBERGER:  Please.
21      MR. FITZGERALD:  After you read it.  Go
22 ahead.
23      MR. NEUBERGER:  Why don't you just read
24 through it.

2 (Pages 2 to 5)

Wilcox & Fetzer, Ltd.            Professional Court Reporters            (302)655-0477

Case 1:04-cv-00956-GMS   Document 106   Filed 02/28/2006   Page 11 of 18

Price                                    v.                              Chaffinch, et al.
Captain Glenn D. Dixon              C.A. # 04-1207                    September 21, 2005

Page 98

1  A.  Right.
2  Q.  Isn't it true that these allegations of
3  Colonel Chaffinch making a threat were only being offered
4  in this deposition because Barbara Conley has sued
5  Chaffinch?
6  A.  No.
7  Q.  Isn't it true that your testimony here today is
8  as a result of Conley instructing you what to say and how
9  to say it?
10  A.  No, absolutely not.
11  Q.  Isn't it true that you would continue to say
12  whatever Barbara Conley told you to say for her case?
13  A.  No.
14  Q.  Isn't it true that you would say whatever
15  Barbara Conley told you to say in order to destroy
16  Chaffinch?
17  A.  No.
18  Q.  Isn't it true that you consider it necessary to
19  say what Conley tells you to say because she's
20  blackmailing you?
21  A.  No.
22  Q.  Isn't it true that you were totally compromised
23  as a witness because you have had an affair with
24  Barbara Conley?

Page 99

1      MR. NEUBERGER:  Objection.  Do you have
2  foundation for a question like that?  My question is:  Do
3  you have a foundation?  Has somebody represented to you
4  who was an officer of the court something that would
5  legitimize you're asking that question or are you making
6  that up out of whole cloth?
7      MR. FITZGERALD:  That's a fair question.
8      MR. NEUBERGER:  You're telling me you're
9  speculating and you want to ask that question because
10  it's speculation and nobody's represented that to you.
11      MR. FITZGERALD:  Tom, before you get on the
12  record about speculation and everything else, that's
13  clearly not what I'm saying.  You asked if I had a
14  foundation and a basis for doing -- you mentioned
15  officers of the court and everything like that.  I don't
16  know what you mean by officer of the court.  I don't need
17  officers of the court.  I have a basis for asking this.
18  We have information about this and so it's not pure
19  speculation.
20      MR. NEUBERGER:  That's what you're saying.
21      MR. FITZGERALD:  That is what I'm saying
22  your representation that it's pure speculation.
23      MR. NEUBERGER:  I was asking if it is pure
24  speculation.  If somebody says that to you or whatever,

Page 100

1  ask the question.
2      MR. FITZGERALD:  I would like to say that
3  and I said it was a fair question because it is not pure
4  speculation.  I'm not making this up for the pure purpose
5  of asking an embarrassing question of this witness.
6  BY MR. FITZGERALD:
7  Q.  Isn't it true that you're totally compromised as
8  a witness because you had an affair with Barbara Conley?
9  A.  No.
10  Q.  Have you ever had sex with Barbara Conley?
11  A.  No.
12  Q.  Isn't it true that you would say anything you
13  had to in this deposition to keep Barbara Conley from
14  making the fact that you had sex with her public?
15      MR. NEUBERGER:  Now I'm going to stop.  He
16  has answered.  He's answered those two questions.  Now I
17  think you're trying to conduct this to embarrass and
18  annoy, and, if I recall, this kind of questioning might
19  even have been asked in the Conley case of another
20  witness.  Okay?  And he's answered the questions.
21      Once again, I'm going to say I want to
22  recess the deposition.  We can stop after your two
23  questions and if you want to put on the record other
24  questions you want to ask on this line of authority, we

Page 101

1  will ask the judge to decide whether or not it is now
2  being conducted to harass and embarrass and annoy.  You
3  have got two denials from him.
4      MR. FITZGERALD:  Clearly, as you recognize,
5  you can't instruct him not to answer.  This question is
6  different from the two denials.  He can answer it if he
7  wants to.  I'm going to ask it again.  This is the last
8  question on my list.
9      MR. NEUBERGER:  The last one.  Let's hear
10  your question.
11      MR. FITZGERALD:  This is all I have.
12  BY MR. FITZGERALD:
13  Q.  Isn't it true that you would say anything in
14  this deposition to keep Barbara Conley from making the
15  fact that you have had an affair with her public?
16  A.  No.
17      MR. FITZGERALD:  That's all I have.
18  BY MR. NEUBERGER:
19  Q.  We will stop it there.  At least we got that out
20  of the way.
21      I think I am going to have to ask you a
22  question.  I didn't intend to.
23      This whole concept of Aaron Chaffinch being
24  a powerful man, for example, are you aware that

26 (Pages 98 to 101)

# Tab B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

B. KURT PRICE, et al.,              :
                                    :
        Plaintiff,                  :
                                    :  C.A. No. 04-956
v.                                  :
                                    :
L. AARON CHAFFINCH, et al.,         :
                                    :
        Defendants.                 :

### SUPPLEMENTAL ANSWERS AND OBJECTIONS OF DEFENDANTS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant L. Aaron Chaffinch, Thomas F. MacLeish, David B. Mitchell, and the Division of State Police, Department of Safety and Homeland Security, State of Delaware respond to Plaintiffs' First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

1. Defendants object to Plaintiffs' Interrogatories to the extent that they purport to impose an obligation on Defendants or to require the disclosure of information that exceeds the requirements of Rules 26 and 33 of the Federal Rules of Civil Procedure.

