# THE NEUBERGER FIRM
ATTORNEYS AND COUNSELLORS AT LAW

TWO EAST SEVENTH STREET
SUITE 302
WILMINGTON, DELAWARE 19801-3707

WWW.NEUBERGERLAW.COM
EMAIL: INFO@NEUBERGERLAW.COM

THOMAS S. NEUBERGER, ESQUIRE                          PHONE: (302) 655-0582
STEPHEN J. NEUBERGER, ESQUIRE                          FAX: (302) 655-9329

March 3, 2006                                          **Via CM/ECF Filing**

The Honorable Gregory M. Sleet
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

RE:   **Price, et al. v. Chaffinch, et al., C.A. No. 04-956-GMS**
      **Foraker v. Chaffinch, et al., C.A. No. 04-1207-GMS**
      **Citation of Supplemental Authority Pursuant to D.Del. L.R. 7.1.2(c)**

Dear Judge Sleet:

Pursuant to Local Rule 7.1.2(c), plaintiffs bring to the Court's attention supplemental legal authority issued by the Third Circuit which bears upon the pending summary judgment motions and which were "decided after [plaintiffs'] final brief" was filed on the relevant issue.

**Qualified Immunity**

On January 25, 2006, defendants moved for summary judgment. (Price - D.I. 80-81; Foraker - D.I. 60,62). Their defenses included a claim that they were entitled to qualified immunity. On February 8th, plaintiffs filed their Answering Briefs, opposing the defense motions. (Price - D.I. 98; Foraker - D.I. 79). In these briefs, plaintiffs responded to the defense claim. These were plaintiffs' "final brief[s]" for Local Rule 7.1.2(c) purposes.

The same day that plaintiffs filed their Answering Briefs on February 8th, the Third Circuit issued a qualified immunity opinion in the free speech context in Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir. 2006). This recent opinion directly bears upon the qualified immunity issues currently under submission. A copy of that opinion is attached to this letter.

In Monteiro, the Third Circuit held that when there is a factual dispute as to whether a public official is motived by illegal or legal reasons in taking an action against an individual in

response to the exercise of that person's free speech rights, this factual dispute must be resolved by the jury before the Court rules on the qualified immunity defense. Id. at 404-06  The Circuit explained that -

> Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor.

Id. at 405.

> Thus, if [defendant] acted with an intent to suppress [plaintiff's] speech ... []he violated clearly established law and is not entitled to qualified immunity.  In cases in which a constitutional violation depends on evidence of a specific intent, <u>it can never be objectively reasonable for a government official to act with the intent that is prohibited by law</u>.

Id. at 404 (internal punctuation omitted) (emphasis added).

Briefly, this recent binding Third Circuit authority relates to the qualified immunity issue as follows.  Plaintiffs assert that defendants took numerous adverse actions against them in retaliation for the exercise of their free speech and petition clause rights.  In other words, that defendants had illegal and 'impure' motives.  Defendants claim that instead, all of the actions they took against plaintiffs were for other legal or 'pure' reasons.

To the extent defendants claim that qualified immunity is somehow a live issue in this case, at the very least there is a fact dispute as to what defendants' motivations were in taking their numerous adverse actions against plaintiffs.[1]  As a result, if the Court decides that qualified immunity is an open issue, it cannot be decided at summary judgment due to the fact dispute over defendants' motives.  If the jury finds that defendants' motives were impure, than qualified immunity must be denied because "it can never be objectively reasonable for a government official to act with the intent that is prohibited by law," id., here, the intent to violate plaintiffs' First Amendment rights.


Respectfully submitted,

/s/ Stephen J. Neuberger

Attorney for Plaintiff

---

[1] As discussed in plaintiffs' summary judgment opening briefs, plaintiffs believe that in light of the overwhelming causal evidence these cases have revealed, there is no factual dispute that defendants acted for illicit reasons and that no reasonable jury could conclude otherwise.

cc: Thomas S. Neuberger, Esq. (via CM/ECF)
     Martin D. Haverly, Esq. (via CM/ECF)
     Richard M. Donaldson (via CM/ECF)

FTU \ Letters \ Sleet.03

# Tab A



436 F.3d 397  
436 F.3d 397  
**(Cite as: 436 F.3d 397)**

Page 1

Briefs and Other Related Documents

United States Court of Appeals,Third Circuit.
Armenio T. MONTEIRO
v.
CITY OF ELIZABETH; Patricia Perkins-Auguste, Council President; Andrew R. Cox, Police Officer; Richard Meola, Sergeant of Police Patricia Perkins-Auguste, Appellant.
**No. 04-3756.**

Argued Oct. 25, 2005.
Filed Feb. 8, 2006.

**Background:** City council member brought action against president of city council, alleging that she violated his First Amendment rights by ejecting him from a public meeting of the council and having him arrested on a disorderly persons charge on the basis of his viewpoint. The United States District Court for the District of New Jersey, Jose L. Linares, J., denied president's summary judgment motion, and entered judgment in favor of council member, and president appealed.

**Holdings:** The Court of Appeals, Rosenn, Circuit Judge, held that:

4(1) when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury;

6(2) material issue of genuine fact existed as to whether city council president acted with a motive to suppress council member's speech based upon his viewpoint when she had him removed from council meeting, precluding summary judgment in favor of president on qualified immunity grounds; and

8(3) evidence of city council member's acquittal of disorderly persons charge and a memorandum of law from the city law department pertaining to the procedure to be followed in ejecting an unruly member of city council was admissible.

Affirmed.

Fisher, Circuit Judge, filed dissenting opinion.

West Headnotes

**[1] Officers and Public Employees 283 ⚹119**

283 Officers and Public Employees
   283III Rights, Powers, Duties, and Liabilities
      283k119 k. Actions by or Against Officers and Employees. Most Cited Cases
Qualified immunity is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

**[2] Constitutional Law 92 ⚹90.1(1)**

92 Constitutional Law
   92V Personal, Civil and Political Rights
      92k90 Freedom of Speech and of the Press
         92k90.1 Particular Expressions and Limitations
           92k90.1(1) k. In General. Most Cited Cases
When a public official excludes a elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment. U.S.C.A. Const.Amend. 1.

