IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORPORAL B. KURT PRICE, et al., | : | |
| Plaintiffs, | : | |
| | : | C.A. No. 04-956-GMS |
| v. | : | |
| COLONEL L. AARON CHAFFINCH, et al., | : | |
| Defendants. | : | |

---

| | | |
|---|---|---|
| SERGEANT CHRISTOPHER FORAKER, | : | |
| Plaintiff, | : | |
| | : | C.A. No. 04-1207-GMS |
| v. | : | |
| COLONEL L. AARON CHAFFINCH, et al., | : | |
| Defendants. | : | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT
OF THEIR MOTION PURSUANT TO
*DAUBERT v. MERRELL DOW PHARMACEUTICALS, INC.***

Defendants submit this brief in support of their motion to exclude from trial the proposed testimony of Ernest "Bud" Fini. Fini is proffered as an expert on "hiring practices … in the U.S. firearms industry." In fact, he is a marketing and sales manager with no training in human resources and only anecdotal experience in hiring, and his testimony would not "assist the trier of fact to understand the evidence or to determine a fact in issue," as required by Rule 702 of the Federal Rules of Evidence.

I. **ARGUMENT: THE COURT SHOULD PRECLUDE THE TESTIMONY OF "EXPERT" BUD FINI ON HIRING PRACTICES IN THE FIREARMS INDUSTRY**

A. **Legal Standard**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that in determining whether a proferred expert satisfies the requirements of Rule 702, a trial court functions as a gatekeeper, making a "preliminary assessment of whether the reasoning or methodology

underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." *Id.* at 592-93.

In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999), the Supreme Court held that the *Daubert* analysis "applies to all expert testimony," including non-scientific testimony "based on 'technical' and 'other specialized' knowledge."

The objective of *Daubert* and *Kumho* is "to insure that evidence presented by expert witnesses is relevant, reliable, and helpful to the jury's evaluation of such evidence." *Elcock v. Kmart Corp.*, 233 F.3d 734, 744 (3d Cir. 2000). "*Daubert's* gatekeeping requirement ... make[s] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 746.

### B.    Fini Should Be Excluded From Testifying Because He Is Not Qualified To Testify About Hiring Practices In The Firearms Industry.

Rule 702 requires the proponent of an expert opinion to demonstrate that the proffered witness is qualified to give the expert opinions he intends to express. Generalized knowledge about a subject does not satisfy Rule 702.

Fini should not be permitted to offer his opinions about hiring and career progression in the firearms industry because he does not have specialized knowledge, experience, training, or education on the subject. He is, essentially, a retired gun salesman.

Fini's undergraduate degree is from Sacred Heart University with a major in marketing and a minor in advertising. He has earned credits toward an MBA in marketing. There is nothing in his curriculum vitae to suggest that he studied employment, recruiting, or any other aspect of human resources, the discipline employed by a large corporation to hire people.

Fini's employment history in sales and marketing jobs has not provided him with enough relevant practical experience to qualify him as an expert on hiring practices. He worked in sales and marketing jobs for Remington Arms Company for twenty years (from 1976 until 1996). He was not a recruiter or a human resources manager. He was not responsible for hiring anyone other than the employees who reported to him. When he left Remington, Fini opened his own one-man marketing and communications

firm. For the next five years, he held positions -- apparently as an independent consultant -- at three other gun companies. They were all *marketing* positions. He has no apparent experience preparing job descriptions, setting qualifications for applicants, preparing advertisements for open positions, evaluating resumes, or evaluating the background checks that he refers to in his opinion. Fini's experience in hiring individual employees who were to report to him once hired does not make him an expert on hiring practices any more than a lawyer becomes an expert on legal hiring after interviewing ten law students for summer positions at a law firm. Furthermore, Fini's hiring experience, which is primarily at one company, is not broad enough to support testimony about an entire industry. *Elcock v. Kmart Corp.*, 233 F.3d 734, 743 (3d Cir. 2000).

