# THE NEUBERGER FIRM
ATTORNEYS AND COUNSELLORS AT LAW

TWO EAST SEVENTH STREET
SUITE 302
WILMINGTON, DELAWARE 19801-3707

WWW.NEUBERGERLAW.COM
EMAIL: INFO@NEUBERGERLAW.COM

THOMAS S. NEUBERGER, ESQUIRE                    PHONE: (302) 655-0582
STEPHEN J. NEUBERGER, ESQUIRE                   FAX: (302) 655-9329

March 16, 2006                                  <u>Via CM/ECF Filing</u>

The Honorable Gregory M. Sleet
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

RE:     <u>**Price, et al. v. Chaffinch, et al.,**</u> C.A. No. 04-956-GMS
        <u>**Foraker v. Chaffinch, et al.,**</u> C.A. No. 04-1207-GMS
        <u>**Citation of Supplemental Authority Pursuant to D.Del. L.R. 7.1.2(c)**</u>

Dear Judge Sleet:

     Pursuant to Local Rule 7.1.2(c), plaintiffs bring to the Court's attention supplemental legal authority issued by the Third Circuit which bears upon the pending summary judgment motions and which was "decided after [plaintiffs'] final brief" was filed on the relevant issue.

**<u>First Amendment Adverse Action</u>**

     On March 13, 2006, the Third Circuit issued its opinion in <u>O'Connor v. City of Newark</u>, – F.3d –, 2006 WL 590357 (3d Cir. 2006). This recent opinion bears directly upon the issue of the First Amendment adverse action standard that was extensively briefed by the parties at summary judgment.

     In <u>O'Connor</u>, the Third Circuit wrote that First Amendment retaliation claims are actionable, even when the retaliation itself is "relatively minor."  <u>Id.</u> at *2.  The Court continued and again emphasized and reaffirmed prior Third Circuit and Supreme Court case law holding that the "deter a person of ordinary firmness" standard is met even when an employer fails to hold a birthday party for a public employee when intending to punish that employee for the exercise of their free speech rights.  <u>Id.</u> (citing <u>Suppan v. Dadonna</u>, 203 F.3d 228, 234-35 (3d Cir. 2000) and <u>Rutan v. Republican Party</u>, 497 U.S. 62, 76 n.8 (1990)).  The Third Circuit emphasized that this "deterrence ... threshold is very low" and that a plaintiff has a cause of

action for "all but truly de minimis violations."  Id.

      Briefly, this holding supports the position taken by plaintiffs in summary judgment briefing, that defendants' long course of unprecedented harassment and retaliation against them is more than sufficient to meet and exceed the First Amendment adverse action standard.

Respectfully submitted,

/s/ Stephen J. Neuberger

Attorney for Plaintiff

cc:    Thomas S. Neuberger, Esq. (via CM/ECF)
        Martin D. Haverly, Esq. (via CM/ECF)
        Richard M. Donaldson (via CM/ECF)

FTU \ Letters \ Sleet.04

# Tab A



2006 WL 590357                                                                                                    Page 1
--- F.3d ----, 2006 WL 590357 (3rd Cir.(N.J.))
**(Cite as: 2006 WL 590357 (3rd Cir.(N.J.)))**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Third Circuit.
James D. O'CONNOR; Jeannette C. O'Connor, Appellants
v.
CITY OF NEWARK; City of Newark Police Department.
**No. 05-2237.**

Submitted Under Third Circuit LAR 34.1(a) Feb. 13, 2006.
March 13, 2006.

On Appeal from the United States District Court for the District of New Jersey, (D.C. No. 02-cv-04318), District Judge: Honorable Joseph A. Greenaway, Jr.

Charles J. Sciarra, Newark, NJ, for Appellants.

Susan S. Singer, Newark, NJ, for Appellee, City of Newark.

Before SCIRICA, Chief Judge, BARRY and FISHER, Circuit Judges.

OPINION OF THE COURT

FISHER, Circuit Judge.

**\*1** In this case we are asked to review the District Court's grant of summary judgment to Newark, New Jersey, and its police department, on several claims arising from alleged retaliation against a police officer based on his assistance with a federal corruption probe. We will affirm.

I.
James O'Connor was a lieutenant in the Newark Police Department. He provided information to investigators in a federal corruption probe targeting the former Newark police director William Celester. Celester was convicted of embezzlement, and O'Connor alleges that, because of his assistance in the investigation, he was subjected to retaliation on the job. [FN1]

> FN1. Specifically, O'Connor alleges that the department denied him a promotion, failed to expunge his disciplinary record, transferred him to a position under the command of a superior officer who was hostile to him, provided him with inadequate staff and resources, assigned him excessive work, changed his work schedule, filed unwarranted disciplinary complaints against him, failed to credit him with overtime, awarded him a medal but failed to invite his family to the ceremony, and failed to give sufficient commendations to his unit. O'Connor also alleges that he was subjected to threats and assaults by other officers.

