# THE NEUBERGER FIRM
## ATTORNEYS AND COUNSELLORS AT LAW

TWO EAST SEVENTH STREET
SUITE 302
WILMINGTON, DELAWARE 19801-3707

WWW.NEUBERGERLAW.COM
EMAIL: INFO@NEUBERGERLAW.COM

THOMAS S. NEUBERGER, ESQUIRE
STEPHEN J. NEUBERGER, ESQUIRE

PHONE: (302) 655-0582
FAX: (302) 655-9329

March 31, 2006                                          **Via CM/ECF Filing**

The Honorable Gregory M. Sleet
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

RE:      **Price, et al. v. Chaffinch, et al.,** C.A. No. 04-956-GMS
         **Revisions to the Joint Proposed Pretrial Order**

Dear Judge Sleet:

    The parties have continued to work diligently to complete the Joint Proposed Pretrial Order for the Court. To ensure the Court has the final documents, plaintiffs submit several revised schedules of the Pretrial Order in accord with the instructions given by your staff. Defendants are being served with the revised documents via CM/ECF by the filing of this letter with its accompanying attachments.

    Enclosed please find plaintiffs' instructions for the supplementation and amendment of the Pretrial Orders as filed.

1.    Substitute the Final Pretrial Order with the revised Final Pretrial Order as attached.

2.    Substitute Schedule (c)(1) Plaintiffs' Exhibits with the revised Schedule (c)(1) Plaintiffs' Exhibits as attached.

3.    Substitute Schedule (c)(2) Plaintiffs' Demonstrative Exhibits with the revised Schedule (c)(2) Plaintiffs' Demonstrative Exhibits as attached.

4.    Substitute Schedule (e) Plaintiffs' Expert Witnesses with the revised Schedule (e) Plaintiffs' Expert Witnesses as attached.

5.      Substitute Schedule (i)(ii) - Preliminary Jury Instructions with the revised Preliminary Jury Instructions as attached.

6.      Substitute Schedule (l) Discovery Statement with the revised Schedule (l) Discovery Statement as attached.

        If the Court wishes, my office is available and would be more than happy to "swap out" the old schedules with the revised ones, so that your staff need not be burdened with the task.  My staff informs me that this is how the Court previously addressed pretrial order revisions.


Respectfully submitted,

/s/ Stephen J. Neuberger

Attorney for Plaintiffs


cc:     Thomas S. Neuberger, Esq. (via CM/ECF)
        Martin D. Haverly, Esq. (via CM/ECF)
        Richard M. Donaldson (via CM/ECF)

FTU \ Letters \ Sleet.05

# Attachments

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **CORPORAL B. KURT PRICE;** | : | |
| **CORPORAL WAYNE WARREN; and** | : | |
| **SERGEANT CHRISTOPHER D. FORAKER,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **C.A. No. 04-956-GMS** |
| | : | |
| **COLONEL L. AARON CHAFFINCH,** | : | |
| **individually and in his official capacity as** | : | |
| **Superintendent of the Delaware State Police;** | : | |
| **LIEUTENANT COLONEL THOMAS F.** | : | |
| **MACLEISH, individually and in his official** | : | |
| **capacity as Deputy Superintendent of the** | : | |
| **Delaware State Police; DAVID B. MITCHELL,** | : | |
| **in his official capacity as the Secretary of the** | : | |
| **Department of Safety and Homeland Security of** | : | |
| **the State of Delaware; and DIVISION OF** | : | |
| **STATE POLICE, DEPARTMENT OF SAFETY** | : | |
| **AND HOMELAND SECURITY, STATE OF** | : | |
| **DELAWARE,** | : | |
| | : | |
| **Defendants.** | : | |

**<u>FINAL PRETRIAL ORDER</u>**

This matter having come before the court at a pretrial conference held pursuant to

Fed.R.Civ.P. ("Rule") 16, Thomas S. Neuberger, Esquire and Stephen J. Neuberger, Esquire, 2

East Seventh Street, Suite 302, Wilmington, DE 19801, tel. 302.655.0582, and Martin D.

Haverly, Esquire, 2 East Seventh Street, Suite 201, Wilmington, DE 19801, tel. 302.654.2255,

having appeared as counsel for plaintiffs and Edward T. Ellis, Esquire and Robert Fitzgerald,

Esquire, 123 South Broad Street, Philadelphia, PA 19109, tel. 215.772.1500, Richard M.

Donaldson, Esquire and Noel C. Burnham, Esquire, 300 Delaware Ave., Suite 750, Wilmington,

DE 19801, tel. 302.504.7840, having appeared as counsel for defendants, the following actions were taken:

1.    This is a civil action for compensatory and punitive damages and injunctive relief for retaliatory violations of the Speech and Petition Clauses of the First Amendment.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202, and the Fourteenth Amendment to the U.S. Constitution. The cause of action arises under 42 U.S.C. § 1983. The claims arose in this judicial district. Jurisdiction is not disputed.

2.    The following stipulations and statements were submitted and are attached to and made a part of this Order.

(a)    a comprehensive stipulation or statement of all uncontested facts, which will become a part of the evidentiary record in the case (and which, in a jury trial, may be read to the jury by the court or any party);

(b)    an agreed statement or statements by each party of the contested issues of fact and law and a statement or statements of contested issues of fact or law not agreed to;

(c)    except for rebuttal exhibits, schedules in the form set out in the attached Schedule C of;

(1)    all exhibits (all exhibits shall be marked for identification before trial), including documents, summaries, charts and other items expected to be offered in evidence and

(2)    any demonstrative evidence and experiments to be offered during trial;

(d)    a list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the list;

(e) stipulations or statements setting forth the qualifications of each expert witness in such form that the statement can be read to the jury at the time the expert witness takes the stand;

(f) a list of all depositions, or portions thereof, to be read into evidence and statements of any objections thereto;

(g) an itemized statement of special damages;

(h) waivers of any claims or defenses that have been abandoned by any party;

(I) for a jury trial, each party shall provide the following:

    (1) trial briefs except as otherwise ordered by the Court;

    (2) three sets of marked proposed jury instructions, verdict forms, and special interrogatories, if any; and

    (3) a list of questions the party requests the Court to ask prospective jurors in accordance with Fed. R. Civ. P. 47(a) and D. Del. LR 47.1(a);

(j) for a non-jury trial, each party shall provide proposed *Findings of Fact and Conclusions of Law* in duplicate;

(k) a statement summarizing the history and status of settlement negotiations, indicating whether further negotiations are ongoing and likely to be productive;

(l) a statement that each party has completed discovery, including the depositions of expert witnesses (unless the Court has previously ordered otherwise). Absent good cause shown, no further discovery shall be permitted; and

(m) all motions *in limine*: briefing on all such motions shall be completed by the date for the filing of this Pretrial Order. No party shall file more than ten motions without the prior approval of the court. The party seeking relief shall file a motion and opening brief of up to five (5) pages. The responding party shall file an answering brief of up to five (5) pages and the moving party shall then, if necessary, file a reply of up to three (3) pages. The following motions *in limine* are attached:

(1)    Plaintiffs' Motion to Limit the Cross Examination of Captain Glenn Dixon

(2)    Plaintiffs' Motion in Limine to Preclude Expert Testimony of Brian P. Sullivan

(3)    Defendants' Motion Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*

(4)    Defendants' Motion in Limine to Limit Testimony of David L. Baylor

<u>Defendants Statement:</u>
Defendants mistakenly believed that motions in limine were due on March 21, 2006.  Defendants now understand that the Court's form Final Pretrial Order contemplates that such preliminary motions were to filed and served in such time as to allow all briefing to be submitted with the parties' proposed Final Pretrial Order.  Defendants acknowledge that, with respect to the above motions, they have failed to adhere to that expectation.  They regret the mistake, which was not in any way intended to prejudice Plaintiffs are delay the trial of this case, and request that the Court consider the merits of the motions.

<u>Plaintiffs' Statement:</u>
The Court's Rule 16 procedures are very clear.  All motions in limine were due on February 28, 2006.  As the Court contemplates in its Rule 16 Scheduling Order, such a date allows all motion in limine briefing to be completed and submitted by the time the pretrial order is due.  Plaintiffs planned their trial and pretrial schedules around the dates set forth by the Court in its Order more than one year ago.  Plaintiffs carved out attorney time to respond to defendants' motions in limine in early March.  None were filed and plaintiffs proceeded under that assumption.  It is important to note that defendants did not miscalculate by a day or two.  Instead, they miscalculated by nearly a month.  Now, due to scheduling conflicts relating to pending trials, pretrials and legal obligations in this and several other cases, plaintiffs have been prejudiced by defendants' belated submissions and no longer have sufficient time to respond to the issues raised by defendants.  Plaintiffs will be filing a motion to strike defendants' untimely motions in limine in the near future.

3.    Trial of this case is expected to take six (6) days per the original scheduling order.  Plaintiffs and Defendants believe this is inadequate time.

4.    *[Indicate the type of trial by placing an X in the appropriate box]*

Jury <u> X </u>         Non-jury <u>_____</u>

5.      The parties recommend that eight jurors be selected at the commencement of the

trial.

6.      This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

7.      Possibility of settlement of this case was considered by the parties.

8.      <u>Miscellaneous</u>:

<u>Plaintiffs' Statement</u>: On March 1st, as part of their continuing investigation, plaintiffs learned of another hearing comparator Trooper - now retired Lt. Kenneth E. Thompson.

Lt. Thompson wore hearing aids in his ears for many years and his hearing problems were medically documented by the DSP, yet no action was ever taken against him and he was not forced into premature retirement.  Instead, he retired in the normal course in 1998.  This comparator is relevant to plaintiffs' claims pertaining to the DSP's long time historic policy and practice of always accommodating and taking care of Troopers whose hearing has been damaged on the job.

Two days later on March 3rd, plaintiffs promptly notified defendants of this newly discovered comparator, stated their intention to interview him and add him as a trial witness, and requested that defendants produce his medical/personnel file for review. In response, defendants have refused to produce Lt. Thompson's file for inspection and take the position that Lt. Thompson is irrelevant to plaintiffs' claims.

Plaintiffs respectfully requests that defendants be required to produce Lt. Thompson's medical/personnel file.

*Defendants' Response:*  After eighteen months of pre-litigation investigation and discovery and two months after the close of the discovery period, Plaintiffs requested the confidential personnel and medical files of another Delaware State trooper whom they contend was similarly situated.  Lt. Thompson retired from the DSP with a service

pension after reaching the mandatory retirement age of 55.  Unlike Plaintiffs Price and

Warren, he was never deemed unfit for duty for any reason.  In short, Lt. Thompson,

however, is not similar to Plaintiffs.

More importantly, Plaintiffs have not alleged, much less offered any

evidence, that Defendants knew about or considered Lt. Thompson when determining

how DSP injury and leave policies applied to Plaintiffs' circumstances.  Accordingly, his

experience and treatment is not relevant to Plaintiffs' action.


_____
United States District Judge

Date: _____



**THE NEUBERGER FIRM, P.A.**


_____
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com



**MARTIN D. HAVERLY, ATTORNEY AT LAW**


_____
**MARTIN D. HAVERLY, ESQ. (#3295)**
Two East Seventh Street, Suite 201
Wilmington, DE 19801
(302) 654-2255
Martin@HaverlyLaw.com

Attorneys for Plaintiffs

**MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**

_____

**EDWARD T. ELLIS, ESQ. (_admitted pro hac vice_)**
**ROBERT FITZGERALD, ESQ. (_admitted pro hac vice_)**
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500


_____

**NOEL C. BURNHAM, ESQ. (#3483)**
**RICHARD M. DONADLSON, ESQ. (#4367)**
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7840

Attorneys for Defendants

Draft.03

**Schedule (c)(1)**
**Plaintiffs' Exhibits**

 2.  The following exhibits were offered by Plaintiffs and marked for identification.  Defendants objected to their receipt in evidence on the grounds stated.

