IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORPORAL B. KURT PRICE, et al., : | |
| : | |
| Plaintiffs, : | |
| : | C.A. No. 04-956-GMS |
| v. : | |
| : | |
| COLONEL L. AARON CHAFFINCH, et al., : | |
| : | |
| Defendants. : | |

**DEFENDANTS' MEMORANDUM OF LAW CONCERNING OFFSETS TO DAMAGES**

The purpose of this memorandum is to set forth defendants' position that they are entitled to an offset against damages for (1) payments made to plaintiffs Kurt Price and Wayne Warren by the State of Delaware through the Workers' Compensation system and (2) disability pension payments made to Price and Warren through the Delaware State employee pension system.

**I.    FACTUAL BACKGROUND**

Plaintiffs Price and Warren assert that defendants damaged them by accepting the determinations of two physicians that they are not fit for duty, and requiring them to separate from service with the Delaware State Police (the "DSP"). Price and Warren are not fit for duty because they have suffered hearing loss and no longer can satisfy the job requirements of a state trooper.

Both Price and Warren have filed claims for workers' compensation benefits. The State of Delaware has accepted liability for the hearing loss, and both Price and Warren have entered into settlements. The State will pay Price $506.81 per week in total partial disability benefits for 300 weeks beginning April 7, 2006, the date of his retirement from the DSP. This is a total of $152,043 that flows directly from defendants' decision to separate him from service. Warren's

settlement has not been finalized because he has not retired, but it is expected to be a similar amount and it is expected to begin in June 2006.

Also as a result of the loss of state police employment, Price and Warren are eligible for disability pensions that will pay them up to 95% of their salary in addition to the workers' compensation payments set forth above.[1] Defendants' determination that Price and Warren must separate from service makes them eligible for the additional increment available in the disability pension.

Because the workers' compensation payments and the disability portion of plaintiffs' pensions are the direct result of the DSP's decision that plaintiffs must separate because they are not fit for duty, this amount should be offset against a lost wage award. Such an offset is appropriate because lost wages in this case and wage loss in the workers' compensation case and the disability component of a disability pension come from a common source – the State of Delaware. Because the State is the sole entity responsible for the workers' compensation payments and disability pension benefits, as well as any lost wages to which Price and Warren would be entitled following trial, the collateral source rule does not apply.

II. **ARGUMENT: THE COLLATERAL SOURCE RULE DOES NOT BAR AN OFFSET BECAUSE THE FUNDS TO PAY LOST WAGES WOULD COME FROM THE STATE, WHICH ALSO FUNDS THE WORKERS' COMPENSATION SYSTEM AND THE DISABILITY PENSION.**

But for defendant MacLeish's decision that Price's and Warren's hearing loss rendered them unfit for duty, and his consequent decision to separate them from the DSP, Price and Warren would not be eligible for the workers' compensation or disability pension benefits that

---

[1] Price and Warren are also eligible for state police service pensions because both have served more than 20 years with the DSP. Defendants do not seek an offset for the amount Price and Warren would otherwise receive as a service pension. Plaintiffs would have been entitled to this amount even if they had not been found unfit for duty and had simply retired.

they are now eligible to receive. If plaintiffs are awarded damages at trial, absent an offset of these amounts, the State of Delaware would be required to open its coffers three times to make payments for a single loss and plaintiffs will be handed a windfall recovery for that single wage loss. This result is contrary to the law.

The collateral source rule does not operate to bar a setoff here. "The collateral source doctrine," as described by the Delaware Supreme Court,

> is predicated upon the theory that a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant. *The doctrine, however, does permit the tortfeasor to obtain the advantage of payments made by himself or from a fund created by him; in such an instance the payments come, not from a collateral source, but from the defendant himself.*

*Yarrington v. Thornburg*, 205 A.2d 1, 2 (Del. 1964) (emphasis added); *see also State v. Calhoun*, 634 A.2d 335, 338 (Del. 1993); *Guy J. Johnson Trans. Co. v. Dunkle*, 541 A.2d 551, 553 (Del. 1988) (quoting *Yarrington*).

Federal courts have reached the same conclusion. *See Feeley v. United States*, 337 F.2d 924, 927 (3d Cir. 1964) ("The defendant wrongdoer should not, it is said, get the benefit of payments that come to the plaintiff from a collateral source. However, where the defendant has been the source of the payment, the damages, generally, cannot include the benefit conferred by the defendant."). As the Ninth Circuit held, the collateral source rule "is inapplicable when the defendant is the source of compensation to the plaintiff," further explaining:

> The philosophy underlying the Collateral Source Rule seems to be that either the injured party or the tort feasor is going to receive a windfall, if a part of the pecuniary loss is paid for by an outside source, and that it is more just that the windfall should inure to the benefit of the injured party than that it should accrue to the tort feasor. This conclusion seems to be based on substantial justice. *This reasoning, however does not apply in a situation where the collateral source is the defendant himself.* Under those

-3-

> *circumstances no one gets a windfall and if a recovery were allowed under those circumstances the result would be that the plaintiff would receive a double recovery and that the defendant would be mulcted twice for the same item of damages.*

*Olivas v. Aetna Life & Cas. Co.*, 506 F.2d 1158, 1163-64 (9th Cir. 1974) (emphasis added); *see also Smith v. Office of Pers. Mgmt.*, 778 F.2d 258, 263 (5th Cir. 1985).

Absent a setoff here, defendants will be "mulcted" three times over. Plaintiffs Price and Warren would recover their lost wages through (1) workers' compensation payments, (2) their disability pension, and (3) the lost wage damages following a result in their favor in this action, and the State of Delaware would have to pay for it all. This result would unduly punish the State while providing plaintiffs Price and Warren with a substantial windfall. A setoff, therefore, is appropriate.

### III. CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court order that any lost wages for which defendants ultimately are found liable at trial should be offset by plaintiffs' workers' compensation payments and the disability portion of plaintiffs' pensions.

Respectfully submitted,

Date: May 1, 2006

Noel C. Burnham (DE Bar I.D. #3483)
Richard M. Donaldson (DE Bar I.D. #4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7840
rdonaldson@mmwr.com

*Counsel for Defendants L. Aaron Chaffinch, Thomas F. MacLeish, David B. Mitchell, and the Division of State Police, Department of Safety and Homeland Security, State of Delaware*