IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORPORAL B. KURT PRICE, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A.No.04-956-GMS |
| | : | |
| COLONEL L. AARON CHAFFINCH, et al., | : | |
| | : | |
| Defendants. | : | |

PLAINTIFFS' MEMORANDUM OF LAW CONCERNING
THE COLLATERAL SOURCE RULE

In accord with the schedule set by the Court at the pretrial conference, plaintiff submits this memorandum of law addressing the applicability of the collateral source rule to the present litigation.

I. THE COLLATERAL SOURCE RULE BARS CONSIDERATION OF WORKERS COMPENSATION AS AN OFFSET TO PLAINTIFFS' DAMAGES.

**A. Introduction.** Although the Third Circuit has not yet had the opportunity to address the application of the collateral source rule to workers compensation payments, it has had <u>repeated</u> opportunity to address the rule's application in other similar contexts. As review of those cases and contexts makes clear, the Third Circuit would apply the collateral source rule to our case. Thus, any damages award may not be offset by workers compensation payments.

**B. Discussion.** The collateral source rule states that "payment which a plaintiff receives for his or her loss from another source is not credited against the defendant's liability for all damages resulting from its wrong or negligent act." <u>Craig v. Y&Y Snacks, Inc.</u>, 721 F.2d 77, 83 (3d Cir. 1983) (citing Restatement (Second) of Torts § 920A(2) (1979)). As Comment a of

Restatement § 920A explains, "it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor."[1]

**1. Unemployment Payments Are Not Offset.** As the Third Circuit established in Craig, 721 F.2d at 82, the general rule is that unemployment benefits should not be deducted from a back pay award. In other words, they qualify as a collateral source within the meaning of the rule.

The rationale for such a rule is that equitably, society does not want a defendant to benefit from his own wrongdoing. Even though at first glance such an approach appears to provide a double recovery to plaintiff, it is better to bestow a double recovery on an injured plaintiff than on a wrong-doing defendant. Id. at 83. Additionally, as both the Supreme Court and Third Circuit have explained,

> since no consideration has been given to collateral *losses* in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received.

Id. at 84 (quoting NLRB v. Gullett Gin Co., 340 U.S. 361, 364 (1951)) (emphasis in original)). Morever, such a policy has been found to further the objectives of the civil rights statutes in ending illegal conduct and compensating injured victims. Maxfield v. Sinclair Int'l, 766 F.2d 788, 794 (3d Cir. 1985), vacated and remanded on other grounds, 469 U.S. 1202 (1985).

---

[1] See also Feeley v. U.S., 337 F.2d 924, 926-27 (3d Cir. 1964) (the rule "may be described as the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanate from sources other than the wrongdoer. Under the collateral source rule a plaintiff who has been paid his salary or a pension during disability, or had his medical expenses paid by another, or out of the proceeds of an accident insurance policy, may still recover full damages for these items from a defendant who is liable for the injury. To this extent, plaintiff may get double payment on account of the same items. The defendant wrongdoer should not, it is said, get the benefit of payments that come to the plaintiff from a collateral source. However, where the defendant has been the source of the payment, the damages, generally, cannot include the benefit conferred by the defendant.") (footnotes and internal quotation marks omitted)

Deterrence also is an important factor. Gelof v. Papineau, 829 F.2d 452, 455 (3d Cir. 1987).

        **a. The Narrow Exception.** In Dillon v. Coles, 746 F.2d 998, 1007 (3d Cir. 1984), the Third Circuit carved out a narrow exception to the general rule on unemployment compensation. When the state is the employer, unemployment and welfare benefits can be offset, but only subject to specific conditions. The Dillon court found it persuasive that Pennsylvania had a statute *explicitly requiring recoupment* of public benefits in the case of a back pay award for wrongful discharge. Id. It reasoned that it would be "wasteful of public funds to require the state to institute [a] separate suit . . . to recoup part of the back pay award." Id.[2]

Three years later, the Third Circuit narrowed the Dillon exception and held that "in cases in which the state has not defined the social insurance benefit by including a provision for recoupment against back pay awards, Craig is the controlling precedent." Gelof v. Papineau, 829 F.2d 452, 455 (3d Cir. 1987).

