IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORPORAL B. KURT PRICE, et al., | : | |
| Plaintiffs, | : | |
| v. | : | C.A.No.04-956-GMS |
| COLONEL L. AARON CHAFFINCH, et al., | : | |
| Defendants. | : | |

PLAINTIFFS' BENCH MEMORANDUM REGARDING
PENSION BENEFITS AND THE COLLATERAL SOURCE RULE

I.  UNDER THIRD CIRCUIT PRECEDENT, THE COLLATERAL SOURCE RULE BARS CONSIDERATION OF PENSION BENEFITS COMPENSATION AS AN OFFSET TO PLAINTIFFS' DAMAGES.

**A. The General Rule in the Third Circuit.** The collateral source rule states that "payment which a plaintiff receives for his or her loss from another source is not credited against the defendant's liability for all damages resulting from its wrong or negligent act." Craig v. Y&Y Snacks, Inc., 721 F.2d 77, 83 (3d Cir. 1983) (citing Restatement (Second) of Torts § 920A(2) (1979)). As Comment a of Restatement § 920A explains, "it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor."[1]

---

[1] See also Feeley v. U.S., 337 F.2d 924, 926-27 (3d Cir. 1964) (the rule "may be described as the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanate from sources other than the wrongdoer. Under the collateral source rule a plaintiff who has been paid his salary or a pension during disability, or had his medical expenses paid by another, or out of the proceeds of an accident insurance policy, may still recover full damages for these items from a defendant who is liable for the injury. To this extent, plaintiff may get double payment on account of the same items. The defendant wrongdoer should not, it is said, get the benefit of payments that come to the plaintiff from a collateral source. However, where the defendant has been the source of the

The rationale for such a rule is that equitably, society does not want a defendant to benefit from his own wrongdoing. Even though at first glance such an approach appears to provide a double recovery to plaintiff, it is better to bestow a double recovery on an injured plaintiff than on a wrong-doing defendant. Id. at 83. Morever, such a policy has been found to further the objectives of the civil rights statutes in ending illegal conduct and compensating injured victims. Maxfield v. Sinclair Int'l, 766 F.2d 788, 794 (3d Cir. 1985), vacated and remanded on other grounds, 469 U.S. 1202 (1985). Deterrence also is an important factor. Gelof v. Papineau, 829 F.2d 452, 455 (3d Cir. 1987).

As a result, the Third Circuit established in Craig, 721 F.2d at 82, the general rule is that unemployment benefits should not be deducted from a back pay award. Similarly, social security payments cannot be used as an offset, Maxfield v. Sinclair Int'l, 766 F.2d at 794-95, sick leave payments cannot be used as an offset, Leeper v. U.S., 756 F.2d 300, 306 (3d Cir. 1985), and disability pension payments cannot be used as an offset. Eichel v. New York Cent. R. Co., 375 U.S. 253, 254 (1963).

**B. Pension Payments Are Not Offset In the Third Circuit.** In the case of McDowell v. Avtex Fibers, Inc., 740 F.2d 214, 217 (3d Cir. 1984), vacated and remanded on other grounds, 469 U.S. 1202 (1985), the Third Circuit found unemployment compensation to be "indistinguishable" from pension plans and found that the two should be "treated identically because of [their] similarities." As such, the Third Circuit found that pension benefits should not be off set against back pay awards. Id. at 218.

The McDowell court provides ample reasons for this policy. For example, the court

---

payment, the damages, generally, cannot include the benefit conferred by the defendant.") (footnotes and internal quotation marks omitted)

found that both unemployment and pension plans "are designed to serve social policies independent of those served by back pay awards" and that back pay awards "should not be affected by a system of compensation which is designed to serve a wholly independent social policy." Id. at 217.

In addition, "a rule proscribing the deduction of pension plan benefits would dilute the purpose of ending discrimination" Id. at 217.

