IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CORPORAL B. KURT PRICE, et al.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A.No.04-956-GMS |
| | : | |
| **COLONEL L. AARON CHAFFINCH, et al.,** | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' BENCH MEMO ON THE INAPPROPRIATENESS OF A JURY INSTRUCTION ADDRESSING THE FIRST AMENDMENT RIGHTS OF EMPLOYER/DECISIONMAKER CHAFFINCH**

**A. Introduction.** Defendants' 11th hour request for a jury instruction addressing defendant Chaffinch's free speech rights reflects a fundamental misunderstanding of First Amendment jurisprudence in the public employment context. Simply put, defendants craftily seek to import inapplicable free speech law from <u>non-employment contexts</u> and apply them in this retaliation case in the <u>employment context</u>. Unfortunately for defendants, mere review of the very cases they cite undercuts their request. Additionally, review of Supreme Court precedent makes clear that the Supreme Court has carved out special rules that apply in the public employment context due to the very nature of the employer/employee relationship therein.

**B. The Private Citizen/Government Official Cases Cited by Defendants.** Defendants cite two cases in support of their last minute request. However, neither <u>Suarez Corp. v. McGraw</u>, 202 F.3d 676 (4th Cir. 2000), nor <u>X-Men Sec., Inc. v. Pataki</u>, 196 F.3d 56 (2d Cir. 1999), arise from the employment law context.[1] Instead, both cases address speech by government officials

---

[1] Notably, these cases also arise out of the Fourth and Second Circuits respectively - Circuits much less welcoming of civil rights claims than our own.

about a private company or citizen, a context where much different interests are at stake. As review of both Suarez and X-Men makes clear, their requirements that even defamatory speech contain a threat, coercion or intimidation arises from the recognition that the government has a strong interest in protecting citizens and consumers from unscrupulous companies and affiliated private citizens and that government officials have independent free speech rights in this regard.

However, because neither case occurs in the employment law context, a different mode of analysis must apply. The private citizen / government official analysis applied in both Suarez and X-Men does not carry over into the public employer/employee free speech retaliation context. X-Men itself discusses this distinction.

> Cases holding that a decisionmaker may not take action for impermissible reasons do not provide the proper analytical framework for claims against persons who are not decisionmakers, but merely advocates.

X-Men, 196 F.3d at 70 (emphasis added).

> [S]peech by persons who are not decisionmakers and who merely engage in advocacy without threats, intimidation, or coercion is protected by the First Amendment.

Id. at 71 (emphasis added). As the Second Circuit in X-Men took great pains to point out, a different mode of analysis applies in the public employer/employee context where the actions of a decisionmaker (such as defendant Chaffinch) are being challenged, versus in a context outside of the employer/employee relationship, as in X-Men.[2] The Fourth Circuit in Suarez also noted this distinction.

> Just as the nature of the retaliatory acts impacts whether a public employee's First Amendment rights were adversely affected, so too the nature of the retaliatory acts impacts whether those acts are actionable when a private citizen is the speaker and the public official is the retaliator.

---

[2] No doubt this is due to the inherently coercive nature of the employer/employee relationship.

Suarez, 202 F.3d at 686.

The Eighth Circuit also recently addressed this same point. See Hinshaw v. Smith, 436 F.3d 997 (8th Cir. 2006)(adopting the reasoning of X-Men and discussing how a different test applies to speech by employer decisionmakers than to "speech by persons who are not decisionmakers"). Unlike the situation in Hinshaw where the Eighth Circuit noted that the defendant "was not Hinshaw's employer and had no decision-making authority over" that plaintiff, id. at 1009, it is undisputed in our present case that defendants Chaffinch and MacLeish both are the key decisionmakers/employers who made all of the retaliatory decisions and actions that are being challenged by plaintiffs in this case. Thus, defendants' efforts to force this square legal peg into a round legal hole are inappropriate.

Additionally, X-Men, Suarez and their progeny rest on the implicit assumption that a private citizen who is so criticized by a government official, even when defamed, has the fundamental First Amendment right to speak out and respond. In other words - that the remedy for false speech is more speech. Let the marketplace of ideas sort it all out.[3] But that is not our case. Knowing that their ideas have no redeeming value whatsoever, defendants have roundly rejected the marketplace of ideas approach and instead prefer to publicly defame plaintiffs, then muzzle them and impose gag orders so they cannot respond and defend themselves. Such an

---

[3] See Abrams v. U.S., 250 U.S. 616, 630 (1919) (Holmes dissenting) ("the ultimate good desired is better reached by free trade in ideas--that the best test of truth is the power of the thought to get itself accepted in the competition of the market."); Whitney v. California, 274 U.S. 357, 377 (1927) (Brandeis and Holmes concurring) (when an noxious idea rears its ugly head, instead of government's heavy hand, "the remedy to be applied is more speech, not enforced silence."); Red Lion Broadcasting Co. v. F.C.C., 395 U.S. 367, 390 (1969) ( "It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail...."); New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964) ( "The First Amendment . . . presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection.") (internal punctuation omitted).

unconstitutional prior restraint and deprivation of plaintiff's First Amendment rights is an independent and extremely weighty adverse action which only an employer could impose, and it is well established that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Swartzwelder v. McNeilly, 297 F.3d 228, 241 (3d Cir. 2002) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, because plaintiffs were gagged from responding to defendant Chaffinch's public attacks, it is clear that Suarez and X-Men also are factually distinguishable in this regard as well.

**C. The Supreme Court's Special Treatment of the Public Employer/Employee Relationship.** Lastly, the Supreme Court has repeatedly recognized that the very nature of the relationship between a public employer and public employee calls for special rules regarding First Amendment rights, rules that would otherwise not be tolerable outside of the employment sphere. For example, in Pickering v. Bd. of Educ., 391 U.S. 563 (1968), Connick v. Myers, 461 U.S. 138 (1983), and their progeny, the Supreme Court imposed special restrictions on the First Amendment rights of public employees, restrictions that would otherwise be clearly unconstitutional if applied to private citizens. In light of decades of Supreme Court precedent in this regard, it is clear that "constitutional review of government employment decisions must rest on different principles" than those applied arising outside of the employment context. Waters v. Churchill, 551 U.S. 661, 674 (1994) (plurality opinion). For example, the "rationale for a public/private concern distinction that applies to public employees simply does not apply to citizens outside the employment context." Eichenlaub v. Township of Indiana, 385 F.3d 274 (3d Cir. 2004). Thus, the defense efforts to import private citizen cases into the public employee sphere must fail.

## CONCLUSION

For the reasons discussed above, the last minute defense request for a jury instruction addressing defendant Chaffinch's free speech rights should be denied.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: May 30, 2006

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

  I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on May 30, 2006, I electronically filed this **PLEADING** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

    Ed Ellis, Esquire
    Montgomery McCracken Walker & Rhoads, LLP
    123 South Broad Street
    Philadelphia, PA 19109
    (By Hand)

    Richard M. Donaldson, Esquire
    Montgomery McCracken Walker & Rhoads, LLP
    300 Delaware Avenue, Suite 750
    Wilmington, DE 19801
    (Via CM/ECF)

     /s/ Stephen J. Neuberger
    **STEPHEN J. NEUBERGER, ESQ.**

FTU/ Pleadings / Bench Memo - Chaffinch's 1st Amend Rights.final