## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORPORAL B. KURT PRICE;<br>CORPORAL WAYNE WARREN; and<br>SERGEANT CHRISTOPHER D. FORAKER, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A.No.04-956-GMS |
| | : | |
| COLONEL L. AARON CHAFFINCH,<br>individually and in his official capacity as<br>Superintendent of the Delaware State Police;<br>LIEUTENANT COLONEL THOMAS F.<br>MACLEISH, individually and in his official<br>capacity as Deputy Superintendent of the<br>Delaware State Police; DAVID B. MITCHELL,<br>in his official capacity as the Secretary of the<br>Department of Safety and Homeland Security of<br>the State of Delaware; and DIVISION OF<br>STATE POLICE, DEPARTMENT OF SAFETY<br>AND HOMELAND SECURITY, STATE OF<br>DELAWARE, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' OPENING MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ATTORNEY'S FEES, INTEREST AND COSTS RELATING TO ATTORNEY'S FEES AND COSTS OF MARTIN D. HAVERLY, ATTORNEY AT LAW PURSUANT TO 42 U.S.C. § 1988 AND FED.R.CIV.P. 54[1]**

For the reasons set forth in this Memorandum, and the declaration of Martin D. Haverly,

Esquire and exhibits attached hereto, pursuant to 42 U.S.C. § 1988 and Fed.R.Civ.P. 54,

plaintiffs seek an award of attorney's fees, interest and costs for the successful completion of this

---

[1]Since the time records of Plaintiffs' counsel, Martin D. Haverly, Attorney at Law and The Neuberger Firm, P.A., were kept using different billing systems, a separate motion and memorandum is being filed by The Neuberger Firm relating to their attorneys' fees and costs.

case.

1. Applicable federal law in this Circuit on attorneys fees is found in <u>Maldonado v. Houstoun</u>, 256 F.3d 181, 184 (3d Cir. 2001); <u>Lanni v. New Jersey</u>, 259 F.3d 146 (3d Cir. 2001); <u>Bell v. United Princeton Properties, Inc.</u>, 884 F.2d 713 (3d Cir. 1989); <u>Rode v. Dellaciprete</u>, 892 F.2d 1177 (3d Cir. 1990); and <u>Hughes v. Repko</u>, 578 F.2d 483 (3d Cir. 1978).

2. The lodestar amount in this case found below is reasonable. It is supported by the Declaration of Martin D. Haverly, Esquire (Exhibit A, hereinafter "Haverly Decl."). The hourly rate of Martin D. Haverly is not in dispute. His hourly rate is a reasonable and customary market rate, as is indicated in the Declaration. The current hourly rate of $290 per hour for Martin D. Haverly, Esquire is reasonable.

3. Plaintiffs are entitled to recover their reasonable attorneys fees, post judgment interest and costs because they are  the prevailing parties pursuant to 42 U.S.C. § 1988. That statute does not provide for the payment of expert witness fees in this § 1983 case, so no such expenses are sought.

4. As is set forth in the Declaration of Martin D. Haverly, all services for which compensation is requested were reasonable and necessary to the claims on which plaintiffs prevailed. There are no claims upon which plaintiffs did not prevail. All duplicative, extraneous or unnecessary time also has been eliminated, and billing judgment has been exercised by eliminating approximately 63.7 hours worth of time.

5. Plaintiffs additionally are entitled to the attorneys' fees incurred in preparing and presenting the pending Motion and in presenting their own other Motions or defending post trial Motions of the defendants. A supplemental record on those issues will be submitted to the court

at the appropriate time.

### A. Background of Martin D. Haverly

6.      Mr. Haverly has been practicing law for thirteen years.  He is licensed to practice

in Delaware and Pennsylvania.   He received my J.D. degree from Dickinson School of Law in

Carlisle, Pennsylvania.   He was a member of the Trial Moot Court Board and President of the

Chapter of the Christian Legal Society.  He received my B.A. in 1989 from the College of

William and Mary, Williamsburg, Virginia, having double majored in Economics and

Government.  While at William & Mary, he was a member of the Government Honor Society.

