# EXHIBIT A

## UNSWORN DECLARATION OF
## MARTIN D. HAVERLY, ESQUIRE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SGT. CHRISTOPHER D. FORAKER,       :
                                   :
            Plaintiff,             :
                                   :
     v.                            :
                                   :
COL. L. AARON CHAFFINCH,           :        C.A. No. 02-302-JJF
individually and in his official   :
capacity as the Superintendent,    :
Delaware State Police, and         :
DIVISION OF STATE POLICE,          :
DEPARTMENT OF PUBLIC SAFETY, STATE :
OF DELAWARE,                       :
                                   :
            Defendants.            :

UNSWORN DECLARATION OF MARTIN D. HAVERLY, ESQUIRE,
UNDER 28 U.S.C. SECTION 1746, IN SUPPORT OF AN AWARD OF
ATTORNEY'S FEES AND COSTS

I, Martin D. Haverly, Esquire, hereby depose and state as follows:

1.      I make this declaration on my own personal knowledge and I will testify hereto if called as a witness.

2.      I am an attorney admitted to practice in the State of Delaware and Pennsylvania. I practice as a solo practitioner through my own law firm, Martin D. Haverly, Attorney at Law. I was plaintiffs' second chair counsel in this action through trial. I have personal knowledge of the facts contained in this affidavit and, if called as a witness, I am competent to testify as to those facts. I am 35 years old.

## I. PURPOSE OF THIS ACTION

3.      The primary purposes of these consolidated lawsuits are found in the Wherefore

-1-

Clause of each Complaint. (D.I. 1). Plaintiffs sought a declaration that their Constitutional

rights had been violated; compensatory damages for the violation of their rights to free speech

and petition, for Sgt. Foraker also that his state law right to be free of defamation had been

denied, past lost wages, future lost wages or front pay, emotional distress, injury to reputation,

humiliation, punitive damages, attorneys' fees and costs. One hundred percent success was

achieved for these goals.

### III. MY BACKGROUND

4.      I have been practicing law for thirteen years. I am licensed to practice in

Delaware and Pennsylvania. I received my J.D. degree from Dickinson School of Law in

Carlisle, Pennsylvania. I was a member of the Trial Moot Court Board and President of the

School's Chapter of the Christian Legal Society. I received my B.A. in 1989 from the College

of William and Mary, Williamsburg, Virginia, having double majored in Economics and

Government. While at William & Mary, I was a member of the Government Honor Society.

5.      I was admitted to the following Bars on the years indicated: the Pennsylvania

Supreme Court, 1993; the Delaware Supreme Court, 1994; the U.S. District Court for the

District of Delaware, 1995; the Third Circuit Court of Appeals, 1995; the U. S. Supreme Court,

1997; and the U.S. District Court for the Middle District of Pennsylvania, May 2001. I am a

member of the Delaware State Bar Association, the Delaware Employment Lawyers Association,

and American Trial Lawyers Association .

6.      I have a successful practice in constitutional law, employment discrimination,

plaintiff's personal injury and other civil litigation. Frequently I handle cases in conjunction

with my co-counsel in this case, The Neuberger Firm, P.A. Some of my previous cases include

the following:

Sheridan v. E. I. DuPont de Nemours & Co., 100 F.3d 1061 (3rd Cir. 1996) (en banc) (Plaintiff's jury verdict and the "pretext only" paradigm for proof of intentional discrimination established);

Hawkins v. Division of State Police, et al., C.A. No. 99-297-SLR (Religious discrimination case which successfully obtained an offer of judgment and caused the State to stop using the MMPI-1 test and begin using the MMPI-2 test for psychiatric testing of Delaware State Troopers);

Panaro v. J.C. Penny, Inc., C.A. 01C-02-010 JOH, 2002 WL 130692 (Del. Super. 2002)(In a personal injury case, admission into evidence of direct examination of deceased deponent/plaintiff does not infringe upon defendant's right of confrontation or cross-examination where defendant's counsel conducted nearly one and a half hours of discovery deposition cross examination of deponent/plaintiff prior to deponent/plaintiff's death).

Reyes v. Freebery, 141 Fed. Appx. 49 (3d Cir. 2005) (per curiam) remanding to District Court to explain its restrictions on the public's right to access to judicial records and counsel's First Amendment right to be free of prior restraints.

Underwood v. Sear Roebuck and Co., 343 F.Supp.2d 259 (D.Del. 2004) (Gender discrimination claim survived Motion for Summary Judgment);

Shotzberger v. State of Delaware Dept. Of Correction, 2004 WL 758354 (D.Del. Jan. 30, 2004) (Gender discrimination claim survived Motion for Summary Judgement);

Stull v. Thomas S. Neuberger, P.A., 2003 WL 21481016 (Del. Super. Febr. 28, 2003) (Effect of Delaware accord and satisfaction law on a contract for legal services).

I have not listed numerous employment discrimination cases which were settled. Most of those matters are subject to confidentiality agreements and the names of the parties cannot be disclosed.

