COPY

( 1 )

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SERGEANT CHRISTOPHER D. FORAKER, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 0 4 - 1 2 0 7 |
| COLONEL L. AARON CHAFFINCH, individually and in his official capacity as Superintendent of the Delaware State Police; LIEUTENANT COLONEL THOMAS F. MACLEISH, individually and in his official capacity as Deputy Superintendent of the Delaware State Police; DAVID B. MITCHELL, in his official capacity as the Secretary of the Department of Safety and Homeland Security of the State of Delaware; and DIVISION OF STATE POLICE, DEPARTMENT OF SAFETY AND HOMELAND SECURITY, STATE OF DELAWARE, | : : : : : : : : : : : : : : : | JURY TRIAL DEMANDED |
| Defendants. | : | |

FILED CLERK U.S. DISTRICT COURT DISTRICT OF DELAWARE 2004 AUG 30 AM 8:53

## COMPLAINT

1.   This is a civil action for compensatory and punitive damages and for injunctive relief for retaliatory violations of the Free Speech and Petition Clauses of the First Amendment of the United States Constitution.   In June of 2003 Plaintiff obtained a jury verdict, and an award of $100,120 in compensatory and punitive damages, against defendant Chaffinch for multiple violations of his free speech rights.   On December 1, 2003, under a Stipulated Order of this Court plaintiff was reinstated to his

-1-

previous position.  The appeal in that case also was resolved by
a written Settlement Agreement.  But upon his reinstatement
defendants then set out to drive plaintiff from his employment
and within three months orchestrated a local and international
media campaign riddled with malicious falsehoods which have
totally destroyed plaintiff's professional reputation.  Plaintiff
also asserts supplemental state law claims for defamation and
false light invasion of privacy.

I.  JURISDICTION

2.  The jurisdiction of this Court is invoked pursuant to 28
U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and
2202, and the First and Fourteenth Amendments to the U.S.
Constitution.  More specifically, paragraph 3 of this Court's
November 20, 2003 Stipulated Order in the case of Foraker v.
Chaffinch, et al., C.A. No. 02-302-JJF (D. Del.), states that
"the Court shall retain jurisdiction over this matter to enforce
its order of reinstatement should that become necessary," which
precondition now has arisen.  (See Exhibit A, ¶ 3).  The cause of
action arises under 42 U.S.C. § 1983. The claims arose in this
judicial district.  This Court has jurisdiction over the state
law claims pursuant to 28 U.S.C. § 1367 which provides for
supplemental jurisdiction.

II.  THE PARTIES

3.  Plaintiff Sergeant Christopher D. Foraker is a citizen

-2-

A - 195

of the United States and a resident of New Castle County, Delaware. He is a 19 year veteran of the Delaware State Police ("DSP") and is currently a section chief and the non-commissioned officer in charge ("NCOIC") of the Firearms Training Unit ("FTU"). He is less than one year short of the right to retire with full pension benefits and the option to consider other career opportunities. At all times material hereto, his job performance has been outstanding. He is an excellent police officer.

4. Defendant Colonel L. Aaron Chaffinch is currently the Superintendent of the DSP and its highest-ranking officer. He is sued both individually and in his official capacity. He has committed repeated civil rights violations against Troopers under his command.

5. Defendant Lieutenant Colonel Thomas F. MacLeish is currently the Deputy Superintendent of the DSP and its second-highest ranking officer. He is sued both individually and in his official capacity.

6. Defendant David B. Mitchell is currently Secretary of the Department of Safety and Homeland Security of the State of Delaware and he is the superior to Chaffinch and MacLeish in the chain of command. He is sued in his official capacity to obtain injunctive relief which will prohibit Chaffinch and MacLeish from continuing to violate plaintiff's constitutional rights.

-3-

A - 196

7.  Defendant Division of State Police, Department of Public Safety, State of Delaware is an agency of the State of Delaware, which is only joined in this action for purposes of collecting attorneys' fees and costs.

### III.  FACTS GIVING RISE TO THE ACTION

A.  Plaintiff's Protected Speech and Petition.

8.  From August 1, 2001 through February 22, 2002, plaintiff previously served as the non-commissioned officer in charge of the DSP's Firearms Training Unit in Smyrna, Delaware.

9.  In April of 2002, defendant Chaffinch illegally retaliated against plaintiff for exercising his free speech rights and transferred him out of the FTU.

10.  Plaintiff then exercised his First Amendment rights to freedom of speech and to petition the government for redress of grievances and filed a federal lawsuit against defendant Chaffinch.  That case was docketed as Foraker v. Chaffinch, et al., C.A. No. 02-302-JJF (D:Del.).

