09/14/2004 09:18 FAX 302 504 7820          MMWR-DE                              ☑027/028

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2003 NOV 20  AM 10: 38

CHRISTOPHER D. FORAKER,                    )
                                           )
    Plaintiff,                         )
                                           )
vs.                                        )          Civil Action No. 02-302-JJF
                                           )
COLONEL L. AARON CHAFFINCH,                )
individually and in his official capacity as )
Superintendent of the Delaware State Police, )
DIVISION OF STATE POLICE,                  )
DEPARTMENT OF PUBLIC SAFETY,               )
STATE OF DELAWARE,                         )
                                           )
    Defendants.                        )

## STIPULATED ORDER

    The parties to this case, acting through their authorized counsel, hereby stipulate and agree

as follows, subject to approval of the Court:

    1.    Sergeant Christopher D. Foraker is ordered reinstated to his prior position as the

Non-Commissioned Officer-in-Charge of the Firearms Training Unit of the Delaware State Police

with all of the rights, privileges, duties, responsibilities and supervisory authority previously held

by him when he earlier occupied that position on February 20, 2002.

    2.    Plaintiff withdraws his post-trial motion for reinstatement.

    3.    The Court shall retain jurisdiction over this matter to enforce its order of

reinstatement should that become necessary.

4. The judgment entered by the Court in this case on July 2, 2003 is vacated.

5. Plaintiff withdraws his two Rule 50 motions filed before the submission of the case to the jury.

Dated: November 18, 2003

_Thomas S. Neuberger_
Thomas S. Neuberger, Esquire
Bar # 243
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
Counsel for Plaintiff

Dated: November 19, 2003

_W. Michael Tupman_
W. Michael Tupman, Esquire
Bar # 3040
Deputy Attorney General
Department of Justice
102 West Water Street, 3rd Floor
Dover, DE 19904
(302) 739-7641
Counsel for Defendants

Dated: November 19, 2003

_Martin D. Haverly_
Martin D. Haverly, Esquire
Bar # 3295
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 654-2255
Counsel for Plaintiff

IT IS SO ORDERED, this 20 day of _November_, 2003

_Joseph J. Farnan, Jr._
Joseph J. Farnan, Jr.
United States District Judge

I:\TUPMAN\Files\fon-ker.stip.ord.wpd

-2-

A - 220



STATE OF DELAWARE
DEPARTMENT OF SAFETY AND HOMELAND SECURITY
## DIVISION OF STATE POLICE
P.O. BOX 430
DOVER, DELAWARE 19903

June 3, 2004

Aaron Green, M.D.
Health Works - Dover
1275 S. State Street
Dover, Delaware 19901

Dear Dr. Green:

As you are aware through conversation with Captain John Yeomans, Director of Human Resources, our employee, Master Corporal Brian Kurt Price, has been ordered to undergo testing for hearing loss, as diagnosed by Omega Medical Center on March 1, 2004. Additional diagnostic testing was performed by Omega Medical Center on May 24, 2004. All testing has been forwarded to your attention. In order to obtain a fitness for duty assessment, Corporal/3 Price has been scheduled for an evaluation in your office on June 17, 2004, at 1:30 p.m. This letter is intended to give you a better understanding of the requirements of a full duty Delaware State Trooper. A job description for the position of Ordnance Officer has also been included for your review.

Below are nine specific tasks that are required of our full duty officers. Could you kindly take a moment to review the information below? I ask that you indicate with a check mark any tasks that you feel Corporal/3 Price is **unable** to perform.

_____ Driving a patrol vehicle for extended periods.

_____ Getting in and out of vehicles.

_____ Effecting a forcible arrest; possible physical confrontations (wrestling with suspects).

_____ Biannual firearms re-certification which involves shooting a semi-automatic pistol and shotgun from standing and kneeling positions during the course of a training day.

_____ Climbing obstacles and traversing rough terrain quickly.

_____ Manual traffic control involving prolonged standing and requiring mental and physical alertness and dexterity.

D0029

Aaron Green, M.D.
June 3, 2004
Page 2

_____ Working under stressful and dangerous conditions, in inclement weather and for prolonged periods without the benefit of rest or meal breaks, and working rotating shifts.

_____ Communicating effectively with people of various socioeconomic backgrounds.

___✓___ Acutely utilizing sensory systems to discern various stimuli of danger and to maximize operational effectiveness.

