IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| B. KURT PRICE, et al. | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 04-956-GMS |
| v. | : | (Consolidated with C.A. No. 04-1207-GMS) |
| | : | |
| L. AARON CHAFFINCH, et al., | : | |
| | : | |
| Defendants. | : | |

**ANSWERING BRIEF OF DEFENDANTS
IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR SUMMARY
JUDGMENT OR IN THE ALTERNATIVE FOR JUDGMENT AS A MATTER OF LAW
<u>ON PLAINTIFFS' PETITION CLAUSE COUNTS</u>**

Date:  July 7, 2006

Noel C. Burnham (DE Bar No. 3483)
Richard M. Donaldson (DE Bar No. 4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE  19801
(302) 504-7840

Edward T. Ellis (Admitted Pro Hac Vice)
Robert J. Fitzgerald (Admitted Pro Hac Vice)
Carmon M. Harvey (Admitted Pro Hac Vice)
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

*Counsel for Defendants L. Aaron Chaffinch,
Thomas F. MacLeish, David B. Mitchell, and the
Division of State Police, Department of Safety and
Homeland Security, State of Delaware*

2090307v2

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

I. INTRODUCTION ............................................................................................................ 1

II. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................. 2

III. SUMMARY OF THE ARGUMENT ............................................................................... 2

IV. CONCISE STATEMENT OF FACTS ............................................................................. 2

V. ARGUMENT: PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT ON THEIR PETITION CLAUSE COUNTS BECAUSE PLAINTIFFS DID NOT ENGAGE IN ACTIVITY PROTECTED BY THE PETITION CLAUSE ........................ 2

    A. Plaintiffs' Speech about the Conditions at the Firing Range Was Not a "Petition" under the First Amendment .................................................................... 2

        1. The Third Circuit's Definition of "Petition" .............................................. 2

        2. The Plaintiffs' statements about the range were not constitutionally protected petitions ...................................................................................... 5

    B. Even if Plaintiffs' Speech about the Indoor Firing Range was a "Petition," it is not Constitutionally Protected Activity for the Reasons Set Forth in Garcetti v. Ceballos ................................................................................................ 7

        1. Garcetti Should Apply to Petition Clause Claims ...................................... 7

        2. The Plaintiffs Made Their So-Called "Petitions" Pursuant to their Official Duties ............................................................................................. 9

VI. CONCLUSION ............................................................................................................... 12

EXHIBITS AND UNPUBLISHED CASES

*Brewster v. City Of Poughkeepsie*, No. 04 Civ. 4204 (Cm), Complaint
    (S.D.N.Y. Filed June 4, 2004) ............................................................................................. Ex. 1

*Brewster v. City of Poughkeepsie*, No. 04 Civ. 4204 (Cm), 2006 WL 1676143
    (S.D.N.Y. June 8, 2006) ...................................................................................................... Ex. 2

*Logan v. Ind. Dept. of Corr.*, No. 1:04-Cv-0797-Seb-Jpg, 2006 WL 1750583
    (S.D. Ind. June 26, 2006) .................................................................................................... Ex. 3

*Mills v. City of Evansville*, No. 05-3207, Slip Op. (7th Cir. June 20, 2006) ........................... Ex. 4

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bowman v. City of Middletown*, 91 F. Supp. 2d 644 (S.D.N.Y. 2000) .......................................... 4

*Bradshaw v. Township of Middletown*, 296 F. Supp. 2d 526 (D.N.J. 2003) ................................ 3

*Brewster v. City of Poughkeepsie*, No. 04 Civ. 4204 (CM), 2006 WL 1676143 (S.D.N.Y. June 8, 2006) .................................................................................................... 9

*Brookins v. O'Bannon*, 699 F.2d 648 (3d Cir. 1983) ..................................................................... 4

*Connick v. Myers*, 461 U.S. 138 (1983) ........................................................................................ 8

