# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FILED
U.S. DISTRICT COURT
------------------------------------------------------------------X    2004 JUN -4  P 3: 33

IBIS BREWSTER,                                                    S.D. OF N.Y. W.P.

                                    Plaintiff,

                                                                  COMPLAINT

            v.                                          ECF CASE 04 CIV. 4204

CITY OF POUGHKEEPSIE,                                   JURY TRIAL DEMANDED


                        Defendants.                     JUDGE McMahon

------------------------------------------------------------------X

        Plaintiff, IBIS BREWSTER, by and through her attorneys, JONES, SLEDZIK,

GARNEAU & NARDONE, LLP, as and for her complaint against the Defendant alleges:


        I.      PARTIES

        1.      Plaintiff, Ibis Brewster, formerly known by her maiden name, Ibis Ashton,

is a citizen of the United States and resides in Highland, New York, in Dutchess County.

        2.      Defendant, the City of Poughkeepsie (hereinafter "the City"), is a

municipality incorporated pursuant to the laws of the State of New York.


        II.     JURISDICTION

        3.      This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C.

§§1331 and 1343(3) and (4), and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

It may award to Plaintiff the attorneys' fees and costs rising from this litigation pursuant

to 42 U.S.C. §1988.

        4.      In or about July 17, 2003, Plaintiff filed a complaint with the Equal

Employment Opportunity Commission.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

5.    As more than 180 days have elapsed since the filing of the foregoing administrative complaint and Plaintiff received a right to sue letter dated March 16, 2004, Plaintiff has exhausted her administrative remedies and herein timely invokes the jurisdiction of this Court.

III.        FACTUAL ALLEGATIONS

6.    Plaintiff is a Hispanic female, of Cuban origin.  She was hired by the City of Poughkeepsie ("the City") as a part-time Parking Enforcement Agent on or about November 27, 2000, and assigned to the City Police Department.  Dutchess County Department of Personnel designated her position as Parking Control Officer.

7.    On or about May 2001, she became a full-time, non-competitive class employee.  During her employment, she reported to a Patrolman and various City Police Department Sergeants.  All of her supervisors were white males.  She was one of approximately three employees of Hispanic origin in the entire police department.  She never received any formal training for her position.  She was never written up or disciplined.

8.    During her employment with the City, she was ridiculed by her supervisors and co-workers when she spoke Spanish to Hispanic co-workers.  White, male City police department employees made comments including "You are in America, speak English" or "Go back to your own country if you want to speak Spanish."  She was specifically instructed by supervisors not to speak Spanish to co-workers while performing her job duties or when talking to persons who spoke Spanish.

9.    As a Parking Control Officer, Plaintiff was not issued nor permitted to carry a weapon and not permitted to make arrests.

10.     On repeated occasions when she called for back up, she was verbally reprimanded and told that if she could not do the job without assistance of a police officer, her position would be terminated. Repeatedly, she was assigned to the worst and most dangerous sections of the City.     While her co-worker, the other Parking Enforcement Agent for the City, a white male, was given better assignments and not reprimanded for requests he made for back-up. During the course of acting as a Parking Enforcement Agent in these high risk areas, she was repeatedly threatened with assault, and three citizens were charged with crimes because of their mistreatment of Plaintiff.

11.     For example, one of the incidents involved a citizen attempting to run Plaintiff over with her car as she attempted to issue him a ticket.

12.     During the course of Plaintiff's employment as Parking Control Officer in the high risk areas, she was denied back up, not provided sufficient back up, and criticized unreasonably by her supervisors about her requests for back up. Officers of Defendant continually ignored her requests for back-up when confronted by citizens in high risk areas. On one occasion, on or about July 24, 2001, one of her supervisors incited citizens against Plaintiff and then abandoned her at the scene to face citizens irate at her because she was issuing tickets.

13.     In the course of performing her duties, Plaintiff caused the Chief of Police daughter's car to be impounded. Confirmation of the vehicle being owned by the Chief's daughter and the fact that her license was suspended was announced on the police radio, available to the public. While the car was released to the Chief's daughter, Plaintiff reviewed the relevant records that indicated the fines, penalties and impounding charges were never paid.

3

14.    She also issued tickets to the sister of one of the Captains, and was requested by the sister to "get rid" of the ticket.

15.    In or about March 20, 2002, Plaintiff was verbally admonished by her Supervisor and told to limit the amount of data, such as license plates on vehicles with expired registrations, she asked to be checked on police computers. Her co-worker, a white male, was not so admonished. Plaintiff commented to her co-workers that the Department did not want her requesting such data over the police radio frequency that could be monitored by the public and towing companies, because the public would then realize that the Department was failing to remove or impound vehicles with switched or suspended license plates.

16.    In furtherance of her performance of her duties, Plaintiff had been issued a vehicle like a golf cart manufactured by Kawasaki, referred to as the "Mule." Despite the fact that the "Mule" was labeled as to be used for off-road purposes only and had no seat belts, Defendant instructed Plaintiff to use it on public roads. In the course of using it, the Mule repeatedly broke down and put Plaintiff in precarious safety situations. Plaintiff was involved in three accidents, where other vehicles struck her or impacted her "Mule." She suffered injuries in these incidents and they appeared on her driving record, causing her insurance premiums to rise. She complained to her supervisors and a union representative in meetings on October 18, 2002, and December 5, 2002. She also complained repeatedly about her safety concerns regarding the Mule to the Chief of Police. Despite all of the aforesaid, Defendant took no action regarding Plaintiff's complaints. However, several weeks after Plaintiff was terminated by the Defendant,

4

Traffic Officers, all of whom were males, were given automobiles for their official use by Defendant.

