## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| B. KURT PRICE, et al. | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 04-956-GMS |
| v. | : | (Consolidated with C.A. No. 04-1207-GMS) |
| | : | |
| L. AARON CHAFFINCH, et al., | : | |
| | : | |
| Defendants. | : | |

## ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF FORAKER'S MOTION TO FIND DEFENDANTS IN CIVIL CONTEMPT FOR VIOLATING THIS COURT'S STIPULATED ORDER OF NOVEMBER 20, 2003

Date:  July 7, 2006

Noel C. Burnham (DE Bar No. 3483)
Richard M. Donaldson (DE Bar No. 4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE  19801
(302) 504-7840

Edward T. Ellis (Admitted Pro Hac Vice)
Carmon M. Harvey (Admitted Pro Hac Vice)
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

*Counsel for Defendants L. Aaron Chaffinch, Thomas F. MacLeish, David B. Mitchell, and the Division of State Police, Department of Safety and Homeland Security, State of Delaware*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................ 1

II.   SUMMARY OF THE ARGUMENT ........................................................... 2

III.  CONCISE STATEMENT OF FACTS ........................................................... 3

IV.   ARGUMENT ................................................................................... 4

    A.    The Court Should Deny Foraker's Motion Because An Adjudication Of Civil Contempt Must Be Made In The Underlying Action, In This Case Civil Action No. 02-302-JJF. ................................................................ 4

    B.    The Court Should Deny Foraker's Motion Because The Plaintiffs Have Not Proved By Clear And Convincing Evidence That The Defendants Violated The Stipulated Order ............................................................... 5

    C.    The Purposes Of Civil Contempt Cannot Be Satisfied Here Because Foraker Has Not Been Damaged By The Defendants' Acts. ............................... 10

    D.    Foraker's Damage Requests Are Improper For A Civil Contempt Proceeding. ................................................................................ 12

        1.    Damages for Emotional Distress are Not Recoverable for Civil Contempt ............................................................................ 12

        2.    The Damages that Foraker Seeks Would Provide Him and His Attorneys with Duplicative Recovery ............................................. 14

    E.    Foraker's Requests for Injunctive Relief Should Be Denied ............................ 15

V.    CONCLUSION ................................................................................ 17

EXHIBITS AND UNREPORTED DECISIONS

Excerpts from Trial Transcript (May 24-26, 2006) ........................................... Exhibit 1

Defendants' Trial Exhibit D-7 ................................................................. Exhibit 2

*In re Meyers*, No. 05-18208ELF, 2006 Bankr. LEXIS 537 (Bankr. E.D. Pa. 2006) .......... Exhibit 3

*Inst. For Motivational Living, Inc. v. Doulos Inst. For Strategic Consulting, Inc.*, No. 03-4177, 2004 U.S. App. LEXIS 20834 (3d Cir. Oct. 5, 2004) ............................ Exhibit 4

# TABLE OF AUTHORITIES

Page

## CASES

*Bauchman v. West High Sch.*, 906 F. Supp. 1483 (D. Utah 1995) ................................................ 12

*Binker v. Pennsylvania*, 977 F.2d 738 (3d Cir. 1992)................................................................. 6

*EEOC v. Courtwright*, 611 F.2d 795 (10th Cir. 1979) ................................................................. 6

*Elkin v. Fauver*, 969 F.2d 48 (3d Cir. 1992)................................................................................ 14

*Fairview Park Excavating Co., Inc. v. Al Monzo Constr. Co., Inc.*, 560 F.2d 1122
   (3d Cir. 1977)................................................................................................................... 15

*Fox v. Capital Co.*, 96 F.2d 684 (3d Cir. 1938)............................................................................ 6

*Garcetti v. Ceballos*, --- U.S. ---, 126 S. Ct. 1951 (2006) ......................................................... 16

*Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418 (1911) ..................................................... 4

*Harris v. City of Phila.*, 47 F.3d 1311 (3d Cir. 1995)............................................................. 6, 10

*Harris v. City of Phila.*, 47 F.3d 1342 (3d Cir. 1995)............................................................... 5, 6

*Holland v. New Jersey Dept. of Corrections*, 243 F.3d 267 (3d Cir. 2001) ................................. 6

*Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78 (3d Cir. 1982) .................................... 5

*In re Dawson*, 390 F.3d 1139 (9th Cir. 2004)............................................................................... 13

*In re Feldmeier*, 335 B.R. 807 (Bankr. D. Or. 2005).................................................................... 13

*In re Gervin*, 337 B.R. 854 (Bankr. W.D. Tex. 2005) .................................................................. 13

