# EXHIBIT 4

Case 1:04-cv-00956-GMS   Document 213-5   Filed 07/07/2006   Page 1 of 5

FOCUS - 8 of 565 DOCUMENTS

INSTITUTE FOR MOTIVATIONAL LIVING, INC.; CREATIVE CORPORATE CONSULTING, LTD.; CDG DEVELOPMENT GROUP, INC. v. DOULOS INSTITUTE FOR STRATEGIC CONSULTING, INC.; ROBERT J. GOSSELIN, SR., Robert J. Gosselin, Sr., Appellant

No. 03-4177

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

110 Fed. Appx. 283; 2004 U.S. App. LEXIS 20834

October 1, 2004, Submitted Under Third Circuit LAR 34.1(a)
October 5, 2004, Filed

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On Appeal from the United States District Court for the District of New Jersey. (District Court No. 01-cv-01290). District Judge: Honorable William L. Standish.

**DISPOSITION:** Affirmed in part, reversed in part, and remanded in part.

**COUNSEL:** For INSTITUTE FOR MOTIVATIONAL LIVING, INC., Appellee: David G. Oberdick, Meyer, Unkovic & Scott, Pittsburgh, PA.

For CDG DEV GRP INC, Appellee: David G. Oberdick, Meyer, Unkovic & Scott, Pittsburgh, PA.

For ROBERT J. GOSSELIN, SR., Appellant: John S. Mills, Mills & Carlin, Jacksonville, FL.

**JUDGES:** Before: ROTH and CHERTOFF Circuit Judges, and IRENAS, * Senior District Judge.

    * Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

**OPINIONBY:** CHERTOFF

**OPINION:**

[*285] CHERTOFF, *Circuit Judge.*

Appellant, Robert J. Gosselin, Sr., and his now-defunct company provided consulting services to appellee Institute for Motivational Living, Inc. ("Institute"), and its affiliates, under an agreement which began on January 1, 2000, and terminated on May 24, 2001. The Institute sued Gosselin [**2] and his company in District Court to return certain proprietary materials, and to claim damages for alleged copyright and trademark infringement, misappropriation of trade secrets, and other torts. The District Court entered a discovery preservation order, mandating that Gosselin and his company preserve all documents, software and equipment. The parties then began settlement negotiations, which culminated in an agreement signed on September 18, 2001, and which was embodied in a consent order on September 25. In part, that agreement required the return to the Institute of a certain laptop computer and all the data contained in it.

Just minutes before the settlement was signed, however, Gosselin deleted some purportedly personal data from the laptop. This was a direct violation of the discovery preservation order. For this and other alleged misbehavior by Gosselin, the Institute filed a **motion** to enforce the settlement under the consent order and to obtain sanctions, including civil **contempt.** This post-settlement litigation spawned multiple disputes about whether Gosselin was complying with his settlement obligations and whether the Institute was harassing Gosselin.

The Magistrate [**3] Judge responded to this post-settlement litigation by holding an evidentiary hearing, at which Gosselin proceeded pro se because his attorney had been granted permission to withdraw. n1 On December 20, 2002, the Magistrate Judge issued a Report and Recommendation awarding sanctions against Gosselin under 28 U.S.C. § 1927, based on a finding

that Gosselin had "multiplied the proceedings in an unreasonable and vexatious manner" and in "bad faith." (App. 27). The sum awarded to the Institute was $ 2650, which was exactly the amount due from the Institute to Gosselin under the settlement agreement. The Magistrate also found that Gosselin had knowingly and in bad faith violated the original discovery preservation order and the September consent order by deliberately deleting data from the laptop which should have been preserved under both court orders, but referred the actual adjudication of civil contempt for the deletion of laptop files to the District Judge.

- - - - - - - - - - - - - - - - - -

n1 Gosselin's company was ordered to find new counsel but did not do so. The company was later dissolved, leaving Gosselin as sole defendant in the District Court.

