IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| B. KURT PRICE, et al., | : |
| | : |
| Plaintiff, | : |
| | :   C.A. No. 04-956-GMS |
| v. | :   (Consolidated with C.A. No. 04-1207-GMS) |
| | : |
| L. AARON CHAFFINCH, et al., | : |
| | : |
| Defendants. | : |

**APPENDIX TO ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR ATTORNEYS FEES, INTEREST AND COSTS OF THE NEUBERGER FIRM AND MARTIN D. HAVERLY, ATTORNEY AT LAW, PURSUANT TO 42 U.S.C. § 1988 AND FED.R.CIV.P. 54**

Date: July 7, 2006

Noel C. Burnham (DE Bar # 3483)
Richard M. Donaldson (DE Bar I.D. #4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE  19801
(302) 504-7840

Edward T. Ellis (Admitted Pro Hac Vice)
Robert J. Fitzgerald (Admitted Pro Hac Vice)
Carmon M. Harvey (Admitted Pro Hac Vice)
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

*Counsel for Defendants L. Aaron Chaffinch, Thomas F. MacLeish, David B. Mitchell, and the Division of State Police, Department of Safety and Homeland Security, State of Delaware*

2092062v1

## TABLE OF CONTENTS

Excerpts from 5/26/06 Trial Transcript, *Price v. Chaffinch*, C.A. No. 04-956-GMS
(Consolidated with C.A. No. 04-1207-GMS) ..................................................................... B-1

*1st Westco Corp. v. Sch. Dist. of Phila.*, No. Civ. A. 91-2727,
1993 U.S. Dist. LEXIS 5025 (E.D. Pa. Mar. 31, 1993) ....................................................... B-4

*Africa v. City of Phila.*, Nos. 85-2745, 87-2678, 85-3528, 87-2756,
1996 U.S. Dist. LEXIS 17194 (E.D. Pa. Nov. 14, 1996) ..................................................... B-6

*Alliance for the Mentally Ill of Pennsylvania, Inc. v. White*, Civ. A. No. 90-6389,
1992 U.S. Dist. LEXIS 13191 (E.D. Pa. Aug. 31, 1992) ..................................................... B-9

*Carter-Herman v. City of Phila.*, Civ. A. No. 95-4030, 1997 U.S. Dist. LEXIS 1130
(E.D. Pa. Feb. 3, 1997) ....................................................................................................... B-14

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. City of Chicago*,
No. 76 C 1982, 1985 U.S. Dist. LEXIS 14562 (N.D. Ill. Oct. 24, 1985) .......................... B-22

*Craig v. Christ*, Cause No. IP 96-1570-C H/G, 1999 U.S. Dist. LEXIS 17548
(S.D. Ind. Sept. 10, 1999) .................................................................................................. B-28

*Dooley v. City of Philadelphia*, Civ. A. No. 99-2764, 2002 U.S. Dist. LEXIS 17320
(E.D. Pa. Aug. 30. 2002) .................................................................................................... B-45

*Fini v. Remington Arms Co.*, No. Civ. A. 97-12-SLR, 1999 U.S. Dist. LEXIS 15864
(D. Del. Sept. 24, 1999) ..................................................................................................... B-54

*Herkalo v. Nat'l Liberty Corp.*, Civ. A. No. No. 94-7660, 1997 U.S. Dist. LEXIS 12130
(E.D. Pa. Aug. 7, 1997) ..................................................................................................... B-62

*McNaboe v. NVF Co.*, No. Civ. A. 97-558-SLR, 2002 U.S. Dist. LEXIS 21287
(D. Del. Oct. 31, 2002) ...................................................................................................... B-69

*Stair v. Lehigh Valley Carpenters Local Union No. 600*, Civ. A. No. 91-1507,
1994 U.S. Dist LEXIS 5895 (E.D. Pa. May 9, 1994) ........................................................ B-74

```
                                                    2188

 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4   B. KURT PRICE, WAYNE WARREN,    :   Civil Action
     and CHRISTOPHER D. FORAKER,     :
 5                                   :
              Plaintiffs,            :
 6                                   :
         v.                          :
 7                                   :
     L. AARON CHAFFINCH,             :
 8   THOMAS F. MACLEISH,             :
     DAVID B. MITCHELL, and          :
 9   DIVISION OF STATE POLICE,       :
                                     :
10            Defendants.            :   No. 04-956-GMS

11                            - - -

12   CHRISTOPHER D. FORAKER,         :   Civil Action
                                     :
13            Plaintiff,             :
                                     :
14       v.                          :
                                     :
15   L. AARON CHAFFINCH,             :
     THOMAS F. MACLEISH,             :
16   DAVID B. MITCHELL, and          :
     DIVISION OF STATE POLICE,       :
17                                   :   No. 04-1207-GMS
              Defendants.
18                            - - -

19                     Wilmington, Delaware
                       Friday, May 26, 2006
20                          9:00 a.m.
                       TENTH DAY OF TRIAL
21
                              - - -
22
     BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J., and a Jury
23

24                            - - -

25
```

B - 1

SHEET 2

2189

```
 1   APPEARANCES:
 2          THOMAS S. NEUBERGER, ESQ., and
            STEPHEN J. NEUBERGER, ESQ.
 3          The Neuberger Law Firm
                 -and-
 4          MARTIN D. HAVERLY, ESQ.
            Law Offices of Martin D. Haverly
 5
                            Counsel for Plaintiffs
 6
            R. MONTGOMERY DONALDSON, ESQ.
 7          Montgomery, McCracken, Walker & Rhoads, LLP
                 -and-
 8          EDWARD T. ELLIS, ESQ., and
            CARMON M. HARVEY, ESQ.
 9          Montgomery, McCracken, Walker & Rhoads
            (Philadelphia, PA)
10
                            Counsel for Defendants
11
12                       - - -
13          (Proceedings reconvene in court at 9:00 a.m.)
14          THE COURT:  Good morning, counsel.  Please be
15   seated.
16          Let's chat for a moment.  We're waiting for
17   Mr. Ellis?
18          MR. T. NEUBERGER:  He just stepped out, Your
19   Honor.
20          THE COURT:  Okay.
21          MR. T. NEUBERGER:  Could I hand to the Court
22   Exhibits 164 and 165 that were admitted yesterday?
23          THE COURT:  Great.
24          MR. T. NEUBERGER:  And, Your Honor, Mr. Ellis
25   and I were working out, he has some expert coming up from
```

2190

```
 1   Baltimore and there could be traffic difficulties.  If so,
 2   he may just play the two video depositions he took.
 3          THE COURT:  Why don't we wait for Mr. Ellis to
 4   get here.
 5          MR. T. NEUBERGER:  Okay.
 6          (Pause.)
 7          THE COURT:  All right.
 8          MR. ELLIS:  I'm sorry, Your Honor.  I had a
 9   temporary emergency there.
10          THE COURT:  No problem.  Okay.  As to the --
11   please sit -- the discussion that the Court entertained with
12   counsel yesterday on issues, the Court is far from convinced
13   that the record would support the delivery of an instruction
14   enabling the jury to join an adverse inference as to the
15   issue of the wiping of the hard drive.  Counsel have both
16   cited the correct standards in their papers but I am not
17   convinced by counsel for plaintiffs' assertions that the
18   record will support, would support anything more than mere
19   speculation on this Court's part as to what was or was not,
20   may or may not have been.  And I don't agree with you,
21   Mr. Neuberger, young Neuberger that the Third Circuit would
22   permit the Court to entertain hypothetical renderings such
23   as the plaintiffs have submitted in their brief in an effort
24   to divine what evidence may or may not have existed.  Courts
25   of law don't operate that way and this one is not going to
```

