Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 1 of 19

Page 12
1999 U.S. Dist. LEXIS 17548, *

enlargements of time, and orders granting such routine motions. Others include:

1/8/97 Reviewed proposed Case Management Plan 2.90

2/12/97 Reviewed Case Management Plan filed in court 1.40

12/20/97 Reviewed letter from M. Oldham and City's Motion to Extend Discovery Deadline 0.80

1/21/98 Reviewed [*47] [Defs. Motion] for Enlargement of Time to File Summary Judgment re: Individual Officers 0.80

4/2/98 Reviewed Defendant's Notice that Plaintiff's Motion to Quash Subpoenas Moot 1.30

5/24/98 Reviewed motion to quash subpoena to Brickley and Tutsie 1.30

8/8/98 Reviewed 7/30/98 letter from M. Adam and Reviewed Goldsmith's Motion to Quash

Deposition with supporting affidavits and brief and policy? IPD 3.40

8/12/98 Reviewed Craig's [Opposition] to Defendant's Motion to Quash Deposition of Goldsmith 0.80

8/13/98 Appeared at hearing on [Defendant City's Motion to Quash deposition] of Mayor Goldsmith 2.10

8/18/98 Reviewed reply of S. Goldsmith to Plaintiff's Response to Goldsmith's Motion to Quash His Deposition 1.40 n6

    n6 These four entries concerning the mayor's deposition issue total 7.7 hours. Multiplied by Lewis' court-approved rate of $ 200 per hour, that would amount to a charge of $ 1,540, all relating to the issue of the mayor's deposition without any indication that Lewis actually contributed anything other than his physical presence to the unsuccessful effort to take the deposition.

[*48]

10/21/98 Reviewed Vogt and Robertson's Motion for Enlargement of Time to Submit Findings of Fact and Conclusions of Law with Order 0.50

On September 19 and 21, 1998, Lewis had eight separate entries for 0.2 hours each, totaling $ 320, for reviewing each of eight deposition notices served on behalf of plaintiff himself.

This list of unreasonable examples could go on at considerable length. The problems are so numerous and the admitted errors are so great that these records do not provide a reasonable and reliable basis for determining a reasonable fee for Lewis for the period after November 4, 1996. See, e.g., *Tomazzoli, 804 F.2d at 96* (district court may exclude hours it believes are based on inaccurate or misleading records). Nevertheless, it is clear that Lewis put in some hours, and the court finds it probable that Lewis made some contribution toward plaintiff's cause after November 4, 1996. As a rough approximation of a reasonable fee, the court will allow a total of 40 hours for Lewis after November 4, 1996. See *id. at 97-98* (affirming lump-sum reduction to hours claimed where district court explained basis for doing so); see also [*49] *In re Continental Illinois Securities Litigation, 962 F.2d at 570* (recognizing that where large sums are not in dispute, "laser precision" may not be worthwhile). The evidence before the court does not allow for a more precise estimate, and the 40-hour figure resolves reasonable doubts against Lewis, whose records and lack of billing judgment contributed to the problem. n7

    n7 That is not to say that Sutherlin and Kazmierczak do not share some responsibility, at least for the submission of such obviously duplicative, unreliable, and inflated records as part of the joint fee petition.

L. *Lewis Time Before November 4, 1996*

The City also challenges some of Lewis' entries in the early stages of the case. Some of these entries have already been addressed, such as the exclusion of time for work on Craig's criminal case. The court will also disallow 1.2 hours on October 24, 1996, for a duplicative entry on meetings with IPD's internal affairs investigation, and 7.1 hours on October 30, 1996, for [*50] duplicative entries on drafting the complaint.

M. *Drafting the Complaint*

After disallowing Lewis' double entry for drafting the complaint on October 30, 1996, there are still about 43 hours billed by Sutherlin, Lewis, and Kazmierczak (then employed as a law clerk) for drafting the complaint. Plaintiff points out that the complaint was 22 pages long, asserted nine causes of action against 18 defendants, and never needed to be amended. The complaint was com-

plex and well-drafted, but 43 hours is too long to be reasonable. The court will allow the 10.2 hours for the law clerk's drafting but will disallow 8.0 hours for Sutherlin and an additional 8.0 hours for Lewis. That still leaves more than 27 hours, a generous allowance of time to draft and proofread the complaint.

N. *Review of Grand Jury Testimony*

The City argues that too many attorneys spent too much time reviewing grand jury testimony. The court disagrees. The plaintiff's attorneys' use of grand jury testimony reflects a tremendous savings of time and money over the alternative of having plaintiff's attorneys or investigators try to replicate through interviews and/or depositions the investigative work [*51] done by the grand jury. The attorneys spent a lot of hours reading and analyzing that testimony, but that testimony provided the heart of the case. All the time will be allowed.

O. *Multiple Attendance at Hearings and Meetings*

Sutherlin, Kazmierczak, and Lewis all attended and charged for some of the same hearings, pretrial conferences, and depositions. The court has already addressed this problem by reducing Lewis' allowable hours. In a case of this complexity, with a much larger number of defense counsel, a second and occasionally third attorney could reasonably contribute observations and insights for the benefit of the lead lawyer. Kazmierczak was so deeply involved in the substance of the case that his attendance at such events was reasonable. The court will make no further reduction on this basis.

P. *Entries Challenged as Not Specific*

The City challenges numerous entries for "conferences," "interviews," "meetings," and so forth as not specific enough to be compensable. In fact, the actual time entries themselves are more specific than the City argues. Especially when read in context, with an eye on the calendar and the docket, the records provide a [*52] sufficient indication of the subject matter. The record-keeping requirements under § 1988 are not intended to become oppressive burdens. "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley, 461 U.S. at 437.* In addition, experienced counsel know that they cannot guarantee the confidentiality of billing records and prepare their time entries in light of the risk that the records might be disclosed to opponents at a time when a detailed entry would provide tactical intelligence. The court will not disallow time on this basis.

* * *

The net result of the court's decisions on hourly rates and reasonable hours is a lodestar amount consisting of the following:

Michael Sutherlin 317.0 hours x $ 275/hr. $ 87,175.00

Kristopher Kazmierczak 370.0 hours x $ 150/hr. $ 55,500.00

Joseph Lewis 101.6 n8 hours x $ 200/hr. $ 20,320.00

> n8 This total consists of 61.6 allowable hours from August 27, 1996, through November 4, 1996, and an estimated 40 hours after that date. The 61.6 hours are the result of the court's calculations after disallowing the various categories and specific time entries discussed in this opinion.

[*53]

Sutherlin Law Clerks 62.64 hours x $ 55/hr. $ 3,445.20

Donna Borgerding 51.0 hours x $ 50/hr. $ 2,550.00

Total Lodestar Amount $ 168,990.20

IV. *The Extent of Plaintiff's Success*

The Supreme Court has instructed that the "product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley, 461 U.S. at 434.* The lodestar amount may be adjusted upward or downward, and the results obtained in the lawsuit may be an important consideration, often the primary one. *Id.* The City proposes a large but unspecified reduction in the lodestar amount because it views plaintiff's Craig's success as "limited." The City notes that the fees sought exceed by several times the amount of damages paid to Craig. The City also points out that Craig once offered to settle the case for a total of $ 750,000 (including fees and costs), and he agreed to settle for much less.

The court finds that the lodestar amount should not be reduced on the theory that Craig achieved only "limited" success. At the most basic level, the City of Indianapolis agreed to put $ 30,000 in his pocket for having been beaten up by police officers. The settlement [*54] agreement most certainly effected a "material alteration of the legal relationship of the parties." See *Farrar v. Hobby, 506 U.S. 103, 111, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992),* quoting *Texas State Teachers Ass'n v. Gar-*

Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 3 of 19

Page 14
1999 U.S. Dist. LEXIS 17548, *

land Independent School Dist., 489 U.S. 782, 792-93, 103 L. Ed. 2d 866, 109 S. Ct. 1486 (1989). Receipt of $ 30,000, especially in the absence of permanent injury or expensive medical bills, cannot be treated as anything other than substantial relief.

In evaluating the extent of a plaintiff's success, the Seventh Circuit has looked to the factors identified by Justice O'Connor in her concurring opinion in *Farrar*. See *Connolly v. National School Bus Services, Inc., 177 F.3d 593, 597 (7th Cir. 1999)*. Justice O'Connor argued that district courts should consider several factors in evaluating the extent of a plaintiff's success: the difference between the amount recovered and the damages sought, the significance of the issue(s) on which the plaintiff prevailed, and the public purpose of the lawsuit. See *506 U.S. at 121-22*. Adapting those factors for a case that has been settled, those factors weigh [*55] against a reduction of the lodestar here.

