*Federal Rule of Civil Procedure 59* provides that a motion to alter or amend a judgment may be granted "(1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in courts of the United States. . . ." *Fed. R. Civ. P. 59(a)(1)*. Traditionally, there have been three bases for granting a motion under *Fed. R. Civ. P. 59*: "(1) an intervening change in controlling law; (2) new evidence; or (3) a need to correct a clear error of law or prevent manifest injustice." *Mobil Oil Corp. v. Amoco Chems. Corp., 915 F. Supp. 1333, 1377 (D. Del. 1994)*. Defendant's motion apparently is grounded on the third base, as it claims that the damages awarded by the jury are excessive as a matter of law and not supported by the evidence adduced at trial. (D.I. 108)

### B. Discussion

As explained by defendant, while it does not fault the methodology [*14] adopted by plaintiff's damages expert and by the jury, it contends that the jury's award was based on clearly erroneous assumptions about plaintiff's ability to mitigate damages. Specifically, defendant argues that the jury erred when it apparently accepted the evidence proffered by plaintiff (by way of an economist) that "plaintiff's 1997 income is the most that plaintiff will ever earn in mitigation for each year until age 65." (D.I. 126 at 4)

In support of its argument, defendant refers to the record evidence that plaintiff was offered two jobs in March 1995, months before his termination. Both jobs possibly involved relocation (to Utah or California); one of the jobs (with Browning) involved a salary of $ 100,000 plus a 10-20% bonus range. (D.I. 123 at 81-90) In May 1996, plaintiff began consulting for SIG Arms Company. He accepted employment with SIG Arms Company in July 1997, earning an annual salary of $ 78,000, plus a bonus and participation in a pension plan. His 1997 tax return shows income of $ 57,000. In February 1998, some seven (7) months after accepting the SIG Arms position, plaintiff voluntarily left that job and became a self-employed consultant, working out of a [*15] home office. At the time of trial (August 1998), plaintiff had earned up to $ 53,000. (D.I. 123 at 67-73)

According to defendant, plaintiff's decision to quit his job with SIG Arms "has resulted in an annual loss of earnings in the amount of $ 21,000 [$ 78,000 - $ 57,000]. The jury verdict makes Remington responsible for this $ 21,000 amount for each year until the plaintiff reaches age 65." (D.I. 126 at 3-4) The jury also awarded plaintiff lost pension benefits, reflecting plaintiff's posture at trial that he would never again be an employee and participate in a pension plan. Defendant contends that this result is clearly erroneous and unjust for several reasons. First, defendant argues that plaintiff failed to mitigate his dam-

ages by leaving the SIG Arms position and starting his own consulting company, which self-employment has been forecast to generate a lower income with no benefits.

It is undisputed that a plaintiff has a duty to mitigate damages, which duty includes accepting and retaining "substantially equivalent" employment. *Ford Motor Co. v. EEOC, 458 U.S. 219, 231, 73 L. Ed. 2d 721, 102 S. Ct. 3057 (1982)*. Defendant concedes that generally "a plaintiff [*16] is not legally obligated to relocate in order to mitigate damages." (D.I. 126 at 11) Defendant argues that in this case, where plaintiff expressed his willingness at trial to relocate to North Carolina with Remington and to Utah with Browning, he should be required to relocate as a part of mitigation. See generally *Ford v. Nicks, 866 F.2d 865, 874 (6th Cir. 1989)*.

Plaintiff argues in response that it was defendant's burden to prove in the first instance that the SIG Arms position constituted equivalent employment that would afford "virtually identical promotional opportunities, compensation, job responsibilities, and status" as had the Remington position. *Booker v. Taylor Milk Co., 64 F.3d 860, 866 (3d Cir. 1995)*. Plaintiff contends that defendant "made no attempt to prove such equivalency, as it did not exist." (D.I. 136 at 8) Plaintiff further argues that there was sufficient evidence presented for the jury to conclude that plaintiff was reasonably diligent in mitigating damages. Indeed, defendant's expert had no quarrel with plaintiff's decision to start his own business, just with plaintiff's expert's valuation of the business and its prospects. [*17] (D.I. 114 at 190-92)

The court finds that there was sufficient evidence of record, including evidence of plaintiff's job searches and efforts to build and grow a consulting business (D.I. 123 at 64-73), for a reasonable jury to conclude that plaintiff mitigated his damages. The fact that plaintiff's testimony at trial was not always consistent and conflicted with defendant's evidence is not dispositive. Having heard and seen all the evidence, nevertheless the jury found for plaintiff and the court is reluctant to disturb that finding.

Defendant also argues that the jury's damages award should be overturned as unduly speculative. More specifically, defendant asserts that plaintiff's expert's

front pay damages figure - and the jury's award - is based on one central assumption: for the next eleven years, [plaintiff] will have no better employment opportunity than to work as a consultant earning $ 57,000 per year, or the equivalent based on an annual 4% growth rate.

(D.I. 126 at 15; D.I. 115 at 15-17, 20-21)

It is true that plaintiff's expert used as his base figure plaintiff's 1997 tax return showing income to plaintiff of $ 57,000. As explained by the expert, **[*18]**

> there [are] obviously two possibilities for the future. His business can fail. Only about 38% of new small businesses are in existence five years after they start up. His business can prosper. He can do far better than that. It is very difficult to know.

(D.I. 115 at 20) Defendant points out that plaintiff's income at the time of trial (August 1998) was already $ 52,000 or $ 53,000 and that plaintiff fully expected to build his business "into something." (D.I. 123 at 71, 73)

Remittitur is appropriate when the jury verdict is "'clearly unsupported' by the evidence and exceeds the amount needed to make the plaintiff whole, i.e., to remedy the effect of the employer's discrimination." *Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1100 (3d Cir. 1995) (quoting Spence v. Board of Educ., 806 F.2d 1198, 1201 (3d Cir. 1986)).* The jury apparently accepted the evidence of record proffered by plaintiff and his expert; therefore, the verdict was supported by evidence. Given the inherent difficulties associated with forecasting future earnings, the court will leave the risk of uncertainty to be borne by defendant and declines to grant a **[*19]** remittitur.

In sum, although the court may not agree with the jury's damages award and recognizes the inconsistencies in plaintiff's presentation to the jury, the record evidences neither a clear error of law nor a manifest injustice. Therefore, the court declines to alter or amend the judgment by reducing the award of damages. n2

> n2 Defendant has requested leave to pursue supplemental discovery, posttrial, on the ground that plaintiff's current employment status (apparently an employee of O.F. Mossberg & Sons) may well reflect on his pretrial efforts to mitigate. Although the prospect of plaintiff's abusing the system raises concerns, those concerns (based on conjecture at this point) are overshadowed by the need for closure, especially where, as here, plaintiff was subjected to discovery just prior to trial.

## V. PLAINTIFF'S MOTION FOR AN AWARD OF SPECIFIC MONEY DAMAGES

Plaintiff moves the court to double the amount of damages awarded for lost earnings and pension benefits between the date of discharge **[*20]** and the date of trial, due to the jury's finding of willfulness. See *Starceski, 54 F.3d at 1099; McDowell v. Avtex Fibers, Inc., 740 F.2d 214, 218 (3d Cir. 1984),* vacated and remanded on other grounds, *105 S. Ct. 1159 (1985).* Defendant objects to the doubling of the lost pension benefits award, based on its reading of *Blum v. Witco Chem. Corp., 829 F.2d 367 (3d Cir. 1987).* The court agrees with defendant's reading of the law. Clearly, "under the ADEA liquidated damages are measured by doubling the **back pay** award." *McDowell, 740 F.2d at 218* (emphasis added). Just as clearly the Third Circuit in Blum held that "lost pension benefits are recoverable as **front pay**. . . ." *829 F.2d at 373.* The concern expressed in McDowell, that "deducting pension benefits received by McDowell **from his back pay** award could potentially reduce the amount in liquidated damages to which he otherwise could be entitled [under the ADEA] . . .," is absolutely consistent with the holding that pension benefits are distinguishable from back pay. Plaintiff's request for doubling the lost pension **[*21]** benefits award, therefore, is denied as legally insupportable.

Based on the court's posttrial rulings, plaintiff is entitled to pre-judgment and post-judgment interest. n3

> n3 Although defendant's argument for commencing accrual of postjudgment interest from the date of this opinion has some appeal, there is no precedent for doing so.

## VI. PLAINTIFF'S MOTIONS FOR ATTORNEY FEES AND COSTS

As a prevailing party at trial, plaintiff is entitled to the recovery of reasonable attorney fees and costs under the Age Discrimination in Employment Act ("ADEA"). See *Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983).* Generally, the award of fees is based on the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. See *Pennsylvania Envtl. Defense Found, v. Canon-McMillan Sch. Dist., 152 F.3d 228, 231 (3d Cir. 1998)* (hereinafter "P.E.D.F."). The Third Circuit in P.E.D.F. instructs the trial court to use **[*22]** as a "starting point" the attorneys' usual billing rate, and then consider "prevailing market rates" in the relevant commu-

nity. Id. The trial court is directed as well to review the time charged and determine whether the hours set out were reasonably expended for the particular purposes described. See id. Hours that are "excessive, redundant, or otherwise unnecessary" may be deemed noncompensable. *Id. at 232.*

Plaintiff has withdrawn his request for $ 23,754.63 in compensation for "fees to others" ($ 7,916.99), "State law claims" ($ 4,710 and $ 1,880), "written discovery time" ($ 5,671.25), and "secretarial overtime" ($ 3,576.39). (D.I. 132 at 3-4) Plaintiff contends that the $ 348,324.65 in fees not contested by defendant are not subject to reduction. See *Rode v. Dellarciprete, 892 F.2d 1177, 1188 (3d Cir. 1990).* The court shall address the remaining contested fees.

