IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORPORAL B. KURT PRICE, et a., | : | |
| | : | C.A. No. 04-956-GMS |
| Plaintiffs, | : | |
| | : | |
| 5. | : | |
| | : | |
| COLONEL L. AARON CHAFFINCH, et al. | : | |
| | : | |
| Defendants. | : | |

---

| | | |
|---|---|---|
| SERGEANT CHRISTOPHER D. FORAKER, | : | |
| | : | |
| Plaintiff, | : | C. A. No. 04-1207-GMS |
| | : | |
| v. | : | |
| | : | |
| COLONEL L. AARON CHAFFINCH, et al. | : | |
| | : | E-Filed |
| Defendants. | : | |

**PLAINTIFF FORAKER'S RESTATED OPENING BRIEF IN SUPPORT OF HIS
MOTION FOR CONTEMPT WITH ANNOTATIONS TO THE RECORD**

MARTIN D. HAVERLY, ATTORNEY AT LAW
MARTIN D. HAVERLY, ESQUIRE
Two East Seventh Street, Suite 201
Wilmington, Delaware 19801-3707
Del. Bar Number 3295
(302) 654-2255

DATED: July 7, 2006

# TABLE OF CONTENTS

Page

Table of Contents.................................................................................................. i

Table of Authorities............................................................................................ iii

Nature and Stage of the Proceedings.................................................................. 1

Summary of Argument......................................................................................... 2

Statement of Facts................................................................................................ 2

    I.  The Valid Stipulated Court Order Reinstating Sergeant Foraker To
    His Prior Position As The Non-Commissioned Officer In Charge of the
    Firearms Training Unit........................................................................................ 2

    II.  Defendants Chaffinich and MacLeish and Division of State Police,
    Department of Safety and Homeland Security, State of Delaware Were
    Aware of the Stipulated Order........................................................................... 3

    III.  Defendants Disobeyed the Stipulated Order................................................. 3

        A.  Sergeant Foraker's Rights, Privileges, Responsibilities
        and Supervisory Authority Before February 20, 2002............................ 3

        B. Defendants Diminished Sergeant Foraker's Job Duties and
        Violate the Reinstatement Order............................................................... 4

    IV.  Sergeant Foraker Was Injured As a Result of Defendants'
    Violation of the Stipulated Court Order.............................................................. 5

Argument.............................................................................................................. 6

    I.  Burden of Proof............................................................................................... 6

    II.  Retired Colonel Chaffinich and Colonel MacLeish Violated This
    Court's Order and Should Be Held in Contempt................................................. 7

        A.  There Was a Valid Court Order....................................................... 7

        B.  They Were Aware of the Order........................................................ 7

C. They Disobeyed the Order...................................................................... 7

III. Foraker's Remedies.................................................................................... 7

A. Compensate Foraker to Make Him Whole........................................ 8

    1. Compensate Foraker For His Emotional Distress and Mental Anguish.................................................. 9

    2. Compensate Foraker For His Economic Loss...................... 11

    3. Compensate Foraker For His Attorney's Fees and Costs........................................................................... 11

B. Fashion an Order Which Will Coerce Defendants to Comply in the Future............................................................. 11

Conclusion................................................................................................. 14

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                                    PAGE

<u>Dawson v. Washington Mutual Bank (In re Dawson)</u>,
390 F.3d 1139 (9th Cir. 2004).............................................................................. 10

<u>Delaware Valley Citizens' Counsel for Glen Air v. Commonwealth of Pennsylvania</u>,
678 F.2d 470 (3d Cir. 1982)................................................................................ 12

<u>Elkins v. Fauver</u>,
969 F.2d 48 (3d Cir. 1992).................................................................................. 8

<u>Fox v. Capital Company</u>,
96 F.2d 684 (3d Cir. 1938)................................................................................. 7

<u>Harris v. City of Philadelphia</u>,
47 F.3d 1311  (3d cir. 1994)........................................................................... 6, 7

