# UNREPORTED CASES

Westlaw.

2006 WL 1560936  FOR EDUCATIONAL USE ONLY  Page 1
--- B.R. ----, 2006 WL 1560936 (Bankr.E.D.Pa.)
(Cite as: 2006 WL 1560936 (Bankr.E.D.Pa.))

Only the Westlaw citation is currently available.

United States Bankruptcy Court,
E.D. Pennsylvania.
In re John MEYERS, Debtor.
No. 05-18208ELF.

April 6, 2006.
Jeffrey C. McCullough, Bond and McCullough, Doylestown, PA, for Debtor.

**MEMORANDUM OPINION**

ERIC L. FRANK, Bankruptcy Judge.

**I. INTRODUCTION**

*1 Before me is the Debtor's Motion for Sanctions against General Motors Acceptance Corporation ("the Motion"). The Debtor seeks monetary sanctions against General Motors Acceptance Corporation ("GMAC") for its alleged willful violation of the discharge injunction. I held a hearing and received testimony on this matter on March 1, 2006. For the reasons stated herein, I will grant the Motion and award monetary damages to the Debtor. [FN1]

> FN1. This Memorandum shall constitute the findings of fact and conclusions of law of the Court pursuant to Fed. Rule of Bankr.P. 7052 as made applicable to this contested matter and incorporated by Fed. Rule of Bankr.P. 9014.

**II. BACKGROUND**

The Debtor, John R. Meyers, commenced the above chapter 7 bankruptcy case by filing a voluntary petition on June 13, 2005. During the pendency of the bankruptcy case, the Debtor discovered that GMAC was asserting a deficiency claim against him in connection with an automobile loan which had resulted in the repossession of the vehicle. The Debtor filed an Amended Schedule F with the court listing GMAC as the creditor and a deficiency claim in the amount of $9,015.48. [FN2] That same day, November 1, 2005, the Debtor's attorney, Jeffrey C. McCullough, sent a letter with a copy of Amended Schedule F to GMAC at its Horsham, Pennsylvania location.

> FN2. I may take judicial notice of the docket in this case and the content of the bankruptcy schedules for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed.R.Evid. 201; In re Scholl, 1998 WL 546607 (Bankr.E.D.Pa.1998).

On November 29, 2005, the court entered the Debtor's bankruptcy discharge pursuant to 11 U.S.C. § 727(a). The discharge order was accompanied by a written explanation which included a description of the type of collection efforts prohibited by the discharge. [FN3] The bankruptcy case was closed on December 2, 2005.

> FN3. The explanation is part of Official Form 18. See generally, Fed. R. Bankr.P. 9009. I will further discuss the explanation in Part III. A., infra.

Shortly after the entry of the discharge order, the Debtor began to receive phone calls at his place of work from representatives who identified themselves as GMAC employees. The Debtor received messages on his personal voice mailbox, as well as messages on the office's general voice mailbox. If messages were left on the general voice mailbox, the receptionist or other employees who checked the general voice mailbox, forwarded the message to the Debtor's personal voice mailbox. The Debtor testified that he is aware of three (3) people at his workplace who knew of GMAC's collection efforts. The Debtor explained that the content of the messages generally referred to his account at "collections" with GMAC and included a phone number to be used to return the call. When the Debtor returned the phone calls, each individual who answered the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1560936  FOR EDUCATIONAL USE ONLY  Page 2
--- B.R. ----, 2006 WL 1560936 (Bankr.E.D.Pa.)
(Cite as: 2006 WL 1560936 (Bankr.E.D.Pa.))

phone identified the place of business as GMAC. On several occasions, the Debtor advised the various representatives that he had gone through the bankruptcy process and provided the docket number, as well as the name and address of his attorney, Mr. McCullough. The representatives typically responded that they would contact Mr. McCullough.

