IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORPORAL B. KURT PRICE;<br>CORPORAL WAYNE WARREN; and<br>SERGEANT CHRISTOPHER D. FORAKER,<br><br>    Plaintiffs,<br><br>    v.<br><br>COLONEL L. AARON CHAFFINCH, individually<br>and in his official capacity as Superintendent of the<br>Delaware State Police; LIEUTENANT COLONEL<br>THOMAS F. MACLEISH, individually and in his<br>official capacity as Deputy Superintendent of the<br>Delaware State Police; DAVID B. MITCHELL, in his<br>official capacity as the Secretary of the Department<br>of Safety and Homeland Security of the State of<br>Delaware; and DIVISION OF STATE POLICE,<br>DEPARTMENT OF SAFETY AND HOMELAND<br>SECURITY, STATE OF DELAWARE,<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: C.A.No.04-956-GMS<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEYS FEES, INTEREST AND COSTS RELATING TO ATTORNEY'S FEES AND COSTS OF MARTIN D. HAVERLY, ATTORNEY AT LAW, PURSUANT TO 42 U.S.C. § 1988 AND FED.R.CIV.P. 54**

<u>ARGUMENT</u>

I.   **EACH PLAINTIFF IS A PREVAILING PARTY.**

The Court has entered judgment against the defendants. (D.I. 186). Their post-trial motion is pending. The affirmation of the judgment by the Court is the only necessary predicate to a fee and costs award at this time. If the Court upholds the jury verdict, the changed legal relationship between the parties which the judgment evidences will be affirmed.

The only condition precedent to determining the lodestar is a determination under 42 U.S.C. § 1988 whether plaintiffs are a prevailing party, which in light of the jury verdict and judgment in this case is self evident. "To qualify as a prevailing party, a civil rights plaintiff ... must obtain an enforceable judgment against the defendant from whom fees are sought." <u>Farrar v. Hobby</u>, 506 U.S. 103, 111 (1992).

1

That judgment has already been obtained. (D.I. 186). Accordingly, plaintiffs are prevailing parties.

The primary purposes of this lawsuit are found in the Wherefore Clause of the Complaint. (D.I. 1). Among other things, plaintiffs sought a declaration that their statutory and Constitutional rights had been violated (which is found in the jury interrogatory) and also compensatory damages. (D.I. 1). Here the Supreme Court has adopted what it has termed a "generous formulation," and it has held that parties may be considered "prevailing parties" for attorneys' fees purposes if they succeed on any significant issue in litigation that advances all or some of the benefits they seek to achieve. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This includes "some relief on the merits of [the] claim[,]" Hewitt v. Helms, 482 U.S. 755, 760 (1987), which "*affects the behavior of the defendant toward the plaintiff[,]*" Rhodes v. Stewart, 488 U.S. 1, 4 (1988) (emphasis in original), and which "changes the legal relationship between [the parties]." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989). All that has been accomplished herein. The "actual relief" obtained in this lawsuit thus was "substantial" and "materially alter[ed] the legal relationship between the parties" by financially "modifying the defendant's behavior in a way that directly benefit[ed] the plaintiff[s]" and the community. Farrar, 506 U.S. at 111-12.

No doubt sensing that they will lose their post trial motions, defendants argue that the Court should stay its hand and hold the fee and costs motion in abeyance until after they take an appeal. They argue that only after they have lost that appeal should the Court take up this stale file again and rule on fees and costs. Then another costly round of appeals will begin. But the authority for this convoluted manner of proceeding is rather thin and as a general rule does not support this position. (DAB at 5).

The Third Circuit and Supreme Court cases cited by the defense are not applicable to this case. In Sweitlowich v. County of Bucks, 620 F.2d 33 (3d Cir. 1980) (DAB at 5), the Third Circuit held that a plaintiff who successfully appealed and overturned a defense verdict and judgment was not yet a prevailing party for fees purposes. Similarly, in Hanrahan v. Hampton, 446 U.S. 754 (1980), the Supreme Court held that a plaintiff who prevails on an appeal which entitles him to a new trial is not yet a prevailing party. Unlike the plaintiffs in those cases, present plaintiffs have obtained both a jury verdict

2

and the Court has entered judgment against defendants. This is more than sufficient to achieve prevailing party status. Farrar, 506 U.S. at 111; see Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1234 (10th Cir. 2001) ("[u]sually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)(1)") (quoting Wright & Miller, Federal Practice & Procedure, § 2667).