2. Defendants object to Plaintiffs' Interrogatories to the extent that they seek the disclosure of information that is protected from disclosure by the attorney-client or other privilege, the work product doctrine, and/or the protection afforded mental impressions, conclusions, opinions, or legal theories of one or more attorneys and/or representatives of the Defendants concerning the litigation.



RECEIVED
JAN 26 2006
By____

3. Defendants object to Plaintiffs' Interrogatories to the extent that they are unreasonably burdensome and oppressive and/or seek to require the making of an unreasonable investigation on Plaintiffs' behalf.

4. Defendants object to Plaintiffs' Interrogatories to the extent that they seek the disclosure of information that is not relevant to the subject matter involved in the pending action, will not be admissible at trial, and is not reasonably calculated to lead to the discovery of admissible evidence.

## ANSWER TO SPECIFIC INTERROGATORY

1. Identify all facts, witnesses and documents which constitute or support the "basis" or "foundation" for the line of questioning asked of Capt. Glenn Dixon by defense counsel at Dixon's deposition on or about September 21, 2005 at page 98 line 2 through page 101 line 17 (hereinafter "the challenged questioning of Capt. Dixon").

**RESPONSE:** Subject to the General Objections above, Defendants identify the following facts, witnesses, and documents which constitute or support the "basis" or "foundation" for the line of questioning asked of Capt. Glenn Dixon ("Dixon") by defense counsel at Dixon's deposition on or about September 21, 2005 at page 98 line 2 through page 101 line 17 (hereinafter "the challenged questioning of Capt. Dixon"):

- During the State Fair in the summer of 2003, Amy Dixon, wife of Glen Dixon, said to Defendant Chaffinch, "Aaron, he loves her," in reference to her husband and Captain Barbara Conley ("Conley").

- Carol Warnock reported to Defendant Chaffinch that, at a scrap-booking party, Conley described to her and other persons in attendance various sexual things that she intended to do to Dixon.

- Lieutenants Rust and Brown, both assigned to Troop 5 where Dixon is the troop commander, had reported that he spends an inordinate amount of time on the phone with Conley, far in excess of the time necessary to conduct any legitimate state business.

- It has been observed by persons in headquarters that Conley and Dixon spend an inordinate amount of time behind closed doors in Conley's office, far in excess of the amount of time necessary to conduct legitimate State Police business. On one occasion, Captain Richard Pulling reported to Col. Chaffinch that Dixon came out of Conley's office overheated with a cherry-red face.

- A member of the State Police force, Pete Fraley, observed Conley and Dixon on a Saturday morning at a diner. This was not a regular work day for either Conley or Dixon. When Fraley greeted them, they ducked and appeared embarrassed to be seen together.

- In the fall of 2003, Conley bragged in the traffic section of headquarters that she had gone to a Philadelphia Eagles football game with Dixon on a Sunday afternoon and had talked to Dixon on the cell phone all night as he drive from Delaware to Quantico, Virginia. The clerical employees in the traffic section passed Conley's comments up to the secretaries in the superintendent's office, who reported them to Colonel Chaffinch.

Date: January 23, 2006

MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP

_____
Noel C. Burnham (DE Bar No. 3483)
Richard M. Donaldson (DE Bar No. 4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
Telephone: (302) 504-7840
Facsimile: (302) 504-7820

Edward T. Ellis
Robert J. Fitzgerald
Montgomery, McCracken,
   Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of January, 2006, I caused two (2) true and correct copies of Supplemental Answers and Objections of Defendants to Plaintiffs' First Set of Interrogatories to be served by U.S. First Class Mail, postage prepaid, upon the following individuals at the address indicated below:

>Thomas Stephen Neuberger, Esq.
>Stephen J. Neuberger, Esq.
>The Neuberger Firm, P.A.
>Two East Seventh Street
>Suite 302
>Wilmington, DE  19801
>
>Martin D. Haverly, Esq.
>Two East Seventh Street
>Suite 302
>Wilmington, DE  19801-3707
>
>*Attorneys for Plaintiffs*

Dated: January 23, 2006

_____
Robert J. Fitzgerald

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CORPORAL B. KURT PRICE, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | C.A.No.04-956-GMS |
| | : | |
| **COLONEL L. AARON CHAFFINCH, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| **SERGEANT CHRISTOPHER D. FORAKER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | C.A.No.04-1207-GMS |
| | : | |
| **COLONEL L. AARON CHAFFINCH, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

AND NOW, this ____ day of _____, 2006, upon consideration of Plaintiffs' Motion in Limine to Limit the Cross Examination of Captain Glenn Dixon, and Defendants' Response thereto, it is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED** and that Defendants are hereby prohibited from raising the issues that were the subject of Plaintiffs' Motion.

BY THE COURT:

_____

U.S.D.J.

6

**CERTIFICATE OF SERVICE**

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on February 28, 2006, I electronically filed this **Pleading** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Robert Fitzgerald, Esquire
>Montgomery McCracken Walker & Rhoads, LLP
>123 South Broad Street
>Philadelphia, PA 19109
>
>Richard M. Donaldson, Esquire
>Montgomery McCracken Walker & Rhoads, LLP
>300 Delaware Avenue, Suite 750
>Wilmington, DE 19801

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

Foraker / Pretrial / Motion in Limine - Capt. Dixon.final