**[3] Constitutional Law 92 ⚹90.1(4)**

92 Constitutional Law
   92V Personal, Civil and Political Rights
      92k90 Freedom of Speech and of the Press

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397 Page 2
436 F.3d 397
**(Cite as: 436 F.3d 397)**

92k90.1 Particular Expressions and Limitations
92k90.1(4) k. Use of Streets and Public Places; Licenses and Permits. Most Cited Cases
Content-based restrictions on speech in a public forum are subject to strict scrutiny, while viewpoint-based restrictions violate the First Amendment regardless of whether they also serve some valid time, place, manner interest. U.S.C.A. Const.Amend. 1.

**[4] Officers and Public Employees 283 ⊕119**

283 Officers and Public Employees
 283III Rights, Powers, Duties, and Liabilities
  283k119 k. Actions by or Against Officers and Employees. Most Cited Cases
Although qualified immunity is a question of law determined by the court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury. 42 U.S.C.A. § 1983.

**[5] Federal Civil Procedure 170A ⊕2153.1**

170A Federal Civil Procedure
 170AXV Trial
  170AXV(F) Taking Case or Question from Jury
   170AXV(F)2 Questions for Jury
    170Ak2153 Particular Issues
     170Ak2153.1 k. In General. Most Cited Cases
Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor.

**[6] Federal Civil Procedure 170A ⊕2491.5**

170A Federal Civil Procedure
 170AXVII Judgment
  170AXVII(C) Summary Judgment
   170AXVII(C)2 Particular Cases
    170Ak2491.5 k. Civil Rights Cases in General. Most Cited Cases
Material issue of genuine fact existed as to whether city council president acted with a motive to suppress council member's speech based upon his viewpoint when she had him removed from council meeting, precluding summary judgment in favor of president on qualified immunity grounds on member's First Amendment claim. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[7] Federal Civil Procedure 170A ⊕2491.5**

170A Federal Civil Procedure
 170AXVII Judgment
  170AXVII(C) Summary Judgment
   170AXVII(C)2 Particular Cases
    170Ak2491.5 k. Civil Rights Cases in General. Most Cited Cases
When a constitutional violation depends on evidence of improper intent, it is sufficient for the plaintiff to identify affirmative evidence from which a jury could find the pertinent motive, in order to survive summary judgment on that issue.

**[8] Civil Rights 78 ⊕1422**

78 Civil Rights
 78III Federal Remedies in General
  78k1416 Weight and Sufficiency of Evidence
   78k1422 k. Other Particular Cases and Contexts. Most Cited Cases
Evidence of city council member's acquittal of disorderly persons charge and a memorandum of law from the city law department pertaining to the procedure to be followed in ejecting an unruly member of city council was admissible in council member's civil rights suit against city council president for violation of his First Amendment rights when president removed him from council meeting and had him charged criminally in order to suppress council member's speech. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[9] Civil Rights 78 ⊕1465(1)**

78 Civil Rights
 78III Federal Remedies in General
  78k1458 Monetary Relief in General
   78k1465 Exemplary or Punitive Damages
    78k1465(1) k. In General. Most Cited Cases
A $750 punitive damages award was warranted in §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397
436 F.3d 397
**(Cite as: 436 F.3d 397)**

Page 3

1983 action where city council president acted recklessly and with callous indifference to council member's First Amendment rights in having him removed from council meeting on basis of his viewpoint. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**\*399** Robert F. Varady (Argued), LaCorte, Bundy, Varady & Kinsella, Union, NJ, for Appellant.

David F. Corrigan (Argued), Keyport, NJ, for Appellee.

Before SLOVITER, FISHER, and ROSENN, FN\* Circuit Judges.

> FN\* The Honorable Max Rosenn, Sr. submitted this opinion to the Clerk's office for processing on February 2, 2006. Prior to the filing of the opinion, Judge Rosenn passed away.

ROSENN, Circuit Judge.

This appeal presents the issue of whether, when entitlement to qualified immunity depends on a disputed issue of fact, it is proper to submit that question to a jury. Plaintiff Armenio T. Monteiro filed an action under 42 U.S.C. § 1983 against defendant Patricia Perkins-Auguste, alleging that when he was a member of the Elizabeth, New Jersey City Council, Perkins-Auguste, then President of the Council, violated his First Amendment rights by ejecting him from a public meeting of the Council and having him arrested on a disorderly persons charge on the basis of his viewpoint. Perkins-Auguste asserted that she was entitled to qualified immunity and moved for summary judgment on that ground.

Her motion for summary judgment was denied on the basis that whether she was entitled to qualified immunity depended on a disputed issue of material fact-whether she had Monteiro ejected from the meeting on the basis of viewpoint. The District Court submitted the disputed factual question to the jury, which returned a verdict for the plaintiff, Monteiro, awarding him $10,000 in compensatory damages. The jury also awarded Monteiro $750 in punitive damages, finding that Perkins-Auguste had acted recklessly and with callous indifference to Monteiro's rights.

Perkins-Auguste moved for judgment as a matter of law following the jury verdict under Fed.R.Civ.P. 50, or in the alternative, for a new trial under Fed.R.Civ.P. 59. The District Court denied her motion and entered judgment in favor of Monteiro. She timely appealed. We affirm the judgment because we find no error in the proceedings. The jury's verdict is based on sufficient evidence.

I.

[1] Perkins-Auguste challenges the denial of judgment as a matter of law, FN1 the **\*400** submission of punitive damages to the jury, and the admission of two items of evidence. Perkins-Auguste argues that the District Court erred in denying her motion for judgment as a matter of law on the grounds of qualified immunity because a reasonable official in her position would not have understood that ejecting Monteiro from the meeting violated his First Amendment rights. She further argues that the District Court erred in submitting the question of punitive damages to the jury because Monteiro had presented no evidence that she acted intentionally or deliberately to violate his constitutional rights. Perkins-Auguste also argues that it was substantial error for the District Court to admit evidence of Monteiro's acquittal, in municipal court, of the disorderly persons charge, and a City Legal Department Memorandum of Law outlining the procedures to be followed by a Council President in ejecting an unruly member.