C.  **Fini Should Be Excluded From Testifying Because His Testimony Is Not Reliable.**

An expert's testimony must be reliable. That is, it must be based on an identifiable methodology, supported by an adequate factual basis, and objective. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 93d Cir. 2000). Fini's opinion is not reliable.

Fini's proferred testimony is essentially that

(1) he has met Chris Foraker and thinks he would be a "prime candidate for a position with a firearms manufacturer or industry related company;"

(2) he has read news accounts that quoted then-Colonel Aaron Chaffinch to the effect that Foraker did not maintain the firing range as he should have; and

(3) he thinks that gun companies seeking sales representatives and trainers would learn about the news articles and refuse to hire Foraker because of them.

Fini describes the "methodology" for the first part of his opinion as follows: "[b]ased on Chris Foraker's resume and my personal interaction with him, I assessed him to be a prime candidate for a position with a firearms' manufacturer or industry related company." (Fini Report at 3.) Fini says that Foraker could fit into sales and training jobs. Fini does not state his criteria for a "prime candidate," and he does not say why Foraker is suited for a sales position. Fini's former employer, Remington, states on the recruiting part of its corporate website that, in a sales representative, it "prefers" a candidate with "a

Bachelor's Degree and five or more years of direct selling experience." *See* Exh. A, attached. Foraker is not a "prime candidate" measured against these criteria.

As to his second point, Fini does not explain why Foraker's refusal to do building and equipment maintenance would have any effect on the willingness of a corporation to hire him as a sales representative or a trainer. He does not cite a single example of a candidate for employment who was rejected by a gun company for any reason, much less a reason comparable to Foraker's refusal to maintain the Delaware State Police firing range. Because he cites no evidentiary support, his work is not verifiable or repeatable. *Elcock*, 233 F.3d at 747-748.

Finally, Fini contends that the publication of news accounts in the *State News*, *The News Journal* and *American Police Beat* have harmed Foraker's opportunities. In his opinion, every law enforcement agency reads *Police Beat* and an employment background check would reveal to a potential employer not from Delaware the existence of the firing range controversy. His opinion is that the "excess baggage" of the news articles will cause "those charged with hiring" to eliminate Foraker from consideration. (Fini Report at 4.) No part of this chain of assumptions is supported by empirical evidence, scholarly research, generally accepted human resources analysis or even Fini's own experience. It is irrelevant to Fini's opinion about the firearms industry that police read *Police Beat*. There is no explanation as to how or why an employment background check will pick up a 2-year old controversy. There is no empirical support for the assertion that Foraker's involvement would disqualify him for a job, and there is no effort to support that conclusion with the experience of other persons rejected for firearms industry positions. There is no recitation of a human resources principle to support the predicted outcome. There is no recognition of the obvious principle that in a few years the effect of the allegedly libelous article will diminish. *Gannett Co. v. Kanaga*, 750 A.2d 1174, 1189 (Del. 2000). Because all these things are lacking, Fini's conclusion is un-testable, *i.e.*, not capable of analysis or reproduction. In *Elcock*, the Third Circuit criticized the expert's failure to explain how he excluded for other variables in reaching his opinion regarding the plaintiff's employability because it would not allow reproduction of his results. The Court opined that "[i]f such testing did not generate consistent results, [the expert's] method would

be exposed as unreliable because it is subjective and unreproducible." *Elcock*, 233 F.3d at 747-748. It is what the Third Circuit calls *ipse dixit*, inadmissible under *Daubert*, *Elcock v. Kmart Corp.*, 233 F.3d at 747; *Oddi*, 234 F.3d at 158.

## II. CONCLUSION

For the foregoing reasons Defendants respectfully request that this Court grant their motion and order that the proposed expert testimony of Ernest "Bud" Fini is excluded in its entirety.

Respectfully submitted,

Date: March 15, 2006

/s/ Noel C. Burnham
Noel C. Burnham (DE Bar # 3483)
Richard M. Donaldson (DE Bar I.D. #4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7840

*Counsel for Defendants L. Aaron Chaffinch, Thomas F. MacLeish, David B. Mitchell, and the Division of State Police, Department of Safety and Homeland Security, State of Delaware*