O'Connor brought suit against the city and the department under 42 U.S.C. § 1983, charging that they had infringed his rights to substantive and procedural due process (Count I) and to free expression (Count II). He also alleged that the defendants violated his state-law whistleblower rights under N.J.S.A. 34:19-1 (Count III), engaged in a conspiracy in violation of 42 U.S.C. § 1985 (Count IV), failed to prevent that conspiracy in violation of 42 U.S.C. § 1986 (Count V),

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 590357                                                                                                Page 2
--- F.3d ----, 2006 WL 590357 (3rd Cir.(N.J.))
**(Cite as: 2006 WL 590357 (3rd Cir.(N.J.)))**

libeled and defamed him (Count VI), [FN2] and violated a settlement agreement stemming from an earlier lawsuit (Count VIII). Finally, along with his wife, O'Connor brought a claim for loss of consortium (Count VII).

> FN2. The District Court's order notes that the defamation count, Count VI, was dismissed orally pursuant to Newark's motion for summary judgment. O'Connor does not raise that count on appeal, so we do not address it here.

The District Court determined that O'Connor had failed to present evidence supporting a causal connection between his participation in the investigation and the alleged retaliatory acts, and granted Newark's motion for summary judgment on all counts. We have jurisdiction over this appeal under 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. Bieregu v. Reno, 59 F.3d 1445, 1449 (3d Cir.1995). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

II.

Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued. Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir.1989). For section 1983 actions in New Jersey, "that statute is N.J.S.A. 2A:14-2, which provides that an action for injury to the person caused by wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action." Brown v. Foley, 810 F.2d 55, 56 (3d Cir.1987). The limitations period for O'Connor's claims is therefore two years.

With minor exceptions, all of the events described in O'Connor's complaint occurred more than two years before filing. O'Connor argues, however, that the statute of limitations should be deemed equitably tolled because his complaint states a hostile workplace environment claim involving a "continuing violation." O'Connor's argument hinges on his hostile workplace environment theory, and requires aggregation of acts occurring outside the limitations period with those occurring inside the period. He does not contend that there are any acts occurring inside the period which, considered in themselves, are sufficient to support liability. Nor has our independent examination of the record revealed any such acts. Because the events that occurred within two years of filing are not, on their own, sufficient to support liability, the dispositive issue before us is whether claims of the sort raised by O'Connor may survive time-barring by inclusion in a continuing violations complaint.

**\*2** This issue was resolved by the Supreme Court in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002). *Morgan* established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. The former must be raised within the applicable limitations period or they will not support a lawsuit. *Id.* at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act."). The latter can occur at any time so

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 590357                                                                                                                 Page 3
--- F.3d ----, 2006 WL 590357 (3rd Cir.(N.J.))
**(Cite as: 2006 WL 590357 (3rd Cir.(N.J.)))**

long as they are linked in a pattern of actions which continues into the applicable limitations period. *Id.* at 105 ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period.").

*Morgan* provides fairly precise guidance as to what sorts of acts are "discrete." The Court first observes that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," *id.* at 114, then lists the discrete acts in the case before it: "Morgan contends that he was wrongfully suspended ... charged with a violation of [a workplace rule], denied training, and falsely accused of threatening a manager." *Id.* (emphasis added).

We can thus take from *Morgan* the following non-exhaustive list of discrete acts for which the limitations period runs from the act: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation.

Applying the *Morgan* distinction to O'Connor's allegations listed above, *supra* note 1, it is apparent that nearly all of them fall into the category of discrete acts. Accordingly, under *Morgan,* they cannot be aggregated under a continuing violations theory.

Furthermore, the *Morgan* rule that individually actionable allegations cannot be aggregated is of particular import in the context of First Amendment retaliation claims. First Amendment retaliation claims are always individually actionable, even when relatively minor. Even "an act of retaliation as trivial as failing to hold a birthday party for a public employee," if "intended to punish her for exercising her free speech rights," may be actionable if under the circumstances it would be sufficient to "deter a person of ordinary firmness" from exercising his or her First Amendment rights. Suppan v. Dadonna, 203 F.3d 228, 234-35 (3d Cir.2000) (citing Rutan v. Republican Party, 497 U.S. 62, 76 n.8 (1990)). A First Amendment retaliation claim will lie for any individual act which meets this "deterrence threshold," and that threshold is very low: as we said in *Suppan,* a cause of action is supplied by all but truly de minimis violations. *Id.*

**\*3** In sum, if *Morgan* applies to this case, then O'Connor's claims are time-barred. [FN3] O'Connor argues that because *Morgan* was a Title VII case, it should not be read to govern claims arising under other provisions of federal law. We must therefore decide whether to join several of our sister circuits in applying *Morgan* to section 1983 cases not brought under Title VII. [FN4]