 [State identification number and brief description of each exhibit.  Also state briefly the ground of your objection, such as competency, relevancy or materially, and the Fed.R.Evid. relied upon.]

| Plaintiffs' Exhibit No. | Description | Defendants' Basis for Objection | Plaintiffs' Response to Objection |
|---|---|---|---|
| P1 | Letter from MacLeish revoking Cpl. Price's official police powers, dated 6/25/03 [corrected to 2004] (D's Combined Appendix, A685-6) | Defendants object to Plaintiffs' wrong and argumentative description of the exhibit. Defendants do not object to the document. | So it is admitted. |
| P2 | Letter from MacLeish revoking Cpl. Warren's official police powers, dated 6/25/03 [corrected to 2004] (D's Combined Appendix, A758-9) | Defendants object to Plaintiffs' wrong and argumentative description of the exhibit. Defendants do not object to the document. | So it is admitted. |
| P3 | [removed] | | |
| P4 | [removed] | | |

| P5 | Fed. R. Evid. 1006 Summary Analysis of Disparate Treatment Documents (A3618-54)<br><br>* in the following documents the section entitled "Deposition Testimony" is excluded. | Fed. R. Evid. 403 & 1006; Defendants object to the "Summary Analysis" as inaccurate and misleading. It is simply not a faithful extraction of data from voluminous records. It will invite a mini-trial over its accuracy. | FRE 1006 (summary) / FRE 403:<br>- This exhibit fairly summarizes the contents of voluminous documents which cannot be conveniently examined in court. Accordingly, it is proper under Rule 1006. |
| --- | --- | --- | --- |
| P6 | Emails between Sgt. Foraker, Lt. Col. MacLeish, and Capt. Greg Warren regarding Emergency Range Issues, originating on 12/19/03 (FTU3881-2; MacLeish ex. 11, A226-27) | No objection. | So it is admitted. |
| P7 | Emails between Sgt. Foraker, Lt. Ralph Davis, and Capt. Greg Warren regarding Standard Operating Procedures & Issues, originating on 1/8/04 (FTU2348-49; MacLeish ex. 12, A228-29) | No objection. | So it is admitted. |

| P8 | Email from Sgt. Foraker to Capt. Greg Warren and Lt. Ralph Davis regarding Range Health Issues and Departmental Liability, dated 1/9/04 (FTU2351-52; MacLeish ex. 13, A230-31) | No objection. | So it is admitted. |
|---|---|---|---|
| P9 | Emails between Capt. Greg Warren and Sgt. Foraker regarding Bullet Trap Update / Air Handler, originating on 1/23/04 (FTU3886; MacLeish ex. 14, A232) | No objection. | So it is admitted. |
| P10 | Email from Sgt. Forker to Maj. Eckrich regarding Scheduled Meetings and the FTU staff's tour of the FBI Firearms Training Facility in Quantico, VA, dated 2/19/04 (FTU3894; MacLeish ex. 15, A233) | No objection. | So it is admitted. |
| P11 | Other Emails sent up the chain of command to be designated. | Defendants reserve their objections until Plaintiffs identify the documents. | The documents have subsequently been identified and produced. |
| P12 | Signed Attendance Sheet for May 12, 2004 State Auditors Meeting (FTU2725) | No objection. | So it is admitted. |
| P13 | Sgt. Foraker's statement submitted to the State Auditors, dated May 12, 2004 (FTU2729-34) | No objection. | So it is admitted. |

| P14 | Cpl. Warren's statement submitted to the State Auditors, dated May 11, 2004 (FTU2735-44) | No objection. | So it is admitted. |
|---|---|---|---|
| P15 | Cpl. Price's statement submitted to the State Auditors, dated May 12, 2004 (FTU2745-47) | No objection. | So it is admitted. |
| P16 | Documents given to State Auditors regarding toxic health affects of lead, copper and arsenic (A2854-76) | Fed. R. Evid. 401, 402, 403, 801 & 802 Not every document produced to the State Auditor is admissible to prove protected speech. Only the speech that came to the attention of Defendants could possibly be relevant as speech that led to retaliation. To the extent this exhibit tends to prove toxic health effects of heavy metals, it is both hearsay and expert-type testimony without an expert. If it is not intended to prove toxic health effects, it is irrelevant because Plaintiffs' motives are not at issue in the case. | FRE 401, 402 (relevance):<br>- This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. As a result, every part of plaintiff's protected speech and petition is in fact admissible. This is one such document.<br>- This exhibit also tends to prove the toxic health effects of the heavy metals plaintiffs were being exposed to at the FTU.<br>- This document also tends to prove that plaintiffs were acting in good faith when they spoke to the Auditor. They investigated the health hazards, came across these documents, grew concerned and spoke out. This is an effect on the listener relevance.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 801, 802 (non-hearsay purpose):<br>- This exhibit is not being offered for the truth of the matter asserted. Instead it is being offered to demonstrate the effect on the listener – plaintiffs. These documents were part of the investigation plaintiffs conducted into the adverse health effects of the heavy metals they were being exposed to at the hazardous FTU. They help explain plaintiffs' reasoning and motives for speaking out – they believed that they and others were being poisoned. |

| P17 | Delaware State News article of 5/14/04 - "Shots traded over range" (FTU2901-5; MacLeish ex. 17, A2697-701) | Fed. R. Evid. 401, 402, 403, 801 & 802 The exhibit is not relevant to establish any material fact. That Defendants knew that Plaintiffs spoke to the Auditors has never been a disputed issue in the case. The news articles are unnecessarily inflammatory. | FRE 401, 402 (relevance): - This front page newspaper story about plaintiffs' speech to the auditors tends to prove that defendants had knowledge of plaintiffs' speech to the auditors.<br><br>- This is relevant to defendants' motivation to retaliate against plaintiff. The problems at the FTU were receiving widespread media attention and defendants testified at their depositions that they did not like the plethora of adverse media attention they were receiving. This exhibit helps demonstrate defendants' motive for wanting to silence the plaintiff whistleblower. It also demonstrates the public concern in the subject matter of plaintiff's speech.<br><br>- This also is relevant to the public concern in plaintiffs' speech. It attracted widespread media attention.<br><br>FRE 403: - Review of the articles reveals that they are not inflammatory..<br><br>FRE 801, 802 (non-hearsay purpose): - This exhibit is not being offered for the truth of the matter asserted. Instead it is being offered to demonstrate defendants' knowledge of plaintiffs' speech to the auditors. |
| P18 | The News Journal article of 5/13/04 - "Troopers discuss firing range" (FTU2897; MacLeish ex. 17, A2702) | Fed. R. Evid. 401, 402, 403, 801 & 802 See Defendants' Objections to P17. | See response to P17 above. |

| P19 | DSP Annual Performance Appraisal of Christopher D. Foraker, dated 12/1/03 - 9/3/04 (CF1-13; A834-42) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802<br><br>Defendants have not attacked Plaintiff's performance as NCOIC of the FTU. (He is not a Section Chief.) They have contended – and Plaintiff has admitted – that he did not perform basic maintenance required to keep the bullet trap running. The exhibit does not address the bullet trap problem; accordingly, it is irrelevant. The exhibit also invites litigation of side issues because it was prepared by Foraker supporter and fellow litigant, Ralph Davis, and in part parrots the position taken by Plaintiff's attorneys in their briefs. | FRE 401, 402 (relevance): <br>- Defendants are attacking Sgt. Foraker's performance as Section Chief of the FTU. These documents tend to prove that his performance during this same time frame was exceptional. No mention is made of any negligence or performance deficiencies.<br>   The entire defense position in this case (as well as Chaffinch's public retaliatory attacks on Sgt. Foraker have attacked his performance at the FTU. This exhibit clearly rebuts the defense attacks.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.<br>- to the extent defendants claim that this exhibit 'parrots' the position taken in plaintiff's briefs, this performance evaluation was prepared several years before the briefs were even written. Instead, it would be fair to say that plaintiff's briefs 'parrot' the position taken by Sgt. Foraker's Supervisor who found that his performance was outstanding and he did not have any performance deficiencies whatsoever during the time period defendants claim Plaintiff's performance was deficient.<br><br>FRE 404 (non-propensity purpose):<br>- This evidence is being offered to show that defendants are lying when they claim that Sgt. Foraker's performance was negligent or deficient during the relevant time period. These are his performance evaluations made during that same time period and no mention is made of any such negligence or deficiencies.<br><br>FRE 801,802<br>- FRE 803(6) (hearsay exception - business record): This is plaintiff's performance evaluation made in the course of regularly conducted activities of the DSP.<br>- FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agents concerning plaintiff's job performance during the relevant time period. |

| P20 | DSP Annual Performance Appraisal of Christopher D. Foraker, dated 12/1/03 - 9/3/04, signed by Randall L. Hughes (A2650-61) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802 <u>See</u> Defendants' Objections to P19. | See response to P19 above.<br><br>Plaintiffs note that this portion of plaintiff's performance evaluation was signed by Major Hughes, a high ranking officer on defendants' Executive Staff who is close friends with defendant Chaffinch.<br><br>To the extent defendants seek to attack Capt. Davis' credibility since he once sued defendant Chaffinch, defendants can offer no such attack on the credibility of Chaffinch's own friend who signed this evaluation. |
| P21 | Limited Addendum to DSP Annual Performance Appraisal of Christopher D. Foraker, dated 10/1/03 - 9/30/04 (A2642-49) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802 <u>See</u> Defendants' Objections to P19. | See response to P19 above.<br><br>Plaintiffs note that this portion of plaintiff's performance evaluation was signed by Capt. (now Major) Homiak, a high ranking officer on defendants' Executive Staff who was recently promoted by defendant MacLeish.<br><br>To the extent defendants seek to attack Capt. Davis' credibility since he once sued defendant Chaffinch, defendants can offer no such attack on the credibility of MacLeish's own recent promotion. |

| P22 | Capt. Daryl R. Mergenthaler's recommendation of Christopher D. Foraker for a Exceptional Performance Award addressed to Col. L. Aaron Chaffinch, dated 4/15/02 (Mergenthaler ex. 1 - <u>Foraker v. Chaffinch, et al.</u>, C.A.No. 02-302-JJF (D.Del.), A1152) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802 <u>See</u> Defendants' Objections to P19. | FRE 401, 402 (relevance): <br> - This document is being offered because it tends to prove the great respect and high regard in which Sgt. Foraker was held by all those in the DSP prior to the events at issue in this case.  This evidence tends to prove that Sgt. Foraker had a sterling professional reputation in the past.  Accordingly, this document helps demonstrate the baseline against which to measure how Sgt. Foraker's reputation has been injured by defendants' defamatory falsehoods, words and actions. <br><br> FRE 403: <br> - Defendants have not specified the 403 grounds on which they have objected.  When defendants do specify the grounds, plaintiffs will be able to respond. <br><br> FRE 404: <br> - FRE 404(b) (non-propensity purpose):  This exhibit is offered to help demonstrate the baseline of Sgt. Foraker's sterling professional reputation before defendants maliciously attacked and defamed him. <br><br> FRE 801,802 <br> - FRE 803(6) (hearsay exception - business record): This is plaintiff's performance evaluation made in the course of regularly conducted activities of the DSP. <br> - FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agents concerning plaintiff's job performance. |

| P23 | DSP Annual Performance Appraisal of Brian K. Price, dated 4/1/01 - 9/30/01 (FTU3955-63; A2939-47) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802 (a) A performance appraisal is not evidence about Price's reputation in the DSP as a whole. It is a reflection of his own performance in a particular job. Defendants have not contended that Price was a bad performer. (b) There is no defamation claim in the case; accordingly, it is immaterial to any issue in the case if offered to prove damage to reputation. (c) The exhibit was prepared by another Plaintiff in the case and is neither reliable nor relevant. It invites sub-litigation about the performance appraisal itself. (d) This appears to be an attempt by Plaintiffs to try to prove through prohibited Rule 404(a) evidence that Price did not cease doing maintenance on the bullet trap, a fact he freely admits. | FRE 401,402 (relevance): - This document is being offered because it tends to prove the great respect and high regard in which Cpl/3 Price was held by all those in the DSP prior to the events at issue in this case. This evidence tends to prove that Cpl/3 Price had a sterling professional reputation in the past. Accordingly, this document helps demonstrate the baseline against which to measure how Cpl/3 Price's reputation has been injured by defendants' defamatory falsehoods, words and actions. - This document also helps rebut anticipated defense claims that PX26 is somehow false or fraudulent. It demonstrates that his excellent marks for safety, care of equipment, etc… given in PX26 are not out of the ordinary marks for him to receive in evaluations from his supervisors. - the defense claim that reputation damages cannot be recovered in a section 1983 action has long since been rejected by the Supreme Court and Third Circuit. See Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986); Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000)  FRE 403: - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.  FRE 404 - FRE 404(b): Non-propensity purpose of damages. See above. - FRE 404(b): Non-propensity purpose of rebutting the anticipated defense claims that Cpl/3 Price's evaluation from the relevant time period (PX26) is fraudulent or false because it was given by Sgt. Foraker. This exhibit demonstrates that P26 is not out of the ordinary, and thus is not the result of a mistake, accident or fraud. - FRE 406 (habit): In conjunction with his other evaluations, and the uniformity and frequency of the high marks Cpl/3 Price regularly receives for safety, care of equipment, etc…., the fact finder can conclude that Cpl/3 Price's safety and care of equipment practices during the relevant time period were in conformity with his past habit and routine practice.  FRE 801,802 - FRE 803(6) (hearsay exception – business record): This is plaintiff's performance evaluation made in the course of regularly conducted activities of the DSP. - FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agents concerning plaintiff's job performance. |
|---|---|---|---|