The court looked at the Pennsylvania statute relied upon in Dillon, Pa.State.Ann. Tit. 43, § 874(b)(3) (Purdon Supp. 1982), which *explicitly* required recoupment in the case of a back pay award, and then found that Delaware has no such statute, and therefore, fell outside the scope of the narrow Dillon exception. Gelof, 829 F.2d at 455. The closest related Delaware statute is 19 Del.C. § 3325, and the Third Circuit observed in Gelof that it " does not . . . provide for recoupment by the fund of unemployment benefits when back pay has been awarded for a

---

    [2] Regarding the welfare payments also at issue in Dillon, the court found that Pennsylvania also had a statute treating public assistance payments as a loan, subject to repayment. Id.

wrongful discharge" and is thus inapplicable. Gelof, 829 F.2d at 454.[3]

In Gelof, the Third Circuit rejected the State of Delaware's argument that it should receive the benefit of the Dillon exception, even though it lacked the required recoupment statute. The State argued that because Delaware reimburses the unemployment fund on a dollar for dollar basis, that it is the direct source of the unemployment funds, not a collateral source. The Third Circuit rejected this argument. It found that the policy considerations of deterrence which underlie the Craig opinion were no less applicable when the state reimburses such a fund on a dollar for dollar basis. Gelof, 829 F.2d at 455. The Court also observed that the reimbursement to the fund by the state is not simply "a form of state largess" but that all payments are financed from tax dollars, paid for by employees and citizens and thus employees contributed to this fund. Id. Indeed, "[b]oth in the public and private sector unemployment benefits are earned by the employee because of past labor. In this respect, a public and private employee are identically situated." Id. Thus because the employees are only receiving the benefit of funds which they have already contributed to and these funds may not be set off against a monetary award.

**2. Pension Payments Are Not Offset.** In the case of McDowell v. Avtex Fibers, Inc., 740 F.2d 214, 217 (3d Cir. 1984), vacated and remanded on other grounds, 469 U.S. 1202

---

[3] 19 Del.C. § 3325 does not deal with back pay awards but only the "overpayment" of benefits upon final determination that such benefits were not warranted when there has been fraud or an "absence of fraud." 19 Del.C. § 3325. The Delaware Supreme Court has found this "absence of fraud" provision to be "so poorly drawn" as to be essentially "meaningless." Snead v. Unemployment Insurance Appeal Bd., 486 A.2d 676, 679 (Del. 1984). In trying to make sense of the long and poorly drafted provision, the Delaware Supreme Court found an "implicit . . . fairness requirement" allowing recovery "only where equitable considerations preponderate in the State's favor." Id. at 680. The court concluded that the Delaware "General Assembly would have wanted to protect good faith reliance on the State's payment of benefits." Davis v. Unemployment Insurance Appeal Bd., 1990 WL 35234, at *5 (Del.Super.) (citing Snead, 489 A.2d at 679).

(1985), the Third Circuit found unemployment compensation to be "indistinguishable" from pension plans and found that the two should be "treated identically because of [their] similarities." As such, pension benefits should not be off set against back pay awards. Id. at 218.

The court found that both unemployment and pension plans "are designed to serve social policies independent of those served by back pay awards" and that back pay awards "should not be affected by a system of compensation which is designed to serve a wholly independent social policy." Id. at 217. Continuing, the court agreed with the Craig rationale that because no consideration is given to "collateral losses" suffered by plaintiff, no consideration should be given to "collateral benefits." Id.

   **3. Social Security Payments Are Not Offset.** In Maxfield v. Sinclair Int'l, 766 F.2d 788, 794-95 (3d Cir. 1985), the Third Circuit held that Social Security benefits are to be treated as collateral benefits, not subject to set off against damages. "There are no significant discernible differences between Social Security benefits, unemployment benefits and pension benefits...." Id. at 795. As the Maxfield Court explained, under "the collateral source rule payments under Social Security, welfare programs, unemployment compensation and similar programs have all been treated as collateral benefits which would not ordinarily be set off against damages awarded." Id. at 793-94.[4]

   **4. Sick Leave Payments Are Not Offset.** In Leeper v. U.S., 756 F.2d 300, 306 (3d Cir. 1985), the Third Circuit held that accumulated sick leave payments were a collateral source, and thus not subject to offset.