The McDowell court also expressed a concern about how deducting pension benefits from back pay could potentially reduce the amount in liquidated damages[2] to which plaintiff would be entitled "while benefitting the employer by giving it a windfall - a result certainly not intended by the ADEA." Id., at 218.

Defendants cannot point to any Third Circuit law which requires a pension offset.

Continuing, McDowell also agreed with the Craig rationale found in NLRB v. Gullet Gin Co., 340 U.S. 361, 364 (1951) that "Since no consideration has been given or should be given to collateral *losses* in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received." Id. Now, Defendants seek to twist this statement into a rationale for treating pension payments as an offset. This language, within the context of the National Labor Relations Act as interpreted in 1951 makes sense. Pension benefits losses due to termination were not awarded by the National Labor Relations Board. So the Supreme Court was not contemplating them when it promulgated the rationales for its holding.

---

[2]McDowell was an ADEA case. In plaintiffs' case, the affect would potentially be on punitive damages rather than liquidated damages.

II.    THE RELEVANT FACTS IN PLAINTIFFS' CASE.

Nevertheless, Defendants argue that Plaintiffs somehow opened a door during economist Dr. Borzilleri's testimony.

A.    **As to Cpl. Warren and Cpl. Price.**  In simplified form, Dr. Borzilleri's computations provide the difference between the amount which plaintiffs Warren and Price would have earned up to age 55 if they had been able to stay with the Delaware State Police until mandatory retirement age and the significantly decreased figure because the jobs they will now get for those years are less lucrative, as explained by vocational expert Jose Castro. Included in this calculation is the fact that the monthly payment of their pensions will not grow to the much higher levels they would have received if they had stayed with the DSP through age 55.[3]

B.    **As to Sgt. Foraker.**  Meanwhile, Dr. Borzilleri provides a further level of loss for plaintiff Foraker based upon further future losses from age 55 to retirement as delineated by Mr. Fini, Firearms Industry expert, but the concept is the same. He lost a few several hundred thousand dollars due to the fact that his pension will not grow as much as it would have grown if he had stayed with the DSP until age 55.

C.    **Analysis.**  In order for plaintiffs to be made whole, the loss of pension benefits must be considered. Otherwise, their damages will be understated.

III.    PENSIONS AND FUTURE ECONOMIC LOSS IN OTHER JURISDICTIONS.

The Sixth, Seventh and Eighth Circuits have refused to deduct pension benefits from future economic losses. <u>Hamlin v. Charter Township of Flint</u>, 165 F.3d 426, 433-434 (6th Cir. 1999), <u>EEOC v. O'Grady</u>, 857 F.2d 383, 389 (7th Cir. 1988), <u>Doyne v. Union Electric Company</u>,

---

[3] One must keep in mind that to the extent that they receive lower payments prior to age 55 upon leaving the DSP early that they had already earned those amounts due to their time to date in the DSP.

953 F.2d 447, 451-452 (8th Cir. 1992).

Indeed, Hamlin provides a five factor test to determine whether pension benefits are collateral:

1) whether the employee makes any contribution to funding of the [benefit] payment;

2) whether the benefit plan arises as the result of a collective bargaining agreement;

3) whether the plan and payments thereunder cover both work-related and nonwork-related injuries;

4) whether payments from the plan are contingent upon length of service of the employee; and

5) whether the plan contains any specific language contemplating a set-off of benefits received under the plan against a judgment received in a tort action.

Hamlin, 165 F. 3d at 435 (brackets added).

All five factors weigh in plaintiffs' favor in this case. Plaintiffs contribute 7% to the pension funds. The pension is admittedly part of the collective bargaining agreement between the DSP and the trooper's Union. The plan includes both service and disability pension benefits. Payments are contingent upon length of service, and a review of the union contract indicated that there is no specific language contemplating set-off. See Pension Plan (attached as Exhibit A).