(Haverly Decl. ¶ 4).

7.      He was admitted to the following Bars on the years indicated: the Pennsylvania

Supreme Court, 1993;  the Delaware Supreme Court, 1994; the U.S. District Court for the

District of Delaware, 1995;  the Third Circuit Court of Appeals, 1995; the U. S. Supreme Court,

1997; and the U.S. District Court for the Middle District of Pennsylvania, May 2001.  He is a

member of the Delaware State Bar Association, the Delaware Employment Lawyers Association,

and American Trial Lawyers Association . (Haverly Decl. ¶ 5).

8.      He has a successful practice in constitutional law, employment discrimination,

plaintiff's personal injury and other civil litigation.  Frequently he handles cases in conjunction

with his co-counsel in this case, The Neuberger Firm, P.A.  Some of his  previous cases include

the following:

   Sheridan v. E. I. DuPont de Nemours & Co., 100 F.3d 1061 (3rd Cir. 1996) (en banc)
   (Plaintiff's jury verdict and the "pretext only" paradigm for proof of intentional
   discrimination established);

   Hawkins v. Division of State Police, et al., C.A. No. 99-297-SLR (Religious
   discrimination case which successfully obtained an offer of judgment and caused the

State to stop using the MMPI-1 test and begin using the MMPI-2 test for psychiatric testing of Delaware State Troopers);

Panaro v. J.C. Penny, Inc., C.A. 01C-02-010 JOH, 2002 WL 130692 (Del. Super. 2002)(In a personal injury case, admission into evidence of direct examination of deceased deponent/plaintiff does not infringe upon defendant's right of confrontation or cross-examination where defendant's counsel conducted nearly one and a half hours of discovery deposition cross examination of deponent/plaintiff prior to deponent/plaintiff's death).

 Reyes v. Freebery, 141 Fed. Appx. 49 (3d Cir. 2005) (per curiam) (remanding to District Court to explain its restrictions on the public's right to access to judicial records and counsel's First Amendment right to be free of prior restraints).

Underwood v. Sear Roebuck and Co., 343 F.Supp.2d 259 (D.Del. 2004) (Gender discrimination claim survived Motion for Summary Judgment);

Shotzberger v. State of Delaware Dept. Of Correction, 2004 WL 758354 (D.Del. Jan. 30, 2004) (Gender discrimination claim survived Motion for Summary Judgement);

Stull v. Thomas S. Neuberger, P.A., 2003 WL 21481016 (Del. Super. Febr. 28, 2003) (Effect of Delaware accord and satisfaction law on a contract for legal services).

Mr. Haverly  has not listed numerous employment discrimination cases which Mr. Haverly settled.  Most of those matters are subject to confidentiality agreements and the names of the parties cannot be disclosed.   (Haverly Decl. ¶ 6).

9.    Mr. Haverly has lectured on employment law matters in Delaware.  On June 15, 2000 he lectured at the Delaware State Bar Association's Labor and Employment Law Continuing Legal Education Seminar on "Summary Judgment and the Burden of Proof  in the Third Circuit."  On March 23, 2005, he lectured at the Delaware State Bar Association's Labor and Employment Law Continuing Legal Education Seminar on "Drafting Employment Related Documents."  (Haverly Decl. ¶ 7).

## B.  The Result At Trial and the Difficult  Course of the Litigation

10.  The primary purposes of these consolidated lawsuits are found in the Wherefore

Clause of each Complaint. (D.I. 1). Plaintiffs sought a declaration that their Constitutional rights had been violated; compensatory damages for the violation of their rights to free speech and petition, for Sgt. Foraker also that his state law right to be free of defamation had been denied, past lost wages, future lost wages or front pay, emotional distress, injury to reputation, humiliation, punitive damages, attorneys' fees and costs. One hundred percent success was achieved for these goals.