7.    I have lectured on employment law matters in Delaware. On June 15, 2000, I lectured at the Delaware State Bar Association's Labor and Employment Law Continuing Legal Education Seminar on "Summary Judgment and the Burden of Proof in the Third Circuit." On March 23, 2005, I lectured at the Delaware State Bar Association's Labor and Employment Law Continuing Legal Education Seminar on "Drafting Employment Related Documents."

## IV. ATTORNEYS' FEES AND COSTS FOR THE TRIAL

8.      The Neuberger Firm, P. A. and I handled this case in a manner which was as efficient as possible concerning attorneys' time and costs. I handled most of the damages issues while The Neuberger Firm, P.A. handled most of the liability issues. Among other matters, I handled the expert witnesses, helped with discovery matters, prepared the C.A. 04-1207-GMS Complaint, and prepared trial testimony. In this way we attempted to obtain an efficient division of labor, and I believe we achieved that goal.

9.   In this case, I focused much of his time on damages issues. I handled the expert witnesses and reviewed the plaintiffs' medical records. The handling of expert witnesses was complicated in this case. Altogether there were seven expert witnesses for which there were multiple reports to be reviewed during discovery, the opinion of Dr. Borzilleri relied upon the opinions of Jose Castro and Bud Fini, and the experts had to provide opinions regarding all three plaintiffs. Plaintiff used four expert witnesses: Firearms Industry expert Bud Fini, Vocational expert Jose Castro, Economist Dr. Tom Borzilleri, and Psychiatrist Dr. Carol Tavani. Defendants had three expert witnesses: Economists Dr. Sullivan, Psychologist Dr. DeBernardo, and Psychiatrist Dr. Tobrowosky. Although listed as a potential witness for trial, Dr. Tobrowosky was not called as a witness. The other six experts were called as witnesses. (Haverly Decl. ¶ 9).

10.     In addition to handling the expert witnesses, I was involved in discovery matters. I prepared pleadings, reviewed and mastered medical records, and handled discovery disputes. I also attended some of the depositions in an effort to quickly familiarize himself with plaintiffs

Price and Warren's cases.[1]   (Haverly Decl. ¶ 10).

11.    Both the plaintiffs and the defendants attempted to preclude the testimony of an opponent's expert witness.[2]  Therefore, time was necessarily spent by me concerning those matters. (Haverly Decl. ¶ 11).

12.    As the trial date loomed near, I prepared the trial testimony for a number of approximately 16 witnesses who testified.  The preparation of such testimony was made more complicated by the fact that a number of the people who testified had testified multiple times (i.e. in depositions in this case, other cases involving the Delaware State Police and/or at Sgt. Foraker's first civil rights trial).  (Haverly Decl. ¶ 12).

13.    The discovery disputes were complicated by the fact that the defendants were missing computer data and in fact destroyed some computer data.  (Haverly Decl. ¶ 13).

14.    My normal practice of keeping time for billing purposes consists of recording electronically my time, the date, the initials of the person performing the services ("MDH" for Martin D. Haverly),  and a brief description of the services rendered electronically on timekeeping software which is a part of the PC Law, Jr. software package.  Attached as Tabs 1-3 of this Declaration and incorporated herein by reference are my initial printouts from PC Law,

---

[1]Although Mr. Haverly represented plaintiff Foraker from the inception of his case, including investigating and preparing the Complaint for C.A.No. 04-1207-GMS, Mr. Haverly did not begin working on Price and Warren's case until a number of months later.  His role at the depositions he attended also included the passing of various questions to the attorney taking the deposition.

[2]Dr. Sullivan and Bud Fini.

Jr. concerning this case from August 3, 2004 through May 31, 2006.[3]  Attached as Tabs 4-6 of

this Declaration are the same printouts from PC Law, Jr. after I deleted time in the exercise of

billing discretion.  The time set forth in this declaration is taken from these records.  I believe

that this time accurately depicts my time and services for this case for which I am seeking

payment.  I have already exercised billing discretion in the compilation of this time.

Approximately 63.7 hours have been eliminated through exercise of billing discretion.  For

example, although plaintiff Foraker succeeded on his defamation claim against Col. Chaffinch,

Mr. Haverly deleted many hours spent on plaintiff's Answering Brief relating to State Law

claims.  OSHA retaliation research was eliminated.  In addition, although law clerks worked on

the case for Mr. Haverly, Mr. Haverly deleted all law clerk time as either duplicative or

excessive.   Similarly, phone calls and/or conferences which appeared duplicative or excessive

were eliminated, as were any potentially excessive time spent on trial testimony preparation.