11.  In June 2003 a jury found that defendant Chaffinch had violated plaintiff's First Amendment free speech rights by illegally transferring him from the FTU in retaliation for engaging in protected speech activity.  The jury awarded plaintiff $40,120 in compensatory damages and also $60,000 in punitive damages to punish defendant Chaffinch for his malicious and oppressive conduct.

-4-

12. The case subsequently settled pursuant to a Settlement Agreement dated November 19, 2003, and a Stipulated Order of this Court dated November 20, 2003 (Exhibit A attached which is incorporated herein by reference). As part of the Settlement Agreement, plaintiff was placed back into the position of NCOIC of the FTU.

13. It was agreed that "there shall be no retaliation against plaintiff in violation of his civil rights once he assumes the duties of (the NCOIC) position."

14. It was agreed that "the Delaware State Police will reinstate Sergeant Christopher D. Foraker to his prior position as the Non-Commissioned Officer-in-Charge of the Firearms Training Unit with all of the rights, privileges, duties, and responsibilities and supervisory authority previously held by him when he earlier occupied that position on February 20, 2002."

15. Paragraph 1 of this Court's November 20, 2003, Stipulated Order also states that "Sergeant Christopher D. Foraker is ordered reinstated to his prior position as the Non-Commissioned Officer-in-Charge of the Firearms Training Unit of the Delaware State Police with all of the rights, privileges, duties, responsibilities and supervisory authority previously held by him when he earlier occupied that position on February 20, 2002." (Exhibit A, ¶ 1).

16. Paragraph 3 of this Court's November 20, 2003

-5-

Stipulated Order states that "the Court shall retain jurisdiction over this matter to enforce its order of reinstatement should that become necessary." (Exhibit A, ¶ 3).

17. Pursuant to the Settlement Agreement, on December 1, 2003, plaintiff returned to his previous position as NCOIC at the FTU.

18. Defendants Chaffinch and MacLeish were aware that plaintiff had engaged in protected speech and had petitioned the government for redress of grievances by filing and ultimately winning his initial lawsuit against defendant Chaffinch. Additionally, plaintiff's lawsuit, the trial, jury verdict and subsequent settlement received extensive media coverage throughout the State of Delaware, including numerous stories in the Delaware State News and the News Journal.

19. At all times plaintiff spoke out on issues of public concern and petitioned the government for redress of grievances under the First Amendment and sought to bring to light actual or potential wrongdoing or breach of the public trust by high public officials and also sought to bring to light defendant Chaffinch's illegal actions which violated the U.S. Constitution.

20. By its content, form and context, at all times plaintiff spoke out about matters of public concern.

21. All of plaintiff's speech and petitioning was non-disruptive of any legitimate interest of his employer and was on

-6-

matters of public concern to the DSP, as well as the General
Assembly, the Governor of Delaware, the news media, voters and
the public at large.  His speech and petitioning related to
matters of political, social and other concern to the community.

22.  Plaintiff was acting in good faith and with honest
motive at all times when he exercised his First Amendment rights
to freedom of speech and to petition the government.  At all
times, plaintiff believed that his speech was true and, as the
jury found, his speech was in fact true.

23.  Plaintiff was not being disloyal by speaking out and
petitioning the government.  Instead, he sought to bring to light
blatant violations of the U.S. Constitution by the highest
ranking police officer in the State of Delaware.

24.  The public concern in and value to the community at
large of being free to hear plaintiff's speech and petition
outweighs any asserted government interest in the effective and
efficient provision of services.

25.  Nothing plaintiff said interfered with the regular
operations of the DSP.  Plaintiff's speech did not interfere with
the DSP's interests in: crime fighting; fostering trust and
confidence among officers; protecting the safety of officers or
other members of the community.

26.  Plaintiff's speech did not threaten the authority of
defendants to run the DSP.  Nothing plaintiff said damaged his

-7-

relationship with defendants or with any of his superior
officers. Plaintiff did not impugn the integrity of his
supervisors.

27. Plaintiff's speech did not have a detrimental impact on
any close working relationship for which personal loyalty, trust
and confidence are necessary. Plaintiff is not the alter ego of
defendants. Organizationally, plaintiff is five ranks below
defendant Chaffinch and four ranks below defendant MacLeish in
the chain of command. Defendants are the Colonel and Lieutenant
Colonel. Plaintiff is a mere sergeant.