Since our annual PT test measures an individual's ability to perform physical tasks that may be required to function as a police officer, we assume that an officer unable to complete any portion of this test is also unable to function in a full duty capacity. Please indicate, with a check mark, the specific exercises that this officer is **unable** to perform.

_____ Flexibility - - sit and reach exercise in which the individual must sit on a flat surface with legs extended out in front and extend his/her fingers beyond the toes to the second joint of the fingers.

_____ Push-ups - - individual performs as many push-ups as possible within a one minute time frame. Females perform a modified push-up extending out from a kneeling position.

_____ Sit-ups - - individual performs as many sit-ups as possible within a one minute time frame. A bent knee position is used.

_____ Aerobic Fitness - - an exercise EKG evaluation on a treadmill with an oxygen uptake analysis to measure aerobic fitness.

After reviewing all medical and diagnostic information available, please indicate your assessment for Corporal/3 Price's ability to continue in the capacity as an ordnance officer.

_Corporal Price is Not fit to perform as an ordnance officer without anticipated compromise in his impaired hearing._

Further, if it is your recommendation that Corporal/3 Price be removed from the position of ordnance officer, would you find it reasonable for him to function in a full duty capacity in any another position within the Delaware State Police? Such a position could include a patrol officer, which would still require bi-annual firearms certification. _Corporal Price is capable of performing bi-annual firearm certification without anticipated compromise of his current hearing impairment._

D0030

Aaron Green, M.D.
June 3, 2004
Page 3

Please feel free to include any comments, concerns or recommendations. The significant safety sensitive role involved in the job duties of a state trooper and essential dependence on optimal hearing ability would preclude Corporal Price from consideration. Hearing aids would not be a viable accommodation, do to the amplification of background noise and resultant distortion.

_____
Physician's Signature

6/18/04
_____
Date

If you have any questions, please feel free to contact Captain John A. Yeomans, Director of Human Resources at (302) 739-5981. Thank you in advance for your time and assistance with this matter.

Very truly yours,

LTC R Mc L

Lieutenant Colonel Thomas F. MacLeish
Deputy Superintendent

TFM:klt
Enclosure

**RECEIVED**

JUN 2 3 2004

Human Resources Office
Delaware State Police

D0031

CONFIDENTIAL
Attorney's Eyes Only

 **UNIVERSITY OF
PENNSYLVANIA
MEDICAL CENTER**
University of Pennsylvania School of Medicine
Hospital of the University of Pennsylvania

Edward A. Emmett, M.D., M.S.
Professor & Director
Academic Programs in Occupational Medicine

February 28, 2005

Captain John A. Yeomans, M.D.
Director of Human Resources
State of Delaware
Division of State Police
P.O. Box 430
Dover, DE 19903

RE: February 28, 2005 Addendum to Report on Brian Price

Dear Captain Yeomans:

I have received the attached report from Sherrie Davis of our Audiology Department following functional hearing testing for Mr. Brian Price.

The testing confirms that Mr. Price has reduced word recognition in the presence of background noise, and in my opinion confirms that he does not meet the essential job requirements as a Delaware State Trooper. A practical accommodation to this loss which would allow him to function satisfactorily in hearing critical tasks (such as through the use of a hearing aid, cochlear implant or similar device) does not seem likely to be feasible at this time.

Please let me know if you have further questions.

Sincerely,

Edward A. Emmett, MD, MS

03/14/05    16:02    INSURANCE COVERAGE OFFICE → +302 651 7905    APR 28 2005    CONFIDENTIAL
02/10/2005  15:32    2156626002                              SFOH HEAR                Attorney's Eyes Only

| | |
|---|---|
| **HOSPITAL OF UNIVERSITY OF PENNSYLVANIA**<br>**DEPARTMENT OF OTORHINOLARYNGOLOGY**<br><br>**AUDIOLOGY DIVISION**<br>**AUDIOLOGIC ASSESSMENT** | DATE: 02/14/05<br>NAME: PRICE, Brian<br>MRN: 051626733<br>SEX: Male<br>DOB: 01/02/63 |

Referring Physician: Edward Emmett, MD

### HISTORY:

This patient was seen today for an audiological evaluation at the request of occupational health. The patient reports decreased hearing, greater for the left ear, for the past several years. He indicates that he experiences some communication difficulty, particularly in the presence of background noise. Additionally, several years of constant tinnitus is reported. The patient denies vestibular complaints, recent ear infections, and a family history of hearing loss. A history of noise exposure is reported.