*Cooper v. Cape May County Bd. of Social Servs.*, 175 F. Supp. 2d 732 (D.N.J. 2001) ................ 6

*Gable v. Lewis*, 201 F.3d 769 (6th Cir. 2000) ................................................................................ 4

*Garcetti v. Ceballos*, --- U.S. ---, 126 S. Ct. 1951 (2006) ..................................................... passim

*Grigley v. City of Atlanta*, 136 F.3d 752 (11th Cir. 1998) ............................................................ 8

*Herr v. Pequea Township*, 274 F.3d 109 (3d Cir. 2001) ............................................................... 4

*Logan v. Ind. Dept. of Corr.*, No. 1:04-cv-0797-SEB-JPG, 2006 WL 1750583 (S.D. Ind. June 26, 2006) ................................................................................................. 8

*Losch v. Borough of Parkesburg*, 736 F.2d 903 (3d Cir. 1984) ................................................ 4, 5

*Mariana v. Fisher*, 338 F.3d 189 (3d Cir. 2003) ........................................................................... 4

*McDonald v. Smith*, 472 U.S. 479 (1985) ............................................................................. 2, 7, 8

*Mills v. City of Evansville*, No. 05-3207, Slip Op. (7th Cir. June 20, 2006) ................................ 8

*Norwell v. City of Cincinnati*, 414 U.S. 14 (1973) ....................................................................... 5

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) .......................................................................... 11

*San Filippo v. Bongiovanni*, 30 F.3d 424 (3d Cir. 1994) .................................................. 1, 2, 3, 8

**OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. 2004) ........................................................................................... 3

I.     **INTRODUCTION**

In their Renewed Motion for Summary Judgment or in the Alternative for Judgment as a Matter of Law on Plaintiffs' Petition Clause Counts, Plaintiffs have added the word "petition" where they once referred only to "speech" and have included citations to Petition Clause cases that have no bearing on the issue before this Court.  Plaintiffs' effort to collapse their free speech and petition claims into one petition claim ignores two critical legal principals that, when applied to this case, preclude judgment in Plaintiffs' favor and require entry of judgment in favor of the Defendants.  First, the Third Circuit has held that a "petition" under the Constitution is not just another form of "free speech" but a special mode of expression made within formal structures created by the government that is entitled to higher protection.  *San Filippo v. Bongiovanni*, 30 F.3d 424, 442-43 (3d Cir. 1994).  Because Plaintiffs have not invoked any mechanism marked with the government's "constitutional imprimatur," they cannot be said to have exercised their First Amendment petition under Third Circuit law.  *Id.*

Second, speech made by a public employee pursuant to his official duties is not constitutionally protected.  *Garcetti v. Ceballos*, --- U.S. ---, 126 S. Ct. 1951 (2006).  If, as they have consistently maintained, Plaintiffs' "petitions" were indistinguishable from their "free speech," those "petitions" were not protected because they were made in the course of Plaintiffs' job responsibilities.  Accordingly, Plaintiffs' Renewed Motion for Summary Judgment or in the Alternative for Judgment as a Matter of Law on Plaintiffs' Petition Clause Counts should be denied.

2090307v2

**II.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

A statement of the nature and stage of the proceedings is set forth in Section I of Defendants' Motion for Judgment as a Matter of Law or, in the Alternative, to Amend the Judgment or for a New Trial, filed with the Court on June 19, 2006. (D.I. #194.)

**III.    SUMMARY OF THE ARGUMENT**

1.  The Court should deny Plaintiffs' Renewed Motion for Summary Judgment or in the Alternative for Judgment as a Matter of Law because Plaintiffs' speech about the conditions at the firing range was not a "petition" under the First Amendment.

2.  The Court should deny Plaintiffs' Renewed Motion for Summary Judgment or in the Alternative for Judgment as a Matter of Law because Plaintiffs' speech about the conditions at the firing range is not constitutionally protected under the law set forth in *Garcetti v. Ceballos*.