17.    On or about January 17, 2003, a female citizen attempted to hit Plaintiff with the citizen's vehicle while Plaintiff was writing her a parking ticket. Plaintiff made several requests that the City Police Department file a criminal complaint against the woman, but Plaintiff's requests were refused. The female citizen filed a civilian complaint against Plaintiff, in response to which the City Department purportedly conducted an investigation. Nothing about Plaintiff's behavior toward this citizen constituted misconduct.

18.    In or about January 28, 2003, Plaintiff's then fiancé, Joseph Brewster, a Patrolman with the Defendant's Police Department, was interviewed formally by the Chief of Police wherein the Chief suggested that Brewster dismiss a ticket that he had issued. On or about February 26, 2003, Deputy Chief Ghee presented Brewster with a letter, initialed by the Chief, to dismiss the aforesaid tickets "in the interest of Justice." On March 3, 2003, Brewster, through the union's counsel, sent a letter regarding this matter to the District Attorney, and asking the District Attorney to investigate the Chief.

19.    On March 3, 2003, Plaintiff met with Chief of Police Knapp and Deputy Chief Ghee regarding their purported investigation into the citizen's alleged complaint. Bob Hanneburgh, a City employee and CSEA union shop steward, was also present at the "meeting." At the "meeting," Plaintiff was not provided with the citizen's complaint against Plaintiff nor was Plaintiff given the opportunity to present evidence in her own defense. In the course of the alleged investigation, the Defendant never formally requested Plaintiff's version of the events related to the incident.

20.    On March 13, 2003, Plaintiff was called into a conference room to meet with Chief Knapp, Deputy Chief Ghee and Captain Minard.  Mr. Hanneburgh was also present at the meeting.  Chief Knapp said that Plaintiff was being terminated based upon her performance and the evaluation of supervisors and not because of the incident with this female citizen.  At no time during her employment with the City was Plaintiff ever formally evaluated.  Plaintiff wrote more parking tickets than any male co-worker.  She was also instructed by one Supervisor to cut back writing so many tickets.  The Chief also said that Plaintiff was being terminated because of a "combination of factors."  At the meeting, Plaintiff was handed a letter of termination that was dated the next day, March 14, 2003, signed by City Administrator James A. Marquette and countersigned by Chief Knapp on a line indicating "Department Head Approval."

21.    Plaintiff was treated differently from male, white employees and her national origin and gender were factors in the treatment that she received.  For example, several white male officers who have been charged with theft and criminal activity by the Department were disciplined and given penalties less than termination.  If Plaintiff was a white male, she would not have been given the assignments that she was given or terminated in the circumstances that she was.  If Plaintiff was a white male employee, she would still be employed by the City.

22.    Since her termination, Plaintiff applied for unemployment benefits.  The City challenged Plaintiff's unemployment benefit application.  Although the City challenged Plaintiff's application, in the past it did not challenge unemployment compensation applications made by white male employees terminated in circumstances of clear misconduct, i.e. pending allegations of criminal misconduct.

6

23.     The City has applied it policies only against Plaintiff as a means of singling her out because of her gender and national origin.

24.     Defendant's actions have caused plaintiff serious emotional distress and upset, including sleeplessness, anxiety, humiliation and depression.   Plaintiff has also suffered economic loss as a result of Defendant's actions, including lost wages and benefits.

## VI.    CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION

25.     Plaintiff incorporates paragraphs 1-24 as if fully set forth herein.

26.     Based on the foregoing facts, Defendant violated Title VII, 42 U.S.C. §2000e, *et seq.* and the New York State Human Rights Law, Executive Law §292-296.

### AS AND FOR A SECOND CAUSE OF ACTION

27.     Plaintiff incorporates paragraphs 1-26 as if fully set forth herein.

28.     Based on the foregoing facts, Defendant violated Plaintiff's right to petition the government for redress of her complaints in violation of Plaintiff's rights under the First and Fourteenth Amendments of the Constitution, and 42 U.S.C. §1983.

### AS AND FOR A THIRD CAUSE OF ACTION

29.     Plaintiff incorporates paragraphs 1-28 as if fully set forth herein.

30.     Based on the foregoing facts, Defendants violated Plaintiff's right to the Equal Protection of the law under the Fourteenth Amendment of the Constitution and 42 U.S.C. Section 1983.

### AS AND FOR A FOURTH CAUSE OF ACTION

31.     Plaintiff incorporates paragraphs 1-30 as if fully set forth herein.

32. Based on the foregoing facts, Defendants violated Plaintiff's rights under the First and Fourteenth Amendments of the Constitution and 42 U.S.C. Section 1983.

V.    <u>JURY DEMAND</u>

33. Plaintiff requests a trial by jury.

VI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff prays that this Honorable Court:

        (a)    accept jurisdiction over this case;

        (b)    empanel a jury to hear and decide Plaintiff's claims;

        (c)    award to Plaintiff compensatory damages arising from the Defendant's unlawful conduct, including damages for past and future lost wages and benefits and emotional distress, with pre- and post-judgment interest;

        (d)    award to Plaintiff punitive damages based on individual defendants' malicious and wanton conduct, which was undertaken in reckless disregard of Plaintiff's rights;

        (e)    award to Plaintiff the reasonable costs and attorneys' fees arising from this action, with post-judgment interest, and

(f)    enter any other relief as the court deems equitable and just.

Dated: June 4, 2004
       Scarsdale, NY

Respectfully submitted,

STEVEN T. SLEDZIK (STS 8869)
JONES SLEDZIK GARNEAU &
NARDONE, LLP
670 White Plains Road, Penthouse
Scarsdale, NY 10583
(914) 472-2300
Attorneys for Plaintiff