*In re Meyers*, No. 05-18208ELF, 2006 Bankr. LEXIS 537 (Bankr. E.D. Pa. 2006).............. 12, 13

*In re Perviz*, 302 B.R. 357 (Bankr. N.D. Ohio 2003) .................................................................. 13

*In re Poole*, 242 B.R. 104 (Bankr. N.D. Ga. 1999) ...................................................................... 13

*In re Walters*, 868 F.2d 665 (4th Cir. 1989) ................................................................................ 12

*Inst. For Motivational Living, Inc. v. Doulos Inst. For Strategic Consulting, Inc.*,
   No. 03-4177, 2004 U.S. App. LEXIS 20834 (3d Cir. Oct. 5, 2004) ......................................... 4

*Kuahulu v. Employers Ins. of Wausau*, 557 F.2d 1334 (9th Cir. 1977)...................................... 15

*Latrobe Steel Co. v. United Steel Workers of Am.*, 545 F.2d 1336 (3d Cir. 1976) ........................ 4

-ii-

## <u>TABLE OF AUTHORITIES</u>

**Page**

*McBride v. Coleman*, 955 F.2d 571 (8th Cir. 1992) ...................................................................... 12

*McDonald's Corp. v. Victory Invs.*, 727 F.2d 82 (3d Cir. 1984) ...................................... 10, 11, 14

*McDowell v. Phila. Hous. Auth.*, 423 F.3d 233 (3d Cir. 2005) ...................................................... 6

*Quinter v. Volkswagen of Am.*, 676 F.2d 969 (3d Cir. 1982) ......................................................... 6

*United States v. Dinwiddie*, 885 F. Supp. 1299 (W.D. Mo. 1995) ............................................... 14

*United States v. Reader's Digest Assn.*, 662 F.2d 955 (3d Cir. 1981) ........................................... 6

*United States v. Torres*, 309 B.R. 643 (B.A.P. 1st Cir. 2004) ...................................................... 13

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947) ........................................... 10

**RULES**

Fed. R. Civ. P. 65(d) ........................................................................................................................ 5

I.    **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

In April 2002, plaintiff Christopher Foraker filed a lawsuit, Civil Action No. 02-302-JJF, against then-Superintendent of the Delaware State Police ("DSP") L. Aaron Chaffinch, and the Division of State Police, Department of Public Safety, State of Delaware, alleging that Chaffinch violated 42 U.S.C. § 1983 and the First Amendment to the United States Constitution by transferring him out of the DSP's Firearms Training Unit ("FTU").  On July 2, 2003, after a jury trial and verdict, Judge Joseph J. Farnan of this Court entered a judgment in favor of Foraker and against the defendants.  The parties subsequently settled and Foraker was reinstated to the FTU on December 1, 2003, pursuant to a Stipulated Order entered by Judge Farnan on November 20, 2003.

On August 19, 2004, Plaintiff Foraker and co-plaintiffs Kurt Price and Wayne Warren filed Civil Action No. 04-956-GMS (the "Price Action") against now-retired Superintendent Chaffinch, the current Superintendent Thomas F. MacLeish, and David B. Mitchell, Secretary of Safety and Homeland Security for the State of Delaware.  Plaintiffs alleged that defendants Chaffinch and MacLeish retaliated against them for exercising their First Amendment rights to report workplace problems through the DSP chain of command and to the State Auditor of Accounts (Count I).  (D.I. #1.)  On October 14, 2005, plaintiffs amended their complaint to add a claim that defendants' conduct violated the First Amendment's Petition Clause (Count II)  (App. at A-165 – A-193; D.I. #45.)[1]

Plaintiff Foraker alone filed Civil Action No. 04-1207-GMS (the "Foraker Action") on August 30, 2004, alleging that defendants Chaffinch and MacLeish retaliated against him

---

[1]    "App." refers to Defendants' Appendix to Opening Brief in Support of Defendants' Motion for Judgment as a Matter of Law or, In the Alternative, For a New Trial, filed on June 19, 2006.  (*See* D.I. #196.)

because of his 2002 lawsuit against defendant Chaffinch in violation of the First Amendment's

Free Speech Clause (Count I) and Petition Clause (Count II). (App. at A-194 – A-218; D.I. #1.)

Foraker alleged further that Chaffinch and MacLeish defamed him under Delaware law (Count

III).  (*See id.*)

On April 18, 2006, the Price and Foraker Actions were consolidated for trial.  (D.I. #138

(Price Action); D.I. #117 (Foraker Action).)