- - - - - - - - - - - - - - - - - -

[**4]

Neither party objected to the Magistrate's Report. On September 19, 2003, the District Judge conducted a hearing on the civil contempt charges, with Gosselin still representing himself. The District Judge declined to take further evidence on Gosselin's deletion of laptop files, explaining that he was relying upon the Magistrate's findings to which there had been no objection. The District Judge did take testimony on the costs and fees sustained by the Institute in litigating enforcement of the settlement and in seeking to remediate the file destruction. By order entered on September 22, 2003, the District Judge adjudicated Gosselin in civil contempt. Specifically, the District Court ruled that the knowing and intentional deletion of files from the laptop computer before it was returned to the Institute was a clear violation of the discovery order requiring preservation of all data, and of the consent decree which required return of all data on [*286] the computer equipment. The sanctions awarded totaled somewhat over $ 50,000, including $ 48,517.59 in attorneys' fees and roughly $ 2,000 in costs for efforts to recover deleted files.

On appeal, Gosselin raises three contentions. First, [**5] he asserts that sanctions under 28 U.S.C. § 1927 may only be awarded against attorneys, not against parties appearing pro se. Second, he argues that money should not have been awarded for civil contempt because compensation for any violation of the discovery order was released by the subsequent settlement agreement, and any destruction of files could not have violated the settlement and consent order because it occurred before the agreement was signed and the order entered. Third, Gosselin challenges the amount awarded for attorneys' fees. We address each of these arguments in turn.

A.

Title 28 U.S.C. § 1927 authorizes sanctions against any "attorney or other person admitted to conduct cases in any court of the United States. . .." Gosselin is not an attorney; the question is whether, as a pro se appearing in court, he is an "other person admitted to conduct cases" and therefore sanctionable under the statute.

This is a matter of first impression in our circuit. We have held that a represented party cannot be punished under § 1927. Williams v. Giant Eagle Markets, Inc., 883 F.2d 1184, 1190 (3d Cir. 1989); see In re Prudential Ins. Co. Sales Practice Litig. Actions, 278 F.3d 175, 187 n. 7 (3d Cir. 2002). [**6] But that situation is distinguishable because it is the attorney who is conducting the case, not the party. Here, we face a circumstance in which the party himself is conducting the case in court. One could reasonably read the language of the statute as embracing non-attorneys who conduct cases in court - a category that includes (if it is not limited to) pro se litigants.

Nevertheless, there is a split among the circuits on this issue. Compare Sassower v. Field, 973 F.2d 75, 80 (2d Cir. 1992) (section not applicable to pro se litigants) with Wages v. IRS, 915 F.2d 1230, 1235-36 (9th Cir. 1989)(section does apply to pro se litigants); see also Alexander v. United States, 121 F.3d 312, 316 (7th Cir. 1997)(declining to take sides on this conflict). The Supreme Court has noted in passing that § 1927 "says nothing about a court's power to assess fees against a party." Chambers v. Nasco, Inc., 501 U.S. 32, 48, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991). But that statement did not arise in the context of a specific discussion of pro se litigants.

The argument from the language of the statute seems pretty much in equipoise. [**7] On the one hand, since the only people who may conduct cases in court beside attorneys are parties representing themselves, limiting § 1927 to attorneys would seem to read the reference to "others admitted" right out of the statute. n2 On the other hand, parties are not normally "admitted" in court. An earlier version of the statute, cited in Sassower, authorized sanctions against any "attorney, proctor or other person admitted. . .." This formulation suggests as a matter of context that "other person" was meant to include various titles that might be applied to lawyers admitted in court - for example, barristers, advocates, etc. Thus, as the Second Circuit concluded in Sassower, the history of the [*287] provision points to the sanction being limited to those entitled to practice law no matter how they are professionally denoted. 973 F.2d at 80.

- - - - - - - - - - - - - - - - - -

n2 In some **jurisdictions**, law students may be provisionally admitted to appear in court, but we have some difficulty assuming that the statu-

tory category "others" was designed to embrace this contingency.

[**8]

We need not definitively resolve the issue. Even if § 1927 does not apply to pro se litigants, other sanction provisions do. See Nasco, Inc., supra. The District Court could readily have sustained the sanction in question under another provision, or under its inherent authority. Indeed, if § 1927 does not apply to pro se litigants, then the District Court had inherent authority to impose the identical sanction. Id.; see Alexander, 121 F.3d at 316. While we could remand the sanction award so that the District Court could re-impose it under its inherent authority, we see no reason to do so. Accordingly, we will affirm the sanction for vexatious litigation.