2191

```
 1   speculate in that regard.
 2          Some prima facie level, it's clear the cases
 3   require some prima facie sense of showing.  Cases I had to
 4   decide in this regard in the past are factually quite
 5   dissimilar to the facts that have been presented in this
 6   case.  You have virtually no evidence, there is very
 7   substantial dearth of evidence in the Court's view that
 8   would enable the Court to conclude there was much use made
 9   on a relative basis of this particular defendant, that is,
10   Defendant Chaffinch by computers, the computer in question
11   that was wiped, admittedly wiped, intentionally wiped,
12   inappropriately wiped at a time when the evidence should
13   have been preserved.  No doubt about it.
14          There is no question in this Court's mind,
15   particularly; and I want to say it again, and I know
16   Mr. Ellis, on behalf of your client, you took umbrage during
17   the pretrial conference at the Court's statement and its
18   written ruling regarding the fact we had a law enforcement
19   agency that should have known better, careless at the very
20   least, probably reckless with regard to the preservation of
21   evidence in a matter that was occurring in a federal court.
22   It's disappointing, to say the least.  I'll leave it there.
23          Having said that, the record, I am convinced,
24   does not support.  And when I say "the record," I'm talking
25   about what we've heard from this witness stand.  No e-mails,
```

2192

```
 1   no testimony about any e-mails generated by Chaffinch.  The
 2   only message that we seen, any message we've seen is the
 3   Blackberry message.
 4          So for me to take the serious step of using this
 5   Court's offices and the imprimatur that a judge sway the
 6   influence that a judge potentially can have on a jury in a
 7   circumstance like this that in a case in my judgment as
 8   close as this case would be inappropriate under these
 9   circumstances morally.  It seems to me that plaintiffs had
10   at least one other source and opportunity to seek the
11   preservation of the evidence, the discovery of the evidence,
12   the possible evidence we're talking about and that is the
13   recipients of these phantom e-mails.
14          It is routine in organizations like this for
15   opponents who are suing organizations like the Delaware
16   State Police to issue discovery requests.  And those
17   organizations, I used to work in at least two, the
18   Department of Justice and a company known as Hercules where
19   routinely we were involved in litigation and e-mails would
20   come across from the General Counsel or from the Attorney
21   General of the United States, directing her attorneys or the
22   General Counsel directing his counsel in-house to take
23   certain steps to search records and preserve e-mails.  Those
24   requests emanate from a party suing the entities that are
25   named.  That wasn't done as far as I can tell in this case
```

2393

1  MR. T. NEUBERGER: No, that's fine.
2  THE COURT: Okay. I think that might be to the
3  jury.
4  MR. T. NEUBERGER: The Court deals with many
5  more juries than I do. We want to be clear.
6  THE COURT: Okay.
7  MR. T. NEUBERGER: So I think those were my real
8  objections.
9  THE COURT: Do you want to comment on Mr.
10 Neuberger's thoughts?
11 MR. ELLIS: My formulation of the question was a
12 response to what I find to be -- I know that this apparently
13 was the verdict form in the first Foraker trial so it's
14 obviously been used by a judge in this court. But I found
15 that when the first question asks you, you know, is the
16 plaintiff a victim of an adverse action sufficiently that
17 would be likely to deter a person of ordinary firmness? And
18 then you go to the second question, and maybe I, too, I need
19 to see Mr. Neuberger's. I just found one and two to be sort
20 of duplicative because the first question is whether the
21 plaintiff was the victim of an adverse action sufficient to
22 cause reasonable hardy persons to be exercising their
23 rights.
24 And the second one, has he proven that the
25 protected activity was a substantial or motivating factor in

2394

1  the adverse action? It's almost like you are asking the
2  same question twice because you are dealing with the concept
3  protected activity in both of them.
4  I don't really have a problem with breaking it
5  into two questions. At least from my point of view, that
6  makes the jury do more work.
7  MR. T. NEUBERGER: Well, I think it's the law.
8  THE COURT: Okay. I'll take a look.
9  MR. T. NEUBERGER: Okay. If I could add a few
10 more things, Your Honor?
11 THE COURT: Sure.
12 MR. T. NEUBERGER: We're not seeking back pay at
13 all for anybody.
14 THE COURT: Where are we?
15 MR. T. NEUBERGER: We're on their question, page
16 two. Just as an example, number four. Back pay, front pay,
17 injury to reputation, emotional distress and humiliation.
18 See how they have broken it out? As economic damages, we're
19 just seeking, my question was what economic damages in the
20 future reduced to net, to present value. We are not seeking
21 back pay. Kurt Price did have some back pay but we haven't
22 put that in and sought that. He has been out of work for a
23 month. We haven't sought that. So that just makes it
24 easier. Okay?
25 And then when we get to the non-wage elements.

2395

1  I tried to conflate them into one question, you know, for
2  emotional distress, injury to reputation and humiliation and
3  they're sort of breaking it out into two.
4  THE COURT: Which question?
5  MR. T. NEUBERGER: We're on their question four
6  again as a sample, Your Honor.
7  THE COURT: Okay.
8  MR. T. NEUBERGER: They're breaking out injury
9  to reputation, emotional distress and humiliation. And I
10 suggest in my question six, as an example, if you have mine
11 there.
12 THE COURT: I do.
13 MR. T. NEUBERGER: That it's just blank for
14 emotional distress, injury to reputation and humiliation.
15 Just put it all together as one question. It's a little
16 less work for the jury.
17 MR. ELLIS: I don't have a problem with that,
18 Your Honor.
19 THE COURT: Oh.
20 MR. T. NEUBERGER: Okay. Then I guess the other
21 fundamental issue.
22 THE COURT: And you agree back pay should come
23 out?
24 MR. ELLIS: Yes. He is not asking for it. It
25 shouldn't be in there.

2396

1  THE COURT: All right. Okay.
2  MR. T. NEUBERGER: Then I guess when we got to
3  the Chris Foraker special verdict sheet, Your Honor, I
4  believe, I believe it should be that we run through the
5  federal claims and then that there are separate state
6  claims. The defamation claim is separate and the jury has
7  to march through the numbers again. They merged the numbers
8  under both claims. And what I tried to do at -- if we're
9  looking at mine at page five, if the Court could find page
10 five of mine?
11 THE COURT: I do.
12 MR. T. NEUBERGER: Before question eight, at
13 least my experience when this has come up in the rare
14 occasions when I actually have a state law claim that goes
15 to the jury, you see in the middle of the page there where
16 the Court advises them not to concern themselves with
17 duplicating any awards. The Court will see the double
18 recovery doesn't occur; at least, it has been my experience
19 in the few situations where that sort of work is done; and
20 run through the liability and damages again. That has been
21 my experience and that is how I framed it here.
22 They have taken a different approach. They put
23 their state law claim up front in Foraker and then just run
24 through damages one time, Your Honor.
25 MR. ELLIS: I think, Your Honor, that as I

2 of 4 DOCUMENTS

1ST WESTCO CORP. and RICHARD J. LEE, et al., Plaintiffs v. SCHOOL DISTRICT OF PHILADELPHIA, Defendant v. ERNEST D. PREATE, JR., Individually and in his official capacity as ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA, and DONALD M. CARROLL, JR., Individually and in his official capacity as SECRETARY OF EDUCATION OF THE COMMONWEALTH OF PENNSYLVANIA, Third-Party Defendants