First, Craig recovered a substantial amount of money, especially in light of the facts that his physical injuries were temporary and did not require expensive medical treatment. Also, Craig has had other troubles with the law that were likely to prevent his lawyers from presenting him as a wholly sympathetic victim. Although Craig early in the case said he would settle the case for $ 750,000, including attorneys' fees, that high a number should be seen, and was seen in this case, as merely an invitation to the defendants to go first, to see if they were prepared to put a serious settlement offer on the table at that point. They were not, and the case proceeded toward trial. For purposes of deciding a fee award, the court does not attribute any greater significance to Craig's initial settlement demand than it does to the defendants' failure to make a significant offer earlier in the case.

With respect to the importance of the issues on which Craig prevailed, in the context of a settlement, the principal point is that the settlement cannot be tossed aside as a nuisance-level settlement. Cf. *Fletcher v. Fort Wayne, 162 F.3d 975, 978 (7th Cir. 1998)* [*56] (affirming denial of fees where plaintiff who had demanded $ 150,000 then accepted a Rule 68 offer of judgment for $ 5000, and another plaintiff who had demanded $ 30,000 accepted a Rule 68 offer of judgment for $ 2500). By settling the defendants did not admit liability, but their substantial settlement offer is sufficient to show that Craig had a reasonable prospect of prevailing on the merits of his core claims for excessive force and the closely-related state law torts.

With respect to the public purpose of the lawsuit, there was an important public purpose for this lawsuit. The events in question here received extensive publicity. Even when viewing the evidence in the light reasonably most favorable to the defendants, the story is not a savory one. The evidence favorable to plaintiff shows that the event consisted of a large group of intoxicated police officers showering fellow citizens with sexual and racial insults on a public street, and then ganging up to beat up civilians who objected and stood up for themselves or others. The criminal trial against four of the officers ended inconclusively. A private plaintiff's effort to expose this sort of controversial event to scrutiny [*57] in a court, where one hopes that hearsay and public relations spin will have muted effects, serves an important public purpose.

Because this case settled, no jury made a finding of liability as to any of the defendants. By making a substantial settlement offer two months before trial, the City and the other defendants avoided a trial. Their offer did not, however, diminish the importance or legitimacy of the public purpose of the lawsuit. See *Hyde v. Small, 123 F.3d 583, 585 (7th Cir. 1997)* ("the cumulative effect of petty violations of the Constitution arising out of the interactions between the police (and other public officers) and the citizenry on the values protected by the Constitution may not be petty;" vacating and remanding denial of fee award where plaintiff won verdict of $ 500 for unreasonable arrest). Plaintiff Craig has alleged and produced evidence of much more than "petty" violations of his constitutional rights, in any event. In sum, as this court views the factors articulated by Justice O'Connor in *Farrar*, the extent of plaintiff's success does not warrant any reduction in the lodestar amount.

With respect to the City's argument based [*58] on the ratio between the settlement for Craig and his attorneys' fee request, the Supreme Court has squarely rejected the suggestion that fee awards are subject to a rule of proportionality. The controlling case is *City of Riverside v. Rivera, 477 U.S. 561, 91 L. Ed. 2d 466, 106 S. Ct. 2686 (1986)*. Because of some striking similarities to this case, it deserves close attention. A large number of unidentified police officers, acting without a warrant, broke up a party at the home of two of the plaintiffs, using tear gas and using "unnecessary physical force." *477 U.S. at 564*. The police arrested four of the plaintiffs. The district court found that the plaintiffs' party was not creating a disturbance, and criminal charges against the plaintiffs were ultimately dismissed for lack of probable cause. The plaintiffs sued the city, the police chief, and 31 officers for violations of their constitutional rights and on state law grounds. The district court granted summary judgment in favor of 17 of the defendant officers. A jury eventually awarded compensatory and punitive damages totaling $ 33,350, of which $ 13,300 was for federal claims and $ 20,500 for state [*59] law claims. *Id. at*

Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 4 of 19

Page 15
1999 U.S. Dist. LEXIS 17548, *

*564-65.* The plaintiffs petitioned for attorneys' fees and the district court awarded a total of $ 245,456.25 in fees. The Ninth Circuit affirmed that award.

Before the Supreme Court, the principal issue was whether the fee award was unreasonably high when compared to the damages the plaintiffs were awarded. The Supreme Court affirmed the award in its entirety. Justice Brennan wrote an opinion for four justices, while Justice Powell concurred in the judgment. The plurality explicitly rejected a rule of proportionality, stating that such a rule "would seriously undermine Congress' purpose in enacting § 1988." *477 U.S. at 576.* Section 1988 was enacted precisely because the established private market for attorneys' services was not sufficient to provide adequate representation in civil rights cases:

A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988.

*Id. at 578.* The plurality opinion went on [*60] to explain why the case illustrated the need for awarding a fee based on all hours reasonably spent on the litigation. The case presented difficult and complex issues, both factually and legally; the defense was vigorous, and had substantial resources. It was "highly unlikely that the prospect of a fee equal to a fraction of the damages [plaintiffs] might recover would have been sufficient to attract competent counsel." *Id. at 579.*

Justice Powell provided the fifth vote for affirming the entire award. He was obviously troubled by the size of the fee award, but he voted to affirm based on the district court's findings of fact concerning the reasonableness of and necessity for the hours the plaintiffs' attorneys spent on the case. Justice Powell also explicitly rejected a rule of proportionality: "Petitioners argue for a rule of proportionality between the fee awarded and the damages recovered in a civil rights case. Neither the decisions of this Court nor the legislative history of § 1988 support such a 'rule.' The facts and circumstances of litigation are infinitely variable." *477 U.S. at 585* (Powell, J., concurring in the judgment). Justice Powell [*61] recognized that where recovery of private damages was the purpose of a civil rights lawsuit, a district court must give primary consideration to the amount of damages awarded in making a fee award. He recognized, however, that a court may also take into account the vindication of constitutional rights and the broader public interest served by a lawsuit. *Id. at 585-86.* He also took into account the public interest served by the damages awarded for police conduct where there were allegations that police misconduct was motivated by ethnic hostility and there was evidence of racial slurs by some officers. *Id. at 586.* Justice Powell also observed, however, that cases would be rare in which such a large disparity between damages and fees would be justified. *Id. at 586 n. 3.*

The Court recognized in *Rivera* that an important variable in litigation is the extent of the defense's commitment to the case. That commitment affects what it takes a plaintiff to litigate a case properly. See *477 U.S. at 579* (plurality). Where the defense decides to mount a vigorous fight, the plaintiff normally has to commit additional resources [*62] as well. The defendants fought this case vigorously for more than two years. They filed extensive motions for summary judgment that required plaintiff to lay out the extensive and conflicting factual record in detail.

The Supreme Court in *Rivera*, and the Seventh Circuit and this court repeatedly, have recognized that a defendant who has fought a case vigorously cannot argue when it comes time to award fees that the plaintiff invested an irrational amount of attorneys' time. "Thus, [defendants] could have avoided liability for the bulk of the attorney's fees for which they now find themselves liable by making a reasonable settlement offer in a timely manner. * * * 'The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" *Rivera, 477 U.S. at 580 n. 11,* quoting *Copeland v. Marshall, 205 U.S. App. D.C. 390, 641 F.2d 880, 904 (D.C. Cir. 1980)* (en banc); accord, e.g., *Pressley v. Haeger, 977 F.2d 295, 298 (7th Cir. 1992)* ("Three lawyers toiled a total of 1272 hours on Pressley's behalf. If this seems excessive in light of the stakes - as it did [*63] to the district judge, who trimmed the allowable hours to 1102 - it was not excessive in relation to the need to overcome a defense that Haeger and the Village waged with 2041 hours of lawyers' time;" where jury awarded $ 40,000 in damages, Seventh Circuit reversed fee award of $ 177,000 to be *increased* on remand because district judge had reduced requested hourly rates without justification).

In addition, this case necessarily involved a great deal of attorney time, primarily in digesting the facts and preparing to present them at trial. There were scores of identified witnesses for the events in question. The evidence bore the usual contradictions, complexities, and ambiguities of eyewitness testimony, which grew exponentially with the number of witnesses. It is worth keeping in mind that the criminal trial of the four indicted officers took about four weeks. The multiplicity of defense counsel and firms was unavoidable to some extent because of conflicts among defendants, but that factor added to the plaintiff's lawyers' time in the case.

Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 5 of 19

Page 16
1999 U.S. Dist. LEXIS 17548, *

The City's argument that the fees are excessive in this case essentially amounts to an argument that the case never should have [*64] been brought. No doubt that course would have been preferable for defendants. But as long as the case was going to be pursued to the eve of trial, and as long as the defendants were going to defend the case vigorously from the outset, the hours in the lodestar amount above were reasonable. "There is an irreducible fixed cost to litigation. If the plaintiff cannot recover that cost in an award of attorney's fees, he will find it difficult to hire a lawyer." *Ustrak v. Fairman, 851 F.2d 983, 989 (7th Cir. 1988)*. In this case, plaintiff Craig's attorneys' fees were undoubtedly increased by the convergence of several of these factors, including the need to match the defendants' thoroughness and energy.