### A. Attorney Time at Trial

Defendant has challenged the attorney time at trial of Mr. Edelson. Plaintiff responds that his staffing for trial was the same as or less than defendant's staffing for trial, making the staffing per se reasonable vis-a-vis defendant. The court [*23] agrees. See *Finch v. Hercules, Inc., 941 F. Supp. 1395, 1425-26 (D. Del. 1996).*

### B. Duplication of Services

Defendant argues that there should be a $ 7,306.25 reduction for time spent at depositions by multiple counsel representing plaintiff. Plaintiff argues that the counsel involved routinely work together, with one posing questions and one handling paper. The court is not inclined to reduce the award under these circumstances.

### C. Settlement Efforts

Defendant contends that plaintiff's conduct during the mediation efforts "created an insurmountable barrier to meaningful settlement discussions," causing defendant to incur substantial legal fees during the process. (D.I. 130 at 8) The court does not doubt (given the tenor of the proceedings at bar) that the parties clung with tenacity to their respective positions pretrial. The court is not inclined to reduce plaintiff's award based on conduct to which the court was not privy and which probably reflects the conduct seen with most unsuccessful mediations.

### D. Failed Summary Judgment

Defendant argues that plaintiff's motion for summary judgment on his ADEA claim was "extraordinary, was unprecedented [*24] to [defendant's] knowledge, was hopelessly flawed because of readily apparent factual disputes, and was summarily dismissed by the Court." (D.I. 130 at 9) Plaintiff counters that the research underlying his motion "was an integral part of proving" his claims. (D.I. 132 at 8)

Generally, the court cannot preclude parties from filing motions. Motions for summary judgment are not routinely granted in this district, particularly motions filed by plaintiffs. Moreover, if any one aspect of case management is out of control, it is the tendency of parties to file motions on issues that admittedly involve genuine issues of material fact. The purpose of such filings is not necessarily to gain relief, but to "educate" the court or to obtain the court's views pretrial of the evidence and the legal issues in dispute.

In the court's view, it was not reasonable to believe that plaintiff's motion would be granted, given Third Circuit precedent and this court's track record The court, therefore, declines to reward plaintiff for this wasted exercise and will reduce the award by $ 35,253.75. (D.I. 130 at 9)

### E. General Research

Defendant argues that it should not have to compensate plaintiff [*25] for research conducted on issues that were never presented to the court. (D.I. 130 at 10) The court agrees n4 and shall reduce the award by an additional $ 5,000 to account for the fact that not only was the research not related to the ultimate ADEA claim presented, but excessive in light of the well-defined concepts at issue (disparate treatment analysis and mixed motives case law).

n4 Plaintiff did not directly respond to this argument. (D.I. 132)

### F. Number of Attorneys

Defendant submits that the number of attorneys involved in prosecuting plaintiff's case (approximately ten) unavoidably led to duplication of time. In the absence of clearly apparent abuses in this regard, the court is not inclined to assume such a fact and will not reduce the award on that basis.

### G. Travel Expenses

Defendant argues that it should not be responsible for costs incurred by plaintiff due to his choice of out-of-State counsel, citing *Coalition to Save Our Children v. State Board of Educ., 901 F. Supp. 824, 834 (D. Del. 1995).* [*26] Although the original submission by plaintiff did not clearly itemize or explain the travel expenses claimed (see D.I. 121, Ex. B at All, A21, A30 A49-50, A60, and A82), the travel expense summary subsequently submitted (D.I. 133 at C6-C8), for a total claim of $ 5,742.35, is subject to review. Consistent with the court's prior position, the court will disallow $ 2,416.89 for the hotel expenses incurred by plaintiff's out-of-State counsel during trial. n5

n5 The court is not sure whether these expenses include meals, etc., or just the hotel room charges.

## H. Associate Fees

Defendant argues that the associate billing rates attested to by plaintiff's counsel are excessive. In the absence of contrary evidence, the court is not inclined to reject out of hand the averments of record.

### I. Bad Faith

Plaintiff urges the court to make a "bad faith award" based on defendant's conduct as a party. (D.I. 120 at 10-11) The conduct referenced by plaintiff had its genesis in administrative proceedings and, ultimately, **[*27]** played an insubstantial role in the proceedings at bar. The court declines to make a "bad faith award" under these circumstances.

### J. Delay Enhancement

Plaintiff seeks an award of a "delay enhancement," "to compensate counsel for the delay in payment for the time gap between the time services were rendered and the fee award . . . ." *Finch, 941 F. Supp. at 1427.* As explained by the court in Finch,

> such an enhancement serves to place counsel, who have accepted [a plaintiff's] case on a contingency basis, on par with attorneys who are paid before and during the course of representation.

Id. Consistent with precedent, the court finds such an enhancement appropriate and further finds that plaintiff has provided support for the requested multiplier.

## K. Supplemental Request

Plaintiff's supplemental request for fees and costs associated with posttrial proceedings, in the amount of some $ 60,000, n6 is excessive. First, plaintiff did not prevail on his State law claims, which the court concluded were not compensable under the ADEA in any event. Second, plaintiff's demand for a doubling of the lost pension benefits awarded is contrary **[*28]** to Third Circuit law. Finally, a not insubstantial portion of plaintiff's original demand for fees and costs was found to be without merit. Therefore, only $ 45,000.00 shall be awarded to Collier, Shannon, Rill & Scott, PLLC as compensation for post-trial proceedings. n7

n6 This amount is claimed by Collier, Shannon, Rill & Scott, PLLC.

n7 Admittedly, it is difficult to divine from the billing records how much time was dedicated to the issues identified above.

## VII. CONCLUSION

For the reasons stated: (1) defendant's motion for judgment as a matter of law on plaintiff's promissory estoppel claim (D.I. 110) is granted; (2) defendant's motion for judgment as a matter of law on plaintiff's covenant of good faith and fair dealing claim (D.I. 109) is granted; (3) defendant's motion to alter or amend the judgment (D.I. 108) is denied; (4) plaintiff's motions relating to lost pension damages, pre- and postjudgment interest, and for specific monetary damages (D.I. 112, 124) are granted in part and denied **[*29]** in part; and (5) plaintiff's motions for attorneys' fees and costs (D.I. 111, 119) are granted in part and denied in part. An order shall issue.

1 of 3 DOCUMENTS

**JUDY HERKALO v. NATIONAL LIBERTY CORP.**

**94-CV-7660**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1997 U.S. Dist. LEXIS 12130*

**August 7, 1997, Decided**

**August 7, 1997, Filed, Entered**

**DISPOSITION:** [*1] Plaintiff's petition for attorney fees and costs GRANTED in the amount of $ 368,213.

**COUNSEL:** For JUDY HERKALO, PLAINTIFF: H. THOMAS HUNT, III, ANTHONY L. MARCHETTI, JR., ESQ., HUNT & SCARAMELLA, P.C., CHERRY HILL, NJ USA.

For JUDY HERKALO, PLAINTIFF: KATHLEEN A. FREDERICK, PLYMOUTH MEETING, PA USA.

For NATIONAL LIBERTY CORP., MIKE BOYLE, DEFENDANTS: MICHAEL D. HOMANS, THOMAS J. BARTON, AMY E. FELDMAN, DRINKER, BIDDLE AND REATH, PHILA, PA USA.

**JUDGES:** RAYMOND J. BRODERICK, J.

**OPINIONBY:** RAYMOND J. BRODERICK

**OPINION:**

**MEMORANDUM**

Broderick, J.

August 7, 1997

Presently before the court is Plaintiff's petition for attorney fees and costs in the amount of $ 458,576 following her jury verdict award of $ 300,000 in this sex discrimination case. Defendant National Liberty has filed its timely objections to the plaintiff's petition for attorney fees and costs. For the reasons stated hereinafter, the court will award the plaintiff $ 368,213 in attorney fees and costs.

Procedural History of the Case

The plaintiff commenced this action on December 21, 1994 against her former employer, defendant National Liberty, and her former supervisor, defendant Michael Boyle. The plaintiff alleged [*2] four counts in her complaint: count I -- sex discrimination in violation of Title VII, *42 U.S.C. § 2000e* et seq.; count II -- sex discrimination in violation of the Pennsylvania Human Relations Act (PHRA), *43 Pa.C.S.A. § 951* et seq.; count III -- violations of the Federal Equal Pay Act, *29 U.S.C. § 209*(d)(1); and count IV -- violations of Pennsylvania's Equal Pay Law, *43 Pa.C.S.A. § 336.1* et seq.

On March 8, 1995, the court granted the defendants' 12(b)(6) motion to dismiss count IV of the complaint, plaintiff's claim under Pennsylvania's Equal Pay Law. On June 14, 1996, the court granted the defendants' motion for summary judgment as to count III of the complaint, plaintiff's claim under the Federal Equal Pay Act.

Accordingly, only count I (Title VII) and count II (PHRA) were at issue during the trial in this case, which commenced on January 21, 1997. The plaintiff alleged three claims for relief: (1) that the defendants subjected her to a hostile work environment because she is a woman; (2) that the defendants retaliated against her for having filed a sex discrimination complaint against Michael Boyle; and (3) that the defendants constructively discharged her. [*3]

Trial was bifurcated. The liability portion of the trial commenced on January 21, 1997. At the close of the plaintiff's case, National Liberty and Mr. Boyle moved for judgment as a matter of law pursuant to *Rule 50 of the Federal Rules of Civil Procedure.* The court denied each defendant's motion without prejudice to renewing their motion at the close of the evidence.