<u>Hutto v. Finney</u>,
437 U.S. 678 (1978)......................................................................................... 12

<u>In re Barry</u>,
330 B.R. 28 (Bankr. D. Mass. 2005).................................................................. 9

<u>In re Feldmeier</u>,
335 B.R. 807 (Bankr. D.Or. 2005)..................................................................... 9

<u>In re Gervin</u>,
337 B.R. 854 (Bankr. W.D. Tex Nov. 12, 2005).............................................. 9

<u>In re Meyer</u>,
2006 WL 1560936 (Bankr. E.D. PA April 6, 2006)......................................... 9

<u>In re Perviz</u>,
302 B.R. 357 (Bankr. N.D. Ohio 2003)............................................................. 9

<u>In re Poole</u>,
242 B.R. 104 (Bankr. N.D. Ga. 1999)............................................................... 9

<u>In re Torres</u>,
309 B.R. 643 (B.A. P. 1st Cir. 2004)................................................................. 10

<u>Latrobe Steel Company v. United Steelworkers of America</u>,
545 F.2d 1336  (3d Cir. 1976)......................................................................... 11, 12,13

McDonald's Corporation v. Victory Investments,
727 F.2d 82 (3d Cir. 1984)................................................................................. 8, 13

McDowell v. Philadelphia Housing Authority,
423 F.3d 233 (3d Cir. 2005).............................................................................. 11

Quinter v. Volkswagen of American,
 676 F.2d 969 (3d Cir. 1982).......................................................................... 7, 8, 11

Robin Woods, Incorporated v.. Woods,
28 F.3d 396 (3d Cir. 1994)............................................................................... 8, 11

Roe v. Operation Rescue,
920 F.2d 213 (3d Cir. 1990) ............................................................................ 13

Schauffler v. Local 129, International Longshoremen's Union,
292 F.2d 182 (3d Cir. 1961)............................................................................. 6

Spallone v. United States,
49 U.S. 265 (1990)........................................................................................... 8

United States v. Dinwiddie,
885 F. Supp. 1299 (W.D. Missouri 1995).......................................................... 10

United States v. United Mine Workers of America,
330 U.S. 258 (1947).......................................................................................... 12

## STATUTES & OTHER AUTHORITIES

Friedenthal, Jack H., Mary K. Kane & Miller, Arthur R.,
Civil Procedure §15.8 at 716 (1985)................................................................. 10

## RULES

None

## NATURE AND STAGE OF THE PROCEEDINGS

On August 19, 2004 and August 30, 2004, Sgt. Christopher Foraker ("Foraker" or "Plaintiff") filed two lawsuits against Defendants in this Court (C.A. No. 04-956-GMS and 04-1207-GMS) alleging retaliatory violations of the Speech and Petition Clauses of the First Amendment and for supplemental state law claims. These cases were eventually consolidated, D.I. 138, C.A. No. 04-956-GMS, and after a twelve day jury trial a jury awarded Foraker $97,078.00 in compensatory and punitive damages. D.I. 184, C.A. No. 04-956-GMS. The Petition Clause claim stems from a June of 2003 jury verdict and award of $100,120.00 in compensatory and punitive damages against defendant Chaffinch for multiple violations of his free speech rights. On December 1, 2003, under a Stipulated Order of this Court Foraker was reinstated to his previous position. However, after his Court ordered reinstatement, defendants Chaffinch, MacLeisch, and Division of State Police, Department of Safety and Homeland Security, State of Delaware decreased the rights, privileges, duties, responsibilities and supervisory authority Foraker held. This violates ¶ 1 of the Stipulated Order. PX2. (Also attached as Exhibit A).