On December 21, 2005, Mr. McCullough received a call from a GMAC representative who identified himself as Frank Foster. When Mr. McCullough returned the phone call that day, he informed Mr. Foster of the Debtor's discharge order and requested GMAC to cease all collection efforts. Following Mr. McCullough's phone discussion with Mr. Foster, the Debtor received three (3) more phone calls from GMAC on December 27, 2005 and January 6 and 10, 2006.

*2 On January, 11, 2006 Mr. McCullough placed a call to Mr. Foster and obtained Mr. Foster's mailing address. That same day, Mr. McCullough sent Mr. Foster a certified letter, return receipt requested, enclosing a copy of the discharge order and reminding Mr. Foster of their phone conversation. [FN4] Subsequently, the Debtor received three (3) more phone calls from GMAC regarding his discharged debt on January 12, 16, and 20, 2006.

> FN4. Mr. McCullough's January 11, 2006 letter referenced a phone conversation on December 1, 2005. I believe this was a typographical error. Based on my finding that Mr. McCullough spoke with Mr. Foster on December 21, 2005, I believe that he intended to refer to December 21, 2005, not December 1, 2005, in the January 11, 2006 letter.

On January 25, 2006, the Debtor filed the Motion. [FN5] GMAC did not file a response. At the March 1, 2006 hearing, GMAC did not appear to oppose the Motion. I heard testimony from the Debtor only. Between the time the Debtor filed the Motion and the March 1, 2006 hearing, the Debtor received another six (6) phone calls from GMAC. [FN6]

> FN5. The Debtor filed a Motion to Reopen Case on the same day he filed this Motion. Reopening the case is unnecessary because I have the continuing inherent power to enforce any violation of an order of this Court. See In re Close, 2003 WL 22697825 at *2 (Bankr.E.D.Pa. Oct. 29, 2003).

> FN6. I admitted into evidence a log the Debtor maintained of the collection calls he received from the GMAC representatives from November 30, 2006 to the March 1, 2006 hearing.

### III. DISCUSSION

#### A. Civil Contempt for Violation of the § 524 Discharge Injunction

Section 524(a) is a broad injunction power which effectively bars creditors from collecting debts as personal liabilities from a discharged debtor. [FN7] However, in contrast to section 362(h) which remedies violations of the automatic stay by mandating actual damages, see 11 U.S.C. § 362(h), section 524 is silent with respect to a private right of action for debtors injured by a creditor's violation of the discharge injunction. While the Third Circuit has not addressed whether section 524 implies a private right of action, it has observed that several other circuits have found that it does not. See In re Joubert, 411 F.3d 452, 456 (3d Cir.2005) (citing e.g. Cox v. Zale Delaware, Inc., 239 F.3d 910, 917 (7th Cir.2001); Bessette v. Avco Financial Services, Inc., 230 F.3d 439, 444-45 (1st Cir.2001); Pertuso v. Ford Motor Credit, 233 F.3d 417, 421 (6th Cir.2000); Hardy v. United States, 97 F.3d 1384, 1388 (11th Cir.1996)).

> FN7. Section 524(a)(2) provides that the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

The absence of an express right of action under section 524 if, in fact, no such right of action exists, does not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1560936
--- B.R. ----, 2006 WL 1560936 (Bankr.E.D.Pa.)
(Cite as: 2006 WL 1560936 (Bankr.E.D.Pa.))

FOR EDUCATIONAL USE ONLY

Page 3

mean that a violation of the discharge injunction cannot be remedied. Bankruptcy courts have regularly exercised their contempt power under 11 U.S.C. § 105 in order to remedy violations of the discharge injunction. [FN8] See e.g., *In re Close,* 2003 WL 22697825 at * 10; *In re Beck,* 272 B.R. 112, 126 (Bankr.E.D.Pa.2002); *In re Continental Airlines, Inc.,* 236 B.R. 318 (Bankr.D.Del.1999); accord, *In re Feldmeier,* 335 B.R. 807, 811-812 (Bankr.D.Or.2005); *In re Gervin,* 337 B.R. 854, 858 (Bankr.W.D. Tex Nov. 12, 2005).