"Disfavoring piecemeal appeals is a long-standing policy of the federal courts." Sussex Drug Products v. Kanasco, Ltd., 920 F.2d 1150, 1153 (3d Cir. 1990). Piecemeal proceedings or multiple appeals will serve neither the interests of judicial economy nor the "just" and "speedy" conclusion of this litigation. Fed.R.Civ.P. 1. Given that all issues in this case are simultaneously ripe for adjudication, there is no need for two appellate panels to address our present suit in light of the thousands of cases which currently clutter the Third Circuit's docket.

Fed.R.App.P. 4(a)(4)(A)(iii) also reflects the nationwide policy against such piecemeal appeals involving attorney's fees. The current version of that rule provides that there is no jurisdiction whatsoever for any appeal in a case in which a fee application is pending below, provided that the trial court under Fed.R.Civ.P. 58 extends the time for appeal, if it has ruled on other post trial motions but still has a fee application pending. Obviously, the appellate rules frown on piecemeal attorney's fees appeals unless highly unusual circumstances warrant it. Ours is not such a case, and the defendants have offered no reason either in the record or logic to convince the Court otherwise. Rather, resolving these issues now will further the policy against piecemeal appeals by "ensur[ing] efficient administration of scarce judicial resources." Lusardi v. Xerox Corp., 747 F.2d 174, 177 (3d Cir. 1984). In the same way, in light of the "unequal economic resources" of the parties in this case, resolution of the attorneys fees issue will "protect[ ] the judicial process and its participants from the delay which can prove advantageous to a well-financed litigant, and fatal to the less well-endowed." Id.

II.  **THE NUMBER OF HOURS EXPENDED ARE REASONABLE.**

**A. Introduction.** "[A] court may not reduce counsel fees *sua sponte* as excessive, redundant, or otherwise unnecessary in the absence of a sufficiently specific objection to the amount of fees requested." U.S. v. Eleven Vehicles, Their Equipment and Accessories, 200 F.3d 203, 211 (3d Cir. 2000) (internal punctuation omitted). With the exception of the limited areas discussed below, the defense has raised no objection in our case, conceding that all other time was reasonably spent.[1] In calculating the lodestar, "the district court may not award less in fees than requested unless the opposing party makes specific objections to the fee request." Id. As the Third Circuit has stated,

> when an opposing party has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure, and declines to do so, no reason occurs to us for permitting the trial court to disregard uncontested affidavits filed by a fee applicant.

Id. at 212; see also McDonald v. McCarthy, 966 F.2d 112, 119 (3d Cir. 1992) ("We hold that where a party fails to challenge the accuracy of representations set forth in a fee petition, the current submissions provide the necessary record basis for the district court's fee determination ... [the Court may not] disregard the uncontested affidavits filed by the plaintiff.") (internal punctuation omitted). "A district court may not 'decrease a fee award based on factors not raised at all by an adverse party.'" Eleven Vehicles, 200 F.3d at 212 (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)). "The rationale for this prohibition is ... twofold. First, *sua sponte* reduction deprives the applicant of the right 'to offer evidence in support of the reasonableness of the request.'" Eleven Vehicles, 200 F.3d at 212 (quoting Bell v. United Princeton Properties, Inc., 884 F.2d 713, 719 (3d Cir. 1989)). "Second, 'because statutory fee litigation is adversarial litigation, there is no need to allow the district court to reduce a fee award on its own initiative.'" Id.

Accordingly, because defendants have only objected to several limited areas and because, as explained below, those objections are without merit, the Court need only multiply the total number of hours by the already agreed upon market rate of $290.00 per hour. As stated in plaintiff's Opening

---

[1] In addition, even as to contested time defendants do not dispute that the time was actually spent or that the time spent was excessive for that particular attorney to complete the task performed.

4

Memorandum on this issue (D.I. 195 at 13), the total number of hours after the exercise of billing discretion was 362.8 hours minus 1.4 hours,[2] totaling **361.4 hours** for Martin D. Haverly, Esquire and the total amount of fees that should be awarded to Martin D. Haverly, Attorney at Law is **$104,806.00**.

**B. The Time Spent on Summary Judgment Briefing Was Reasonable and Necessary to the Successful Litigation of This Case and So is Compensable.[3]**

**1. The Law.** "The purpose of [42 U.S.C.] § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." Hensley, 461 U.S. at 429 (internal punctuation omitted). "[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Id. (internal punctuation omitted).