> FN1. Perkins-Auguste styles her appeal as an appeal of the District Court's denials of her motion for summary judgment before trial, her motion for judgment as a matter of law after the close of the plaintiff's case, and her motion for judgment as a matter of law following the adverse jury verdict. We note that it is not clear what rights, if any, Perkins-Auguste retained to challenge the legal determinations the trial judge made at summary judgment,

436 F.3d 397
436 F.3d 397
**(Cite as: 436 F.3d 397)**

Page 4

which she did not appeal. If she retained a right to raise a legal question, was that right limited to legal errors made at trial and the sufficiency of the evidence to support the jury's verdict? Or did it continue to extend to the legal questions twice raised in the motions for summary judgment and certification under 28 U.S.C. § 1292(b), and twice decided adversely to the Defendant? The Supreme Court has strongly urged that the legal question of qualified immunity be decided before trial in order to preserve its protections. *Saucier v. Katz,* 533 U.S. 194, 200-201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Mitchell v. Forsyth,* 472 U.S. 511, 525-526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Qualified immunity is " 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' " *Saucier,* 533 U.S. at 200-201, 121 S.Ct. 2151 (quoting *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806). We treat her appeal as an appeal of her motion for judgment as a matter of law.

## II.

On April 10, 2001, the Elizabeth City Council convened for the purpose of considering the City's proposed annual budget. Perkins-Auguste was, at that time, President of the Council and the officer in charge of presiding over the meeting. The meeting was unusually well-attended, with approximately 300 members of the community in the audience. The meeting was taped and broadcast by a local cable station. The members of the Council spoke in turn about their views on the proposed budget.

Monteiro expressed at length his strong objections to the budget, exercising his constitutional right to petition the government on behalf of himself and his constituents. After some discussion from other councilpersons, Perkins-Auguste began to speak. Rather than address the merits of the budget, however, she immediately leveled a pointed attack at Monteiro for what she perceived to be his role in the distribution of a pamphlet protesting the budget and inviting citizens to attend the meeting. The tape reveals that Perkins-Auguste turned toward Monteiro, held up a copy of the pamphlet and stated:

I just want to say, this is deception, what was found in the Council chambers. When you tell residents to come up to City Council because they're going to be charged additionally 600 and 800 dollars for owning a home in the City of Elizabeth, this is deception, Councilman Monteiro, with your name on it.

Monteiro interrupted her: "You're bringing up my name. You can't bring up my name and then sit there and ...." he began. Perkins-Auguste swiftly ruled him out of order, pounding her gavel. Monteiro continued to try to defend himself, and Perkins-Auguste continued to pound her **\*401** gavel. Perkins-Auguste then asked two municipal officers, who were acting as sergeants-at-arms, to remove Monteiro from the meeting.

As the officers approached Monteiro, Perkins-Auguste continued her remarks:
As I was stating, this is deception, when Council members put this type of propaganda throughout the community, when you state there's a 600, an 800 dollar tax increase. My taxes, I own a home in this city, my taxes over the last two and three years only went up twenty-five, thirty dollars for the entire year. So I don't know where you guys are coming off with a thousand dollars, 600 dollars, 800 dollars tax increase. Get the facts straight. If you don't want to vote for the budget, don't vote for the budget, but do not lie to the general population. This is disgusting. If you want people to come to the meeting, you tell them to come up because there's something that they need to learn. Do not lie. It's beyond deception.

Monteiro then said: "Well, we'll wait for the bills to come out." In response, Perkins-Auguste exclaimed: "This man cannot keep his mouth shut," and once again asked that he be removed. Monteiro responded that he would not voluntarily leave the meeting, and that, if she wished to have him removed, she would have to have him arrested. As the officers asked Monteiro to step out from his seat, one member of the Council advised

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397                                                                                                           Page 5
436 F.3d 397
**(Cite as: 436 F.3d 397)**

that they should "ask for a legal opinion on this," and that "there are rules and regulations in our code that we can adopt right now." Perkins-Auguste did not appear to consult or follow any established procedure in ejecting Monteiro. The evidence introduced at trial reveals that there were at least two possible procedures available to her under the City Council's governing rules. The rules required that the Council vote on the matter of a councilperson's removal. [FN2] No vote was taken. Monteiro was advised by a City Attorney that he was required to abide by the orders of the Council President, to which he responded, "I apologize, I understand that." Soon thereafter, Perkins-Auguste called a five-minute recess.

> FN2. A legal memorandum of the City Law Department, dated September 26, 2000, less than a year before the April 10, 2001 meeting, states: "The Rules of Procedure do not provide a specific remedy available to the City Council President if a member fails to comply with the orders of the President after being ruled out of order repeatedly." The memorandum notes, however, that the City Rules incorporate Robert's Rules of Order, which provide the authority to eject an unruly member. The memorandum concludes: "Therefore, it is our opinion that if a member of the City Council repeatedly refuses to comply with the orders and rulings of the President, the member ... may be ejected ... by vote of a majority of those Council members present and voting." In addition, the Rules provide that "[a]ny person who shall disturb the peace of the Council, make impertinent or slanderous remarks or conduct himself in a boisterous manner while addressing the Council shall be forthwith barred by the presiding officer from further audience before the Council, except that if the speaker shall submit to proper order under these rules, permission for him to continue may be granted by a majority vote of the Council."

When the Council reconvened, Monteiro was still sitting in his Council chair. Perkins-Auguste immediately asked the officers to escort Monteiro out of the meeting. They replied that they could not do so unless he was formally placed under arrest. After some vacillation, Perkins-Auguste agreed. She instructed the officers to place Monteiro under arrest and remove him from the meeting. The officers handcuffed Monteiro and led him from the meeting. Perkins-Auguste then proceeded to speak at length to the audience regarding her actions:

**\*402** He filibustered for over twenty-five minutes. Not one Council member opened their mouths. As soon as I speak and others speak, he thinks he can just talk. That is not how this Council will run meetings. It was disgraceful, and I would not put my Council colleagues in it in terms of having them vote on it. That's a decision the President must make, and I am saddened by it, because I believe in free speech and I believe in representation.