> FN3. If *Morgan* does not apply, then some or all of O'Connor's claims might still be time-barred, but we would not have recourse to *Morgan*'s bright-line categorical distinction in making that determination.
>
> FN4. It does not appear that we have yet stated expressly in a published opinion that the *Morgan* distinction applies in non-Title VII suits involving adverse employment actions. However, we have applied it, in unpublished decisions, to ADA actions. *See Zdziech v. DaimlerChrysler Corp.,* 114 Fed. Appx. 469, 471 (3d Cir.2004);

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 590357  
--- F.3d ----, 2006 WL 590357 (3rd Cir.(N.J.))  
**(Cite as: 2006 WL 590357 (3rd Cir.(N.J.)))**

Page 4

Shenkan v. Potter, 71 Fed. Appx. 893, 895 (3d Cir.2003).

### III.

We find persuasive the reasoning of our sister circuits that the distinction between "continuing violations" and "discrete acts" is not an artifact of Title VII, but is rather a generic feature of federal employment law. Thus, in whatever statutory context the distinction may arise, *Morgan* will control. So far, the Courts of Appeals for the Sixth, Seventh, and Ninth Circuits have applied *Morgan* to § 1983 cases. *See Sharpe v. Cureton,* 319 F.3d 259, 267 (6th Cir.2003); *Hildebrandt v. Ill. Dep't of Natural Res.,* 347 F.3d 1014, 1036 (7th Cir.2003); *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1061 (9th Cir.2002). The Sixth Circuit explained that it could "find no principled basis upon which to restrict *Morgan* to Title VII claims." [FN5]

> FN5. Several district courts have also recently applied *Morgan* to section 1983 cases. *See, e.g., Ruiz Casillas v. Camacho Morales,* No. 02-2640, 2004 U.S. Dist. LEXIS 28135, at *15 (D.P.R.2004) ("[T]he continuing violation theory, which originated from Title VII Civil Rights cases, has been widely applied to Section 1983 cases within this Circuit."); *Turner v. District of Columbia,* 383 F.Supp.2d 157, 168 (D.D.C.2005) ("The same analysis should be applied to discrimination claims brought under § 1983.").

We agree. The principles at work in *Morgan* apply with equal force to § 1983 claims. *Morgan* held simply that causes of action that can be brought individually expire with the applicable limitations period. By contrast, the "hostile workplace environment" theory is designed explicitly to address situations in which the plaintiff's claim is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant. In such cases, obviously the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement. *Morgan,* 536 U.S. at 117-18. The Court did nothing more than to restate, in the employment discrimination context, the common-sense proposition that an applicable statute of limitations begins to run at the time the claim accrues, and that time-barred claims cannot be resurrected by being aggregated and labeled continuing violations. [FN6]

> FN6. We deem it worthy of note that while the *Morgan* Court split 5-4 on other issues, it was unanimous on this point. *See Morgan,* 536 U.S. at 123 (O'Connor, J., concurring in part and dissenting in part, joined in relevant part by Rehnquist, C.J., and Scalia, Kennedy and Breyer, J.J.) ("I agree that Title VII suits based on discrete discriminatory acts are time barred when the plaintiff fails to file ... within the [limitations period] designated in the statute."). Indeed, the dissenters would have gone even further than the majority and held that cumulative hostile-workplace-environment suits were time-barred as well. *Id.* ("I dissent from the remainder of the Court's opinion, however, because I believe a similar restriction applies to all types of Title VII suits, including those based on a claim that a plaintiff has been subjected to a hostile work environment."). Thus there is not a single vote on the Court for the proposition that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 590357
--- F.3d ----, 2006 WL 590357 (3rd Cir.(N.J.))
**(Cite as: 2006 WL 590357 (3rd Cir.(N.J.)))**

Page 5

individually actionable discrete acts may support suit outside the limitations period if they are aggregated and labeled as a hostile environment claim.

If the allegations in O'Connor's complaint are discrete, then each gave rise to a cause of action at the time it occurred. That cause of action persisted for two years and then lapsed. O'Connor claims that the department engaged in severe retaliation against him to punish him for the exercise of his First Amendment rights. Under *Morgan,* the law required him to sue within two years of the occurrence of these incidents. He did not sue in time, and he is now barred from doing so. Accordingly, we will affirm the District Court's order with respect to Counts I, II, IV, and V. [FN7]

> FN7. Counts IV and V allege violations of 42 U.S.C. §§ 1985 and 1986. These sections cover, respectively, conspiracies to violate federal rights, and failures to prevent such violations by those with the relevant knowledge and power to do so. *Morgan* applies to these sections just as it does to section 1983.