| P24 | DSP Annual Performance Appraisal of Brian K. Price, dated 10/1/01 - 9/30/02 (FTU3964-72; A2948-56) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802<br>See Defendants' Objections to P23. | See response to P23 above. |
|---|---|---|---|
| P25 | DSP Annual Performance Appraisal of Brian K. Price, dated 10/1/02 - 9/30/03 (FTU3973-83; A2957-67) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802<br>See Defendants' Objections to P23. | See response to P23 above. |
| P26 | DSP Annual Performance Appraisal of Brian K. Price, dated 10/1/03 - 9/30/04 (FTU3984-95; A2968-79) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802<br>Defendants have not attacked Price's performance. They have said that he stopped maintaining the bullet trap, which he has admitted. Whether he received a good performance appraisal is irrelevant to that issue. Further, the exhibit is not prepared by the Defendants; it is a sham prepared by co-plaintiff Foraker for use as an exhibit during the course of the litigation. Because of its source, it is so untrustworthy that it invites tangential litigation on a point that is irrelevant to the motivation of Defendants. See also Defendants Objections to P23. | FRE 401, 402 (relevance):<br>- Defendants are attacking Cpl/3 Price's performance at the FTU. These documents tend to prove that Cpl/3 Price's performance during this same time frame was exceptional. No mention is made of any negligence or performance deficiencies.<br>- Defendants assert that Cpl/3 Price failed to do his job by not cleaning the bullet-trap. Yet his performance evaluation during the time at issue makes no mention of the fact that he was not performing required job duties.<br><br>FRE 403:<br>- Defendants fail to note that this performance evaluation also had to be signed off on by several other officers above Sgt. Foraker in the chain of command. None of those officers changed any of the high marks. This is no sham.<br><br>FRE 404 (non-propensity purpose):<br>- This evidence is being offered to show that defendants are lying when they claim that Cpl/3 Price's performance was negligent or deficient during the relevant time period. These are his performance evaluations during that time period and no mention is made of any such negligence or deficiencies.<br><br>FRE 801,802<br>- FRE 803(6) (hearsay exception - business record): This is plaintiff's performance evaluation made in the course of regularly conducted activities of the DSP.<br>- FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agents concerning plaintiff's job performance during the relevant time period. |

| P27 | DSP Annual Performance Appraisal of Wayne Warren, dated 10/01/00 - 3/31/01 (A2598-609) | | Fed. R. Evid. 401, 402, 403, 404, 801 & 802 Defendants object to this exhibit on the same grounds as the objections raised with respect to Plaintiff Price's performance appraisals. See Defendants' Objections to P23-P26. | FRE 401,402 (relevance): <br> - This document is being offered because it tends to prove the great respect and high regard in which Cpl/3 Warren was held by all those in the DSP prior to the events at issue in this case. This evidence tends to prove that Cpl/3 Warren had a sterling professional reputation in the past. Accordingly, this document helps demonstrate the baseline against which to measure how Cpl/3 Warren's reputation has been injured by defendants' defamatory falsehoods, words and actions. <br> - This document also helps rebut anticipated defense claims that PX31 is somehow false or fraudulent. It demonstrates that his excellent marks for safety, care of equipment, etc… given in PX31 are not out of the ordinary marks for him to receive in evaluations from his supervisors. <br> - the defense claim that reputation damages cannot be recovered in a section 1983 action has long since been rejected by the Supreme Court and Third Circuit. See Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986); Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000) <br><br> FRE 403: <br> - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. <br><br> FRE 404 <br> - FRE 404(b): Non-propensity purpose of damages. See above. <br> - FRE 404(b): Non-propensity purpose of rebutting the anticipated defense claims that Cpl/3 Warren's evaluation from the relevant time period (PX31) is fraudulent or false because it was given by Sgt. Foraker. This exhibit demonstrates that P31 is not out of the ordinary, and thus is not the result of a mistake, accident or fraud. <br> - FRE 406 (habit): In conjunction with his other evaluations, and the uniformity and frequency of the high marks Cpl/3 Warren regularly receives for safety, care of equipment, etc…., the fact finder can conclude that Cpl/3 Warren's safety and care of equipment practices during the relevant time period were in conformity with his past habit and routine practice. <br><br> FRE 801,802 <br> - FRE 803(6) (hearsay exception – business record): This is plaintiff's performance evaluation made in the course of regularly conducted activities of the DSP. <br> - FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agents concerning plaintiff's job performance. |
|---|---|---|---|---|

| P28 | DSP Annual Performance Appraisal of Wayne Warren, dated 4/1/01 - 9/30/01 (A2609-17) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802 <u>See</u> Defendants' Objections to P23-P27. | See response to P27 above. |
|---|---|---|---|
| P29 | DSP Annual Performance Appraisal of Wayne Warren, dated 10/1/01 - 9/30/02 (A2618-27) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802 <u>See</u> Defendants' Objections to P23-P27 | See response to P27 above. |
| P30 | DSP Annual Performance Appraisal of Wayne Warren, dated 10/1/02 - 9/30/03 (A2628-38) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802 <u>See</u> Defendants' Objections to P23-P27. | See response to P27 above. |

| P31 | DSP Annual Performance Appraisal of Wayne Warren, dated 10/1/03 - 9/30/04 (to be designated) | Fed. R. Evid. 401, 402, 403, 404, 801 & 802 <u>See</u> Defendants' Objections to P23-P27. | FRE 401, 402 (relevance): <br>- Defendants are attacking Cpl/3 Warren's performance at the FTU.  These documents tend to prove that Cpl/3 Warren's performance <u>during this same time frame</u> was exceptional.  <u>No mention</u> is made of any negligence or performance deficiencies. <br>- Defendants assert that Cpl/3 Price failed to do his job by not cleaning the bullet-trap.  Yet his performance evaluation during the time at issue makes no mention of the fact that he was not performing required job duties. <br><br>FRE 403: <br>- Defendants fail to note that this performance evaluation also had to be signed off on by several other officers above Sgt. Foraker in the chain of command.  None of those officers changed any of the high marks.  This is no sham. <br><br>FRE 404 (non-propensity purpose): <br>- This evidence is being offered to show that defendants are lying when they claim that Cpl/3 Warren's performance was negligent or deficient during the relevant time period.  These are his performance evaluations during that time period and no mention is made of any such negligence or deficiencies. <br><br>FRE 801,802 <br>- FRE 803(6) (hearsay exception - business record): This is plaintiff's performance evaluation made in the course of regularly conducted activities of the DSP. <br>- FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agents concerning plaintiff's job performance during the relevant time period. |
| P32 | Initial letters from MacLeish ordering Cpl. Price and Warren to retire and extensions, dated 5/11/05 (Yeomans ex. 2; A2100-01; FTU4857; Yeomans ex. 3; A2102; D's Combined Appendix, A707-08,770) | No objection. | So it is admitted. |

| P33 | Delaware State News article of 4/7/04 - "Debate ranges on blame at range" (MacLeish ex. 5, A214-17) | No objection. | So it is admitted. |
|---|---|---|---|
| P34 | American Police Beat Magazine article (CF66-68; B28-30) | No objection. | So it is admitted. |
| P35 | Delaware State News article of 5/8/04 - "Range builder defends self" (FTU2890-94; A2750-54) | Fed. R. Evid. 401, 402, 403, 801 & 802 This article is about the contractor that built the firing range. It is inflammatory and has little or no probative value to the issues in this case. | FRE 401, 402 (relevance): - This is relevant to defendants' motivation to retaliate against plaintiffs. The problems at the FTU were receiving widespread media attention and defendants testified at their depositions that they did not like the plethora of adverse media attention they were receiving. This exhibit helps demonstrate defendants' motive for wanting to silence the plaintiff whistleblowers. - It also tends to demonstrate the public concern value and nature of plaintiff's speech. The FTU was constantly in the media.  FRE 403: - Review of the article itself reveals it is not inflammatory.  FRE 801, 802 (non-hearsay purpose): - This is not being offered for truth of the matter asserted. This is being offered to help demonstrate defendants' motive to retaliate. |
| P36 | video tape from WBOC-TV (See D.I. 81 in Foraker v. Chaffinch, et al., C.A.No. 04-1207-GMS | No objection. | So it is admitted. |
| P37 | Delaware State News article of 4/18/04 - "'Del. State Police is broken': Legislators express concern about mounting allegations" (FTU2874-78; A2734-38) | Fed. R. Evid. 401, 402, 403, 801 & 802 As set forth in more detail elsewhere, this exhibit is inflammatory; it also deals with issues not in dispute. It also pre-dates the exercise by Price and Warren of their First Amendment rights. | See response to P35 above. |

| P38 | The News Journal article of 4/21/04 - "Answers sought on firing range" (FTU2882-3; A2742-43) | Fed. R. Evid. 401, 402, 403, 801 & 802 <u>See</u> Defendants' Objections to P37. | See response to P35 above. |
| P39 | Delaware State News article of 5/8/04 - "Range misses mark again: Second test finds contaminants" (FTU2887-89; A2747-49) | Fed. R. Evid. 401, 402, 403, 801 & 802 <u>See</u> Defendants' Objections to P37. | See response to P35 above. |
| P40 | Occupational Health Audiometric Examination Report of Christopher Foraker, dated 12/5/03 (D's Combined Appendix, A773-78) | No objection. | So it is admitted. |
| P41 | Omega Medical Center and Medtox Laboratories Inc. Report of Christopher Foraker dated 3/1/04 (D's Combined Appendix, A779-85) | No objection. | So it is admitted. |
| P42 | State of Delaware First Report of Occupational Injury or Disease (D's Combined Appendix, A786-88) | No objection. | So it is admitted. |
| P43 | Letter from Robin August, CNP addressed to Sgt. Foraker regarding his physical examination results, dated 3/12/04 (D's Combined Appendix, A789) | No objection. | So it is admitted. |

| P44 | TK Group Inc. Audiometric test data for Christopher Foraker, dated 4/7/04 (D's Combined Appendix, A790-802) | No objection. | So it is admitted. |
|---|---|---|---|
| P45 | Letter from Lt. Col. MacLeish sending Sgt. Foraker for a second audiological fitness exam at Omega Medical Center, dated 5/13/04 (FTU4268; D's Combined Appendix, A803) | Defendants object to Plaintiffs' mischaracterization of the nature of the exam requested and performed at Omega. | Defendants have failed to cite to a Federal Rule of Evidence. Accordingly their objection is improper. Therefore the document should be admitted. |
| P46 | Letter from Lt. Col. MacLeish verifying Sgt. Foraker's rescheduled appointment for diagnostic testing at Omega Medical Center, dated 5/18/04 (D's Combined Appendix, A804) | No objection. | So it is admitted. |
| P47 | Results of audiological fitness exam, dated 6/7/04 (FTU4270-74; D's Combined Appendix, A805-08) | No objection. | So it is admitted. |
| P48 | TK Group Inc. DSP Work Relatedness Determination of Christopher Foraker (D's Combined Appendix, A809-15) | No objection. | So it is admitted. |

| | | | |
|---|---|---|---|
| P49 | Letter from Lt. Col. MacLeish sending Sgt. Foraker for an audiological fitness exam with Dr. Aaron Green at Health Works, dated 6/22/04 (FTU4276; D's Combined Appendix, A816) | No objection. | So it is admitted. |
| P50 | Signed evaluation by Dr. Green of Health Works - Dover regarding Sgt. Foraker's fitness for duty assessment, dated 6/22/04 (D's Combined Appendix, A817-22) | No objection. | So it is admitted. |
| P51 | Request by Lt. Col. MacLeish to Dr. Emmett regarding Sgt. Foraker's fitness for duty as Ordinance Instructor, dated 7/21/04 (D's Combined Appendix, A823-26) | No objection. | So it is admitted. |
| P52 | Letter from Lt. Col. MacLeish sending Sgt. Foraker for a second opinion regarding his fitness for duty with Dr. Emmett, dated 9/15/04 (FTU4276; D's Combined Appendix, A827) | No objection. | So it is admitted. |

| | | | |
|---|---|---|---|
| P53 | Evaluation by Dr. Emmett of Occupational Medicine regarding Sgt. Foraker's fitness for duty assessment, dated 11/5/04 (D's Combined Appendix, A828-34) | No objection. | So it is admitted. |
| P54 | Supervisor's Report of Investigation and Injury Report (FTU 4277-80) | No objection. | So it is admitted. |
| P55 | Evaluation by Dr. Emmett of Univ. of Pennsylvania - Occupational Medicine regarding Cpl. Price's fitness for duty assessment, dated 1/21/05 (FTU4387-96) | No objection. | So it is admitted. |
| P56 | Addendum from Dr. Emmett addressed to Capt. Yeomans regarding the report of Brian Price's functional hearing test - concluding he does not meet the job requirements of a Trooper, dated 2/24/05 (FTU4396) | No objection. | So it is admitted. |

| P57 | Feb. 28, 2005 Addendum from Dr. Emmett addressed to Capt. Yeomans regarding the report of Wayne Warren's functional hearing test - confirming he does not meet the job requirements of a Trooper, dated 2/28/05 (FTU4399-400) | No objection. | So it is admitted. |
|------|------|------|------|
| P58 | Medical Records of Cpl. Price from ENT Associates dated 4/29/97 (FTU4410-19) | No objection. | So it is admitted. |
| P59 | Medical Records and blood results of Kurt Price from Dr. Green, Kent General Hospital (FTU4421-37) | No objection. | So it is admitted. |
| P60 | Medical Records of Kurt Price from Dr. Kubal, Omega Medical Center (FTU4439- | No objection. | So it is admitted. |
| P61 | Medical Records and blood results of Wayne Warren from Dr. Green, Kent General Hospital (FTU4817-42) | No objection. | So it is admitted. |
| P62 | Occupational Health Audiometric Examination Report of Wayne Warren, dated 12/4/03 (D's Combined Appendix, A711-15) | No objection. | So it is admitted. |