   **5. Disability Pension Payments Are Not Offset.** In Eichel v. New York Cent.

---

[4] See also, Smith v. U.S., 587 F.2d 1013 (3d Cir. 1978) (Social Security); Titchnell v U.S., 681 F.2d 165 (3d Cir. 1982) (Medicare); Varlack v. SWC Caribbean, Inc., 550 F.2d 171 (3d Cir. 1977) (government-reimbursed medical and rehabilitative expenses).

R. Co., 375 U.S. 253, 254 (1963), the Supreme Court upheld exclusion of evidence of disability pension payments made to a former employee, finding that "the likelihood of misuse by the jury clearly outweighs the value of this evidence" and finding that "evidence of collateral benefits is readily subject to misuse by a jury." Id. at 255.

### C. Workers Compensation Payments Should Not Be Offset.

#### 1. The Third Circuit Would Not Offset Workers Compensation Payments.

As revealed by the discussion above, the Third Circuit and the Supreme Court have found the collateral source rule to apply across the spectrum - to unemployment compensation payments, pension payments, Social Security payments, sick leave payments and disability pension payments. Thus, payments from all of these many sources may not be offset against a damages award. Plaintiffs respectfully submit that the Third Circuit would reach the same decision as to workers compensation benefits and also refuse to allow a wrongdoing defendant to benefit from a general social insurance system such as workers compensation which is designed to serve social policies independent and distinct from those underlying 42 U.S.C. § 1983.

Plaintiffs note that both the Sixth and the Eighth Circuits have held that workers compensation payments are subject to the collateral source rule. In Thurman v. Yellow Freight Systems, Inc., 90 F.3d 1160 (6th Cir. 1996), the Sixth Circuit rejected the defense contention that workers compensation payments fall outside the collateral source rule. "Like unemployment benefits, worker's compensation benefits are a collateral source that should not be deducted from back pay." Id. at 1171 (citing Knafel v. Pepsi-Cola Bottlers of Akron Inc., 829 F.2d 1473 (6th Cir. 1990)). The Eighth Circuit has held the same. See Moysis v. DTG Datanet, 278 F.3d 819, 282 (8th Cir. 2002).

## II. BECAUSE PLAINTIFFS HAVE NOT APPLIED FOR DISABILITY PENSIONS, THERE CAN BE NO OFFSET OF NON-EXISTENT DISABILITY PENSION PAYMENTS.

The defense claim that plaintiffs' damages award should be offset by disability pension payments is a red herring. (OB at 1). Neither plaintiffs Price nor Warren have applied for disability or a disability pension. Accordingly, there are no payments which can be offset from a damages award at trial.

Even if plaintiffs had filed disability applications and were receiving disability award, as discussed in Argument I above, the Supreme Court has held that disability pension payments are subject to the collateral source rule and may not be offset. Eichel v. New York Cent. R. Co., 375 U.S. 253, 254 (1963).

## III. THE ELEVENTH AMENDMENT PREVENTS THE DOUBLE-RECOVERY FROM STATE COFFERS AS FEARED BY DEFENDANTS.

Even if we were to overlook the application of the collateral source rule and assume *arguendo* that plaintiffs would somehow receive a double recovery from a damages award and workers compensation payments, defendants have still overlooked one key fact - the State of Delaware is not a defendant in this case as a result of the Eleventh Amendment. Thus, the state will not be "'mulcted' three times over" (OB at 4) as defendants fear. Although the state may be the source of workers compensation payments,[5] the state will not be the source of the damages award against defendants because of the bar of the Eleventh Amendment. The source of the damages award will be the two wrongdoers themselves - individual defendants Chaffinch and MacLeish.