Meanwhile, EEOC v. Grady, 857 F.2d at 391 and Hamlin, 165 F.3d at 452 emphasize the rationale that the pension benefits should not be deducted from any award because they "may be viewed as *earned* by the claimaints." (Emphasis in original). The same must be said in plaintiffs case.

Moreover, there are no cases from other jurisdictions which identify an offset for pension payments when there will be pension loss later due to the termination of the employment relationship.

IV.  **THE ELEVENTH AMENDMENT PREVENTS THE DOUBLE-RECOVERY FROM STATE COFFERS AS FEARED BY DEFENDANTS.**

Even if we were to overlook the application of the collateral source rule and assume *arguendo* that plaintiffs would somehow receive a double recovery from a damages award and service pension payments, defendants have still overlooked one key fact - the State of Delaware is not a defendant in this case as a result of the Eleventh Amendment. Thus, the state will not be "mulcted" three times over as defendants fear. Although the state may be the source of service pension payments, the state will not be the source of the damages award against defendants because of the bar of the Eleventh Amendment. The source of the damages award will be the two wrongdoers themselves - individual defendants Chaffinch and MacLeish.

It is hornbook law that the Eleventh Amendment prevents plaintiffs from suing the State of Delaware, its agencies or official capacity defendants for damages of any kind. See, e.g. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); U.S. Const. Amend. XI. A damages award simply cannot run against the State of Delaware. Thus, the State is obviously not the source of the payment for the award.[4]

The only true defendants in this case are both individual defendants - Chaffinch and MacLeish. They are the only defendants against whom plaintiffs may collect a damages award because of the Eleventh Amendment, and plaintiffs seek to impose personal liability upon them for their illegal actions. See, e.g. Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."). Accordingly, although pension payments may come from

---

[4] For the sake of completeness, plaintiffs note that as paragraph 9 of the Amended Complaint in Price and paragraph 7 of the Complaint in Foraker make clear, the State is "only joined in this action for purposes of collecting attorneys' fees and costs" as explicitly permitted by the Supreme Court. See, e.g. Missouri v. Jenkins, 491 U.S. 274, 279 (1989).

the State, the damages award will come from the individual defendants themselves.

To the extent defendants might claim that the existence of the state indemnification statute, 10 Del.C. § 4001 et seq., transfers Eleventh Amendment immunity to the individual capacity defendants, such a claim would be clearly mistaken. A "state cannot manufacture immunity for its employees simply by volunteering to indemnify them." Benning v. Bd. of Regents of Regency Univ., 928 F.2d 775, 778 (7th Cir. 1991). A "state's decision to indemnify its employees does not transform a suit against individual defendants into a suit against the sovereign." Id. at 779.[5]

## CONCLUSION

For the aforementioned reasons, the collateral source rule applies to any pension benefits received by or available to plaintiffs. There should be no offset.

Respectfully Submitted,

**MARTIN D. HAVERLY, ATTORNEY AT LAW**

/s/ Martin D. Haverly
**MARTIN D. HAVERLY, ESQ. (#3295)**
Two East Seventh Street, Suite 201
Wilmington, DE 19801
(302) 654-2255
Martin@HaverlyLaw.com

Dated: May 25, 2006                     Attorney for Plaintiffs

---

[5] Accord Sales v. Grant, 224 F.3d 293, 297-98 (4th Cir. 2000); Hudson v. City of New Orleans, 174 F.3d 677, 687 n.7 (5th Cir. 1999); Jackson v. Georgia Dep't of Transp., 16 F.3d 1573, 1577-78 (11th Cir.1994); Wilson v. Beebe, 770 F.2d 578, 587-88 (6th Cir.1985) (en banc); Demery v. Kupperman, 735 F.2d 1139, 1146-48 (9th Cir.1984); Farid v. Smith, 850 F.2d 917, 923 (2d Cir.1988); Griess v. Colorado, 841 F.2d 1042, 1046 (10th Cir.1988).