11.   After a 12 day trial and about six hours of deliberations the seven person jury found that defendant Chaffinch and his successor defendant MacLeish acted "recklessly, maliciously, or intentionally" in retaliating against plaintiffs for exercising their protected First Amendment rights. The jury also found that Chaffinch defamed Foraker in stating to the media that Foraker was to blame for problems at the firing range, where problems stemming from poor design and construction surfaced almost immediately upon its opening in 1998. The jury awarded compensatory damages of $862,395 to Price, $543,276 to Warren and $74,676 to Foraker. Each of those amounts includes $2,200 for emotional distress, injury to reputation and humiliation. The remainder is economic loss. Chaffinch was ordered to pay punitive damages of $15,682 to Foraker, $113,625 to Warren and $181,103 to Price. MacLeish was ordered to pay punitive damages of $6,720 to Foraker, $48,697 to Warren and $77,615 to Price.

12.   The docket reflects an overall jury award of $1,923,789 including punitive damages: $1,121,113 to Price (D.I. 182); $705,598 to Warren (D.I. 183); and $97,078 to Foraker (D.I. 184). In retrospect is appears that the jury awarded Foraker one year's salary to compensate him until he recovers from his injuries and resumes his career as a full duty officer who expects to retire at age 55. Price and Warren have been or shortly will be dismissed from the force far short

of their expected retirement age of 55, and the jury awarded them their full expected wage, benefit and pension losses for their prematurely terminated careers.

13. It appears that the strategy for these two cases was to simply bankrupt counsel due to the sheer number of hours they would have to invest in prosecuting the case. In this way counsel would decide as a matter business judgment to stop taking cases for aggrieved Troopers. The time necessary to prosecute the case appears to have doubled from prior ones.

14. In this case, Mr. Haverly focused much of his time on damages issues. He handled the expert witnesses and reviewed the plaintiffs' medical records. The handling of expert witnesses was complicated in this case. Altogether there were seven expert witnesses for which there were multiple reports to be reviewed during discovery, the opinion of Dr. Borzilleri relied upon the opinions of Jose Castro and Bud Fini, and the experts had to provide opinions regarding all three plaintiffs. Plaintiff used four expert witnesses: Firearms Industry expert Bud Fini, Vocational expert Jose Castro, Economist Dr. Tom Borzilleri, and Psychiatrist Dr. Carol Tavani. Defendants had three expert witnesses: Economists Dr. Sullivan, Psychologist Dr. DeBernardo, and Psychiatrist Dr. Tobrowosky. Although listed as a potential witness for trial, Dr. Tobrowosky was not called as a witness. The other six experts were called as witnesses. (Haverly Decl. ¶ 9).

15. In addition to handling the expert witnesses, Mr. Haverly was involved in discovery matters. He prepared pleadings, reviewed and mastered medical records, and handled discovery disputes. He also attended some of the depositions in an effort to quickly familiarize

himself with plaintiffs Price and Warren's cases.[2]  (Haverly Decl. ¶ 10).

16.    Both the plaintiffs and the defendants attempted to preclude the testimony of an opponent's expert witness.[3]  Therefore, time was necessarily spent by Mr. Haverly concerning those matters.  (Haverly Decl. ¶ 11).

17.    As the trial date loomed near, Mr. Haverly prepared the trial testimony for a number of approximately 16 witnesses who testified.  The preparation of such testimony was made more complicated by the fact that a number of the people who testified had testified multiple times (i.e. in depositions in this case, other cases involving the Delaware State Police and/or at Sgt. Foraker's first civil rights trial).  (Haverly Decl. ¶ 12).

18.    The discovery disputes were complicated by the fact that the defendants were missing computer data and in fact destroyed some computer data.  (Haverly Decl. ¶ 13).

19.    Approximately 63.7 hours have been eliminated through exercise of billing discretion.  For example, although plaintiff Foraker succeeded on his defamation claim against Col. Chaffinch, Mr. Haverly deleted many hours spent on plaintiff's Answering Brief relating to State Law claims.  OSHA retaliation research was eliminated.  In addition, although law clerks worked on the case for Mr. Haverly, Mr. Haverly deleted all law clerk time as either duplicative or excessive.  Similarly, phone calls and/or conferences which appeared duplicative or excessive were eliminated, as were any potentially excessive time spent on trial testimony preparation.