Other miscellaneous time was eliminated as well.  (Haverly Decl. ¶ 14).  My time through May

31, 2006 after the exercise of billing discretion can be broken down as follows:

    Initial investigation and preparation of Foraker Complaint

                                        Total Hours:   13.5

    Review or prepare other pleadings and/or documents

                                        Total Hours:   16.4

--------

[3]There are three printouts (Foraker, FTU, and FTU/Foraker) because  I represented Sgt.
Foraker before representing Cpls. Price and Warren and because I attempted to provide a
breakdown of items attributed solely to the Foraker case, solely to the Price (or FTU) case while
separately preserving the joint time attributed to both the FTU and the Foraker case.

Legal Research not otherwise identified

Total Hours:   0.4

Phone calls, and preparation and/or review of correspondence with
clients, co-counsel, opposing, client's wives, etc.

Total Hours:   31.7

Meetings/conferences with clients, co-counsel, co-counsel's staff
and/or opposing counsel

Total Hours:   39.2

Discovery - Tour FTU Facility

Total Hours:   4.0

Prepare discovery requests

Total Hours:   9.8

Prepare discovery responses

Total Hours:   6.0

Prepare for and/or attend depositions

Total Hours:   25.6

Expert - Pretrial phone calls, reports, correspondence,
updated reports

Total Hours:   31.6

Witness preparations - non experts

Total Hours:   9.6

Witness preparation - experts

Total Hours:  8.9

Prepare trial testimony - non experts

Total Hours:  26.4

Prepare trial testimony - experts

Total Hours:  23.7

Attend Trial

Total Hours:  84.3

Prepare Motion to Exclude Expert Sullivan and
Response to Motion to Exclude Sullivan, Motion to
Exclude Expert Fini and Response to Motion to
Exclude Expert Fini

Total Hours:  10.9

Research and prepare Pension Collateral Source
Rule Bench Memorandum

Total Hours:  5.1

Media - press conference

Total Hours:  1.4

Discovery Disputes

Total Hours:  5.6

Correspondence to Clerk of Court

Total Hours:  0.4

Identify media circulation

Total Hours:  0.5

Settlement

Total Hours:  0.3

Pretrial Conference - Preparation for and attendance

Total Hours:  6.5

Review jury pool

Total Hours:  1.0

---

Total All Hours:  362.8[4]

Total Value of 362.8 hours after billing discretion

MDH   362.8 hours[5] @ $290/hour                $105,212.00

---

TOTAL VALUE OF  LODESTAR                        $105,212.00

15.     My normal hourly rate is $290.00.   This is the normal hourly rate  regularly bill to clients who pay on an hourly, non-contingent basis.

16.     I have litigated cases throughout the Third Circuit.  I am familiar with the hourly rates charged in Wilmington.  I am acquainted with hourly rates charged by other law firms in Wilmington.  In my opinion the $290.00 per hourly rate at which I request compensation is not in excess of the usual and customary rates for Wilmington attorneys who enjoy comparable

---

[4] These are the total hours after the exercise of billing discretion which subtracts 63.7 hours worth of time.  Initially there was $123,728.50 worth of time (see Tabs 1-3 of Haverly Declaration) before the exercise of billing discretion.   Fifteen percent of worth of time were removed in the exercise of billing discretion. (See Tabs 4-6 of attached Haverly Declaration.  Also see Haverly Decl. ¶ 9).

[5] This is the balance after 63.7 hours were eliminated.

reputations, skill and experience.

17.    Finally, my time which is devoted to this present fee application or other post trial motions will be set forth separately in another declaration which I will file after briefing or oral argument on such motions.

18.    Through the trial, I have incurred on behalf of my clients out of pocket expenses in connection with the prosecution of the case which either are or are not covered by the bill of costs.   These costs are in addition to any costs identified by The Neuberger Firm, P.A. and are summarized as follows:

| Date | Description | Amount |
|---|---|---|
| 5/26/06 | Virtual Docket - Filing Fee | $ 42.10 (unpaid) |
| 5/11/06 | UPS to Jose Castro | $ 23.51 (unpaid) |
| 5/3/06 | LRP Publication - Dartnell Survey | $179.00  (Visa) |
| 1/18/06 | A T & T Conference Call | $ 91.16 (check #4187) |
| 12/9/05 | DDVF (videotape reproduction) | $ 30.00 (Visa) |
| 12/7/05 | A T & T Conference Call | $ 71.38 (check #4130) |
| 9/16/05 | UPS | $ 30.66 (check #4019) |
| 9/2/05 | UPS | $ 15.33 (check #3999) |
|  | TOTAL: | $483.14 |

These expenses are reflected in the books and records of my firm and are based on expense vouchers, check records and other similar documentary backup, all of which are maintained in the ordinary course of my practice.  All the expenses referenced were reasonably and necessarily incurred in prosecuting the case.

-10-

19.    Accordingly, I believe that an attorneys' fee award of $105,212.00 is reasonable and appropriate in this case for my work through May 31, 2006.  This figure is taken from paragraph 14 above.  Similarly, an award of $483.14  for litigation expenses is reasonable and appropriate.


_____
MARTIN D. HAVERLY


I declare under penalty of perjury that the foregoing is true and correct.  Executed on
_____June 19_____, 2006

-11-