28. Any disruption that was caused in the DSP was not
caused by plaintiff's speech but was instead caused by the very
problems that plaintiffs' speech was in fact intended to address
- defendant Chaffinch's illegal conduct.

29. In his position as a sergeant in the DSP, plaintiff did
not make or formulate DSP policy. Rather, formulation of DSP
policy is left up to the Superintendent and Deputy Superintendent
of the DSP.

**B. Defendant Chaffinch's Resulting Animus Towards Plaintiff.**

30. As a direct and proximate result of plaintiff's
successful lawsuit against him, defendant Chaffinch carries a
personal vendetta against plaintiff. Defendant Chaffinch has
told family, friends, political mentors, members of his Executive
Staff and others that he will do everything in his power to

-8-

inflict injury on and destroy plaintiff.

31.  For example, Chaffinch orchestrated several media events where he made false and defamatory statements about plaintiff's job performance.  Immediately after one such event, he advised his executive staff "I got my shots in.  People who live in glass houses shouldn't throw stones.  The mess at the range is all Foraker's fault.  I got him back."

C.  The Long Term Historic Preexisting Problems at the FTU.

32.  The FTU is a multimillion dollar facility that was built under the supervision and direction of the Department of Administrative Services of the State of Delaware and its Division of Facilities Management ("Facilities Management") which is currently headed by Cabinet Secretary Gloria W. Homer. Facilities Management is responsible for maintenance of the FTU and is the landlord for the DSP.

33.  Since its construction in 1998, the FTU has been plagued by problems that have affected, endangered and impaired the health and safety of those who work and train there.  The root cause of these problems are a faulty design and improper construction of the facility.  Due to improprieties, financial irregularities, breach of the public trust, fraud and/or corruption by public officials, Facilities Management also improperly awarded the contract to build the FTU to an unqualified bidder.  As a result, a substandard facility was

-9-

built.

34.  When defendant Chaffinch illegally transferred plaintiff out of the FTU in April 2002, he simultaneously improperly transferred a personal friend into plaintiff's former position as NCOIC.  This friend was inexperienced and unqualified to run a firearms facility, especially a historically troubled facility like the FTU.

35.  The conditions at the FTU worsened and steadily deteriorated while defendant Chaffinch's friend was in charge of the FTU.

36.  Defendant Chaffinch was aware of these worsening conditions but purposefully chose to cover them up in order to save face.

37.  The true causes of the problems at the FTU were known at all times by defendants Chaffinch and MacLeish.

38.  Immediately upon his return to the FTU on December 1, 2003, plaintiff became aware of the problems and worsening conditions at the FTU and he immediately began to take steps to try to fix the facility.

39.  Unfortunately, the deterioration of the FTU was too far gone and on March 19, 2004, the FTU was shut down due to environmental contamination.

40.  The local media reported extensively on the forced closure of this government facility.

-10-

D.  Defendants' Defamatory Retaliation Against Plaintiff.

41.  Shortly thereafter, defendants Chaffinch and MacLeish, with Secretary Homer, gave guided tours of the FTU to members of the local media, including reporters from the Delaware State News, the News Journal and WBOC-TV Salisbury, Maryland.  During these tours, defendants Chaffinch and MacLeish falsely, recklessly and maliciously blamed plaintiff for the problems that had contaminated, shut down and effectively destroyed the FTU. They accused plaintiff of mismanagement, dereliction of duty and destroying this multimillion dollar facility.

E.  Publication and Circulation of Defendants'
False Accusations.

42.  Defendants' false, reckless and malicious accusations resulted in numerous newspaper articles being published in the Delaware State News and the News Journal, the newspapers of general circulation in the State of Delaware.  In these articles, defendants' false, reckless and malicious accusations were published to an audience of hundreds of thousands of readers.

43.  Similarly, WBOC-TV in Salisbury, Maryland ran numerous television news stories about the cause of the closure of the FTU.  WBOC has a viewing audience and distribution market totaling hundreds of thousands of people, in areas such as Kent County, Sussex County, Eastern Maryland, Dover and Smyrna, Delaware.  In these news stories, defendants' false, reckless and malicious accusations again were published to an audience of

-11-

A - 204

hundreds of thousands of viewers.

44. In addition to local and regional circulation and distribution, defendants' false, reckless and malicious accusations also were published nationally and internationally. AMERICAN POLICE BEAT is an international police and public safety industry trade magazine with a circulation throughout the United States and Canada. Defendants' false, reckless and malicious accusations also were published in one of its magazines with a circulation of thousands of persons, including persons in the firearms manufacturing, law enforcement and public safety communities.