### IMPRESSIONS:

1.  Right Ear-Normal hearing sensitivity through 2000 Hz, sloping to a moderately severe sensorineural hearing loss for the high frequencies. Good word recognition noted at normal conversation level and at an elevated intensity level.
    Left Ear-Normal hearing through 1500 Hz, sloping from a moderate to a severe sensorineural hearing loss for the high frequencies (2000-8000Hz). Good word recognition noted at normal conversation level and at an elevated intensity level.
2.  Grossly normal middle ear function is noted bilaterally.
3.  Word recognition measures in the soundfield with stimuli presented at normal conversation levels revealed good discrimination. Reduced performance was noted in the presence of background noise.

### RECOMMENDATIONS:

1.  In view of the pure tone asymmetries retrocochlear involvement cannot be ruled out based on today's evaluation. Neurotologic consultation may be considered.
2.  Follow-up with Dr. Emmett is recommended for further evaluation of communication status.

Test result details found on page 2.

Sherrie Davis, MA, CCC-A
Audiologist

Telephone (215) 662-2785



STATE OF DELAWARE
DEPARTMENT OF SAFETY AND HOMELAND SECURITY
**DIVISION OF STATE POLICE**
P.O. BOX 430
DOVER, DELAWARE 19903

June 25, 2001

Corporal/3 B. Kurt Price
91 Dodge Drive
Smyrna, Delaware 19977

Dear Corporal/3 Price:

In correspondence received from Dr. Aaron Green, it has been determined that due to your hearing loss, you are currently unable to perform certain essential job requirements associated with the position of a State Trooper. This determination is based upon an assessment of your audiogram data and a personal interview with Dr. Green. Until a physician, approved by the Division, clears you to perform these job requirements, you will be considered in a light duty status. You must adhere to the restrictions set forth below:

1. Your work status will be Light Duty, Non-Uniform consisting of administrative desk duties.

2. You will report to work in civilian business attire. You are not to wear a Delaware State Police officer uniform for work purposes or otherwise.

3. You may keep your assigned divisional weapon; however, it shall not be used for any police-related duties.

4. If you observe a crime in progress, or foresee that a situation may occur which has the potential of placing you in a confrontational or dangerous position, you are to remove yourself from the situation and act in the same capacity as a civilian by notifying a full-duty officer or the communications center of the situation.

5. You are not to operate a marked Delaware State Police vehicle, and may only utilize unmarked divisional vehicles for administrative purposes or for the convenience of the Division. You are not to stop any vehicles for any reason until your physician returns you to full duty.

6. You are to avoid any situations that will potentially work against the successful rehabilitation of your illness/injury.

D0025

Corporal/3 B. Kurt Price
Page 2

The above restrictions cannot anticipate each and every situation that might aggravate your physical condition. Therefore, it is incumbent upon you and your supervisor to establish additional restrictions as necessary, in order to assure your safety, and the safety of those around you and to facilitate your successful rehabilitation.

If you should have any questions regarding any of these restrictions, please contact the Human Resources Office at (302) 739-5981.

Very truly yours,

*LTC RML*

Lieutenant Colonel Thomas F. MacLeish
Deputy Superintendent

TFM:lem

cc:    Major Randall B. Hughes
       Captain Gregory A. Warren
       Captain John A. Yeomans

D0026

CONFIDENTIAL
Attorney's Eyes Only



STATE OF DELAWARE
DEPARTMENT OF SAFETY AND HOMELAND SECURITY
DIVISION OF STATE POLICE
P.O. BOX 430
DOVER, DELAWARE 19903

May 11, 2005

Master Corporal B. Kurt Price
91 Dodge Drive
Smyrna, Delaware 19977

Dear Master Corporal Price:

I received the attached letter dated February 28, 2005, from Dr. Edward A. Emmett, University of Pennsylvania Medical Center. According to Dr. Emmett your hearing loss and reduced word recognition in the presence of background noise prevents you from performing the essential job functions of a Delaware State Trooper. Additionally, Dr. Emmett has indicated that a practical accommodation does not exist for your condition at this time. Accordingly, I am left with no alternative but to direct you to separate from the Division of State Police. If you act promptly to submit your application for a disability pension, I will delay your separation briefly to allow the state pension office to act on your application.