**IV.    CONCISE STATEMENT OF FACTS**

All relevant facts are set forth in Section III of Defendants' Motion for Judgment as a Matter of Law or, in the Alternative, to Amend the Judgment or for a New Trial, filed with the Court on June 19, 2006. (D.I. #194.)

**V.     ARGUMENT: PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT ON THEIR PETITION CLAUSE COUNTS BECAUSE PLAINTIFFS DID NOT ENGAGE IN ACTIVITY PROTECTED BY THE PETITION CLAUSE.**

**A.    Plaintiffs' Speech about the Conditions at the Firing Range Was Not a "Petition" under the First Amendment.**

**1.     The Third Circuit's Definition of "Petition"**

The Third Circuit, while recognizing that the "right to petition is cut from the same cloth as the other guarantees" of the First Amendment, has held that the Petition Clause is not merely a "redundant appendage of the clauses guaranteeing freedom of speech and press." *San Filippo*, 30 F.3d at 442-43 (quoting *McDonald v. Smith*, 472 U.S. 479, 482 (1985)) ). Where the Free

2

Speech Clause "protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern," *Garcetti*, 126 S. Ct. at 1957, the Petition Clause more broadly protects expression that is purely private as long as it is not a "sham." *San Filippo*, 30 F.3d at 442-43. The justification for affording "petitions" greater protection than less formal forms of free speech is found in the governmental "obligation to have at least some channel open for those who seek redress for perceived grievances" caused by that government. *Id.* at 442. Thus, the Third Circuit has narrowly defined a "petition" in the constitutional sense as an invocation of a "formal mechanism" that has been adopted by a government "for redress of those grievances for which government is allegedly accountable." *Id.* at 439, 442; *see* Black's Law Dictionary (8th ed. 2004) (defining "petition" as a "formal written request presented to a court or other official body").

If the definition of "petition" under the First Amendment included informal speech made outside the structures of a governmentally created grievance mechanism, then the rationale for affording added protection to petitions would fall apart. Accordingly, consistent with this heightened appreciation for the formalities attending the particularized form of speech known as "petitions," courts have recognized heightened constitutional protections for lawsuits, administrative claims, and employee-grievance procedures. *San Filippo*, 30 F.3d at 439 & n.18 ("[W]hat San Filippo characterizes as 'petitions' are not letters to the government-employer, but lawsuits and grievances directed at the government-employer or its officials. Submissions of this sort purport to invoke formal mechanisms for the redress of grievances."); *Bradshaw v. Township of Middletown*, 296 F. Supp. 2d 526, 546 (D.N.J. 2003), *aff'd* 2005 U.S. App. LEXIS 18622 (3d Cir. Aug. 29, 2005) ("[T]he Petition Clause… only applies to petitions in the nature of a lawsuit or grievance. If the conduct at issue is not in the nature of a formal grievance

3

procedure that the Petition Clause is designed to protect, then governmental retaliation is not constitutionally actionable.") (citations omitted); *cf. Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 664 (S.D.N.Y. 2000) ("the administrative remedies for which an inmate enjoys a First Amendment right of petition are limited to those set forth under state administrative law, such as sending a complaint to a state bureau of prisons, as opposed to informal or intra-prison complaints") (citations omitted).

The cases cited by Plaintiffs in their "renewed" motion are not to the contrary. For example, in *Herr v. Pequea Township*, 274 F.3d 109 (3d Cir. 2001), *overruled on other grounds, UA Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003), the court affirmed the petition rights of individuals who participated in proceedings in state courts and before other "governmental agencies authorized to resolve issues" like those presented by the plaintiffs. *Id.* at 112, *cited in* Pls.' Mot. at 15-16, 20; *see also Mariana v. Fisher*, 338 F.3d 189, 198-99 (3d Cir. 2003), *cited in* Pls.' Mot. at 15, 19-20 (upholding defendants' right to petition where they, within the context of a lawsuit, "petitioned government entities authorized to resolve the pertinent issues"); *Brookins v. O'Bannon*, 699 F.2d 648, 652 (3d Cir. 1983), *cited in* Pls.' Mot. at 15, 20 (considering whether statute infringed upon petition rights by deterring plaintiffs from bringing lawsuits); *Gable v. Lewis*, 201 F.3d 769, 770 (6th Cir. 2000), *cited in* Pls.' Mot. at 15-16 (affirming judgment for plaintiff whose petition was "an official written complaint" "filed with the state agency").