Trial commenced on May 15, 2006, and lasted for twelve days.  The trial was not a

contempt of court proceeding and the jury was not asked to make findings about whether any

party had violated the 2003 consent order.  The jury returned a verdict in favor of the plaintiffs

except for its finding in favor of defendant MacLeish as to Foraker's defamation claim.  (*See*

App. at A-1 – A-15 (Verdict Forms); D. I. ##182-84 (Price Action).)  On June 15, 2006, the

Court entered a judgment in favor of the plaintiffs and against the defendants.  (*See* D.I. #186.)

On June 19, 2006, plaintiff Foraker filed in these consolidated actions a motion to find

defendants in civil contempt for violating the consent order entered by Judge Farnan on

November 20, 2003, as part of the settlement in Civ. No. 02-302-JJF (the "Stipulated Order").

(*See* D.I. #198.)

## II.      SUMMARY OF THE ARGUMENT

1.       The Court should deny plaintiff's motion for civil contempt because an

adjudication of civil contempt must be made in the underlying action, which in this case is C.A.

No. 02-302-JJF.

2.       The Court should deny plaintiff's motion for civil contempt because the

defendants did not disobey Judge Farnan's Order.

3.     The Court should deny plaintiff's motion for civil contempt because plaintiff has not been damaged by defendant's acts and Foraker can meet neither of the two objectives of a civil contempt proceeding (compensation or coercion).

4.     The Court should deny plaintiff's request for emotional distress damages because such damages are not available in a civil contempt proceeding.

5.     The Court should deny plaintiff's request for economic loss and attorneys' fees because plaintiff already has been awarded monetary compensation for these items in the Price and Foraker Actions.

6.     The Court should deny plaintiff's request for prospective injunctive relief because defendants have not violated the Stipulated Order signed by Judge Farnan and plaintiff has demonstrated no propensity on the part of the defendants to engage in conduct in violation of the Order.

## III.    CONCISE STATEMENT OF FACTS

Christopher Foraker became a sergeant and the non-commissioned officer-in-charge ("NCOIC") of the FTU on August 1, 2001.  On April 8, 2002, Col. Chaffinch transferred Foraker from the FTU and replaced him with Sgt. Richard Ashley.  Foraker challenged the lateral reassignment in *Foraker v. Chaffinch*, No. 02-302-JJF (D. Del.), contending that Chaffinch retaliated against him for excessively criticizing a subordinate range officer who happened to be a friend of Chaffinch.  As set forth above, the parties settled the case post-verdict with an agreement that Chaffinch would return Foraker to the FTU as NCOIC and a consent order to that effect. (App. at A-55 – A-56.)

Judge Farnan signed the Stipulated Order on November 20, 2003, vacating the July 2, 2003 judgment and ordering that plaintiff Foraker be "reinstated to his prior position as the Non-Commissioned Officer-in-Charge of the Firearms Training Unit of the Delaware State Police

with all of the rights, privileges, duties, responsibilities and supervisory authority previously held by him when he earlier occupied that position on February 20, 2002." (*See* Exhibit A to Plaintiff's Opening Brief in Support of Motion for Civil Contempt ("Op. Br.") (D.I. #198), at ¶ 1.) Judge Farnan retained jurisdiction over the matter to enforce the Order of reinstatement, if necessary. (*See id.* at ¶ 3.) On December 1, 2003, pursuant to the Stipulated Order, Foraker was reinstated as NCOIC of the FTU and remained in that position until October 2005, when he went on medical leave.

## IV.    <u>ARGUMENT</u>

### A.    <u>The Court Should Deny Foraker's Motion Because An Adjudication Of Civil Contempt Must Be Made In The Underlying Action, In This Case Civil Action No. 02-302-JJF.</u>

Foraker must raise a claim of civil contempt of the Stipulated Order in the underlying action – not as part of another lawsuit involving other issues and pending before a different district judge. This requires notice to the parties in the underlying action and a hearing in that action where the trial judge determines whether the accused party has violated the order in question.

"Civil contempt proceedings are instituted primarily on the motion of the plaintiff and are part of the underlying action." *Latrobe Steel Co. v. United Steel Workers of Am.*, 545 F.2d 1336, 1343-44 (3d Cir. 1976); *see also Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444-45 (1911). "Implicit in the District Court's retention of jurisdiction – absent any indication to the contrary – [is] the District Judge's continuing authority to insure compliance with judicial orders and to remediate violations of those orders." *See Inst. For Motivational Living, Inc. v. Doulos Inst. For Strategic Consulting, Inc.*, No. 03-4177, 2004 U.S. App. LEXIS 20834, at *10-11 (3d Cir. Oct. 5, 2004). There is no precedent for a plaintiff to seek an adjudication of civil contempt in a lawsuit other than the lawsuit in which the Court entered the injunction in the first place.