B.

Gosselin argues that the civil contempt fine was improper because the District Court lacked authority to compensate the Institute for Gosselin's improper deletion of files from the laptop computer. Essentially, Gosselin argues that because he deleted the material on the morning of September 18, 2001, a few *minutes before* he signed the settlement agreement (which formed the basis of the consent order), he cannot be deemed to have violated that agreement. When confronted with the fact that the [**9] file deletion violated the previous discovery preservation order, Gosselin rejoins that the settlement agreement released the Institute's claims "whether known or unknown, of any nature whatsoever. . .." Thus, Gosselin concludes, the settlement extinguished any right of compensation the Institute might obtain by way of the contempt sanction.

This argument is clever (perhaps too clever by half). It comes perilously close to suggesting that Gosselin deliberately sought to mislead the Institute (and the District Court) by destroying protected information at a moment just before the settlement was signed, hopefully secure in the knowledge that the settlement would be read to limit any additional compensation when his spoliation was discovered.

The argument does not carry the day, however. We agree with Gosselin that he cannot be held liable for violating a settlement agreement and consent order that were signed and entered after the deletion of the data. Until the order was entered, he was under no obligation to follow it. But we disagree with the second part of Gosselin's two-step argument, for the release language in the settlement agreement did not extinguish the District Court's [**10] power to sanction Gosselin's clear violation of its earlier discovery order, even if that sanction inured to the benefit of and compensated the Institute.

Gosselin does not dispute that the District Court had **jurisdiction** to impose civil contempt sanctions after the settlement. Normally, the termination of litigation after settlement moots civil contempt proceedings, although not criminal contempt. See Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 451, 55 L. Ed. 797, 31 S. Ct. 492 (1911)(when main case is settled, civil contempt becomes moot). In this case, however, the settlement did not terminate the litigation, because it was incorporated into a consent order under which the District Court retained **jurisdiction** to enforce the settlement terms. The District Court's civil contempt **jurisdiction** did not lapse, therefore. Cf. In re E.I. DuPont de Nemours & Co., 99 F.3d 363, 367-68 (11th Cir. 1996); Travelhost, Inc. v. Blandford, 68 F.3d 958, 961-62 (5th Cir. 1996).

Gosselin argues, nevertheless, that the broad general language of the settlement [*288] release precluded the civil contempt award in this case. We disagree. To be sure, the agreement contemplated [**11] a capacious waiver by the Institute of all claims against, and liability by, Gosselin, whether known or unknown. But the release itself carved out an exception for claims relating to enforcement of the agreement itself. Further, the agreement contemplated the court's continuing involvement in the implementation of the settlement by way of the consent order. Implicit in the District Court's retention of **jurisdiction** - absent any indication to the contrary - was the District Judge's continuing authority to insure compliance with judicial orders and to remediate violations of those orders.

Most important, the language of the release, by its literal terms, does not apply to any claims arising against Gosselin for his violation of the discovery order minutes before the agreement was signed on September 18. The release to which the Institute agreed bars claims, liability, etc. "arising prior to the date of this Agreement, including, but not limited to the Settling Plaintiffs' Claims." (App. 38) "Settling Plaintiffs' Claims" are defined earlier as the claims in the complaint, and do not include any claims for contempt or sanctions. So far as the bar date is concerned, liability arising prior [**12] to the date of the Agreement means liability arising *before* September 18. Indeed, "prior" is defined as "preceding in time or order." Black's Law Dictionary (8th ed. 2004). Therefore, for a claim to arise "prior to the date of the Agreement," it would have to arise on a date "preceding" the date of the Agreement. It follows that liability arising on or before September 17, 2002, is covered by the release, and liability arising on September 18, the date of the agreement, or thereafter, is not.