CIVIL ACTION NO. 91-2727

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1993 U.S. Dist. LEXIS 5025*

**March 17, 1993, Filed**

**JUDGES:** [*1] Robert S. Gawthrop, III J.

**OPINIONBY:** BY THE COURT; ROBERT S. GAWTHROP, III.

**OPINION:**

ORDER

AND NOW, this day of March, 1993, upon consideration of third-party defendants' Motion to Defer Consideration of Plaintiffs' Petition for Attorneys' Fees, and plaintiffs' response thereto, the motion is GRANTED. Plaintiffs' Petition for Attorney's Fees is hereby STAYED pending disposition of third-party defendants' appeal of this court's Opinion and Order of January 8, 1993. *

---

* On January 8, 1992, I entered summary judgment in favor of the plaintiffs, finding that Section 7-754 of the Pennsylvania Public School Code, *24 P.S. § 7-754*, is unconstitutional because it violates the Privileges and Immunities Clauses of the United States and Pennsylvania Constitutions. Having prevailed, plaintiffs are entitled to reasonable attorneys' fees under *42 U.S.C. § 1988*. However, third-party defendants have taken an appeal. If the Third Circuit were to reverse the Opinion and Order of January 8, 1992, the plaintiffs would no longer be "prevailing parties." Therefore, they would not be entitled to attorneys' fees under § 1988. If I were to decide, before the Third Circuit adjudicates the appeal, the amount of attorneys' fees to which plaintiff is entitled, my decision could be rendered moot when that court issues its decision. It makes sense, for reasons of judicial economy and reducing the parties' expenses, to stay the petition for attorneys' fees.

The plaintiffs rely on *Midnight Sessions, Ltd. v. City of Philadelphia, 755 F. Supp. 652 (E.D. 1991),* for the proposition that I should decide the attorneys' fees issue now. In that case, Judge Newcomer found that the plaintiffs' civil rights had been violated. The defendants took an appeal. While the case was on appeal, Judge Newcomer decided the amount of attorneys' fees to which the plaintiffs were entitled. The Third Circuit then reversed the underlying decision and vacated the award of attorneys fees without commenting on the propriety of the timing of Judge Newcomer's attorneys' fees decision. *Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667 (3d Cir. 1991).*

If anything, the lesson of Midnight Sessions is that, absent undue hardship to the plaintiffs (which Judge Newcomer did find), the district court would be well-advised to await the appellate outcome, since that outcome will determine whether the plaintiffs really are "prevailing parties." To indulge in the prolix task of parsing the plaintiffs' fee petition with the requisite sharp pencil, only to find that that jurisprudential adventure in adjudication turned out to be but an academic exercise, would be the epitome of judicial diseconomy. I do not find that the plaintiffs in this case will suffer undue hardship from having to wait a few months to receive their award of

Case 1:04-cv-00956-GMS    Document 215    Filed 07/07/2006    Page 7 of 19

Page 2
1993 U.S. Dist. LEXIS 5025, *

attorneys' fees, should their ultimate entitlement thereto be determined.

Hence, this Order.

[*2]

It is further ORDERED that, if the Third Circuit affirms that Opinion and Order, third-party defendants shall file their response to plaintiff's Petition for Attorney's Fees within twenty (20) days of the Third Circuit's decision.

BY THE COURT:

Robert S. Gawthrop, III J.

43 of 100 DOCUMENTS

In Re City of Philadelphia Litigation, RAMONA AFRICA v. CITY OF PHILADELPHIA, et al., LOUISE JAMES AFRICA, Administratrix of the Estate of Frank James Africa v. CITY OF PHILADELPHIA, et al., ALFONSO LEAPHART, Administrator of the Estate of John Africa v. CITY OF PHILADELPHIA, et al.

Master File No. 85-2745, C.A. No. 87-2678, C.A. No. 85-3528, C.A. No. 87-2756

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1996 U.S. Dist. LEXIS 17194

November 12, 1996, Decided
November 13, 1996, FILED; November 14, 1996, ENTERED

**DISPOSITION:** [*1] Motion for **prejudgment interest** is DENIED.

**COUNSEL:** For RAMONA AFRICA, PLAINTIFF (87-CV-2678): ANDRE L. DENNIS, STRADLEY, RONON, STEVENS & YOUNG, LLP, PHILA, PA USA. RAMONA AFRICA, PLAINTIFF, (87-CV-2678) Pro se, PHILADELPHIA, PA USA. For GADDIE, DANIEL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED and COX, VIRGINIA, FORD, ROBERT and FORD, GWENDOLYN, PLAINTIFFS (85-2745): Thomas R. Kline, Esq., Phila., PA. Alvin F. de Levie, Esq., Phila., PA. (atty. applicants). Donald M. Temple, Esq. (co-counsel), Phila., PA. For LEAPHART, ALFONSO, Administrator Estate of LEAPHART, VINCENT LOPEZ a/k/a AFRICA, JOHN, PLAINTIFFS (87-2756): ROSEMARIE RHOADES, ESQ., PHILA., PA. REGINALD C. ALLEN, ESQ., REGINALD L. SYDNOR, ESQ., HARPER & PAUL, PHILA., PA. For JAMES, LOUISE, PLAINTIFF (85-3528): Peter L. Gallagher, Esq., Philadelphia, PA. Michael A. Fenasci, Esquire, Gretna, Louisiana. Fincourt B. Shelton, Esquire, Phila., PA.

For GREGORE SAMBOR, DEFENDANT (87-CV-2678): JOHN W. MORRIS, PHILA., PA USA. For WILLIAM RICHMOND, DEFENDANT (87-CV-2678): STEPHEN J. IMBRIGLIA, PETER C. KENNEDY, HECKER, BROWN, SHERRY AND JOHNSON, PHILA, PA USA. For FRANK POWELL, FIRE COMMISSIONER WM. B. RICHMOND, W. WILSON GOODE, LEO A. BROOKS, GREGORE J. SAMBOR, AND THE CITY OF PHILADELPHIA et al, DEFENDANTS (85-2745) by: Carl Oxholm III, Deputy City Solicitor, City of Philadelphia, Law Department, Phila., PA. Ramona Johnson Africa, DEFENDANT, (85-2745) Pro se, Muncy Prison, Muncy, PA. For GREGOR SAMBOR, DEFENDANT (87-2756) BY: John W. Morris, Esq., Phila., PA. For CITY OF PHILA., DEFENDANT (87-2756) BY: JUDITH E. HARRIS, ESQ., PHILA., PA. For WILLIAM RICHMOND, DEFENDANT (87-2756) BY: Peter C. KENNEDY, Esq., PHILA., PA. For CITY, DEFTS' (85-3528): Judith E. Harris, Esq., Morgan, Lewis & Bockius LLP, Phila., PA. For FRANK, POWELL, GREGORE J. SAMBOR, LEO BROOKS, WILLIAM RICHMAN, W. WILSON GOODE, AND THE CITY OF PHILA. (85-3528) by: Barbara W. Mather, City Solicitor, Carl Oxholm, III, Divisional Deputy City Solicitor, Philadelphia City Solicitor's Office, Phila., Pa. Ramona Johnson Africa, DEFENDANT (85-3528), Pro se, Phila. House of Correction, Philadelphia, PA. Alphonso Robbins Africa, DEFENDANT (85-3528), Pro se, Dallas, PA.

For LOUISE JAMES, MOVANT (87-CV-2678): FINCOURT B. SHELTON, DARBY, PA USA. For ALFONSO LEAPHART, MOVANT (87-CV-2678): ROSEMARIE RHODES, HARPER & PAUL, PHILA, PA USA.

For FORD, ROBERT and FORD, GWENDOLYN, ZACHARY, MYRNA, ZACHARY, CAROL, ZACHARY, THOMAS (interveners)(85-2745): Thomas R. Kline, Esq., Phila., PA. Alvin F. de Levie, Esq., Phila., PA. (atty. applicants). Donald M. Temple, Esq. (co-counsel), Phila., PA.