It is no answer to say that a party and his attorney would not reasonably invest so much time in the case if there were no fee-shifting statute. That is exactly why § 1988 was enacted. "In many case arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed [*65] with impunity, then citizens must recover what it costs them to vindicate these rights in court." Sen. Rep. No. 94-1011 at 2, reprinted in 1976 U.S.C.C.A.N. 5908, 5910, quoted in *Hensley, 461 U.S. at 445* (Brennan, J., concurring in part and dissenting in part).

The answer to a defendant like the City who argues that the ultimate settlement or damage award was not worth the plaintiff's investment in the case lies in *Rule 68 of the Federal Rules of Civil Procedure*. A defendant who sees at the outset of a case (1) a significant risk of losing on the merits and (2) the potential for a significant fee award, perhaps even exceeding the amount of damages, has a mechanism for limiting its exposure to a fee award. Such a defendant can make an early offer of judgment to the plaintiff that complies strictly with Rule 68. The offer must be in writing and it must be specific and definitive. See *Gavoni v. Dobbs House, Inc., 164 F.3d 1071, 1076 (7th Cir. 1999)* (discussing importance of clear offers of judgment and construing ambiguities against offeror); *Webb v. James, 147 F.3d 617, 621, 623 (7th Cir. 1998)* (same). If the offer is not accepted, [*66] and if the judgment finally obtained by the plaintiff "is not more favorable than the offer, the offeree [plaintiff] must pay the costs incurred after the making of the offer." *Fed. R. Civ. P. 68*.

The Supreme Court has held that when the case is subject to a fee-shifting statute, the "costs" covered by Rule 68 include attorneys' fees. *Marek v. Chesny, 473 U.S. 1, 9, 87 L. Ed. 2d 1, 105 S. Ct. 3012 (1985)*. As a result, the early offer of judgment, if the amount is set high enough to create a significant risk for the plaintiff that he or she will ultimately win a smaller amount of damages, creates a new risk for the plaintiff and plaintiff's attorney that a substantial investment of time will not be compensated after judgment.

Should it make a difference that plaintiff Craig floated an early settlement offer of $ 750,000? The City seeks to use that offer as a gauge for Craig's goals in the lawsuit, so that his settlement for less than five percent of that amount shows that the results of the lawsuit were minimal. This result would retroactively attribute enormous, virtually punitive, consequences to an opening pie-in-the-sky demand in settlement negotiations. [*67] Some very recent Seventh Circuit opinions might support that approach, but for the City's settlement in this case, in which it agreed to treat Craig as if he were a prevailing party. See In light of the City's position on this question, recent Seventh Circuit decisions that treat plaintiffs as if they had *not* prevailed when they receive less than 10 percent of an earlier settlement demand or prayer for relief in a complaint do not apply here to bar a fee recovery. See *Perlman v. Zell, 185 F.3d 850, 859, 1999 WL 562133, at *9 (7th Cir. 1999)* ("We have held in a series of recent cases that a litigant who wins less than 10% of his initial demand either is not a prevailing party for purposes of fee-shifting statutes or should be treated as if he had not prevailed."); citing *Cole v. Wodziak, 169 F.3d 486, 488 (7th Cir. 1999)* (treating plaintiffs as prevailing parties but finding that use of lodestar calculation was unreasonable in light of limited success; affirming fee and cost award of $ 15,665 where jury verdict for plaintiffs was $ 4500, but lodestar amount was more than $ 50,000; "A fee 19 times the damages, which plaintiffs [*68] sought, is off the map."), *Fletcher v. Fort Wayne, 162 F.3d 975 (7th Cir. 1998)*, and *Simpson v. Sheahan, 104 F.3d 998 (7th Cir. 1997); but see, e.g., Ustrak v. Fairman, 851 F.2d at 989* (affirming fee award 21 times damages awarded).

In any event, the City's reliance on the opening settlement demand would not be persuasive even if the City had not agreed to treat Craig as if he were a prevailing party. First, the City has not made any attempt to flesh out the details of the parties' early abortive settlement positions. Few plaintiffs in a case like this would not be willing to settle at the outset for a sum like $ 750,000, but an opening demand - one intended primarily just to see if the other side is willing to make a serious settlement offer - may not be a reliable measure of the plaintiff's goals. This court views the plaintiff's opening demand of $ 750,000 as merely a negotiating device to see

Case 1:04-cv-00956-GMS   Document 215-3   Filed 07/07/2006   Page 6 of 19

Page 17
1999 U.S. Dist. LEXIS 17548, *

if the defense was willing to put a serious amount of money on the table at the outset, and thus to see just how worried the defendants were about their financial exposure in the case. Even if there were some circumstances where a settlement [*69] demand might have substantial probative value on this issue, this case is not one of them.

Second, notwithstanding some of the language in *Perlman* and *Cole*, the Seventh Circuit has refused to apply a mechanical, mathematical rule to such questions. See *Connolly, 177 F.3d at 597* ("we have rejected mechanical rules which call on a court simply to compare the amount demanded and the amount recovered because federal antidiscrimination law vindicates important public interests which may not be reflected in the size of a particular recovery"); *Zagorski v. Midwest Billing Services, Inc., 128 F.3d 1164, 1167 (7th Cir. 1997)* (reversing denial of fees under Fair Debt Collection Practices Act where plaintiffs obtained stipulated judgment of $ 100); *Hyde v. Small, 123 F.3d at 585* (vacating and remanding denial of fees in Fourth Amendment case where jury awarded $ 500; plaintiff was entitled to bring modest claim and to pursue it successfully to trial, especially where defendants failed to make a modest Rule 68 offer of judgment); *Ustrak v. Fairman, 851 F.2d at 989* (providing for fee of $ 21,100 where damages were [*70] $ 1001).

For these reasons, the court is not adjusting the lodestar amount downward. The court will award the lodestar fee amount of $ 168.990.20.

V. *Costs*

Plaintiff Craig seeks an additional $ 12,453.15 in costs. The City questions some of those costs, but plaintiff has addressed most of the specific challenges in the supplemental affidavit of Michael Sutherlin. The $ 1,200.00 estimated cost for copying strikes the court as conservative in light of the volume of paper in this case and the plaintiff's obligation to serve copies on several different defense firms. The City also suggests that it should receive the benefit of the 10 percent discount offered by court reporters for payment within 30 days on bills for deposition transcripts, which make up the vast majority of the claimed costs. The court disagrees. If the time value of money comes into play here, it is worth remembering that plaintiff is being reimbursed much later for all amounts paid. The court will allow the full amount of costs claimed. The court will add to that the sum of $ 1,392.80 for the investigative services of Ron Hofer. That amount includes both expenses and charges for Hofer's time. Hofer [*71] is not an attorney and is not employed by an attorney. His bill is more properly treated as a cost under § 1988 than as part of the attorneys' fee itself.

*Conclusion*

For the reasons set forth above, the court will enter judgment awarding $ 168,990.20 in attorneys' fees and $ 13,845.95 in costs.

So ordered.

Date: September 10, 1999

DAVID F. HAMILTON, JUDGE

United States District Court

Southern District of Indiana

1 of 13 DOCUMENTS

JEANETTE DOOLEY, Plaintiff, v. CITY OF PHILADELPHIA, POLICE DEPARTMENT OF THE CITY OF PHILADELPHIA, JOHN F. TIMONEY, RICHARD ZAPPILE, ROBERT SMALL, JOHN NORRIS, Defendants.

CIVIL ACTION NO. 99-2764

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2002 U.S. Dist. LEXIS 17320

August 30, 2002, Decided
August 30, 2002, Filed; August 30, 2002, Entered

**DISPOSITION:** [*1] Motion of plaintiff for attorney's fees and expenses was granted in part.

**COUNSEL:** For JEANETTE L. DOOLEY, PLAINTIFF: STEVEN M. COREN, JOHN W. MORRIS, KAUFMAN, COREN & RESS, PHILADELPHIA, PA USA.

For CITY OF PHILADELPHIA, POLICE DEPARTMENT OF THE CITY OF PHILADELPHIA, JOHN F. TIMONEY, RICHARD ZAPPILE, JOHN NORRIS, DEFENDANTS: MARK J. FOLEY, JESSAMYNE M. SIMON, KLETT LIEBER ROONEY & SCHORLING, PHILADELPHIA, PA USA.

For CITY OF PHILADELPHIA, POLICE DEPARTMENT OF THE CITY OF PHILADELPHIA, JOHN F. TIMONEY, RICHARD ZAPPILE, JOHN NORRIS, DEFENDANTS: GEORGE A. VOEGELE, JR., KLETT, LIEBER, ROONEY & SCHORLING, P.C., PHILADELPHIA, PA USA.