At the close of the evidence, the defendants renewed their Rule 50 motions for judgment as a matter of law.

1997 U.S. Dist. LEXIS 12130, *

The court denied defendant National Liberty's motion for judgment as a matter of law. The court granted defendant Boyle's motion for judgment as a matter of law as to the plaintiff's Title VII claim and denied his motion as to the plaintiff's PHRA claim, on the grounds that Title VII does not provide for individual employee liability, *Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061 (3d Cir. 1996)* (en banc), cert. denied, *138 L. Ed. 2d 1031, 117 S. Ct. 2532, 1997 WL 49784 (1997)*, but that the PHRA does provide for individual employee liability under its aiding and abetting provision found in § 955(e), *Dici v. Commonwealth of Pennsylvania, 91 F.3d 542 (3d Cir. 1996).*

The jury returned with its liability verdict on January 30, 1997, **[*4]** finding defendant National Liberty liable for (1) subjecting the plaintiff to a hostile work environment; (2) retaliating against the plaintiff for having filed a sex discrimination complaint against Mr. Boyle; and (3) constructively discharging the plaintiff. The jury, however, found Mr. Boyle not liable for aiding and abetting under the PHRA.

Following the damages portion of the trial, the court granted defendant National Liberty's Rule 50 motion as to plaintiff's claim for punitive damages. The court found that the plaintiff failed to present sufficient evidence from which a reasonable jury could conclude that National Liberty's conduct was "outrageous" or was done with "malice," as required in order to award punitive damages.

The jury returned on January 31, 1997 with its damages verdict against National Liberty in the amount of $ 300,000.

Plaintiff's Petition for Attorney Fees and Costs

In 1993, the plaintiff retained the services of Kathleen A. Frederick, Esq. from the law offices of Kathleen A. Frederick, Esq., located in Plymouth Meeting, Pennsylvania. Anticipating the filing of a complaint in federal court, the plaintiff in 1994 also retained the services of H. Thomas **[*5]** Hunt, III., Esq. from the law offices of Hunt & Scaramella, P.C., located in Cherry Hill, New Jersey. Throughout the course of this litigation, Mr. Hunt's office and Ms. Frederick's office worked on the plaintiff's case. Indeed, the plaintiff has submitted timesheets from the offices of both Mr. Hunt and Ms. Frederick in support of her fee petition.

As heretofore pointed out, the jury awarded the plaintiff $ 300,000 in total damages. The plaintiff seeks $ 458,576 in attorney fees and costs. Defendant National Liberty objects to the plaintiff's fee petition on the ground that the total amount of fees and costs the plaintiff seeks is excessive and unreasonable. In view of the fact that the defendant has objected to the plaintiff's fee petition, "it remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart, 461 U.S. 424, 432, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).*

The plaintiff has relied on the "lodestar formula" in determining her entitlement to a reasonable amount of attorney fees and costs in this civil right litigation. Under the lodestar formula, the court multiplies the number of attorney hours reasonably expended on the litigation **[*6]** by a reasonable hourly rate for the attorney. "The result of this computation is called the lodestar" and "is strongly presumed to yield a reasonable fee." *Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).*

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." *Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).* In order to meet this burden, the party "must 'submit evidence supporting the hours worked and rates claimed.'" Id. "The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give the fee applicants notice, the reasonableness of the requested fee." Id. "The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'" Id. However, "once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." Id.

The Reasonable Hourly Rates

"The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community." **[*7]** *Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).* As the United States Supreme Court stated in *Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 1547 n.11, 79 L. Ed. 2d 891 (1984):* "The burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."

Mr. Hunt served as trial counsel in this case and has submitted the majority of the hours billed in the plaintiff's fee petition. He seeks an hourly rate of $ 195. Mr. Hunt was assisted in this litigation by his partner Carlo Scaramella, Esq. ($ 185/hour) and an associate, Anthony Marchetti, Jr., Esq. ($ 120/hour). Mr. Hunt's support-staff included two paralegals, Jennifer Dyer ($ 65/hour) and Virginia Stanley ($ 50/hour), as well as a legal assistant, Paula Levy ($ 50/hour).

Mr. Hunt has submitted the affidavits of Jerald R. Cureton, Esq. and Sidney L. Gold, Esq. stating that Mr. Hunt's hourly billing rate of $ 195 is reasonable com-

pared to attorneys at his level and [*8] experience in the area. The defendant National Liberty has presented no evidence in the form of an affidavit or otherwise contesting the reasonableness of the hourly rates of Mr. Hunt ($ 195), Mr. Scaramella ($ 185), Mr. Marchetti ($ 120), Ms. Dyer ($ 65), Ms. Stanley ($ 50), or Ms. Levy ($ 50).

Ms. Frederick also represented the plaintiff throughout the course of this litigation. She seeks an hourly rate of $ 120 for her services in 1993, $ 130 for her services in 1994, $ 15.0 for her services in 1995, and $ 175 for her services in 1996. She was assisted by an associate in her office, Gerrie Greene ($ 85/hour), and two law clerks, David Markovitz ($ 65/hour) and Christopher Nuneviller ($ 60/hour).

Ms. Frederick has submitted the affidavits of Alice W. Ballard, Esq., Nancy O'Mara Ezold, Esq., and William H. Ewing, Esq. stating that Ms. Frederick's hourly rate of $ 175 is reasonable in view of Ms. Frederick's skill and experience. Moreover, the affidavits of Nancy O'Mara Ezold, Esq. and William H. Ewing, Esq. state that the hourly rates of Mr. Greene ($ 85), Mr. Markowitz ($ 65), and Mr. Nuneviller ($ 60) are reasonable and within the prevailing market rates in the community. National [*9] Liberty has presented no evidence in the form of an affidavit or otherwise contesting the reason-

ableness of the hourly rates requested for Ms. Frederick, her associate, or her law clerks.

By submitting the aforementioned affidavits in support of the hourly billing rates requested in her fee petition, the plaintiff has meet her burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 1547 n.11, 79 L. Ed. 2d 891 (1983).*

The Third Circuit has pointed out that where "the plaintiff has met his prima facie burden under the 'community market rate' lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." *Washington, 89 F.3d at 1036.* As heretofore pointed out, the defendant presented no evidence in the form of affidavits or otherwise contesting the reasonableness of the hourly rates submitted in the plaintiff's fee petition.

Accordingly, the court will adopt the following hourly rates [*10] submitted by the plaintiff in calculating her fee petition under the lodestar formula:

| | |
|---|---|
| H. Thomas Hunt, Esq: | $ 195 |
| Carlo Scaramella, Esq: | $ 185 |
| Anthony Marchetti, Esq: | $ 120 |
| Jennifer Dyer: | $ 65 |
| Virginia Stanley: | $ 50 |
| Paula Levy: | $ 50 |
| | |
| Kathleen Frederick, Esq: | $ 175 |
| Gerrie Greene, Esq: | $ 85 |
| Christopher Nuneviller: | $ 65 |
| David Markowitz: | $ 60 |

### The Reasonable Number of Hours Worked

In connection with her fee petition, the plaintiff submitted computer generated time-sheets from the law offices of Hunt & Scaramella, P.C. and the law offices of Kathleen A. Frederick, Esq. The time sheets provide a brief description of the tasks performed by each attorney and the number of hours the attorney billed for the tasks.

National Liberty objects to the number of attorney work-hours submitted in the fee petition on the ground that the plaintiff "failed to expunge excessive, redundant and otherwise unnecessary hours from her fee petition request." In particular, National Liberty contends that the

plaintiff's decision to retain two separate law firms has resulted in the "double billing" of excessive, redundant, duplicative, and unnecessary hours. Moreover, [*11] National Liberty contends that the number of attorney work-hours should be reduced to reflect the number of hours billed for time spent working on those claims for which the plaintiff failed to achieve a successful result.

The United States Supreme Court has made clear that in determining the number of hours expended on the litigation under the lodestar formula, "the district court should also exclude from this initial fee calculation hours that are were not 'reasonably expended,'" such as "hours that are excessive, redundant, or otherwise unnecessary."

1997 U.S. Dist. LEXIS 12130, *

*Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).* Moreover, it is also clear that the district court "can reduce the hours claimed by the number of hours 'spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed.'" *Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).*

The court does not hesitate to point out that it would be unreasonable to award the plaintiff the full amount of attorney fees and costs submitted for the services of two separate law offices in this litigation wherein it is determined [*12] that such fees are duplicative and unreasonable. In particular, it would be unreasonable for the court to award attorney fees for the duplicative services of Mr. Hunt and Ms. Frederick, whose hourly billing rates are $ 195 and $ 175 respectively.

As the attorney time-sheets reflect, Mr. Hunt and Ms. Frederick jointly participated in virtually every aspect of this case. They jointly attended all depositions, conferences, and trial days. Moreover, Mr. Hunt and Ms. Frederick billed their time for working on the same legal issues, such as researching and drafting a brief in opposition to the defendants' motion for summary judgment. Furthermore, they billed for their telephone conversations and conferences with each other wherein they discussed scheduling matters among themselves, shared their case strategies, updated each other as to status of the case, and reviewed each other's written work-product. The court finds that it would be unreasonable to compensate the plaintiff for the duplicative time and efforts billed by two experienced attorneys, where one attorney's time and efforts would have sufficed.

The court has carefully reviewed the hourly time-sheets of Mr. Hunt and Ms. Frederick [*13] and, as hereinafter set forth, the court will reduce the submitted number of attorney work-hours in those instances where it appears that such hours were not reasonably expended in that they were excessive, redundant, duplicative, or otherwise unnecessary. *Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).*

Mr. Hunt's Hours

After reviewing Mr. Hunt's time-sheets, the court will reduce 52.6 hours billed for telephone conversations and conferences with Ms. Frederick and for reviewing Ms. Frederick's written work-product wherein the court has determined that such hours were not reasonable expended in that they were excessive, redundant, duplicative, or otherwise unnecessary.