Since ¶ 3 of the Stipulated Order retained jurisdiction of the matter to enforce this Court's Order, Foraker brought this aspect of the case to the Court's attention in briefing, D.I. 64 at 26, C.A. No. 04-1207-GMS, and in the Pretrial Order, D.I. 123, C.A. No. 04-956-GMS, and requesting that this Court find defendants in contempt and fashion a remedy which will compensate Sgt. Foraker for defendants' violation of the Stipulated Order and coerce defendants to follow it in the future. Rather than waste the Court's time with a separate hearing, the record during the 12 day trial was to become the record for contempt purposes, with post trial briefing

1

to take place after the trial for the Court to decide whether defendants are in contempt and if so what sanctions should flow from their contempt.

This is plaintiff Foraker's opening brief in support of his Motion for Contempt.

## SUMMARY OF ARGUMENT

I.  Defendant's disobeyed a valid stipulated order between Sergeant Foraker and the defendants by diminishing the rights, privileges, duties, responsibilities and/or supervisory authority previously held by him when he earlier occupied that position on February, 20, 2002. The defendants were aware of the stipulated order.

II.  This Court should compensate Sergeant Foraker to make him whole by entering an award relating to his emotional distress, economic loss, and attorney's fees and costs.  This Court should also fashion an award which will coerce defendants to comply with the stipulated order in the future.

## STATEMENT OF FACTS[1]

### I. THE VALID STIPULATED COURT ORDER REINSTATING SERGEANT FORAKER TO HIS PRIOR POSITION AS THE NON-COMMISSIONED OFFICER IN CHARGE OF THE FIREARMS TRAINING UNIT.

Sergeant Foraker successfully filed a First Amendment retaliation lawsuit against the Colonel of the Delaware State Police defendant Chaffinich and the defendant Division of State Police in the year 2002.  (C.A. 02-302-JJF).  After a trial during the summer of 2003, Sergeant Foraker received a compensatory damage award of $40,120 and a punitive damages award of $60,000. After post-trial briefing was completed, the parties entered into a stipulated order which

---

[1]Now that the trial transcript is available annotations to the record are provided.

was signed by Judge Joseph J. Farnan, Jr. on November 20, 2003. PX2 (Also attached as Exhibit A).

The Stipulated Order ordered Sergeant Foraker to be "reinstated to his prior position as the non-commissioned officer in charge of the firearms training unit of the Delaware State Police with all of the rights, privileges, duties, responsibilities and supervisory authority previously held by him when he earlier occupied that position on February 20, 2002." (Stipulated order attached as Exhibit A, ¶ 1). The stipulated order further indicated that "the court shall retain jurisdiction over this matter to enforce its order of reinstatement should that become necessary." PX2. (Exhibit A, ¶ 3).

## II. DEFENDANTS CHAFFINICH, MACLEISH AND DIVISION OF STATE POLICE, DEPARTMENT OF SAFETY AND HOMELAND SECURITY, STATE OF DELAWARE WERE AWARE OF THE STIPULATED ORDER.

Both Retired Colonel Chaffinich and Colonel MacLeish testified that they were aware of the court order. (Chaffinch 1622-625, 1630, 1662-663; MacLeish 1730-731, 1737).

## III. DEFENDANTS' DISOBEYED THE STIPULATED ORDER.

### A. Sergeant Foraker's Rights, Privileges, Responsibilities and Supervisory Authority Before February 20, 2002.

Up until February 20, 2002, Sergeant Foraker was the Section Chief of the Firearms Training Unit. ( C. Foraker 1389, 1501). As the Section Chief of the Firearms Training Unit, Sergeant Foraker was responsible for the preparation and oversight of a budget of approximately $300,000. ( C. Foraker 1440-41, 1529-30). He attended the Commander and Section Chiefs' meetings, which were typically held on approximately a monthly basis. ( C. Foraker 1456-457, 1461). He would report directly to the Major assigned to the Academy. ( C. Foraker 1392-93, 1444). As the section chief for the firearms training unit, Sergeant Foraker was responsible for the firearms training of all of Delaware State Police personnel as well as a number of police

3

personnel from other municipalities in the state of Delaware. ( C. Foraker 1389-390, 1501-502).