> FN8. Section 105(a) empowers the bankruptcy court to exercise its equitable powers, where "necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105.

A court may impose civil contempt sanctions where there is clear and convincing evidence that (1) a valid order of the court existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order. See *Robin v. Woods,* 28 F.3d 396, 399 (3d Cir.1994); *In re Close,* 2003 WL 22697825 at * 10.

As to the first requirement, "[a] valid order is one whose terms are specific and definite." *In re Close,* 2003 WL 22697825 at * 10 (citation omitted). The discharge order encompasses a statutory injunction that prohibits any attempt to collect a debt that has been discharged. See 11 U.S.C. § 524(a)(3). This general prohibition obviously includes a telephone call to collect a discharged debt. The face of the discharge order itself states:

*3 The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

...

SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.
The back of the document states:
EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE

...

Collection of Discharged Debts Prohibited
The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor.

The discharge order, with the accompanying detailed explanation is "specific and definite" and satisfies the first requirement for the imposition of a civil contempt sanction.

The second requirement--that the creditor has knowledge of the order--is also present. At some point in time, shortly after November 29, 2005, but certainly and indisputably by December 21, 2005, GMAC was on notice that the discharge order was in effect. When the Debtor returned the multiple phone calls from the GMAC representatives, he advised them that he had completed a bankruptcy case and provided the GMAC representatives with the docket number and his attorney's contact information. In addition, his attorney notified GMAC representative, Mr. Foster, on two separate occasions of the discharge order. Therefore, GMAC had knowledge of the discharge order. [FN9]

> FN9. It is of no matter that GMAC was not on the creditor mailing list (i.e., the mailing "matrix," see Fed. R. Bankr.P. 1007(a)). GMAC was on notice that the Debtor was in bankruptcy when Mr. McCullough sent GMAC a copy of Amended Schedule F on November 1, 2005. After November 1, 2005, any collection effort prior to the date of discharge, November 29, 2005, would have been prohibited by the automatic stay, 11 U.S.C. § 362. After the discharge order was issued, the Debtor testified that he informed GMAC representatives, when he returned their calls, that he had gone through bankruptcy and that his debt was discharged. I also find that GMAC was on notice as of December 21, 2005--the date Mr. McCullough spoke with Mr. Foster and advised him of the discharge order. Thereafter, GMAC contacted the Debtor twelve more times, nevertheless.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1560936                              FOR EDUCATIONAL USE ONLY                                                    Page 4
--- B.R. ----, 2006 WL 1560936 (Bankr.E.D.Pa.)
**(Cite as: 2006 WL 1560936 (Bankr.E.D.Pa.))**

The third element for civil contempt also has been proven. Despite the efforts of both the Debtor and Mr. McCullough, GMAC did not cease its collection activity. Based on the log the Debtor maintained of the collection calls he received, representative of GMAC contacted the Debtor sixteen (16) times between the November 29, 2005 discharge order and the March 1, 2006 hearing. GMAC clearly disobeyed the discharge order and has not come forward with any explanation for its unlawful conduct.

**B. Sanctions for Violation of the Discharge Order**

I will now address the Debtor's request for sanctions.

Sanctions for civil contempt serve two purposes: (1) to coerce the disobedient party into compliance with the court's order; and (2) to compensate for losses sustained by the disobedience. _Woods, 28 F.3d at 400_. The court has broad discretion in selecting appropriate sanctions. _In re Chambers, 324 B.R. 326 (N.D.Ohio 2005)_ (citing _In re Tubbs, 302 B.R. 290, 291 (Bankr.W.D.Ark.2003)_). Upon a finding of civil contempt, a bankruptcy court has the power to issue sanctions such as costs, compensatory damages and attorneys' fees. _See McDonald's Corp. v. Victory Investments, 727 F.2d 82 (3d Cir.1984)_;; _In re Foltz, 324 B.R. 250, 253 (Bankr.M.D.Pa.2005)_; _In re Ray, 262 B.R. 580, 585 (Bankr.D.Me.2001)_.