The district court cases cited by the defense to the contrary (DOB at 6), under governing Third Circuit authority the "mere failure of certain motions ... is insufficient to warrant a fee reduction," and the critical issue is whether the hours spent were reasonable for the case. Blum v. Witco Chemical Corp., 829 F.2d 367, 378 (3d Cir. 1987) (citing Hensley, 461 U.S. at 435). It is immaterial that the Court ultimately found there to be a genuine issue of material fact preventing summary judgment against defendants. As discussed below, the Third Circuit, other Circuits and the Supreme Court all favor "treating a case as an inclusive whole, rather than as atomized line-items." Commissioner, INS v. Jean, 496 U.S. 154, 161-62 (1990).[4]

In the Third Circuit, the "mere failure of certain motions ... is insufficient to warrant a fee reduction." Blum, 829 F.2d at 378 (and noting that "the Supreme Court has rejected the notion that the fee award should be reduced 'simply because the plaintiff failed to prevail on every contention raised in

---

[2] As detailed later herein, Plaintiffs withdrew 1.4 hours relating to the media time prior to Defendants filing their answering brief.

[3] Defendants do not dispute the actual amount of time spent by plaintiff's counsel. They only dispute the decision to prepare and file plaintiffs' Motion and briefing for Summary Judgment.

[4] The District of Delaware has held the same. See Ballen v. Martin Chevrolet-Buick of Del., 1998 WL 1013874, at *2 (D.Del. Sept. 17, 1998) ("Section 1988 rewards a plaintiff who ultimately prevails - - who wins the war - - without deducting for lost battles along the way").

the law suit'"). The Third Circuit has gone so far as to hold that the time spent on an unsuccessful summary judgment motion and brief is compensable even if it was never filed or considered on the merits, if it was later "relied" on in the course of the litigation. Planned Parenthood of Central N.J. v. Attorney General of the State of N.J., 297 F.3d 253, 271 (3d Cir. 2002). In Planned Parenthood, the Court found that since "the summary judgment brief was eventually submitted in lieu of a pre-trial brief, and a post-trial brief, the work was certainly 'necessary' and 'useful,'" and that a fee award was appropriate. Id.

The Third Circuit approach is in accord with existing U.S. Supreme Court precedent on the topic. In Commissioner, INS v. Jean, 496 U.S. 154, 161-62 (1990), the Supreme Court noted that "fee-shifting statutes ... favor[] treating a case as an inclusive whole, rather than as atomized line-items." "Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee." Hensley, 461 U.S. at 435.[5] "Normally, this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."[6] Id. "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id.

In the same way, other courts also have held that time spent on failed motions is recoverable under attorneys' fees statutes. The defense claim that the summary judgment time was "frivolous" (DAB at 6) is remarkably similar to a claim the Seventh Circuit rejected in Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516 (7th Cir. 1995). There, the defendants argued that fees should be denied for time spent on allegedly "failed and useless activities." Id. at 526. The Seventh Circuit rejected this approach, stating that

> Common sense ... informs us that such a rule is inappropriate. There is a significant difference between frivolous claims and colorable but unsuccessful claims. Were we to deem unreasonable the reimbursement of fees incurred for the latter, we would be discouraging the type of

---

[5]The Court can take judicial notice that $1.9 million in a civil rights case in this District is an excellent result.

[6]Although potentially allowable in this case, plaintiffs' are not seeking an enhanced award.

6

representation attorneys are duty-bound to provide. So long as statutes allow prevailing parties to recover attorneys' fees "reasonable" in amount, we are not prepared to link our definition of "reasonable" to whether the fees are incurred in pursuit of a successful task.

Id.; see also Aston v. Secretary of Health and Human Services, 808 F.2d 9, 11-12 (2d Cir. 1986) (finding that time spent "unnecessarily moving for summary judgment" was recoverable); Wales v. Jack M. Berry, Inc., 192 F.Supp.2d 1313, 1321 (M.D.Fla. 2001) (citing Hensley, 461 U.S. at 440, and noting that "time is not excluded simply because a motion is denied or a task proves unsuccessful").

The cornerstone of the defense argument is Judge Robinson's opinion in Fini v. Remington Arms Co., 1999 WL 825604 (D.Del. Sept. 24, 1999), which is cited for the proposition that motions that have been denied are not compensable. (DAB at 6-8). But this District Court opinion is contrary to the authority discussed above. Second, and more importantly, three years later, the Third Circuit overruled it when it issued its opinion in Planned Parenthood, 297 F.3d 253, with a holding contrary to that of the Fini case. In Planned Parenthood, the Third Circuit found that because an unsuccessful summary judgment brief was "relied" on during a later part of the case, it was "necessary," "useful" and thus the time spent on it was fully compensable. Id. at 271. This Third Circuit precedent is decisive for the current issue.