She then raised a copy of the offending pamphlet and continued her quasi-prosecutorial attack in a more aggressive tone:

But when you have Council people who allow this type of propaganda to go out with their name on it to lure City residents up into Council meetings, it's a disgrace also. I own a home in this City, and for over the last four years, taxes have not gone up no more than three percent, if any, in any of those given years. Twenty-five dollars here, maybe seventy or fifty dollars here, nothing more. We all hate to raise taxes, but it's something you have to do if you are an elected municipal official. Taxes is just a part of the nasty job. Taxes is a nasty word, but we must realize, it's a reality in the United States of America. And again, I apologize to every resident in the City of Elizabeth who witnesses this tonight or tomorrow or whenever you see this on TV. We are trying to conduct the City business.... Our chief role as Council representatives is to allocate funds to run the City, to investigate, and to appropriate. And if we cannot do that in a decent, orderly manner and respect one another's positions, then we're just all for waste.

Again, my colleagues, I apologize to you, but he left me with no decision but to have him to be removed. Constantly interrupting throughout the entire meeting, constant warnings. I have a two-and-a-half year old,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397
436 F.3d 397
**(Cite as: 436 F.3d 397)**

Page 6

and I was talking to him like my child, stop, stop. You're going to get it, stop. You're going to be thrown out of here, stop. There comes a point in time when you must act, and again, I apologize to all those who witnessed this, you in the audience, I apologize but he left me no other choice. I cannot allow my colleagues to overrun the meetings just to make a point.
And I was so upset when I saw this [pamphlet] out in the pews to get people to come up to the meeting, 600, 800 dollars. That is not how you get people to be informed. This is scare tactics. His name is on it, he allowed it.

As a result of his removal from the meeting, Monteiro was deprived of his opportunity to vote on the budget. He was also charged with disruption of a public meeting in violation of New Jersey law, but subsequently found not guilty of the offense in municipal court. [FN3]

> FN3. The offense of "disrupting meetings and processions" is defined as follows:
> A person commits a disorderly persons offense if, with purpose to prevent or disrupt a lawful meeting, procession or gathering, he does an act tending to obstruct or interfere with it physically.
> N.J. Stat. Ann.. § 2C:33-8.

Monteiro filed a civil suit against the City of Elizabeth, the police officers who removed him from the City Council Meeting, and Perkins-Auguste in her capacity as President of the City Council. He asserted various state law claims and claims under 42 U.S.C. § 1983 for violations of his First Amendment, Fourth Amendment, and due process rights. Monteiro's claims against the City and the police officers were disposed of by voluntary dismissal and on summary judgment, as were most of his claims against Perkins-Auguste. **\*403** The District Court denied Perkins-Auguste's motion for summary judgment on Monteiro's claim under § 1983 for violation of his First Amendment rights.

Perkins-Auguste argued in her motion for summary judgment that she was entitled to qualified immunity on Monteiro's First Amendment claim. The District Court disagreed, however, finding that whether she was entitled to qualified immunity depended on the disputed question of her motivation for ejecting Monteiro from the meeting. The District Court held that the First Amendment protected Monteiro's right to speak on public issues at a public meeting and from adverse actions taken by officials presiding over the meetings. The District Court found that the council meeting was a limited public forum, subject to reasonable time, place, manner restrictions on speech. The District Court noted that in order to satisfy the First Amendment, time, place, manner restrictions must be viewpoint-neutral, narrowly tailored to serve a significant governmental interest, and must leave open ample alternative channels for communication.

The District Court found that provisions of the City of Elizabeth's Rules of Procedure forbade Council members from delaying or interrupting proceedings and allowed the presiding officer to bar unruly members "except that if the speaker shall submit to proper order under these rules, permission for him to continue may be granted by a majority vote of the Council." The District Court held that these provisions were facially valid time, place, manner restrictions because they were viewpoint-neutral, narrowly tailored to serve the significant governmental interest in conducting orderly and efficient meetings of a public bodies, and left open ample alternative channels of communication. But the District Court concluded that the factual record raised a disputed question of fact whether Monteiro was silenced by Perkins-Auguste based on his views on the budget or her need to maintain order:
[A] fact finder hearing the history between the parties, the words that were actually said at the meeting, and viewing Plaintiff's conduct as shown in the videotape, could reasonably conclude that the Plaintiff was not being disruptive and that Ms. Perkins-Auguste's actions were motivated by her antipathy to Plaintiff's particular outspoken views on the budget and his alleged sponsorship of the "offensive" flier that attacked the city's budgetary proposals. Indeed, prior to the event, Defendant was aware of Plaintiff's view and knew that he was going to vote and argue against the budget. Therefore, material questions of fact exist as to whether Defendant's motive for acting against Monteiro resulted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397 **Page 7**
436 F.3d 397
**(Cite as: 436 F.3d 397)**

from the content of his speech (constitutionally impermissible) or was an appropriately-limited time, place and manner restriction (constitutionally permissible). A rational jury could infer that Defendant Perkins-Auguste singled Plaintiff out because of the content of his speech, or that she was merely trying to maintain order for the efficient administration of her legislative responsibilities.

*Monteiro v. City of Elizabeth,* No. 01-1844, at 22-23 (D.N.J. Nov. 12, 2003). The District Court further concluded that the availability of qualified immunity depended on this disputed issue of fact:If Ms. Perkins-Auguste's motivation in removing Mr. Monteiro was her animosity towards him and the desire to stifle his view on the budget, then Ms. Perkins-Auguste as a reasonable public official would have known that her specific conduct violated the Plaintiff's clearly established rights and was not subject to qualified immunity. *See* **\*404**_Anderson v. Creighton,_ 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In as much as these questions must be resolved by a trier of fact and determined perhaps through the use of a specifically-tailored jury verdict questionnaire, it would be improper to determine this matter via summary judgment.

*Id.* Accordingly, the District Court concluded that the question of Perkins-Auguste's motivation in ejecting Monteiro from the meeting was a disputed issue of material fact for the jury to decide, precluding summary judgment on Monteiro's First Amendment claim against Perkins-Auguste.

### III.

We review a denial of judgment as a matter of law *de novo,* viewing the evidence in the light most favorable to the prevailing party. _Caver v. City of Trenton,_ 420 F.3d 243, 262 (3d Cir.2005). Judgment as a matter of law is only appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the moving] party on that issue." Fed.R.Civ.P. 50(a)(1).