IV.

With respect to Count VIII, the alleged violation of a prior settlement agreement between the parties, we can find no hint in the record of any agreement to expunge O'Connor's disciplinary record. The documents before us are a February 5, 1997 resolution of the Newark City Council authorizing payment to O'Connor of $500,000 to settle a lawsuit, and a subsequent exchange of letters between O'Connor's attorney and an attorney for the city. Examination of these documents reveals no basis for O'Connor's claim.

**\*4** The City Council resolution memorializes the agreement between O'Connor and the city that the $500,000 payment is made in consideration of O'Connor's "agree[ment] to amicably resolve and compromise [his] claims." The resolution contains no mention of O'Connor's disciplinary record.

O'Connor claims that the letters are evidence of an unrecorded "verbal term of the settlement agreement" that specified that his record would be expunged. The letters show no such thing. The first letter is a request by O'Connor's attorney to have O'Connor's record expunged, but neither that letter nor the city's response gives any indication that either side connected that request to the settlement agreement. O'Connor's attorney wrote to the city on February 26, 1997, three weeks after the city council resolution authorizing the settlement payment. In the letter, he states that O'Connor is "concerned" about his disciplinary file and suggests that "per administrative decision of the Attorney General's offices, officers in the [sic] O'Connor's positions [sic] are authorized to have their respective files purged of all such improper charges. Obviously such action can only be taken at the direction of the Police Director in accordance with established procedures."

This letter, written by O'Connor's attorney only three weeks after the council resolution was passed, seeks expungement based on an administrative decision of the Attorney General, not the settlement agreement. The letter does not even mention the settlement agreement; still less does it anywhere suggest that the agreement requires purging the files. Indeed, it states explicitly that "my clients recognize that this is the province of the Director in conjunction with Internal Affairs procedures." We think it not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 590357
--- F.3d ----, 2006 WL 590357 (3rd Cir.(N.J.))
**(Cite as: 2006 WL 590357 (3rd Cir.(N.J.)))**

Page 6

unreasonable to expect that, if O'Connor had an agreement with the city to have his files purged, his attorney would have mentioned it.

We will therefore affirm dismissal of Count VIII.

## V.

O'Connor's state-law claim in Count III arises under the New Jersey Conscientious Employee Protection Act ("CEPA"), and thus presents a somewhat different question from the federal claims. The underlying facts supporting Count III are the same as with the other claims, but the source of the right is state rather than federal law. It is therefore not self-evident that the distinction between discrete acts and aggregable acts, and the limits on the availability of the continuing violations exception, will be the same for CEPA claims as for federal claims.

The New Jersey Supreme Court considered the application of *Morgan* to state law in *Shepherd v. Hunterdon Developmental Ctr.,* 803 A.2d 611 (N.J.2002). The court noted that while in general federal and New Jersey law "mirror" one another in the area of employment discrimination, federal law is "merely a guide."
> Preliminarily, we must determine whether to apply *Morgan*'s analytical framework when evaluating a state cause of action under the LAD [the "Law Against Discrimination"]. We have noted previously that in resolving disputes under our State employment-law jurisprudence, federal case law is merely a guide. *See Alderiso v. Med. Ctr. of Ocean County, Inc.,* 167 N.J. 191, 201, 770 A.2d 275 (2001) (rejecting federal case law in determining accrual of wrongful discharge claim under New Jersey's Conscientious Employee Protection Act). That said, we consider *Morgan*'s formulation of the continuing violation doctrine to be similar to the one advanced in *Wilson.* There also is a benefit in having our State jurisprudence mirror the approach taken in *Morgan* to avoid further confusion in an already complicated area of law. We thus will apply *Morgan*'s analytical framework to the present action.
> **\*5** *Shepherd,* 803 A.2d at 623. More recently, the court has noted that "[t]he policy concerns underpinning the determination in *Shepherd* in respect of LAD claims require the application of the *Morgan/Shepherd* framework in CEPA actions." *Green v. Jersey City Bd. of Educ.,* 828 A.2d 883, 891 (N.J.2003).

We read these cases as holding that while federal and state discrimination law are not always coextensive, they overlap with respect to *"Morgan*'s formulation of the continuing violation doctrine." Because that doctrine controls this case, it appears to us that "application of the *Morgan/Shepherd* framework" requires, as a matter of state law, that O'Connor's CEPA claim be dismissed. Accordingly, we will affirm the dismissal of that claim as well. [FN8]

> FN8. We will affirm the dismissal of Count VII, loss of consortium, insofar as it was derivative of some independent predicate claim, of which there remain none.

## VI.

For the foregoing reasons, the order of the District Court will be affirmed.

2008654667

2008654667

--- F.3d ----, 2006 WL 590357 (3rd Cir.(N.J.))

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.