| P63 | Omega Medical Center and Medtox Laboratories Inc. Report of Wayne Warren, dated 3/1/04 (FTU4844-54; D's Combined Appendix, A716-23) | No objection. | So it is admitted. |
|---|---|---|---|
| P64 | State of Delaware First Report of Occupational Injury or Disease for Wayne Warren, signed on 3/12/04 (D's Combined Appendix, A724-26) | No objection. | So it is admitted. |
| P65 | Letter from Robin August, CNP addressed to Cpl. Warren regarding his physical examination results, dated 3/23/04 (FTU 4855; D's Combined Appendix, A727) | No objection. | So it is admitted. |
| P66 | TK Group Inc. Audiometric test data for Wayne Warren (D's Combined Appendix, A728-30) | No objection. | So it is admitted. |
| P67 | Letter from Lt. Col. MacLeish sending Cpl. Warren for an audiological fitness exam at Omega Medical Center, dated 5/13/04 (FTU5050; D's Combined Appendix, A731) | No objection. | So it is admitted. |

| P68 | Results of audiological fitness exam, signed 5/24/04 (D's Combined Appendix, A732-38) | No objection. | So it is admitted. |
|---|---|---|---|
| P69 | TK Group Inc. DSP Work Relatedness Determination - Extended Questionnaire Review of Wayne Warren, determination date 6/3/04 (D's Combined Appendix, A742-52) | No objection. | So it is admitted. |
| P70 | Letter from Lt. Col. MacLeish sending Cpl. Warren for an audiological fitness exam with Dr. Aaron Green at Health Works, dated 6/8/04 (FTU5040; D's Combined Appendix, A753) | Defendants object to Plaintiffs' mischaracterization of the nature of the exam requested and performed by Dr. Green. | Defendants have failed to cite to a Federal Rule of Evidence. Accordingly their objection is improper. Therefore the document should be admitted. |
| P71 | Signed evaluation by Dr. Green of Health Works - Dover regarding Cpl. Warren's fitness for duty assessment, dated 6/3/04 (FTU5033-35; D's Combined Appendix, A754-57) | No objection. | So it is admitted. |

| P72 | Request by Lt. Col. MacLeish to Dr. Emmett regarding Cpl. Warren's fitness for duty as Ordinance Instructor, dated 7/21/04 (D's Combined Appendix, A760-63) | No objection. | So it is admitted. |
|-----|---|---|---|
| P73 | Letter from Lt. Col. MacLeish sending Cpl. Warren for a second opinion regarding his fitness for duty with Dr. Emmett, dated 9/15/04 (D's Combined Appendix, A764) | No objection. | So it is admitted. |
| P74 | Evaluation by Dr. Emmett of Univ. of Pennsylvania - Occupational Medicine regarding Cpl. Warren's fitness for duty assessment, dated 1/21/05 (FTU4747-46; D's Combined Appendix, A765.1-765.9) | No objection. | So it is admitted. |
| P75 | Letter from Lt. Col. MacLeish informing Cpl. Warren his work status will remain as Light Duty, dated 10/8/04 (D's Combined Appendix, A765) | No objection. | So it is admitted. |

| P76 | Letter from Lt. Col. MacLeish sending Cpl. Warren for a functional hearing test with Ms. Sherrie Davis, Chief Audiologist at Univ. of Pennsylvania, dated 1/27/05 (FTU4755; D's Combined Appendix, A766) | No objection. | So it is admitted. |
|---|---|---|---|
| P77 | Addendum from Dr. Emmett addressed to Capt. Yeomans regarding the report of Wayne Warren's functional hearing test - concluding he meets the job requirements of a Trooper, dated 2/24/05 (FTU4756; D's Combined Appendix, A767) | No objection. | So it is admitted. |
| P78 | Feb. 28, 2005 Addendum from Dr. Emmett addressed to Capt. Yeomans regarding the report of Wayne Warren's functional hearing test - concluding his continued duties may pose a threat to his being a Trooper, dated 2/28/05 (FTU4757; D's Combined Appendix, A768) | No objection. | So it is admitted. |

| P79 | Letter from Dr. Emmett addressed to Capt. Yeomans regarding Wayne Warren's test results - concluding he does not meet the functional hearing job requirements of a Trooper, dated 3/18/05 (FTU4758; D's Combined Appendix, A769) | No objection. | So it is admitted. |
|---|---|---|---|
| P80 | Letter from Lt. Col. MacLeish declaring Sgt. Foraker unfit for duty based on his fitness for duty evaluation with Dr. Caren DeBernardo, dated 11/21/05 (B025) | No objection. | So it is admitted. |
| P81 | Letter from Lt. Col. MacLeish declaring Cpl. Price unfit for duty based on his fitness for duty evaluation with Dr. Caren DeBernardo, dated 11/21/05 (B026) | No objection. | So it is admitted. |
| P82 | Letter from Lt. Col. MacLeish declaring Cpl. Warren unfit for duty based on his fitness for duty evaluation with Dr. Caren DeBernardo, dated 11/21/05 (B027) | No objection. | So it is admitted. |

| P83 | Resume of Carol A. Tavani, M.D., psychiatrist | Fed. R. Evid. 801 & 802 | This resume is being offered by the author, a person with personal knowledge, who can be cross examined.  It will expedite the already lengthy trial to simply admit the resume instead of wasting time reciting it. |
|-----|------|------|------|
| P84 | Resume of Ernest B. Fini, firearms industry vocational expert | Fed. R. Evid. 801 & 802 | This resume is being offered by the author, a person with personal knowledge, who can be cross examined.  It will expedite the already lengthy trial to simply admit the resume instead of wasting time reciting it. |
| P85 | Resume of Jose R. Castro, vocational expert | Fed. R. Evid. 801 & 802 | This resume is being offered by the author, a person with personal knowledge, who can be cross examined.  It will expedite the already lengthy trial to simply admit the resume instead of wasting time reciting it. |
| P86 | Resume of Dr. Borzilleri, economic consultant | Fed. R. Evid. 801 & 802 | This resume is being offered by the author, a person with personal knowledge, who can be cross examined.  It will expedite the already lengthy trial to simply admit the resume instead of wasting time reciting it. |
| P87 | Medical records of Sgt. Foraker from family physician, Dr. Mackey (FTU4239-63) | Fed. R. Evid. 401, 402, & 403, 801 & 802 Medical records should not be admitted absent a doctor to interpret them and to be cross-examined.  Without causation testimony, Foraker's medical problems and records are irrelevant. | FRE 401,402 (relevance): - This exhibit tends to prove that Sgt. Foraker has more medical problems now than he did before.  This is relevant to the issue of damages.  - this exhibit is relevant to plaintiff's injuries.  They demonstrate his state of health before he spoke out (which helps the jury understand his health baseline) and his declining health after defendants' retaliation began.  Thus, these are plainly relevant.  FRE 403. - these medical records speak for themselves and do not need a doctor to interpret them.  Defendants have offered no law in this regard.  FRE 803(4) (hearsay exception – statements made for the purposes of medical diagnosis or treatment) - these records fall squarely within the scope of this exception to the hearsay rule. |

| P88 | Letter from Frederick Kozma, Ph.D. declaring Sgt. Foraker unfit for duty, dated 10/7/05 (B003) | Fed. R. Evid. 801 & 802 | After previously conceding that this short exhibit should be admitted, defendant filed a belated objection to it.  Plaintiffs were unaware that this was in dispute.<br>   Frederick Kozma, Ph.D. is plaintiff's treating psychologist.  He is a busy medical professional with a full schedule of treating patients.  Plaintiff hoped that this short exhibit could be introduced to save time and efficiency rather than have to call Kozma away from his patients to spend the day testifying in Court.<br>   In the event that defendants do not withdraw their late filed objection – plaintiff will add Kozma as a witness and call him during plaintiff's case in chief to testify to the substance of this short letter. |
| P89 | Letter from Thomas S. Neuberger, Esq. addressed to Capt. John Yeomans regarding the temporary total disability application for Sgt. Foraker, dated 10/10/05 (B001-2) | Fed. R. Evid. 401, 402, & 403<br>An attorney's letter is not evidence of any medical condition. | FRE 401-402 (relevance):<br>- This letter is relevant to the issue of damages as it is Sgt. Foraker's application for temporary total disability.  It demonstrates just how much Sgt. Foraker has been destroyed as a result of defendants' retaliation against him.  He is unfit for duty, temporarily totally disabled and a psychological shell of his former self.  As a result, this letter was submitted requesting that he be placed on total disability because of the injuries caused by defendants' long course of retaliation against him.<br>- This letter also is relevant to the issue of Sgt. Foraker's good faith efforts to mitigate his emotional, psychological and other injuries by seeking medical treatment.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected.  When defendants do specify the grounds, plaintiffs will be able to respond. |
| P90 | Forensic & Law Enforcement Services, Dr. Caren DeBernardo, Psychological Consultation - Fitness for Duty of Christopher Foraker (D20517-45) (page__ is redacted in one paragraph as LEOBOR protected material) | Fed. R. Evid. 801 & 802 Defendants object to the use of this exhibit for purposes other than to show why the DSP Human Resources office treated Plaintiff as it did. | Notably, defendants concede relevance.<br><br>FRE 801(d)(2) (admission by a party opponent)<br>- this exhibit is a report prepared by defendants' own doctor and agent, finding that Sgt. Foraker has been psychologically destroyed by the retaliation against him in the workplace and is presently psychologically unfit for duty as a result.<br><br>FRE 803(6) (business record)<br>- this is also defendants' own business record.  Defendants sent Sgt. Foraker for a psychological fitness for duty exam.  This is the report of their own doctor finding him unfit for duty.  Defendants cannot now try to keep their own doctor's findings out simply because they find the results unhelpful to their claims in this litigation.  Nor can they limit its uses. |

| P91 | Medical Records of Cpl. Price from Dr. Gary Quiroga, dated 1977 to 2005 (FTU4292-371) | Fed. R. Evid. 401, 402, & 403 Medical records should not be admitted absent a doctor to interpret them and to be cross-examined. Without causation testimony, Price's medical problems and records are irrelevant. | FRE 401,402 (relevance): - This exhibit tends to prove that Cpl/3 Price has more medical problems now than he did before. This is relevant to the issue of damages. <br><br> - this exhibit is relevant to plaintiff's injuries. They demonstrate his state of health before he spoke out (which helps the jury understand his health baseline) and his declining health after defendants' retaliation began. Thus, these are plainly relevant. <br><br> FRE 403. - these medical records speak for themselves and do not need a doctor to interpret them. Defendants have offered no law in this regard. <br><br> FRE 803(4) (hearsay exception – statements made for the purposes of medical diagnosis or treatment) - these records fall squarely within the scope of this exception to the hearsay rule. |
| --- | --- | --- | --- |
| P92 | Medical Records of Cpl. Price from Dr. Stephen Cooper, ENT Associates (FTU4373-84) | No objection. | So it is admitted. |
| P93 | Medical Records of Cpl. Price from Dr. Zaragoza, dated 1995-2004 (FTU4402-09) | Fed. R. Evid. 401, 402, & 403 See Defendants' Objections to P91. | See response to P91 above. |
| P94 | Letter from Frederick Kozma, Ph.D. declaring Cpl. Price unfit for duty, dated 9/30/05 (B006) | Fed. R. Evid. 801 & 802 | After previously conceding that this short exhibit should be admitted, defendant filed a belated objection to it. Plaintiffs were unaware that this was in dispute. <br> Frederick Kozma, Ph.D. is plaintiff's treating psychologist. He is a busy medical professional with a full schedule of treating patients. Plaintiff hoped that this short exhibit could be introduced to save time and efficiency rather than have to call Kozma away from his patients to spend the day testifying in Court. <br> In the event that defendants do not withdraw their late filed objection – plaintiff will add Kozma as a witness and call him during plaintiff's case in chief to testify to the substance of this short letter. |