It is hornbook law that the Eleventh Amendment prevents plaintiffs from suing the State

---

[5] Or perhaps it is more accurate to say that the state's insurance company is the source of workers compensation payments.

of Delaware, its agencies or official capacity defendants for damages of any kind. See, e.g. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); U.S. Const. Amend. XI. A damages award simply cannot run against the State of Delaware. Thus, the State is obviously not the source of the payment for the award.[6]

The only true defendants in this case are both individual defendants - Chaffinch and MacLeish. They are the only defendants against whom plaintiffs may collect a damages award because of the Eleventh Amendment, and plaintiffs seek to impose personal liability upon them for their illegal actions. See, e.g. Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."). Accordingly, although workers compensation payments may come from the State, the damages award will come from the individual defendants themselves.

To the extent defendants might claim that the existence of the state indemnification statute, 10 Del.C. § 4001 et seq., transfers Eleventh Amendment immunity to the individual capacity defendants, such a claim would be clearly mistaken. A "state cannot manufacture immunity for its employees simply by volunteering to indemnify them." Benning v. Bd. of Regents of Regency Univ., 928 F.2d 775, 778 (7th Cir. 1991). A "state's decision to indemnify its employees does not transform a suit against individual defendants into a suit against the sovereign." Id. at 779.[7]

---

[6] For the sake of completeness, plaintiffs note that as paragraph 9 of the Amended Complaint in Price and paragraph 7 of the Complaint in Foraker make clear, the State is "only joined in this action for purposes of collecting attorneys' fees and costs" as explicitly permitted by the Supreme Court. See, e.g. Missouri v. Jenkins, 491 U.S. 274, 279 (1989).

[7] Accord Sales v. Grant, 224 F.3d 293, 297-98 (4th Cir. 2000); Hudson v. City of New Orleans, 174 F.3d 677, 687 n.7 (5th Cir. 1999); Jackson v. Georgia Dep't of Transp., 16 F.3d 1573, 1577-78 (11th Cir.1994); Wilson v. Beebe, 770 F.2d 578, 587-88 (6th Cir.1985) (en banc); Demery v. Kupperman, 735 F.2d 1139, 1146-48 (9th Cir.1984); Farid v. Smith, 850 F.2d 917,

## CONCLUSION

For the aforementioned reasons, the collateral source rule applies to any workers compensation or disability payments received by or available to plaintiffs. In order to prevent jury confusion and prejudice to plaintiffs, defendants should be barred from discussing or referencing any such payments or their availability at trial.

        Respectfully Submitted,

        **THE NEUBERGER FIRM, P.A.**

        /s/ Stephen J. Neuberger
        **THOMAS S. NEUBERGER, ESQ. (#243)**
        **STEPHEN J. NEUBERGER, ESQ. (#4440)**
        Two East Seventh Street, Suite 302
        Wilmington, DE 19801
        (302) 655-0582
        TSN@NeubergerLaw.com
        SJN@NeubergerLaw.com

Dated: May 5, 2006        Attorneys for Plaintiffs

---

923 (2d Cir.1988); Griess v. Colorado, 841 F.2d 1042, 1046 (10th Cir.1988).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CORPORAL B. KURT PRICE, et al.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A.No.04-956-GMS |
| | : | |
| **COLONEL L. AARON CHAFFINCH, et al.,** | : | |
| | : | |
| Defendants. | : | |

## ORDER

This _____ day of _____, 2006, having considered the parties submissions regarding the collateral source rule and its applicability to this case, it hereby Ordered that -

Defendants are barred from discussing or referencing in any way, be it through documents or testimony, workers compensation or disability payments that have been received by or are available to plaintiffs.

_____
**THE HONORABLE GREGORY M. SLEET**

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on May 5, 2006, I electronically filed this **PLEADING** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Robert Fitzgerald, Esquire
> Montgomery McCracken Walker & Rhoads, LLP
> 123 South Broad Street
> Philadelphia, PA 19109
>
> Richard M. Donaldson, Esquire
> Montgomery McCracken Walker & Rhoads, LLP
> 300 Delaware Avenue, Suite 750
> Wilmington, DE 19801

> /s/ Stephen J. Neuberger
> **STEPHEN J. NEUBERGER, ESQ.**

FTU/ Pleadings / Collateral Source Rule Mem of Law.FINAL