---

[2]Although Mr. Haverly represented plaintiff Foraker from the inception of his case, including investigating and preparing the Complaint for C.A.No. 04-1207-GMS, Mr. Haverly did not begin working on Price and Warren's case until a number of months later.  His role at the depositions he attended also included the passing of various questions to the attorney taking the deposition.

[3]Dr. Sullivan and Bud Fini.

Other miscellaneous time was eliminated as well.  (Haverly Decl. ¶ 14).

## C.  Plaintiffs Are Entitled To An Award Of Attorneys' Fees

20.  Plaintiffs meet all the requirements for the recovery of attorney fees under 42 U.S.C.
§ 1988:

- Each one is the prevailing party in his case;

- The attorney fees incurred were "reasonably expended" on the case; and

- The attorneys' rates are market rates.

### 1.  Each Plaintiff Is A Prevailing Party

21.  The general rule in the computation of fees is that the initial estimate of a reasonable
attorney's fee is properly calculated by multiplying the number of hours reasonably expended on
the litigation times a reasonable hourly rate based on the prevailing market rates in the relevant
community.  City of Burlington v. Dague, 505 U.S. 557, 559-560 (1992); Blum v. Stenson, 465
U.S. 886, 888 (1984); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  This is "the lodestar
figure" which normally represents the reasonable fee contemplated by section 1988. See
Hensley, supra.

22.  A condition precedent to determining the lodestar is a determination under section
1988 whether a plaintiff was a prevailing party, which is self evident, in light of the jury verdict
in this case and an almost  two million dollar damages award.  The primary purposes of this
lawsuit are found in the Wherefore Clause of the Complaints.  (D.I. 1).  All goals have been
achieved.

23.  Here the Supreme Court has adopted what it has termed a "generous formulation,"

-8-

and it has held that parties may be considered "prevailing parties" for attorneys' fees purposes if they succeed on **any significant issue in litigation** that advances all or some of the benefits they seek to achieve. Hensley, 461 U.S. at 433. This includes "some relief on [the] merits of the claim[,]" Hewitt v. Helms, 482 U.S. 755, 760 (1987), which "*affects the behavior of the defendant toward the plaintiff[,]*" Rhodes v. Stewart, 488 U. S. 1, 4 (1988)(emphasis in original), and which "changes the legal relationship between [the parties]." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989). All that has been accomplished herein.

24. In the present case, there can be no doubt that each plaintiff has met the standard for a prevailing party. They prevailed on all their claims and they have affected the behavior of the individual defendants. Parties are deemed to be prevailing parties for attorneys' fees purposes when they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley, 461 U.S. at 433 (citations omitted). Here plaintiffs are receiving all of the benefits they sought in the Wherefore clause of their Complaints. (D.I. 1). The "actual relief" obtained in this lawsuit thus was "substantial" and "material[ly] alter[ed] the legal relationship [between] the parties" by financially "modifying the defendant's behavior in a way that directly benefit[ed] the plaintiff" and the community. Farrar v. Hobby, 506 U.S. 103, 111-112 (1992).

## 2. The Lodestar - The Attorney Fees Incurred Were "Reasonably Expended"

25. A plaintiff's attorneys' fees may be charged to the defendant if the hours were "reasonably expended on the litigation." Hensley, 461 U.S. at 433. The calculation of attorney's fees begins with the computation of a "lodestar" representing the product of the reasonable number of hours spent on the case times a reasonable hourly rate. Id.; see also Lindy

Bros. Builders, Inc. of Phila. v. Amer. Radiator & Standard Sanitary Corp., 487 F.2d 161, 167-68 (3d Cir. 1973). The Supreme Court and the Third Circuit have repeatedly recognized a strong presumption that the lodestar constitutes a reasonable fee in a civil rights action. City of Burlington v. Dague, 505 U.S. at 560-64; Penn. v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); Blum v. Stenson, 465 U.S. 886, 896 (1984); Student Pub. Interest Research Group of N.J., Inc. v. AT&T Bell Lab, 842 F.2d 1436, 1453 (3d Cir. 1988); General Instrument Corp. of Del. v. Nu-Tek Electronics & Mfg., Inc., 197 F.3d 83, 91 (3d Cir. 1999). Adjustments should be made in the lodestar only in "rare, exceptional cases." D'Emanuele v. Montgomery Ward & Co. Inc. 904 F.2d 1379, 1383 (9th Cir. 1990), overruled on other grounds by Burlington v. Dague, 505 U.S. 557 (1992); Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993) (the lodestar is presumptively reasonable and "should be modified only in exceptional cases.").