45. As discussed above, defendants false accusations were contained in and were the subject of numerous newspaper articles in the Delaware press. One such article was published on the front page of the Delaware State News. This particular article has been widely circulated in the local community in which plaintiff lives.

46. For example, there is a popular, well-known seafood restaurant in Smyrna, Delaware called Sambo's. As part of its decor, Sambo's purchases copies of newspapers and places them on the tables in the restaurant.

47. The aforementioned edition of the Delaware State News with the front page story was purchased in bulk by Sambo's on the day defendants' defamatory accusations towards plaintiff were

-12-

published.  Copies of this article were placed on every table in
Sambo's.  Innumerable patrons of Sambo's read this article while
it sat on their tables.

### F.  Defendants' Accusations are Absolutely False and Injurious.

48.  Defendants' accusations are absolutely false.
Plaintiff is and has always been an excellent supervisor at the
FTU.  As discussed above, the problems at the FTU have been
longstanding and were only exacerbated by defendant Chaffinch's
inexperienced friend.  Plaintiff is not guilty of mismanagement,
dereliction of duty or of destroying the FTU in any way shape or
form.  For example, the statement Chaffinch made to his Executive
Staff that "the mess at the range is all Foraker's fault" is
absolutely false.

49.  Defendants knew or recklessly disregarded the knowledge
that their outrageous accusations were false and would cause
plaintiff severe emotional distress and also severely injure
plaintiff's reputation.

50.  Plaintiff was hurt, wounded, distressed, shocked,
anguished, stunned, appalled, floored, taken aback, offended,
traumatized, scandalized and otherwise outraged by these false
accusations against him

51.  The accusations that plaintiff was guilty of
mismanagement, dereliction of duty and destroying a multimillion
dollar firearms facility have injured and tend to injure

-13-

A - 206

plaintiff's reputation in the popular sense; diminish the esteem, respect, goodwill or confidence in which plaintiff was previously held as well as excite adverse, derogatory or unpleasant feelings or opinions against him.

52. In the same way, these false accusations have harmed plaintiff's reputation and lowered him in the estimation of the community or deterred third persons from associating or dealing with him.

53. Plaintiff has been isolated from society as a result of defendants' false accusations. Plaintiff may never know the extent of his lost opportunities to relate and associate with others because he could be avoided without knowing the reason and without having a chance to rebut the false accusations against him.

54. These false accusations have exposed plaintiff to public contempt or ridicule in the minds of right thinking persons or among a considerable and respectable class of people.

55. Any third party would understand accusations of mismanagement, dereliction of duty and destroying a multimillion dollar facility to be injurious to the reputation of the accused.

G. **Defendant Chaffinch Maliciously Muzzled Plaintiff So He Could Not Respond to the False Accusations Being Made Against Him.**

56. In order to further injure plaintiff's reputation, defendant Chaffinch maliciously ordered that neither plaintiff

-14-

A - 207

nor his supervisor could speak with the media to rebut the outrageously false allegations which were being publically leveled against plaintiff.

### H. Continued Retaliatory Reduction of Plaintiff's Rights, Privileges, Duties, and Responsibilities.

57. Defendants Chaffinch and MacLeish also have stripped away plaintiff's rights, privileges, duties, responsibilities, and supervisory authority which were protected by paragraph 1 of this Court's November 20, 2003 Order. (Exhibit A).

58. For example, on June 29, 2004 and July 15, 2004, plaintiff received several e-mails, inviting him to attend a scheduled July 20th Commanders and Section Chiefs meeting. As the NCOIC of the FTU, plaintiff is the commander and section chief of the FTU. Plaintiff had previously attended these meetings during his first stint as the NCOIC of the FTU.

59. Upon arriving at the meeting, defendant MacLeish publically humiliated plaintiff and indicated that plaintiff was not welcome at the meeting and ordered him to leave the meeting and never return.

60. The number of individuals who plaintiff supervises also has decreased since he returned to the FTU as the NCOIC.

### IV.    CAUSAL CONNECTION

61. The totality of retaliatory adverse action taken by defendants against plaintiff are sufficient to deter a person of ordinary firmness from exercising their First Amendments right to

-15-

A - 208

freedom of speech and to petition the government for redress of grievances.

62. A reasonable person of ordinary firmness would be deterred from exercising his First Amendments right to freedom of speech and to petition the government for redress of grievances if he was falsely accused of mismanagement, dereliction of duty, destroying a multimillion dollar government facility and if he was publically defamed on a local, regional, national and international scale.