In your email to me of March 5, 2005, you request that I retain you as a trooper assigned to "light duty" until June 2006 so that you can increase your pension entitlements when you actually retire from the DSP. Be assured that I respect and appreciate your twenty years of service to the citizens of Delaware. I cannot, however, allow you to use a light duty assignment to boost your pension entitlement based upon potential contractual pay or longevity increases.

The Superintendent has in certain situations assigned troopers to light duty when an injured trooper was likely to return to full duty at some specified future date, or when the full extent of the trooper's injury was not known. You have yourself benefited from that policy while we arranged testing for your hearing problem. I am not aware of any situation in which a trooper remained on light duty after receiving word that a return to full duty was medically impossible. It would be irresponsible for me to do so solely so that you can obtain a higher pension. I am relying on the medical expertise of two physicians who have deemed you not fit for duty because of hearing loss. This condition has been described as permanent. For that reason, you may not remain on light duty except as described above.

A - 228

CONFIDENTIAL
**Attorney's Eyes Only**

Master Corporal B. Kurt Price
Page 2


Your email suggests that your situation is similar to that of certain troopers who were allowed by prior administrations to continue on light duty for periods of up to two years. I have had the human resources department review the history of these troopers. Although I do not think it appropriate to discuss the personal medical histories of these troopers with you, I can tell you that in each case of a trooper held on prolonged light duty, the medical evidence was inconclusive as to whether they would be able to return to full duty. When the medical evidence is inconclusive, the DSP has in the past assigned troopers to light duty for as long as two years. This is not the case, however, for troopers like yourself whose medical situation is known.

I recognize your stated concern about your family's financial welfare. It is to address these types of concerns that the State of Delaware has developed the pension program that will be made available to you. As noted above, I will retain you on light duty while your disability pension application is pending, provided you pursue the application diligently. Additionally, I will do whatever is appropriate in my power to help the state Pension Office consider your application in a prompt and fair manner. I trust that the state pension system will provide financial security for your family in the future.

Please contact the Human Resources Office to prepare and submit your work-related disability pension to the state Pension Office by June 10, 2005. If you should have any questions, please feel free to contact Captain Yeomans, Director of Human Resources.

Very truly yours,

Colonel Thomas F. Mac Leish
Superintendent

TFM:lem

A - 229



STATE OF DELAWARE
DEPARTMENT OF SAFETY AND HOMELAND SECURITY
DIVISION OF STATE POLICE
P.O. BOX 430
DOVER, DELAWARE 19903

March 24, 2006

Master Corporal B. Kurt Price
91 Dodge Drive
Smyrna, Delaware 19977

Dear Corporal Price:

This will respond to your attorney's letter of March 1, 2006, concerning your available leave balances. You have been out of work since March 23, 2005. You have been using your sick time, accumulated time, and vacation pay so that you have received full state trooper pay since that date. Your time will expire on approximately April 7, 2006. Since you will have completely exhausted all sources of leave by that date, you have the following options:

1.   Apply For A Service-Connected Disability Retirement   The State of Delaware has accepted responsibility for your hearing loss. Accordingly, you will be eligible for service-connected disability pension of as much as 75 per cent of your current salary, with additional amounts for your dependents (not to exceed 95 percent of your current salary). The DSP will fully support your pension application should you choose to file it and will carry you on the active payroll for such time as it takes the pension board to act on your application. Furthermore, pursuant to the prior settlement of your hearing loss workers' compensation claim against the State, you will receive an additional $506.81 per week, untaxed, for a maximum of 300 weeks. These payments, totaling $152,043.00, are representative of your loss of earning capacity due to your work-related restrictions. These payments will begin once you leave the active payroll. Please notify me promptly if you elect this option.

2.   Leave Without Pay   The Superintendent will extend you unpaid leave until twenty-four months after the date the DSP first placed you on rehabilitation status, which was June 25, 2004. At this point, you will be directed to separate from the service, and you would at that time certainly be eligible for a service connected disability pension (see No. 1, above) or a regular service pension.

3.   Donated Leave   The DSP Administrative Manual provides that under certain circumstances, the Human Resources Office will solicit all DSP employees, as well as members of the Delaware State government, to donate leave to you. If you are interested in pursuing donated leave, please contact this office immediately.