Plaintiffs' reliance on *Losch v. Borough of Parkesburg*, 736 F.2d 903 (3d Cir. 1984), is misplaced. First, it does not appear from the Third Circuit's opinion that Losch was asserting a violation of the Petition Clause. In his complaint, the plaintiff alleged that the defendants retaliated against him in "an attempt to suppress and to abridge [his] right to make reasonable

comment concerning the manner in which public officials discharged their public duties." *Id.* at 907. In analyzing the qualified immunity question, the court phrased the issue before it as whether the plaintiff had "clearly established rights to petition the government." *See id.* at 909-10. In resolving the issue, the Third Circuit cited the Supreme Court's holding in *Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973), for the proposition that the "prosecution of a citizen in retaliation 'for nonprovocatively voicing his objection' to police conduct impermissibly punishes *constitutionally protected speech*." *Id.* at 910 (emphasis added). *Losch* does not expand the Petition Clause to taping a note to the front door of a police station; rather it held that, for purposes of qualified immunity, a citizen's right to complain about police conduct without being punished was clearly established. *Id.*

Second, the plaintiff in *Losch* was not a public employee, which lessens the government's interest in and ability to respond to the statements. Finally, *Losch* was decided long before *San Filippo*, in which the Third Circuit recognized the special nature of constitutional petitions and the heightened protection associated with that special form of speech.

If, as Plaintiffs contend, *Losch* applies in the public employment context, then there would be virtually no limit on a public employee's petition rights. Any gripe would be protected as long as it was directed at a government official. This is not the logic or result of *San Filippo* or any other case that has considered a public employee's rights under the Petition Clause. It would also run afoul of *Garcetti*, as set forth more fully below.

>  **2.    The Plaintiffs' statements about the range were not constitutionally protected petitions.**

Plaintiffs' statements about the range directed up the chain of command and to the Auditor were not "petitions" in the constitutional sense because Price, Warren, and Foraker did not invoke mechanisms created by the government to hear and redress employee grievances.

Foraker's internal statements to his lieutenant and captain were informal criticisms made in the course of Foraker's every-day duties. They were not formal grievances. *Cooper v. Cape May County Bd. of Social Servs.*, 175 F. Supp. 2d 732, 746 (D.N.J. 2001) (holding that "speech in many informal settings, including letters, phone calls, and meetings with officials" does not "implicate the Right to Petition under the First Amendment because [it] is not in the nature of a formal grievance procedure that the Petition Clause is designed to protect"). Similarly, Plaintiffs' response to a request for an interview by the State Auditor was not a constitutionally cognizable petition. Plaintiffs' insistence that their statements to the Auditors were grievances made to the Auditor to "fix" the range does nothing to establish that Plaintiffs pursued a governmentally approved mechanism.[1] In fact, the record is clear that the Auditor's Office lacked the general authority or a specific mandate to address any of Plaintiffs' complaints. Rather, the purpose of the investigation was merely to review the selection of the range architect, the factors causing the range shutdown, and use of funds at the range. *See* App. to Opening Br. in Supp. of Defs.' Mot. for J. as a Matter of Law or, in the Alternative, for a New Trial ("App.") (D.I. #196) at A-240 – A-243 (Auditors' Report).

　　Plaintiffs' statements were not constitutionally cognizable petitions, and, for that reason, Plaintiffs are not entitled to summary judgment or judgment as a matter of law.