4

The Stipulated Order contemplated that Judge Farnan would interpret and enforce the reinstatement Order.  Plaintiff's motion brought before the Court as part of a separate proceeding is procedurally improper and should be denied.[2]

> **B.**    **The Court Should Deny Foraker's Motion Because The Plaintiffs Have Not Proved By Clear And Convincing Evidence That The Defendants Violated The Stipulated Order.**

A person may not be cited for civil contempt unless "the order which is said to have been violated [is] specific and definite."  *Harris v. City of Phila.*, 47 F.3d 1342, 1350 (3d Cir. 1995). This specificity requirement is explicit in Fed. R. Civ. P. 65(d), which requires every injunction to describe, "'in reasonable detail,' the act or acts sought to be restrained."  *Id.* at 1349.  A person may not be "placed at risk of contempt unless they have been given specific notice of the norm to which they must pattern their conduct."  *Id.*; *see also Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 83 (3d Cir. 1982).

---

[2]    Contrary to plaintiff's assertion, there was no agreement or understanding that the trial record for the Price and Foraker Actions was to become the record for contempt purposes, *see* Op. Br. at 1.  Indeed, in the Final Pretrial Order, in response to plaintiff's assertion of civil contempt, defendants stated:

> This lawsuit is a civil suit for alleged violations of Foraker's First Amendment rights.  Whether a consent order exists is irrelevant to the jury's inquiry under 42. U.S.C. § 1983.  This lawsuit is not, and never has been, a petition for adjudication of civil or criminal contempt.
>
> Moreover, it is not at all clear whether it would be civil or criminal contempt, and in neither eventuality has Foraker followed the procedures necessary to bring such a petition before the Court.
>
> Lastly, a contempt petition must be brought in the civil action in which the order was entered, in this case, *Foraker v. Chaffinch*, No. 02-302-JJF (D. Del.).

(*See* Final Pretrial Order at 9 (D.I. #102).)  The Court made no ruling with respect to these items in the pre-trial conference.  Accordingly, the trial record in the Price and Foraker Actions was never intended to become the record for the purposes of a civil contempt proceeding.

The construction of a consent decree is governed by ordinary contract principles.  *See McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 238 (3d Cir. 2005); *Harris v. City of Phila.*, 47 F.3d 1311, 1323 (3d Cir. 1995).  A consent decree should be construed as written in light of its principle purpose and should not impose terms to which the parties did not agree.  *See McDowell*, 423 F.3d at 239; *Holland v. New Jersey Dept. of Corrections*, 243 F.3d 267, 281 (3d Cir. 2001); *Harris*, 47 F.3d at 1350; *United States v. Reader's Digest Assn.*, 662 F.2d 955, 962 (3d Cir. 1981).  "This rule avoids imposing obligations on the parties that they did not bargain for, and it ensures that a party has fair notice of what the decree requires before the serious sanction of contempt is invoked."  *McDowell*, 423 F.3d at 238.  "[W]here there is ground to doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt."  *See Fox v. Capital Co.*, 96 F.2d 684, 686 (3d Cir. 1938); *see also Quinter v. Volkswagen of Am.*, 676 F.2d 969, 974 (3d Cir. 1982) (quoting *Fox*).  Ultimately, "a court should adopt an interpretation which renders the judgment more reasonable, effective, and conclusive."  *EEOC v. Courtwright*, 611 F.2d 795, 798 (10th Cir. 1979); *see also Binker v. Pennsylvania*, 977 F.2d 738, 753 n.23 (3d Cir. 1992) (citing *Courtwright*).

In a civil contempt proceeding, the plaintiff has a "heavy burden" to show by "clear and convincing evidence" that the defendant is guilty of civil contempt.  *See Fox*, 96 F.2d at 686; *Harris*, 47 F.3d at 1321.  "To prove civil contempt, the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order."  *Harris*, 47 F.3d at 1326.  Defendants in this case do not dispute that a valid court order

6

exists or that the defendants had knowledge of the order.[3]  Foraker has not proven by clear and convincing evidence, however, that either of the defendants disobeyed the Stipulated Order.

The Stipulated Order required Foraker to be "reinstated to his prior position . . . with all of the rights, privileges, duties, responsibilities and supervisory authority previously held by him."  (*See* Exhibit A to Op. Br. at ¶ 1.)  The purpose of the Stipulated Order was to return Foraker to the FTU as the NCOIC and to enable him to function in that job as he had prior to his removal in 2002.  The Stipulated Order does not prohibit subsequent changes in his job duties.  It does not by its terms prohibit retaliation for the first lawsuit.  It is obvious from the text of the Stipulated Order that its purpose was not to prevent the Superintendent or the DSP chain of command from managing Foraker as they would any other member of the Division.  It would be an unreasonable interpretation of the Stipulated Order to say that the responsibilities of the NCOIC of the FTU could never be modified – no matter how slightly – as long as Foraker holds the position.