The contempt sanction here arose on September 18. The Magistrate Judge's finding of fact - unchallenged in the District Court or before us - states that

minutes prior to meeting with Plaintiffs to sign the settlement agreement Defendants, unbeknownst to Plaintiffs, secretly deleted computer files in contravention of the court's protective order. The record reflects that at 10:19 a.m. on September 18, 2001, the Microsoft Outlook 2000 PST file, containing the history of e-mails sent and received by Defendants, was deleted. . ... Plaintiffs arrived at the offices of Defendants' counsel at 10:30 a.m. to sign the settlement agreement. . ...

(App. 19)

If Gosselin thought that by [**13] deleting the files in violation of the preservation order he could thread the gap between discovery sanctions (by relying on the release) and consent order sanctions (by destroying the evidence before the settlement and order took effect), he miscalculated. The literal terms of the release continue to expose him to liability to the Institute for claims arising on the date of the Agreement itself, during which time the original computer preservation order was still in effect.

Finally, Gosselin argues that the sanction imposed was really criminal contempt because it was punitive; he claims, therefore, that the District Court was obliged to afford him the procedural protections that apply in a criminal case. The premise of the argument is that because the release waived all claims by the Institute, the subsequent civil contempt sanction could not be treated as remedial or compensatory, and therefore had to be punitive. The legal basis for this argument is sound. Broadly speaking, a contempt sanction is civil if it is either coercive or remedial; if it is punitive, the contempt is criminal. International Union, UMW v. Bagwell, 512 U.S. 821, 129 L. Ed. 2d 642, 114 S. Ct. 2552 (1994); Gompers, supra. But [**14] the factual [*289] basis for the argument is flawed. As we have already found, the release did not bar the misconduct committed by Gosselin on September 18, so that the District Court was entitled to impose a sanction that would compensate the Institute for the damage done. We will affirm this aspect of the judgment.

C.

That leads us to Gosselin's final claim on appeal: That the District Court erred in awarding the Institute the entire amount of attorneys' fees it incurred seeking to enforce the settlement agreement.

This claim has some merit. The post-settlement sanctions litigation was conducted in two parts. The Magistrate Judge adjudicated most of the sanctions **motions,** denying Gosselin's applications, and granting the Institute sanctions under 28 U.S.C. § 1927. All that was left pending for the District Judge was the application for civil **contempt** for the deletion of the files. The total which the Magistrate Judge awarded under § 1927 was a set-off of $ 2,650. We have already held that this award should be affirmed on other grounds.

What remained to be adjudicated by the District Judge was only the contempt for deletion of the files in violation of court [**15] orders. At the evidentiary hearing to establish the cost of damage done, the Institute presented evidence of two types of costs. First, there was $ 2,254.45 paid to a computer consultant to try to retrieve the deleted files. Goselin acknowledges that this amount was plainly recoverable as compensation. Second, there was $ 48,517.59 in legal fees.

So far as the record discloses, the legal fees reflected the legal fees and costs expended in connection with the settlement enforcement proceeding from September 2001, when the Agreement was signed. (App. 165) The only charges deleted from the bills were some items involving unrelated copyright and trademark advice. (App. 170) The difficulty is that we have no way of determining what elements of the fees and costs related specifically to litigation involving the file deletion, and what related to other post-settlement litigation that was vexatious and that was the subject of the Magistrate Judge's § 1927 award. Unfortunately, the District Court made no specific findings on this point, but simply awarded the entire amount of fees requested.

As we have indicated, the touchstone of civil contempt is that it be coercive or compensatory. Where, [**16] as here, we are not dealing with a coercive sanction, the contempt award must relate to the actual loss (including fees and expenses) that flowed from the contemnor's violation. See Robin Woods v. Woods, 28 F.3d 396, 401 (3d Cir. 1994). To the extent that the District Court awarded attorneys fees and costs that did not relate to the damage caused by the contempt, but that related to other conduct by Gosselin - itself already the subject of the § 1927 sanction - the court stepped over the bounds of remediation into the field of punishment.

We cannot determine from the record what portion of the fees can be fairly attributed to the improper file deletion. Accordingly, we will reverse the award of attorneys' fees to the Institute, and remand that portion of the judgment to the District Court for a determination of what fees fairly reflect compensation for Gosselin's contumacious conduct.