For LOUISE JAMES, (THIRD PARTY DEFT.)(85-2745) by: Gerard Lavery Leverer, Esq., Phila., PA.

Case 1:04-cv-00956-GMS    Document 215    Filed 07/07/2006    Page 9 of 19

Page 2
1996 U.S. Dist. LEXIS 17194, *

For Zelma Dotson Harrigan (85-5776) by: Michael A. Fenasci, Esq., New Orleans, LA.

For CLAIRE LEAK (85-4777), LOUISE JAMES (85-3528, 85-4714) by: Michael A. Fenasci, Esq., New Orleans, LA.

For THOMAS MAPP, SR., ET AL (85-3123) by: A. Remy Fransen, Jr., by: Anthony D. Jackson, Esq., Phila. Pa.

For RENDELL, EDWARD (only) (85-2745) by: Carl Oxholm, III, Esq., Divisional Deputy City Solicitor, Phila., PA.

For RICHARD L. REED AND MORRIS DEMSKO (85-2745) by: Laura Fredricks, John O.J. Shellenberger, Office of Attorney General, Phila., PA.

For NATHANIEL GALLOWAY (86-2831) BY: Bruce M. Rotfeld, Esq., Rotfeld & Rotfeld, Philadelphia, PA.

ALFONSO ROBBINS AFRICA (85-2745), Pro se, Dallas, PA.

For DEPARTMENT OF CORRECTIONS (85-2745) by: Theodore G. Otto, III, Chief Counsel, Pennsylvania Department of Corrections, Camp Hill, PA.

For RAMONA JOHNSON AFRICA (85-2745) by: Seymour Kurland, Esq., WOLF, BLOCK, SCHORR & SOLIS-COHEN, Phila., PA.

For ALFONSO ROBBINS AFRICA (85-2745) by: Joseph torregrossa, Esq., MORGAN, LEWIS & BOCKIUS, Phila., PA.

For ALBERT REVEL, FRANK POWELL, MICHAEL TURSI, WILLIAM KLEIN (87-2757) by: Carl Oxholm, Esq., Phila., Pa.

For CLAIRE LEAK (86-2834) by: Michael A. Fenasci, Esq., Gretna, LA. Thomas A. Sprague, Esq., Phila. Pa. Peter L. Gallagher, Esq., Phila. Pa.

For WILLIAM RICHMOND (87-2678) by: Peter c. Kennedy, Esq., Hecker, Brown, Sherry & Johnson, Phila. Pa.

For CITY OF PHILA., WILLIE GOODE, LEO A. BROOKS, GEORGE SAMBOR, WILLIAM RICHMOND, RICHARD REED, BY: E. Jane Hix, Esquire, Chief Assistant City Solicitor, Law Department, Phila., PA.

For MICHAEL TURSI: Lloyd George Parry, DAVIS, RITER, PARRY & HARTMANN, Philadelphia, PA.

For CITY OF PHILADELPHIA, BY: Judith E. Harris, Esq., Morgan, Lewis & Bockius LLP, Phila., PA.

For LEO A. BROOKS: Leslie M. Gerstein, Esquire, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA.

For LOUISE JAMES (85-3528): Fincourt B. Shelton, Philadelphia, PA.

For ALBERT REVEL: Robert J. Marano, Esquire, Law Offices of Edward J. Wilbraham, Philadelphia, PA.

For Alfonso Leaphart: Reginald C. Allen, Esq., Reginald L. Sydnor, Esq., HARPER & PAUL, Philadelphia, PA.

**JUDGES:** Pollak, J.

**OPINIONBY:** Pollak

**OPINION:**

MEMORANDUM/ORDER

Plaintiff Ramona Africa has moved, pursuant to *Federal Rule of Civil Procedure 59(e)*, for an **award of prejudgment interest.** Eleven years after the events upon which Ms. Africa's *42 U.S.C. § 1983* claim was based, a jury awarded her $ 500,000 in damages against the City of Philadelphia. Of this sum, $ 100,000 was to compensate Ms. Africa for disfigurement, and $ 400,000 was for **pain and suffering.**

The Third Circuit has held that **prejudgment interest** is not available in actions arising under a federal statute for damage **awards** granted to remedy noneconomic harms.

> Not all portions of a verdict are economic [*2] in character, and only the sum that represents past economic loss is properly adjusted to present value through an interest calculation. Non-economic **awards, such as pain and suffering** on [sic] **punitive** damages, do not compensate for market-induced harms, so they do not require the adjustment for the time the successful plaintiff's money was out of the market which **prejudgment interest** provides. . . .
>
> Future economic harms must similarly be excluded from the adjustment of **prejudgment interest,** for interest adjustment would be antithetical to adjusting

1996 U.S. Dist. LEXIS 17194, *

such a future stream of money to its present value.

*Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1278 n.14 (3d Cir. 1987). See also *Evans v. United Arab Shipping Co.*, 790 F. Supp. 516, 520 (D.N.J. 1992) (following Poleto in refusing **prejudgment interest** on damages awarded for **pain and suffering**), aff'd *4 F.3d 207 (3d Cir. 1993)*, cert. denied, *510 U.S. 1116, 127 L. Ed. 2d 385, 114 S. Ct. 1065 (1994)*. Because the jury **award** in favor of Ms. Africa was for noneconomic harms, she is not entitled to **prejudgment interest.**

For this reason, it is hereby ORDERED that Ms. Africa's motion for **prejudgment interest** [*3] is DENIED.

November 12, 1996

Louis H. Pollak

Pollak, J.

FOCUS - 7 of 12 DOCUMENTS

ALLIANCE FOR THE MENTALLY ILL OF PENNSYLVANIA, INC., et al. v. JOHN F. WHITE, JR., individually and in his official capacity, et al.

CIVIL ACTION NO. 90-6389

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1992 U.S. Dist. LEXIS 13191*

August 27, 1992, Decided
August 27, 1992, Filed; August 31, 1992, Entered

**COUNSEL:** For ALLIANCE FOR THE MENTALLY ILL OF PENNSYLVANIA, INC., AMI OF EASTERN PENNSYLVANIA, PROJECT SHARE, PENNSYLVANIA MENTAL HEALTH CONSUMERS' ASSOCIATION, MENTAL HEALTH ASSOCIATION IN PENNSYLVANIA, UNITED MENTAL HEALTH, INC., PENNSYLVANIA PROTECTION AND ADVOCACY INC., PLAINTIFFS: DAVID A. KAHNE, FINE, KAPLAN & BLACK, 1845 WALNUT STREET, STE. 2300, PHILA, PA 19103, USA. STEPHEN F. GOLD, 125 S. 9TH STREET, SUITE 700, PHILADELPHIA, PA 19107, USA.

For JOHN F. WHITE, JR., individually and in his official capacity as Secretary of the Department of Public Welfare, Commonwealth of Pennsylvania, FLORENCE PECHA, individually and in her official capacity as Superintendent, Haverford State Hospital, Commonwealth of Pennsylvania, DAVID JAY, individually and in his official capacity as Superintendent, Allentown State Hospital, Commonwealth of Pennsylvania, THOMAS V. SELLARS, individually and in his official capacity as Superintendent, Wernersville State Hospital, Commonwealth of Pennsylvania, ALBERT R. DIDARIO, individually and in his official capacity as Superintendent, Norristown State Hospital, Commonwealth of Pennsylvania, DEFENDANTS: KATE L. MERSHIMER, SUSAN J. FORNEY, OFFICE OF ATTORNEY GENERAL, 15TH FLOOR, STRAWBERRY SQUARE, HARRISBURG, PA 17120, USA.