**JUDGES:** LOWELL A. REED, JR., S.J.

**OPINIONBY:** LOWELL A. REED, JR.

**OPINION:**

MEMORANDUM

Presently before the court is the motion of plaintiff for attorney's fees and expenses, the response of defendants and the reply thereto. Plaintiff seeks $ 362,542.20 in attorneys' fees, $ 17,149.00 in expenses and $ 43,146.62 in delay enhancement, for a total of $ 422,837.82. n1 Defendants object to plaintiff's request, arguing that plaintiff's counsel has requested an unreasonable hourly rate, billed excessive and redundant hours, lacked specificity in their time and [*2] costs entry descriptions, billed for unsuccessful claims, and failed to prove their entitlement to a delay enhancement. For the reasons stated below, the motion for fees and costs is granted in part, and plaintiff will be awarded attorneys' fees in the amount of $ 311,730.82 and costs in the amount of $ 9,779.17.

n1 Additionally, the reply brief filed by plaintiff further requests $ 7,568.00 in fees and $ 281.27 in expenses incurred after March 4, 2002. Furthermore, a motion to enforce settlement filed by plaintiff in August 2002 requests $ 6,108.00 in fees incurred in connection with efforts to enforce the settlement after April 22, 2002. That brings the total requested fees and costs to $ 436,795.09.

*Background*

Plaintiff Jeanette L. Dooley, a police captain for the City of Philadelphia, filed this action in June of 1999, claiming she was illegally suspended, transferred and effectively demoted because her superiors disapproved of her testimony on behalf of the defendant at the criminal trial [*3] of former fellow police officer, Michael Vasallo. She sought relief pursuant to 42 U.S.C. § § 1983, 1985, and 1986, alleging that her constitutional rights to freedom of expression were violated. She also asserted state law claims under Article 1 of the Pennsylvania Constitution, Section 4953 of the Pennsylvania Criminal Code, and for intentional infliction of emotional distress. On June 4, 2001, this Court granted partial summary judgment to plaintiff on her Section 1983

Case 1:04-cv-00956-GMS   Document 215-3   Filed 07/07/2006   Page 8 of 19

Page 2
2002 U.S. Dist. LEXIS 17320, *

retaliation claim against the City of Philadelphia and former Police Commissioner John Timoney for Dooley's 5-day suspension in violation of her First Amendment rights. The Court then granted partial summary judgment to defendants on plaintiff's section 1983 retaliation claim for Dooley's reprimand and denial of her request to transfer as well as on all state law claims asserted, and further granted summary judgment to defendants Robert Small and the Police Department as to all claims. The remaining claims survived the motions for summary judgment, and trial was scheduled to begin January 22, 2002. On January 15, 2002, the parties entered into a settlement agreement, preserving the ancillary [*4] claim for attorney fees and expenses, and providing this Court with continuing jurisdiction to enforce the settlement.

Plaintiff filed the instant motion on March 4, 2002, requesting fees and costs for nine of her counsel: John Morris, Steve Coren, Howard Kaufman, Esther Hornik, Bruce Bellingham, Bruce Bodner, Colleen Garrity, Michael Noone and David Dormont. Defendants filed their response to the motion for attorneys' fees, vigorously contesting the request on various grounds. The parties have agreed pursuant to the settlement agreement that this Court's decision on the matter of attorneys' fees and costs would be final and binding.

*Legal Standard*

A prevailing party in a section 1983 action may recover a "reasonable attorney's fee as part of the costs" pursuant to *42 U.S.C. § 1988*(b). In assessing the reasonableness of a claimed fee, courts use the "lodestar" formula, which requires multiplying the number of hours reasonably expended on successful claims by a reasonable hourly rate. See *Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983); Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).* [*5] The party seeking attorney's fees has the burden of proving that its request is reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986).* The objecting party has the burden to challenge, through affidavit or brief, with sufficient specificity to provide notice to the fee applicant the portion of the fee petition which must be defended. *Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).* A district court may only decrease a fee based on factors raised by an adverse party, but has a great deal of discretion to adjust fees in light of the objections. Id.

*Analysis*

A. Excessive Hourly Rate

"Generally, a reasonable rate is calculated according to the prevailing market rates in the relevant community." *Maldonado, 256 F.3d at 184* (citing *Blum v. Stenson, 465 U.S. 886, 895, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984)).* In support of her request for attorney's fees, plaintiff has attached an opinion letter from Alan Lerner, a University of Pennsylvania law professor and former practicing attorney in the area, who states [*6] that upon review of the work of plaintiff's counsel, their professional summaries, and their billing records, he believed their requested fees were reasonable. (Lerner Opinion, Pl. Exh. E.) As support for his opinion, Lerner cites to a survey conducted by Altman, Weil, Pensa of hourly rates charged by private law firms and solo practitioners in Philadelphia ("Altman Survey"). Plaintiff also attaches an attorneys' fee schedule composed by Community Legal Services, Inc. ("CLS Schedule") in October 1, 2001, that lists the market range of hourly rates for attorneys in the Philadelphia area according to their years of experience. (Pl. Exh. I.) A declaration by Alan White, staff attorney at CLS, affirms that the CLS Schedule is based upon the Altman survey. (Id.) The Third Circuit Court of Appeals noted in *Maldonado, 256 F.3d at 187* that the CLS schedule was a fair reflection of market rates in the city, but did so in the absence of objections to the hourly rate requested therein.

Defendants contend that because plaintiff's counsel was part of a small firm of only eight attorneys, n2 plaintiff relied upon the incorrect Altman survey. Specifically, they argue that the [*7] proper guide to market rates for attorneys in the position of plaintiff's counsel was a companion Altman survey covering a cross-section of small firms and solo practitioners in the Philadelphia area ("Small Firm Survey"). The Small Firm Survey reflects lower hourly rates for attorneys of corresponding experience in firms of 6 to 12 attorneys than the rates requested by attorneys Morris, Coren, Kaufman, and Dormont. (Def. Exh. I.) Plaintiff's counsel has provided no reasons as to why the Court should not rely upon a survey conducted by the same firm cited by plaintiff's own expert, and which provides a more specific guide to rates of firms in the smaller size range of plaintiff's counsel. Consequently, the rates for Morris, Coren, Kaufman and Dormont will be reduced to reflect the upper quartile rates of attorneys with similar years of experience under the Small Firm Survey.

---

n2 Defendants cite to Martindale-Hubble and counsel's stationary letterhead for their argument that Mr. Coren's firm has 8 attorneys and should therefore fall within the Small Firm Survey rate. Mr. Coren does not dispute the defendants' characterization of the size of his firm.

[*8]

Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 9 of 19

Page 3
2002 U.S. Dist. LEXIS 17320, *

The Court will therefore grant attorneys fees to plaintiff's counsel at the following adjusted rates: (1) Morris: $ 225; n3 (2) Coren: $ 211 for 1998-2000, $ 225 for 2001-2002; (3) Kaufman: $ 225; and (4) Dormont: $ 183. The requested rates of the remaining attorneys are either on a par with, or less than, the upper quartile rates for attorneys of corresponding experience, and will remain unadjusted. n4

n3 Although Morris is a solo practitioner rather than an attorney at a small firm, in light of the close working relationship between Morris and the remaining attorneys during the course of this litigation, in the Court's view Morris was part of the law firm for purposes of the attorneys' fee petition.

n4 Defendants' attempt to rely on *Simmons v. City of Philadelphia*, 2001 U.S. Dist. LEXIS 55, C.A. 99-4204, 2001 WL 15958, at * 1 (E.D. Pa. Jan. 4, 2001) to reduce the requested fees further, must fail; the Court in Simmons merely approved the fees requested therein as reasonable, and did not set any maximum reasonable market rate for attorneys.

[*9]

## B. Excessive and Redundant Hours

Plaintiff asserts that her attorneys invested a total of 2,193.48 hours in preparing and litigating her case. Specifically, they spent their time on the following: 110.65 hours on pre-filing case evaluation and assessment; 91 hours on preparing and filing the pleadings; 905 hours on discovery; 248 hours on preparing and responding to the motions for summary judgment; 107 hours on settlement efforts; 562.55 hours on preparing for trial; and 167.9 hours on the counsel fee petition. Defendants contend that the hours expended in each stage of the litigation were excessive and unreasonable and should therefore be reduced.

Hours billed that are excessive, redundant or unnecessary are not reasonably expended and should be excluded from the calculation. *Hensley*, 461 U.S. at 434. Nevertheless, objections must be specific for the Court to reduce the hours requested. See *United States v. Eleven Vehicles*, 200 F.3d 203, 211-12 (3d Cir. 2000) (citing *Cunningham v. City of McKeesport*, 753 F.2d 262, 266 (3d Cir. 1985), vacated on other grounds, 478 U.S. 1015 (1986), and reinstated [*10] , 807 F.2d 49 (3d Cir. 1986)). The general objections posed to the hours expended as a whole are insufficient to provide notice to Dooley of the portion of the fee petition which must be defended. See *Rode*, 892 F.2d at 1183.