According to Mr. Hunt's own description in his time-sheets, his 52.6 hours of telephone conversations and conferences with Ms. Frederick were in connection with discussing scheduling matters, sharing case strategies, updating each other as to status of the case, and reviewing Ms. Frederick's written work- product. For example, Mr. Hunt's time-sheets reflect such entries as: "1/9/95 Telephone Attorney K. Frederick re: case status - .2 [hours]"; "3/28/95 Telephone [*14] Attorney K. Frederick re: scheduling issues - .2 [hours]"; and "2/22/95 Document Examine/Review Frederick memorandum re: motion to dismiss; correspondence to Frederick re: memo - .3 [hours]."

The court wishes to make clear that it will not reduce hours submitted for Mr. Hunt and Ms. Frederick's joint-conferences with their client. The 52.6 hours which the court will reduce, therefore, represent those hours of telephone conversations and conferences between Mr. Hunt and Ms. Frederick, in which Mr. Hunt generally discussed scheduling matters, updated Ms. Frederick as to the status of the case, and reviewed Ms. Frederick's work-product.

The monetary value of the 52.6 hours billed at Mr. Hunt's hourly rate of $ 195 is $ 10,257. Accordingly, the court will subtract $ 10,257 from the total amount of fees the plaintiff seeks in her fee petition.

The court has further calculated that Mr. Hunt submitted 67.2 hours in connection with his own work on a brief in opposition to the defendants' motion for summary judgment, which includes many hours researching and drafting. The court will reduce Mr. Hunt's hours in connection with his summary judgment work by 50 hours on the ground that these [*15] hours are excessive, redundant, duplicative, or otherwise unnecessary, particularly in view of the fact that Mr. Hunt's associate submitted 37.2 hours for his summary judgment research and drafting time, Ms. Frederick submitted 104.8 hours for her summary judgment research and drafting time, and Ms. Frederick's associate submitted 19.8 hours for her summary judgment research time.

Moreover, the plaintiff did not achieve a completely successful result in defending against the defendants' motion for summary judgment. As heretofore pointed out, the court on June 14, 1996 granted the defendants' motion for summary judgment as to count III of the complaint, which alleged violations of the Federal Equal Pay Act.

The monetary value of 50 hours billed at Mr. Hunt's hourly rate of $ 195 is $ 9,750. Accordingly, the court will subtract $ 9,750 from the total amount of fees the plaintiff is seeking in her fee petition.

The court has further calculated that Mr. Hunt submitted 3.3 hours for his time researching and drafting a brief objecting to the court's ruling to bifurcate the trial.

As heretofore pointed out, Mr. Hunt's efforts did not persuade the court to change its ruling on the bifurcation [*16] issue. The court will reduce 3.3 hours from the plaintiff's fee petition on the ground that the plaintiff was not successful in convincing the court to reverse its ruling to bifurcate the trial. The monetary value of 3.3 hours at an hourly rate of $ 195 is $ 644. Accordingly, the court will subtract $ 644 from the total amount of fees the plaintiff seeks in her fee petition.

The time-sheets further reflect that Mr. Hunt's partner, Mr. Scaramella, submitted 5 hours for his attendance at the first day of trial, which consisted of the jury voir dire. Mr. Scaramella's time will be reduced as excessive, duplicative, and unnecessary. Mr. Hunt carefully and competently conducted the voir dire in this trial and has failed to explain why Mr. Scaramella's presence at the jury voir dire was necessary or reasonable.

The monetary value of 5 hours billed at Mr. Scaramella's hourly rate of $ 185 is $ 925. Accordingly, the court will subtract $ 925 from the total amount of fees and costs which the plaintiff seeks in her fee petition.

The court has calculated that Mr. Hunt submitted 73 hours for witness preparation time during the course of the trial. Likewise, Ms. Frederick submitted 43.2 hours [*17] for witness preparation time. Many of the hours Mr. Hunt and Ms. Frederick billed for witness preparation are duplicative. For example, on January 14, 1997 both Mr. Hunt and Ms. Frederick traveled to Douglasville, Pennsylvania for witness preparation. Mr. Hunt's time-sheet reflects: "1/14/97 Conference with witness travel to Covatta's to prepare L. Covatta; prepare Marge Tracey - 6.0 [hours]." Ms. Frederick's time-sheet of the same date reflects: "1/14/97 KAF Travel to and from Douglasville, PA, for trial preparation session with Lori Covatta and T. Hunt 4.1 [hours]."

The court will reduce by one-half the number of hours Mr. Hunt submitted for witness preparation time on the ground that many of his witness preparation hours are duplicative of Ms. Frederick's witness preparation hours. Mr. Hunt submitted 73 hours for witness preparation time and the court will reduce this amount by 36 hours.

The monetary value of 36 hours billed at Mr. Hunt's hourly rate of $ 195 is $ 7,020. Accordingly, the court will subtract $ 7,020 from the total amount of fees and costs the plaintiff seeks in her fee petition.

The court has further calculated that Mr. Hunt submitted 56.1 hours in connection [*18] with the preparation of the fee petition, and supplements thereto. The Plaintiff's fee petition and supplements includes Mr. Hunt's time-sheets, several affidavits, as well as a memorandum of law in support of the fee petition and a reply memorandum. The Third Circuit has pointed out that "fee petition litigation should be treated as a 'separate entity subject to lodestar and Hensley reduction analysis.'" *Rode v. Dellarciprete, 892 F.2d 1177, 1192 (3d Cir. 1990).*

It appears from the court's review of Mr. Hunt's time-sheets that 56.1 hours is an excessive number of hours for the preparation of the fee petition. Generally, a fee petition requires several affidavits, computer-generated time-sheets, and a legal memorandum. The affidavits are prepared by other attorneys for the purpose of supporting the reasonableness of the requested hourly rates of the plaintiff's attorney. Moreover, the computer time-sheets are generally prepared and generated by a legal assistant and not by a partner billing at an hourly rate of $ 195.

Therefore, the court will reduce 28 hours of Mr. Hunt's time billed for preparing the fee petition on the ground that these hours are not reasonably expended in [*19] that they are excessive, redundant, duplicative, or otherwise unnecessary. These hours largely reflect administrative work which could have been performed by an administrative assistant in Mr. Hunt's office.

The monetary value of 28 hours billed at Mr. Hunt's hourly rate of $ 195 is $ 5,460. Accordingly, the court will subtract $ 5,460 from the total amount of fees the plaintiff is seeking in her fee petition.

The court has further calculated that Mr. Hunt submitted 4.8 hours for telephone calls made after the trial to this court's chambers checking the status of the fee petition, to his client informing her of the status of the fee petition, and to former jurors for purpose of interviewing them. The court finds that such time is unnecessary and will reduce these 4.8 hours from the fee petition.

The monetary value of 4.8 hours billed at Mr. Hunt's hourly rate of $ 195 is $ 936. Accordingly, the court will subtract $ 936 from the total amount of fees the plaintiff is seeking in her fee petition.

Ms. Frederick's Hours

After reviewing Ms. Frederick's time-sheets, the court will reduce 20.1 hours submitted for telephone conversations and conferences with Mr. Hunt in 1995, as well [*20] as 43.1 hours submitted for telephone conversations and conferences with Mr. Hunt in 1996, wherein the court has determined that such hours were not reasonably expended in that they were excessive, redundant, duplicative, or otherwise unnecessary.

The monetary value of the 20.1 hours for the 1995 telephone conversations and conferences billed at Ms. Frederick's 1995 hourly rate of $ 150 is $ 3,015. Accord-

ingly, the court will subtract $ 3,015 from the total amount of fees the plaintiff seeks in her fee petition.

The monetary value of the 43.1 hours for the 1996 telephone conversations and conferences billed at Ms. Frederick's 1996 hourly rate of $ 175 is $ 7,543. Accordingly, the court will subtract $ 7,543 from the total amount of fees and costs the plaintiff seeks in her fee petition.

The court has calculated that Ms. Frederick submitted 104.8 hours for her time researching and drafting a brief in opposition to the defendants' motion for summary judgment. Moreover, the court has calculated that Ms. Frederick's associate submitted 19.8 hours for her time researching the legal issues related to the plaintiff's brief in opposition to the defendants' summary judgment motion. In addition, [*21] Ms. Frederick submitted costs in the amount of $ 160 for the "contract work" of Judith B. Wait, Esq., who researched legal issues in connection with the plaintiff's brief in opposition to the defendants' motion for summary judgment.

The court will reduce Ms. Frederick's summary judgment time by 80 hours on the ground that these hours are excessive, redundant, duplicative, or otherwise unnecessary, particularly in view of the fact that Ms. Frederick's associate submitted 19.8 for her summary judgment research, Mr. Hunt submitted 67.2 hours for his summary judgment research and drafting work, and Mr. Hunt's associate submitted 37.1 hours for his summary judgment research and drafting work.

Moreover, the plaintiff did not achieve a completely successful result in defending against the defendants' motion for summary judgment. As heretofore pointed out, the court on June 14, 1996 granted the defendants' motion for summary judgment as to count III of the complaint, which alleged violations of the Federal Equal Pay Act.

The monetary value of the 80 hours billed in 1996 for Ms. Frederick's summary judgment work at an hourly rate of $ 175 is $ 14,000. Accordingly, the court will subtract [*22] $ 14,000 from the total amount of fees the plaintiff seeks in her fee petition.