He acted as the chief administrator for the Firearms Training Unit and trained and taught

firearms training, prepared procedures for firearms training, etc. ( C. Foraker 1389-391). He

was responsible for the staff assigned to the firearms training unit and prepared their evaluations

and supervised them. He also would speak at academy graduation ceremonies, introducing the

best shooter award. ( C. Foraker 1441, 1533).

### B. Defendants Diminished Sergeant Foraker's Job Duties and Violate the Reinstatement Order.

Upon his reinstatement as Section Chief, Defendants Chaffinich, MacLeish reduced

Sergeant Foraker's rights, privileges, responsibilities and supervisory authority as follows:

> 1. Colonel MacLeish publicly threw him out of a Commanders and Section Chiefs meeting with defendant Chaffinich's knowledge and acquiescence. MacLeish also ordered Foraker to never attend Commander and Section Chief's meetings again, indicating that no sergeants were allowed to attend the meeting. But Sgt. Foraker received a notice to attend the meeting, and continued to receive similar notices even after MacLeisch ordered him to not attend anymore. In addition, Major Baylor, Sgt. Foraker, and others testified that other sergeants do attend these meetings and that Sgt. Foraker should have continued to attend these meetings. (Baylor 620-23; C. Foraker 1456-462; Davis 1573-576; W. Warren 198; McQueen 1300-309, 1320-321).

> 2. Rather than reporting to his Major, Sgt. Foraker was ordered to first report to Lieutenant Davis and/or Capt. Warren through the Academy. Testimony indicated that prior FTU Section Chiefs reported to the Major instead. ( C. Foraker 1392-393, 1444, 1529; G. Warren 1174-179; W. Warren 134-36, 196-97; Hagan 2165-167; Davis 1567-568, 1583).

> 3. Either a lieutenant or a captain had to sit in on all budget meetings that Sgt. Foraker had with his Major. Before, Sgt. Foraker would meet with the Major by himself to discuss his Section's $300,000 budget. ( C. Foraker 1441; G. Warren 1178-180; Homiak 2152-154).

> 4. Sergeant Foraker was no longer able to make even minor financial decisions concerning the FTU, unlike Sgt. Ashley. (Baylor 564; C. Foraker 1440-441; Hagan 2165-167; Davis 1583).

4

5. His supervisory/command authority was undermined by the media articles where Col. Chaffinch defamed him, blaming Sgt. Foraker for causing the shutdown of the multimillion dollar facility. Sgt. Foraker testified that as a result of the negative publicity new recruits and other trainees acted differently towards him. (Baylor 551; C. Foraker 1443-444, 1462-465; K. Price 967-68; W. Warren 286, 340-42, 351-52, 357).

6. He was not provided with enough personnel to adequately staff the FTU. ( C. Foraker 1405-406, 1410; G. Warren 1204; K. Price 959-62; Davis 1572 W. Warren 242-43).

7. He was barred from speaking at Academy graduation ceremonies. ( C. Foraker 1441-442).

8. His command authority autonomy was diminished.    ( C. Foraker 1440).

## IV. SERGEANT FORAKER WAS INJURED AS A RESULT OF DEFENDANTS' VIOLATION OF THE STIPULATED COURT ORDER.

As a result of his reduced role at the firearms training unit, plaintiff experienced emotional distress and mental anguish. Both Dr. Tavani and Dr. DeBernardo indicated that he suffered emotional distress and mental anguish as a result of his treatment on the job by defendants. Dr. Tavani opined that he suffered from Severe Major Depression and Post Traumatic Stress Disorder.   (Tavani 749-50).  The symptoms as garnered from the expert testimony, his wife and Foraker himself include the following:

1. Anxiety (Tavani 765, 771; DeBernardo 2218, 2228-29, 2234; C. Foraker 1469; S. Foraker 1327)

2. Sleep Difficulties- frequent walking/bad dreams (Tavani 757-58, 760-61, 769, 771; DeBernardo 2232; C. Foraker 1468-69, 1471; S. Foraker 1325, 1331)

3. Diarrhea (Tavani 761, 763; C. Foraker 1469)

4. Tired (Tavani 761; DeBernardo 2232)

5. Diminished libido (Tavani 761, 768; C. Foraker 1471; S. Foraker 1329)

6. Irritable (Tavani 762; DeBernardo 2228)

7. Socially withdrawn (Tavani 762; C. Foraker 1466; S. Foraker 1328)

5

8.   Flashbacks (Tavani 757-58)

9.   Feels like he is constantly haunted (Tavani 757)

10.  Increased heart rate (Tavani 757-58, 763; C. Foraker 1469)

11.  Panic with profuse perspiration (Tavani 757)

12.  Hypervigilance (Tavani 757)

13.  Paranoid (DeBernardo 2219-20)

14.  Depressed mood (Tavani 757-58, 765; DeBernardo 2216, 2228-29, 2231; C. Foraker 1467; S. Foraker 1326-28, 1331)

15.  Distractibility (Tavani 771; DeBernardo 2233)

16.  Low Energy (Tavani 761, 771; DeBernardo 2232; C. Foraker 1467-68)

17.  Anger (Tavani 771; DeBernardo 2228; C. Foraker 1467, 1470; S. Foraker 1325, 1327)

18.  Poor appetite (Tavani 771; C. Foraker 1469)

19.  Poor motivation (Tavani 761, 771; S. Foraker 1328)

20.  Agitation (Tavani 771; DeBernardo 2219; C. Foraker 1470; S. Foraker 1325, 1333)

21.  Humiliation (Tavani 770-71; C. Foraker 1466-67)

22.  Embarrassment (Tavani 770-71; C. Foraker 1467, 1471)

## ARGUMENT

## I. BURDEN OF PROOF.

Establishing civil contempt requires the plaintiff to prove the following: (1) a valid court order existed, (2) that the defendants had knowledge of the order, and that (3) they disobeyed the order. Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3d Cir. 1994). These elements must be proven by "clear and convincing evidence." Schauffler v. Local 129, International

6

Longshoremen's Union, 292 F.2d 182. 190 (3d Cir. 1961), citing Fox v. Capital Co., 96 F.2d 684, 686 (3d Cir. 1938).

After contempt has been proven by the plaintiff, the Third Circuit will not change the ruling unless the district court abused its discretion in finding contempt. "The imposition of contempt is reviewed under an abuse of discretion standard and will only be disturbed if there is an error of law or a clearly erroneous finding of fact." Harris, 47 F.3d at 1321.

## II. RET. COL. CHAFFINICH AND COL. MACLEISH VIOLATED THIS COURT'S ORDER AND SHOULD BE HELD IN CONTEMPT.

**A. There Was a Valid Court Order.**  See Statement of the Facts Section I.

**B. They Were Aware of the Order.**  See Statement of the Facts Section II.

**C. They Disobeyed the Order.**     See Statement of the Facts Section III.

## III. FORAKER'S REMEDIES.

Civil contempt should be used either to remedy problems caused by the contemnor's inaction, or to coerce the contemnor into action. In other words, civil contempt can be divisible into two categories, "one coercive and the other compensatory." Harris, 47 F.3d at 1328. A civil contempt order should compel the contemnor to make things right, not to punish him. Ideally, a civil contempt order is one "that allows the contemnor to purge the contempt by committing an affirmative act and who thus... 'carries the keys of prison in his own pocket.'" Id. In a civil contempt situation, "enforcement of the rights and remedies of a litigant is the ultimate object." Quinter v. Volkswagen of America, 676 F.2d 969, 975 (3d Cir. 1982). Provided the contempt sanctions are not punitive, the courts are granted broad discretion to craft an appropriate remedy.