I find the Debtor is entitled to a total of $6,260 in damages comprised of three (3) components: (1) $140 in actual damages for loss of one (1) paid vacation day that the Debtor used to appear before me on March 1, 2006; (2) $5,000 in actual damages for the emotional distress the Debtor suffered; and (3) $1,120 to pay for the Debtor's attorney's fees and costs.

**1. Lost Wages**

*4 The Debtor testified that he had to take one (1) paid vacation day to appear before me on March 1, 2006. The Debtor explained that a paid vacation day is equivalent to one day's salary, which is approximately $140 per day before taxes. The Debtor is entitled to compensation for the lost wages he incurred by his use of one paid vacation day. _See In re Chambers, 324 B.R. at 331_ (lost wages as an award to debtor for violation discharge injunction).

**2. Emotional Distress**

The Third Circuit has not ruled on whether an award of emotional distress damages for civil contempt is permissible, or whether § 105 authorizes a bankruptcy court to award emotional damages for violation of the discharge injunction. However, several bankruptcy courts have allowed an award of emotional damages for violation of the discharge injunction. _See e.g. In re Feldmeier, 335 B.R. at 814_; _In re Barry, 330 B.R. 28, 37-38_; _In re Gervin, 337 B.R. at 862-64_; _In re Perviz, 302 B.R. 357, 371 (Bankr.N.D.Ohio 2003)_; _In re Poole, 242 B.R. 104, 112 (Bankr.N.D.Ga.1999)_. Contra, _In re Bock, 297 B.R. 22, 29 (Bankr.W.D.N.C.2002)_ (citing _In re Walters, 868 F.2d 665, 670 (4th Cir.1989)_ (emotional distress not available for civil contempt)).

I am persuaded by these decisions. One significant remedial purpose of a bankruptcy discharge order is to prevent the emotionally harmful conduct associated with debt collection tactics. The discharge injunction is intended to rid the honest debtor from this burden and provide a right that has been commonly referred to as a "fresh start." As articulated by the _Gervin_ court,
> A significant component of the fresh start is being free of the kinds of harassment, threats, and anxiety that debtors were suffering before they filed. Threats and harassment are the first and most effective collection devices most creditors employ--far more prevalent and far more cost-effective than formal litigation. These methods work precisely because they inflict emotional distress on debtors, at a sufficient level of pain to motivate debtors to pay money to the creditor to make the pain stop. Outside of the bankruptcy, inflicting that pain as a means of debt collection is legitimate (within the parameters of other legal limitations). Once the debtor receives a discharge in bankruptcy, however, that particularly painful device for debt collection is supposed to stop. When a creditor insists on continuing to inflict the same painful methods on a debtor in contempt of Congress' injunction, they must now compensate for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1560936                    FOR EDUCATIONAL USE ONLY                              Page 5
--- B.R. ----, 2006 WL 1560936 (Bankr.E.D.Pa.)
(Cite as: 2006 WL 1560936 (Bankr.E.D.Pa.))

the damages caused--and those damages are real. Indeed, no one knows that better than the creditors themselves. They know they are inflicting pain, because they know that's what motivates debtors to make them go away.
In re Gervin, 337 B.R. at 863.

I agree fully with the Gervin court analysis. Regardless whether it is appropriate to award damages for emotional distress for the violation of a court order in other contexts, in my view, such damages should be awarded (when suffered by a debtor) for violation of a bankruptcy discharge order. This is because there is a direct nexus between the purpose of the discharge order and the emotional distress which may result from the violation of the order. [FN10]

> FN10. Obviously, such damages need not necessarily be awarded in every case. Some violations of the discharge order may be minor or technical. Even if a violation is more serious, some debtors may have a "thicker skin" than others and may not experience any material distress. However, some debtors are fragile and vulnerable. The propriety of an award of damages for emotional distress must be considered on a case by case basis.