**2. The Time Spent at Summary Judgment Was Both Useful and Necessary To Other Parts of the Litigation.** Unfortunately for defendants, the work done by plaintiffs at summary judgment was "relied" upon during several later stages of the case and thus was both "necessary" and "useful" to the successful completion of this litigation. Accordingly, it is fully compensable under Planned Parenthood. Id.

First, the very same factual and legal record compiled by plaintiffs in support of their motions for summary judgment, was necessary to oppose and ultimately defeat the defense's own motions for summary judgment on these same issues.

Plaintiffs moved for summary judgment on their Free Speech and Petition Clause retaliation counts in three areas. (1) That they had engaged in protected speech and petition clause activity.[7] (2) that

---

[7] Such a purely legal question, Hill v. City of Scranton, 411 F.3d 118, 127 (3d Cir. 2005), is entirely appropriate for summary judgment and the Court has granted summary judgment on this issue in

7

no reasonable jury could conclude that their protected activity was not a substantial or motivating factor in the retaliation against them.[8] (3) That defendants had waived their same decision anyway affirmative defense by failing to raise it in their Answer.[9] (See Price at D.I. 84; Foraker at D.I. 64).

Defendants also moved for summary judgment on the following grounds on plaintiffs' Free Speech and Petition Clause counts: (1) That plaintiffs had not engaged in protected petition clause activity;[10] (2) that there was no causal evidence with which to establish that plaintiffs' protected activity was a substantial or motivating factor; (3) that defendants would have made the same decision anyway; (4) that no adverse action was taken against plaintiffs; (5) that defendants were entitled to qualified immunity; and (6) that Chaffinch had a First Amendment right to defame Sgt. Foraker.[11] (See Price at D.I. 81; Foraker at D.I. 62). It is clear that these areas overlap with the areas moved on by plaintiffs. Accordingly, because the same facts and law were necessary to defeat the defense's own summary judgment motions, plaintiffs motions were useful and necessary, and thus are fully compensable.

---

the past. See Springer v. Henry, 2002 WL 389136 (D.Del. March 11, 2002).

[8] Given that this factor does not require that "but for" causation be proven, Suppan v. Dadonna, 203 F.3d 228, 236 (3d Cir. 2000); see Hill, 411 F.3d at 126 n.11 ("'Substantial factor' does not mean 'dominant' or 'primary' factor."), but instead only requires plaintiffs to prove that their protected activity "played a role" in the adverse action, Miller v. Cigna, Corp., 47 F.3d 586, 597 n.9 (3d Cir. 1995) (en banc); see Suppan, 203 F.3d at 236, moving on this issue is certainly not frivolous as the defense claims. It was not unreasonable for plaintiffs to move on this issue, even though defendants denied that plaintiffs' protected activity was the 'but for' cause of the retaliation against them, because 'but for' causation was not required and there was an extraordinary amount of causation evidence - eleven separate categories. (See Price at D.I. 84; Foraker at D.I. 64).

[9] Given that this is an "affirmative defense," Nicholas v. Pa. State Univ., 227 F.3d 133, 144 (3d Cir. 2000), that Fed.R.Civ.P. 8(c) explicitly requires that a party plead all such affirmative defenses in their answer, and that although raising several affirmative defenses in their answer, the defendants did not raise this one, it was not frivolous of plaintiffs to move on this ground as well.

[10] To the extent the defense may claim that the time plaintiffs spent briefing the free speech protected activity issue is not compensable because defendants did not move on it (and this is the sole area where the briefing does not overlap for present purposes), such a position is in error. Even though the Court initially denied plaintiffs' summary judgment motion (D.I. 135), in its later written opinion (D.I. 167), the Court nonetheless responded to plaintiffs' motion on this issue and held as a matter of law that they had "clearly engaged" in protected First Amendment free speech. Price v. Chaffinch, 2006 WL 1313178, *3 (D.Del. May 12, 2006). Thus, it is clear that plaintiffs prevailed on this issue.

[11] The defense also moved on plaintiffs' state law claims.

8

Second, the summary judgment time was useful and necessary to sift through the voluminous discovery record so that it could be reviewed and organized for use at trial. This briefing was subsequently used again at trial: (1) as a roadmap for the issues presented to the jury in opening and closing arguments; (2) as a road map and guide in the preparation of the testimony of nearly every one of plaintiffs' trial witnesses (with the exception of the spouses and experts); (3) as a guide to the medical records that were key to understanding the comparators which were presented at trial; and (4) in preparation of numerous demonstrative exhibits used during the trial. Accordingly, this work was relied upon at a later stage and is thus compensable.