The doctrine of qualified immunity protects government officials from civil damage suits for official conduct that does not violate clearly established law of which a reasonable person would have known. _Harlow v. Fitzgerald,_ 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity " 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " _Hunter v. Bryant,_ 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting _Malley v. Briggs,_ 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

[2] [3] It is clearly established that when a public official excludes a elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment. *See, e.g.,* _Eichenlaub v. Twp. of Ind.,_ 385 F.3d 274, 281 (3d Cir.2004) (applying public forum analysis to township official's curtailing of allegedly disruptive speech at a public meeting); _Collinson v. Gott,_ 895 F.2d 994, 995, 999 (4th Cir.1990) (removal of citizen from public meeting of county commissioners for interruptions and truculence); _Jones v. Heyman,_ 888 F.2d 1328, 1329 (11th Cir.1989) (mayor's silencing and removal of citizen from public meeting for disruptive behavior); _Musso v. Hourigan,_ 836 F.2d 736, 739 (2d Cir.1988) (school board's removal of citizen from public meeting for disruptive behavior). It is also clearly established that content-based restrictions on speech in a public forum are subject to strict scrutiny, while viewpoint-based restrictions violate the First Amendment regardless of whether they also serve some valid time, place, manner interest. *See, e.g.,* _Good News v. Milford Cent. Sch.,_ 533 U.S. 98, 106-107, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001); _Rosenberger v. Rector & Visitors of Univ. Of Va.,_ 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995); _Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,_ 508 U.S. 384, 392-393, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993).

Thus, if Perkins-Auguste acted with an intent to suppress Monteiro's speech on the basis of viewpoint, she violated clearly established law and is not entitled to qualified immunity. In cases in which a constitutional violation depends on evidence of a specific intent, "it can never be objectively reasonable for a government official to act with the intent that is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397                                                                                                                                         Page 8
436 F.3d 397
**(Cite as: 436 F.3d 397)**

prohibited by law." *Locurto v. Safir,* 264 F.3d 154, 169 (2d Cir.2001). Accordingly, the District Court did not err in holding that whether Perkins-Auguste's conduct violated clearly established law depended upon her motivation***405** for ejecting Monteiro from the meeting. Furthermore, it was not error to submit this question to the jury because there was sufficient evidence from which a reasonable jury could conclude that Perkins-Auguste acted with a motive to suppress Monteiro's viewpoint.

[4] [5] Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury. See *Johnson v. Jones,* 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); *Karnes v. Skrutski,* 62 F.3d 485, 491 (3d Cir.1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination."). Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor. See *Mitchell v. Forsyth,* 472 U.S. 511, 529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (improper intent is a pure question of fact); *Walker v. Horn,* 286 F.3d 705, 710 (3d Cir.2002).

[6] Monteiro adduced sufficient evidence at trial from which a reasonable jury could conclude that Perkins-Auguste acted with a motive to suppress Monteiro's speech based upon his opposition to the budget. The jury saw the videotape of the meeting and heard the stridency of Perkins-Auguste's *ad hominem* attack on Monteiro. While Monteiro was arguably disrupting the proceedings by interrupting her, he was also defending himself from a personal attack. [FN4] It was Perkins-Auguste who changed the tone of the meeting from a debate about the merits of the budget to a quasi-prosecutorial forum.

> FN4. Recall the words of Iago in *Othello:* "Who steals my purse steals trash.... But he that filches from me my good name / Robs me of that which not enriches him, / And makes me poor indeed." William Shakespeare, *Othello* (3.3.1807-1811).

Monteiro reminded Perkins-Auguste that his constitutional rights were at stake, stating: "I am not leaving Madam President. It's a violation of my civil rights. It's a violation of my First Amendment rights." Perkins-Auguste demonstrated her own awareness when she apologized to the audience for ejecting him: "I am saddened by [the ejection], because I believe in free speech and I believe in representation." She admitted at trial to having knowledge of a law memorandum of the City of Elizabeth Legal Department setting forth a procedure for ejecting unruly members. See *supra* note 2. The speed with which she determined to eject Monteiro from the meeting, her failure to consult her fellow council members or to negotiate any compromise, and her failure to follow any established procedure could be viewed by a reasonable jury as evidence that Perkins-Auguste's behavior was emotionally charged and motivated by anger and personal animosity, rather than a desire to maintain smooth operation of the meeting. Despite the calm in the meeting room after the recess, Perkins-Auguste persisted in having Monteiro removed, in handcuffs, against his will.

[7] Perkins-Auguste's argument that she could have conceivably (and constitutionally) ejected Monteiro on the basis of his disruptions is unavailing in the face of a jury verdict concluding that she acted with a motive to suppress Monteiro's speech on the basis of viewpoint. Qualified immunity does not require a plaintiff to demonstrate that the official's conduct was not reasonable under any conceivable set of circumstances. See ***406** *Crawford-El v. Britton,* 523 U.S. 574, 593-594, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("[T]he policy concerns underlying *Harlow* do not support Justice Scalia's unprecedented proposal to immunize all officials whose conduct is 'objectively valid,' regardless of improper intent."); *see also Locurto,* 264 F.3d at 169-170. When a constitutional violation depends on evidence of improper intent, it is sufficient for the plaintiff to "identify affirmative evidence from which a jury could find ... the pertinent motive," in order to survive summary judgment on that issue. *Crawford-El,* 523 U.S. at 600, 118 S.Ct. 1584.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397
436 F.3d 397
**(Cite as: 436 F.3d 397)**

Page 9

After the jury returns a verdict, judgment as a matter of law will be granted to the defendant only if that verdict is not based on sufficient evidence. Fed.R.Civ.P. 50(a)(1).

In conclusion, the District Court did not err in denying Perkins-Auguste's motion for judgment as a matter of law. In its opinion denying the motion, the District Court noted that the jury found that the Defendant had an unconstitutional motivation for ejecting Plaintiff from the City Council meeting, thereby violating Plaintiff's rights under the First Amendment. Upon reviewing the evidence in the light most favorable to the Plaintiff, the District Court found that sufficient evidence existed to support the jury verdict. We see no error by the District Court.