| P95 | Letter from Thomas S. Neuberger, Esq. addressed to Capt. John Yeomans regarding the temporary total disability application for Cpl. Price, dated 10/10/05 (B004-5) | Fed. R. Evid. 401, 402, & 403 An attorney's letter is not evidence of any medical condition. | FRE 401-402 (relevance): - This letter is relevant to the issue of damages as it is Cpl/3 Price's application for temporary total disability.  It demonstrates just how much Sgt. Foraker has been destroyed as a result of defendants' retaliation against him.  He is unfit for duty, temporarily totally disabled and a psychological shell of his former self.  As a result, this letter was submitted requesting that he be placed on total disability because of the injuries caused by defendants' long course of retaliation against him. - This letter also is relevant to the issue of Sgt. Foraker's good faith efforts to mitigate his emotional, psychological and other injuries by seeking medical treatment.<br><br>FRE 403: - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. |
| P96 | Forensic & Law Enforcement Services, Dr. Caren DeBernardo, Psychological Consultation - Fitness for Duty of Brian "Kurt" Price (D20489-515) | Fed. R. Evid. 801 & 802 Defendants object to the use of this exhibit for purposes other than to show why the DSP Human Resources office treated Plaintiff as it did. | Notably, defendants concede relevance.<br><br>FRE 801(d)(2) (admission by a party opponent) - this exhibit is a report prepared by defendants' own doctor and agent, finding that Cpl/3 Price has been psychologically destroyed by the retaliation against him in the workplace and is presently psychologically unfit for duty as a result.<br><br>FRE 803(6) (business record) - this is also defendants' own business record.  Defendants sent Cpl/3 Price for a psychological fitness for duty exam.  This is the report of their own doctor finding him unfit for duty.  Defendants cannot now try to keep their own doctor's findings out simply because they find the results unhelpful to their claims in this litigation.  Nor can they limit its uses. |

| P97 | Medical Records of Cpl. Warren from Beebe Medical Center - Dr. Susan Rogers and Dr. Charles Stanislav, dated 5/23/89 - 5/2/05 (FTU 4859-96) | Fed. R. Evid. 401, 402, & 403 Medical records should not be admitted absent a doctor to interpret them and to be cross-examined. Without causation testimony, Warren's medical problems and records are irrelevant. | FRE 401,402 (relevance): <br> - This exhibit tends to prove that Cpl/3 Warren has more medical problems now than he did before.  This is relevant to the issue of damages. <br><br> - this exhibit is relevant to plaintiff's injuries.  They demonstrate his state of health before he spoke out (which helps the jury understand his health baseline) and his declining health after defendants' retaliation began.  Thus, these are plainly relevant. <br><br> FRE 403. <br> - these medical records speak for themselves and do not need a doctor to interpret them.  Defendants have offered no law in this regard. <br><br> FRE 803(4) (hearsay exception – statements made for the purposes of medical diagnosis or treatment) <br> - these records fall squarely within the scope of this exception to the hearsay rule. |
| --- | --- | --- | --- |
| P98 | Medical Records of Cpl. Warren from Dr. James P. Marvel, Jr. (FTU4760-804) | Fed. R. Evid. 401, 402, & 403 <u>See</u> Defendants' Objections to P97. | See response to P97 above. |
| P99 | Medical Records of Wayne Warren from Dr. Cooper, ENT & Facial Plastic Surgery, P.A., dated 4/7/04 - 6/7/04 (FTU4806-15) | No objection. | So it is admitted. |
| P100 | Letter from Frederick Kozma, Ph.D. declaring Cpl. Warren unfit for duty, dated 9/30/05 (B009) | Fed. R. Evid. 801 & 802 | After previously conceding that this short exhibit should be admitted, defendant filed a belated objection to it.  Plaintiffs were unaware that this was in dispute. <br>    Frederick Kozma, Ph.D. is plaintiff's treating psychologist.  He is a busy medical professional with a full schedule of treating patients.  Plaintiff hoped that this short exhibit could be introduced to save time and efficiency rather than have to call Kozma away from his patients to spend the day testifying in Court. <br>    In the event that defendants do not withdraw their late filed objection – plaintiff will add Kozma as a witness and call him during plaintiff's case in chief to testify to the substance of this short letter. |

| P101 | Letter from Thomas S. Neuberger, Esq. addressed to Capt. John Yeomans regarding the temporary total disability application for Cpl. Warren, dated 10/10/05 (B007-8) | Fed. R. Evid. 401, 402, & 403 An attorney's letter is not evidence of any medical condition. | FRE 401-402 (relevance): - This letter is relevant to the issue of damages as it is Cpl/3 Warren's application for temporary total disability. It demonstrates just how much Sgt. Foraker has been destroyed as a result of defendants' retaliation against him. He is unfit for duty, temporarily totally disabled and a psychological shell of his former self. As a result, this letter was submitted requesting that he be placed on total disability because of the injuries caused by defendants' long course of retaliation against him. - This letter also is relevant to the issue of Sgt. Foraker's good faith efforts to mitigate his emotional, psychological and other injuries by seeking medical treatment. FRE 403: - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. |
|------|------|------|------|
| P102 | Forensic & Law Enforcement Services, Dr. Caren DeBernardo, Psychological Consultation - Fitness for Duty of Wayne Warren (D20547-73) | Fed. R. Evid. 801 & 802 Defendants object to the use of this exhibit for purposes other than to show why the DSP Human Resources office treated Plaintiff as it did. | Notably, defendants concede relevance. FRE 801(d)(2) (admission by a party opponent) - this exhibit is a report prepared by defendants' own doctor and agent, finding that Cpl/3 Warren has been psychologically destroyed by the retaliation against him in the workplace and is presently psychologically unfit for duty as a result. FRE 803(6) (business record) - this is also defendants' own business record. Defendants sent Cpl/3 Warren for a psychological fitness for duty exam. This is the report of their own doctor finding him unfit for duty. Defendants cannot now try to keep their own doctor's findings out simply because they find the results unhelpful to their claims in this litigation. Nor can they limit its uses. |

| P103 | Medical Records of Major Joseph Forester (A3600-17) | Fed. R. Evid. 401, 402, & 403<br><br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Forester's condition. | FRE 401,402 (relevance):<br>- These documents are relevant to the issue of disparate treatment and whether plaintiffs were treated differently from past Troopers regarding hearing issues, hearing loss, accommodation and light duty. This is relevant to the causation analysis.<br><br>- MacLeish's knowledge is not necessary. Discovery has revealed the historic DSP policy when it comes to accommodating hearing problems and giving injured Troopers 2 years of light duty. Never before in the history of the DSP has this been violated. This had independent probative value.<br><br>FRE 403:<br>Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 803(6) (business records)<br>- These are defendants' own business records pertaining to the health of their employees. They are required records kept by the DSP in the regular course of business. |
| --- | --- | --- | --- |
| P104 | Medical records of Sgt. Steve T. Swain (A3657-70; D's Combined Appendix, A853-866) | Fed. R. Evid. 401, 402, & 403<br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Swain's condition. | See response to P103 above. |
| P105 | Medical records of Cpl. Bruce H. Peachy, Jr. (A3671-82) | Fed. R. Evid. 401, 402, & 403<br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Peachy's condition. | See response to P103 above. |

| P106 | Medical records of Cpl. Jerome A. Loveless (A3683-99) | Fed. R. Evid. 401, 402, & 403<br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Loveless's condition. | See response to P103 above. |
|------|------|------|------|
| P107 | Medical records of Cpl. William R. Merritt (A3700-06) | Fed. R. Evid. 401, 402, & 403<br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Merritt's condition. | See response to P103 above. |
| P108 | Medical records of Sgt. Shawn P. Nowrey (A3707-18) | Fed. R. Evid. 401, 402, & 403<br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Nowery's condition. | See response to P103 above. |
| P109 | Medical records of Cpl. Everett Jackson (A3719-24) | Fed. R. Evid. 401, 402, & 403<br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Jackson's condition. | See response to P103 above. |

| P110 | Medical records of Capt. David J. Citro (A3725-38; D's Combined Appendix, A867-899)<br><br>* A888 was omitted in defense appendix. | Fed. R. Evid. 401, 402, & 403<br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Citro's condition. | See response to P103 above. |
|------|------|------|------|
| P111 | Medical records of Sgt. Jahn B. Hitchens (A3744-66) | Fed. R. Evid. 401, 402, & 403<br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Hitchens's condition. | See response to P103 above. |

| P112 | Medical records of Cpl. James E. Mosley (A3767-3802) | Fed. R. Evid. 401, 402, & 403<br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Mosley's condition. Additionally, Mosley's injuries occurred prior to promulgation of the 1992 DSP Administrative Manual provisions on rehabilitation of injuries, and thus his experience is not probative of Defendants' motivation in a case handled under those provisions. | FRE 401,402 (relevance):<br>- These documents are relevant to the issue of disparate treatment and whether plaintiffs were treated differently from past Troopers regarding hearing issues, hearing loss, accommodation and light duty. This is relevant to the causation analysis.<br><br>- MacLeish's knowledge is not necessary. Discovery has revealed the historic DSP policy when it comes to accommodating hearing problems and giving injured Troopers 2 years of light duty. Never before in the history of the DSP has this been violated. This had independent probative value.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 803(6) (business records)<br>- These are defendants' own business records pertaining to the health of their employees. They are required records kept by the DSP in the regular course of business.<br><br>To the extent defendants claim that the Administrative Manual somehow prevents these documents from being used, defendants forgot the testimony of Major Baylor who testified that the policies contained in the Manual were historically not followed and instead were ignored by the DSP. |

| P113 | Medical records of Cpl. Joseph M. Condron (A3803-22) | Fed. R. Evid. 401, 402, & 403<br>The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Condron's condition. Additionally, Condron's injuries occurred prior to promulgation of the 1992 DSP Administrative Manual provisions on rehabilitation of injuries, and thus his experience is not probative of Defendants' motivation in a case handled under those provisions. | See response to P112 above. |
|---|---|---|---|

| P114 | Medical records of Lt. Paul G. Sczubelek (A3823-47) | Fed. R. Evid. 401, 402, & 403 The exhibit is irrelevant unless Plaintiffs establish that Defendant MacLeish knew about the documents contained therein and acted on them. They are hearsay if offered to prove details of Sczubelek's condition. Additionally, Sczubelek's injuries occurred prior to promulgation of the 1992 DSP Administrative Manual provisions on rehabilitation of injuries, and thus his experience is not probative of Defendants' motivation in a case handled under those provisions. | See response to P112 above. |
|---|---|---|---|
| P115 | Harvard Environmental, Inc. State Police Indoor Firing Range, Smyrna, DE - Inspections, Testing, and Sample Results, dated 4/13/04 (FTU2647-2724; A2180-2257) | Fed. R. Evid. 401, 402, & 403 | FRE 401,402 (relevance): - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. - This document tends to prove that the firing range contained unsafe level of lead and other airborne toxins. This document tends to demonstrate the veracity of plaintiffs' health concerns confirms their suspicions and states that the FTU had 700 times the safe level of lead in the air. FRE 403: - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. |

| P116 | DSP Staff Support undated memo from Capt. Paul Cunningham to Maj. Robert Gouge regarding Range Project, Progress Report (FTU2749-52) | Fed. R. Evid. 401, 402, 403, 801 & 802 A document is not relevant merely because Plaintiffs gave it to the State Auditor. It must have been known to Defendants in order to be relevant to the alleged retaliatory motive. The exhibit is inflammatory in that it invites the jury to find against government officials in general; none of the defendants in this case had anything to do with the events in this memo. Finally, the hearsay exception identified assumes a foundation that cannot be established unless the memo's author is called to testify. | FRE 401,402 (relevance): <br> - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. <br> - This document tends to show that corruption, fraud and impropriety was part of the architectural and engineering selection process of the FTU. This document demonstrates that the A/E firm that was selected to build the FTU had finished last in the rankings. <br> - Accordingly, this document tends to prove that it was not plaintiff who destroyed the FTU. Instead, the facility has been plagued with problems since its design phase. <br> - Plaintiff has not asserted that this document is relevant to defendants' retaliatory motive. Accordingly, the defense objection on this ground is meritless. <br><br> FRE 403: <br> - Defendants have publicly attacked and blamed plaintiff for destroying the FTU. It is not unfair or inflammatory to introduce documents that tend to prove that plaintiff was not responsible for the problems at the FTU. This is one such document. Plaintiff did not design the building. Plaintiff did not choose the A/E firm that build the building. Plaintiff had nothing to do with it. <br><br> FRE 801,802 <br> - FRE 803(6) (hearsay exception – business record): This is an internal DSP Staff memo made in the course of regularly conducted activities of the DSP. |
| --- | --- | --- | --- |

| P117 | Architect Selection Short List, dated 9/18/92 (FTU2753-55) | Fed. R. Evid. 401, 402, 403, 801 & 802 <u>See</u> Defendants' Objections to P116. | FRE 401,402 (relevance): <br> - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. <br> - This document tends to show that corruption, fraud and impropriety was part of the architectural and engineering selection process of the FTU. This document demonstrates that the A/E firm that was selected to build the FTU had finished last in the rankings. <br><br> FRE 403: <br> - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. <br><br> FRE 801,802 <br> - FRE 803(6) (hearsay exception – business record): This is defendants' own business record showing the rankings in the architect selection process of the FTU. |
|------|------|------|------|