26. A day-by-day listing of all services rendered in the case is included in the Haverly Declaration.   As described, all attorney time was adequately documented on contemporaneous time records and entered into a computer data base from which those records were carefully compiled.  Moreover, all hours sought to be reimbursed were reasonably expended in every respect.

27. Counsel also is a well-qualified, diligent attorney.  The  hours worked by each attorney reflect a sensible division of labor.  (Haverly  Decl. ¶ 8-13;  T. Neuberger Decl. ¶24). They spent a reasonable and appropriate amount of time on the case considering it involved the loss of several millions of dollars, as is reflected in the result they obtained and the time spent on various facets of the case which is set out in the Haverly Declaration.  The lodestar is set out

below for the various phases of the case.

    28. The following is the value of the lodestar and time spent on this case by Martin D.

Haverly, Attorney at Law through May 31, 2006.

**Total Lodestar Time Spent by Martin D. Haverly Through May 31, 2006**
**After Exercising Billing Discretion**

Initial investigation and preparation of Foraker Complaint

                                                  Total Hours:   13.5

Review or prepare other pleadings and/or documents

                                                  Total Hours:   16.4

Legal Research not otherwise identified

                                                  Total Hours:    0.4

Phone calls, and preparation and/or review of correspondence with
clients, co-counsel, opposing, client's wives, etc.

                                                  Total Hours:   31.7

Meetings/conferences with clients, co-counsel, co-counsel's staff
and/or opposing counsel

                                                  Total Hours:   39.2

Discovery - Tour FTU Facility

                                                  Total Hours:   4.0

Prepare discovery requests

                                                  Total Hours:   9.8

Prepare discovery responses

                                                  Total Hours:   6.0

Prepare for and/or attend depositions

                                          Total Hours:  25.6

Expert - Pretrial phone calls, reports, correspondence, updated reports

                                          Total Hours:  31.6

Witness preparations - non experts

                                          Total Hours:  9.6

Witness preparation - experts

                                          Total Hours:  8.9

Prepare trial testimony - non experts

                                          Total Hours:  26.4

Prepare trial testimony - experts

                                        Total Hours:  23.7

Attend Trial

                                          Total Hours:  84.3

Prepare Motion to Exclude Expert Sullivan and Response to Motion to Exclude Sullivan, Motion to Exclude Expert Fini and Response to Motion to Exclude Expert Fini

                                          Total Hours:  10.9

Research and prepare Pension Collateral Source Rule Bench Memorandum

                                          Total Hours:  5.1

Media - press conference

|                                                      | Total Hours: | 1.4 |

Discovery Disputes

|                                                      | Total Hours: | 5.6 |

Correspondence to Clerk of Court

|                                                      | Total Hours: | 0.4 |

Identify media circulation

|                                                      | Total Hours: | 0.5 |

Settlement

|                                                      | Total Hours: | 0.3 |

Pretrial Conference - Preparation for and attendance

|                                                      | Total Hours: | 6.5 |

Review jury pool

|                                                      | Total Hours: | 1.0 |

|                                                      | Total All Hours: | 362.8[4] |

Total Value of 362.8 hours after billing discretion

MDH   362.8 hours[5] @ $290/hour                      $105,212.00

TOTAL VALUE OF LODESTAR                               $105,212.00

---

[4] These are the total hours after the exercise of billing discretion which subtracts 63.7 hours worth of time. Initially there was $123,728.50 worth of time (see Tabs 1-3 of Haverly Declaration) before the exercise of billing discretion. Fifteen percent of worth of time were removed in the exercise of billing discretion. (See Tabs 4-6 of attached Haverly Declaration. Also see Haverly Decl. ¶ 9).