63. There is a causal link between First Amendment protected activity on matters of public concern and the adverse actions of materially altering plaintiff's job responsibilities and launching a campaign of false accusations of dereliction of duty and other misconduct by plaintiff. This is demonstrated by:

(a)     the temporal proximity of events, since within three months of his reinstatement defendants orchestrated a local, national and international media attack on plaintiff's professionalism and reputation;

(b)     circumstantial evidence of a pattern of antagonism following protected activity, for example, when defendant Chaffinch stated "I got him back" and "I got my shots in" to his executive staff after a media event;

( c)     personal knowledge and awareness of protected

-16-

activity by the individual defendants, since defendant
Chaffinch attended the trial against him and defendant
MacLeish was a trial witness;

(d)      violation of paragraph 1 of this Court's Order
of November 20, 2003 in that the rights, privileges,
duties, responsibilities and supervisory authority
previously held by plaintiff have been materially
altered;

(e)    the fact that the accusations against plaintiff
are a cover-up or a pretext since the problems with the
FTU were preexisting and were not caused in any way by
plaintiff who only had been reinstated to the facility
three months before it was closed down;

(f)      the fact that defendant Chaffinch had abundant
motive to take revenge on plaintiff who had publically
humiliated him by obtaining an unprecedented and well
publicized federal court jury verdict against him;

(g)      the fact that plaintiff was publically singled
out by the individual defendants as being responsible
for the safety and health problems at the FTU; and

(h)      the evidence viewed as a whole.

64.  First Amendment protected activity was a substantial or
motivating factor in the adverse action taken against plaintiff.
The natural probative force of the evidence demonstrates

-17-

09/14/2004 03:17 FAX  302 504 7820        MMWR-DE                    ☒019/028

causation.

65.  The defendants cannot prove by a preponderance of the
evidence that absent a constitutional violation, plaintiff would
have had adverse employment action taken against him anyway.

66.  Any non-retaliatory reasons cited by the defendants to
defeat causality are a pretext.

67.  As a direct and proximate result of the actions of the
defendants as detailed herein, plaintiff has suffered and is
suffering diminished earning capacity now and upon his
retirement, decreased employment and earnings opportunities, and
other pecuniary losses, emotional pain, suffering,
disappointment, anger, inconvenience, mental anguish, loss of
enjoyment of life, mental and physical pain, anguish,
humiliation, embarrassment, injury to reputation, and other non-
pecuniary losses and injury.

68.  For example, plaintiff intended to obtain a job in the
firearms industry after he retires from the DSP.  The position
held by plaintiff also has been a jump off point on retirement
into lucrative employment with the firearms industry.  One former
Trooper who headed the FTU on retirement was hired by Smith and
Wesson Company as a Vice-President.  The negative media
publicity, which includes statements in an international trade
magazine, will make it impossible for plaintiff to work in the
firearms industry.  Moreover, any police officers he would

-18-

A - 211

interact with as part of any firearms industry employment will be aware of the FTU range problems and wrongly believe that plaintiff was responsible.

### V.  ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

69.  The actions of the defendants and their agents or employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional rights and because of the exercise of those rights.  The defendants either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal constitutional rights.  Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.  Their actions were wanton and malicious or taken with reckless indifference  to federal constitutional rights and as to the truth.

70.  The exercise of rights under the U.S. Constitution made a difference in all actions adverse to plaintiff.  The exercise of these rights was a motivating or determinative factor in all actions adverse to plaintiff.

71.  The individual defendants' actions violated clearly established federal constitutional rights of which any reasonable official would have known, including more than three decades of Supreme Court and Third Circuit case law prohibiting retaliation

-19-

03/14/2004 03:17 FAX  302 504 7820          MMWR-DE                    ☒021/028

against public employees for protected speech.

72.  At all times material hereto the individual defendants participated in, authorized, and sanctioned the federal constitutional deprivations described above which illegally retaliated against plaintiff.

73.  At all times material hereto the individual defendants and their agents were acting under color of law.  The federal constitutional deprivations described herein are fairly attributable to the State.

74.  The defendants' actions were motivated by bias, bad faith, and improper motive.

75.  The defendants' actions constitute an abuse of governmental power.

76.  The defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

77.  The defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

78.  The defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

79.  Defendant Chaffinch's vendetta and animus against plaintiff indicates that he cannot effectively and fairly make employment decisions and statements concerning plaintiff's

-20-

03/14/2004 09:17 FAX  302 504 7820        MMWR-DE                                   022/028

employment performance without oversight by a monitor.