DEFENDANT'S
EXHIBIT
91

Master Corporal B. Kurt Price
March 24, 2006
Page 2

    4.   <u>Return To Work</u>  You may return to work in a rehabilitation status (light duty), provided your physician certifies you as being able to return to work.

    This office stands ready to assist you in whatever decision you think is in your best interest.  Do not hesitate to contact me.

            Sincerely,

            Captain John A. Yeomans
            Director of Human Resources

JAY:lem



STATE OF DELAWARE
DEPARTMENT OF SAFETY AND HOMELAND SECURITY
**DIVISION OF STATE POLICE**
P.O. BOX 430
DOVER, DELAWARE 19903

June 3, 2004

Aaron Green, M.D.
Health Works - Dover
1275 S. State Street
Dover, Delaware 19901

Dear Dr. Green:

    As you are aware through conversation with Captain John Yeomans, Director of Human Resources, our employee, Master Corporal Wayne H. Warren, has been ordered to undergo testing for hearing loss, as diagnosed by Omega Medical Center on March 1, 2004. Additional diagnostic testing was performed by Omega Medical Center on May 24, 2004. All testing has been forwarded to your attention. In order to obtain a fitness for duty assessment, Corporal/3 Warren has been scheduled for an evaluation in your office on June 17, 2004, at 2:30 p.m. This letter is intended to give you a better understanding of the requirements of a full duty Delaware State Trooper. A job description for the position of Ordnance Officer has also been included for your review.

    Below are nine specific tasks that are required of our full duty officers. Could you kindly take a moment to review the information below? I ask that you indicate with a check mark any tasks that you feel Corporal/3 Warren is **unable** to perform.

_____ Driving a patrol vehicle for extended periods.

_____ Getting in and out of vehicles.

_____ Effecting a forcible arrest; possible physical confrontations (wrestling with suspects).

_____ Biannual firearms re-certification which involves shooting a semi-automatic pistol and shotgun from standing and kneeling positions during the course of a training day.

_____ Climbing obstacles and traversing rough terrain quickly.

_____ Manual traffic control involving prolonged standing and requiring mental and physical alertness and dexterity.

D0431

Aaron Green, M.D.
June 3, 2004
Page 2

_____ Working under stressful and dangerous conditions, in inclement weather and for prolonged periods without the benefit of rest or meal breaks, and working rotating shifts.

_____ Communicating effectively with people of various socioeconomic backgrounds.

✓ Acutely utilizing sensory systems to discern various stimuli of danger and to maximize operational effectiveness.

Since our annual PT test measures an individual's ability to perform physical tasks that may be required to function as a police officer, we assume that an officer unable to complete any portion of this test is also unable to function in a full duty capacity. Please indicate, with a check mark, the specific exercises that this officer is **unable** to perform.

_____ Flexibility - - sit and reach exercise in which the individual must sit on a flat surface with legs extended out in front and extend his/her fingers beyond the toes to the second joint of the fingers.

_____ Push-ups - - individual performs as many push-ups as possible within a one minute time frame. Females perform a modified push-up extending out from a kneeling position.

_____ Sit-ups - - individual performs as many sit-ups as possible within a one minute time frame. A bent knee position is used.

_____ Aerobic Fitness - - an exercise EKG evaluation on a treadmill with an oxygen uptake analysis to measure aerobic fitness.

After reviewing all medical and diagnostic information available, please indicate your assessment for Corporal/3 Warren's ability to continue in the capacity as an ordnance officer. *Corporal Warren is not fit to perform as an ordnance officer without anticipated compromise in his impaired hearing.*

Further, if it is your recommendation that Corporal/3 Warren be removed from the position of ordnance officer, would you find it reasonable for him to function in a full duty capacity in any another position within the Delaware State Police? Such a position could include

D0432

A - 233

Aaron Green, M.D.
June 3, 2004
Page 3

a patrol officer, which would still require bi-annual firearms certification. Capt'l Warren is capable of performing bi-annual firearm certification without entrapted compromise of his current hearing impairment.

Please feel free to include any comments, concerns or recommendations. The significant safety sensitive role involved in the job duties of a state trooper and essential dependence on optimal hearing ability would preclude Capt'l Warren from Consideration. Hearing aids would not be a viable accommodation, do to the amplification of background Noise and resultant distortion.