---

[1] Plaintiffs' "renewed motion" contains numerous pages detailing the "subject matter" of their speech about the range. Pls.' Mot. at 4-8 (identifying eight different issues, including "poisoning of police officers," "defective headsets," and "low staffing levels"). These facts are a repetition of the Plaintiffs' original motion for summary judgment. At that time, Plaintiffs needed to assert these facts (which also formed the basis of their Free Speech claim) to demonstrate that their speech was a matter of "public concern." Because constitutional petitions by public employees need not meet a public-concern requirement, the content of Plaintiffs' speech is not relevant to the Court's consideration of the Plaintiffs' Petition Clause claims.

6

### B. Even if Plaintiffs' Speech about the Indoor Firing Range was a "Petition," it is not Constitutionally Protected Activity for the Reasons Set Forth in *Garcetti v. Ceballos*.

#### 1. *Garcetti* Should Apply to Petition Clause Claims.

Plaintiffs are not entitled to judgment on their Petition Clause claim because they made the statements at issue pursuant to their official duties as Delaware state troopers and, under *Garcetti v. Ceballos*, the First Amendment does not protect public employees who make statements pursuant to their official duties.

The plaintiff in *Garcetti*, Richard Ceballos, was a deputy district attorney whose job responsibility included the review of affidavits used by prosecutors to obtain search warrants. 126 S. Ct. at 1955. In February 2000, at the urging of a defense attorney, Ceballos reviewed a search warrant, found what he felt were "serious misrepresentations" in it, and recommended in two written memoranda to his supervisors that the prosecution based on the warrant be dismissed. *Id.* Despite Ceballos' documented concerns, the district attorney's office proceeded with the case, during which Ceballos testified as a defense witness as part of a challenge to the suspect warrant. Ceballos' complaint asserted that, after his testimony regarding the warrant, his superiors subjected him to a "series of retaliatory employment actions," including a reassignment, a transfer, and denial of a promotion. *Id.* at 1956.

The Supreme Court in *Garcetti* held that an employee is not entitled to First Amendment protection for speech made pursuant to his or her official duties. *Id.* at 1960 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.") The Court specifically addressed only the scope of a plaintiff's free speech rights. The right to petition, however, "is cut from the same cloth as the other guarantees of [the First] Amendment," *McDonald*, 472 U.S. at 482, and there is no

principled reason why the government should not also be able to freely act against an employee whose speech might be characterized as a "petition." *Id.* at 485 ("These First Amendment rights are inseparable, and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions.") (citations omitted); *see also Grigley v. City of Atlanta*, 136 F.3d 752, 755 (11th Cir. 1998). This is especially true where, as in this case, the content, context, and scope of plaintiffs' Petition Clause claim are identical to their free speech claim. Whatever label Plaintiffs seek to attach to their speech, whether "free speech" or "petition," the First Amendment "does not empower them to 'constitutionalize [their] employee grievance." *Garcetti*, 126 S. Ct. at 1959 (citing *Connick v. Myers*, 461 U.S. 138, 154 (1983)).

      The Third Circuit has held that petitions are different from other, less formal types of protected speech. *San Filippo*, 30 F.3d at 441-42. Specifically, a plaintiff asserting a violation of his or her petition rights need not prove, when suing the same government that might grant relief in response to the petition, that the petition is a matter of public concern. *Id.* *Garcetti's* analysis of what constitutes First Amendment "protected activity," however, takes place before any consideration of "public concern." Under *Garcetti*, the essential first question for all First Amendment claims is whether the plaintiff is speaking "*as a citizen*." 126 S. Ct. at 1958 (emphasis added); *see Logan v. Ind. Dept. of Corr.*, No. 1:04-cv-0797-SEB-JPG, 2006 WL 1750583, at *1 (S.D. Ind. June 26, 2006) (citing *Mills v. City of Evansville*, No. 05-3207, slip op. at 3 (7th Cir. June 20, 2006)). If the answer is negative, the ability of the government as an employer to "control[] speech made by an employee in his or her professional capacity" and the need to avoid "permanent judicial intervention in the conduct of governmental operations" precludes constitutional protection, regardless of the public interest involved in the speech.