Foraker contends that defendants are in contempt of the Stipulated Order because they: (1) asked him to leave a meeting reserved for individuals with the rank of Lieutenant and higher; (2) ordered him to follow the chain of command; (3) did not provide him with as large a staff as he would have liked; and (4) prevented him from speaking at the Academy graduation ceremony. (*See* Op. Br. at 4.)  He also includes within the contempt motion Chaffinch's statements to the media that were the basis for the defamation court in Civil Action No. 04-1207-GMS.  (*See id.*) None of these actions was directed toward plaintiff individually; they were decisions that were

---

[3]      Although defendant Thomas MacLeish was not a party to the Stipulated Order when it was signed in November 2003, defendants do not dispute that he is bound by the Order.

implemented Division-wide by Superintendent MacLeish and his executive staff.  None is prohibited by the Stipulated Order.

First, the trial testimony was consistent that sergeants generally did not attend the commanders and section chief meetings into which Foraker tried to force himself in July 2004. (*See, e.g.*, 5/24/06 Trial Tr., Testimony of J. Swiski, at 1722:20 – 1723:14; 5/25/06 Trial; Tr., Testimony of A. Homiak, at 2150:3 – 2151:2.)[4]  Both former NCOICs who testified about those meetings (Parton and Ashley) did not attend them.  (*See* 5/26/06 Trial Tr., Testimony of A. Parton, at 2256:16 – 2257:12; 5/26/06 Trial Tr., Testimony of R. Ashley, at 2272:13-22.)  Even if Foraker attended them in 2002 (which is not established clearly or convincingly from the record), a decision by the Superintendent to reduce the size of the meetings and to eliminate most sergeants is not the singling out of Foraker and is not prohibited by the Stipulated Order.

Second, Foraker complains that DSP management required him to follow the chain of command in budgetary matters.  Again, the unrefuted testimony of the budget majors (Swiski and Eckrich) was that the NCOIC of the FTU only ever dealt directly with the budget majors when providing financial information, and even then the NCOIC was expected to keep his chain of command informed.  (*See* 5/24/06 Trial Tr., Testimony of J. Swiski, at 1722:12-19; 5/26/06 Trial Tr., Testimony of P. Eckrich, at 2354:14 – 2356:19, 2358:7-12.)  In that respect, the FTU was no different than about a dozen other DSP cost centers.  (*See* 5/26/06 Trial Tr., Testimony of P. Eckrich, at 2357:13 – 2358:6; 5/26/06 Trial Tr., Testimony of J. Papili, at 2326:16-24.)  In 2004, Major Eckrich began to invite the superior officers who had responsibility for cost centers to the cost center budget meetings.  (*See* 5/26/06 Trial Tr., Testimony of P. Eckrich, at 2356:20 –

---

[4]     All pages of the trial transcript referenced herein are attached as Exhibit 1.

2358:6.)  In no way does this single out Foraker.  Foraker cannot use the Stipulated Order as a shield against legitimate managerial oversight.

Third, Foraker's staffing complaint is frivolous.  The order under which he moves ties his job responsibilities to February 2002.  In 2004 he had three subordinates – exactly the same number he reported that he had in 2002.  (*See* Defendants' Trial Exhibit D-7, attached as Exhibit 2.)

Fourth, Foraker also complains that his police academy graduation speech was cut.  It was cut along with six others to shorten the ceremony.  In entering the Stipulated Order, there is no indication that the parties or the court contemplated court oversight of police academy affairs.

Finally, Foraker did not prove by clear and convincing evidence that defendants Chaffinch and MacLeish were responsible for the allegedly contumacious conduct.  As an initial matter, there was no testimony that Chaffinch took any of the actions of which Foraker complains except for the April 6, 2004, news conference at the DSP firing range.  The Stipulated Order cannot be stretched to apply to the news conference because the news conference had nothing to do with the structure of Foraker's job or the authority conferred on him.  Chaffinch cannot be held responsible for the remaining acts without some proof of his involvement in them.