**JUDGES:** [*1] Ludwig

**OPINIONBY:** EDMUND V. LUDWIG

**OPINION:**

MEMORANDUM

Ludwig, J.

August 27, 1992

Plaintiffs' **fee petition** requests $ 98,274.50 for services rendered by five attorneys. n1 *42 U.S.C. § 1988.* n2 Plaintiffs also request $ 45,415 for preparation of the **fee petition** and litigation costs of $ 8,785.89.

> n1 See Plaintiffs' Supplemental Memorandum on the Reasonableness of Attorneys' Fees (Plaintiffs' Supp.) at 18. The attorneys are: David Kahne, Arthur Kaplan, Seth Kreimer, Stephen Gold, and Penelope Boyd. Plaintiffs' initial **fee petition** sought compensation of $ 4,907.15 for two additional attorneys. On October 29, 1991, plaintiffs withdrew this request. Plaintiffs' Reply Memorandum on the Reasonableness of Attorneys' Fees (Plaintiffs' Reply) at 5.
>
> Plaintiffs also claimed a contingency fee multiplier. However, both parties agree that multipliers are now unavailable in statutory fee cases under the Supreme Court's recent decision in *City of Burlington v. Dague, 60 U.S.L.W. 4717* (June 24, 1992).
>
> n2 "In any action or proceeding to enforce a provision of §§ 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *42 U.S.C. § 1988.*

[*2]

Case 1:04-cv-00956-GMS    Document 215    Filed 07/07/2006    Page 12 of 19

Page 2
1992 U.S. Dist. LEXIS 13191, *

Defendants contest: 1) the attorneys' hourly rates; 2) the number of attorneys; 3) the time spent in consultation with other attorneys; 4) the time expended after the state's medication distribution policy was changed; 5) the degree of the lawsuit's success; 6) the amount of compensation for the **fee petition.** See Defendants' Brief Contesting the Reasonableness of Attorneys' Fees and the Use of a Contingency Multiplier (Defendants' Brief).

This action, begun in October 1990, involved the distribution of clozapine, a new antipsychotic medication. The complaint demanded that clozapine be administered to patients based on medical need and without regard to the state's financial constraints. Complaint at P 18. n3 Defendants are, or were, Department of Public Welfare officials in charge of the state hospital system. On January 16, 1991, DPW formally replaced its rationing and lottery allocation program with a need-based system. The court was notified that the action was settled. Upon consideration of plaintiffs' attorneys **fee petition,** plaintiffs, over objection, were found to be prevailing parties. *Alliance for the Mentally Ill of Pennsylvania v. White,* 1991 WL 236483 (E.D. Pa. [*3] Nov. 5, 1991).

n3 Prior to the suit, clozapine was rationed and patient eligibility was determined by a "lottery" system. Approximately one out of three eligible patients received clozapine by this rationing method.

I. The Lodestar

Reasonable fee analysis begins with computation of a lodestar - the number of hours reasonably expended times a fair hourly rate. *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 944-45, 103 L.Ed.2d 67 (1989). The petitioner bears the prima facie burden of showing that the hours and the rates are reasonable. *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). A party opposing a fee request must demonstrate the necessity of reducing the fee award. *Rode,* 892 F.2d at 1183. The opponent must "challenge [the fee request] by affidavit or brief with sufficient [*4] specificity to give fee applicants notice." *Id.,* at 1183; accord *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir. 1989). Once the **fee petition** has been challenged, the district court may adjust the lodestar appropriately. *Rode,* 892 F.2d at 1183. However, the court may not reduce the number of hours claimed unless the opposing party "raises a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure," or the judge has personal knowledge. *Cunningham v. City of McKeesport,* 753 F.2d 262, 267 (3d Cir. 1985), rev'd on other grounds, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986); see also *Bell,* 884 F.2d at 719.

A. Hourly Rate

The **fee petition** asks for compensation at each attorney's usual hourly rate. n4 Reasonable fees "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Extraordinary circumstances [*5] aside, the hourly rate an attorney would charge a client is presumed to be reasonable for statutory fee purposes. See *Student Public Interest Research Group v. AT & T Bell Labs,* 842 F.2d 1436, 1442, 1445 (3d Cir. 1988) ("SPIRG"); *Lawrence v. City of Philadelphia,* 700 F. Supp. 832, 836 (E.D. Pa. 1988). Defendants contend that hourly rates for counsel other than Kahne are unreasonable because they exceed his rate. Defendants' Brief at 9. However, identifying a disparity in the hourly rates of counsel, without showing that these rates are unreasonable, or the services uncalled for, is insufficient to reduce the lodestar. *Bell,* 884 F.2d at 720 n.7. All of the hourly rates appear to be reasonable for the counsel in question in light of the prevailing fees charged in Philadelphia. n5 It is no argument to say that Kahne could or should have performed all the services rendered.

n4 Compensation is requested for work done in 1990 and 1991. Counsels' 1990 rates are: David Kahne $ 120/hr., Arthur Kaplan $ 260/hr., Seth Kreimer $ 200/hr., Penelope Boyd $ 170/hr., and Stephen Gold $ 270/hr. The 1991 rates are: Kahne, $ 140/hr. and Kaplan, $ 280/hr; the others were unchanged.

[*6]

n5 Plaintiffs' have submitted two surveys including samples of hourly rates at Philadelphia firms ranging from $ 90/hr. to $ 350/hr. for partners and from $ 55/hr. to $ 200/hr. for associates. Affidavit of Lead Counsel in Support of Fees and Costs Petition, exhibit T, exhibit U.

Compensation for Kahne and Kaplan is listed at their 1991 rates for work done in 1990 ostensibly because of the delay in payment. Defendants contend that this work should be compensated at 1990 rates. "An appropriate adjustment for delay in payment - whether by

Case 1:04-cv-00956-GMS    Document 215    Filed 07/07/2006    Page 13 of 19

Page 3
1992 U.S. Dist. LEXIS 13191, *

the application of current rather than historic hourly rates or otherwise - is within the contemplation of [§ 1988]." *Missouri v. Jenkins by Agyei, 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989)*. However, some showing as to the harm to counsel caused by the delay is required. *SPIRG, 842 F.2d at 1453-54; Fletcher v. O'Donnell, 729 F. Supp. 422, 434 (E.D. Pa. 1990)* ("At a minimum, [the] court needs to have evidence of the rate of market interest and the time value [*7] of money over the period of the litigation if it is to calculate the effect of delay."). Plaintiffs have not provided empirical evidence regarding harm caused by delay, and, therefore, the requested adjustment will not be granted. Both sides were inflexible during several attempts to resolve this fee dispute.

B. Hours Expended

1. Number of Lawyers and Conflict of Interest

Defendants challenge 34.85 hours attributed to Penelope Boyd asserting that her work was not incorporated into the final complaint. However, plaintiffs have adequately shown that Boyd's research was used in the litigation. n6

> n6 Some of Boyd's research was incorporated into the complaint. See Second Supplemental Lead Counsel Affidavit at 2.

Before suit, plaintiffs attempted to retain Stephen Gold. Since he was unavailable, they retained Kahne for his litigation experience and Kreimer for his civil rights expertise. See Defendants' Exhibits in Support of their Brief, exhibit A at 44-50. Gold did not enter his appearance on behalf of [*8] AMI until December of 1990, believing his concurrent representation of former Byberry state hospital patients could be a conflict of interest. n7 Gold's fees are for 10.3 hours expended during this potential conflict period before his entry of appearance, based on AMI's having consented to his participation. Defendants dispute Gold's time prior to his entry of appearance. They also contend that too **many lawyers** with similar experience were retained for the litigation. Defendants' Brief at 9-11. Plaintiffs have documented Gold's activities during his pre-appearance period, and defendants have not shown that these hours were unnecessarily expended. Therefore, these hours will not be excluded. However, because of the overlap of counsel's expertise and the number of lawyers used, some reduction in the lodestar is warranted.