Additionally, my review of the hours billed shows that the work billed on its face appears reasonable. The duties were properly divided, with the bulk of the assignments given to junior associates at lower billing rates. (Lerner Opinion, Pl. Exh. E at 4.) Specifically, Morris, Coren and Kaufman billed 521 hours as compared to the 1672.28 hours billed by the junior associates. Moreover, it is clear that the majority of hours billed were devoted to discovery and trial preparation. Plaintiff undertook 17 depositions, primarily devoted to determining the veracity and reliability of plaintiff's disputed testimony at the Vasallo trial, which was the alleged reason for plaintiff's disciplinary action. The Court relied upon much of the deposition testimony in finding for the plaintiff on her partial summary judgment. *Dooley v. City of Philadelphia*, 153 F. Supp. 2d 628, 644-45 (E.D. Pa. 2001) (citing to the "impressive array [*11] of depositions" in which nine officers corroborated Dooley's version of events). The depositions themselves appeared to have been accomplished in an efficient amount of time; the longest deposition took only four and one quarter hours. Plaintiff also required two separate court orders to facilitate the production of requested documents from defendants. Defendants cannot successfully complain of the hours devoted to discovery disputes in which they themselves were less than cooperative. Nor indeed may defendants successfully complain of the total hours billed to trial preparation; until the week before trial, defendants significantly failed to engage in serious settlement talks in the six months after the issuance of the summary judgment opinion determining that plaintiff's First Amendment rights had been violated as a matter of law.

In addition to the difficulties posed by defendants in the document production and time-frame of settlement negotiation, defendants failed to answer the complaint until almost three months after its service, more than one month after their requested extended deadline. Their delay necessitated the opening of the default that had been entered. Similarly, [*12] despite the agreement in principle of both parties to settlement in late January 2002, defendants failed to execute the settlement agreement or honor their payment and non-monetary obligations under the agreement until the end of June 2002. Plaintiff was forced to file a motion to enforce settlement in March 2002, and withdrew it in April 2002 upon the agreement of parties to negotiate. The argument of defendants that the motion was unnecessary is untenable, as evidenced by the recent motion to enforce the settlement filed by plaintiff on August 21, 2002. While counsel for plaintiff may have engaged in aggressive litigation tactics, defendants themselves significantly and consistently contrib-

Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 10 of 19

Page 4
2002 U.S. Dist. LEXIS 17320, *

uted to the unnecessary delays and subsequent increased expenses. The general objections posed by defendants to what they characterize as an excessive total number of hours billed is thus unpersuasive absent more specific grounds for their objections.

The Court will nevertheless sustain a number of the more specific objections posed by defendants. For example, defendants object to the 8 hours billed by Coren, 34.9 hours billed by Hornik, and 13.5 hours billed by Bellingham to monitor and attend [*13] the labor arbitration and lawsuit by Lamont Fox, Vasallo's former colleague and co-defendant. n5 Plaintiff provide no explanation for why so much time was necessary to monitor the developments, nor why counsel personally attended the proceedings rather than simply order a copy of the transcript. Dooley further fails to respond to defendants' contention that she improperly seeks to reimburse Coren for the 8 hours spent defending her deposition in the Fox lawsuit. I thus find that the hours billed were unnecessary and excessive, and consequently will reduce them by 8 hours for Coren, 17.4 hours for Hornik and 6.75 hours to Bellingham.

n5 Where the hours objected to by defendants do not correspond with the hours billed by plaintiff's counsel on the specific date in the time entries cited in defendants' response, the Court acknowledges defendants' objections only to the hours accounted for in the time entries. Thus, where defendants object to 24 hours billed, but the time entries for the date cited reflect only 16 hours, the Court entertains the objection to only the latter number of hours.

[*14]

Similarly, defendants object to the 0.7 hours billed by Coren and 20.8 hours billed by Hornik in the unsuccessful attempt to compel the FBI to produce documents related to the Vasallo investigation. As defendants observe, and as Judge Angell determined at the time, the dictates of the Privacy Act make clear that the FBI was prohibited from producing certain requested files to plaintiff. They further object to the 16 hours billed by Hornik in monitoring and discussing the Vasallo lawsuit and 7 hours by Hornik to draft a motion for protective order against her deposition in the Vasallo lawsuit. Although the Court appreciates the underlying role Vasallo played in the events at issue in Dooley's litigation, Vasallo's subsequent lawsuit was unrelated to Dooley's claims in this action. Plaintiff has provided no reasons as to why the time billed was necessary to monitor Vasallo's lawsuit. Consequently, I find the hours billed by Hornik on this matter were excessive, and will reduce them by 24 hours.

Plaintiff has failed to respond to defendants' objections to the 13 hours billed by Hornik and 2.5 hours by Bellingham to deal with an "Evelyn Heath" file. Plaintiff has provided no explanation [*15] as to why the Evelyn Heath file was relevant to her litigation. Hornik has also charged 7 hours to talk with other "plaintiff's" counsel and call John Jay College, yet plaintiff has provided no explanation of who was the other plaintiff or why Hornik called John Jay College. Without an explanation, the Court must find these hours to be unreasonable, and will therefore eliminate them from the fee award.

Defendants also present a litany of objections to various discovery-related hours billed by Hornik as excessive. Specifically, defendants object to the following: 5 hours to review "self-executing disclosure rules;" 13.5 hours to draft self-executing disclosure; 7 hours to prepare for and attend a 1 hour discovery conference in December 1999; 11 hours to prepare for and attend a 1 hour discovery conference in April 2000; 10 hours to meet with plaintiff and review documents to prepare discovery response; 4 hours to read a police report; 2 hours to discuss the schedule of plaintiff's deposition; and 2 hours to discuss with plaintiff the transition of her case to other counsel. Although it is always difficult in the absence of the relevant context to assess the reasonableness of time taken [*16] to accomplish a task, plaintiff has provided no response to these specific objections, and in light of the tasks for which the hours were expended, the Court finds that the hours billed are excessive. I will therefore reduce the hours by 27.25.

Defendants also contest the following hours billed by Hornik: 8 hours to draft an ultimately unfiled motion to reinstate default and to strike objections; 16 hours to research and draft a confidentiality stipulation that plaintiff never signed; and 7 hours to research for a police administration expert never named or used. Although the nature of litigation renders inevitable the exertion of efforts to accomplish tasks that remain unaccomplished, plaintiff has not provided reasons as to why these hours were reasonable and necessary, or why they were not reduced when the determination was made to abort the assignments. I therefore find the 31 hours billed to be unreasonable, and will eliminate them from the fee award.

Finally, defendants object to the 4.3 hours billed by Coren and 20.7 hours billed by Bellingham to the motion for reconsideration filed by plaintiff. The 10-page motion sought to reopen claims of retaliation by defendants in the [*17] form of several alleged adverse actions that the Court had previously determined were insufficiently supported by plaintiff's brief and the record. Plaintiff

Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 11 of 19

Page 5
2002 U.S. Dist. LEXIS 17320, *

succeeded on only one claim on which the Court had inadvertently granted summary judgment for the defendants; the motion was otherwise a rehash of plaintiff's previous unsuccessful arguments in response to the motion of defendants for summary judgment. Consequently, I find that the hours billed were unreasonable, and will reduce them by 3.3 hours for Coren and 15.7 hours for Bellingham.

The Court finds that the remaining hours to which defendants have posed specific objections were reasonable or were reasonably reduced by plaintiff in her fee petition. Consequently, the Court will award plaintiff fees for the hours requested, less 11.3 hours for Coren (2000: 8 hours; 2001: 3.3 hours), 119.65 hours for Hornik (1999: 59.15 hours; 2000: 60.5 hours), and 24.95 hours by Bellingham (2000: 9.25 hours; 2001: 15.7 hours). n6

- - - - - - - - - - - - - - - - - -

n6 Allocation of the reduction of hours was set according to the year in which the opposed billing activity took place.

- - - - - - - - - - - - - - - - - -

[*18]

C. Objections Based on Lack of Success

Defendants argue that the fee request should be further reduced for plaintiff's failure to succeed on many of the claims initially asserted. By multiplying the 9 causes of action asserted by the 6 defendants named, defendants calculated a total of 54 separate claims brought by plaintiff. Defendants note that plaintiff won only 3 of the claims on summary judgment and that only 8 claims survived the motion of defendants for summary judgment; they therefore argue that the fee should be reduced by at least 40%.