The court has determined to exclude from the fee petition the number of hours Ms. Frederick submitted for her appearances with Mr. Hunt at depositions, court settlement conferences, discovery hearings, and the trial, on the ground that this time constitutes unnecessary duplicative attorney billing hours. The Third Circuit has stated that "duplication in hours billed" by attorneys for their work and joint-attendance at depositions, conferences, and trial are subject to reduction in calculating attorney fees. *Daggett v. Kimmelman, 811 F.2d 793, 797 (3d Cir. 1987)*. See also *Hart v. Bourque, 798 F.2d 519, 523 (1st*

*Cir. 1986)* (recognizing that "the time for two or three lawyers in a courtroom or conference, when one would do, 'may obviously be discounted.'").

The court wishes to make clear that it will not subtract Mr. Hunt's time which he billed for his attendance at depositions, court settlement conferences, discovery hearings, and trial for the reasons that Mr. Hunt served as trial counsel in this case. He addressed the court on behalf of the plaintiff, delivered the opening statements, closing [*23] arguments, and conducted the direct and cross-examinations of all witnesses.

In her fee petition, the plaintiff did not submit hours for the duplicative attendance time of Ms. Frederick at the depositions of the following individuals: Tracey, Dawson, Boland/Petsko, Peters/Mazzuca, Gardner, Agnew, and Covatta. However, the plaintiff did submit hours for the duplicative attendance time of Ms. Frederick at the-deposition of Judy Herkalo, Michael Boyle, and Richard Smith. The court will, therefore, reduce the number of hours Ms. Frederick submitted for her attendance at the depositions of Judy Herkalo, Michael Boyle, and Mr. Smith on the ground that such time constitutes duplicative billing hours which are more reasonably billable to one attorney. As pointed out by Judge Weis in *Halderman v. Pennhurst State School & Hospital, 49 F.3d 939, 943 (3d Cir. 1995)*:

> In many case, the attendance of additional counsel representing the same interests as the lawyers actually conducting the deposition is wasteful and should not be included in a request for counsel fees from an adversary. The fact that a private client may accede to the practice and pay the additional fees does not necessarily [*24] make them reasonable nor necessary when they are to paid by the other party to the proceedings.

The court has calculated that Ms. Frederick submitted 21.5 hours for her attendance with Mr. Hunt at Judy Herkalo's deposition. The monetary value of 21.5 hours billed at Ms. Frederick's 1995 hourly rate of $ 150 is $ 3,225. Accordingly, the court will subtract $ 3,225 from the total amount of fees the plaintiff seeks in her fee petition.

The court has calculated that Ms. Frederick submitted 13.2 hours for her attendance with Mr. Hunt at the depositions of Michael Boyle and Richard Smith. The monetary value of 13.2 hours billed at Ms. Frederick's 1995 hourly rate of $ 150 is $ 1,980. Accordingly, the court will subtract $ 1,980 from the total amount of fees and costs the plaintiff seeks in her fee petition.

1997 U.S. Dist. LEXIS 12130, *

The court has further calculated that Ms. Frederick submitted 84.3 hours for her attendance at court settlement conferences, discovery hearings, and in particular at the trial. Mr. Hunt was also in attendance during the settlement conferences, discovery hearings, and as heretofore pointed out, served as the trial counsel.

The court will reduce from the fee petition the 84.3 hours [*25] submitted by Ms. Frederick for her attendance at court settlement conferences, discovery hearings, and the trial on the ground that these hours constitute duplicative attorney billing hours which are more reasonably billable to one attorney.

The monetary value of 84.3 hours billed at Ms. Frederick's 1996 hourly rate of $ 175 is $ 14,753. Accordingly, the court will subtract $ 14,753 from the total amount of fees the plaintiff seeks in her fee petition.

As heretofore pointed, the plaintiff failed to achieve a successful result as to her PHRA aiding and abetting claim against defendant Boyle and her claim for punitive damages. The court has calculated that Ms. Frederick submitted 6.9 hours for time researching issues related to plaintiff's PHRA aiding and abetting claim against Mr. Boyle and her claim for punitive damages. Furthermore, the court has determined that Ms. Frederick's associate, Ms. Greene, billed 44.2 hours for researching issues related to plaintiff's PHRA aiding and abetting claim against Mr. Boyle and her claim for punitive damages.

As heretofore pointed out, "the court can reduce the hours claimed by the number of hours 'spent litigating claims on which the party [*26] did not succeed and that were 'distinct in all respects from' claims on which the party did succeed.'" *Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).*

The court will reduce 6.9 hours submitted by Ms. Frederick for her PHRA and punitive damages research and drafting time. The monetary value of 6.9 hours billed at Ms. Frederick's 1996 hourly rate of $ 175 is $ 1,208. Accordingly, the court will subtract $ 1,208 from the total amount of fees the plaintiff seeks in her fee petition.

Likewise, the court will reduce 44.2 hours submitted by Ms. Greene for her PHRA and punitive damages research and drafting time. The monetary value of 44.2 hours billed at Ms. Greene's hourly rate of $ 85 is $ 3,757. Accordingly, the court will subtract $ 3,757 from

the total amount of fees the plaintiff seeks in her fee petition.

As heretofore pointed out, Ms. Frederick submitted 43.2 hours for her witness preparation time during the course of the trial, much of which was duplicated by Mr. Hunt's witness preparation time. As the court did with Mr. Hunt's witness preparation time, the court will reduce by one-half Ms. Frederick's witness preparation time on the ground that many of these hours [*27] are duplicative of Mr. Hunt's hours.

The monetary value of 21.5 hours billed at Ms. Frederick's hourly rate of $ 175 is $ 3,763. Accordingly, the court will subtract $ 3,763 from the total amount of fees the plaintiff seeks in her fee petition.

Costs

The plaintiff submitted costs in the amount of $ 9,017 from Mr. Hunt's office and costs in the amount of $ 4,846 from Ms. Frederick's office. The court will subtract $ 1,232 in costs from Mr. Hunt's office on the ground that these costs represent excessive, redundant, duplicative, or otherwise unnecessary costs for travel expenses to Ms. Frederick's office in Plymouth Meeting, Pennsylvania, as well as for meals for himself and Ms. Frederick during their meetings. Moreover, the court will subtract $ 895 in costs from Ms. Frederick's office on the ground that these costs represent excessive, redundant, duplicative, or otherwise unnecessary costs for travel expenses to Mr. Hunt's office in New Jersey, for meals for herself and Mr. Hunt during their meetings, as well as for travel expenses to and from depositions and court.

Conclusion

For the reasons heretofore stated, the court will reduce plaintiff's fee petition request for [*28] $ 458,576 by the amount of $ 90,363. Accordingly, the court will award the plaintiff $ 368,213 in fees and costs.

ORDER

AND NOW, this 7th day of August, 1997; for the reasons stated in this court's memorandum of August 7, 1997;

IT IS ORDERED: Plaintiff's petition for attorney fees and costs is GRANTED in the amount of $ 368,213.

RAYMOND J. BRODERICK, J.

1 of 4 DOCUMENTS

**JOHN J. McNABOE, Plaintiff/ Appellee, v. NVF COMPANY, BRENDA NESTOR CASTELLANO, and EVANS TEMPCON, Defendants/ Appellants.**

**C.A. No. 97-558-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 21287; 29 Employee Benefits Cas. (BNA) 1873; 8 Wage & Hour Cas. 2d (BNA) 441*

**October 31, 2002, Decided**

**DISPOSITION:** [*1] Plaintiff's motion for attorneys' fees and expenses was granted. Plaintiff entitled to attorneys' fees and expenses in the amount of $ 4,089.25. Defendants' motion for attorneys' fees and expenses was granted in part and denied in part. Defendants' motion for stay of order authorizing disbursement of bond proceeds was denied as moot.

**COUNSEL:** For John J McNaboe, PLAINTIFF: Thomas S Neuberger, Thomas S Neuberger, PA, Wilmington, DE USA.

For NVF Company, Evans Tempcon, Brenda Nestor Castellano, DEFENDANTS: Robert W Whetzel, Richards, Layton & Finger, Wilmington, DE USA.

For NVF Company, Evans Tempcon, DEFENDANTS: James E Liguori, Liguori, Morris & Redding, Dover, DE USA.

For NVF Company, Evans Tempcon, COUNTER-CLAIMANTS: James E Liguori, Liguori, Morris & Redding, Dover, DE USA.

For John J McNaboe, COUNTER-DEFENDANT: Thomas S Neuberger, Thomas S Neuberger, PA, Wilmington, DE USA.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

 **MEMORANDUM ORDER**

**I. INTRODUCTION**

On October 9, 1997, plaintiff John J. McNaboe brought this action against defendants NVF Company ("NVF"), Evans Tempcon ("Evans"), and Brenda Nestor Castellano [*2] ("Castellano"). (D.I. 1) As set forth in his second amended complaint, plaintiff asserted claims for: (1) breach of employment contract against NVF and Evans; (2) breach of the covenant of good faith and fair dealing against NVF and Evans; (3) violations of the Delaware Wage Payment and Collection Act ("WPCA") against NVF and Evans; (4) age discrimination under the ADEA against NVF and Castellano; (5) violation of ERISA against NVF; and (6) tortious interference with contractual relations against Castellano. (D.I. 31) On August 14, 1998, defendants answered denying all allegations and asserted counterclaims for breach of fiduciary duty and violations of the obligations of good faith and fair dealing. (D.I. 81)

This court held a jury trial from February 1, 1999 to February 12, 1999. At trial, plaintiff voluntarily withdrew his ERISA claim. (D.I. 266 at 200) After plaintiff rested, the court granted defendants' motion for judgment as a matter of law ("JMOL") with respect to plaintiff's tortious interference claim against Castellano and plaintiff's claims against NVF under the Deferred Retirement Income Security Plain ("DRISP"). (D.I. 264 at 162-63)

On February 16, 1999, the jury returned [*3] its verdict finding that defendants NVF and Evans had breached their respective employment contracts with plaintiff, had violated the covenant of good faith and fair dealing, and had failed to pay plaintiff wages owed to him without reasonable grounds. (D.I. 256) However, the jury found that NVF had not violated the ADEA when it terminated plaintiff. (Id.) With respect to defendants' counterclaims, the jury found for the plaintiff on all counts. Id. Plaintiff was awarded damages against NVF and Evans in the amount of $ 458,800 and the court entered judgment on the verdict on February 17, 1999. (Id.)