## A. Compensate Foraker to Make Him Whole.

Under the compensatory option for civil contempt, awards are given to place the aggrieved party in the position he would have been in if the contemnor had done his duty, to ensure that the innocent party gets the benefit of the judgment. Usually this is accomplished with a fine. The Third Circuit has stated that "[t]he relief granted in civil contempt proceedings... usually takes the form of a fine in the amount of the damages sustained by petitioner and an award of costs and attorney's fees." Quinter, 676 F.2d at 975. Included in this possible amount are costs for preparing contempt litigation and for attorney's fees, as "attorneys' fee awards are remedial and designed to compensate complainants for losses incurred as a result of the contemnors' violations, so too are awards to cover the other expenses involved in demonstrating violations." Robin Woods Inc. v. Woods, 28 F.3d 396, 401 (3d Cir. 1994).

District courts are given wide discretion to craft appropriate compensatory sanctions, but they must abide by some limitations. The Third Circuit has stated that "civil contempt sanctions should be tailored so that they do not unduly harm broader public interests." Elkins v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992) (Held that vacating punishment imposed on a prisoner went against vital prison procedures) citing Spallone v. United States, 49 U.S. 265, 276 (1990). When imposing a fine, the court cannot exceed the amount that is needed to suitably compensate the plaintiff. "[A] fine may be imposed payable to the complainant, but it must be based on evidence of complainant's actual loss." McDonald's Corporation v. Victory Investments, 727 F.2d 82, 87 (3d Cir. 1984). Furthermore, the fine imposed "must not exceed the actual damages caused the offended party by a violation of the court's order." Quinter, 676 F.2d at 975. Thus, a monetary

8

penalty can be imposed civilly, but only up to the loss suffered by the complainant. Otherwise, it would exceed the bounds of compensation, and become punitive.

### 1. Compensate Foraker For His Emotional Distress and Mental Anguish.

The Third Circuit has not ruled on whether an award of emotional distress damages for civil contempt is permissible. However, several federal courts have allowed an award of emotional damages for a violation of court orders. See e.g. In re Meyer, 2006 WL 1560936, * 4 (Bankr. E.D. Pa. April 6, 2006); In re Feldmeier, 335 B.R. 807, 814 (Bankr. D.Or. 2005); In re Barry, 330 B.R. 28, 37-38 (Bankr. D. Mass. 2005); In re Gervin, 337 B.R. 854, 862-64 (Bankr. W.D. Tex. Nov. 12, 2005); In re Perviz, 302 B.R. 357, 371 (Bankr. N.D. Ohio 2003); In re Poole, 242 B.R. 104, 112 (Bankr. N.D. Ga. 1999).

The Bankruptcy in the Eastern District of Pennsylvania found that emotional distress damages were warranted where there is "a direct nexus between the purpose of the discharge order and emotional distress which may result from the violation of the order." In re Meyer, at * 4. This reasoning makes complete sense under the stipulated order in this case. The stipulated order requires that defendants reinstate Sergeant Foraker "with all the rights, privileges, duties, responsibilities and supervisory authority previously held when he earlier occupied that position on February 20, 2002." Exhibit A ¶ 1. It specifically concerns itself with the terms and conditions of Foraker's employment which are not economic in nature but for which emotional distress and mental anguish were reasonably foreseeable. Without an award of emotional distress, Sergeant Foraker cannot be made whole. Simply put, there's a direct nexus between the purpose of the order and the emotional distress which may result from the violation of the order.

Indeed, "often, as in the case before us, a debtors' out-of-pocket expenses and other economic loses will be relatively insignificant to a violation of the [court order]. In such instances redress for sustained emotional injury would be a major factor in fashioning an award of <u>full remedial relief</u>. Concerns for the potential of abuse are unwarranted. Like other aspects of an award for civil contempt, monetary damages for emotional injury would be appropriate only if the nature and extent of the injury and its reasonable relationship to the violation of the [court order] are established by competent evidence." <u>In re Torres</u>, 309 B.R. 643, 649 (B.A.P. 1st Cir 2004) (emphasis and brackets added), <u>reversed and remanded on other grounds</u>, 432 F.3d 20.