*5 Those courts which have granted damages for emotional distress as a contempt remedy have found that a Debtor's own testimony is sufficient and that medical testimony is not necessary. See e.g., In re Feldmeier, 335 B.R. at 814-15 ($10,000 awarded to debtor for emotional distress without medical testimony); In re Barry, 330 B.R. at 37 (awarding $5000 for emotional damages from debtor's testimony of stress and loss of sleep, but not for alleged diverticulitis absent testimony from medical professional); In re Poole, 242 B.R. at 112 (awarding $1,200 for emotional distress without medical testimony). See generally In re Stewart, 2000 WL 1194437 at *5 (Bankr.S.D.Ga. July 9, 2000) (quoting In re Washington, 172 B.R. 415, 427 (Bankr.S.D.Ga.1994) (medical testimony is unnecessary but proof of mental anguish must be more than "fleeting and inconsequential"); In re Chambers, 324 B.R. at 331 (stating that there must be some "discernable level of corroborating evidence" and that "self-serving" testimony from debtor and his wife is not enough).

Here, the Debtor testified that the phone calls he received from GMAC representatives at his place of work caused him embarrassment and humiliation. Avoiding such embarrassment was part of the reason the Debtor filed for bankruptcy in the first place. Often, messages were left on the office's general voice mailbox for other employees to hear. The Debtor testified that he suffered from headaches, stress and anxiety as a result. He did not receive any healthcare treatment or prescribed medication to deal with such problems, however.

I found the Debtor's testimony credible. I observe further that, while the Debtor's emotional distress was relatively modest, it was real. Therefore, I will award the Debtor $5,000 for the mental anguish he endured for three months in response to GMAC's repetitious and aggravating conduct.

### 3. Attorneys fees

The Motion requests attorney's fees and costs.

Bankruptcy courts have routinely awarded attorneys' fees as a sanction against a party that violates the discharge injunction upon a finding of contempt. In re Beck, 272 B.R. at 126 (citing In re Thomas, 184 B.R. 237, 241 (Bankr.M.D.N.C.1995) (citing cases)). The Debtor testified that he has agreed to pay his counsel's fees and costs that have been incurred in responding to GMAC's improper collection efforts. I admitted into evidence an itemized bill dated February 28, 2006 from Mr. McCullough for his services from December 13, 2005 through March 1, 2006. Mr. McCullough estimated that he spent a total of six (6) hours at $150 per hour and $220 for the filing fee to reopen the bankruptcy case. [FN11] As I find these figures reasonable, I shall award the Debtor $1,120 to pay for Mr. McCullough's attorneys fees and costs. [FN12]

> FN11. The six hours includes Mr. McCullough's estimation of 3.2 hours for attending the March 1, 2006 hearing.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1560936
--- B.R. ----, 2006 WL 1560936 (Bankr.E.D.Pa.)
(Cite as: 2006 WL 1560936 (Bankr.E.D.Pa.))

FOR EDUCATIONAL USE ONLY

Page 6

> FN12. The Debtor has not requested punitive damages. In light of the totality of the remedy awarded, I find it unnecessary to determine whether I have authority to award punitive damages as a contempt remedy. *See generally, In re Dyer,* 322 F.3d 1178, 1193 (9th Cir.2003) (collecting cases).

An appropriate Order follows.

### ORDER

AND NOW, upon consideration of the Debtor's Motion for Sanctions Against General Motors Acceptance Corporation for Violation of Discharge Injunction, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that,

*6 1. Debtor's Motion for Sanctions Against General Motors Acceptance Corporation for Violation of Discharge Injunction is GRANTED.

2. Debtor is awarded $6,260 in damages for General Motors Acceptance Corporation's violation of the Court's discharge order dated November 29, 2005.

2009320604

2009320604

--- B.R. ----, 2006 WL 1560936 (Bankr.E.D.Pa.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.