Third, as the defense neglects to mention, much of plaintiffs' summary judgment briefing also was directly incorporated into plaintiffs' trial briefs, schedule (I) (1) of the pretrial order, in both cases.

Fourth, much of both the factual and legal analysis was incorporated into schedule (b) of the pretrial order, contested issues of fact and law.

Fifth, that same law was useful and key to the jury prayers on the various aspects of First Amendment retaliation (such as adverse action, substantial or motivating factor, and same decision anyway), punitive damages and other First Amendment issues.[12]

Sixth, much of the work product from summary judgment briefing has been recycled and used again in the post-trial briefing. For example, plaintiffs' moved at summary judgment on the issue of their having engaged in protected petition clause activity. As a result of the Court's invitation in its summary judgment ruling, plaintiffs renewed that motion post-trial and defendants moved on that ground as well.

Seventh, all this time was devoted generally to the litigation as a whole. It was not on any claim for which there was limited or no success in the case. Instead, it was devoted to the retaliation legal theories on which plaintiffs prevailed at trial. This work and time was completely related to successful claims in the case. It is not separable from the claims on which plaintiffs were successful and is fully

---

[12] Such as the defense request for a jury instruction on Chaffinch's First Amendment right to defame Sgt. Foraker, a request rejected by the Court, and a request they have renewed post-trial. The basis for plaintiffs' written submissions on the issue was the legal research done at summary judgment.

9

compensable. See Ballen, 1988 WL 1013874, *2 ("Section 1988 rewards a plaintiff who ultimately prevails - - who wins the war - - without deducting for lost battles along the way").

**C. Three Attorneys Representing Three Plaintiffs in this Case was Reasonable and Necessary to the Successful Litigation of this Case and So is Compensable.** Mr. Haverly and Thomas Neuberger represented Christopher Foraker in his first lawsuit against defendants. See C. A. No. 02-302-JJF. Initially, Mr. Haverly represented Sgt. Foraker in the present Foraker action in conjunction with The Neuberger Firm. Ultimately, given the complex nature of the Price case, Mr. Haverly began representing plaintiffs Price and Warren as well. So the three plaintiffs had three attorneys. Meanwhile, defendants have five attorneys of record in the case all of whom have participated substantively in the litigation, from taking depositions, to attending trial, from participating in chambers conferences and teleconferences to submitting and signing briefs and other pleadings. The cases were consolidated. So in actuality there were three plaintiffs with two cases rolled into one, which further justifies three attorneys.

There are certainly circumstances where a court can reasonably conclude that the use of multiple attorneys is not excessive. Bjorklund v. Phila. Housing Authority, 118 Fed. Appx. 624, 627 (3d Cir. 2004). In other words, the work of multiple attorneys is not *per se* unreasonable. Coalition To Save Our Children v. State Bd. of Educ. of State of Del., 143 F.R.D. 61, 63 (D. Del. 1992). Rather, if a suit presents "'multiple, complex legal questions,' is 'an issue of first impression,' or implicates issues of significant magnitude, the use of multiple attorneys, including partner-level attorneys may be appropriate." Jefferson v. City of Camden, 2006 WL 1843178, at * 9 (D.N.J. June 30, 2006) (citing Planned Parenthood of Cent. N.J. v. The Attorney General of the State of N.J., 297 F.3d 253, 272 (3d Cir.2002)). Although the work of multiple attorneys is most easily justified when it is a difficult or complex case and thus requires a "litigation team approach," courts will analyze the particular circumstances in order to determine whether the use of multiple attorneys was reasonable or, on the other hand, constituted "unacceptable over-lawyering." Coalition To Save Our Children, 143 F.R.D. at 64 (citation omitted) (reasoning that since there were three clients, several complex issues being raised and also numerous documents, the use of multiple attorneys was justified).

10

The case at bar was not a typical civil rights case. It involved three plaintiffs, a convoluted HVAC system, a broken building, seven expert witnesses and over 24,000 pages of documentation, just for starters. As the Eight Circuit has explained, the use of multiple attorneys when there are multiple parties is recognized by numerous courts as both "'desirable and common.'" A.J. by L.B. v. Kierst, 56 F.3d 849, 863 (8th Cir. 1995). Therefore, since there were three plaintiffs in this case, three attorneys is not only logical but is reasonable. Also, it is reasonable for there to be a "'larger-than-average legal team... due to... the reams of evidence which needed to be tracked and analyzed.'" Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992); see also Roe v. City of Chicago, 586 F. Supp. 513, 514 (N.D. Ill. 1984).