### IV.

[8] Perkins-Auguste also complains that the District Court committed substantial error in admitting evidence of Monteiro's acquittal in municipal court of the disorderly persons charge and a memorandum of law from the City Law Department pertaining to the procedure to be followed in ejecting an unruly member of City Council. We review evidentiary rulings for abuse of discretion. Abrams v. Lightolier, 50 F.3d 1204, 1213 (3d Cir.1995). The District Court rejected these objections when it denied Perkins-Auguste's motion for a new trial. The District Court admitted the evidence of Monteiro's acquittal in the municipal court as evidence of damages because the bulk of Monteiro's $10,000 damage award was a $5,000 claim for attorney's fees he incurred defending himself. The District Court provided a special comprehensive instruction balancing the interests of both parties. The import of the acquittal, the court noted, was narrowly confined by the instruction. As for the memorandum of the City's attorney's, the District Court wrote:

The memo set forth a legal opinion which provided specific instructions on the proper course of action in case a Council member became unruly. Perkins-Auguste admitted to having knowledge of the existence of this memo prior to the Council meeting in dispute and admitted that she did not heed that advice in that memorandum.

*Monteiro v. City of Elizabeth,* No. 01-1844, at 10 (D.N.J. Sept. 1, 2004). The court concluded that the memorandum provided highly probative circumstantial evidence that the ejection of the Plaintiff was not based solely on his alleged disruption "but was motivated by the content of his speech." We agree and hold that the District Court did not abuse its discretion in admitting these two items of evidence. Abrams, 50 F.3d at 1213 (3d Cir.1995).

[9] The District Court also rejected Perkins-Auguste's claim that it erred in submitting the question of punitive damages to the jury. We see no error with respect to the $750 punitive damages award. "Whether there is sufficient evidence to support punitive damages is a question of law which we review de novo." Alexander v. Riga, 208 F.3d 419, 430 (3d Cir.2000). The evidence outlined above amply supports the jury's conclusion that Perkins-Auguste acted recklessly and with **\*407** callous indifference to Plaintiff's rights in having him removed from the meeting. Therefore, the punitive damages award will not be vacated.

### V.

For the foregoing reasons, the judgment of the District Court is affirmed. Costs taxed against appellant.

FISHER, Circuit Judge, dissenting.
The majority characterizes the jury's finding of improper intent as the dispositive inquiry in assessing both the existence of a constitutional violation and entitlement to qualified immunity. This reflects, in my view, a fundamental misunderstanding of the relationship of motive to the First Amendment and the doctrine of qualified immunity. I respectfully dissent.

### I.

Borne of judicial concerns over the deleterious effect of litigation on the work of public officials, qualified immunity protects those who overstep constitutional boundaries but nevertheless act in objective good faith. Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397  
436 F.3d 397  
**(Cite as: 436 F.3d 397)**

Page 10

2727, 73 L.Ed.2d 396 (1982). An official may not be held statutorily liable for a constitutional violation unless a reasonable person in the same position, with the same facts, would have understood that he or she was infringing on the individual's civil rights. *Id.*

Inherent in this standard are two separate inquiries. The court must first determine, as a factual matter, whether the record demonstrates a constitutional infringement. Disputed issues of historical fact, if relevant to the substantive elements of the alleged deprivation, must be submitted to the jury for resolution. *E.g., Curley v. Klem,* 298 F.3d 271, 278 (3d Cir.2002). Only if a violation is established must the court determine, as a legal matter, whether a reasonable person would have recognized that violation. Resolution of this question depends upon the court's application of the facts of the case to "clearly established" law. *E.g., Harvey v. Plains Twp. Police Dep't,* 421 F.3d 185, 194 n. 12 (3d Cir.2005).

A.

The leader of a legislative meeting, like a public employer or owner of a limited public forum, is constitutionally entitled to impose limitations on the expressive rights of participants in order to facilitate the legitimate goals of the gathering. *Parker v. Merlino,* 646 F.2d 848, 854 (3d Cir.1981); *see also Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828-30, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995); *Brennan v. Norton,* 350 F.3d 399, 412-13 (3d Cir.2003). Speech may be limited on the basis of time, place, and manner-and even content; however, it may not be restricted on the basis of viewpoint. *Parker,* 646 F.2d at 853-54; *see also Rosenberger,* 515 U.S. at 828-30, 115 S.Ct. 2510; *Brennan,* 350 F.3d at 412-13. So long as legislators comply with procedural rules and speak on topics within the scope of the meeting, they enjoy an absolute right to express their views without restraint and without fear of subsequent retaliation. A leader who prevents a member from speaking or punishes a member for prior speech based on his or her viewpoint has infringed on the member's First Amendment rights. *Parker,* 646 F.2d at 853-54; *see also Bond v. Floyd,* 385 U.S. 116, 135-37, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); *Velez v. Levy,* 401 F.3d 75, 97-98 (2d Cir.2005); *DeGrassi v. City of Glendora,* 207 F.3d 636, 645-46 (9th Cir.2000); *Miller v. Town of Hull,* 878 F.2d 523, 532-33 (1st Cir.1989).

**\*408** But, even if retaliatory motive is established, the leader may yet escape liability by demonstrating that there is no causation between the improper intent and the restrictions on the legislator's speech: i.e., that the legislator would have suffered the same restrictions in the absence of improper intent. *Crawford-El v. Britton,* 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("[P]roof of an improper motive is not sufficient to establish a constitutional violation-there must also be evidence of causation."). Proof that the same actions would have been taken regardless of the official's intent cleaves the strand of causation between the constitutional violation and the harm, precluding success on the claim. *See, e.g., Texas v. Lesage,* 528 U.S. 18, 20-21, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999). No one would argue, for example, that an individual excluded from a public forum would have a basis for recovery if the decision to deny access was compelled by two independently operating regulations, one of which was viewpoint-biased and one of which was viewpoint-neutral. A restriction imposed as a result of improper intent will not give rise to liability if the same restriction would have been imposed otherwise. *Mihos v. Swift,* 358 F.3d 91, 105 (1st Cir.2004) ("[A] defendant might prevail ... in a case alleging an intent-based constitutional tort, without need to inquire as to her motives, if ... the defendant showed that she would have reached the same decision even in the absence of the employee's protected speech.") (citing *Crawford-El,* 523 U.S. at 592-93, 118 S.Ct. 1584).