| P118 | Rangtech International Corp. Recommendation for construction of the Delaware State Police Firing range (FTU2756-58; MacLeish ex. 6, A218-20) | Fed. R. Evid. 401, 402, 403, 801 & 802 A document is not relevant merely because it was given to the State Auditor. To be probative of any issue in the case, it must be a document that Defendants knew about and motivated them to retaliate. This case is not about public corruption; that would be a much longer trial with different defendants. The introduction of material from which Plaintiffs will argue public corruption will not help the jury decide the retaliation question. It will serve only to inflame the jury to find against all public officials, which Defendants are, even though neither Defendant had anything to do with the construction of the range. The exhibit is hearsay, not the product of a "regularly conducted business activity," as required by Rule 803(6). Finally, the effect of the exhibit on Plaintiffs is largely irrelevant to this case because their motivation is not at issue. | FRE 401,402 (relevance): <br> - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. <br> - This document tends to show that corruption, fraud and impropriety was part of the design process of the FTU. This is the document that tells the DSP that the HVAC system as designed "will inevitably fail." <br> - tends to show that it was not plaintiffs who destroyed the FTU. Instead, the design of the HVAC system has been inadequate from the very beginning. <br> - also relevant to the public concern nature of plaintiff's speech. This is part of the content of their speech – and this content revealed wrongdoing and mismanagement by those responsible for the design of the FTU. <br><br> FRE 403: <br> - This case is partially about public corruption as that is the unavoidable inference of what plaintiff's speech revealed – that wrongdoing of some kind went on when the FTU was designed and that a broken facility was the result. This is the content of the First Amendment protected speech. <br> - As the summary judgment record reveals, defendants were angry that plaintiffs had spoken out about the problems at the FTU. Regardless of whether defendants built the FTU, plaintiffs' speech brought negative media attention down on the DSP and the Governor. This then supplies defendants with a motive to retaliate. This is by no means unfair. <br><br> FRE 801,802 <br> - FRE 803(6) (hearsay exception – business record): This is defendants' own business record showing that the DSP and State of Delaware knew that the HVAC system as designed would "inevitably fail" as designed. <br> - FRE 801,802 (non-hearsay purpose): This exhibit is not being offered for the truth of the matter asserted. Instead it is being offered to demonstrate the effect on the listener – plaintiffs. These documents were part of the investigation plaintiffs conducted into the FTU's air ventilation system. They help explain plaintiffs' reasoning and motives for speaking out – they believed that they and others were being poisoned. |

| P119 | Batta Environmental Associates, Inc. Lead Results - IAQ - DSP Smyrna Firing Range, dated 12/1/98 (FTU2973; MacLeish ex. 8, A222) | Fed. R. Evid. 401, 402, 403, 801 & 802 Defendants have never contended that Plaintiffs destroyed the firing range. See Defendants Objections to P118. | FRE 401,402 (relevance):<br>- This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition.<br>- This document tends to show that the FTU has had serious contamination problems from shortly after it opened. Tends to show that it was not plaintiffs who destroyed the FTU.<br>- it is the defense position in this case that plaintiffs destroyed the FTU. It is defendant Chaffinch's public trumpeting of this fact to the news media and all others willing to listen that resulted in this case being filed in the first place. The defense claim that they have never blamed plaintiffs for destroying the range is without merit.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 801,802<br>- FRE 803(6) (hearsay exception – business record): This is defendants' own business record showing the FTU has had serious contamination problems from shortly after it officially opened.<br>- FRE 801,802 (non-hearsay purpose): This exhibit is not being offered for the truth of the matter asserted. Instead it is being offered to demonstrate the effect on the listener – plaintiffs. These documents were part of the investigation plaintiffs conducted into the HVAC system at the FTU. They help explain plaintiffs' reasoning and motives for speaking out – they believed that they and others were being poisoned. |

| P120 | Clark-Nexsen letter dated 4/26/1999 denying involvement in the design and discussing the changes in design process which caused problems (FTU2760-61; A2143-44) | Fed. R. Evid. 401, 402, 403, 801 & 802 <u>See</u> Defendants Objections to P118. | FRE 401,402 (relevance): <br> - This exhibit has independent legal significance and evidentiary value.  These are some of the documents that plaintiffs gave to the auditors.  Thus, this is part of plaintiffs' protected speech and petition. <br> - This document tends to show that the FTU has had serious contamination problems from shortly after it opened.  Tends to show that it was not plaintiffs who destroyed the FTU.  Tends to show that the DSP and the State of Delaware have known about the problems plaguing the FTU since 1999 and yet continue to falsely blame plaintiffs for causing the facility's destruction. <br><br> FRE 403: <br> - Defendants have not specified the 403 grounds on which they have objected.  When defendants do specify the grounds, plaintiffs will be able to respond. <br><br> FRE 801,802,803(6) (hearsay exception – business record): <br> - This is defendants' own business record showing the DSP and State of Delaware have known about the problems plaguing the FTU and how to fix them since 1999. <br> - FRE 801,802 (non-hearsay purpose): This exhibit is not being offered for the truth of the matter asserted.  Instead it is being offered to demonstrate the effect on the listener – plaintiffs.  These documents were part of the investigation plaintiffs conducted into the FTU's air ventilation problems.  They help explain plaintiffs' reasoning and motives for speaking out – they believed that they and others were being poisoned. |

| P121 | Videotape of Bill Provencher conducting air velocity and smoke testing at the FTU | Fed. R. Evid. 401, 402 & 403<br><br>The exhibit is not relevant and contains comments by Provencher that are hearsay and cannot be cross-examined because he is not a witness. | FRE 401-402 (relevance).<br>A picture is worth a thousand words. One of the things plaintiffs spoke out about was that the HVAC system was blowing air and toxins 180 degrees in the wrong direction – towards the shooters instead of away from them. The smoke testing shown in this videotape visually demonstrates this and will be helpful to the jury's understanding of the issues.<br><br>FRE 403<br>- defendants have failed to articulate a 403 objection.<br><br>FRE 801-802 (non-hearsay purpose – effect on the listener)<br>-Again, this is being offered to demonstrate effect on the listener. Provencher was one of the nationally renowned experts plaintiffs brought in as they investigated and tried to determine what was wrong with the facility. His comments on the tape regarding the smoke blowing in the wrong direction and so forth are being offered to explain why plaintiffs were so worried and spoke out. A nationally renowned expert who builds ranges for the U.S. Navy told them their facility wasn't working. That is why they were worried.<br>- To the extent there are any extraneous comments on this, they can be controlled through effective use of the mute button. |
| P122 | Memorandum from Capt. Homiak addressed to Lt. Col. MacLeish regarding Firearms Range, dated 3/4/04 (FTU2762-64; MacLeish ex. 3, A208-210) | No objection. | So it is admitted. |
| P123 | Neilson Associates Incorporated Indoor Air Quality analysis of the FTU, dated 3/21/04 (FTU2765-73) | No objection. | So it is admitted. |

| P124 | The News Journal article of 4/29/99 - "Shooting range under fire for lead" (A2639-41) | Fed. R. Evid. 401, 402, 403, 801 & 802 Whether it was "widely known throughout the state" that the firing range had problems is irrelevant. In any event, a news article in 1999 does not prove the proposition. It certainly does not tend to prove Plaintiff's responsibility for what occurred in 2004. This is attorney sensationalism, which Rule 403, among other rules, is meant to prevent. | FRE 401, 402 (relevance): <br> - This document tends to prove that defendants, the DSP and the State of Delaware and the general public have known that the FTU has had serious problems for a long time as it has long been widely reported in the media.  It was widely known throughout the state that the FTU had lead and health problems for many years.  Accordingly, this tends to prove that defendants had longstanding knowledge of the problems at the FTU, and thus that plaintiff was not the cause of those problems. <br><br> FRE 403: <br> - The defense allegations do not amount to sensationalism.  Defendants do not otherwise offer a 403 objection. <br><br> FRE 801,802 (non-hearsay purpose): <br> - This exhibit is not being offered for the truth of the matter asserted.  Instead it is being offered to show knowledge of the problems at the FTU by defendants, the DSP, the State of Delaware and the general public. |
| P125 | The News Journal article of 4/15/04 - "Firing-range tests find high levels" (FTU2872; A2376) | Fed. R. Evid. 401, 402, 403, 801 & 802 The facts of media attention and Defendants' preference that there not be so much attention are not disputed. Excessive use of sensational media coverage to prove an undisputed point is objectionable under Rule 403.  Furthermore, there is nothing in this article about the Plaintiff. It is about Gloria Homer. | FRE 401, 402 (relevance): <br> - This is relevant to defendants' motivation to retaliate against plaintiff. The problems at the FTU were receiving widespread media attention and defendants testified at their depositions that they did not like the plethora of adverse media attention they were receiving.  This exhibit helps demonstrate defendants' motive for wanting to silence the plaintiff whistleblower. <br> - this also is relevant to the public concern nature of plaintiffs' speech about problems at the FTU – the media reported on it constantly. <br><br> FRE 403: <br> - defendants object to all of plaintiff's use of media in this case.  Plaintiffs are still entitled to use and present evidence as it is significantly probative and telling of defendants' retaliatory motives to silence the whistleblowers who had caused the media to report in such great detail  on the problems at the FTU. <br><br> FRE 801, 802 (non-hearsay purpose): <br> - This is not being offered for truth of the matter asserted.  This is being offered to help demonstrate defendants' motive to retaliate. |

| P126 | Recommendations and Design Considerations for Indoor Rifle Ranges (FTU3721-23; MacLeish ex. 4, A211-13) | Fed. R. Evid. 401, 402, 403, 801 & 802 The document is not relevant merely because it was provided to the State Auditor. Whether the DSP range meets or does not meet these "considerations" is irrelevant to the actions of Defendants, which are at issue here. | FRE 401, 402 (relevance): - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. - These documents tend to prove that plaintiffs were acting in good faith when speaking out because these are the State of Delaware's own firing range standards, which the FTU fails to meet. Defendants have attacked plaintiffs' motives for speaking out as being impure – that somehow they just wanted to make defendants look bad. This document tends to show that plaintiffs were acting in good faith.<br><br>FRE 403: - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 801,802 (non-hearsay purpose): - This is not being offered for the truth of the matter asserted. Instead, this is being offered for the effect on the listener. This exhibit was part of the investigation plaintiffs conducted into the problems at the FTU. They help explain plaintiffs' reasoning and motives for speaking out – they believed that the State had built a defective facility that was doomed to fail – the State had not even met their own safety standards. |
| --- | --- | --- | --- |
| P127 | Memorandum from Sgt. Fitzpatrick addressed to Lt. Bryson regarding Range ventilation problem, dated 11/8/98 (FTU2956; MacLeish ex. 7, A221) | No objection. | So it is admitted. |
| P128 | Memorandum from Sgt. Fitzpatrick addressed to Capt. DiNetta regarding Range Ventilation, dated 12/3/98 (FTU2983-84; MacLeish ex. 9, A233-34) | No objection. | So it is admitted. |

| P129 | Memorandum from Sgt. Fitzpatrick addressed to Capt. DiNetta regarding Range Project, dated 4/29/99 (FTU3040; MacLeish ex. 10, A235) | No objection. | So it is admitted. |
|---|---|---|---|
| P130 | Memorandum from Sgt. Parton addressed to Lt. Ralph Davis regarding DSP Range (FTU2774; Chaffinch ex. 2, A480) | Fed. R. Evid. 401, 402, 403, 801 & 802 This is unauthenticated, undated, multiple-level hearsay on a subject not at issue in the case. It is not an admission because the author was not in a position in which he was authorized to make statements about the range when he wrote the memo. (He was NCOIC of a different unit.) As noted elsewhere, the exhibit's effect on Plaintiffs is not relevant because their motivations are not at issue. | FRE 401,402 (relevance):<br>- This document tends to rebut the defense claim that plaintiffs destroyed the FTU and were responsible for its breakdown. This is a document from the former NCOIC of the FTU stating that the DSP's public proclamations that the FTU has never had problems are false and that the facility experienced significant problems when he was in charge of it.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 801,802:<br>- FRE 803(6) (hearsay exception – business record): This is an internal DSP memorandum kept in the course of regularly conducted DSP activity. This is defendants' own business record.<br><br>- FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agent concerning matters within the scope of their job duties. Parton was the NCOIC of the FTU for several years. This is his memo, stating that the facility had problems under his tenure at the FTU.<br><br>- FRE 801,802 (non-hearsay purpose): This is not being offered for the truth of the matter asserted. Instead, this is being offered for the effect on the listener. This exhibit was part of the ongoing investigation plaintiffs conducted into the problems at the FTU. They help explain plaintiffs' reasoning and motives for speaking out – they believed that the State had built a defective facility that was far past due to be fixed and repaired. |