[5] This is the balance after 63.7 hours were eliminated.

-13-

29. From the above it can be seen that a grand total of 362.8 reasonable and necessary hours were devoted to the May 31, 2006 in this case. In the exercise of billing of time judgment 63.7 hours worth of time were first subtracted from a higher total of approximately 426.5 hours worth of time leaving a residue of 362.8 hours for which compensation is being sought at normal hourly billing rates. Accordingly, an attorneys' fee award of $105,212.00 is reasonable and appropriate in this case for the work of Martin D. Haverly, Attorney at Law through May 31, 2006.

30. The hours spent by counsel were incurred reasonably in a hard fought, difficult case in which the obstructive defense tactics throughout inevitably drove up the hours necessary to prevail and counsel should recover a fully compensatory fee for all his activities. Indeed, the Supreme Court has recognized that the degree of the prevailing parties' overall success affects the "reasonableness" of a fee award. Hensley, 461 U.S. at 430. The "most critical factor is the degree of success obtained." Id. at 436. In determining the "reasonableness" of a fee in civil rights cases, the courts have focused on the "results obtained" and whether the prevailing party "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" Id. at 434. That certainly was the case herein, where the jury's total damages verdict was the largest civil rights jury verdict in this Court, at least in recent memory. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. at 435.

### 3. Counsel's Billing Rates Are Market Rates

31. The other principal component of the lodestar approach to determining attorney's

-14-

fees is the attorney's hourly rate.[6]  Mr. Haverly's rate of $290.00 per hour[7] has been agreed to by

the parties.

32.  The calculation of reasonable fees under section 1988 is determined by the

"prevailing market rates in the relevant community."  Blum v. Stenson, 465 U.S. 886, 895

(1984). The prevailing market rates for attorneys for the successful party are broadly defined as

"those prevailing in the community for similar services by lawyers of reasonably comparable

skill, experience and reputation." Id. at 895 and n.11.

33.  Martin D. Haverly's billing reate is $290.00 per hour. (Haverly Decl. ¶ 15).

**D.  Plaintiffs Are Entitled To Reimbursement For Fees And Costs Incurred In The
Preparation Of This Fee Motion, For Post Trial Proceedings,
And For Out of Pocket Costs**

34.  Time spent by attorneys in preparing and presenting a petition for counsel fees is

---

[6]Here the Third Circuit has that the current market rate for purposes of an attorney fee
award is the rate at the time of the fee petition, not the rate at the time the services were
performed.  Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001). see also Missouri Jenkins,
491 U.S. 274, 286 (1989) ("attorney's fee awarded under § 1988 is to yield the same level of
compensation that would be available from the market"); Black Grievance Comm., 802 F.2d at
652 ("The historic billing rates set forth in [plaintiff's attorneys'] uncontested affidavits establish
marketplace rate."), vacated on other grounds, 483 U.S. 1015 (1987); Cunningham v. City of
McKeesport, 753 F.2d 262, 268 (3d Cir. 1985) ("Since [plaintiff's attorney's] affidavit is
uncontradicted, there is no material issue of fact.") , vacated on other grounds, 478 U.S. 1015
(1987) ("we have consistently held that the lodestar calculation must be based on historical time
charges for individual attorneys.") Student Pub. Interest Research Group v. AT&T Bell Labs.,
842 F.2d 1436, 1445 (3d Cir.1988)(the Court has "consistently relied on billing rates in
determining market rates" and has only diverged from applying actual billing rates where
"billing rates alone fail to tell the full story"); Lawrence v. City of Phila., 700 F.Supp. 832, 836
(E.D. Pa. 1988) ("[a]bsent extraordinary circumstances...an attorney's market rate charged to
private clients is generally accepted as his reasonable rate for fee awards."); cf. Keenan v. City of
Phila., 983 F.2d 459, 475 (3d Cir. 1992) (lower court erred in holding that law firm's method of
billing based upon a uniform hourly rate could not be reflective of market rate).