### COUNT I - (Free Speech Retaliation)

80.  Plaintiff repeats and realleges paragraphs 1 - 79 set out above and incorporates them by reference.

81.   The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for his First Amendment protected speech on matters of public concern.   There is a temporal and causal relationship between plaintiff's aforementioned protected speech, and adverse employment action. First Amendment protected activity was a substantial or motivating factor in the adverse employment action.   The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had grounds to adversely treat plaintiff.

82.  Plaintiff's constitutional right to freedom of speech has been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT II - (Petition Clause Retaliation)

83.  Plaintiff repeats and realleges paragraphs 1 - 82 set out above and incorporates them by reference.

84.  The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for his exercise of his First Amendment right to petition the government for redress of grievances.  There is a temporal and causal

-21-

A - 214

relationship between plaintiff's aforementioned protected petitioning and adverse employment action. First Amendment protected activity was a substantial or motivating factor in the adverse employment action. The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had grounds to adversely treat plaintiff.

### COUNT III - (Defamation)

85.  Plaintiff repeats and realleges paragraphs 1 - 84 set out above and incorporates them by reference.

86.   Plaintiff's right to live his life free of defamatory falsehood has been denied in violation of the common law of the State of Delaware.

### COUNT IV - (False Light Invasion of Privacy)

87.  Plaintiff repeats and realleges paragraphs 1 - 86 set out above and incorporates them by reference.

88.  Defendants sought out media sources and publicized the shutdown of the FTU in a manner which places plaintiff before the public in a false light.

89.  Similar publicity about a reasonable person would be highly offensive to that reasonable person under similar circumstances.

90.  Defendants knew the manner in which they conveyed the information about plaintiff was false, or they recklessly

-22-

disregarded whether it was false.

91.   Defendants' actions would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

92.   The context, conduct and circumstances discussed at length above do not justify the public statements made about plaintiff.

93.   The motives of defendants were malicious.

94.   Plaintiff's reputation and ability to find employment have suffered as a direct and proximate result of defendants' actions.

95.   Plaintiff's right to live his life free from having his privacy cast in a false light has been denied in violation of the common law of Delaware.

Wherefore, plaintiff prays that the Court:

A.   Enter judgment against the defendants.

B.   Enter a declaratory judgment declaring the acts of the defendants to be a violation of plaintiff's constitutional and common law rights.

C.   Enter a judgment against defendants Chaffinch and MacLeish, both jointly and severally, for compensatory damages, including lost wages, back pay, benefits, for future or front pay, loss of earning capacity, emotional distress, humiliation,

-23-

A - 216

embarrassment, and injury to reputation.

D.  Enter a judgment against the defendants Chaffinch
and MacLeish, both jointly and severally,  for
punitive damages.

E.  Award plaintiff costs, interest and attorneys'
fees for this suit, and pre and post judgment
interest.

F.  Issue a mandatory injunction directing defendant
Mitchell to act as a monitor of defendants
Chaffinch and MacLeish to prohibit any retaliation
or harassment of plaintiff by overseeing and
approving any action or statements made by
defendants Chaffinch and MacLeish concerning
plaintiff upon penalty of finding Mitchell in
contempt of Court.  Such injunction is to run for
so long as defendants Chaffinch and MacLeish
remain State employees.

G.  Issue a permanent injunction requiring the
defendants to:

(1)  Notify everyone who learned of defendants'
treatment of plaintiff that their conduct was
illegal, and

(2)  Expunge plaintiff's personnel file of any
derogatory information relating to this matter.

-24-

(3)   Place a signed document in plaintiff's
personnel file apologizing for their illegal
violations of plaintiff's constitutional rights.

H.    Enjoin the defendants from retaliating against
plaintiff now or in the future.

J.    Issue a reparative injunction directing that
individual defendants Chaffinch and MacLeish issue
public written apologies to plaintiff and run
their apologies in the Delaware State News, the
News Journal and WBOC-TV.

K.    Require such other and further relief as the Court
deems just and proper under the circumstances.

THE NEUBERGER FIRM, P. A.

THOMAS S. NEUBERGER, ESQUIRE (#243)
STEPHEN J. NEUBERGER, ESQUIRE (#4440)
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582

MARTIN D. HAVERLY, ATTORNEY AT LAW

MARTIN D. HAVERLY, ESQUIRE (#3295)
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 654-2255

Dated: August 30, 2004    Attorneys for Plaintiff

-25-