_____
Physician's Signature

6/18/04
_____
Date

    If you have any questions, please feel free to contact Captain John A. Yeomans, Director of Human Resources at (302) 739-5981. Thank you in advance for your time and assistance with this matter.

                    Very truly yours,

                    LTC R Mc L

                    Lieutenant Colonel Thomas F. MacLeish
                    Deputy Superintendent

TFM:klt
Enclosure

RECEIVED

JUN 2 3 2004

Human Resources Office
Delaware State Police

D0433

03/22/2005  14:00    3027395614                    HQ SUPPLY                        CONFIDENTIAL
                                                                                   Attorney's Eyes Only
                                                                                                p.1
Mar 21 05 09:02a    HUP                                    215 662-4430

 **UNIVERSITY OF
PENNSYLVANIA
MEDICAL CENTER**
University of Pennsylvania School of Medicine
Hospital of the University of Pennsylvania

Edward A. Emmett, M.D., M.S.
Professor & Director
Academic Programs in Occupational Medicine

March 18, 2005

Captain John A. Yeomans, M.D.
Director of Human Resources
State of Delaware
Division of State Police
P.O. Box 430
Dover, DE 19903

RE: Wayne Warren

Dear Captain Yeomans:

As I discussed with you this afternoon, I met with Mr. Wayne Warren again on March 16, 2005, and discussed his test results and concerns. I subsequently reviewed his concerns and his test results with the audiologist and we reviewed his results in the light of hearing standards from jurisdictions that have established precise standards of hearing requirements for law enforcement officers. We were particularly concerned as to whether the background noise used for the functional tests of noise discrimination, relied upon previously, adequately reflected the background which Delaware State Troopers might reasonably be expected to experience during operational conditions.

On the basis of all this information it is my revised opinion that Wayne Warren does not meet the functional hearing he job requirements for a Delaware State Trooper.

It remains important that he takes a maximum of care to avoid any further hearing loss.

Sincerely,

Edward A. Emmett, MD, MS

3400 Spruce Street, Silverstein Pavilion, Ground Floor • Philadelphia, PA 19104-4283 • 215-349-5708 • FAX: 215-662-4430

UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM

FTU4758

A - 235



STATE OF DELAWARE
DEPARTMENT OF SAFETY AND HOMELAND SECURITY
**DIVISION OF STATE POLICE**
P.O. BOX 430
DOVER, DELAWARE 19903

June 25, 2004

Corporal/3 Wayne H. Warren
12 Ketch Court
Lewes, Delaware 19958

Dear Corporal/3 Warren:

In correspondence received from Dr. Aaron Green, it has been determined that due to your hearing loss, you are currently unable to perform certain essential job requirements associated with the position of a State Trooper. This determination is based upon an assessment of your audiogram data and a personal interview with Dr. Green. Until a physician, approved by the Division, clears you to perform these job requirements, you will be considered in a light duty status. You must adhere to the restrictions set forth below:

1. Your work status will be Light Duty, Non-Uniform consisting of administrative desk duties.

2. You will report to work in civilian business attire. You are not to wear a Delaware State Police officer uniform for work purposes or otherwise.

3. You may keep your assigned divisional weapon; however, it shall not be used for any police-related duties.

4. If you observe a crime in progress, or foresee that a situation may occur which has the potential of placing you in a confrontational or dangerous position, you are to remove yourself from the situation and act in the same capacity as a civilian by notifying a full-duty officer or the communications center of the situation.

5. You are not to operate a marked Delaware State Police vehicle, and may only utilize unmarked divisional vehicles for administrative purposes or for the convenience of the Division. You are not to stop any vehicles for any reason until your physician returns you to full duty.

6. You are to avoid any situations that will potentially work against the successful rehabilitation of your illness/injury.

D0427

A - 236

Corporal/3 Wayne H. Warren
Page 2

The above restrictions cannot anticipate each and every situation that might aggravate your physical condition. Therefore, it is incumbent upon you and your supervisor to establish additional restrictions as necessary, in order to assure your safety, and the safety of those around you and to facilitate your successful rehabilitation.

If you should have any questions regarding any of these restrictions, please contact the Human Resources Office at (302) 739-5981.