8

*Garcetti*, 126 S. Ct. at 1960-61.  If the answer is affirmative, a court in the Third Circuit must apply the public-concern test to free speech claims and the "non-sham" test to the petition claims.  Thus, the Third Circuit's Petition Clause jurisprudence applies only after the application of the restrictions set forth in *Garcetti*.

At least one other court has applied *Garcetti* to dismiss a plaintiff's claims of First Amendment retaliation under the Petition Clause.  In *Brewster v. City of Poughkeepsie*, No. 04 Civ. 4204 (CM), 2006 WL 1676143 (S.D.N.Y. June 8, 2006), the plaintiff asserted that she was terminated as a parking agent because of letters her husband wrote that were critical of the police chief.  The court held that the letters were "related to [the husband's] 'daily professional activities'" and, for that reason, were "not protected speech."[2]  *Id.* at *2 (quoting *Garcetti*, 126 S. Ct. at 1960).  The court did not explicitly address the Petition Clause.  However, the plaintiff clearly asserted violations of "Plaintiff's right to petition the government for redress of her complaints," rather than violations of the Free Speech Clause.  *See* Ex. 1 (*Brewster v. City of Poughkeepsie*, No. 04 Civ. 4204 (CM), Complaint (S.D.N.Y. filed June 4, 2004)).

### 2. The Plaintiffs Made Their So-Called "Petitions" Pursuant to their Official Duties.

The evidence is unambiguous that Plaintiffs spoke about the range pursuant to their duties as officers responsible for the conditions at that facility.  It is undisputed, for example, that Foraker was in sole charge of the range, and its condition was his responsibility; thus, any reports up the chain of command on conditions there were within his official job duties.  *See* App. at A-395 – A-396 (Pls.' Ex. 7).  In fact, in evaluating Foraker's job performance, his immediate

---

[2] The court noted that, unlike the plaintiff in *Garcetti*, Brewster was allegedly retaliated against because of her husband's speech, but found that difference to be "of no moment."  *Brewster*, 2006 WL 1676143, at *2 ("[I]f [the husband] does not have a cause of action based on his own unprotected speech – and he does not – [his] wife certainly cannot state a claim … based on that same unprotected speech.")

supervisor offered unqualified praise for Foraker's reporting of the range conditions. *See id.* Similarly, the performance appraisals for Price and Warren, written by Foraker, make clear that their work on the condition of the range was part of their official duty to assist Foraker. App. at A-381 (Pls.' Ex. 15), A-369 (Pls.' Ex. 20); *see also* App. at A-47, A-48, A-50, A-51, A-53 (5/16/06 Trial Tr., Testimony of W. Warren, at 243:15-22, 244:6-22, 247:2-5, 255:13-17, 258:8-16, 260:16-21, 265:22-24); A-85 (5/17/06 Trial Tr., Testimony of D. Baylor, at 555:10-24); A-113 – A-114 (5/19/06 Trial Tr., Testimony of B. Price, at 960:20 – 961:7).

More directly, both Price and Warren testified that they had a *professional duty* to meet with the Auditor's investigators to discuss problems at the range. *See* App. at A-116 (5/19/06 Tr., Testimony of B. Kurt Price, at 970:23 – 971:3) ("*It was my duty to speak to the auditors.* The order came down from the executive office of the State of Delaware, meaning the Governor's office. *I am bound by that order.*" (emphasis added)); A-63 (5/16/06 Tr., Testimony of Wayne Warren, at 307:2-4) ("There was an auditors' investigation. *I was required to speak to them.*" (emphasis added)). Plaintiffs also elicited testimony at trial from Col. MacLeish, Ret. Maj. David Baylor, Ret. Capt. Greg Warren, and Capt. Ralph Davis that their reports on problems at the range both up the chain of command and to the investigators for the Auditor's Office were within their official duties. *See* App. at A-84 – A-85 (5/17/06 Trial Tr., Testimony of D. Baylor, at 554:23 – 555:9); *see also* App. at A-131 – A-132 (5/22/06 Trial Tr., Testimony of G. Warren, at 1202:23 – 1206:14).