MacLeish's testimony (supported by others, including Ashley and Parton) is that Foraker did not attend commanders and section chiefs meetings (*see* 5/24/06 Trial Tr., Testimony of T. MacLeish, at 1731:23 – 1733:8, 1814:7 – 1815:11); thus, to exclude Foraker was not clearly a violation of any order.  Foraker introduced no testimony that Chaffinch or MacLeish was responsible for inviting supervisors of cost centers to budget meetings.  Major Eckrich testified that he was responsible for that change.  (*See* 5/26/06 Trial Tr., Testimony of P. Eckrich, at 2356:20-24.)  MacLeish was certainly responsible for FTU staffing.  (*See* 5/24/06 Trial Tr.,

Testimony of T. MacLeish, at 1844:7-18.)  Although staffing of the FTU is not clearly within the ambit of the Stipulated Order, Foraker's 2004 FTU was within the 2002 FTU staffing levels at all times.  The year 2002 is the benchmark in the Stipulated Order.  Major Homiak – not Chaffinch or MacLeish – was responsible for changes in the academy graduations.  (*See* 5/25/06 Trial Tr., Testimony of A. Homiak, at 2155:4 – 2157:19.)  There was no showing in court that either defendant was even aware that Foraker had been affected by the changes made to shorten the ceremony.

It is fundamental to a contempt proceeding that the plaintiff show that the defendant was responsible for the allegedly contumacious acts.  Foraker has made no such showing.  It is unreasonable to construe the general terms of the Stipulated Order to encompass minute changes in job responsibilities that resulted from larger changes in Division operations.  There is no basis for holding the defendants in contempt of the Order.

> ### C.    The Purposes of Civil Contempt Cannot Be Satisfied Here Because Foraker Has Not Been Damaged By The Defendants' Acts.

A civil contempt adjudication is distinguished from a criminal contempt citation by its objectives.  A civil contempt proceeding must have as its objective either compensation to the victim of the contumacious conduct or coercion of the contemnor to stop violating the court order.  *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947).  A criminal contempt proceeding, on the other hand, punishes the contemnor unconditionally to vindicate the authority of the court.  *See id.* at 302-03; *McDonald's Corp. v. Victory Invs.*, 727 F.2d 82, 87 (3d Cir. 1984).  If the petitioner in a contempt proceeding has suffered no loss, the contempt proceeding cannot be compensatory.  Likewise, "[i]f the contemnor cannot purge through an affirmative act, the sanction has no coercive effect and exceeds the appropriate bounds of civil contempt."  *Harris*, 47 F.3d at 1328.  Foraker cannot proceed here on a civil

contempt because his underlying purpose is neither compensatory nor coercive, but punitive. Criminal contempt may be found only after the defendant is afforded the procedural safeguards set forth in Fed. R. Crim. P. 42(b), which has not occurred here.  *See McDonald's Corp.*, 727 F.2d at 87.[5]

Foraker's motion does not have a compensatory objective because the acts of which he complains in his motion caused him no monetary loss of any kind.  He continued to function as the NCOIC of the FTU until he left the DSP in October 2005.  His job functions remained the same and he lost no overtime opportunities or employee benefits.  He cannot assert a compensatory civil contempt without damage that the defendant can make whole.

Foraker's motion has no coercive objective because the motion is not forward-looking; it does not seek to coerce anyone to cease contumacious behavior through future fines or penalties. Chaffinch has been retired since 2005, and Foraker is not in the workforce at present; thus, a coercive sanction would have no affect on the relationship of those parties anyway.  Foraker's objective appears to be to obtain a pain-and-suffering award through the civil contempt process. As set forth below, civil contempt proceedings cannot provide this type of relief.

Because Foraker has satisfied neither objective for a civil contempt proceeding, he cannot maintain a motion for civil contempt.

---

[5]    Plaintiff requests that the matter be referred to the U.S. Attorney General "to determine if a criminal contempt has taken place."  (*See* Op. Br. at 13.)  Given the nature of the allegedly contumacious conduct, this would likely be an inefficient use of the resources of the federal government.

**D.    Foraker's Damage Requests Are Improper For A Civil Contempt Proceeding.**

**1.    Damages for Emotional Distress are Not Recoverable for Civil Contempt.**

Foraker seeks to justify his contempt motion as compensatory by asking the Court to assess damages against the defendants for the emotional effects of certain acts.  The Third Circuit has not decided whether an award of emotional distress damages for civil contempt is permissible.  However, the Fourth and Eighth Circuits have held that damages for emotional distress are not available in a civil contempt proceeding.  *See McBride v. Coleman*, 955 F.2d 571, 577 (8th Cir. 1992); *In re Walters*, 868 F.2d 665, 670 (4th Cir. 1989); *see also Bauchman v. West High Sch.*, 906 F. Supp. 1483, 1493 n.6 (D. Utah 1995) (citing *McBride* and *In re Walters*).