> n7 Gold represented former patients of the Byberry state hospital in Edward "K" v. White, Civ. No. 88-3358 (E.D. Pa. filed April 22, 1988), a suit partially involving the distribution of clozapine.

[*9]

2. Consultation Hours

Defendants note our Circuit's admonition to be wary of hours spent in consultation with other attorneys. See *Blum v. Wilco Chem. Corp., 829 F.2d 367, 379 (3d Cir. 1987)*. Since Shane and Murphy have been removed from the **fee petition,** time spent in consultation with them should, it is argued, likewise be removed. However, only 6.75 such consultation hours are at issue, and defendants do not specify why this consultation time was unreasonable or unnecessary. Given the small amount involved and the novelty of the case, these hours will be compensated.

3. Hours Expended and Degree of Success

Defendants maintain that attorney's time expended after DPW announced the end of clozapine rationing on December 13, 1990 was unnecessary and should be excluded. n8 In the alternative, they would exclude time spent after February 1991 when the random lottery system was discontinued.

> N8 Dr. Jack Wolford of DPW announced at his deposition on December 13, 1990 that rationing of clozapine would no longer be necessary. Defendants' Brief at 14. The official date of the change of policy was January 16, 1991.

[*10]

In an earlier adjudication, plaintiffs were found to have prevailed in their central claim as of January 16, 1991. *Alliance for the Mentally Ill of Pennsylvania v. White, 1991 WL 236483*, at *1 (E.D. Pa. Nov. 5, 1991). n9 Plaintiffs assert that their services rendered after January 16, 1991 were directed towards "ending the practice of withholding clozapine based on patients' personal finances. . . , enforcing the end of rationing, securing better reporting by defendants on clozapine usage, and negotiating better monitoring." Plaintiffs' Reply at 12 (footnotes omitted). However, as plaintiffs do not adequately document or explain the results of their efforts after this date, some reduction in the lodestar will be made.

> n9 Plaintiffs request $ 28,523.00 in fees for work performed after December 13, 1990 and $ 4,397.50 for work after February 1991.

Case 1:04-cv-00956-GMS    Document 215    Filed 07/07/2006    Page 14 of 19

Page 4
1992 U.S. Dist. LEXIS 13191, *

Defendants also would reduce the lodestar to reflect incomplete success on the merits. The Supreme Court, in Hensley, suggested that "where the plaintiff achieved [*11] only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley, 461 U.S. at 440, 103 S.Ct. at 1943.;* accord *SPIRG, 842 F.2d at 1455.* Defendants observe that the settlement does not bind DPW to continue any policy changes in the future. Defendants' Supplemental Brief at 9. The settlement aspect of this contention is without merit. See, e.g. *Ashley v. Atlantic Richfield Co., 794 F.2d 128, 132 (3d Cir. 1986)* (that plaintiff prevailed by settlement does not extinguish or attenuate a claim for attorney's fees). The argument that the settlement has no binding effect on future policies is, as a practical matter, highly questionable. It should not impair or defer plaintiffs' right any longer to a present fee. The settlement has now been in place for a year and a half.

The main purpose of plaintiffs' complaint was to enjoin DPW "from denying clozapine treatment to persons for whom such therapy is clinically appropriate." Complaint at 18. While the literal triage of the lottery system has been eliminated, the lawsuit and settlement [*12] did not effectuate complete relief. In *Swaayze v. Philadelphia Housing Auth., 1992 WL 81598 (E.D. Pa. April 16, 1992),* the plaintiff's lodestar request was reduced after partial relief was obtained through a settlement agreement. "It [was] reasonable . . . to reduce the lodestar figure by 20 [percent] to reflect the fact that Plaintiff did not obtain the full relief sought in the Complaint, and that Plaintiff had to agree to change her own conduct in order to obtain the relief she did get." Id. at *3. Here, need-based distribution of clozapine was made possible because the cost of side effect testing had been greatly reduced and because the settlement provided for distribution of clozapine incrementally, as patients were individually evaluated by defendants. n10

---

n10 The settlement agreement provides for: 1) availability of clozapine to all for whom it is medically indicated; 2) no discontinuation of clozapine unless medically-appropriate or patient does not consent; 3) notification of plaintiffs if above-stated policies are changed; 4) monthly reports to plaintiffs on clozapine usage in state hospitals; 5) establishment of a committee, membership to be negotiated by plaintiffs and DPW, for concerns about clozapine use in state hospitals; 6) listing of persons evaluated for clozapine but found not eligible. Second Supplemental Lead Counsel Affidavit, exhibit A. Parenthetically, defendants do not contend that *Visser v. Taylor, 756 F. Supp. 501 (D. Kan. 1990),* holding that Medicaid required general distribution of clozapine, played a part in Pennsylvania's policy changes.

---

[*13]

A district court may take equitable considerations into account when adjusting the lodestar. *Durett v. Cohen, 790 F.2d 360, 362-63 (3d Cir. 1986).* The hours requested by plaintiffs multiplied by counsels' 1990 and 1991 rates result in a lodestar of $ 91,609.50. The following factors favor reducing the lodestar in this case: (1) the overlapping expertise of counsel; (2) the amount of work performed after January 16, 1991; and, (3) plaintiffs' incomplete success on the merits. Given these factors, it is reasonable to reduce the merits lodestar by 25 percent, leaving an award of $ 68,707.13.

IV. **Fee Petition**

Preparation and litigation of the **fee petition** are compensable under *42 U.S.C. § 1988.* See, e.g., *SPIRG, 842 F.2d at 1455; Fletcher, 729 F. Supp. at 434.* For these services, plaintiffs petition for $ 45,415. Such fees are reducible where the lodestar has not been awarded in full. See *SPIRG, 842 F.2d at 1455; Durett, 790 F.2d at 363.* "In fact, it has been held an abuse of discretion not to do so." *Fletcher, 729 F. Supp. at 434* (emphasis in original) (citations [*14] omitted). Moreover, a substantial portion of the **fee petition** was devoted to the contingency fee multiplier, which was later canceled. See, e.g., Plaintiffs' Reply at 13-25. Therefore, the **fee petition** request will be reduced by 33 percent, yielding fees in the amount of $ 30,428.05.

Uncontested costs of $ 8,785.89 will be awarded.

ORDER

AND NOW, this 27th day of August, 1992, the following is awarded plaintiffs:

| | |
|---|---|
| - Lodestar | $ 68,707.13 |
| - **Fee petition** | $ 30,428.05 |
| - Costs | $ 8,785.89 |
| | $ 107,921.07 |

1992 U.S. Dist. LEXIS 13191, *

B - 13

Edmund V. Ludwig, J.

FOCUS - 2 of 4 DOCUMENTS

POLICE OFFICER JOY CARTER-HERMAN and SERGEANT BARBARA RACHUBA-FEENEY v. CITY OF PHILADELPHIA, et al.