In contrast to the protestations of defendants, the United States Supreme Court has rejected "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Hensley v. Eckerhart, 461 U.S. 424, 435 n. 11, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983).* Although counsel should not be awarded fees for an unsuccessful claim that was based on different facts and distinct legal theories from successful claims, where the claims are related, the focus of an attorneys' fee application should be on the "overall relief obtained by the plaintiff in relation to the hours reasonably expended [*19] on the litigation." *Id. at 435;* see also *West Virginia Univ. Hosps. v. Casey, 898 F.2d 357, 361-62 (3d Cir.),* cert. denied, *496 U.S. 936, 110 L. Ed. 2d 661, 110 S. Ct. 3213 (1990).*

[A] plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley, 461 U.S. at 440.*

By order dated January 15, 2002, this Court observed that the parties had agreed that plaintiff was a "prevailing party," entitling her to reasonable attorneys fees. (Doc. No. 52.) Plaintiff had succeeded on a motion for partial summary judgment on her claim that she had been suspended in retaliation for testifying in the criminal trial of former police officer Michael Vasallo. The majority of the federal claims for civil rights deprivations that plaintiff asserted remained for trial. The finding and conclusion that the Commissioner had deliberately retaliated against plaintiff [*20] for exercising her First Amendment right was a considerable victory for plaintiff. The jury would have been informed of this conclusion during the trial. The decision of defendants to settle was clearly impacted by the Court's determination. Plaintiff gained a cash settlement amount of $ 380,000 for all of her remaining claims as well as the claim on which she was granted summary judgment, and was further provided with an assurance of a promotion to Inspector and the removal of negative information from her records. This was "substantial relief" for plaintiff. That the fees and expenses sought are greater than the cash settlement is not a bar to their award; the degree of plaintiff's success rather than the amount of cash settlement is the "most critical factor." *Farrar v. Hobby, 506 U.S. 103, 114, 121 L. Ed. 2d 494, 113 S. Ct. 566, 574 (1992)* (citing *Hensley v. Eckerhart, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)* (rejecting rule of proportionality between damages award and attorneys' fee award)). n7

- - - - - - - - - - - - - - - - - -

n7 The Third Circuit Court of Appeals has determined that attorneys fees granted under fee-shifting statutes should not be diminished to maintain proportionality between the fees and the damages. See *Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1041-42 (3d Cir. 1996).* This ensures that attorneys who act as a "private attorney general" can be adequately compensated for their labor in civil rights cases that may have a small monetary award but important social benefits. *Id. at 1041* (citing *Riverside v. Rivera, 477 U.S. 561, 575, 91 L. Ed. 2d 466, 106 S. Ct. 2686 (1986)).*

- - - - - - - - - - - - - - - - - -

Case 1:04-cv-00956-GMS  Document 215-3  Filed 07/07/2006  Page 12 of 19

Page 6
2002 U.S. Dist. LEXIS 17320, *

[*21]

The claims on which summary judgment was granted to defendants were based on the same facts and similar legal theories as the claim on which plaintiff succeeded, and should therefore not be separated out for purposes of an attorneys' fee analysis. The possible exception to this might be the state law claims, which were based on the same facts but different legal theories. Nevertheless, plaintiff has already reduced the fee request for the hours spent litigating the unsuccessful claims of intentional infliction of emotional distress, the criminal code violation under *18 Pa.C. S. § 4953*, and the claims asserted under the Pennsylvania Constitution and the supremacy clause of the U.S. Constitution. Specifically, the plaintiff's fee request was voluntarily reduced by $ 3,075 for the unsuccessful state and federal law claims pursued, based on 20.5 hours billed at $ 150 per hour, and $ 3,300 for the adverse employment actions that failed to survive summary judgment, based on 22 hours billed at $ 150 per hour. The Court finds this a fair and adequate reduction.

Defendants further posit that because defendants Small and the Philadelphia Police Department were granted summary judgment outright, [*22] one-third, or 33% of the fee should be reduced. Although attorneys should not be compensated for hours devoted to claims against defendants found to be not liable, attorneys hours "fairly devoted" to one defendant that also support the claims against other defendants are compensable. *Rode v. Dellarciprete, 892 F.2d 1177, 1185 (3d Cir. 1990)*. My review of the fee petition and hours billed reveals no distinct hours devoted to defendant Smalls or the Police department as distinct from the City of Philadelphia or other remaining defendants. The hours spent on prosecuting claims against Smalls and the Police Department may be said to have been "fairly devoted" to support the claims against the remaining defendants. I thus conclude that the hours billed by plaintiff's counsel will not be reduced for any lack of success.

**D. Lack of Specificity**

Defendants further contest the hours billed for lack of specificity in the descriptions. The Third Circuit Court of Appeals has explained, "specificity should only be required to the extent necessary for the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Washington, 89 F.3d at 1037* [*23] (quoting *Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir. 1990))*.

[A] fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g. senior partners, junior partners, associates. However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.

*Rode, 892 F.2d at 1190* (internal quotation marks and citations omitted). In Rode, the submitted petition included records specifying the "general nature of the activity and the subject matter of the activity where possible, e.g. T (Dusman), CF (client), R (re appeals), the date the activity took place and the amount of time worked on the activity." *Rode, 892 F.2d at 1191*. Similarly, in Washington, the petition included "records specifying the date when the work was performed, the attorney performing the work, the nature of the work (e.g. 'Prepare complaint,' 'Conference with [co-counsel] regarding [*24] liability issue'), the amount of time spent and the hourly rate charged for that particular task." *Washington, 89 F.3d at 1037*. In both cases, the court of appeals reversed a district court finding that the petition did not provide adequate descriptions of the services rendered. Under this standard, I find that the time entries in Dooley's petition are sufficiently specific. I thus conclude that reduction based on lack of specificity is not warranted.

**E. Expenses**

Defendants further object to the request for expenses based on lack of specificity. In her fee petition and reply brief, plaintiff has requested $ 17,430.27 in expenses that include duplicating, postage, filing fees, medical reports, expert fees, travel expenses (including parking, mileage and tolls), court reporter fees, witness fees and expenses, miscellaneous, telecopier charges and Westlaw charges. Courts may award under section 1988 "litigation expenses that are incurred in order for the attorney to be able to render his or her legal services." *Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir. 1995)*. With the exception of the $ 496.10 in miscellaneous charges, I find [*25] that the items requested are sufficiently specific, and represent routine and regularly necessary expenditures for maintenance of cases of this nature; I further find that the expenditures were modest for a case of this size. Nevertheless, defendants correctly observe that expert fees are not compensable for successful section 1983 claims under the fee-shifting provisions of section 1988. See *West Virginia Hosps., Inc. v. Casey, 499 U.S.*

Case 1:04-cv-00956-GMS   Document 215-3   Filed 07/07/2006   Page 13 of 19

Page 7
2002 U.S. Dist. LEXIS 17320, *

*83, 102, 113 L. Ed. 2d 68, 111 S. Ct. 1138 (1991); Abrams, 50 F.3d at 1225;* see also *42 U.S.C. § 1988* (c). n8 Thus, the $ 7,155.00 requested for expert fees, as well as the $ 496.10 in miscellaneous charges, will be excluded from the award.

> n8 Section 1988 (c) provides, in relevant part:
>
> > In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or section 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.
>
> There is no parallel provision allowing a court to award expert fees for enforcement of section 1983.

[*26]

### E. Delay Multiplier

Dooley further requests a delay enhancement of $ 43,146.62, to compensate for lost use of money during the time before counsel fees are awarded. (Pl. Exh. L.) Defendants argue that plaintiff has not proven that she is entitled to a delay enhancement. Courts may make "an appropriate adjustment for delay in payment." *Missouri v. Jenkins, 491 U.S. 274, 284, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989).* The burden in on the petitioning party to establish the need for delay enhancement. See *Keenan v. City of Philadelphia, 983 F.2d 459, 476 (3d Cir. 1992).* A plaintiff should provide evidence that documents the costs of receiving delayed payment of fees. Id.

Dooley's memorandum in support of her petition provides that over time the law firm of her attorneys, Kaufman, Coren, & Ress, P.C., borrowed money at varying interests rates above the prime rate, from Progress Bank and First Republic Bank. (Pl. Mem. at 17-18.) Coren attests to the veracity of this statement in his attached declaration. Nevertheless, plaintiff has not provided any documentary evidence as to the necessity for the loans, the period of time over which the [*27] loans were made, or the approximate amount of interest paid on the loans taken during the period in question. Cf. *Blum v. Witco Chem. Corp.888 F.2d 975, 982 (3d Cir. 1989)* ("Blum II") (affirming delay enhancement award where party produced market interest rates and certification of law firm loans and interest payments made on loans), nor shown that the firm took out its loans as a result of plaintiff's case. See *Student Public Interest Research Group v. Monsanto Co., 727 F. Supp. 876, 883-84 (D.N.J.),* aff'd without opinion, *891 F.2d 283 (3d Cir. 1989).* Accordingly, I find that plaintiff has failed to sustain her burden of documenting the factual basis for a delay adjustment.

I further note that based on the contingency fee relationship common in cases of this nature, and the need to establish plaintiff as a prevailing party, payment to plaintiff's counsel would generally be delayed until the resolution of the matter. Thus, "'a delay multiplier is not automatically necessary to provide a reasonable compensation.'" *Hall v. Harleysville Ins. Co., 943 F. Supp. 536, 546 (E.D. Pa. 1996)* (quoting *Peters v. Delaware River Port Authority, 1993 U.S. Dist. LEXIS 3722,* [*28] *2 (E.D. Pa. March 9, 1993)* ("Delay between the rendering of services and the receipt of payment is not uncommon throughout the profession")). I conclude that a delay multiplier is not warranted in this action.