Case 1:04-cv-00956-GMS    Document 215-4    Filed 07/07/2006    Page 13 of 19

Page 2

2002 U.S. Dist. LEXIS 21287, *; 29 Employee Benefits Cas. (BNA) 1873;
8 Wage & Hour Cas. 2d (BNA) 441

On post-trial motions, the court granted defendants' renewed motion for JMOL on the breach of employment contract claim, but denied its motion with respect to the breach of covenant of good faith and fair dealing claim. (D.I. 270, 298) See *McNaboe v. NVF Co. et al., 2000 U.S. Dist. LEXIS 4418* (D. Del. March 20, 2000). The court also granted defendants' motion for JMOL on the WPCA claim with respect to NVF but denied it with respect to Evans. (Id.) On August 2, 2000, the court entered its amended final judgment in favor of plaintiff and against NVF in the **[\*4]** amount of $ 518,208 and against Evans in the amount of $ 9,874. After judgment was entered, defendants filed a notice of appeal with the United States Court of Appeals for the Third Circuit and plaintiff cross-appealed. (D.I. 333, 337)

Plaintiff then moved for attorneys' fees and expenses for his claims against Evans. (D.I. 340) Defendants answered asserting that plaintiffs' calculation of fees was unreasonable. (D.I. 351) Defendants NVF and Castellano also moved for attorneys' fees against plaintiff for expenses affiliated with defending the ERISA and ADEA claims. (D.I. 342)

On January 8, 2001, this court granted defendants' motion to stay execution of the judgment and required defendants to deposit $ 575,000 in lieu of a supersedeas bond pending appeal to the Third Circuit. (D.I. 338) Thereafter, defendants deposited the $ 575,000 with the Clerk of the Court. Accordingly, the court stayed plaintiff's and defendants' motions for attorneys' fees and expenses pending appeal to the Third Circuit. (D.I. 340, 342, 355)

On appeal, the Third Circuit ruled that the judgment in favor of NVF on the breach of contract claim was reversed, and the judgment on that count in favor of plaintiff **[\*5]** was to be reinstated. *McNaboe v. NVF Co. et al., 276 F.3d 578 (3d Cir. 2001).* The Third Circuit also ruled that the judgment in favor of plaintiff on the covenant of good faith was vacated and judgment would be entered in favor of defendants on that count. Id. Finally, the Third Circuit remanded the court's calculation of prejudgment interest for recalculation and affirmed on all other issues. (Id.)

Plaintiff then filed a motion to lift the stay of execution and disburse the funds defendants deposited to him. (D.I. 361) Defendants also filed a motion to lift the stay and return the funds to them. (D.I. 364) Plaintiff also moved to alter or amend judgment and award him attorneys' fees on his WPCA claim. (D.I. 372) After hearing oral arguments on these motions, the court issued a memorandum order granting plaintiff's motion to lift the stay of execution, denying defendants' motion, and denying plaintiff's motion to alter or amend judgment. (D.I. 388)

Presently before the court is plaintiff's renewed motion for attorneys' fees and expenses against Evans Tempcon (D.I. 340), defendants' motion for attorneys' fees and expenses (D.I. 342), and defendants' motion **[\*6]** for stay of order authorizing disbursement of bond proceeds (D.I. 389).

## II. DISCUSSION

### A. Plaintiff's Motion for Attorneys' Fees and Expenses

#### 1. Fees and Expenses Under the WPCA

Plaintiff argues that having successfully litigated his claims against Evans for violation of the WPCA, he is entitled to an award of attorneys' fees and expenses pursuant to § 1113(c) of the Act. (D.I. 341 at 5) Section 1113(c) of the WPCA states that

> any judgment entered for a plaintiff in an action brought under this section shall include an award for the costs of the action, the necessary costs of prosecution and reasonable attorneys' fees, all to be paid by the defendant.

*19 Del. C. § 1113(c).*

As discussed above, plaintiff was successful against Evans in his claim under the WPCA. The jury awarded plaintiff $ 4,615.38 against Evans for violation of the WPCA. The court awarded liquidated damages and prejudgment interest on this amount pursuant to § 1103(b) of the Act, resulting in a final judgment against Evans of $ 9,874. The Third Circuit affirmed this ruling. Having prevailed on the WPCA claim, the court concludes that plaintiff is entitled to reasonable attorneys' fees **[\*7]** and expenses in connection with his claim against Evans.

#### 2. Reasonable Attorneys' Fees and Expenses

The method for establishing statutory fees is well settled by Supreme Court cases. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986).* Both state and federal courts in this jurisdiction have adopted the "lodestar" approach to calculate reasonable fees granted pursuant to statutes. *Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000).* "The court must start by taking the amount of time reasonably expended by counsel for the prevailing party on the litigation, and compensate that time at a reasonable hourly rate to arrive at the lodestar." Id.; see also *Amico v. New Castle County, 654 F. Supp. 982, 997 (D. Del. 1987).* "A predicate to performing this analysis into reasonableness is the

2002 U.S. Dist. LEXIS 21287, *; 29 Employee Benefits Cas. (BNA) 1873;
8 Wage & Hour Cas. 2d (BNA) 441

court's ascertainment of whether the hours claimed are adequately documented." *Amico, 654 F. Supp. at 997.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Id. Both plaintiff and defendants agree **[*8]** that these are the proper standards for determining reasonable fees and expenses. (D.I. 341, 351)

Plaintiff's attorneys concede that it was not their usual practice to record their time specifically billed to Evans during the litigation. (D.I. 341 at 9) However, they contend that approximately 8-10% of all time expended in the litigation as a whole was devoted to plaintiff's prosecution of claims against Evans. (Id. at 10) Based on this estimate, plaintiff's attorneys claim that this would result in an amount between $ 40,000 and $ 50,000. (Id.) However, "in the exercise of plaintiff's attorneys' billing judgment," plaintiff requests only $ 11,650 in fees and expenses. (Id. at 10, 12)

Defendants argue that in light of plaintiff's award of $ 9,874 on his claim, the taxing of fees in excess of the award is unreasonable. (D.I. 351) Upon reviewing the documentation and affidavits submitted by plaintiff's attorneys, the court concludes plaintiff's request for $ 11,650 in fees and expenses is unreasonable.

As plaintiff's attorneys concede, the only documentation they can produce showing time billed directly to the Evans matter are billing records totaling $ 4,089.25. (See **[*9]** D.I. 340, Ex. D) In order to supplement this documentation, plaintiff submitted affidavits from three attorneys who worked on the case. (D.I. 340, Exs. 1, E and F) While affidavits may be used to supplement sparse records, they must provide some detail as to what matters the attorney submitting the affidavit actually billed. See *Amico, 654 F. Supp. at 999.* In this case, the affidavits submitted by plaintiff's counsel offer no more than speculation as to how much time was spent specifically on Evans' claims. As such, these affidavits are inadequate to prove any additional fees or expenses beyond what is adequately documented. Therefore, the court concludes that plaintiff is entitled to an award of attorneys' fees and expenses in the amount of $ 4,089.25.

**B. NVF and Castellano's Motion for Attorneys' Fees and Expenses**

**1. The Standard for Attorneys' Fees Under ERISA**

NVF contends that since plaintiff withdrew his ERISA claim during trial, it is entitled to attorneys' fees as the prevailing party under § 502(g)(1) of ERISA. (D.I. 343 at 2) Section 502(g)(1) states that

in any action under this title (other than an action described in paragraph 2) by a **[*10]** participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

*29 U.S.C. § 1132*(g)(1). In determining whether to award attorneys' fees and costs under § 502(g)(1), the Third Circuit has adopted a five-factor policy analysis. *Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983).* The five factors are:

(1) the offending parties' culpability or bad faith;
(2) the ability of the offending parties to satisfy an award of attorneys' fees;
(3) the deterrent effect of an award of attorneys' fees against the offending parties;
(4) the benefit conferred on members of the pension plan as a whole; and
(5) the relative merits of the parties' position.

Id. In light of the foregoing factors, the court concludes that NVF is entitled to a reasonable award of attorneys' fees and expenses in connection with its defense of plaintiff's ERISA claim.

**a. The offending parties' culpability or bad faith**

In analyzing the first factor of the Ursic test, the Third Circuit has stated:

The first Ursic factor favors an award to the prevailing **[*11]** party not only in cases involving 'bad faith' but in other cases as well ... A losing party may be culpable, however, without having acted with an ulterior motive. In a civil context, culpable conduct is commonly understood to mean conduct that is "blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault ... Such conduct normally involves something more than simple negligence ... [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose."