Similarly, the Ninth Circuit has held that "a claim for emotional damages is available if the individual provides clear evidence to establish that significant harm occurred as a result of the violation..." <u>Dawson v. Washington Mutual Bank (In re Dawson)</u>, 390 F.3d 1139, 1148-49 (9th Cir. 2004).

In <u>United States v. Dinwiddie</u>, 885 F. Supp. 1299, 1305 (W.D. Missouri 1995), the court indicated that emotional distress should be paid to compensate the victims were the compensation is "reasonably calibrated to compensate the victims for defendant's non-compliance with the permanent injunction." <u>See</u> Jack H. Friedenthal, Mary K. Kane & Arthur R. Miller, Civil Procedure § 15.8 at 716 (1985).

The testimony of Dr. Tavani and Dr. DeBernardo both indicate that Sergeant Foraker suffered significant emotional injury as a result of defendants' treatment of him. See Statement of Facts Section IV. He should be compensated for the loss occasioned him as a result of defendants' contempt for the stipulated order.

10

### 2. Compensate Foraker For His Economic Loss.

The Third Circuit allows a victim to receive compensation for his economic loss when a court order has been violated. McDowell v. Philadelphia Housing Authority, 423 F.3d 233, 241 (3d Cir. 2005); Quinter, 676 F.2d at 974-75.  Due to Foraker's emotional distress he is not fit for duty and may not be able to return to work. To the extent he cannot return to work, he should be compensated for his economic loss. Moreover, the economic loss should include his full economic loss for being retaliated against because the stipulated order sent him back to the Firearms Training Unit with all of the "rights" previously held by him, thus incorporating the retaliation claims into the stipulated order.

### 3. Compensate Foraker For His Attorney's Fees and Costs.

The Third Circuit allows a victim to receive compensation for his attorneys fees and costs when a court order has been violated. Robin Woods, Inc., 28 F.3d at 400-01; Quinter, 676 at 974-75.

### B. Fashion an Order Which Will Coerce Defendants to Comply in the Future.

Under the coercive category of civil contempt, the court can be creative in crafting a suitable order. "Indeed, the methods that may be employed to coerce a recalcitrant party into compliance with an injunction are many and varied." Latrobe Steel Company v. United Steelworkers of America, 545 F.2d 1336, 1344 (3d Cir. 1976). In the court's words, "[c]oercive sanctions... look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction by setting forth in advance the penalties the court will impose if the party deviates from the path of obedience." Id.  In deciding the appropriate sanction, the court should "consider

11

the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired," and "consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." United States v. United Mine Workers of America, 330 U.S. 258, 304 (1947).

The Supreme Court has gone so far as to say that a contemnor may be subject to imprisonment provided its conditional on completing the mandated task. The Third Circuit acknowledges this option; the court said that "[c]ivil contempt proceedings against state officials may justifiably result in the fining or the conditional jailing of those officials." Delaware Valley Citizens' Counsel for Clean Air v. Commonwealth of Pa, 678 F.2d 470, 471 (3d Cir. 1982). In the earlier case of Latrobe Steel, the Third Circuit set forth a number of possible weapons for trial judges to force compliance, including possible imprisonment, stating "[the judges] may impose an indeterminate period of confinement which may be brought to an end only by the contemnor's ultimate adherence to the court order." Latrobe Steel, 545 F.2d at 1334. This particular penalty may be particularly strong, but it has been acknowledged by the Supreme Court as a possible path. Hutto v. Finney, 437 U.S. 678, 690-91 (1978).