Reducing attorneys fees is only warranted if the attorneys "'unreasonably [did] the same work.'" Jefferson, 2006 WL 1843178, at * 9  (citing Rode v. Dellarciprete, 892 F.2d 1177, 1187 (3d Cir. 1990)); see, e.g. Coalition To Save Our Children, 143 F.R.D. at 64 (citations omitted). In Planned Parenthood of Central New Jersey v. The Attorney General of the State of New Jersey, the Third Circuit Court of Appeals declared that the "complexity and specialized medical knowledge necessary for the proper presentation of this case warranted the utilization of multiple attorneys," and that as such the case was efficiently staffed. Planned Parenthood of Central N.J., 297 F.3d at 272. Likewise, the court in Lenihan v. City of New York reasoned that there is a heightened efficiency in complex cases if an attorney brings in another attorney who has detailed knowledge of certain issues rather than trying to "'familiarize herself with all of the details of every issues in the case.'" Lenihan v. City of N.Y., 640 F. Supp. 822, 825 (S.D.N.Y. 1986); see also Vance v. Hegstrom, 629 F. Supp. 747, 750 (D. Or. 1985) (noting that it is reasonable for the plaintiffs to have multiple attorneys due to their dissimilar expertises). Also, according to the Ninth Circuit it is reasonable for there to be several attorneys when they are brought on for specialized purposes, since "'common experience indicates that lawyers often hire other lawyers to help them with specific issues in the case.'" Bouman v. Block, 940 F.2d 1211, 1236 (9th Cir. 1991); see also 2 Martin A. Schwartz, John E. Kirklin, Section 1983 Litigation Statutory Attorney's Fees § 4.4 (3rd Ed. 1997) (multiple attendance does not constitute duplication when its meant to "advance the case" rather than be "good experience for the onlooker.") All of the above cited cases highlight the principle that when

11

attorneys fulfill necessary separate roles, there is no duplication requiring a reduction in the attorneys' fees.

In this case, Mr. Haverly's economics background and past experiences in handling psychiatric witnesses naturally led to him work primarily on expert witness matters. The expert witnesses' testimony pervaded much of this case as their thoughts contributed a great deal to the damages owed to the plaintiffs. Because of this responsibility for all expert witnesses, Mr. Haverly reasonably needed to attend the rest of the trial where, for example, many other witnesses including plaintiffs themselves, testified at length about the same matters that were the subject of the expert's testimony- such as psychological injury and economic damages. Therefore, Mr. Haverly was needed at each day of the trial, not just the three days he questioned experts.

According to the Third Circuit Court of Appeals, time spent reviewing the facts and documents of a case is compensable for attorneys fees purposes when the time is spent by a "newly-assigned attorneys getting 'up to speed' on the plaintiff's case." Planned Parenthood of Central N.J., 297 F.3d at 271. This is especially so when the work of such "newly-assigned attorney" is necessary for the plaintiffs to secure a favorable outcome of the case. Id., at 271-72. Furthermore, an efficient "division of responsibility" often makes its advantageous for multiple attorneys to attend depositions, hearings, conferences, trials, and the like. 2 Martin A. Schwarts, John E. Kirklin, Section 1983 Litigation Statutory Attorney's Fees § 4.4 (3rd Ed. 1997). This principle refutes the defense's argument that it is unreasonable for the plaintiff's to seek payment for Mr. Haverly's time spent at depositions when such time clearly was necessary in order to familiarize himself with the Price case and simply reading the transcripts[13]- as suggested by the defense- would not achieve this.

In addition, according to the Supreme Court the extent of a plaintiff's success in a § 1988 suit is a crucial factor when a court determines the proper amount to award in attorneys fees. Hensley v. Eckerhart, 461 U.S. 424, 440 (1983). As such, given the result of a combined award of $1.9 million to the

---

[13]Which would have taken hours as well given that each individual defendants' deposition took about a day and Baylor's took three days.