The opinion of the majority does not address, and presumably rejects, this premise, which has been recognized in a series of Supreme Court decisions, including *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and *Crawford-El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). It assumes instead that the jury's finding of unconstitutional motive demonstrates, beyond cavil, the existence of a constitutional violation. It does not discuss whether, based on his repeated disruptions and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397  
436 F.3d 397  
**(Cite as: 436 F.3d 397)**

Page 11

noncompliance with procedural rules of the Council, Monteiro would have been ejected from the meeting even if Perkins-Auguste had not harbored an intent to punish him for his views.

Perhaps the majority's reluctance to confront the issue stems from the District Court's failure to instruct the jury on this point. Despite evidence that Perkins-Auguste would have expelled Monteiro from the meeting regardless of his previously expressed opinions, the jury was not instructed on this aspect of causation analysis and never made a finding on the subject. Perkins-Auguste did not object to this omission during trial, and has not raised it on appeal, and we are thus constrained to assume that the jury was properly charged. *See Kost v. Kozakiewicz,* 1 F.3d 176, 182 (3d Cir.1993) (noting that issues not raised on appeal are abandoned). Nevertheless, because causation constitutes an essential aspect of Monteiro's claim, and because Perkins-Auguste argues the matter in her briefs, we must consider whether a finding of causation would have been supported by the evidence.

The issue presents a close question. Monteiro spoke out of turn during the meeting and repeatedly interjected comments during Perkins-Auguste's speech. FN5 ***409** He did not comply with her rulings and refused to allow Perkins-Auguste to conclude her remarks uninterrupted. These circumstances suggest that Perkins-Auguste, or indeed any legislative leader, would have taken the same actions regardless of an intent to retaliate against Monteiro.

> FN5. I will not quibble with the majority opinion's recitation of facts except to note that some of its characterizations of the record-particularly the charges that Perkins-Auguste "immediately leveled a pointed attack at Monteiro" and "changed the tone of the meeting from a debate about the merits of the budget to a quasi-prosecutorial forum," - are less historical than hyperbolical.

However, because the burden of proof on this issue lies with Perkins-Auguste, *see Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568, and the record does not compel a finding in her favor, I will assume that the jury could have reasonably found-if given the opportunity-that the same actions would not have been taken in the absence of improper intent. This conclusion, considered with the findings that Monteiro engaged in protected speech and that Perkins-Auguste acted with retaliatory intent in suppressing his speech, demonstrates that a constitutional violation occurred.

B.

The second stage of the qualified immunity analysis is whether, given the existence of a constitutional violation, a reasonable person should have recognized it under "clearly established" law. The hypothetical "reasonable person" is an objective observer, who is aware of the facts known to the official but possesses an independent knowledge of governing legal precepts. *See Harlow,* 457 U.S. at 806, 102 S.Ct. 2727. Only when these rules clearly forbid the actions taken by the official will immunity be denied. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

1.

Subjective intent plays a limited role in this analysis. It is considered as an element of the underlying claim when the right at issue is predicated on the official's motive, but the presence of improper motive does not preclude qualified immunity. *Grant v. City of Pittsburgh,* 98 F.3d 116, 124 (3d Cir.1996). An official who has committed a constitutional violation, even one evincing improper intent, will nevertheless be immune from liability if an objective observer in the same position, given the same facts and knowing of the official's improper motive, would not have recognized a constitutional violation under clearly established law. *Mihos,* 358 F.3d at 105 ("[A] defendant might prevail ... in a case alleging an intent-based constitutional tort, without need to inquire as to her motives, if ... the relevant law was not clearly established ....") (citing *Crawford-El,* 523 U.S. at 592-93, 118 S.Ct. 1584).

The opinion of the majority holds to the contrary. It

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397  
436 F.3d 397  
**(Cite as: 436 F.3d 397)**

Page 12

concludes that proof of a motive-based constitutional tort is itself sufficient to bar immunity, regardless of the clarity (or obscurity) of the violation under existing law. This position is summarized in a quote from the Court of Appeals for the Second Circuit, on which the majority relies: "[W]here ... specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." *Locurto v. Safir,* 264 F.3d 154, 169 (2d Cir.2001).

The flaw in this approach has been recognized by the Supreme Court: "[Proof of] unconstitutional motive [will not] automatically carry[ ] a plaintiff to trial ... [if there is] doubt as to the illegality of the defendant's particular conduct...." **\*410** *Crawford-El,* 523 U.S. at 592-93, 118 S.Ct. 1584. An official may possess an unconstitutional motivation and yet be reasonably unaware of a constitutional violation. For example, an official who engages in a series of retaliatory maneuvers designed to punish an individual for prior speech may violate the individual's civil rights-and indeed has acted with unconstitutional and malicious intent in doing so-but may not recognize the violation because governing law did not adequately explain that such maneuvers were so serious as to infringe on the individual's rights. *McKee v. Hart,* 2006 WL 27474, at \*5-7 (3d Cir. Jan.6, 2006).

Subjective intent may be considered in the immunity analysis when it forms an element of the constitutional violation, but, even in these cases, it must not be given dispositive weight. *Crawford-El,* 523 U.S. at 592-93, 118 S.Ct. 1584. The court must still determine whether a reasonable person in the same position would have recognized the infringement under "clearly established" law. *Id.*

2.

An infringement should be recognized by a reasonable person when it is fairly compelled by the facts of the case in light of relevant governing law. *See Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. Existing jurisprudence must offer an adequate explanation of the right at issue and its application in circumstances similar to those faced by the official, such that an objective observer could conclude, without substantial equivocation, that a constitutional deprivation has occurred. In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

The opinion of the majority defines the right at issue in this case too broadly. It states that a public official in Perkins-Auguste's position "must conform her conduct to the requirements of the First Amendment" and that "viewpoint-based restrictions violate the First Amendment." These platitudes bear no relationship to the particular circumstances of this case and do little to define the standard governing Perkins-Auguste's conduct. *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034 (cautioning against defining the applicable legal rules at too high a "level of generality," without consideration of the "particularized" circumstances of the case). The majority cites to no cases discussing whether and when a member of a legislative body may be removed from a public meeting.