| P131 | Emails from Sgt. Patron addressed to William Waggaman regarding Lead contamination / personnel lead levels, dated 6/29/00 (FTU2775; Chaffinch ex. 2, A481) | Fed. R. Evid. 401, 402, 403, 801 & 802 The subject of this exhibit is the 2000 blood level of one employee.  It is not relevant to any issue in this case.  See Defendants' Objections to P130. | FRE 106 (Rule of Completeness) - this is the e-mail that was attached to PX130.<br><br>FRE 401,402 (relevance): - This document tends to rebut the defense claim that plaintiffs destroyed the FTU and were responsible for its breakdown.  This document demonstrates that the facility has always experienced serious lead contamination problems – even under different commanding officers.  This exhibit describes several such problems – such as blood lead levels and the source of contamination.<br><br>FRE 403: - Defendants have not specified the 403 grounds on which they have objected.  When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 801,802 - FRE 803(6) (hearsay exception – business record):  This is an internal DSP email made in the course of regularly DSP activity. - FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agent concerning matters within the scope of their job duties. - FRE 801,802 (non-hearsay purpose):  This is not being offered for the truth of the matter asserted.  Instead, this is being offered for the effect on the listener.  This exhibit was part of the ongoing investigation plaintiffs conducted into the problems at the FTU.  They help explain plaintiffs' reasoning and motives for speaking out – they believed that the State had built a defective facility that that was far past due to be fixed and repaired. |
| P132 | Undated memorandum from Sgt. Ashley addressed to Major (Hughes) regarding needed repairs to Bullet Recovery System (FTU 1791; A1488) | No objection. | So it is admitted. |

| P133 | Firearms Training Unit Indoor Range Maintenance and Service Report prepared by the FTU staff, dated 3/31/04 (FTU2593-95; MacLeish ex. 16, A234-36 | No objection. | So it is admitted. |
|---|---|---|---|
| P134 | Clark-Nexsen Field Investigation Report of DSP Training Facility, dated 4/19/99 (FTU1200-34; A2145-79) | Fed. R. Evid. 401, 402, 403, 801 & 802 <u>See</u> Defendants' Objections to P117-P118. | FRE 401,402 (relevance):<br>- This exhibit has independent legal significance and evidentiary value.  These are some of the documents that plaintiffs gave to the auditors.  Thus, this is part of plaintiffs' protected speech and petition.<br>- This document tends to show that the FTU has had serious contamination problems from shortly after it opened.  Tends to show that it was not plaintiffs who destroyed the FTU.  Tends to show that the DSP and the State of Delaware have known about the problems plaguing the FTU since 1999 and yet continue to falsely blame plaintiffs for causing the facility's destruction.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected.  When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 801,802<br>- FRE 803(6) (hearsay exception – business record): This is defendants' own business record showing the DSP and State of Delaware have known about the problems plaguing the FTU and how to fix them since 1999.<br>- FRE 801,802 (non-hearsay purpose): This exhibit is not being offered for the truth of the matter asserted.  Instead it is being offered to demonstrate the effect on the listener – plaintiffs.  These documents were part of the investigation plaintiffs conducted into the adverse health effects of the heavy metals they were being exposed to at the hazardous FTU.  They help explain plaintiffs' reasoning and motives for speaking out – they believed that they and others were being poisoned. |

| P135 | Material Safety Data Sheet: Small Arms Ammunition - Shotshell, dated 1/2/04 (FTU2548-55; A2258-65) | Fed. R. Evid. 401, 402, & 403, 801 & 802 The fact that Plaintiff might have spoken to the State Auditor is protected; not every document he may have given the Auditor is relevant to that fact or is admissible. This exhibit invites sub-trials, since, contrary to Plaintiff's allegations, the state did not refuse to provide these documents. Furthermore, it is debatable whether the composition of the bullets is toxic. Ultimately, whether the bullets are toxic or whether the state provided MSDS sheets is immaterial to any issues in this case; it should be excluded. | FRE 401,402 (relevance): <br> - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. <br> - These are some of the health and safety documents which indicate the physical composition of the bullets that are fired at the FTU. These are the documents that the State refused to provide to plaintiffs when plaintiffs were trying to figure out if they were being poisoned by inhaling the bullet residue that the HVAC system was not removing from the air. <br> - This exhibit tends to prove that plaintiffs' concerns were genuine and in good faith as these indicate the toxic composition of the bullets. <br><br> FRE 403: <br> - as discussed in the relevance section above, the defense objections in this regard are without merit as the State did in fact refuse to provide these to plaintiffs and their supervisors. <br> - Defendants cannot in good faith assert that exposure to heavy metals such as lead, copper, zinc, arsenic, nitroglycerin and other such substances can have any positive effect on the human immune system. <br><br> FRE 801-802 (non-hearsay purpose – effect on the listener) <br> - Plaintiffs suspected that the bullets they were firing were toxic. Upon review of these MSDS sheets, plaintiffs believed that their fears were genuine and spoke out even more forcefully about the hazards at the FTU. These MSDS sheets provide a portion of plaintiffs' motivations for speaking out and help demonstrate why they did so. |
| P136 | Defendants' financial records relevant to punitive damages which will be produced | Fed. R. Evid. 401, 402, & 403 | FRE 401,402 (relevance): <br> - The case law makes clear that such financial discovery is permissible, see Pinkert v. Olivieri, 2001 WL 641737, *7 (D.Del. May 21, 2001), so that the jury may analyze a defendants' net worth in considering what amount is sufficient to "punish" and "deter" a defendant, Smith v. Wade, 461 U.S. 30, 54 (1983), for their "reckless, callous, intentional or malicious conduct." Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006). <br><br> FRE 403: <br> - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. |

| P137 | Pictures of the FTU to be designated | Fed. R. Evid. 403; Defendants object that many of the pictures Plaintiffs have produced are not accurate representations of the scenes or events at the time relevant to this lawsuit. | FRE 403:<br>- defendants misunderstand the purpose that some of these pictures will be used for.  The FTU is a multimillion dollar facility filled with complex and highly technical and mechanical equipment.  The size of the facility, complexity of the equipment involved, etc…. all help demonstrate that plaintiffs – who are mere firearms instructors – could not possible have been responsible for maintaining this equipment or responsible for the destruction of the massive facility.<br>- additionally, it took defendants more than a page of their summary judgment briefs to describe the bullet-trap.  As the saying goes – 'a picture is worth a thousand words.'  Plaintiffs hope that several pictures of the facility will help the jury better understand the issues about which they will hear approximately two weeks of testimony. |
| P138 | Email from John Yeomans to Robert Williams regarding "WRDs" and addressing DSP's light duty policy. (D2508) | No objection. | So it is admitted. |
| P139 | Facilities Management Work Orders at the FTU. (D20475-82) | No objection. | So it is admitted. |
| P140 | Letter from Thomas S. Neuberger, Esq. addressed to Capt. John Yeomans requesting two years of light duty for Cpl/3 Price, dated 3/1/06 | No objection. | So it is admitted. |

| P141 | First Amended Complaint and Answer to First Amended Complaint ¶ 5 | Any reference to Plaintiff as a section chief would be either confusing or incorrect.  Defendants have not admitted that Plaintiff is or was a Section Chief, as that term is used to identify troopers of particular status who are responsible for a specific DSP unit formally known as a "Section."  Rather, Defendants have acknowledged only that Foraker was in charge of a group of troopers, which one might colloquially refer to as a section. Plaintiff recognizes this confusion of terms as evidenced by his including the question of his official status as a contested question of fact. | Defendants explicitly admitted in their Answer that Sgt. Foraker was a Section Chief.  Numerous witnesses – including members of their own Executive Staffs – also have testified to this fact.  This belated claim that Sgt. Foraker is not a section chief is merely a litigation strategy intended to avoid liability.  But defendants cannot run from the deposition testimony.  In the same way, they cannot and should not be allowed to run away from their own words which they admitted to in their Answer without any qualification. Plaintiff  initially shaped his discovery around what facts were being contested by defendants in this case. That Plaintiff was a Section Chief was not such a contested fact because defendants freely admitted it without qualification or reservation.  Allowing defendants to belatedly withdraw such an admission prejudices plaintiff.

 - Given defendants' ever-shifting positions in this case, out of an abundance of caution, plaintiff included this issue in the contested issues of fact.  That does not diminish the fact that defendants previously admitted to this. |

| P142 | First Amended Complaint and Answer to First Amended Complaint ¶ 6 | Fed. R. Evid. 401, 402 & 403 The parties have agreed to include portions of these paragraphs in their Stipulation of All Uncontested Facts. The remaining allegations and denials set forth in this exhibit reflect the disputes between the parties as articulated in litigation pleadings. They have no evidentiary value, are not relevant to material disputes of fact in this case, and are not helpful to the jury. | The portions that defendants admitted to have evidentiary value in this case relating to issues such as punitive damages and blatant disregard for First Amendment rights of Chaffinch's employees. |
| --- | --- | --- | --- |
| P143 | First Amended Complaint and Answer to First Amended Complaint ¶ 10 | Fed. R. Evid. 401, 402 & 403 The parties have agreed to include portions of these paragraphs in their Stipulation of All Uncontested Facts. The remaining allegations and denials set forth in this exhibit reflect the disputes between the parties as articulated in litigation pleadings. They have no evidentiary value, are not relevant to material disputes of fact in this case, and are not helpful to the jury. | The portions that defendants admitted to have evidentiary value in this case relating to various issues addressed in this paragraph. |

| | | | |
|---|---|---|---|
| P144 | First Amended Complaint and Answer to First Amended Complaint ¶ 13 | Fed. R. Evid. 401, 402 & 403<br>The allegations and denials set forth in this exhibit reflect the disputes between the parties as articulated in litigation pleadings. They have no evidentiary value, are not relevant to material disputes of fact in this case, and are not helpful to the jury. | The portions that defendants admitted to have evidentiary value in this case relating to various issues addressed in this paragraph. |
| P145 | First Amended Complaint and Answer to First Amended Complaint ¶ 38 | Fed. R. Evid. 401, 402 & 403<br><u>See</u> Defendants' Objects to P144. | See response to P144 above. |
| P146 | First Amended Complaint and Answer to First Amended Complaint ¶ 54 | Fed. R. Evid. 401, 402 & 403<br><u>See</u> Defendants' Objects to P144. | See response to P144 above. |
| P147 | First Amended Complaint and Answer to First Amended Complaint ¶ 69 | Fed. R. Evid. 401, 402 & 403<br><u>See</u> Defendants' Objects to P144. | See response to P144 above. |
| P148 | Backup data for special damages<br>(to be supplied) | | |

Draft.11

**Schedule (c)(2)**
**Plaintiffs'**
**Demonstrative Evidence and Experiments**

| Plaintiffs' Exhibit Number | Description | Defendants' Basis for Objection | Plaintiffs' Response to Objection |
|---|---|---|---|
| A | Courtboard enlargements of any numbered exhibits. | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| B | Courtboard chart - Temporal Sequence of Events. | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| C | Courtboard list - Subjects Plaintiffs' Spoke Out About | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |

| D | Court board list - The Categories of Adverse Action Against Plaintiffs | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
|---|---|---|---|
| E | Courtboard list - The Many Health and Safety Problems at the FTU | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| F | Courtboard chart - The 10 categories of Causation | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| G | Courtboard chart - Disparate Treatment: List of Other Troopers Accommodated | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| H | Courtboard chart - Sgt. Foraker is a Good Trooper | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |

| | | |
|---|---|---|
| I | Courtboard list - Defamatory Statements in the Delaware State News article of 4/7/04 | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| J | Courtboard chart - Chaffinch and MacLeish's Admissions of False Blame | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| K | Courtboard chart - Defendants' Open Vendetta Against Sgt. Foraker | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| L | Courtboard list - Sgt. Foraker's symptoms according to Dr. Tavani's Psychological Report and Testimony | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| M | Courtboard list - Sgt. Foraker's symptoms according to Dr. DeBernardo's Psychological Report | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |

| N | Courtboard list - Cpl. Price's symptoms according to Dr. Tavani's Psychological Report and Testimony | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
|---|---|---|---|
| O | Courtboard list - Cpl. Price's symptoms according to Dr. DeBernardo's Psychological Report | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| P | Courtboard list - Cpl. Warren's symptoms according to Dr. Tavani's Psychological Report and Testimony | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| Q | Courtboard list - Cpl. Warren's symptoms according to Dr. DeBernardo's Psychological Report | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| R | Courtboard chart - A Sample of FTU Problems | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |

FTU\Pretrial\Schedule(c)(2)Plaintiff.draft 3

**Schedule (e)**

**Plaintiff's Expert Witness Qualifications**

1.        Thomas C. Borzilleri, Ph.D. of Bethesda, MD will testify on economic losses.  His

résumé is also being admitted into evidence.  Based on his knowledge, skill, experience, training,

education, a review of the applicable literature, a review of relevant portions of the documents

generated in connection with this case, and his interviews with plaintiffs, he will testify as set forth in the

attached report dated October 28, 2005.

This report may be supplemented if any additional pertinent information becomes available

before trial.  Additionally he will be prepared to rebut the defense economist.

Background:

His resume is being offered into evidence.  He is an economist and holds a Doctor's, Master's

and  Bachelor's Degrees in Economics from the University of Maryland.  As an economist he is

experienced in the present value of lost earnings, the present value of lost pensions, wage growth rates,

interest rates, discount rates, changes in the economy, productivity, and other economic matters.

His work history includes being the Chief economist with the American Association of Retired

Persons (the AARP), in Washington D.C. until 1978 and the receipt of his Ph.D. Degree.  Then he was

self-employed for the next six years, primarily working in the areas of Social Security, Medicare, and

Medicaid for organizations interested in those subjects.  The President's Commission on Pension Policy

retained him for several studies, as did the United States Senate, the AARP and the National

Association of Retired Federal Employees.  From 1985 to 1990 he also was employed by J.W. Wilson

& Associates where he would analyze financial statements involving public utility rate increases.  He has

been self employed since 1990.