[7]Haverly Decl. ¶ 15.

recoverable. <u>Planned Parenthood of Central New Jersey v. Attorney General of State of New Jersey</u>, 297 F.3d 253, 268 (3d Cir. 2002); <u>Bagby v. Beal</u>, 606 F.2d 411, 415-16 (3d Cir. 1979). Time spent defending the verdict and engaging in any other post trial motions practice also will be compensable as simply part of the overall prosecution of the case. After any briefing on the present issues, counsel will submit supplemental declarations in this regard to complete the record.

35. Section 1988 also has been construed to authorize the recovery of a broad range of litigation expenses beyond statutory costs proper to a Bill of Costs. These are expenses that are normally charged separately to fee-paying clients and that are not part of the office overhead incorporated into the attorney's billing rates.[8] These expenses have been properly itemized in the Haverly Declaration (¶ 18) and total $483.14 for various teleconference calls, UPS, videotape reproduction, and other reasonable and necessary items for the case. The items are set out below as follows:

| | | |
|---|---|---|
| 5/26/06 | Virtual Docket - Filing Fee | $ 42.10 (unpaid) |
| 5/11/06 | UPS to Jose Castro | $ 23.51 (unpaid) |
| 5/3/06 | LRP Publication - Dartnell Survey | $179.00  (Visa) |
| 1/18/06 | A T & T Conference Call | $ 91.16 (check #4187) |
| 12/9/05 | DDVF (videotape reproduction) | $ 30.00 (Visa) |

---

[8] <u>See</u> <u>Abrams v. Lightolier Inc.</u>, 50 F.3d 1204, 1225 (3d Cir. 1995); <u>Henry v. Webermeier</u>, 738 F.2d 188, 192 (7th Cir. 1984); <u>Palmigiano v. Garrahy</u>, 707 F.2d 636, 637 (1st Cir. 1983); <u>Dowdell v. City of Apopka</u>, 698 F.2d 1181, 1188-92 (11th Cir. 1983); <u>Jones v. Diamond</u>, 636 F.2d 1364, 1382 (5th Cir. 1981)(en banc); <u>Northcross v. Board of Ed.</u>, 611 F.2d 626, 639 (6th Cir. 1979); <u>Davis v. City and County of San Francisco</u>, 976 F.2d 1536, 1556 (9th Cir. 1992), <u>vacated in part on denial of rehearing</u>, 984 F.2d 345 (9th Cir. 1993).

| | | |
|---|---|---|
| 12/7/05 | A T & T Conference Call | $ 71.38 (check #4130) |
| 9/16/05 | UPS | $ 30.66 (check #4019) |
| 9/2/05 | UPS | $ 15.33 (check #3999) |

TOTAL:    $483.14

## CONCLUSION

36.  This case did not just serve the private interest of plaintiffs which were fully vindicated.  As a "private attorney general" plaintiffs also vindicated policies "Congress considered of the highest priority." Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968).  This should result in a fully compensatory fee award.

37.  For the reasons stated, it is respectfully requested that up to May 31, 2006, the Court: (a) make an award of attorneys fees to Martin D. Haverly, Attorney at Law in the amount of $105,212.00, (b) make an award of expenses and costs for this case expended by Martin D. Haverly, Attorney at Law in the amount of $483.14 and ( c) award post-judgment interest on those amounts from the date of the jury verdict on May 31, 2006.

38.  The fees and costs award should run against the State Defendant, as well as the individual defendants in their official and individual capacities.  Other compensatory damages entered in this case only run against the individual defendant individually because of Eleventh Amendment considerations.

-17-

Respectfully Submitted,

/s/ Martin D. Haverly
**MARTIN D. HAVERLY, ESQUIRE**
**MARTIN D. HAVERLY, ATTORNEY AT LAW**
2 East 7th Street, Suite 302
Wilmington, Delaware 19801
Del. Bar Number 3295
(302) 654-2255
Martin@HaverlyLaw.com

Attorney for Plaintiffs

Dated:  June 19, 2006