Very truly yours,

Lieutenant Colonel Thomas F. MacLeish
Deputy Superintendent

TFM:lem

cc:    Major Randall B. Hughes
       Captain Gregory A. Warren
       Captain John A. Yeomans

D0428

A - 237

# News Journal

Estimated printed pages: 3

March 23, 2004
Section: Local
Page: 1, 2B

### Troopers' @ring range shut down
*J.L. MILLER*
*Staff*
*NJ*

Environmental problems are cited; state, expert differ on cost of repair

By J.L. MILLER, Dover Bureau reporter

Environmental problems have forced the closure of the state police indoor **firing range** near Smyrna, but estimates on what it will take to fix the problem vary dramatically.

The building, on Clark Farm Road, is contaminated with lead, copper, zinc and arsenic from ammunition.

Gloria Wernicki Homer, secretary of the state Department of Administrative Services, said the air-handling system needs "a little tweaking" and a bullet trap needs to be repaired.

Cleaning up the pollution and repairing the bullet trap, which catches bullets and contains the metal dust, would cost $69,000 at most, Homer said.

Adding a ballistic ceiling, which would eliminate the danger of ricochets if a shot is inadvertently fired upward, could cost $550,000 to $650,000, Homer said.

The pollution issue, "as we see it, is not the air-handling system; it's the bullet trap," Homer said.

But William Provencher, head of Carey's Heating & Air Conditioning Inc. in Tinley Park, Ill., said the ventilation system is inadequate and should be replaced.

Bringing the shooting range up to U.S. Navy specifications, a recognized standard in the field, would cost about $2.2 million - not

including the environmental cleanup, Provencher said.

Provencher's company, which developed the standard used by the Navy, evaluated the Smyrna **range** at the request of state police.

"I was asked to look at the ventilation system originally. The first thing that struck me when I walked into the **range** had nothing to do with ventilation," Provencher said. "It was the exposed concrete construction. A misfired round could possibly come back at a shooter."

The state needs to install a ballistic ceiling and a new bullet trap, Provencher said.

Ventilation systems for modern **ranges** move air past the shooter at a rate of 75 feet per minute, the equivalent of a breeze of about 1 mph, thus keeping pollutants from lingering.

"What they have there, in my opinion, won't meet the standard," Provencher said.

**D2441**

Lt. Col. Tom MacLeish, the state police deputy superintendent, said his agency agrees with the Division of Facilities

Management that a new [air] handling system is unnecessary. He said state police asked for an opinion from Provencher's company in February.

"Remember, he is trying to sell us something," MacLeish said. "That was shared with Facilities Management, and they agreed with us."

MacLeish said the police stopped using the range in January and closed the building Friday after the lead levels in two employees' blood rose significantly. The lead levels remained within what he called acceptable limits.

In 2001 the police stopped using lead bullets on the range, replacing them with so-called "frangible" bullets that disintegrate into dust when they hit the target. Those bullets are made of copper, zinc and tin.

However, the shotgun shells used on the range contain lead shot, and the primers that ignite ammunition also contain lead.

Officers must qualify on the range twice a year, and the spring shoot will take place in May and June, most likely at the state's outdoor Ommelanden facility near New Castle, MacLeish said.

Homer said the Smyrna range could be back in operation in a matter of weeks if all that is needed is to repair the bullet trap and clean the site. Installing a ballistic ceiling would take months, she said.

The state has been in contact with bullet-trap manufacturers. A decision on a ballistic ceiling has not been made.

The firing range has had problems from the beginning.

When construction began in the mid-1990s, a mistake in a land survey cost an additional $85,000 in earth-moving costs. Later, the roof sagged because the heating and air-conditioning system was heavier than anticipated.

Weapons instructors complained of gunpowder fumes and metallic odors as soon as the range opened in 1998. Subsequent air-quality tests showed that the instructors, who spend more time at the range than the shooters, were being exposed to unhealthful levels of lead.

The ventilation system was repaired, but when the bullet trap broke the system "got out of whack in 2000," Homer said. "It wasn't able to handle the contaminants in the air because of the broken bullet trap. Under normal circumstances it works just fine," she said.

Homer said the current problems came to her attention in February, adding, "We have been working with the state police to resolve the issue."

Reach J.L.Miller at 678-4271 or jlmiller@delawareonline.com.

Photo Caption:

The News Journal/SCOTT NATHAN

The police firing range has been plagued by problems.

Copyright (c) The News Journal. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.

D2442