This is not a case in which "there is room for serious debate" about the scope of Plaintiffs' employment duties. *Garcetti*, 126 S. Ct. at 1961. The record is replete with evidence that Plaintiffs made statements up the chain of command or to the investigators for the Auditor of Accounts pursuant to their official duties as Delaware State Police troopers. There is no

evidence to the contrary. Plaintiffs admit, for example, that none of their statements were made in a public forum.[3] Pls.' Mot. at 20; *cf. Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). It is clear that Plaintiffs were not speaking as citizens when they made their "petitions." *See Garcetti*, 126 S. Ct. at 1960. Indeed, Plaintiffs could only have made the statements they made as employees. Citizens do not have access to the DSP e-mail system to present their complaints to the chain of command. The Auditor's office did not conduct open sessions for citizen comments; rather, they interviewed troopers who had some connection with the range.

*Garcetti* limits the scope of First Amendment protection in deference to the government-employer's "heightened interests in controlling speech made by an employee in his or her professional capacity." *Id.* These interests are equally strong when the employee characterizes his or her speech as a "petition." Accordingly, the Court should find Plaintiffs' so-called "petition" beyond the protective reach of the First Amendment and deny Plaintiffs summary judgment or judgment as a matter of law.

---

[3] All reports that Foraker, Price, and Warren made concerning the conditions of the range were either up the chain of command or to the investigators for the Auditor of Accounts. *See* App. at A-47 (5/16/06 Trial Tr., Testimony of W. Warren, at 244:6-22); A-87 – A-88 (5/17/06 Trial Tr., Testimony of David Baylor, at 566:16 – 567:2); A-113 – A-114 (5/19/06 Trial Tr., Testimony of B. Price, at 960:20 – 961:7); A-131 – A-132 (5/22/06 Trial Tr., Testimony of G. Warren, at 1202:23 – 1206:14); A-164 (5/22/06 Trial Tr., Testimony of C. Foraker, at 1416:10-14); *see also* A-391, A-393 (Pls.' Ex. 7).

2090307v2

**VI.     CONCLUSION**

In light of *Garcetti v. Ceballos*, and for the reasons set forth above, Defendants request that the Court deny Plaintiffs' Renewed Motion for Summary Judgment or in the Alternative for Judgment as a Matter of Law on Plaintiffs' Petition Clause Counts.

Respectfully submitted,

Date:  July 7, 2006               */s/ Noel C. Burnham*
Noel C. Burnham (DE Bar No. 3483)
Richard M. Donaldson (DE Bar No. 4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
Telephone:  (302) 504-7840
Facsimile:  (302) 504-7820

Edward T. Ellis
Carmon M. Harvey
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that two (2) copies of the Answering Brief In Opposition To Plaintiffs' Renewed Motion for Summary Judgment or in the Alternative for Judgment as a Matter of Law on Plaintiffs' Petition Clause Counts were served by hand delivery, this 7th day of July 2006, on:

>Thomas Stephen Neuberger, Esq.
>Stephen J. Neuberger, Esq.
>The Neuberger Firm, P. A.
>Two East Seventh Street, Suite 302
>Wilmington, DE 19801

>and

>Martin D. Haverly, Esquire
>Martin Duane Haverly, Attorney At Law
>Two East Seventh Street, Suite 302
>Wilmington, DE 19801

*Counsel for Plaintiffs*

      */s/ Noel C. Burnham*
      Noel C. Burnham [DE Bar No. 3483]

2090307v2