In *McBride*, the Eighth Circuit explained the rationale for denying damages for emotional distress in a civil contempt proceeding:

> The problems of proof, assessment, and appropriate compensation attendant to awarding damages for emotional distress are troublesome enough in the ordinary tort case, and should not be imported into civil contempt proceedings.  Although in some circumstances an award of damages to a party injured by the violation of an injunction may be appropriate, the contempt power is not to be used as a comprehensive device for redressing private injuries, and it does not encompass redress for injuries of this sort.

*McBride*, 955 F.2d at 577.  Thus, the contempt power of the courts is not an appropriate mechanism for redressing Foraker's request for damages for emotional distress.

Plaintiff cites a number of bankruptcy cases in support of his request for damages for emotional distress.  These cases are grounded in a statutory scheme specifically designed to prevent emotional trauma caused by overreaching creditors.

In *In re Meyers*, No. 05-18208ELF, 2006 Bankr. LEXIS 537 (Bankr. E.D. Pa. 2006), the court explained why such damages are appropriate for the violation of a discharge injunction:

> One significant remedial purpose of a bankruptcy discharge order
> is to prevent the emotionally harmful conduct associated with debt
> collection tactics.  The discharge injunction is intended to rid the
> honest debtor from this burden and provide a right that has been
> commonly referred to as a 'fresh start.'  . . . A significant
> component of the fresh start is being free of the kinds of
> harassment, threats, and anxiety that debtors were suffering before
> they filed.  . . . These methods work precisely because they inflict
> emotional distress on debtors, at a sufficient level of pain to
> motivate debtors to pay money to the creditor to make the pain
> stop.

*See id.* at *13-14 (internal citation omitted); *see also In re Dawson*, 390 F.3d 1139 (9th Cir.

2004) (purposes behind bankruptcy statute's automatic stay); *In re Gervin*, 337 B.R. 854, 858-59

(Bankr. W.D. Tex. 2005); *United States v. Torres*, 309 B.R. 643, 647-50 (B.A.P. 1st Cir. 2004).

These same policy considerations do not exist here, where the purpose of the consent injunction

was to restore Foraker to a job with certain pay, benefits, and authority.  Foraker remained in that

job until he removed himself in October 2005.

The bankruptcy cases are inapposite for the additional reason that the civil contempt

standard under the bankruptcy code is different from the common law of civil contempt.  Under

federal common law, a petitioner need not show willfulness or intent to violate the injunction.  A

bankruptcy court is bound to find a violation of the automatic stay or discharge provisions only

where the violation is "willful;" thus, damages analogous to intentional infliction of emotional

injury are warranted.  *See In re Perviz*, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003); *see also In

re Feldmeier*, 335 B.R. 807, 814 (Bankr. D. Or. 2005); *In re Poole*, 242 B.R. 104, 112 (Bankr.

N.D. Ga. 1999).  Foraker's situation is not analogous to a bankruptcy case.  He moves under an

injunction directed at a specific job.  Accordingly, the holdings of the Fourth and Eighth Circuits

apply; the bankruptcy exception does not.

The only non-bankruptcy case plaintiff cites in support of his attempt to recover damages for emotional distress involves the violation of the Freedom of Access to Clinic Entrances Act of 1994 (the "FACE"). *See United States v. Dinwiddie*, 885 F. Supp. 1299 (W.D. Mo. 1995). *Dinwiddie* is questionable authority, however, because it neither cites *McBride*, which is the definitive case on this issue in the Eighth Circuit (in which Missouri lies) nor explains why monetary damages for emotional injury is appropriate for violation of the Court's order. *Dinwiddie* is clearly not consistent with *McBride*, and should be disregarded.[6]

There is no basis here on which to award monetary damages for emotional injuries. Accordingly, there is neither a compensatory nor a coercive objective for Foraker's motion.

### 2. The Damages that Foraker Seeks Would Provide Him and His Attorneys with Duplicative Recovery.

Plaintiff seeks to recover damages for economic loss and attorneys' fees arising from the alleged violation of the Stipulated Order. The damages that plaintiff seeks, however, are the same damages for which plaintiff was awarded $97,078 following the trial in the consolidated civil actions. The plaintiff cannot recover the same damages twice.

While fines for civil contempt payable to the complainant are appropriately awarded to compensate for losses sustained by the disobedience of a court order, any such fine "must be based upon evidence of complainant's actual loss," *McDonald's Corp.*, 727 F.2d at 87, and "must not exceed the actual loss suffered by the party that was wronged," *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992). Here, Foraker has no loss because he already has been awarded compensatory damages for the same conduct he now alleges was in violation of the Stipulated

---

[6]     It should be noted that the FACE is intended, at least in part, to spare victims from intense psychological abuse much like the bankruptcy statute. This is a far cry from Foraker's situation, which, as noted above, involves reinstatement to a job.