CIVIL ACTION NO. 95-4030

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1997 U.S. Dist. LEXIS 1130*

January 31, 1997, Decided
January 31, 1997, FILED; February 3, 1997, ENTERED

**DISPOSITION:** [*1] Motion of plaintiff Joy Carter-Herman for attorneys' fees and costs GRANTED.

**COUNSEL:** For JOY CARTER-HERMAN, POLICE OFFICER, PLAINTIFF: GILBERT B. ABRAMSON, MICHAEL B. TOLCOTT, DENNIS J. COGAN & ASSOCIATES, PHILA, PA USA. KATHLEEN TIA BURKE, ABRAMSON AND FREEDMAN, PHILA, PA USA. For BARBARA RACHUBA-FEENEY, SERGEANT, PLAINTIFF: MICHAEL B. TOLCOTT, (See above). JOYCE S. MOZENTER, MOZENTER AND MOZENTER, PHILA, PA USA. ROBERT B. MOZENTER, MOZENTER AND MOZENTER, PHILA, PA USA.

For CITY OF PHILADELPHIA, RICHARD NEAL, COMMISSIONER, SAMUEL LYNCH, CAPTAIN, JIMMY MARTIN, SERGEANT, JOHN BROOKS, SERGEANT, JEANETTE DOOLEY, CAPTAIN, KATHY SMITH, SERGEANT, MICHAEL OTTO, SERGEANT, MICHAEL RYAN, LIEUTENANT, EDWARD KACHIGIAN, CAPTAIN, RAYMOND WEBB, LIEUTENANT, DEFENDANTS: LEON A. KING, II, CITY OF PHILA LAW DEPT., PHILA, PA USA. ALBERT L. D'ATTILIO, CITY OF PHILA. LAW DEPT.-ASST., CITY SOLICITOR, PHILA, PA USA. E. JANE HIX, CITY OF PHILADELPHIA LAW DEPT., PHILA, PA USA. ELIZABETH S. MATTIONI, CITY OF PHILA., LAW DEPT., PHILA, PA USA. ELISE KRAEMER, ASSISTANT CITY SOLICITOR'S OFFICE, PHILA, PA USA. BRADFORD A. RICHMAN, CITY OF PHILA LAW DEPT., PHILADELPHIA, PA USA.

**JUDGES:** Harvey Bartle, III, J.

**OPINIONBY:** Harvey [*2] Bartle, III

**OPINION:**

MEMORANDUM

Bartle, J.

January 31, 1997

The court has before it for disposition the motion of plaintiff Joy Carter-Herman for attorneys' fees and costs pursuant to *42 U.S.C. § 1988, 42 U.S.C. § 2000e-5*(k), and *Pa. Stat. Ann. tit. 43, § 962(c.2)*.

Officer Carter-Herman and Sergeant Barbara Rachuba-Feeney, female police officers, brought this action alleging that they experienced a hostile working environment, quid pro quo sexual harassment, retaliation, violations of their Constitutional rights, and intentional infliction of emotional distress while working in the Philadelphia Police Department. Officer Carter-Herman also brought claims for assault and battery. After a jury trial, judgment was entered in favor of Officer Carter-Herman on several of her claims in the amount of $ 127,000. n1 Specifically, the jury found for Officer Carter-Herman and against the City of Philadelphia on her quid pro quo sexual harassment and retaliation claims brought under *42 U.S.C § 2000e* et seq. ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") in the amount of $ 100,000. It also returned a verdict in her favor and against Captain Samuel Lynch in the amount [*3] of $ 20,000 on her PHRA retaliation claim, her *42 U.S.C. § 1983* claim premised on a First Amendment violation, and her intentional infliction of emotional distress claim. Finally, the jury decided for Officer Carter-Herman and against Sergeant James Martin in the amount of $ 5,000 on the PHRA retaliation and intentional infliction of emotional distress counts, and against Sergeant Michael Otto on her § 1983 and intentional infliction of emotional distress claims in the sum

1997 U.S. Dist. LEXIS 1130, *

of $ 2,000. The jury found in favor of the remaining defendants, Philadelphia Police Commissioner Richard Neal, Captain Jeanette Dooley, Lieutenant Michael Ryan, Sergeant John Brooks, and Sergeant Kathleen Smith on all counts.

n1 Officer Carter-Herman has appealed this judgment to the United States Court of Appeals for the Third Circuit.

As to plaintiff Sergeant Rachuba-Feeney, the jury found against her on all claims and judgment was entered accordingly. Sergeant Rachuba-Feeney has not filed any post-trial motions nor sought to recover [*4] any costs or fees from this litigation.

We now turn to the issue of counsel fees and costs. A "prevailing party" in a federal civil rights case may recover reasonable attorneys' fees and costs. See *42 U.S.C. § 2000e-5*(k) (Title VII); *42 U.S.C. § 1988* (§ 1983). Similarly, a prevailing party may recoup counsel fees and costs under the PHRA. See *Pa. Stat. Ann. tit. 43, § 962(c.2)*. Under both § 1983 and Title VII, a civil rights plaintiff is a prevailing party "if [the plaintiff] succeed[s] on 'any significant issue in litigation which achieved some of the benefit [the plaintiff] sought in bringing the suit.'" *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92, 103 L. Ed. 2d 866, 109 S. Ct. 1486 (1989)* (citation omitted); *Hensley v. Eckerhart, 461 U.S. 424, 433 n.7, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983); Commonwealth v. Flaherty, 40 F.3d 57, 60-61 (3d Cir. 1994)*. As the PHRA mirrors Title VII and should be interpreted in accord with that federal statute, a uniform standard of "prevailing party" applies under Title VII, § 1983, and the PHRA. *Doe v. Kohn, Nast, & Graf, P.C., 862 F. Supp. 1310, 1323 (E.D. Pa. 1994)*. If Officer [*5] Carter-Herman succeeded under at least one of these statutes, she is presumptively entitled "to a fee award of some kind." *Texas State Teachers Ass'n, 489 U.S. at 792*.

While Officer Carter-Herman did not succeed in every aspect of the litigation, she was the prevailing party in this action. She obtained damages against some defendants on her quid pro quo sexual harassment and retaliation claims under Title VII and the PHRA, her § 1983 claim based on the First Amendment, and her intentional infliction of emotional distress claim. In doing so, she achieved "some of the benefit [] sought in bringing the suit." *Id. at 791-92*.

Having concluded that Officer Carter-Herman was the prevailing party and that no special circumstances exist to deny her attorneys' fees and costs, we must determine the appropriate amounts to be awarded. As the first step in calculating a fee award, we should multiply the number of hours reasonably expended on the action by a reasonable hourly rate. *Hensley, 461 U.S. at 433*. The resulting product is known as the "lodestar." *Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanity Corp., 487 F.2d 161, 168 (3d Cir. 1973)*. To facilitate computation [*6] of the lodestar, the plaintiff must adequately document the hours expended and the rates charged. *Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)*. If a defendant challenges these figures, the court has wide discretion to adjust the fee award. Id. The court may not, however, sua sponte reduce a request for attorneys' fees. *Bell v. United Princeton Properties, 884 F.2d 713, 719 (3d Cir. 1989)*.

The plaintiff in this case requests attorneys' fees in the amount of $ 355,409.34 and costs in the amount of $ 39,891.42. Defendants do not object to the costs. We consider their objections to the fees in turn.

I. Unreasonable Hourly Rates

Defendants challenge the reasonableness of the hourly rates charged by plaintiff's attorneys. A reasonable rate should be calculated according to the prevailing market rates in the community. *Blum v. Stenson, 465 U.S. 886, 895, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984)*. Generally, a practitioner's billing rate reflects the market rate. *Keenan v. City of Philadelphia, 983 F.2d 459, 475 (3d Cir. 1992)*.