### F. Calculation

Based upon the reduced hours and hourly rate as set forth above, and with the additional hours and costs charged since the filing of the petition as set forth in plaintiff's reply brief and motion to enforce settlement, the fees will be adjusted as follows:

| Attorney | 1998-99<br>(hours x rate) | 2000 | 2001 |
|---|---|---|---|
| Coren | 47.5 x $ 211 =<br>$ 9969.75 | 134.7 x $ 211 =<br>$ 28330.97 | 98 x $ 225<br>$ 22050.00 |
| Morris | 48.15 x $ 225 =<br>$ 10833.75 | 8.3 x $ 225 =<br>$ 1867.50 | 16.45 x $ 225 =<br>$ 3701.25 |
| Kaufman | 12.6 x $ 225 =<br>$ 2835 | 16.9 x $ 225 =<br>$ 3802.50 | 16.3 x $ 225 =<br>$ 3667.50 |

Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 14 of 19

Page 8
2002 U.S. Dist. LEXIS 17320, *

B - 52

| Attorney | 1998-99 (hours x rate) | 2000 | 2001 |
|---|---|---|---|
| Hornik | 365.05 x $ 150 = $ 54757.50 | 138 x $ 155 = $ 21390 | |
| Bellingham | | 214.38 x $ 140 = $ 30013.20 | 193.05 x $ 150 = $ 28957.50 |
| Bodner | | | 159.8 x $ 140 = $ 22372 |
| Garrity | | | 94.3 x $ 125 = $ 11787.50 |
| Noone | | | 49 x $ 125 = $ 6125 |
| Dormont | | | |
| Total Fees | | | |
| Less Billing Deduction | | | |
| Net Fees | | | |
| Costs | | | |
| Total Net Fees & Costs | | | |

[*29]

| Attorney | 2002 | Lodestar |
|---|---|---|
| Coren | 105.7 x $ 225 = $ 23782.50 | $ 84,133.22 |
| Morris | 20.8 x $ 225 = $ 4680.00 | $ 21,082.50 |
| Kaufman | 11.9 x $ 225 = $ 2677.50 | $ 12,982.50 |
| Hornik | | $ 76,147.50 |
| Bellingham | | $ 58,970.70 |
| Bodner | 214.2 x $ 160 = $ 34272 | $ 56,644.00 |
| Garrity | 107.6 x $ 130 = $ 13988 | $ 25,775.50 |

Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 15 of 19

Page 9
2002 U.S. Dist. LEXIS 17320, *

| Attorney | 2002 | Lodestar |
|---|---|---|
| Noone | 22.6 x $ 130 = $ 2938 | $ 9,063.00 |
| Dormont | 4.3 x $ 183 = $ 786.90 | $ 786.90 |
| Total Fees | | $ 345,585.82 |
| Less Billing Deduction | | -$ 33,855 |
| Net Fees | | $ 311,730.82 |
| Costs | | $ 9,779.17 |
| Total Net Fees & Costs | | $ 321,509.99 |

*Conclusion*

For the foregoing reasons, I will grant plaintiff's petition for the requested fees, but will reduce the hourly rate for attorneys Coren, Morris, Kaufman and Dormont to the upper quartile of the hourly rates of attorneys in small firms with corresponding years of experience. I will further reduce the hours of Coren by 11.3 hours, of Hornik by 119.65 hours, and of Bellingham by 24.95 hours. I will also reduce the expenses awarded by $ 7,651.10. Taking into account the billing judgment deductions already calculated by plaintiff, I will thus award plaintiff **[*30]** attorneys' fees in the amount of $ 311,730.82 and costs in the amount of $ 9,779.17, for a total award of $ 321,509.99.

An appropriate Order follows.

**ORDER**

AND NOW, this 30th day of August, 2002, upon consideration of the motion of plaintiff for attorney's fees and expenses (Doc. No. 55), the response of defendants (Doc. No. 59) and the reply thereto (Doc. No. 61), and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** the motion is granted in part, and plaintiff is awarded attorneys' fees in the amount of $ 311,730.82 and costs in the amount of $ 9,779.17.

It is **FURTHER ORDERED** that defendant City of Philadelphia shall pay the total sum of $ 321,509.99 to John W. Morris, Esquire and Kaufman, Coren & Ress, P.C. no later than September 27, 2002.

It is **FURTHER ORDERED** that upon praecipe and certification that the full sum remains unpaid after September 27, 2002, this Court will enter judgment on the award.

**LOWELL A. REED, JR., S.J.**

1 of 2 DOCUMENTS

ERNEST O. FINI, JR., Plaintiff, v. REMINGTON ARMS COMPANY, INC., Defendant.

Civil Action No. 97-12-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1999 U.S. Dist. LEXIS 15864

September 24, 1999, Decided

**NOTICE:** [*1] FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Defendant's motion for judgment as matter of law on plaintiff's promissory estoppel claim (D.I. 110) and on plaintiff's covenant of good faith and fair dealing claim (D.I. 109) granted; defendant's motion to alter or amend judgment (D.I. 108) denied; plaintiff's motions relating to lost pension damages, pre- and post-judgment interest and for specific monetary damages (D.I. 112, 124) granted in part and denied in part and plaintiff's motions for attorneys' fees and costs (D.I. 111, 119) granted in part and denied in part.

**COUNSEL:** For plaintiff: Thomas Stephen Neuberger, Esquire, Wilmington, Delaware.

For plaintiff: William J. Rodgers, Esquire, John P. Lohrer, Esquire, Christopher P. Edelson, Esquire, Collier, Shannon, Rill & Scott, PLLC, Washington, D.C.

For defendant: Kathleen Furey McDonough, Esquire, Jennifer Gimler Brady, Esquire, Potter Anderson & Corroon, LLP, Wilmington, Delaware.

For defendant: Allan L. Shackelford, Esquire, Alexander L. Maultsby, Smith Helms Mulliss & Moore, L.L.P., Greensboro, North Carolina.

**JUDGES:** Sue L. Robinson, District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM OPINION

Dated: September 24, 1999
Wilmington, [*2] Delaware

ROBINSON, District Judge

### I. INTRODUCTION

Pending before the court are various motions filed by the parties post trial. The jury returned a verdict in favor of plaintiff Ernest O. Fini, Jr., finding that defendant Remington Arms Company, Inc. willfully discriminated against plaintiff because of his age and awarding plaintiff $ 135,503 for lost earnings, $ 323,132 for future lost earnings, and $ 263,733 for lost pension benefits. The jury also found that plaintiff proved the elements of his claims for promissory estoppel and breach of the covenant of good faith and fair dealing. Plaintiff was awarded $ 722,368 in connection with the former and $ 577,895 in connection with the latter. Defendant has filed motions to alter or amend the judgment and for judgment as a matter of law on the breach of the covenant of good faith and fair dealing claim and the promissory estoppel claim. (D.I. 108, 109, 110) For his part, plaintiff has filed motions for attorneys' fees and costs, as well as motions relating to the amount of monetary damages to be paid by defendant. (D.I. 111, 112, 119, 124)

Each of these motions shall be addressed seriatim.

### II. DEFENDANT'S [*3] RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM

#### A. Standard of Review

In order to prevail on a motion for judgment as a matter of law pursuant to *Fed. R. Civ. P. 50*, the moving party must prove that there is insufficient evidence upon which a reasonable jury could properly base its verdict, viewing the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in favor of the non-movant. See *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 269-70 (3d Cir. 1995)*.

In making such a determination, "the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." While a "scintilla of evidence is not enough to sustain a verdict of liability," the question is "whether there is enough evidence upon which the jury could properly find a verdict for that party."

Id. (citing *Lightning Lube, Inc. v. Witco Co., 4 F.3d 1153, 1166 (3d Cir. 1993)).*

**B. Discussion**

The elements of a promissory estoppel claim require evidence that: (1) a promise was made; (2) the promisor [*4] reasonably expected to induce action or forbearance on the part of the promisee; (3) the promisee in fact relied on the promise and took action to his detriment; and (4) the only way to avoid injustice is to enforce the promise and make it binding. See *Hunter v. Diocese of Wilmington, 1987 Del. Ch. LEXIS 468, C.A. No. 961-Kent, 1987 WL 15555, at *6 (Del. Ch. Aug. 4, 1987)* (citing *Chrysler Corp. v. Quimby, 51 Del. 264, 144 A.2d 123 (Del. 1958)).* As to the first element, in the absence of "evidence of falsity or fraud," "mere expressions of opinion, expectation or assumption are insufficient.... [Rather, p]romissory form is required...." *Reeder v. Sanford Sch., Inc., 397 A.2d 139, 141 (Del. Super. 1979);* accord *Peterson v. Beebe Med. Ctr., Inc., 1992 Del. Super. LEXIS 454, C.A. No. 91 C-07-147, 1992 WL 354087, at *4 (Del. Super. Nov. 13, 1992).* As to the third element, plaintiff must prove that his reliance was "reasonable." *Keating v. Board of Educ., 1993 Del. Ch. LEXIS 244, C.A. No. 12589, 1993 WL 460527, at *4 (Del. Ch. Nov. 3, 1993).* A plaintiff must prove all four elements of promissory estoppel "by clear and convincing evidence." Id.; accord *Reeder, 397 A.2d at 141.* [*5]

The sole evidence of record cited by plaintiff is his trial testimony as follows:

Q. In September of 1995, were you ever on a trip with Tommy Millner?

A. Yes, sir.

Q. And was there one or more of those trips in September of '95?

A. In terms of leaving the state of Delaware or getting away from the corporation any significant distance, there was one trip.