2002 U.S. Dist. LEXIS 21287, *; 29 Employee Benefits Cas. (BNA) 1873;
8 Wage & Hour Cas. 2d (BNA) 441

*McPherson v. Employees' Pension Plan of Am. Re-Insurance Co.*, 33 F.3d 253, 256-57 (3d Cir. 1994). Plaintiff initially sought nearly six million dollars in damages on his ERISA claim. (D.I. 344, Ex. A1 at P 3) This amounted to nearly 75% of the eight million dollars in damages plaintiff initially sought. (Id.) Plaintiff subsequently reduced this amount to less than $ 300,000 in his pre-trial statement of damages. (D.I. 199 at 62) Ultimately, plaintiff withdrew the ERISA claim altogether during trial.

Given plaintiff's continual changing of theories and positions throughout the litigation [*12] regarding his ERISA claim, and the ultimate withdrawal of this claim altogether, the court concludes that plaintiff's conduct, while perhaps not rising to the level of bad faith, is certainly culpable. Plaintiff adhered to his virtually untenable ERISA claim until trial and required NVF to expend resources defending against it. As such, the first factor weighs in favor of granting defendant reasonable attorneys' fees and expenses.

**b. The ability of the offending parties to satisfy an award of attorneys' fees**

NVF contends that based on plaintiff's salary at NVF and his subsequent salary at Sunbeam, he is in a financial position to satisfy an award of attorneys' fees. (D.I. 343 at 18) Plaintiff does not deny NVF's assertion, but rather argues that the court should not rely on NVF's assertions. (D.I. 349 at 16) Based on the record, and given plaintiff's award on other claims, the court concludes that plaintiff has the financial means to satisfy a reasonable award.

**c. The deterrent effect of an award of attorneys' fees against the offending parties**

The Third Circuit has stated that "the statutory purpose of ERISA [is] to protect pension benefits." *Ellison v. Shenango Inc. Pension Bd.*, 956 F.2d 1268, 1277 (3d Cir. 1992). [*13] "Accordingly, the policy behind awarding attorney's fees and costs pursuant to § 502(g) is to uphold the general purpose of ERISA by protecting pension benefits." *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 498 (D. Del. 1998). Based on plaintiff's pleadings and positions throughout this litigation, the court concludes that plaintiff's ERISA claim was not aimed at protecting his pension benefits, but rather to ensure federal jurisdiction over what essentially amounted to a breach of contract claim. Awarding reasonable attorneys' fees would act as a deterrent against parties bringing meritless ERISA claims for purposes of obtaining federal jurisdiction.

**d. The benefit conferred on members of the pension plan as a whole**

This factor has no relevance to the case at bar.

**e. The relative merits of the parties' position**

As discussed above, given plaintiff's backpedaling from his ERISA claim and its ultimate withdrawal, the court concludes that this claim was meritless and factor five weighs in favor of granting NVF reasonable fees.

**2. Reasonable Fees and Expenses for Defending the ERISA Claim**

Plaintiff's conduct has imposed a financial burden [*14] on defendants by forcing defendants to respond to a meritless ERISA claim. Defendants were required to spend time preparing an answer to the complaint, and researching and preparing motions for summary judgment, and for attorneys' fees and costs. Nonetheless, the court finds that the nearly $ 1.3 million dollars in fees and expenses defendants request is an extraordinarily large sum of money to award NVF, and that a lesser fee will more fairly serve the purpose of § 502(g). The 1993 Advisory Committee Notes state that "partial reimbursement of fees may constitute a sufficient deterrent with respect to violations by persons having modest financial resources." Additionally, the Third Circuit has cautioned that an award of attorneys' fees and costs under § 502(g) should not "amount[] to an excessively punitive sanction." *Ursic*, 719 F.2d at 677.

Defendants request $ 1,177,693 in attorneys' fees, and $ 119,157 in costs. This amounts to a grand total of $ 1,296,850 in attorneys' fees and expenses. (D.I. 353, Ex. A) In support of this figure, defendants submit a number of affidavits and billing reports documenting the various attorneys' time. Defendants urge the court [*15] to allocate one-third the total time spent on the case to ERISA related expenses, one-third to ADEA expenses, and the remaining one-third to the rest of the issues. (D.I. 353 at 11) Therefore, a threshold issue is whether or not one-third of the time spent on the case can be attributed to defendants' defense of the ERISA claim. The court concludes that it cannot.

Based on a review of all the parties' pleadings, briefs, and other documents filed in this case related to ERISA, the court concludes that allocating one-third the total billing solely to ERISA issues is unwarranted. Given the fact that the ERISA claim was never tried, and the amount of attention it was given in pre-and post-trial briefing, the court concludes that 20% is a more reasonable amount of time that defendants spent solely on ERISA related issues. As defendants repeatedly assert, this was essentially a state law breach of contract claim. The parties' focus in the briefing and at trial evidences this assertion. Accordingly, the court holds that $ 260,000, approximately 20% of $ 1,296,850, can reasonably be attributed to defendants' defense of plaintiff's ERISA claim. However, the inquiry does not end here.

Once **[*16]** the threshold question of how much time can defendants reasonably attribute to its defense of plaintiff's ERISA claim, the court must then apply the lodestar standards enumerated above to determine the reasonableness of the amount defendants ask for. In support of these amounts, defendants submitted voluminous appendices to their briefs. (D.I. 344, 345, 346) As discussed above, these appendices include attorneys' affidavits and detailed billing reports from each attorney. After careful review of these billing reports, the court found that many time entries, particularly costs and expenses, were not described in sufficient detail to attribute them to this case at all, let alone to defendants' defense of the ERISA claim. Furthermore, many time entries were either duplicative or unreasonable. Therefore, the court concludes that a downward modification of $ 100,000 is warranted. As such, the court concludes that a reasonable amount of fees and expenses attributed to NVF's defense of plaintiff's ERISA claim is $ 160,000.

### 3. The Standard for Attorneys' Fees Under the ADEA

The ADEA incorporates selected provisions of the Fair Labor Standards Act ("FSLA"), including the provisions **[*17]** pertaining to the award of attorneys' fees. See *29 U.S.C. § 626*(b). While these provisions do not address whether, or under what circumstances, attorneys' fees should be awarded to a prevailing defendant, defendants argue that courts have awarded prevailing defendants attorneys' fees in ADEA cases. (D.I. 343 at 19) Although defendants cite no cases in this jurisdiction in support of their argument, they cite to cases in other jurisdictions that awarded attorneys' fees to prevailing defendants under the ADEA. See, e.g., *Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1437-38 (11th Cir. 1998); Newhouse v. McCormick & Co., Inc., 130 F.3d 302, 304 (8th Cir. 1997); Miller v. State Chemical Mfg. Co., 706 F. Supp. 1166, 1172 (W.D. Pa. 1988)*. However, in each of these cases, the court awarded attorneys' fees to a prevailing defendant after a finding that the plaintiff had brought its ADEA claim in bad faith. Defendants argue that plaintiff's ADEA claim was baseless and brought in bad faith. (D.I. 343 at 20) The court concludes, however, that plaintiff's ADEA claim, while not a winning claim at trial, was not **[*18]** brought in bad faith.

During the litigation, plaintiff's ADEA claim survived defendants' motions for dismissal and summary judgment, and ultimately went to the jury. As the court noted before sending the ADEA claim to the jury, plaintiff's evidence met the applicable standards for a jury to infer age discrimination from the evidence of pretext presented at trial.

As defendants do not cite, nor has the court found, any cases in this jurisdiction, or any other jurisdiction, that awarded a prevailing defendant in an ADEA claim attorneys' fees absent a showing of bad faith, the court declines to award NVF or Castellano attorneys' fees on plaintiff's ADEA claims in this case.

### III. CONCLUSION

At Wilmington this 31st day of October, 2002, having reviewed papers submitted in connection therewith, for the reasons stated;

IT IS ORDERED that:

1. Plaintiff's motion for attorneys' fees and expenses (D.I. 340) is granted. Plaintiff is entitled to attorneys' fees and expenses in the amount of $ 4,089.25.

2. Defendants' motion for attorneys' fees and expenses (D.I. 342) is granted in part and denied in part. With respect to defendant NVF's motion for attorneys' fees and expenses for **[*19]** its defense of plaintiff's ERISA claim, the motion is granted. Defendant NVF is entitled to attorneys' fees and expenses in the amount of $ 160,000. With respect to defendants NVF and Castellano's motion for attorneys' fees for their defense of plaintiff's ADEA claim, the motion is denied.

3. Defendants' motion for stay of order authorizing disbursement of bond proceeds (D.I. 389) is denied as moot.

IT IS FURTHER ORDERED that the Clerk of the Court is instructed to subtract the amount of $ 155,910.75 from the amount due to plaintiff under this court's Order (D.I. 388) and to disburse the funds accordingly.

Sue L. Robinson

United States District Judge

FOCUS - 3 of 10 DOCUMENTS

**ADRIENNE G. STAIR, Plaintiff v. LEHIGH VALLEY CARPENTERS LOCAL UNION NO. 600 OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA; UNITED BROTHERHOOD OF CARPENTERS LOCAL 600 JOINT APPRENTICESHIP AND TRAINING TRUST FUND; JAMES FILYAC; AND UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Defendants**

**CIVIL ACTION No. 91-1507**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1994 U.S. Dist. LEXIS 5895; 66 Fair Empl. Prac. Cas. (BNA) 1502; 65 Empl. Prac. Dec. (CCH) P43,281*

**May 5, 1994, Decided**
**May 6, 1994, Filed; May 9, 1994, Entered**

**COUNSEL:** **[*1]** For ADRIENNE G. STAIR, PLAINTIFF: DONALD F. SPRY, II, ELVIRIA C. LA BARRE, TURTZO, SPRY, SBROCCHI, FAUL & LA BARRE, BANGOR, PA. DOMENIC P. SBROCCHI, TURTZO, SPRY, SBROCCHI, FAUL & LA BARRE, BANGOR, PA.