Alternatively, the Latrobe court noted that a fine may again be appropriate coercion, and set out various ways to keep a potential fine within the boundaries of a coercive order: "[t]he court may levy a fine of a specified amount for past refusal to conform to the injunction, conditioned, however, on the defendant's continued failure to obey." Latrobe Steel, 545 F.2d at 1344. Importantly, the fine must be conditioned on the present failure to obey; in the McDonald's case, a fine was considered a criminal contempt order, as it was imposed

12

retroactively at the time the contemnor was rectifying his contempt. Thus, it was punishment for disobeying, not coercion to do right. McDonald's, 727 F.2d at 87. On the other hand, the court can look to the future; the Latrobe court said that "[t]he court may also specify that a disobedient party will be fined a certain amount for each day of non-compliance." Latrobe Steel, 545 F.2d at 1344. Also, when a fine is assessed and failure to purge brings about a due date, "the occurrence of the due date does not transform civil proceedings... into a criminal proceedings." Roe v. Operation Rescue, 920 F.2d 213, 216 (3d Cir. 1990). In any case, a coercive fine is not paid to the aggrieved party (as a compensatory civil fine is), but to a court or public treasury. Latrobe Steel, 545 F.2d at 1346.

The Latrobe court acknowledged that it can be a fine distinction between civil coercive contempt and criminal contempt. Both tend to "vindicate the court's authority" like a criminal contempt order. Nevertheless, as civil coercive contempt is brought by the opposing party, not that state or the court, it remains essentially a civil dispute between two individuals; and though the court (or government) may receive coercive fines (and not the plaintiff), the plaintiff does receive the ultimate benefit of compliance. Id.

In light of defendants' contempt and in order to coerce future compliance, this court should do the following:

A.  Refer this matter to the U.S. Attorney General's office to determine if a criminal contempt has taken place.

B. Issue a mandatory injunction directing defendant Mitchell and his successors as Secretary of the Department of Safety and Homeland Security to act as a monitor of defendants Chaffinich and MacLeish, or any future Colonels, to prohibit any retaliation or harassment of

13

Foraker by overseeing and approving any action or statements made by defendants Chaffinich and MacLeish concerning Foraker upon penalty of finding Mitchell and/or his successors in contempt of court. Such injunction is to run for so long as Foraker remains with the Delaware State Police.

C. Enter an order enjoining the defendants from retaliating against Foraker now or in the future.

D. Enter an order indicating that defendants will be fined for any future noncompliance, identifying an amount for each violation.

## CONCLUSION

For the reasons contained herein defendants should be found in contempt and the following relief should be granted:

A. Enter an order requiring defendants to pay Sgt. Foraker for the emotional distress and economic loss he suffered as a result of their contempt.

B. Enter an order for attorney's fees and costs

C. Refer this matter to the U.S. Attorney General's office to determine if a criminal contempt has taken place.

D. Issue a mandatory injunction directing defendant Mitchell and his successors as Secretary of the Department of Safety and Homeland Security to act as a monitor of defendants Chaffinich and MacLeish, or any future Colonels, to prohibit any retaliation or harassment of Foraker by overseeing and approving any action or statements made by defendants Chaffinich and MacLeish concerning Foraker upon penalty of finding Mitchell and/or his successors in

14

contempt of court. Such injunction is to run for so long as Foraker remains with the Delaware State Police.

      E.  Enter an order enjoining the defendants from retaliating against Foraker now or in the future.

      F.  Enter an order indicating that defendants will be fined for any future noncompliance, identifying an amount for each violation.

               **MARTIN D. HAVERLY, ATTORNEY AT LAW**

               /s/ Martin D. Haverly
               **MARTIN D. HAVERLY, ESQUIRE**
               Del. Bar No. 3295
               Two East Seventh Street, Suite 302
               Wilmington, Delaware 19801
               (302) 654-2255
               Attorney for Plaintiff

Dated: July 7, 2006

15