12

plaintiffs, it seems logical that Mr. Haverly would be compensated for the reasonable amount of time he has identified as spent on this litigation.[14]

The cases cited by the defense in their answering brief have no bearing on the present suit and as such should not dictate the award of attorneys fees. Both the final decisions in Hensley v. Eckerhart, 461 U.S. 424, 440 (1983), and Maldonado v. Houston, 256 F.3d 181, 188 (3d Cir. 2001), do not discuss a reduction in attorneys fees due to the presence of multiple attorneys. Meanwhile, although the final decisions in Alliance for the Mentally Ill of Pennsylvania, Incorporated v. White ,and Herkalo v. National Liberty Corporation reflect a reduction in attorneys fees due to the presence of multiple attorneys, the reduction was enforced because the court felt that there was an overlap between the roles of the attorneys. Alliance for the Mentally Ill of Pa., Inc. v. White, 1992 WL 212431, at * 2 (E.D. Pa. Aug. 28, 1992) (reasoning that "because of the overlap of counsel's expertise and the number of lawyers used, some reduction in the lodestar is warranted); Herkalo v. Nat'l Liberty Corp., 1997 WL 539754, at * 5 (E.D. Pa. Aug. 7, 1997) (reasoning that the time-sheets show that both attorneys jointly participated in almost all aspects of the suit). Unlike the attorneys in White and Herkalo, Martin Haverly's role in this litigation was handled in an efficient manner. Each plaintiffs' attorney filled a different void which if not present would have weakened the plaintiffs' case. As such, Mr. Haverly should be fully compensated.

It was necessary for Mr. Haverly to be at the entire trial in order to insure that the witnesses he questioned were consistent with the rest of the case. Moreover, during trial he prepared a bench memo concerning the experts and argued motions and objections relative to the expert witnesses. In addition to addressing the Court at times throughout the trial (i.e. Trial Transcript 140, 177, 289, 292, 486) on days for which defendants argue he should not be paid, he also provided help to co-counsel throughout the trial by taking notes, passing potential questions and arguments to co-counsel, and identifying depositions for co-counsel for witnesses whose trial testimony he prepared.

---

[14] Indeed, adding the Neuberger Firm and Martin D. Haverly's attorneys fees totaling approximately $750,000 to the $1.9 million jury award produces a total award of $2.65 million of which the 750,000 in attorneys fees is less than 30%.

13

Rather than reviewing reams of documents concerning the case in order to familiarize himself with the case, he attended 25.0 hours of depositions.[15] Moreover, he was active during the depositions he attended. In addition to objecting at times during the depositions, he handed potential questions for Stephen Neuberger, Esquire to ask. Moreover, he did not attend all the depositions by any stretch. He only attended the key depositions of defendants Chaffinch and MacLeish, and Ret. Maj. Baylor. In addition, he prepared the trial testimony of sixteen witnesses. Moreover, his background as an attorney for 13 years indicates that he was merely an on looker. His attendance at the trial and/or the depositions were by no means a training exercise.

Given Mr. Haverly's background and experience, D. I. 195, Ex. A, Decl. ¶ 4-7, his participation at trial and in the depositions was reasonable. The fact that in the past he frequently would handle economic and psychiatric damages issues explains why he was brought into this case which had more than the typical experts one would see in a civil rights case. Moreover, the fact that he has a background in economics with an economics degree from the College of William and Mary further bolsters this argument, as does the fact that the experts needed to testify about three plaintiffs as opposed to one plaintiff. The efficiency obtained by plaintiffs' legal team also leads to the conclusion that no time should be deducted based on the fact that the three plaintiffs were represented by three attorneys. Moreover, he was not merely an onlooker first year attorney during the days of trial when he did not question witnesses, and it was necessary for him to be present throughout the entire trial to ensure that the expert testimony was consistent with the evidence adduced at trial.

**D. The Time Related to Media Activity Has Already Been Removed in the Exercise of Billing Discretion.** By email dated July 5, 2006 at 7:57 a.m. (attached as Exhibit A) Mr. Haverly indicated that plaintiffs were withdrawing the time Mr. Haverly expended on media related activity that

---

[15]Mr. Haverly did review medical records and number of other documents concerning the case. But he was spared the necessity of reviewing all 24,000 documents because he instead attended some of the depositions. Thus, his attendance at the depositions probably decreased the total lodestar.

14

had been inadvertently included. This totals 1.4 hours, or $406.00.[16]

**E. State Law Claims.** The defense also claims that plaintiffs cannot recover for time spent on matters exclusively related to their state law claims. (DAB at 11-12). Plaintiffs do not dispute this appraisal of the law. Plaintiffs do dispute the arbitrary adoption of an 1/8 deduction given that (1) with the exception of the summary judgment briefing, all of the work done on the state law claims were done in furtherance of the larger First Amendment retaliation claim, and (2) Mr. Haverly already deducted all of his time relating to the summary judgment briefing of the state law claims.