This failure is understandable, given the dearth of precedent on the issue. Only one opinion of the Supreme Court has involved a claim of unconstitutional retaliation in the legislative context, *see Bond,* 385 U.S. at 135-37, 87 S.Ct. 339, and that case was resolved on other grounds, *see id.* at 137 & n. 14, 87 S.Ct. 339. Our own discussions on the subject have been cursory, *see Larsen v. Senate of Pa.,* 154 F.3d 82, 94-95 (3d Cir.1998), and have not provided a clear archetype for analysis, *see id.; see also Parker,* 646 F.2d at 853-54. Opinions from other courts have offered similarly limited explanations of the circumstances under which a legislative leader may be held liable for expelling a member, without addressing *Mt. Healthy* or issues of causation. *See, e.g., Velez,* 401 F.3d at 97-98; *Degrassi,* 207 F.3d at 645-46; *Miller,* 878 F.2d at 532-33.

The lack of guidance is attested further by the District Court's and the majority's misunderstanding of the nature of the right to free expression. Neither the opinions of the District Court nor that of the majority

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397 Page 13
436 F.3d 397
**(Cite as: 436 F.3d 397)**

acknowledges that an official may defeat a prima facie claim of a First *411 Amendment violation by proving that the same actions would have been taken absent the improper motive. This principle, clearly established by *Mt. Healthy* and *Crawford-El,* eluded the District Court and continues to elude my colleagues. A lay person could hardly be expected to understand the contours of this right when the matter has so confounded the federal judiciary.

Only one standard is plainly distillable from prior decisions, such that a reasonable person should have recognized it: a legislator may be disciplined or suspended from a public meeting if the action is reasonably consonant with the legitimate goals of the forum. *See, e.g., Bond,* 385 U.S. at 135-36, 87 S.Ct. 339; *Parker,* 646 F.2d at 853-55; *see also Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568. This principle is not bound to a nuanced understanding of the doctrinal basis of a First Amendment claim or application of *Mt. Healthy.* It is based, instead, on the common sense notion that the Constitution does not prohibit expulsion of an unruly member whose obstreperous conduct prevents fulfillment of legislative duties.

3.

I cannot conclude, on this backdrop, that a reasonable official in Perkins-Auguste's position should have realized that her conduct exceeded constitutional bounds. There is no doubt that Monteiro was being disruptive during the meeting and failed to comply with Perkins-Auguste's rulings. He had interrupted other members of the Council prior to Perkins-Auguste's speech and had been warned against such conduct. When Perkins-Auguste started speaking, Monteiro immediately interrupted once again. She ruled him out of order and threatened to remove him from the meeting. He nevertheless continued to speak. She asked the officers to remove him-not to arrest him-and yet he persisted. She agreed to his arrest only after it became evident that he would not leave voluntarily.

Monteiro's repeated disruptions rendered continuation of the meeting difficult, if not impossible. He prevented other members from concluding their remarks and effectively blocked a final vote on the budget proposal. His conduct was, in short, antithetical to the legitimate goals of the forum. A reasonable official in the same position as Perkins-Auguste could have concluded, under existing caselaw, that the decision to remove Monteiro was constitutionally justified, regardless of her actual underlying intent. *See, e.g., Bond,* 385 U.S. at 135-36, 87 S.Ct. 339; *Parker,* 646 F.2d at 853-54; *see also Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568. She is thus entitled to qualified immunity. *See Anderson,* 483 U.S. at 638-40, 107 S.Ct. 3034.

This conclusion does not cast doubt on the jury's verdict, or its findings that Perkins-Auguste was motivated by a desire to retaliate against Monteiro and that a constitutional violation did occur. That an official is granted qualified immunity does not mean that he or she acted laudably or even constitutionally. To the contrary, an official may act in a morally and legally culpable fashion and yet be entitled to immunity if an objective observer, in the same position, would not have recognized a constitutional infringement. *Crawford-El,* 523 U.S. at 592-93, 118 S.Ct. 1584; *Mihos,* 358 F.3d at 105; *see McKee,* 2006 WL 27474, at *5-7. This legal determination does not vitiate or excuse the constitutional violation. It simply acknowledges that an official will not be held statutorily liable, under 42 U.S.C. § 1983, for a constitutional infringement of which a reasonable person would not have been aware. [FN6] *See, *412 e.g., Crawford-El,* 523 U.S. at 592-93, 118 S.Ct. 1584; *Harlow,* 457 U.S. at 818-19, 102 S.Ct. 2727.

   FN6. The majority also suggests that Perkins-Auguste forfeited the defense of qualified immunity by failing to file an interlocutory appeal from the District Court's denial of qualified immunity on summary judgment. ("After the jury returns a verdict, judgment as a matter of law will be granted to the defendant only if that verdict is not based on sufficient evidence."). This proposition is somewhat novel, and does not find support in decisions from our circuit or others. *See*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 397  
436 F.3d 397  
**(Cite as: 436 F.3d 397)**

Page 14

*Chan v. Wodnicki,* 67 F.3d 137, 139 (7th Cir.1995) ("The trial has not made [the] claim of immunity moot, for while the immunity is from trial as well as from judgment, by the same token it is from judgment as well as from trial."); *Matherne v. Wilson,* 851 F.2d 752, 756-59 (5th Cir.1988) ( "There may be good reasons why a defendant may elect to not appeal [from the denial of qualified immunity] before trial, and we see little value in a rule of waiver that would force unwanted appeals, many of which undoubtedly never would have been necessary."); *see also Wilson v. City of Boston,* 421 F.3d 45, 53-54 (1st Cir.2005); *Sharrar v. Felsing,* 128 F.3d 810, 830-31 (3d Cir.1997). At the very least, it is an open question, and one that need not be resolved in this case, as the parties apparently agree that the issue of qualified immunity has not been waived.

II.

The mantle of qualified immunity will be denied to a public official only when a reasonable person in the same situation would have recognized a constitutional infringement. Perkins-Auguste's conduct, even if violative of Monteiro's civil rights, was not so patently unconstitutional under existing caselaw as to deny her immunity.

The majority concludes to the contrary. It does so based on a fundamental misinterpretation of the relationship of subjective intent to the First Amendment and the doctrine of qualified immunity. This error will, I fear, have unfortunate ramifications for our jurisprudence in these fields. I respectfully dissent.

C.A.3 (N.J.),2006.  
Monteiro v. City of Elizabeth  
436 F.3d 397

Briefs and Other Related Documents (Back to top)

• 04-3756 (Docket) (Sep. 23, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.