He has testified in court proceedings over 700 times in both federal and state courts.  He has testified in federal court here in Delaware, and in Washington, D.C.; Houston, Texas,; Alexandria, VA; and Baltimore, MD.  No federal or state court has ever rejected him as an expert witness on any subject for which he has been offered.

[attach here his reports]

2.    Mr. Ernest O. "Bud" Fini, Jr.  of Boothwyn, PA will testify on the previous likelihood that plaintiff Sgt. Christopher D. Foraker would be hired in the firearms industry upon his retirement from the DSP, how he would have been expected to progress within the firearms industry, and the typical compensation he would have been expected to receive.

Based on his knowledge, skill, experience, training, and education, a review of relevant portions of the documents generated in connection with this case, and his interviews with plaintiff, he will testify as set forth in the attached report dated October 28, 2005.

This report may be supplemented if any additional pertinent information becomes available before trial.

Background:

Mr. Bud Fini has spent over 30 years in the firearms business in various capacities, which is set forth in a resume which is being offered into evidence.  Particular emphasis has been in the marketing programs of major firearms corporations, such as Remington Arms Co., Smith & Wesson Corporation, SigArms, O.F. Mossberg & Sons, Savage Arms, Inc., and Heckler & Koch.  Each of these companies has specific divisions dealing with the development, manufacture, marketing and sale of law enforcement firearms and related products.  In practically every position in which he has served, he has been directly involved with the hiring of key personnel for various positions within the company.

[attach here the report]

3.      Mr. Jose R. Castro of Edgemont, PA will testify on vocational issues, and in particular, the impact on future earnings capacity of plaintiffs by the defendants' actions.  His résumé is also being admitted into evidence.  Based on his knowledge, skill, experience, training, education, a review of the applicable literature, a review of relevant portions of the documents generated in connection with this case, and his interviews with Mr. Fini for Sgt. Foraker, he will testify as set forth in the attached report dated October 28, 2005.

This report may be supplemented if any additional pertinent information becomes available before trial.   He also will be prepared to rebut testimony by defendants' economist on vocational issues.

Background:

Jose Castro has been a Vocational Consultant and Disability Analyst for over 35 years. He has a Masters Degree in Vocational Rehabilitation Counseling and obtained the designation as a Certified Rehabilitation Counsel in 1973.  He originally started his career as a Vocational Rehabilitation Counselor with the State of Florida and served 14 years assisting disabled clients to return to the work force.  He provided Vocational Counseling, testing, assistance with training and actual job placement.

In 1983, Mr. Castro began working in the private sector, primarily with Worker's Compensation Carriers, to establish earning capacities for injured workers.  He moved to the Delaware Valley area in 1985, where his work gravitated toward Forensic Rehabilitation.  It was in this capacity that he began working towards and establishing credentials so as to be accepted by the Judicial community as a Vocational Expert.  He currently holds four professional certifications and four licenses that have allowed him to be qualified as a Vocational Expert Witness in Federal, Superior and Family courts in Pennsylvania, Delaware and New Jersey as well as in Worker's Compensation venues in

these same geographic boundaries.  The crux of his current job duties and primary expertise is to provide Vocational Assessments to establish a person's current wage earning capacity and to compare it to their pre-injury/pre-event earning capacity.

[attach here the reports]

4.      Carol A. Tavani, M.D. of Christiana Psychiatric Services, in Christiana, DE will testify on medical and psychiatric issues.  Her résumé is also being offered into evidence.  Based on her knowledge, skill, experience, training, education, a review of the applicable literature, a review of relevant portions of the documents generated in connection with this case, and her interviews with plaintiff, he will testify as set forth in the attached reports.

This report may be supplemented if any additional pertinent information becomes available before trial, such as the medical reports of the psychiatrist who declared plaintiff unfit for duty.   She also may be used to rebut the testimony of defendants' forensic psychiatrist.

Background:

Dr. Tavani is a Board certified neuropsychiatrist.  She also is experienced in internal medicine and emergency medicine.  Her medical degree is from Thomas Jefferson University in Phila. PA.  She is past president of the Medical/Dental staff of Christiana Care Health Systems, essentially the chief of staff at the Christiana Hospital.  She is a past president of the Medical Society of Delaware and past president of the State Psychiatric Society.  She is the chairperson of the Physicians' Health Committee which helps sick and impaired physicians, and she also is the psychiatric consultant for the Professional Guidance Committee of the Delaware Bar Association, which helps sick and impaired lawyers.  She is the Delaware Delegate to the American Medical Association, where she also has served as the vice-president of the Organization of State Medical Association Presidents, a group of only 12 of over 500 delegates.   She is a distinguished Life Fellow of the American Psychiatric Association.

The bulk of what she does is a clinical, patient-related medical practice.  Here since the mid-1980s she has served as the principal psychiatrist who provides consultation for the medical-surgical beds at Christiana Hospital.  There she conducts about 1,500 consultations per year at that hospital

dealing mainly with critical care pharmacology and drug interactions.  For example, if a patient with cancer is depressed and is on 20 different medications, she will consult to determine the medicine compatible with a patient's conditions to treat that depression.

Since 1989 she also has operated a private practice where she also sees some of the same patients who she treated when they were admitted to the hospital.

She has testified in state and federal courts on medical and psychiatric issues. No federal or state court has ever rejected her as an expert witness on any subject for which she has been offered.

[attach here the reports]

FTU\Pre-Trial\ Schedule (e) P's ExpertWitnessQualifications draft 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **CORPORAL B. KURT PRICE;** | : | |
| **CORPORAL WAYNE WARREN; and** | : | |
| **SERGEANT CHRISTOPHER D. FORAKER,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **C.A.No.04-956-GMS** |
| | : | |
| **COLONEL L. AARON CHAFFINCH,** | : | |
| **individually and in his official capacity as** | : | |
| **Superintendent of the Delaware State Police;** | : | |
| **LIEUTENANT COLONEL THOMAS F.** | : | |
| **MACLEISH, individually and in his official** | : | |
| **capacity as Deputy Superintendent of the** | : | |
| **Delaware State Police; DAVID B. MITCHELL,** | : | |
| **in his official capacity as the Secretary of the** | : | |
| **Department of Safety and Homeland Security of** | : | |
| **the State of Delaware; and DIVISION OF STATE** | : | |
| **POLICE, DEPARTMENT OF SAFETY AND** | : | |
| **HOMELAND SECURITY, STATE OF** | : | |
| **DELAWARE,** | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFFS' PRELIMINARY JURY INSTRUCTIONS**

**INTRODUCTION**

    Members of the jury: Now that you have been sworn, I am now going to give you some

preliminary instructions to guide you in your participation in the trial.

**THE PARTIES AND THEIR CONTENTIONS (Plaintiff's Version):**

    Before I begin with those instructions, however, allow me to give you an overview of who the

parties are and what each contends.

The parties in this case are the plaintiff, Sgt. Christopher D. Foraker, and the defendants,

Colonel Thomas F. MacLeish and retired Colonel Aaron L. Chaffinch, both of the Delaware State

Police. The Division of State Police within the Department of Homeland Security of the State of

Delaware is not a party to this lawsuit.

In this case the plaintiffs contend that they were the victims of adverse action and retaliation

after they exercised their free speech and petition rights by (1) reporting that the health and safety of

Troopers and others were being endangered by hazardous conditions at the Delaware State Police's

Firearms Training Unit in Smyrna, and (2) speaking to the Delaware State Auditor's Office about health

hazards, safety concerns and other problems at the Firearms Training Unit, as well as mismanagement

and other root causes of those dangerous conditions. The defendants deny all claims raised against

them.

## THE PARTIES AND THEIR CONTENTIONS (Defendants' Version):

The parties in this case are the plaintiffs Cpl. B. Kurt Price, Cpl. Wayne Warren, and Sgt. Christopher

D. Foraker. The defendants are L. Aaron Chaffinch, the retired Superintendent of the Delaware State

Police, Thomas F. MacLeish, currently the Superintendent, and David B. Mitchell, Secretary of Safety

and Homeland Security for the State of Delaware.

In this case, the plaintiffs claim that they exercised their constitutional rights to free speech and petition

when they raised concerns about the environmental conditions at the State Police indoor firing range.

The further assert that, in retaliation for their raising concerns, the defendants took adverse action

against them.

The defendants deny that they took any action against the plaintiffs because of their statements about

the conditions at the range.

## DUTIES OF THE JURY

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply to those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the parties mean. Of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

## EVIDENCE

The evidence from which you will find the facts will consist of the testimony of witnesses; (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court – you may not ask questions). Evidence will also consist of documents and other things

received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now.

1. Statements, arguments, and questions by lawyers are not evidence.

2. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3. Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4. Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of the fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

-4-

## CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY

You are the sole judges of each witness' credibility.  You should consider each witness' means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on the witness stand; and the circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment is not believable.  This instruction applies to the testimony of all witnesses, including expert witnesses.

## SUMMARY OF APPLICABLE LAW

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.  But in order to help you follow the evidence, I will now give you a brief summary of the elements which plaintiffs must prove to make their case.

**First Amendment Retaliation**

To prevail on a claim of retaliation, any plaintiff must prove by a preponderance of the evidence that either individual defendant intentionally violated his protected First Amendment rights and that this violation was a substantial or motivating cause of adverse action taken against him.

He must prove that he was the victim of adverse action that would deter a person of ordinary firmness from engaging in protected activity under the First Amendment.  Put another way, the

retaliatory actions must be sufficient to cause reasonably hardy persons to refrain from exercising their

rights under the First Amendment.

If, on the other hand, he cannot prove this, then you must return a verdict for the defendants.

## BURDEN OF PROOF

As I told you during the voir dire, this is a civil case. Here Sgt. Foraker has the burden of

proving his case by what is called a preponderance of the evidence. That means he has to produce

evidence which, considered in the light of all the facts, leads you to believe that what he claims is more

likely true than not. To put it differently, if you were to put the plaintiff's and the defendant's evidence

on opposite sides of the scale, the evidence supporting the plaintiff, Sgt. Foraker, would have to make

the scale tip somewhat on his side. If he fails to meet this burden, the verdict must be for the

defendants. Sgt. Foraker must also prove his damages by a preponderance of the evidence.

Those of you who have sat on  criminal cases will have heard of proof beyond a reasonable

doubt. That requirement does not apply to a civil case, therefore, you should put it out of your mind.

## CONDUCT OF THE JURY

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit

anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on

your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak

to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not

supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion

about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the court's

attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, take on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceeding or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

## COURSE OF THE TRIAL

This trial, like most jury trials, comes in seven stages or phases. We have now completed the

first two phases  –  your selection as jurors and these preliminary instructions  The remaining stages are:

(3)     Opening statements which are intended to explain to you what each side intends to

prove and are offered to help you follow the evidence.  The lawyers are not required to

make opening statements at this time or they may defer this opening until it is their turn

to present evidence.

(4)     The presentation of the evidence which will include live witnesses and may also include

previously recorded testimony, as well as documents and things;

(5)     My final instructions on the law to you;

(6)     The closing arguments of the lawyers which will be offered to help you make your

determination; and finally,

(7)     Your deliberations where you will evaluate and discuss the evidence among yourselves

and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal.  So, as the

evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.

## **TRIAL SCHEDULE**

Though you have heard me say this during the voir dire, I want to again outline the schedule I

expect to maintain during the course of this case.

This case is expected to take 5 days to try.  We will normally begin the day at 9:00 A.M.

promptly.  We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00 P.M. to 4:30

P.M.  There will be a fifteen minute break at 11:00 A.M., and another fifteen minute break at 3:15

P.M.  The only significant exception to this schedule may occur when the case is submitted to you for your deliberations.  On that day, the proceedings might last beyond 4:30 P.M.  We will post a copy of this schedule for your convenience in the jury deliberation room.

FTU/prayers/preliminary jury instructions draft 3

**Schedule (l)**

**A Statement That Each Party Has Completed Discovery, Including Expert Depositions**.

<u>Plaintiff's Statement</u>

Plaintiff has not completed discovery.

At the time of this writing, the defense has yet to produce the financial documents relating to punitive damages which were promised at the depositions of the individual defendants, so they will have to be produced and added to the exhibit list.

Medical records produced by the psychiatrist who declared the plaintiff unfit for duty are being evaluated for completeness.

The medical records of Rt. Major Forester have not yet been obtained by subpoena since defense counsel advised the health care providers not to comply with the subpoena.

<u>Defendants' Statement</u>

Defendants have completed discovery.

Expert witnesses have been properly disclosed, and expert discovery is closed.

Defendants are preparing and will produce relevant financial documents related to Plaintiff's claim for punitive damages.

Plaintiffs presumably have not obtained private medical information of Maj. (Ret.) Joseph Forester from certain medical providers because of their failure to serve subpoenas that comply with the applicable law.

Draft.04