Order.  An additional compensatory damages award for the actions resulting in the alleged

violation of the Stipulated Order "would necessarily amount to duplicative relief for a single

legal injury," which is not permissible.  *See Fairview Park Excavating Co., Inc. v. Al Monzo*

*Constr. Co., Inc.*, 560 F.2d 1122, 1126-27 (3d Cir. 1977); *Kuahulu v. Employers Ins. of Wausau*,

557 F.2d 1334, 1336 (9th Cir. 1977).

### E.    <u>Foraker's Requests for Injunctive Relief Should Be Denied.</u>

Foraker requests injunctive relief for the alleged violation of the Stipulated Order.  The

Court should reject these requests because, as demonstrated above, there has been no violation of

the 2003 Stipulated Order and Foraker has shown no propensity on the part of the defendants to

engage in any contumacious behavior in the future.[7]

Even if plaintiff could establish a violation of the Stipulated Order, the injunctive

remedies requested are too confusing and ambiguous to be enforced.  Plaintiff requests that the

Court:

> Issue a mandatory injunction directing defendant Mitchell and his
> successors as Secretary of the Department of Safety and Homeland
> Security to act as a monitor of defendants Chaffinch and MacLeish,
> or any future Colonels, to prohibit any retaliation or harassment of
> Foraker by overseeing and approving any action or statements
> made by defendants Chaffinch and MacLeish concerning Foraker
> upon penalty of finding Mitchell and/or his successors in contempt
> of court.  Such injunction is to run for so long as Foraker remains
> with the Delaware State Police.

(*See* Op. Br. at 13-14.)  Plaintiff further requests the Court to "[e]nter an order enjoining the

defendants from retaliating against Foraker now or in the future," and "[e]nter an order

indicating that defendants will be fined for any future noncompliance, identifying an amount for

each violation."  (*See id.* at 14.)

---

[7]     Defendants note once again that defendant Chaffinch is retired and Foraker is presently inactive.

Plaintiff's attempt to eliminate all "retaliation" and "harassment," without defining the terms, will lead to the same problems of interpretation, application, and enforcement that confront the Court here. It would inject the Court into any personnel decision affecting Foraker, regardless of how minute. This is contrary to the public policy set forth in *Garcetti v. Ceballos*, --- U.S. ---, 126 S. Ct. 1951 (2006).

The purpose of the original reinstatement order was not to preserve Foraker's precise job responsibilities for the duration of his tenure with the DSP. The purpose was to reinstate Foraker to the position of NCOIC of the FTU. This is exactly what the DSP did. The Stipulated Order did not insulate Foraker from the normal vicissitudes of the workplace. He should not be afforded the opportunity to litigate every perceived slight for the rest of his days as a trooper. He is not entitled to any injunction.

16

V.     **<u>CONCLUSION</u>**

For the reasons set forth above, defendants request that the Court deny plaintiff Foraker's

Motion to Find Defendants in Civil Contempt for Violating Judge Farnan's Stipulated Order of

November 20, 2003.

Respectfully submitted,

Date:  July 7, 2006                              */s/ Noel C. Burnham*
                                                 Noel C. Burnham (DE Bar No. 3483)
                                                 Richard M. Donaldson (DE Bar No. 4367)
                                                 Montgomery, McCracken, Walker & Rhoads, LLP
                                                 300 Delaware Avenue, Suite 750
                                                 Wilmington, DE 19801
                                                 Telephone:  (302) 504-7840
                                                 Facsimile:  (302) 504-7820

                                                 Edward T. Ellis
                                                 Carmon M. Harvey
                                                 Montgomery, McCracken,
                                                   Walker & Rhoads, LLP
                                                 123 South Broad Street
                                                 Philadelphia, PA  19109
                                                 (215) 772-1500

                                                 *Counsel for Defendants*

17

2089009v7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that two (2) copies of the Answering Brief in Opposition to Plaintiff

Foraker's Motion to Find Defendants in Civil Contempt for Violating this Court's Stipulated

Order of November 20, 2003 were served by hand delivery, this 7th day of July 2006, on:

Thomas Stephen Neuberger, Esq.
Stephen J. Neuberger, Esq.
The Neuberger Firm, P. A.
Two East Seventh Street, Suite 302
Wilmington, DE 19801

and

Martin D. Haverly, Esquire
Martin Duane Haverly, Attorney At Law
Two East Seventh Street, Suite 302
Wilmington, DE 19801

*Counsel for Plaintiffs*


 */s/ Noel C. Burnham*
Noel C. Burnham [DE Bar No. 3483]