Officer Carter-Herman's attorneys assert the following hourly rates:

| | |
|---|---|
| Gilbert B. Abramson: | $ 300 |
| Michael Tolcott: | $ 165 |
| Stanley Cheiken: | $ 150 |
| K. Tia Burke: | $ 150 |
| Joyce Mozenter: | $ 225 |

Case 1:04-cv-00956-GMS    Document 215    Filed 07/07/2006    Page 18 of 19

Page 3
1997 U.S. Dist. LEXIS 1130, *

[*7]

In *Blum v. Stenson, 465 U.S. 886, 895 n.11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984),* the Supreme Court explained what a prevailing plaintiff must present to justify the reasonableness of claimed hourly rates: "the burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." (emphasis added).

Defendants contend that, with the exception of Joyce Mozenter, the plaintiff has not established that her attorneys' rates are reasonable. Ms. Mozenter provides an affidavit explaining her extensive experience in employment law and the affidavit of Alan Epstein, a well-known trial lawyer, confirming that Ms. Mozenter's hourly rate is reasonable. See Plaintiff's Motion for Attorney's Fees and Costs, Exh. B, J. However, Robert Mozenter submits but one affidavit -- his own -- which states that his $ 300 hourly rate is reasonable and within current market rates. Id. at Exh. C. Gilbert B. Abramson, who handled the bulk of Officer Carter-Herman's case at trial, [*8] certifies in his affidavit that his hourly rate and the rates of Abramson & Freedman associates Tolcott, Cheiken and Burke are reasonable. Id. at Exh. F. The individual affidavits of Tolcott, Cheiken and Burke make no such assertion. Id. at Exh. G-I. The defendants charge that under Blum these affidavits, standing alone, do not justify the rates claimed.

The plaintiff suggests that the defendants misconstrue Blum's holding. She notes that the attorneys in Blum were public interest attorneys who did not regularly bill clients on an hourly rate. She infers that the requirement of additional affidavits is limited, then, to those lawyers who do not bill by the hour. As the attorneys in this case avow that they typically charge clients an hourly fee, Blum is inapposite.

Plaintiff's interpretation is flatly contradicted by Blum itself. In the text preceding the critical footnote in Blum, the Court noted that a district court should make the same calculations in determining a reasonable fee "regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum, 465 U.S. at 895.* Moreover, the Court never restricted the additional affidavit [*9] requirement to public interest attorneys and/or private attorneys who work on a contingency basis. The Third Circuit recently cited Blum in *Washington v. Philadelphia County Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996),* a fee-shifting case which involved a private practitioner. In that decision, the Court of Appeals emphasized that satisfactory evidence of a reasonable rate entails something beyond the attorney's own affidavit. Id.

Plaintiff has presented no such evidence in this case. Consequently, we "must exercise our discretion in fixing a reasonable hourly rate" for each of plaintiff's attorneys except Ms. Mozenter. *Washington, 89 F.3d at 1036.*

Gilbert Abramson requests a fee of $ 300 per hour. Judge Herman of the Middle District of Pennsylvania, evaluating a **fee petition** filed by Mr. Abramson some 12 years ago, observed that "Abramson's skill was of a quality higher than that usually seen in federal court and it reflected his thorough preparation." *Rank v. Balshy, 590 F. Supp. 787, 798 (M.D. Pa. 1984).* Mr. Abramson's representation was equally impressive in this case. Without the benefit of additional affidavits, however, we are not convinced that [*10] Mr. Abramson may reasonably charge $ 300 an hour. Though not binding on this court, it is worth noting that in the Washington case Alan Epstein, a prominent Philadelphia trial lawyer, requested fees at a rate of $ 250 an hour. *Washington, 89 F.3d at 1036.* Weighing Mr. Abramson's skill, his experience conducting civil rights litigation, and those market rates which currently prevail for cases such as this, we determine that $ 275 is a reasonable hourly rate for his services.

Michael Tolcott, an associate in Mr. Abramson's firm, claims that his reasonable rate is $ 165 an hour. Stanley Cheiken and K. Tia Burke, associates in the same firm, seek hourly rates of $ 150. We believe that these rates are reasonable for associates in the Philadelphia market.

Finally, plaintiff states that the reasonable hourly rate for Robert Mozenter is $ 300. We disagree. Mr. Mozenter claims to have tried more than 600 jury trials to completion in his 30 years of practice. While that number, if accurate, is impressive, Mr. Mozenter does not explain whether those trials were civil or criminal and does not detail his experience, if any, with complex civil rights actions. On the other hand, his partner, [*11] Joyce Mozenter, avers that seventy percent of her practice is devoted to employment law. She also provides an affidavit which confirms her experience practicing civil rights law. Yet Ms. Mozenter's reasonable hourly rate is only $ 225. We can think of no reason why Mr. Mozenter's reasonable hourly rate would be $ 75 higher than that of his accomplished partner. The court finds that a reasonable hourly rate for Mr. Mozenter's services is $ 225.

II. Insufficiently Specific **Fee Petition**

Having determined the appropriate hourly rates for plaintiff's counsel, we must turn to the second factor in the lodestar equation: the hours expended. The defen-

Case 1:04-cv-00956-GMS    Document 215    Filed 07/07/2006    Page 19 of 19

Page 4
1997 U.S. Dist. LEXIS 1130, *

dants contend that many of the hours registered on the plaintiff's time sheets are insufficiently specific. Counsel seeking attorneys' fees must document the hours for which compensation is sought with "'sufficient specificity.'" *Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996)* (citation omitted). This allows the district court "to determine if the hours claimed are unreasonable for the work performed." *Rode, 892 F.2d at 1190.* A time sheet which encapsulates the general nature of the activity, [*12] the subject matter of the activity (where possible), the date the activity took place, and the amount of time worked on the activity is sufficient. *Id. at 1191.*

Considering these factors, we find that the time sheets provided by the Abramson & Freedman firm are suitably precise. They catalogue the date of the activity, the attorney who worked on the matter, a general description of the activity, the hours worked, the hourly rate, and the total fee for that activity. Importantly, the Abramson & Freedman records also break down the time as between Officer Carter-Herman and Sergeant Rachuba-Feeney; properly excluding hours expended on Rachuba-Feeney's case. While the time sheets from the Mozenter & Mozenter firm are similar, they do not allocate the time as clearly between Officer Carter-Herman and Sergeant Rachuba-Feeney. There are several entries on the Mozenter & Mozenter time sheets which, because of this deficiency, do not "provide[] enough information as to what hours were devoted to various activities and by whom for [this] court to determine if the claimed fees are reasonable." *Rode, 892 F.2d at 1191.* The following entries, challenged by defendants, will be stricken [*13] for lack of specificity: n2

| Date | Activity | Atty | Hours | Rate | Total |
|---|---|---|---|---|---|
| 5/17/96 | Meeting in office w/client & KTB | JSM | 3.0 | $ 225 | 675.00 |
| 6/19/96 | Preparation for Deps | JSM | 1.0 | $ 225 | 225.00 |

We reduce the hours in the entries listed below by one-half for the same failing:

| Date | Activity | Atty | Hours | Rate | Total |
|---|---|---|---|---|---|
| 11/2/95 | Conference w/clients & RBM Carter-Feeney | JSM | 1.5 | $ 225 | 337.50 |
| 11/2/95 | Conference w/clients & JSM Carter-Feeney | RBM | 2.0 | $ 300 | 600.00 |
| 3/7/96 | Interview; prep with Feeney & Carter. | RBM | 1.0 | $ 300 | 300.00 |
| 3/16/96 | Preparation of Feeney & Carter for Deps. | RBM | 6.0 | $ 300 | 1,800.00 |
| 3/16/96 | Preparation of Carter Feeney Dep | JSM | 6.0 | $ 225 | 1,350.00 |

n2 There are additional entries on the Mozenter & Mozenter time sheets which fail to allocate the time between Sergeant Rachuba-Feeney and Officer Carter-Herman. However, the court was