Q. And where was that to?

A. It was to outside of New Haven, Connecticut.

Q. And during that trip, did you have any discussion with Tommy Millner about your position in the Remington Arms Company?

A. Yes, sir.

Q. And would you please describe or tell the jury, not describe to them, tell the jury where that occurred and what was said?

A. Art Wheaton, the vice president, Tommy Millner, and myself had traveled to upstate Connecticut to meet with a writer who was going to do a book on the history of the Remington Arms Company. And I had driven to Connecticut and then met with them there and traveled to the writer's with them and back to [the] New Haven Airport.

While we were in the airport, a number of subjects were discussed just casually, and mentioned to Mr. Millner now that it [*6] was known that we were moving, how my people were faring, myself included, with regard to the move. And Tommy again was most complimentary and said that everything was fine, all the recommendations I had made had gone forward, and that all my people, myself included, were being, would be asked and receive a letter to go to North Carolina.

Q. When you referred to your people, you were referring to whom?

A. My entire organization of the direct reports to me. Not the nonexempt or the hourly wage, they knew they would not be invited, it was not a good business practice. But all the exempts in my group were to be making the trip. Myself, according to Mr. Millner, myself included.

Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 18 of 19

Page 3
1999 U.S. Dist. LEXIS 15864, *

(D.I. 123 at 39-40) (emphasis added). Plaintiff further testified that he relied to his detriment on this conversation, as follows:

> Q. Now, between that period of time between the conversation you had with Tommy Millner, the president of Remington, [at] the New Haven Airport and the conversation you had with Mr. Haskins on October 6, 1995, you did not turn down any job offers with any other company, did you?
>
> A. No.
>
> Q. And, in fact, during that period of time, you weren't aware [*7] of any open jobs with any other company, were you, that you had --
>
> A. Yes, I was.
>
> Q. And what job was that?
>
> A. Browning.
>
> Q. And is that the job that you talked with Mr. Moser about or the job that you talked with someone else about?
>
> A. The job that Mr. Forson took.
>
> Q. But during that period of time, you did not, in fact, receive and refuse any sort of job offer from the --
>
> A. No, sir.

(D.I. 123 at 116) This testimony on cross-examination follows from his direct examination:

> Q. Mr. Fini, do you know a Mr. William Forson?
>
> A. Yes, sir.
>
> Q. Do you know where Mr. Forson works?
>
> A. He currently works for Browning FN.
>
> Q. Say that again?
>
> A. Browning FN. It is a division of Kiot, which owns the Browning USA Firearms Company. They have a law enforcement division which is in South Carolina.
>
> Q. Did you ever have any conversations with Mr. Forson about your potential employment at Browning?
>
> A. Yes, sir.
>
> Q. Would you tell the jury about those conversations?
>
> A. Mr. Forson was leaving the Remington Arms Company and had secured a position at Browning, Browning USA at that time, in Utah, and he was moving there. [*8] And I asked of him if there were any positions available at that time, this was around October, early October.
>
> Q. Of what year?
>
> A. Of 1995. And Bill informed me that there were no positions currently available, that he had filled the last one.

(D.I. 123 at 75-6)

According to his trial testimony, Mr. Millner does not recall either the trip or the conversation he allegedly had with plaintiff on or about September 25, 1995. (D.I. 118 at 26) The evidence of record demonstrates that the decision to eliminate plaintiff's position was made by Robert Haskin, a decision that was communicated to plaintiff on or about October 6, 1995. (D.I. 114 at 19; D.I. 118 at 24-5, 153-54, 162; D.I. 123 at 47, 56, 74, 115)

The court concludes that, even when the evidence is viewed in the light most favorable to plaintiff and all reasonable inferences are drawn in favor of plaintiff, there is insufficient evidence of record upon which a reasonable jury properly could have found that plaintiff proved by clear and convincing evidence the elements of promissory estoppel. First, there is no allegation that the alleged promisor, Mr. Millner, acted with falsity or fraud; therefore, promissory [*9] form was required. Accepting plaintiff's testimony for what it is, at best plaintiff has proved that, in a casual setting, Mr. Millner believed or expected that all of plaintiff's people, including plaintiff, would be invited to North Carolina. Even if plaintiff's recollection and characterization of the conver-

Case 1:04-cv-00956-GMS    Document 215-3    Filed 07/07/2006    Page 19 of 19

Page 4
1999 U.S. Dist. LEXIS 15864, *

sation were accepted as true, there is absolutely no evidence that Mr. Millner "reasonably expected to induce action or forbearance" on plaintiff's part by this statement. Again, even if the court were to assume such motivation on Mr. Millner's part, there is no evidence of any job openings plaintiff could have pursued during the eleven (11) days between the September 25 conversation and the October 6 termination. The mere possibility that there could have been job openings for plaintiff to pursue cannot rise to the level of reasonable, detrimental reliance contemplated under Delaware case law. n1 Finally, given plaintiff's inconsistent postures vis-a-vis his willingness to relocate to maintain employment, the court finds the aura of injustice under the facts of record less than compelling.

> n1 See, e.g., *Keating*, 1993 WL 460527, at *5-6, where the promisor made multiple, specific representations regarding continued employment and the promisor purchased a car in reliance on the promise of future employment.

[*10]

## III. DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

### A. Standard of Review

The standard of review for this motion has been adequately addressed above, in connection with plaintiff's promissory estoppel claim.

### B. Discussion

In Delaware, there is a "heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite." *E. I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 440 (Del. 1996). Even with the at-will presumption, "every employment contract, including an at-will contract, contains an implied covenant of good faith and fair dealing" which may be applied in four

> narrowly defined categories, where: (1) the termination violated public policy; (2) the employer misrepresented an important fact and the employees relied "thereon either to accept a new position or remain in a present one"; (3) the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; or (4) the employer falsified or manipulated a record to create [*11] fictitious grounds to terminate the employee.

*Layfield v. Beebe Med. Ctr., Inc.*, 1997 Del. Super. LEXIS 472, C.A. No. 95 C-12-007, 1997 WL 716900, at *3-4 (Del. Super. July 18, 1997) (quoting *Pressman*, 679 A.2d at 442-44). The Delaware Supreme Court has explained in this regard that "dislike, hatred or ill will, alone, cannot be the basis for a cause of action for termination of an at-will employment." *Pressman*, 679 A.2d at 444. Rather, in order to claim a breach of the covenant, the employer's conduct "must constitute 'an aspect of fraud, deceit or misrepresentation.'" *Layfield*, 1997 WL 716900, at *4 (quoting *Pressman*, 679 A.2d at 440).

In the case at bar, plaintiff grounded his breach of the covenant claim on the same evidence relied upon to support his promissory estoppel claim, that is, "that Mr. Millner misrepresented to [plaintiff] that he [(plaintiff)] would be invited to move to North Carolina." (D.I. 134 at 10) Plaintiff cites to *Brodsky v. Hercules, Inc.*, 966 F. Supp. 1337 (D. Del. 1997), for the proposition that the covenant of good faith and fair dealing applies "when 'the employer misrepresent[s] [*12] some important fact, most often the employer's present intentions, and the employee relies thereon either to accept a new position or remain in a present one.'" *Id. at 1351* (quoting *Pressman*, 679 A.2d at 442). The court in Brodsky goes on to explain, however, that this exception is applicable only when "the employer . . . make[s] a misrepresentation which is targeted to ensnare a specific employee and alter in some way his status as an at-will employee." Id.

As explained in the preceding discussion, there is no evidence of record that Mr. Millner intentionally used deceptive words to specifically ensnare plaintiff to continue his employment to his detriment. Indeed, there is no direct evidence linking Mr. Millner's conversation with Mr. Haskin's decision at all. Even if the court accepts plaintiff's recollection and characterization of Mr. Millner's alleged conversation, there is no evidence of record to support the requirement that, as a result of the conversation, plaintiff's status as an at-will employee was altered. See *966 F. Supp. at 1351-52* and the cases discussed therein. In sum, the evidence of record, viewed in the light most favorable [*13] to plaintiff, does not constitute the type of fraud and deceit "that falls within the protective cocoon" of the covenant of good faith and fair dealing. *Id. at 1352*.

## IV. DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT

### A. Standard of Review