ANDRIENNE G. STAIR, PRO SE, WARREN, PA.

For LEHIGH VALLEY CARPENTERS LOCAL UNION NO. 600 OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, DEFENDANTS: STEPHEN C. RICHMAN, MARKOWITZ & RICHMAN, PHILA, PA. For UNITED BROTHERHOOD OF CARPENTERS, LOCAL 600 JOINT APPRENTICESHIP AND TRAINING TRUST FUND, JAMES FILYAC, DEFENDANTS: STEPHEN C. RICHMAN, MARKOWITZ & RICHMAN, PHILA, PA. CHARLES W. JOHNSTON, HANDLER, GERBER, JOHNSTON & ARONSON, CAMP HILL, PA.

**JUDGES:** HUYETT

**OPINIONBY:** DANIEL H. HUYETT, 3RD

**OPINION:**

**MEMORANDUM AND ORDER**

**HUYETT, J.**

## I. BACKGROUND

In this Title VII action, Adrienne G. Stair ("Plaintiff") obtained judgment against Lehigh Valley Carpenters Local Union No. 600 ("Defendant"). By Order dated June 24, 1993, the Court permanently enjoined Defendant from continuing to create a hostile work environment by the promotion and display of pornographic calendars in the work place and ordered Defendant to adopt a policy and procedures for the prevention and control of sexual harassment.

By further Order dated December 30, 1993, the Court held Plaintiff to be a prevailing party entitled to an award of attorney's fees. Plaintiff has requested an award of $ 86,252.49, comprising $ 81,380 attorney's fees and $ 4,872.49 costs. For the following reasons, the Court awards Plaintiff $ 74,039.99.

## II. DISCUSSION

Plaintiff bears the burden of proving reasonableness of fees claimed. *Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1982); Keenan v. City of Philadelphia, 983 F.2d 459, 473 (3d Cir. 1992)*. The starting **[*2]** point for determining a reasonable fee is calculation of the "lodestar." The lodestar is the product of the number of hours reasonably expended by an attorney on the litigation and the attorney's reasonable hourly rate.

### A. Relatedness of Claims and Degree of Success

1994 U.S. Dist. LEXIS 5895, *; 66 Fair Empl. Prac. Cas. (BNA) 1502;
65 Empl. Prac. Dec. (CCH) P43,281

Defendant argues that the number of attorney hours for which Plaintiff claims must be reduced because Plaintiff prevailed on only one the five counts in her complaint.

Attorney time is non-compensable if spent on unsuccessful claims based on facts and legal theories distinct from those claims on which Plaintiff succeeded. *Hensley, 461 U.S. at 434-35.* Thus, Courts must reduce fee awards to the extent unsuccessful claims are unrelated to successful claims. *Hensley, 461 U.S. at 435-36.* However, "where a plaintiff obtains excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Hensley, 461 U.S. at 435.* Further, "the fee award should not be [*3] reduced simply because plaintiff failed to prevail on every contention raised in the law suit." Id.

The Court previously has found Plaintiff's claims to be related and, applying Hensley, declines to alter this finding. See Order of the Court dated December 30, 1993 at 8 n.3. Plaintiff also achieved "excellent results" in this highly publicized case, Id., and "succeeded on a significant issue in the litigation." See Findings of Fact, Discussion, Conclusions of Law and Order dated June 24, 1993 at 58. Under Hensley, courts should not hesitate to award attorney's fees commensurate with the result achieved, particularly where failure to do so would dissuade action in important and developing fields of civil rights law. Accordingly, the Court will not reduce Plaintiff's attorneys fees for limited success, but rather follows the mandate of the Supreme Court that "the result is what matters." *Hensley 461 U.S. at 434.*

**B. Hours Expended**

Defendant argues that Plaintiff's attorney's time records do not describe adequately the work performed or show how that work assisted in preparation of the case. Defendant [*4] further argues that, as Plaintiff's fee petition aggregates various activities, the time spent on each cannot be distinguished.

Where documentation of hours is inadequate, the award may be reduced. *Hensley, 461 U.S. at 433.* Hours not properly billed to one's client are not properly billed to one's adversary. Id. In the Third Circuit, the fee petition must be detailed enough to allow the court to determine if the hours claimed are reasonable for the work performed. *Rode, 892 F.2d at 1190-91.* The petition should contain "some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations and the hours spent by various classes of attorneys." *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973).*

Applying these standards, the Court finds that Plaintiff's counsel's method of recordation is sufficient to enable the court to determine whether the number of hours charged is reasonable. In addition, aggregation of activities is not fatal [*5] to a fee petition. See, e.g., *Nu-Life Const. v. Bd. of Educ. of City of New York, 795 F. Supp. 602 (E.D.N.Y. 1992).* In this Circuit, it is not necessary to show the exact number of minutes spent or the precise activity to which each hour was devoted. *Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir. 1990); Keenan, 983 F.2d at 473.* However, Defendants have raised meritorious objections to a number of specific time entries. If an item is disallowed, and the hours spent on that item are not readily distinguishable, the Court will use its discretion to determine the hours attributable thereto.

Defendant claims that Plaintiff's fee petition contains numerous excessive, redundant or otherwise unnecessary time entries. First, Defendant argues that Plaintiff's counsel billed too many client conferences. Generally, attorneys should be compensated for client conferences. *Daly v. Hill, 790 F.2d 1071 (4th Cir. 1986).* Indeed, attorneys are ethically obliged, and should be encouraged, to maintain close contact with clients. The hours spent by Plaintiff's counsel on [*6] client conferences are reasonable and the Court will not reduce the award on this ground.

Second, Defendant argues that Plaintiff improperly billed for conferences with third parties including the press, a woman's center, a congressman and opposing counsel. Time spent with opposing counsel is normally useful and, in the present case, the number of hours charged for this activity is reasonable. However, time spent with the media is not compensable as it is not ordinarily necessary to prosecute the case. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986); Knight v. State of Alabama, 824 F. Supp. 1022 (N.D. Ala. 1993).* It is not clear how the conferences with the press, or other third parties, assisted this litigation. Thus, the award will be reduced by $ 1,275, representing 10.2 hours billed for conferences with third parties.

Third, Defendant argues that time spent on administrative proceedings did not further prosection of the present action and must be excluded. For time spent pursuing optional administrative proceedings [*7] to be included in the calculation of the fee, the work must be useful and of a type ordinarily necessary to secure the final result attained in the action. *Delaware Valley, 478 U.S. at 561.* The administrative proceedings in the present case before the Human Relations Commission were an integral part of Plaintiff's action and time spent thereon should be compensated. However, the Court finds that there is also some duplication of effort. Accordingly, the fee award will be reduced by $ 812.5, representing 6.5 attorney hours.

1994 U.S. Dist. LEXIS 5895, *; 66 Fair Empl. Prac. Cas. (BNA) 1502;
65 Empl. Prac. Dec. (CCH) P43,281

Fourth, Defendant argues that the time entries show further duplication of effort. In particular, Defendant cites numerous hours spent reviewing files and discussing the case with co-counsel. Defendant should not be required to pay for multiple case reviews or discussions between counsel where the benefit of those discussions is not clear.

Additionally, Defendant challenges the attendance of co-counsel at trial. It appears that co-counsel's main participation in this case was attendance at trial and various pre-trial conferences. As co-counsel's input was minimal, Defendant should not be required to [*8] pay for his attendance. Accordingly, the fee award will be reduced by $ 8,187.5, representing 45.5 hours of the time billed by co-counsel and 20 hours billed by Plaintiff's principal counsel for duplicative activities.

Lastly, Plaintiff's counsel billed for travel time. Defendant argues that travel time is compensable only as an expense of litigation. This is not the rule in the Third Circuit. See, e.g., Danny Kresky enterprise corp. v. Magid, 716 F.2d 215, 217-18 (3d Cir. 1983); Student Public Interest Rej. Group v. Monsanto Co., 721 F. Supp. 604 (D.N.J. 1989). However, because counsel do not perform the legal tasks justifying their hourly rate when travelling, the Court in its discretion finds that a 50% reduction in that rate is appropriate. Rank v. Balshy, 590 F. Supp. 787, 796-97 (M.D. Pa. 1984). Approximately 31 hours were billed for travel time resulting in a $ 1,937.5 reduction in the fee award. n1

n1 These hours do not include co-counsel's travel time as those hours have already been eliminated.

[*9]

**C. Hourly Rate**

The hourly rate charged by the attorney must be reasonable in comparison with rates actually billed and paid in the market place for similar services rendered by lawyers of comparable skill, experience and reputation. Rode, 892 F.2d at 1183. Where the applicant's evidence is insufficient, courts may draw on their own experience in determining the rate. Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).

Applying these standards, considering the affidavits submitted by Plaintiff and drawing on its own experience, the Court finds $ 125 per hour to be a reasonable fee.

**III. CONCLUSION**

For the reasons set forth above, the Court awards Plaintiff attorney's fees and expenses n2 in the amount of $ 74,039.99.

n2 Plaintiff's costs have not been challenged and were reasonable.

An appropriate Order follows.

**Daniel H. Huyett, 3rd, Judge**

**ORDER**

**HUYETT, J.**

Upon consideration of Plaintiff Adrienne [*10] G. Stair's petition for attorney's fees and expenses, filed pursuant to an Order of Court dated June 24, 1993, and the argument of the parties in support of and in opposition thereto, Defendant Lehigh Valley Carpenters Local Union No. 600 shall pay Plaintiff's attorney's fees and expenses in the amount of $ 74,039.99.

**IT IS SO ORDERED.**

**Daniel H. Huyett, 3rd, Judge**