**1. The Defamation Claim is a Lesser Included Part of the First Amendment Retaliation Claims.** However, under the facts of our case, all facts related to Foraker's state law defamation claim are encompassed within the larger First Amendment retaliation claim - for which fees are recoverable under §1988. In other words, under the facts of our case, the defamation claim is a lesser included part within the larger First Amendment retaliation counts. Thus, all facts and time related to prosecution of the defamation claim are still actionable under the First Amendment retaliation claim.

Thus, even without the state law defamation count, plaintiff still would have presented the same evidence because it pertains to his retaliation claims - that defendant Chaffinch went on a local, national and international media campaign and defamed Sgt. Foraker by blaming him for the disaster at the FTU in retaliation for his earlier lawsuit and for speaking out about the FTU. Indeed, defense counsel himself has already admitted that the defamation claim is a lesser included part of the larger retaliation counts. As he said at trial, the claims and damages overlap and cover the same conduct. For example, in Mr. Ellis' words, "I mean the defamation claim and the First Amendment claim are both saying Foraker is damaged goods ... It's duplicative ... the damages for the defamation is going to be folded into the larger claim." (Ellis 2397-98). Thus, it is clear that the defense request to reduce all time expended by one eighth (DAB at 11-12) is arbitrary, misguided and clearly mistaken. Plaintiffs' lodestar should not be reduced.

---

[16]As a result, the amount plaintiffs are seeking for attorney's fees relating to the law firm of Martin D. Haverly, Attorney at Law for time expended through May 31, 2006, is **$104,806.00**. The costs incurred by Martin D. Haverly, Attorney at Law through May 31st are **$483.14**.

**2. Time Relating to the Summary Judgment Briefing of State Law Claims Has Already Been Deleted in the Exercise of Billing Discretion.** Nevertheless, a review of the supporting documentation attached to Plaintiffs' Opening Memorandum (D. I. 195) indicates that in an exercise of caution, Mr. Haverly has already deleted time related to summary judgment briefing of State law claims. A comparison between Tab 1 to Ex. A of Foraker Billing Prior to Exercise of Billing Discretion, p. 9 and Tab 4 to Ex. A, Foraker Billing After Exercise of Billing Discretion, p. 9 reveals that from January 31, 2006 through February 7, 2006, Mr. Haverly spent 22.2 hours of time on State law claims relating to Plaintiffs' Summary Judgment Answering Brief and then deducted it from his lodestar. D. I. 195, Tabs 1 & 4 to Ex. A. This totals $6,438.00. Mr. Haverly already deleted this amount in the exercise of billing discretion.[17] So there should be no redaction in Mr. Haverly's requested $104,806.00 of attorney's fees due to work on State law claims.

**F. Prejudgment.** This issue is discussed in the Reply by The Neuberger Firm, which is being filed contemporaneously with this Reply.

**G. Post-Judgment Interest.** Defendants do not challenge that plaintiffs are entitled to post-judgment interest running from the May 31, 2006 jury verdict into the future, nor could they. See 28 U.S.C. § 1961.

**H. Costs Incurred by Martin D. Haverly, Attorney at Law.** Defendants do not dispute the $483.14 costs incurred by Martin D. Haverly, Attorney at Law.[18]

## CONCLUSION

For the reasons discussed above and in D. I. 195 it is respectfully requested that up to May 31, 2006, the Court: (a) make an award of attorneys fees to Martin D. Haverly, Attorney at Law in the amount

---

[17] January 31, 2006 includes entries for 0.2 and 1.2 hours relating to State law summary judgment issues. February 2, 2006 includes entries for 0.7 and 2.1 hours. February 3, 2006 includes entries for 1.5, 1.4, and 0.9 hours. February 6, 2006 includes an entry for 7.4 hours and February 7, 2006 provides an entry for 6.8 hours. All of these 22.2 hours were exercised in the exercise of billing discretion. (See D.I. 195, Tab 1 to Ex. A, p. 9 and Tab 4 to Ex. A, p. 9.)

[18] See D. I.195 at 16-17 and D. I. 214.

of **$104,806.00**, (b) make an award of expenses and costs for this case for Martin D. Haverly Attorney at Law in the amount of **$483.14**, and ( c) award post- judgment interest on those amounts from the date of the jury verdict on May 31, 2006.

The fees and costs award should run against the State Defendant, as well as the individual defendants in their official and individual capacities.

Respectfully Submitted,

**MARTIN D. HAVERLY, ATTORNEY AT LAW**

/s/ Martin D. Haverly
**MARTIN D. HAVERLY, ESQUIRE (#3295)**
Two East Seventh Street, Suite 201
Wilmington, DE 19801
(302) 6545-2255
Martin@HaverlyLaw.com

Dated: July 14, 2006                Attorney for Plaintiffs