# UNREPORTED CASES

Westlaw.



Briefs and Other Related Documents
Only the Westlaw citation is currently available.NOT FOR PUBLICATION
United States District Court, D. New Jersey.
Fred JEFFERSON, et al., Plaintiffs,
v.
CITY OF CAMDEN, et al., Defendants.
**Civil No. 01-4218(RBK).**

June 30, 2006.

William H. Buckman, Moorestown, NJ, Troy A. Archie, King Archie & King, Camden, NJ, for Plaintiffs.
Frank A. Salvati, Office of City Attorney, Camden, NJ, Brian Stephen O'Malley, Haddon Heights, NJ, Dennis J. Melofchik, Schibell & Mennie, LLC, Ocean, NJ, for Defendants.

**OPINION**

KUGLER, United States District Judge.

***1** This matter comes before the Court upon motions by Plaintiffs Fred Jefferson, et al. ("Plaintiffs"), for attorney fees and costs from Defendant Lee Solomon ("Defendant" or "Solomon"), and to file an overlong brief in reply. For the reasons set forth below, Plaintiffs' motion for fees shall be granted in part and denied in part and Plaintiffs' motion to file an overlong brief shall be granted.

**I. Background**[FN1]

FN1. As the parties are now intimately familiar with the background and procedural history of this litigation, the facts are not recited here at length except as necessary to aid in understanding this disposition.

Plaintiffs, a group of six African-American and Latino police officers in the Camden, New Jersey, police force,[FN2] commenced the above-captioned litigation against several Defendants, including City of Camden ("Camden"), Chief of Police Robert Allenbach, Camden County Prosecutor Lee Solomon ("Solomon"), and the New Jersey Department of Civil Service (collectively, "Defendants"), on September 5, 2001, alleging that they were denied promotions to sergeant positions on the basis of their race. Plaintiffs alleged violation of the New Jersey Law Against Discrimination ("NJLAD"), the New Jersey Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and 42 U.S.C. § 1985, as well as claims for intentional infliction of emotional distress, breach of contract, slander, and tortious interference.

FN2. The suit was initially filed by eight Plaintiffs; however, Plaintiffs Bruce Abraham and Michael Hearne withdrew from the litigation on March 21, 2003, and April 21, 2003, respectively.

Solomon moved to dismiss on February 3, 2003, and the other Defendants joined the motion. The case was subsequently transferred to this Court on May 29, 2003. On September 25, 2003, this Court granted in part and denied in part the motion, dismissing with prejudice Plaintiffs' claims under § 1986, for injunctive relief under § 1983, and for slander, and dismissing without prejudice Plaintiffs' claims for state constitutional violations, intentional infliction of emotional distress, breach of contract, tortious interference, and claims pursuant to § 1983 and § 1981. The Court declined to dismiss the remainder of Plaintiffs' claims, including their allegations under the NJLAD. Plaintiffs filed a Second Amended Complaint on October 15, 2003, reinstating the claims that had been dismissed without prejudice.

In August and September 2004, Plaintiffs entered

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

into settlements with Camden, Camden County Police Department, Preston Taylor, and the Mayor and Council of the City of Camden ("City Defendants"). The agreement provided, in part, that Plaintiffs would be promoted to sergeant as soon as vacancies became available. In exchange, Plaintiffs agreed to relieve the City Defendants of any further liability, including for damages and attorney fees. The City Defendants were terminated from the suit on February 22, 2005.

On February 11, 2005, several non-party Camden police officers moved to intervene to oppose the settlement provision providing for Plaintiffs' promotions. Plaintiffs and the City Defendants opposed the third party motion and this Court ultimately denied the intervention on March 5, 2005. Also on March 5, 2005, this Court denied cross-motions for summary judgment by Plaintiffs and Defendant Solomon, and granted in part and denied in part a motion for summary judgment by Defendant Allenbach.

***2** The remaining parties reached a final settlement on October 4, 2005. Plaintiffs recovered a total of $205,000 in back pay, $170,000 from Defendant Solomon and $35,000 from the City of Camden. (Signed Release of Liability, Melofchik Decl. Ex. C.) Solomon offered to settle attorney fees for what he considered "Solomon's proportionate share," but Plaintiffs refused. (Melofchik Decl., Def. Opp'n, ¶ 26.)

Plaintiffs now move against Defendant Solomon for $285,087.60 [FN3] in attorney fees for work performed by William H. Buckman and his associate Heather Keagle, $117,305.10 for work performed by Dennis K. Kuroishi, and $19,443.50 in costs. In addition, Plaintiffs request a fee enhancement of 75% pursuant to *Rendine v. Pantzer,* 141 N.J. 292 (1995). Solomon posits that Plaintiffs are entitled to no more than $121,000.00.

FN3. Plaintiffs request an additional 23.10 hours ($8,862.50) for preparation of the reply brief in the present motion for attorney fees and costs, increasing the request to $293,950.10.

## II. Standard

Calculation of an attorney fee award in the Third Circuit is a familiar procedure: the Court first establishes a lodestar, typically "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). In assessing the lodestar, the Court must " decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are ' excessive, redundant, or otherwise unnecessary." *Interfaith Comm. Org. v. Honeywell Intern., Inc.,* 426 F.3d 694, 711 (3d Cir.2005) (citations omitted). Hours not generally billed to one's own client are properly excluded from a fee award against an adversary. *Public Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1188 (3d Cir.1995).

The party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed. *Hensley,* 461 U.S. at 433 (1983); *Washington v. Philadelphia County Ct. of C.P.,* 89 F.3d 1031, 1035 (3d Cir.1996) (citing *Blum v. Stenson,* 465 U.S. 886, 895-96 n. 11 (1984)). Once the moving party has provided such evidence, "the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode,* 892 F.2d at 1183 (citations omitted). The court may not "decrease a fee award based on factors not raised at all by the adverse party." *Id.; Bell v. United Princeton Prop., Inc.,* 884 F.2d 713, 720 (3d Cir.1989).

If the "opposing party lodges a sufficiently specific objection to an aspect of a fee award, the burden is on the party requesting the fees to justify the size of its award." *Interfaith Cmty. Org. v. Honeywell Intern., Inc.,* 426 F.3d 694, 713 (3d Cir.2005). The " district court has a great deal of discretion to adjust the fee award in light of those objections." *Rode,* 892 F.2d at 1183; *Bell,* 884 F.2d at 721 (noting that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires").

### III. Analysis

### A. Partial Prevailing

*3 The NJLAD provides for the award of a reasonable attorney's fee to a "prevailing" plaintiff. N.J.S.A. 10:5-27.1 (2002). A party qualifies as prevailing where it has succeeded on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley,* 461 U.S. at 433. However, even where the party technically prevails in the litigation, "counsel fees should only be awarded to the extent that the litigant was successful." *Washington,* 89 F.3d at 1042 (citing *Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1222 (3d Cir.1995)); *Hensley,* 461 U.S. at 434 (noting that the district court may be obligated to " adjust the fee upward or downward" based on "the important factor of the 'results obtained' ").

Where the plaintiff's success is not entire, the district court has discretion to adjust the award by either (1) excluding the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed," *Rode,* 892 F.2d at 1183, or (2) "reduc[ing] the award to account for the limited success," by, for example, considering " [t]he amount of damages awarded, when compared with the amount of damages requested." *Washington,* 89 F.3d at 1042 (quoting *Abrams,* 50 F.3d at 1222); *Hensley,* 461 U.S. at 436-37.

In ascertaining the degree of success, the Court focuses on the "overall relief obtained by the plaintiff." *Id.* at 435. Where "the plaintiff achieve [d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award," a markdown for limited success may not be appropriate. *Hensley,* 461 U.S. at 434, 435 (" Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee [and] ... the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").

It is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested," since a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Windall,* 51 F.3d 1179, 1190 (3d Cir.1995) (citing *Hensley,* 461 U.S. at 436 n. 11); *see also McKenzie v. Kennickell,* 684 F.Supp. 1097, 1106 n. 30 (D.D.C.1988) (considering monetary value of promotion when calculating attorney fees). Nor is it inevitably dispositive that the plaintiff was not victorious on every claim. *Failla v. City of Passaic,* 146 F.3d 149, 160 n. 15 (3d Cir.1998) ("Although Failla did not succeed on every claim originally asserted in his complaint, the successful and unsuccessful claims all arose from a common core of fact."). However, a reduction is appropriate "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440.

#### 1. Plaintiffs' Success

*4 Solomon contends that Plaintiffs received only a small percentage-6%, by Solomon's calculations-of the relief sought. (Opp'n at 16-18.) To reach this 6% figure, Solomon approximates that each Plaintiff originally demanded damages in the amount of $65,000 in back pay and $550,000 in front pay and other damages, for a total request of $3,600,000. (Opp'n at 18; Melofchik Decl. ¶ 27 .) According to Defendant, Plaintiffs ultimately settled for promotions and $33,000 each for a total of $200,000, comprised of $170,000 from Solomon and $30,000 from the Camden Defendants. $200,000 is 5.56% of $3,600,000.

Solomon's calculations are erroneous by any standard. As an initial matter, the settlement clearly provides for a payment of $205,000 in back pay, not the $200,000 Solomon suggests. (*See* Signed Release of Liability, Melofchik Decl. Ex. C.) Morever, Defendant offers no basis for his assertion

that Plaintiffs claimed $65,000 apiece in back pay, and the origin of this clearly-approximated figure is unclear. Lastly, and most significantly for the purposes of this Opinion, Defendant's assessment entirely ignores the value of Plaintiffs' promotions to conclude that Plaintiffs recovered none of their demands related to front pay and pension benefits. (Opp'n at 18; Melofchik Decl. ¶ 27.) [FN4]

FN4. Plaintiffs assert also that the $3,600,000 figure itself is too high because it is based on an entirely superfluous assessment of damages accruing from failure to promote to lieutenant, when Plaintiffs sought only promotion to sergeant. However, Plaintiffs' contention is somewhat disingenuous, as this $3,600,000 figure is actually taking into account the " lost opportunity of advancing to a Lieutenant position as of March 1, 2001." (Bunin Expert Report, Melofchik Decl. Ex. B., at 1.) Presumably, had Plaintiffs received monetary damages instead of promotions, one element of those damages would have been the lost opportunity of future promotions. In any event, the precision of this figure is mooted, to a large extent, since the value of Plaintiffs' promotions encompasses much of the value of the lost opportunity of promotion to lieutenant.

By Plaintiffs' calculations, on the other hand, they " realized almost complete success of all their litigation goals," for a total recovery of 97.872% of their initial demands. (Reply at 3; Buckman Supp. Decl. ¶ 38.) To so conclude, Plaintiffs argue that the value of their claims amounted to $2,184,606 plus $256,970 of back pay, for a total demand of $2,441,576. (Buckman Supp. Decl. ¶ 34-37.) Plaintiffs reason that they received $205,000 or 79% of their claim for back pay, plus the value of their promotions, amounting to an average value of $364,101. (Reply at 3.)

Plaintiffs' calculations are also not without imperfections, as they tacitly adopt the lower of two possible back pay amounts [FN5] and fail to account for the loss of value accrued as a result of the delay in their promotions ultimately secured by settlement several years after the alleged failure to promote. Plaintiffs' claim to have received 97.872% of their pre-settlement demands is, therefore, unduly optimistic.

FN5. Plaintiffs' $256,970 back pay claim is based on the Actuarial-Economic Report by their expert, which proffers two possible back pay amounts for each Plaintiff: a higher figure which assumes a promotion on July 1, 1999, the first of the month following the creation of the June 1999 promotion list, and an amount assuming promotion on February 5, 2000, the latest date that Plaintiffs could have been promoted from the June 1999 list. (Bunin Expert Report, Melofchik Decl. Ex. B.) Without explanation, Plaintiffs cite only the lower figure, assuming promotion on February 5, 2000.

Although this case settled and Plaintiffs therefore never obtained a determination of Defendants' liability, the very basis for this litigation was Defendants' failure to promote the Plaintiffs to the position of sergeant. Through their legal efforts, Plaintiffs obtained the promotions at issue and secured a substantial repayment ($205,000) of back pay. Under these circumstances, it is impossible to conclude that Plaintiffs were unsuccessful in attaining the primary objectives of the litigation. However, Plaintiffs also cannot be considered fully successful, as the settlement provided only an incomplete recovery of back pay, a future promotion, and neither punitive damages nor any compensation for losses attributable to the delay in the advancement to sergeant. Accordingly, Plaintiffs' counsel fee award will be reduced by 20% for their limited success.

**2. Second Amended Complaint**[FN6]

FN6. Melofchik's Declaration also appears to argue, in passing, that the Court should

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

exclude all billing related to the drafting of Plaintiffs' original complaint since the complaint ultimately had to be redrafted. (Melofchik Decl. ¶ 42-43.) However, Defendant neither raised this argument in his brief, nor presented any legal support for the selective exclusion of fees related to allegedly unsuccessful filings. Moreover, Defendant fails to address the likelihood that the hours spent drafting the initial complaint were integral to the drafting of the amended complaints as well.

***5** Solomon requests exclusion of all fees ($199,242.60) accrued prior to the filing of the Second Amended Complaint on October 15, 2003, because they were incurred in pursuit of unsuccessful claims, dismissed along with the First Amended Complaint.[FN7] (Opp'n at 15-16.) Plaintiffs argue that no such reduction is warranted since: (1) the Court did not dismiss their key claims, particularly those under the NJLAD; (2) out of the claims that were dismissed, most were without prejudice and ultimately refiled; (3) those claims that the Court dismissed with prejudice were "merely peripheral to Plaintiffs' core complaint"; and (4) the majority of fees incurred prior to the second amended complaint were the result of discovery and other pretrial efforts, which directly contributed to the subsequent successful litigation. (Reply at 4; Buckman Supp. Decl. ¶ 22.) Plaintiffs note further that almost all the exhibits cited by both parties in their motions for summary judgment were generated via Plaintiffs' pre-October 2003 discovery efforts.[FN8]

FN7. Though rather vague and raised only in Melofchik's declaration, Defendant also argues for the deduction of $15,286.50 requested by Kuroishi in 2001 on the grounds that the Complaint was ultimately redrafted. However, the dismissal of the Complaint is insufficient to establish that all 2001 "billing entries are related to unsuccessful efforts on the part of the plaintiffs," such that a blanket denial of all billing entries in 2001 would be justified. (Melofchik Decl. ¶ 42.)

FN8. Plaintiffs note, for example, that "of the twenty-two exhibits attached to Solomon's August 4, 2005 Motion for Summary Judgment all but [six items] were developed as a result of Plaintiffs' discovery efforts in this case, prior to October, 2003." (Buckman Supp. Decl. ¶ 22.)

As Solomon suggests, it is clear that "where a plaintiff prevails on one or more claims but not on others, fees shall not be awarded for time that would not have been spent had the unsuccessful claims not been pursued." *Lanni v. New Jersey,* 259 F.3d 146, 151 (3d Cir.2001) (citing *Hensley,* 461 U.S. at 433-35). However, Solomon has not attempted to parse out costs accrued in pursing unsuccessful claims. Instead, he requests exclusion of all costs of all efforts prior to the filing of the Second Amended Complaint, regardless of the fact that the Second Amended Complaint reinstituted the majority of dismissed claims, which then survived until the entry of settlement. Moreover, the bulk of costs incurred prior to the Second Amended Complaint are attributable to discovery costs and other expenditures intimately related to Plaintiffs' ultimate success.

Defendant offers no viable justification for the exclusion of costs integral to Plaintiffs' pursuit of successful claims. Although the Court may bar recovery of fees associated with claims " 'distinct in all respects from' claims on which the party did succeed," *Rode,* 892 F.2d at 1183, in this instance, all allegations arose from a common core of facts-namely, the failure to promote. Defendant sets forth no reasonable basis by which this Court could equitably parse out costs accrued prior to the Second Amended Complaint, and is therefore not entitled to exclude $199,242 .60 from the fee award.

**B. Excessive, Redundant, Unnecessary Hours**

Defendant also argues that Plaintiffs bill several "excessive, redundant, or otherwise unnecessary" hours. *Rode,* 892 F.2d at 1183; *Interfaith Comm. Org, v. Honeywell Intern., Inc.,* 426 F.3d 694, 711 (3d Cir.2005). In particular, Defendant requests a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reduction of hours related to the cross-motions for summary judgment and the final pretrial order, and time billed by the paralegal/associate.

### 1. Summary Judgment Motion

***6** On August 6, 2004, Solomon filed a 24-page motion for summary judgment, including approximately 150 pages of exhibits. Plaintiffs filed a cross-motion on September 3, 2004, with 34-page statement of facts and a 27-page brief. Plaintiffs' attorneys attest that they spent a total of 114.32 hours-93.32 hours by Buckman and his associate ($34,995) and 22 hours by Kuroishi ($8,295)-on the summary judgment motion and opposition. (Melofchik Decl. Ex. F.)

Solomon argues that because both Buckman and Kuroishi have considerable experience in employment suits and civil rights litigation by police officers, the motion should have taken no more than 40 hours. (Opp'n at 19-20.) [FN9] Defendant observes that, "[b]y contrast, it is noted that [Buckman's] considerably less experienced paralegal/associate billed a total of only 35.5 hours drafting a response to a motion to dismiss the complaint." (Melofchik Decl. ¶ 31.) The only other evidence Solomon proffers in support of the reduction is the fact that Plaintiffs' counsel required only 6 hours to draft the complaint and 3.33 hours to move to amend the complaint.[FN10] (Melofchik Decl. ¶ 33.)

> FN9. Defendant also contends that the 114.32 hours may include time Buckman spent in negotiations with the City of Camden, which would not be recoverable against Solomon. (Opp'n at 20; Melofchik Decl. ¶ 32.) In response, Buckman attests that Defendant's allegations regarding the inclusion of such hours is false, and that the bill includes no hours related to negotiations with other Defendants. (Buckman Supp Decl. ¶ 21; Reply at 8-6.) Because Defendant's contention appears to be baseless speculation with no supporting evidence, it will not be considered.

> FN10. Defendant also argues for exclusion of billing for the summary judgment motion on the grounds that "Defendant Solomon should not have to pay for the drafting of a motion that did not succeed." (Melofchik Decl. ¶ 53, 57.) However, Plaintiffs' motion was, in part, an opposition to Solomon's motion for summary judgment, filed on August 6, 2004. More significantly, Melofchik's declaration that "Mr. Solomon did succeed on getting most of his summary judgment motion granted by the Court," (Melofchik Decl. ¶ 57, 59), is simply erroneous, as this Court denied Solomon's motion for summary judgment in its entirety. (Order, filed March 5, 2005.)

In response, Plaintiffs argue that Defendant provides no support for the argument that 114.32 hours were excessive or the conclusion that 40 hours would have sufficed. (Reply at 6-8.) Plaintiffs emphasize that the motion for summary judgment was substantial, requiring review and citation of eleven depositions and the creation of extensive factual statements, and they suggest that Buckman's expertise and use of a paralegal/associate significantly reduced the hours billed.

Reductions for excessive hours may be appropriate where the case is clearly not complex, requires limited discovery, or involves only limited proceedings and briefing. *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992) (affirming reduction of fee award because attorney "took no depositions, ... performed little discovery," had a trial lasting just over a single day, and only uncomplicated pretrial briefing). Clearly duplicative or clearly unreasonable time entries also warrant exclusion. *Skretvedt v. E.I. Du Pont De Nemours Co.,* 262 F.Supp.2d 366, 375 (D.Del.2003)(excluding hours for entries reflecting two hours to prepare notice of deposition, an hour to review order scheduling status conference, an hour to review notice of substitution of counsel, and a half hour to reread stipulation of withdrawal as counsel). A reduction may also be appropriate where the court, in its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

discretion, finds the hours allotted to be significantly greater than those required. *Washington,* 89 F.3d at 1039.

Defendant proffers neither affidavits nor comparisons with comparable motions (including the amount of time Defendant's counsel billed for the motion), nor any other basis for the 40 hour figure. However, inasmuch as there is no support for limiting the request to 40 hours, 114.32 hours on the particular motion at issue was clearly excessive, and Plaintiffs have offered no evidence of unusually complex facts or legal issues to justify the time allotted. *Id.* (affirming substantial reduction of hours attributed to opposing a summary judgment motion, despite counsel's argument that "the length of the [ ] motion, the number of issues it raised, the voluminous record and the length of his reply memorandum" justified the bill); *Taylor v. USF-Red Star Express, Inc.,* 2005 WL 555371 (E.D.Pa.2005) (reducing fee award for time spent on summary judgment motion because "amount of time billed" was "simply astounding").

*7 Despite the fact-intensive nature of Plaintiffs' summary judgment motion and related exhibits, the briefing was moderate in length, not particularly complex, and did not present any significant novel issues of law. Moreover, 114.32 hours seems extraordinary in light of counsel's years of experience. *See e.g., Becker v. ARCO Chem. Co.,* 15 F.Supp.2d 621, 633 (E.D.Pa.1998). Based on the modest size of Plaintiffs' briefs and accompanying exhibits and the relative simplicity of issues presented, the Court now finds that Plaintiffs' counsel should reasonably have spent no more than 75 hours on the motion. Accordingly, Plaintiffs' award will be reduced by 39.32 hours or 34.4% (i.e., $12,038.28 from the award to Buckman and $2,853.48 from the award to Kuroishi).

**2. Final Pretrial Order**

Plaintiffs bill a total of 97.56 hours for preparation of the Final Pretrial Order filed May 23, 2005-73.16 hours ($27,435.00) by Buckman and 24.4 hours ($9,638) for Kuroishi. Defendant argues that preparation of the Order should have taken no more than 40 hours. (Melofchik Decl. Ex. G.)

Plaintiffs again respond that Defendant provided no evidence or concrete support sufficient to carry its burden of challenging the fee request. Plaintiffs note that the Pretrial Order is a total of 160 pages long, requiring counsel to consult old notes and memorandums, depositions, and discovery. Plaintiffs also argue that the substantial time required in creating the Order was, in large part, attributable to Defendant since "the Defendants did not comply with time limits given by the Court for the construction of their portions, ... did not submit portions of the Pre-Trial Order to me electronically so that they could be easily incorporated within the complex document that was required," and " Defendants took the liberty to draft and redraft and re-redraft their Pre-Trial Order submissions without regard for the fact that" it required Plaintiffs' counsel to redraft and incorporate these revisions into his pretrial order. (Buckman Supp. Decl. ¶ 28 and Ex. 4.)

Defendant's sole argument in favor of a reduction is that "an attorney with Mr. Buckman's legal background should reasonably expend no more than 40 hours on the final pretrial order." (Melofchik Decl. ¶ 34.) Defendant does not address the particularities of the final pretrial order or otherwise justify his claim that Plaintiffs' use of time was excessive. Moreover, Plaintiffs have provided substantial evidence, including correspondence between counsel, that the development of the Final Pretrial Order was unusually litigious and rendered particularly difficult by Defendants' own misconduct. (Buckman Supp. Decl. ¶ ¶ 26-28, Ex. 4.) Accordingly, Plaintiffs are entitled to the entirety of their fee request for the final pretrial order.

**3. Keagle's Hours**

Defendant argues that hours billed by Keagle should be discounted on the grounds that she was a new lawyer and billed far more hours than would have an attorney with more experience.FN11 (Opp'n at 22 .) In particular, Defendant claims that 72.41 hours reviewing discovery "was excessive

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and should be reduced to one-third the amount billed, or 24.14 hours," because the hours were " over and above the amount of time an attorney reasonably would be expected to spend to do the work." (Melofchik Decl. ¶ 37.) In arguing that 72.41 hours was excessive, Defendant did not address the breadth or complexity, or lack thereof, of discovery in this case, and offered no specific basis for the 24.14 hour figure.

FN11. Defendant also takes issue with the number of hours designated to discovery review since the billing records do not indicate which Defendant's discovery is being reviewed. (Opp'n at 22.) However, Defendant offers no explanation of how such a parsing could be possible, given that the suit against all Defendants arose from essentially the same facts and circumstances. In any event, the Court will address Defendant's entitlement to a reduction for the culpability of other Defendants below.

***8** In response, Plaintiffs note that Keagle reviewed a total of 30,000 pages of discovery, and that these tasks were specifically delegated to her because she was a paralegal/associate and therefore billed at a lower rate. Because there is no indication that 72.41 hours is more time than reasonably needed for the bulk of the document review in this case, and Defendant's figure of 24.14 hours is arbitrary at best, Defendant's request will be denied. FN12

FN12. Defendant argues further that the hours Keagle spent on motions for sanctions and to strike are excessive; however the billing for these motions will be addressed below.

**4. Duplication of Tasks** FN13

FN13. Defendant conflates issues, repeats arguments, and often raises contentions in his declaration without addressing the issues in the memorandum in opposition. Although the lack of organization is apparent throughout Solomon's moving papers, it is particularly acute in the section discussing billing by Kuroishi.(*See e.g.,* Melofchik Decl. ¶ 44.) Despite Defendant's disordered presentation of arguments, the Court has made the best effort to address each contention in turn.

**a. Redundant Presence at Depositions, Hearings, Etc.**

Defendant argues that both Buckman and Kuroishi bill for time at depositions, mediation, and settlement negotiations when only one attorney needed to attend. Plaintiffs respond that Kuroishi and Buckman were both present at only one deposition session-Solomon's-and both attended the mediation sessions because all attorneys involved in the litigation were present, including Solomon's two lawyers. (Reply at 12; Buckman Supp. Decl. ¶ 29, 30 .) Plaintiffs assert further that even if they are not entitled to bill both partners at their normal billing rate, they should at least be permitted to recover for the second attorney's fees at an associate or paralegal rate.

In *Lanni v. New Jersey,* 259 F.3d 146, 151 (3d Cir.2001), the Third Circuit upheld the district court's disallowance of fees for the presence of a second partner at trial. In particular, the Court noted that given the partner's "professed expertise" in the litigation at issue, "it would not have been unreasonable to expect her to conduct the trial alone or with the help of an associate." *Id.* (quoting *Rendine,* 661 A.2d at 1226 ("For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.")). The Court noted further that, although the District Court did not abuse its discretion in entirely discounting the fees, it may have been advisable to award fees for the second partner's time at an associate's rate. *Id.; see also Evans v. Port Auth. of N.Y. and N.J.,* 273 F.3d 346, 362 (3d Cir.2001) (reiterating holding in *Lanni* ).

Contrary to Plaintiffs' assertions, Kuroishi and Buckman's billings indicate that each attended the depositions of *both* Solomon and Allenbach on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

April 16, 2004, and May 19, 2004, respectively. (Kuroishi Decl. Ex. A, at 11; Buckman Decl. Ex. A, at 32.) Buckman billed 4.5 hours for Allenbach's deposition and 6.0 hours for Solomon's deposition, and Kuroishi billed 5.0 hours for Allenbach's deposition and 6.0 for Solomon's deposition. (Melofchik Decl. ¶ 61-60.)

Both also bill for attendance at Pretrial Conference on April 26, May 3, and June 21, 2005, for a total of 13.0 hours, 6.0 hours by Kuroishi and 7.0 hours by Buckman. (Kuroishi Decl. Ex. A 13; Buckman Decl. Ex. A, at 34-35; *see also* Melofchik Decl. ¶ ¶ 67-68.) Both attorneys were also present at the mediation on September 26, 2005, billing 11 hours apiece, (Kuroishi Decl. Ex. A 13; Buckman Decl. Ex. A, at 36; Melofchik Decl. ¶ 69), and both attorneys attended the settlement conferences on September 30 and October 3, 2005, billing 6.5 hours and 4.4 hours [FN14] ($1,738.00), apiece. (Kuroishi Decl. Ex. A, at 14; Buckman Decl. Ex. A, at 36; *see also* Melofchik Decl. ¶ 71-72.)

FN14. It appears from the records that Kuroishi billed 5.1 hours for the settlement conference, not 4.4. (Kuroishi Decl. Ex. A., at 14.) However, because Defendant only argues for 4.4 hours of overlap and because Defendant's rationale for the discrepancy is unclear, this Court will address only 4.4 hours of Kuroishi's bill.

*9 As in *Lanni,* 259 F.3d at 151, Buckman's expertise and years of experience obviated the need for presence of a second partner. However, Buckman was entitled to the assistance of an associate at Solomon's deposition, the pretrial conference, the mediation, and the settlement conferences. Accordingly, Kuroishi's hours for time spent at these proceedings-a total of 27.4 hours-will be billed at the associate rate of $150 per hour, for a total of $4,110 (a deduction of $6, 713).

However, the need for two attorneys at Allenbach's deposition is unclear-especially as Plaintiffs argue elsewhere that Allenbach's liability was minimal compared to Solomon's-and Plaintiffs offer no justification for Kuroishi's presence at the deposition. Moreover, Plaintiffs' counsel attests in error that the sole deposition to which both attorneys attended was that of Solomon. (Buckman Supp. Decl. ¶ 29.) Because Plaintiffs fail to account for this overlap and appear to have misled the court with regard to this billing, Kuroishi's bill will be reduced in the amount of 5.0 hours or $1,975.

**b. Duplicative Billing**

Defendant argues that Kuroishi and Buckman bill for redundant efforts in drafting the amended complaint, review of discovery, review of deposition testimony, and work on the motion for summary judgment and the final pretrial order. Plaintiffs argue that the work was not duplicative, but rather logically divided since Buckman dealt primarily with factual and historical issues and composed background sections, while Kurioshi wrote legal arguments and provided necessary legal research. (Reply at 9; Buckman Supp. Decl. 25, Buckman Decl. ¶ 52.)

Clearly the court must exclude "duplicative billing for tasks which could not reasonably have required the identical expenditure of time by two partners." *Evans,* 273 F.3d at 362 (excluding "substantial identical hours ... billed by each attorney for preparing interrogatories, preparing for and attending depositions, reviewing letters, and reviewing the [other party's] disclosures"). Where there exists a "precise overlap in both time and task, " the court may "conclude that the time claimed is not reasonable for the services performed." *Id.* Such repetition is "wasteful and should not be included in a request for counsel fees from an adversary." *Halderman,* 49 F.3d at 943 (excluding hours billed for creation of two separate, parallel findings of fact where "coordination between counsel would have reduced the total time required for preparation").

However, where the suit presents "multiple, complex legal questions," is "an issue of first impression," or implicates issues of significant magnitude, the use of multiple attorneys, including partner-level attorneys may be appropriate. *Planned Parenthood of Cent. N.J. v. Attorney General,* 297

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.3d 253, 272 (3d Cir.2002). Thus, "[a] reduction for duplication 'is warranted only if the attorneys are unreasonably doing the same work.' " *Rode,* 892 F.2d at 1187 (quoting *Jean v. Nelson,* 863 F.2d 759, 773 (11th Cir.1988)).

***10** None of the alleged instances of double billing actually appear to be redundant or duplicative. The fact that both Kuroishi and Buckman billed for drafting the Amended Complaint in January and February 2002, for a total of 3.73 hours, does not suggest that they were duplicating work. (Melofchik Decl. ¶ 46.) Nor do Kuroishi's bill for 6.8 hours of discovery review on August 6 and October 5, 2002, and Buckman's bill for 10 hours of discovery review on August 19, 21, and 24, 2002, indicate redundant efforts. (Melofchik Decl., erroneously marked as ¶ 48.) The fact that both attorneys worked on the summary judgment motions and final pretrial order also does not demonstrate a duplication of tasks, particularly given the attorneys' affidavits establishing that they divided the labor by legal and factual issues. (Melofchik Decl. ¶¶ 58, 64-65.)

Solomon also argues that Buckman bills 30 hours of paralegal time and 5.5 hours of partner time and Kuroishi bills a total of 38.2 hours for work on the same Rule 12 motion. (Melofchik Decl. ¶ 47.) Again, however, there is no indication of double billing. Kuroishi's invoice does indeed provide for a total of 38.2 hours related to a Rule 12 motion from March 4-22, 2002. However, the allegedly redundant hours on Buckman's invoice are dated June 21-28, 2002. (Buckman Decl. Ex. A at 3-4.) The three month gap in time between the two entries suggests that they are not duplicative, particularly as the motion to dismiss appears to have been decided on June 6, 2002, prior to the accrual of Buckman's hours.[FN15]

FN15. To the extent that Defendant may be arguing that the hours spent on the Rule 12 motion are excessive, he sets forth no particularized argument or specific grounds for such a conclusion.

Defendant has set forth no specific instance where separate attorneys bill for duplicate efforts, nor has Defendant demonstrated any example of a "precise overlap" in time and task. *See Evans,* 273 F.3d at 362. Rather, the bulk of Defendant's claims involve discovery review and tasks related to dispositive motions, efforts in which the participation of multiple counsel is often customary. Accordingly, this Court finds no instance of duplicative billing.

**c. Excessive Delegation**

Defendant contends further that the work assigned to Kuroishi constituted excessive delegation, generating unnecessary billing for Kuroishi to familiarize himself with the case, and should be considered part of Buckman's overhead. Plaintiffs argue that Defendant failed to identify any instance where Kuroishi's participation caused such additional billing, especially as Kuroishi was involved with the suit from its inception. Plaintiffs note further that "given the extensive nature of the litigation, it is apparent, as counsel declare, [that] re-review of documents, minor conversations, etc. were not billed." (Reply at 10.) Plaintiffs also argue that the tasks delegated to Kuroishi, such as the drafting of the legal arguments in the summary judgment motion, would not have been more appropriately delegated to a less experienced associate, since Kuroishi's experience permitted him to allocate his time more efficiently. (Reply at 9; Kuroishi Decl. Ex. A., at 10.)

***11** To support his excessive delegation argument, Solomon asserts a number of principles unaccompanied by legal or evidentiary support. In particular, Solomon argues that Kuroishi should not be charging time for reviewing documents because "[a]s a second attorney, it is not his purpose to assist with the more complex research issues in this matter" and "the billing seems administrative in nature." (Melofchik Decl. ¶ 41, Ex. J.) Solomon argues further that Kuroishi's failure to bill any hours in 2003 demonstrated that "Kuroishi was not responsible for much of the litigation, and his billing should be considered as overhead for Mr. Buckman conducting business." (Melofchik Decl. ¶ 52.) Similarly untenable, Solomon suggests that time spent on correspondence (2 hours in 2004 and 4.2 hours in 2005) between Kuroishi and Buckman

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

should be excluded because Solomon "should not pay for communication time between two attorneys working on the same case." (Melofchik Decl. ¶ ¶ 55, 66.)

However, Defendant proffers no support for the position that Kuroishi's bill should be treated as overhead, that a second attorney should not assist with complex research issues, or that attorneys should not bill meetings and communications regarding a case. Rather, these appear to be baseless conclusions in contravention of common practice.

The sole occasion that Defendant identified where Plaintiffs' counsel incurred additional billing as a result of the division of labor is 7.4 hours Kuroishi spent reviewing Allenbach and Taylor's deposition testimony on June 8 and 18, 2004, as Buckman reviewed the same deposition testimony while drafting the summary judgment motion in August 2004. (Melofchik Decl. ¶ 54; Buckman Decl. Ex. A, at 32; Kuroishi Decl. Ex. A, at 10.) Plaintiffs offer no explanation for the redundant review of depositions or Kuroishi's need to review depositions, since he was responsible for researching and developing the legal analysis while the factual sections were left to Buckman. Accordingly, because Plaintiffs have not responded to Defendant's contentions regarding the redundant billing for deposition review, Kuroishi's bill will be reduced by 7.4 hours ($2,923).

**5. Associate-Level Work by Partners**

Defendant argues that Buckman billed 41 hours ($12,101.25) and Kuroishi billed 40 hours ($16,155.50) for reviewing documents. (Melofchik Decl. Ex. J.) Defendant posits that such review was better conducted by associates than partners, and the billing for this time should be "significantly reduced." (Opp'n at 23.) Solomon argues also that Kuroishi should not be permitted to bill for 2.1 hours allotted to drafting of Rule 26 disclosures in April 2002 because he "does not bring any particular expertise to the drafting of basic Rule 26 disclosures." (Melofchik Decl. ¶ 49.) Solomon also requests exclusion of 5.6 hours Kuroishi billed related to drafting a request for production on February 6, 2002.

Plaintiffs argue in response that the hours spent reviewing discovery were necessary. Specifically, they observe that a total of 153.31 hours were expended in reviewing 30,000 pages of discovery by Buckman, Kuroishi, and Keagle, amounting to a discovery review rate of 194 pages/hour, and they note further that re-review of documentation was not billed.

***12** Courts commonly reduce fee awards "when a lawyer spends time on tasks that are easily delegable to non-professional assistance." *Halderman,* 49 F.3d at 942 (quoting *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983) (deducting "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals"). On the other hand, where lead partners review discovery or spend time on other menial tasks because the partner's special knowledge of the case is required to adequately perform such tasks, they may be billed at the partner's hourly rate. *See e.g., Envirosource, Inc. v. Horsehead Ress Dev. Co., Inc.,* 981 F.Supp. 876, 882 (S.D.N.Y.1998) (holding that partners' time spent taking notes on redactions and discovery properly billed at partner rate because of past problems with inappropriate redactions by other party).

Exhibit J of Melofchik's Declaration sets forth the hours spent by partners reviewing documents. Buckman does indeed bill several hours of file review; however, these hours are billed at the associate rate of $150. (Melofchick Ex. J.) Buckman also bills for numerous hours in reviewing the file and documentation in connection with preparation of pleadings and the final pretrial order. Such review is a necessary element of the development of the pretrial order, a task commonly delegated to attorneys at the partner level. The drafting of the Rule 26 disclosures is also suitably delegated to partners.

Similarly, Kuroishi's review of the file appears specific to the development of the final pretrial order, except for 1.5 hours on August 6, 2002, and 5.3 hours on October 5, 2002. These two entries,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

totaling 6.8 hours, purport to be only discovery review, and Plaintiffs have presented no justifiable reason why these tasks were not delegated to associates or paralegals. Accordingly, the 6.8 hours Kuroishi billed for simply reviewing documents will be assessed at the associate rate of $150, for a total fee of $1020 (a reduction of $1,666). Similarly, tasks such as drafting requests for production are more appropriately delegated to an associate. Accordingly, the 5.6 hours spent on these tasks by Kuroishi will be billed at the $150 associate rate for a total of $840 (a reduction of $1,372).

### C. Fees Unrelated to Defendant Solomon

#### 1. Fees Incurred Opposing Intervention

Plaintiffs request $1,312.50 for 3.5 hours expended in February 2005 to oppose a motion to intervene by several non-party Camden police officers who wanted to dispute the settlement provision promising the next available promotions to the Plaintiffs. (Melofchik Decl. ¶ 38.) Defendant argues that he should not be accountable for the fees incurred in efforts to oppose the non-party police officers' motion to intervene. (Opp'n at 23-24.) In support, Defendant contends that the issues raised by the would-be intervenors were distinct from claims against Solomon and, moreover, that it was the settlement with the City of Camden that prompted the intervention, not the settlement with Solomon. (Opp'n at 23-24.)

***13** Although the Third Circuit has not spoken directly to the issue, the Eleventh Circuit has addressed the distribution of attorney fees in the event of an attempted third party intervention in a case remarkably similar to the one at bar. In *Reeves v. Harrell,* 791 F.2d 1481 (11th Cir.1986), plaintiffs were a group of black deputy sheriffs also alleging a discriminatory failure to promote. The parties entered into a consent decree, providing for promotion of black officers on a 50% basis with white officers. Non-party white deputies attempted to intervene, and the plaintiffs opposed.

The Court concluded that the plaintiffs were not entitled to attorney fees from defendants for fees accrued in opposing the intervention because the fee award statute "requires that a litigant must be a ' prevailing party' before he is entitled to attorney's fees." *Reeves,* 791 F.2d at 1483. The Court found that "the plaintiffs did not 'prevail' vis-a-vis the defendants because the defendants did not join in the motion to intervene nor did they express any position on the termination of the consent decree." *Id.* In other words, because the defendants "simply remained neutral" and did not support the attempted intervention, plaintiffs were not entitled to fees as a prevailing party. *Id.; Mannings v. School Bd. of Hillsborough County,* 1994 WL 151045, *3 (M.D.Fla.1994) (holding defendants not liable for fees for plaintiff's efforts to defend against attempted intervention, particularly since defendants opposed the intervention, despite having no obligation to do so); *but cf. Grant v. Martinez,* 973 F .2d 96, 100 (2d Cir.1992) (upholding fees for class counsel's efforts to defend a settlement agreement against challenges brought by class members on the grounds that "[t]he alternative to counsel's effective advocacy would have been further settlement negotiations or trial, either of which would likely have required considerable resources").

Although the Third Circuit has not addressed the present scenario, the issues addressed in *Reeves* are exactly on point with those currently facing this Court. Because Plaintiffs did not prevail against Defendant with regard to the attempted intervention, and because it would tax fairness to hold Solomon accountable for fees incurred in the litigation of a third-party motion in which he did not participate, Solomon's liability will not include such fees. Accordingly, the fee award will be reduced by the $1,312.50 incurred in opposing the intervention.

#### 2. Disputes with Other Parties

Defendant argues for exclusion of billings related to disputes between Plaintiffs and Camden, in particular the 93 hours Keagle allegedly spent in efforts to strike or obtain sanctions against the City Defendants.[FN16] (Melofchik Decl. ¶ 36, Ex. I.) Defendant also disputes 0.7 hours Kuroishi billed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for correspondence with City Defendants, in the form of two letters dated April 12, 2002, and December 4, 2002. (Melofchik Decl. ¶ 51.) Lastly, Solomon argues for exclusion of 7.9 hours Kuroishi spent reviewing motions for summary judgment by other Defendants. (Melofchik Decl. ¶ 56; Kuroishi Decl. Ex. A, at 10.)

FN16. In particular, Solomon points to 31 hours spent on a Responsive Brief in June 2002, 25.75 hours on a motion for sanctions in April 2003, 15 hours on a motion to strike, and 4.33 hours on a contempt motion in December 2002. (Melofchik Decl. ¶ 12-13 and Ex. I.)

***14** Plaintiffs respond that discovery against Camden and the ensuing disputes would have been necessary even had Solomon been the sole Defendant to the suit. Plaintiffs also suggest that discovery litigation against Camden would have been intensified had Camden not been a party, as demonstrated by Camden's "contempt of the discovery process." (Reply at 18.)

Plaintiffs offer no legal basis for imposing on Solomon the burden of costs incurred in disputes with other parties. Such motions amount to a total of 50.13 hours of associate time ($7,519.50) and 4.5 hours of paralegal time ($405.00), composed of 35.75 hours for a motion for sanctions, 15 hours for a motion to strike the City Defendants' Answer, and 3.88 hours for a motion for contempt. Although Solomon requests exclusion of 93 hours, the balance of this time, beyond the 54.63 hours attributable to discovery disputes with the City, does not appear solely attributable to Defendants other than Solomon.

Plaintiffs have offered no response to Defendant's dispute of time spent reading other Defendants' motions or corresponding with these Defendants. However, while Defendant argues that Kuroishi spent 7.9 hours on the motions of other defendants, 6.7 of these hours are actually attributable to assembling the statement of material fact for the summary judgment motion, a motion filed against Solomon as well as the other Defendants. (Kuroishi Decl. Ex. A, at 10.) Thus, Defendant is entitled to a reduction of only 1.2 hours ($474) for motions that did not involve Solomon. Although Solomon should not be liable for the entirety of the general summary judgment motion, this issue will be addressed below.

For the same reasons, Solomon is not entitled to deduct 0.7 hours expended in communicating with other Defendants, since these communications regarded Rule 26 disclosures and deposition dates, which bear on the general discovery process.

Accordingly, Buckman's total fee award will be reduced by $7,924.50 for disputes with other Defendants and Kuroishi's will be reduced by $474 for efforts expended on the motions of other parties.

**D. Fees Incurred in Motion for Fees and Costs**

It is well established that an attorney fee award includes the fees incurred in preparation of the fees petition "to the extent such time is reasonably necessary to obtaining a reasonable fee award." *Jackson on Behalf of Jackson v. Philadelphia,* 858 F.Supp. 464, 477 (E.D.Pa.1994) (quoting *Shadis v. Beal,* 703 F.2d 71, 73 (3d Cir.1983); *Bagby v. Beal,* 606 F.2d 411, 416 (3d Cir.1979). However, such an award is not permitted "if the need for the fee litigation could have been avoided." *Action on Smoking and Health v. Civil Aeronautics Bd.,* 724 F.2d 211, 224 (D.C.Cir.1984); *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 924 (3d Cir.1985); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983).

Plaintiffs list a total of 17.3 hours (4 hours by Buckman and 13.3 hours by Kuroishi) incurred in pursuing the present motion for fees and costs. Buckman requests an additional 23.10 hours ($8662.50) for development of the reply brief, supplemental declaration, and motion for overlong brief. (Buckman Supp. Decl. ¶ 41.) Defendant argues that these fees should be disallowed because Defendant offered to settle for his proportionate share of fees and Plaintiffs refused the offer. In the alternative, Defendant claims that he should be entitled to a reduced rate for Buckman's preparation

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the motion, but he provides no basis for such a reduction. Solomon argues that Kuroishi's billing related to his fee application (13.3 hours for $5,253.50) should be disallowed because the application is "without merit." (Melofchik Decl. ¶ 73.)

***15** Plaintiffs respond that (1) Defendant's settlement offer was unrealistic and (2) the fees incurred in preparing the application were reasonable since Buckman's Declaration in support of fees is 56 pages long with 10 pages of exhibits, and Kuroishi's hours include the brief in support of fees as well as his declaration.

Although Defendant does not indicate what he offered Plaintiffs or what he considers his " proportionate share," Defendant's arguments in opposition to the motion for attorney fees suggest that his offer was likely inadequate. As discussed below, Solomon contends that he should be accountable for no more than one-third of the fees, even though Plaintiffs considered him one of the most culpable defendants and he ultimately paid the bulk of the damages in settlement.

In any event, the Court now finds that Plaintiffs are entitled to an amount of fees likely in excess of that Solomon offered. Accordingly, Plaintiffs' litigation of the fee agreement was not rendered unnecessary by Defendant's proffer. As Defendant has not provided any compelling argument suggesting that the requested fees are unreasonable, Plaintiffs are entitled to the full cost of litigating the fee award.

**E. Technical Issues**

**1. Costs**

Although Plaintiffs request costs in the amount of $19,443.50, their initial motion for fees and costs only listed charges amounting to $3,810.80. (Opp'n at 24.) In reply, Plaintiffs' counsel notes that this is an error attributable to a missing page from the original fee declaration and supplies the missing page as an exhibit. (Reply 13; Buckman Supp. Decl. ¶ 4, Ex. 1.) These pages are indeed attached to Plaintiffs' Reply and Defendant raises no grounds for their exclusion or any other basis for limiting costs .FN17

FN17. Defendant contends also that the $19,443.50 requested in costs should be reduced by a third to represent Solomon's proportionate share. (Opp'n at 24.) The apportionment issue shall be addressed below.

**2. Ambiguous Billings**

Defendant argues that the listings in exhibit E, amounting to $14,100.75, are ambiguous because they are either not explained or contain multiple tasks on same line. (Opp'n at 24.) Plaintiffs respond only that "review of Solomon's Exhibit H (mistaken [sic] labeled as Exhibit E) indicates that the items on Exhibit H are easily identified." (Buckman Supp. Decl. ¶¶ 31-33.)

The fee petition must be sufficiently specific "to allow the district court 'to determine if the hours claimed are unreasonable for the work performed,' " and the court may deduct hours when the fee petition inadequately documents the time alleged. *Rode,* 892 F.2d at 1190, 1883 (quoting *Pawlak,* 713 F.2d at 978); *Washington,* 89 F.3d at 1037-38 ("It is an established proposition of law that '[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly.' ") (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). While the petition must include "some fairly definite information as to the hours devoted to various general activities, ... it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Rode,* 892 F.2d at 1189, 1190 (holding adequate " computer-generated chronological list of the tasks performed and the time devoted to those tasks"); *Washington,* 89 F.3d at 1038 ("We recently reaffirmed our *Rode* holding, noting that the Court in *Rode* 'found sufficient specificity where the computer-generated time sheet provided 'the date the activity took place.' ") (quoting *Keenan v.. City of Philadelphia,* 983 F.2d 459, 473 (3d Cir.1992)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***16** Buckman's invoice contains approximately 24.43 hours devoted to tasks described only as "file review," "preparation," "clients & Bunin," "with defendants," "research," and "file review & correspondence." (Melofchik Decl. Ex. H.) Such entries are too vague to permit the Court to ascertain their reasonableness, and bills for those hours will be deducted from the total in the amount of $3,852.00.

Defendants also argue for the exclusion of 21.33 hours billed with descriptions such as "Preparation of pleadings/ pretrial order/ review file/ prepare contested facts." (Melofchik Decl. Ex. 4.) However, these entries are sufficiently descriptive to enable the Court to determine their propriety. Accordingly, recovery for these hours will be permitted.

### E. Reasonable Hourly Rate

Plaintiffs bill Buckman's fees at an hourly rate of $375, Kuroishi's fees at an hourly rate of $395, and Keagle's fees at $90 per hour while she was a paralegal and $150 per hour after she was admitted to the New Jersey Bar in December 2002. Defendant contends that Plaintiffs failed to establish the reasonableness of these rates.

A reasonable hourly rate is to be calculated according to the "prevailing market rates in the relevant community" for an attorney of " comparable skill, experience, and reputation." *Rode,* 892 F.2d at 1183 (citing *Blum v. Stenson,* 465 U.S. 886, 895 (1984)). The plaintiff bears the burden of producing evidence sufficient to establish a reasonable market rate "for the essential character and complexity of the legal services rendered." *Smith v. Philadelphia Housing Auth.,* 107 F.3d 223, 225 (3d Cir.1997); *Blum v. Stenson,* 465 U.S. 886, 896 n. 11 (1984).

An affidavit attesting to the reasonableness of the requested fee by an attorney familiar with the practice area and community is adequate to establish a prima facie case, shifting the burden to the opposing party to produce contradictory evidence. *Washington,* 89 F.3d at 1036; *Becker v. ARCO Chem. Co.,* 15 F.Supp.2d 621 (E.D.Pa.1998) ("The prevailing party's burden may be satisfied by the submission of affidavits of attorneys with personal knowledge of the hourly rates customarily charged in the relevant market."). Once the plaintiff presents such evidence, "defendant may contest that prima facie case only with appropriate record evidence." *Id* . Without such evidence, "the plaintiff must be awarded attorney's fees at her requested rate." *Id.*

In support of his rates, Buckman attests that he was admitted to practice in New Jersey since 1978 and has considerable experience in representing police officers and other plaintiffs complaining of civil rights violations. (Buckman Decl. ¶ ¶ 23, 24, 32.) Kuroishi, initially admitted to practice in June 1968, has substantial trial experience and familiarity with litigating employment discrimination cases. (Kuroishi Decl. ¶ ¶ 6, 10, 21.)

Plaintiffs also provided the certification of James Katz, Esquire, attesting that "Mr. Buckman's hourly rate of $375 per hour is reasonable for attorneys of similar skill, experience and reputation" and "is within the reasonable range of fees charged for the type of work as was involved in this case." (Katz Cert., Buckman Decl. Ex. C, ¶ 11.) Katz attested to his own experience and familiarity with the relevant market rates and explained his rationale for his conclusion. (Katz Cert., Buckman Decl. Ex. C, ¶ 9-10, 12.) In support of Keagle's fees, Buckman offers only his own affidavit noting that arbitrator Judge John Keefe awarded Keagle $90 per hour for her work as a paralegal in a different civil rights case. (Buckman Cert. ¶ 18.) Buckman also attests that he "conferred with numerous colleagues in Plaintiffs' firms throughout the state," confirming that "$150 per hour is well within the range that new associates for Plaintiffs' civil rights are billing and being awarded fees for their efforts." (Buckman Cert. ¶ 19.)

***17** Solomon raises no specific contentions with the validity of Katz's affidavit, but nevertheless argues that a single certification from one disinterested attorney is insufficient to establish the reasonableness of a rate. (Opp'n at 25-26.) More compellingly, Defendant contends that Plaintiffs provided no affidavit by a disinterested party to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

establish the reasonableness of Keagle's rate.

In any event, in his supplemental declaration, Buckman proffers additional affidavits by attorneys Lawrence Lustberg and Fredric Gross, Esquires, attesting to the reasonableness of the billed rates. (Buckman Supp. Decl. ¶ 39, Ex. 5, Ex. 6.) Lustberg and Gross both vouch for the reasonableness of Buckman's $375 rate. (Lustberg Cert., Buckman Supp. Decl., Ex 5 ¶ 13; Gross Cert., Ex. 6, ¶ ¶ 29, 36.) Gross also attests to both the reasonableness of Kuroishi's $395 rate (Gross Cert., Buckman Supp. Decl., Ex. 6, ¶ ¶ 34-35), and the reasonableness of Keagle's paralegal and associate rates (Gross Cert., Buckman Supp. Decl., Ex. 6, ¶ 32).[FN18] Defendants have not raised any concerns with these supplementary affidavits, nor have they argued that the proffered rates are unreasonable. Accordingly, the Court will adopt the requested billing rates of Plaintiffs' counsel.

FN18. It should be noted that Gross relies in significant part on the Laffey Matrix, typically employed by the United States Attorney for the District of Columbia, to support his conclusion that Keagle's fees are reasonable. (Gross Cert., Buckman Supp. Decl., Ex. 6 ¶ 31-33). Gross's assertions as to the comparability of the District of Columbia and New Jersey markets notwithstanding, the Third Circuit has explicitly articulated reservations regarding the accuracy and reliability of the Laffey index. *See Honeywell,* 426 F.3d at 710 n. 14 ("[A]ny index that is updated based on a statistical measure of inflation-rather than regular recalibration in light of prevailing rates-will tend to diminish in accuracy over time. For this reason, district courts in this Circuit should be assiduous in evaluating fee requests in light of all the evidence."). However, Gross attests further that Keagle's rates are reasonable based on "fee surveys" and his own business practices. Accordingly, Gross's declaration will be considered despite the over-reliance on the Laffey Matrix.

## IV. Division of Fees and Costs with Other Defendants

Defendant argues that the award of fees and costs should be further reduced by two-thirds to account for the responsibility of the other Defendants to the litigation. Plaintiffs oppose this reduction, claiming that Solomon was the "principle architect of the wrongs" and responsible for the bulk of the briefing. (Reply 5.) Plaintiffs claim further that the work necessary to pursue Plaintiffs' suit against Solomon would have been required regardless of the other Defendants' presence in the litigation. (Reply at 18.) Plaintiffs further suggest that Solomon released Camden from any liability or indemnification for fees when he dropped his cross claims for contribution. (Reply at 19.)

In a case remarkably similar to the one at bar, the Third Circuit held that the defendant could not be required to pay the entire amount of the prevailing plaintiff police officer's claim of discriminatory failure to promote. *Coleman v. Kaye,* 87 F.3d 1491, 1510 (3d Cir.1996) ("Prosecutor Kaye argues that he alone should not have been required to pay the entire amount of the prevailing party's attorneys' fees and costs incurred in this matter. We agree."). Rather, "[i]t is a well-established principle that when multiple defendants are held to be liable in a civil rights action, the proper course of action for a district court is to allocate responsibility for the payment of fees among the responsible parties." *Id.* (citing *Vargas v. Hudson County Bd. of Elections,* 949 F.2d 665, 677 (3d Cir.1991).

Although the present case is distinguishable from *Coleman* in that both *Coleman* defendants were present to pay the fees, thus assuring plaintiffs of the sum total of the award, the reasoning is equally applicable. Courts have apportioned fees even where at least one of the defendants was unavailable to pay. *See, e.g., Swan by Carello v. Daniels,* 917 F.Supp. 292, 301 (D.Del.1995) (noting that district court "can award a portion of the plaintiff's fee request when the plaintiff cannot recover attorney fees against one or more of the defendants"). In *Southeast Legal Defense Group v. Adams,* 657 F.2d 1118 (9th Cir.1981), for example, the Court opted to apportion 25% of the fee award to a federal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendant that was exempted from such liability under § 1988. Acknowledging that Plaintiffs would therefore recover only 75% of fees, the Court reasoned that "[t]his is not a case of reducing fees by 25%, but rather is a case where plaintiffs are only entitled to fees for their action as against the state defendants. Since plaintiffs are not entitled to fees for their suit against the federal defendants, they cannot recover them from the state defendants." *Id.* at 1125-26.

***18** The same principle applies here; the fact that apportioning fees will deprive Plaintiffs of the entirety of the fee award is inadequate to justify imposing the entire burden of the fee award on a single defendant, particularly as the absence of the other defendants from fee liability is specifically attributable to the settlement entered into with the Plaintiffs. According, Solomon will not be held liable for all of the fees accrued over the course of the litigation.

District courts have several options to equitably apportion fees between several defendants of varying culpability, and retain "wide discretion on how to divide liability." *Swan by Carello,* 917 F.Supp. at 301; *Council for Periodical Distrib. Assoc. v. Evans,* 827 F.2d 1483, 1487-88 (11th Cir.1987); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 959-60 (1st Cir.1984)). The court may (1) divide the fees equally among the defendants, *Wilson v. Stocker,* 819 F.2d 943, 950-52 (10th Cir.1987), (2) "apportion fees according to relative culpability," *Jose P. v. Ambach,* 669 F.2d 865, 871 (2d Cir.1982), or (3) look to "the real source of the offense" and "the relative time [spent] litigating against" each defendant based, for example, on the number of pages of briefing and time allocated for oral argument. *Grendel's Den,* 749 F.2d at 960.

In situations where culpability is not equally distributed, Courts tend to apportion fees based primarily upon each individual defendant's percentage of accountability. *Grendel's Den,* 749 F.2d at 960; *Jose P. v. Ambach,* 669 F.2d 865, 871 (2d Cir.1982) (affirming judge's decision to apportion fees 80% to 20% according to relative culpability). To do so, courts often consider at least three factors: (1) the source of the injury, (2) the relative time spent litigating against each defendant, and (3) the relative ability of each defendant to pay the fees. *Grendel's Den,* 749 F .2d at 960. Courts also consider the purpose of civil rights statutes and their accompanying fee provision "to remedy violations of the civil rights laws and that fee awards provide the necessary encouragement to private citizens to file suit to correct such violations. " *Herbst v. Ryan,* 90 F.3d 1300, 1304 (7th Cir.1996) .

Inasmuch as it would be inequitable to burden Solomon with the entirety of fees accrued, Solomon does not dispute that he led the defense in terms of culpability and quantity of filings. Apportioning the fees equally among defendants would, therefore, be similarly inequitable. Moreover, since Plaintiffs will recover no fees from the absent Defendants, such an equal apportionment would contravene the purpose of the NJLAD fee award provision to encourage civil rights litigation. *Id.*

The Court now finds that the allocation of damages in the settlement agreement is a reasonable and accurate reflection of Solomon's culpability. The settlement agreement provides for Defendant Solomon to pay $170,000, or 83% of the total $205,000 damages award. (Melofchik Cert. Ex. C.) Because Solomon bears the weight of responsibility for both the bulk of the litigation and the events underlying Plaintiff's claims, 83% is a fair and reasonable assessment of Solomon's liability. Accordingly, Solomon will now be accountable for a proportionate share, 83%, of the total fees and costs accrued over the course of litigation.[FN19]

FN19. As provided above, the general costs of litigation include those of discovery, oppositions to motions to dismiss, and the motion for summary judgment, but do not include costs accrued solely with respect to other defendants.

**V. Fee Enhancement Modifier**

***19** Lastly, Plaintiffs request a fee enhancement of 75% pursuant to *Rendine v. Pantzer,* 141 N.J. 292 (N.J.1995). *Rendine* requires trial courts to consider

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whether an award of attorney fees under a fee-shifting statute should be increased "to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome." *Rendine,* 141 N.J. at 337-338. The *Rendine* Court explained this enhancement on the grounds that "a counsel fee awarded under a fee-shifting statute cannot be ' reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed." *Id.; Lanni,* 259 F.3d at 152. Complete, "pure" contingency is unnecessary to establish entitlement to an enhancement; a " ' substantially' or 'predominatly' contingent" fee is sufficient. *Lanni,* 259 F.3d at 152 (quoting *Rendine,* 661 A.2d at 1216-17).

In support of Plaintiffs' request for a fee enhancement, Buckman attests that he took the case on a "primarily" contingent fee basis, providing for Plaintiffs to cover the majority of costs, but only $16,000 in fees, during the 4.8 years of litigation. (Buckman Decl. ¶ 45.) Buckman attests further that such cases present particular economic risks to him as a small firm practitioner and that the case " consumed a major portion" of his time, " approximately 50% more of [his] associate's time," and required him to decline new cases. (Buckman Decl. ¶ 46.) Kuroishi also attests that he accepted the case "on a complete contingency basis," and that none of his expenses were "paid by the plaintiffs or guaranteed by Mr. Buckman." (Kuroishi Decl. ¶ 32-33.)

Solomon's arguments against the enhancement are untenable. Specifically, he contends that such enhancements "have been sharply curtailed" in cases such as *City of Burlington v. Dague,* 505 U.S. 557 (1992), and *Blum v. Stenson,* 465 U.S. 886 (1984). However, it is well established that *Rendine,* 141 N.J. at 337-38, explicitly rejected the standards set forth by the United States Supreme Court in *Dague* and *Stenson* in the context of the NJLAD. *See Coleman v. Kaye,* 87 F.3d 1491, 1511 (3d Cir.1996) ("The *Rendine* court elected to depart from Supreme Court precedent on this issue and thereby established a rule that strongly favors the award of contingency enhancements to prevailing parties under the LAD.").

Equally incorrect is Defendant's argument that fee multipliers are appropriate only in "exceptional" cases. The exceptional case multiplier is entirely distinct from the *Rendine* enhancement, which is attributable to the contingent nature of the case and ensuing risk. *Rode,* 892 F.2d 1177, 1183 (3d Cir.1990) (discussing the "exceptional" case multiplier); *American Hardware Mut. Ins. Co. v. Harley Davidson of Trenton, Inc.,* 124 Fed. Appx. 107, 113 (3d Cir.2005) (reversing for failure to apply an enhancement); *Lanni v. New Jersey,* 259 F.3d 146, 152 (3d Cir.2001) (remanding for consideration of whether this is a "substantially contingent" case under the *Rendine* analysis, and contrasting *Dague* and *Rendine* ).

***20** Lastly, Defendant contends that such an enhancement is against public policy when awarded against public entities or their employees. Defendant is correct that in assessing a fee award, " [t]he judge must also show an appreciation of the fact that when dealing with a governmental entity, whether insured or not, the cost is ultimately borne by the public." *Furey v. County of Ocean,* 287 N.J.Super. 42, 46 (App.Div.1996). However, *Furey* addresses a fee award in the context of a claim under the tort claims act, and the *Furey* Court itself distinguishes the situation from one involving the NJLAD. *Id.* at 46 ("By citing these decisions involving statutory awards of attorney's fees in the context of the LAD, we do not mean to infer that the policy considerations with respect to the award of fees against public entities or public employees are the same.").

Contrary to Defendant's argument, courts have not hesitated to impose fee enhancements on public entities for a party's success under the NJLAD. *See e.g., Coleman,* 87 F.3d 1491, 1511 (3d Cir.1996) (reversing district court to determine appropriate degree contingency enhancement against County of Monmouth); *Failla v. City of Passaic,* 146 F.3d 149, 160 (3d Cir.1998) (affirming a thirty-five percent contingency enhancement [as] within the range identified by *Rendine* for typical cases" in context of employment discrimination claim by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

police officer).

Lastly, Defendant also cites to *Gallo v. Salesian Soc. Inc.,* 290 N.J. Super 616, 660 (App.Div.1996) for the premise that *Rendine* does not mandate "a fee enhancement multiplier ... in every case." However, aside from the arguments set forth above, Defendant has suggested no reason why Plaintiffs would not be entitled to a fee enhancement in this instance, since the case was accepted on substantially contingent basis and involved considerable risk to counsel. Accordingly, Plaintiffs' counsel is entitled to a *Rendine* enhancement.

*Rendine* provides that "contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent." *Rendine,* 141 N.J. at 343-344. To determine the proper enhancement, the trial court should consider the prevailing party's likelihood of success,[FN20] " whether a case was taken on a contingent basis, whether the attorney was able to mitigate the risk of non-payment in any way, and whether other economic risks were aggravated by the contingency of payment." *Gallo v. Salesian Soc ., Inc.,* 290 N.J.Super. 616, 658 (App.Div.1996) (quoting *Rendine,* 141 N.J. at 339).

FN20. Although courts often look to the strength of the prevailing party's case, *Gallo,* 290 N.J. Super at 658, such an assessment is impossible here where the case settled prior to trial and the weight of the evidence is unclear.

*Rendine* discourages large enhancements in excess of 50% and warns that "[s]uch enhancements should never exceed one-hundred percent of the lodestar," unless perhaps "the 'legal' risk constitutes 'an economic disincentive independent of that created by the basic contingency in payment . .. [and] the result achieved ... is significant and of broad public interest.' " *Id.* (quoting *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 751 (1987) (Blackmun, J., dissenting)). To ascertain whether a substantial enhancement is due, courts look to whether any "prospect existed for the attorney to be compensated by payment of a percentage of a large damages award." *Id.*

***21** *Rendine* provides that a "typical contingency" case suggests an enhancement of 20 to 35%. However, because Plaintiffs already paid fees to Buckman, this suit is not a "typical contingency" case. In this instance, Plaintiffs' counsel had already obtained some compensation and Plaintiffs paid most costs. Furthermore, had the case been successful at trial, Plaintiffs may have recovered significant damages and counsel would have profited accordingly. Thus, Plaintiffs' counsel has set forth no justifiable rationale for an enhancement of 75%. Moreover, Buckman is entitled to less of an enhancement than an attorney litigating a "typical" contingent suit. Kuroishi, however, has not yet received compensation for any of his work, and, allegedly represented Plaintiffs on a complete contingency basis. Accordingly, the Court now finds that Plaintiffs are entitled to an increase of 10% of Buckman's fee award and 20% of Kuroishi's award.

### VI. Conclusion

Kuroishi requests fees in the amount of $117,305.10 (169.7 hours at $395/hour). As provided above, this amount will be reduced by $2,853 for billing related to the motion for summary judgment, $8,688 for redundant presence at settlement conferences, mediation, and depositions, $2,923 for reviewing depositions of Allenbach and Taylor, $3,038 for document review and other associate-level work, and $474 for work relating solely to defendants besides Solomon. This amounts to a total reduction of $17,976, resulting in compensation of $99,329.10.

Buckman requests $285,087.60 (510.93 hours at $375/hour, 106.42 hours at $90/hour, and 601.24 hours at $150/hour) plus $8,662.50 for the reply to fee application for a total of $293,750.10. This will be reduced by $12,038.28 attributed to the motion for summary judgment, $1,312.50 for the opposition to the motion to intervene, $7,924.50 for litigation unrelated to Solomon, and $3,852 for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ambiguous billing entries, for a total of $268,622.82.

Both Buckman and Kuroishi's awards shall be further reduced by 20% for Plaintiffs' partial success. Buckman's fee award shall be enhanced by 10% for its partially contingent nature, resulting in a 10% reduction overall, and a total award of $241,760.54. Kuroishi is entitled to a contingency enhancement of 20%, resulting in a total fee award of $98,814.60. Lastly, Plaintiffs are entitled to costs in the amount of $19,443.50. Solomon's proportionate share of 83% the fees and costs amounts to an $200,661.25 award for Buckman, an $82,443.15 award for Kuroishi, and $16,138.11 in costs.

The accompanying Order shall issue today.

D.N.J.,2006.
Jefferson v. City of Camden
Slip Copy, 2006 WL 1843178 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2898968 (Trial Motion, Memorandum and Affidavit) Motions in Limine on Behalf of Defendant, Lee Solomon (Sep. 1, 2005)
• 1:01cv04218 (Docket) (Sep. 5, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
ALLIANCE FOR the MENTALLY ILL OF PENNSYLVANIA, INC., et al.
v.
John F. WHITE, Jr., individually and in his official capacity, et al.
**Civ. A. No. 90-6389.**

Aug. 28, 1992.

David A. Kahne, Fine, Kaplan & Black, Stephen F. Gold, Philadelphia, Pa., for plaintiffs.
Kate L. Mershimer, Susan J. Forney, Office of Atty. Gen., Harrisburg, Pa., for defendants.

MEMORANDUM
LUDWIG, District Judge.
*1 Plaintiffs' fee petition requests $98,274.50 for services rendered by five attorneys.[FN1] 42 U.S.C. § 1988.[FN2] Plaintiffs also request $45,415 for preparation of the fee petition and litigation costs of $8,785.89.

Defendants contest: 1) the attorneys' hourly rates; 2) the number of attorneys; 3) the time spent in consultation with other attorneys; 4) the time expended after the state's medication distribution policy was changed; 5) the degree of the lawsuit's success; 6) the amount of compensation for the fee petition. *See* Defendants' Brief Contesting the Reasonableness of Attorneys' Fees and the Use of a Contingency Multiplier (Defendants' Brief).

This action, begun in October 1990, involved the distribution of clozapine, a new antipsychotic medication. The complaint demanded that clozapine be administered to patients based on medical need and without regard to the state's financial constraints. Complaint at ¶ 18.[FN3] Defendants are, or were, Department of Public Welfare officials in charge of the state hospital system. On January 16, 1991, DPW formally replaced its rationing and lottery allocation program with a need-based system. The court was notified that the action was settled. Upon consideration of plaintiffs' attorneys fee petition, plaintiffs, over objection, were found to be prevailing parties. *Alliance for the Mentally Ill of Pennsylvania v. White,* 1991 WL 236483 (E.D.Pa. Nov. 5, 1991).

I. The Lodestar

Reasonable fee analysis begins with computation of a lodestar-the number of hours reasonably expended times a fair hourly rate. *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 944-45, 103 L.Ed.2d 67 (1989). The petitioner bears the prima facie burden of showing that the hours and the rates are reasonable. *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990) ( *citing Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). A party opposing a fee request must demonstrate the necessity of reducing the fee award. *Rode,* 892 F.2d at 1183. The opponent must "challenge [the fee request] by affidavit or brief with sufficient specificity to give fee applicants notice." *Id.,* at 1183; *accord Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir.1989). Once the fee petition has been challenged, the district court may adjust the lodestar appropriately. *Rode,* 892 F.2d at 1183. However, the court may not reduce the number of hours claimed unless the opposing party "raise[s] a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure," or the judge has personal knowledge. *Cunningham v. City of McKeesport,* 753 F.2d 262, 267 (3d Cir.1985), *rev'd on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986); *see also Bell,* 884 F.2d at 719.

A. Hourly Rate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The fee petition asks for compensation at each attorney's usual hourly rate. FN4 Reasonable fees " are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Extraordinary circumstances aside, the hourly rate an attorney would charge a client is presumed to be reasonable for statutory fee purposes. *See Student Public Interest Research Group v. AT & T Bell Labs.,* 842 F.2d 1436, 1442, 1445 (3d Cir.1988) ( "SPIRG"); *Lawrence v. City of Philadelphia,* 700 F.Supp. 832, 836 (E.D.Pa.1988). Defendants contend that hourly rates for counsel other than Kahne are unreasonable because they exceed his rate. Defendants' Brief at 9. However, identifying a disparity in the hourly rates of counsel, without showing that these rates are unreasonable, or the services uncalled for, is insufficient to reduce the lodestar. *Bell,* 884 F.2d at 720 n. 7. All of the hourly rates appear to be reasonable for the counsel in question in light of the prevailing fees charged in Philadelphia.FN5 It is no argument to say that Kahne could or should have performed all the services rendered.

*2 Compensation for Kahne and Kaplan is listed at their 1991 rates for work done in 1990 ostensibly because of the delay in payment. Defendants contend that this work should be compensated at 1990 rates. "[A]n appropriate adjustment for delay in payment-whether by the application of current rather than historic hourly rates or otherwise-is within the contemplation of [§ 1988]." *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). However, some showing as to the harm to counsel caused by the delay is required. *SPIRG,* 842 F.2d at 1453-54; *Fletcher v. O'Donnell,* 729 F.Supp. 422, 434 (E.D.Pa.1990) ("At a minimum, [the] court needs to have evidence of the rate of market interest and the time value of money over the period of the litigation if it is to calculate the effect of delay."). Plaintiffs have not provided empirical evidence regarding harm caused by delay, and, therefore, the requested adjustment will not be granted. Both sides were inflexible during several attempts to resolve this fee dispute.

B. Hours Expended

1. Number of Lawyers and Conflict of Interest

Defendants challenge 34.85 hours attributed to Penelope Boyd asserting that her work was not incorporated into the final complaint. However, plaintiffs have adequately shown that Boyd's research was used in the litigation.FN6

Before suit, plaintiffs attempted to retain Stephen Gold. Since he was unavailable, they retained Kahne for his litigation experience and Kreimer for his civil rights expertise. *See* Defendants' Exhibits in Support of their Brief, exhibit A at 44-50. Gold did not enter his appearance on behalf of AMI until December of 1990, believing his concurrent representation of former Byberry state hospital patients could be a conflict of interest.FN7 Gold's fees are for 10.3 hours expended during this potential conflict period before his entry of appearance, based on AMI's having consented to his participation. Defendants dispute Gold's time prior to his entry of appearance. They also contend that too many lawyers with similar experience were retained for the litigation. Defendants' Brief at 9-11. Plaintiffs have documented Gold's activities during his pre-appearance period, and defendants have not shown that these hours were unnecessarily expended. Therefore, these hours will not be excluded. However, because of the overlap of counsel's expertise and the number of lawyers used, some reduction in the lodestar is warranted.

2. Consultation Hours

Defendants note our Circuit's admonition to be wary of hours spent in consultation with other attorneys. *See Blum v. Wilco Chem. Corp.,* 829 F.2d 367, 379 (3d Cir.1987). Since Shane and Murphy have been removed from the fee petition, time spent in consultation with them should, it is argued, likewise be removed. However, only 6.75 such consultation hours are at issue, and defendants do not specify why this consultation time was unreasonable or unnecessary. Given the small amount involved and the novelty of the case, these hours will be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

compensated.

3. Hours Expended and Degree of Success

*3 Defendants maintain that attorney's time expended after DPW announced the end of clozapine rationing on December 13, 1990 was unnecessary and should be excluded.[FN8] In the alternative, they would exclude time spent after February 1991 when the random lottery system was discontinued.

In an earlier adjudication, plaintiffs were found to have prevailed in their central claim as of January 16, 1991. *Alliance for the Mentally Ill of Pennsylvania v. White,* 1991 WL 236483, at *1 (E.D.Pa. Nov. 5, 1991).[FN9] Plaintiffs assert that their services rendered after January 16, 1991 were directed towards "end[ing] the practice of withholding clozapine based on patients' personal finances..., enforc[ing] the end of rationing, secur[ing] better reporting by defendants on clozapine usage, and negotiat[ing] better monitoring." Plaintiffs' Reply at 12 (footnotes omitted). However, as plaintiffs do not adequately document or explain the results of their efforts after this date, some reduction in the lodestar will be made.

Defendants also would reduce the lodestar to reflect incomplete success on the merits. The Supreme Court, in *Hensley,* suggested that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943.; *accord SPIRG,* 842 F.2d at 1455. Defendants observe that the settlement does not bind DPW to continue any policy changes in the future. Defendants' Supplemental Brief at 9. The settlement aspect of this contention is without merit. *See, e.g. Ashley v. Atlantic Richfield Co.,* 794 F.2d 128, 132 (3d Cir.1986) (that plaintiff prevailed by settlement does not extinguish or attenuate a claim for attorney's fees). The argument that the settlement has no binding effect on future policies is, as a practical matter, highly questionable. It should not impair or defer plaintiffs' right any longer to a present fee. The settlement has now been in place for a year and a half.

The main purpose of plaintiffs' complaint was to enjoin DPW "from denying clozapine treatment to persons for whom such therapy is clinically appropriate." Complaint at 18. While the literal triage of the lottery system has been eliminated, the lawsuit and settlement did not effectuate complete relief. In *Swaayze v. Philadelphia Housing Auth.,* 1992 WL 81598 (E.D.Pa. April 16, 1992), the plaintiffs lodestar request was reduced after partial relief was obtained through a settlement agreement. "It [was] reasonable ... to reduce the lodestar figure by 20 [percent] to reflect the fact that Plaintiff did not obtain the full relief sought in the Complaint, and that Plaintiff had to agree to change her own conduct in order to obtain the relief she did get." *Id.* at *3. Here, need-based distribution of clozapine was made possible because the cost of side effect testing had been greatly reduced and because the settlement provided for distribution of clozapine incrementally, as patients were individually evaluated by defendants. [FN10]

*4 A district court may take equitable considerations into account when adjusting the lodes tar. *Durett v. Cohen,* 790 F.2d 360, 362-63 (3d Cir.1986). The hours requested by plaintiffs multiplied by counsels' 1990 and 1991 rates result in a lodestar of $91,609.50. The following factors favor reducing the lodestar in this case: (1) the overlapping expertise of counsel; (2) the amount of work performed after January 16, 1991; and, (3) plaintiffs' incomplete success on the merits. Given these factors, it is reasonable to reduce the merits lodestar by 25 percent, leaving an award of $68,707.13.

IV. Fee Petition

Preparation and litigation of the fee petition are compensable under 42 U.S.C. § 1988. *See, e.g., SPIRG,* 842 F.2d at 1455; *Fletcher,* 729 F.Supp. at 434. For these services, plaintiffs petition for $45,415. Such fees are reducible where the lodestar has not been awarded in full. *See SPIRG,* 842 F.2d at 1455; *Durett,* 790 F.2d at 363. "[I]n fact, it has been held an abuse of discretion *not* to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

do so." *Fletcher,* 729 F.Supp. at 434 (emphasis in original) (citations omitted). Moreover, a substantial portion of the fee petition was devoted to the contingency fee multiplier, which was later canceled. *See, e.g.,* Plaintiffs' Reply at 13-25. Therefore, the fee petition request will be reduced by 33 percent, yielding fees in the amount of $30,428.05.

Uncontested costs of $8,785.89 will be awarded.

ORDER

AND NOW, this 27th day of August, 1992, the following is awarded plaintiffs:

| | |
|---|---|
| -Lodestar | $ 68,707.13 |
| -Fee petition | $ 30,428.05 |
| -Costs | $ 8,785.89 |
| | $107,921.07 |

FN1. *See* Plaintiffs' Supplemental Memorandum on the Reasonableness of Attorneys' Fees (Plaintiffs' Supp.) at 18.
The attorneys are: David Kahne, Arthur Kaplan, Seth Kreimer, Stephen Gold, and Penelope Boyd. Plaintiffs' initial fee petition sought compensation of $4,907.15 for two additional attorneys. On October 29, 1991, plaintiffs withdrew this request.
Plaintiffs' Reply Memorandum on the Reasonableness of Attorneys' Fees (Plaintiffs' Reply) at 5.
Plaintiffs also claimed a contingency fee multiplier. However, both parties agree that multipliers are now unavailable in statutory fee cases under the Supreme Court's recent decision in *City of Burlington v. Dague,* 60 U.S.L.W. 4717 (June 24, 1992).

FN2. "In any action or proceeding to enforce a provision of §§ 1981, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

FN3. Prior to the suit, clozapine was rationed and patient eligibility was determined by a "lottery" system. Approximately one out of three eligible patients received clozapine by this rationing method.

FN4. Compensation is requested for work done in 1990 and 1991. Counsels' 1990 rates are: David Kahne $120/hr., Arthur Kaplan $260/hr., Seth Kreimer $200/hr., Penelope Boyd $170/hr., and Stephen Gold $270/hr. The 1991 rates are: Kahne, $140/hr. and Kaplan, $280/hr; the others were unchanged.

FN5. Plaintiffs' have submitted two surveys including samples of hourly rates at Philadelphia firms ranging from $90/hr. to $350/hr. for partners and from $55/hr. to $200/hr. for associates. Affidavit of Lead Counsel in Support of Fees and Costs

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Petition, exhibit T, exhibit U.

FN6. Some of Boyd's research was incorporated into the complaint. *See* Second Supplemental Lead Counsel Affidavit at 2.

FN7. Gold represented former patients of the Byberry state hospital in *Edward "K" v. White,* Civ. No. 88-3358 (E.D.Pa. filed April 22, 1988), a suit partially involving the distribution of clozapine.

FN8. Dr. Jack Wolford of DPW announced at his deposition on December 13, 1990 that rationing of clozapine would no longer be necessary. Defendants' Brief at 14. The official date of the change of policy was January 16, 1991.

FN9. Plaintiffs request $28,523.00 in fees for work performed after December 13, 1990 and $4,397.50 for work after February 1991.

FN10. The settlement agreement provides for: 1) availability of clozapine to all for whom it is medically indicated; 2) no discontinuation of clozapine unless medically-appropriate or patient does not consent; 3) notification of plaintiffs if above-stated policies are changed; 4) monthly reports to plaintiffs on clozapine usage in state hospitals; 5) establishment of a committee, membership to be negotiated by plaintiffs and DPW, for concerns about clozapine use in state hospitals; 6) listing of persons evaluated for clozapine but found not eligible. Second Supplemental Lead Counsel Affidavit, exhibit A. Parenthetically, defendants do not contend that *Visser v. Taylor,* 756 F.Supp. 501 (D.Kan.1990), holding that Medicaid required general distribution of clozapine, played a part in Pennsylvania's policy changes.

E.D.Pa.,1992.
Alliance for Mentally Ill of Pennsylvania v. White
Not Reported in F.Supp., 1992 WL 212431 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:90cv06389 (Docket) (Oct. 04, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.



**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Judy HERKALO
v.
NATIONAL LIBERTY CORP.
**No. 94-CV-7660.**

Aug. 7, 1997.

H. Thomas Hunt, III, Hunt & Scaramella, P.C., Cherry Hill, NJ, Kathleen A. Frederick, Plymouth Meeting, PA, Anthony L. Marchetti, Jr., Hunt & Scaramella, P.C., Cherry Hill, NJ, for Judy Herkalo, Plaintiff.
Michael D. Homans, Phila, PA, Thomas J. Barton, Amy E. Feldman, Drinker, Biddle and Reath, Phila, PA, for Defendants

*MEMORANDUM*

BRODERICK, Senior District J.
***1** Presently before the court is Plaintiff's petition for attorney fees and costs in the amount of $458,576 following her jury verdict award of $300,000 in this sex discrimination case. Defendant National Liberty has filed its timely objections to the plaintiff's petition for attorney fees and costs. For the reasons stated hereinafter, the court will award the plaintiff $368,213 in attorney fees and costs.

*Procedural History of the Case*

The plaintiff commenced this action on December 21, 1994 against her former employer, defendant National Liberty, and her former supervisor, defendant Michael Boyle. The plaintiff alleged four counts in her complaint: count I-sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.;* count II-sex discrimination in violation of the Pennsylvania Human Relations Act (PHRA), 43 Pa.C.S.A. § 951 *et seq.;* count III-violations of the Federal Equal Pay Act, 29 U.S.C. § 209(d)(1); and count IV-violations of Pennsylvania's Equal Pay Law, 43 Pa.C.S.A. § 336.1 *et seq.*

On March 8, 1995, the court granted the defendants' 12(b)(6) motion to dismiss count IV of the complaint, plaintiff's claim under Pennsylvania's Equal Pay Law. On June 14, 1996, the court granted the defendants' motion for summary judgment as to count III of the complaint, plaintiff's claim under the Federal Equal Pay Act.

Accordingly, only count I (Title VII) and count II (PHRA) were at issue during the trial in this case, which commenced on January 21, 1997. The plaintiff alleged three claims for relief: (1) that the defendants subjected her to a hostile work environment because she is a woman; (2) that the defendants retaliated against her for having filed a sex discrimination complaint against Michael Boyle; and (3) that the defendants constructively discharged her.

Trial was bifurcated. The liability portion of the trial commenced on January 21, 1997. At the close of the plaintiff's case, National Liberty and Mr. Boyle moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. The court denied each defendant's motion without prejudice to renewing their motion at the close of the evidence.

At the close of the evidence, the defendants renewed their Rule 50 motions for judgment as a matter of law. The court denied defendant National Liberty's motion for judgment as a matter of law. The court granted defendant Boyle's motion for judgment as a matter of law as to the plaintiff's Title VII claim and denied his motion as to the plaintiff's PHRA claim, on the grounds that Title VII does not provide for individual employee

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

liability, *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061 (3d Cir.1996) (*en banc* ), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031, 1997 WL 49784 (1997), but that the PHRA does provide for individual employee liability under its aiding and abetting provision found in § 955(e), *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542 (3d Cir.1996).

The jury returned with its liability verdict on January 30, 1997, finding defendant National Liberty liable for (1) subjecting the plaintiff to a hostile work environment; (2) retaliating against the plaintiff for having filed a sex discrimination complaint against Mr. Boyle; and (3) constructively discharging the plaintiff. The jury, however, found Mr. Boyle not liable for aiding and abetting under the PHRA.

*2 Following the damages portion of the trial, the court granted defendant National Liberty's Rule 50 motion as to plaintiff's claim for punitive damages. The court found that the plaintiff failed to present sufficient evidence from which a reasonable jury could conclude that National Liberty's conduct was "outrageous" or was done with "malice," as required in order to award punitive damages.

The jury returned on January 31, 1997 with its damages verdict against National Liberty in the amount of $300,000.

*Plaintiff's Petition for Attorney Fees and Costs*

In 1993, the plaintiff retained the services of Kathleen A. Frederick, Esq. from the law offices of Kathleen A. Frederick, Esq., located in Plymouth Meeting, Pennsylvania. Anticipating the filing of a complaint in federal court, the plaintiff in 1994 also retained the services of H. Thomas Hunt, III., Esq. from the law offices of Hunt & Scaramella, P.C., located in Cherry Hill, New Jersey. Throughout the course of this litigation, Mr. Hunt's office and Ms. Frederick's office worked on the plaintiff's case. Indeed, the plaintiff has submitted time-sheets from the offices of both Mr. Hunt and Ms. Frederick in support of her fee petition.

As heretofore pointed out, the jury awarded the plaintiff $300,000 in total damages. The plaintiff seeks $458,576 in attorney fees and costs. Defendant National Liberty objects to the plaintiff's fee petition on the ground that the total amount of fees and costs the plaintiff seeks is excessive and unreasonable. In view of the fact that the defendant has objected to the plaintiff's fee petition, "[i]t remains for the district court to determine what fee is 'reasonable." ' *Hensley v. Eckerhart,* 461 U.S. 424, 432, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

The plaintiff has relied on the "lodestar formula" in determining her entitlement to a reasonable amount of attorney fees and costs in this civil right litigation. Under the lodestar formula, the court multiplies the number of attorney hours reasonably expended on the litigation by a reasonable hourly rate for the attorney. "The result of this computation is called the lodestar" and "is strongly presumed to yield a reasonable fee." *Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031, 1035 (3d Cir.1996).

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990). In order to meet this burden, the party "must 'submit evidence supporting the hours worked and rates claimed." ' *Id.* "[T]he party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give the fee applicants notice, the reasonableness of the requested fee." *Id.* "The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party." ' *Id.* However, "[o]nce the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." *Id.*

*The Reasonable Hourly Rates*

*3 "The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community." *Washington v. Philadelphia County Court of Common Pleas,* 89

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.3d 1031, 1035 (3d Cir.1996). As the United States Supreme Court stated in *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1141, 1547 n. 11 (1984): "[T]he burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."

Mr. Hunt served as trial counsel in this case and has submitted the majority of the hours billed in the plaintiff's fee petition. He seeks an hourly rate of $195. Mr. Hunt was assisted in this litigation by his partner Carlo Scaramella, Esq. ($185/hour) and an associate, Anthony Marchetti, Jr., Esq. ($120/hour). Mr. Hunt's support-staff included two paralegals, Jennifer Dyer ($65/hour) and Virginia Stanley ($50/hour), as well as a legal assistant, Paula Levy ($50/hour).

Mr. Hunt has submitted the affidavits of Jerald R. Cureton, Esq. and Sidney L. Gold, Esq. stating that Mr. Hunt's hourly billing rate of $195 is reasonable compared to attorneys at his level and experience in the area. The defendant National Liberty has presented no evidence in the form of an affidavit or otherwise contesting the reasonableness of the hourly rates of Mr. Hunt ($195), Mr. Scaramella ($185), Mr. Marchetti ($120), Ms. Dyer ($65), Ms. Stanley ($50), or Ms. Levy ($50).

Ms. Frederick also represented the plaintiff throughout the course of this litigation. She seeks an hourly rate of $120 for her services in 1993, $130 for her services in 1994, $150 for her services in 1995, and $175 for her services in 1996. She was assisted by an associate in her office, Gerrie Greene ($85/hour), and two law clerks, David Markowitz ($65/hour) and Christopher Nuneviller ($60/hour).

Ms. Frederick has submitted the affidavits of Alice W. Ballard, Esq., Nancy O'Mara Ezold, Esq., and William H. Ewing, Esq. stating that Ms. Frederick's hourly rate of $175 is reasonable in view of Ms. Frederick's skill and experience. Moreover, the affidavits of Nancy O'Mara Ezold, Esq. and William H. Ewing, Esq. state that the hourly rates of Mr. Greene ($85), Mr. Markowitz ($65), and Mr. Nuneviller ($60) are reasonable and within the prevailing market rates in the community. National Liberty has presented no evidence in the form of an affidavit or otherwise contesting the reasonableness of the hourly rates requested for Ms. Frederick, her associate, or her law clerks.

By submitting the aforementioned affidavits in support of the hourly billing rates requested in her fee petition, the plaintiff has meet her burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1141, 1547 n. 11 (1983).

*4 The Third Circuit has pointed out that where " the plaintiff has met his prima facia burden under the 'community market rate' lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." *Washington,* 89 F.3d at 1036. As heretofore pointed out, the defendant presented no evidence in the form of affidavits or otherwise contesting the reasonableness of the hourly rates submitted in the plaintiff's fee petition.

Accordingly, the court will adopt the following hourly rates submitted by the plaintiff in calculating her fee petition under the lodestar formula:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*The Reasonable Number of Hours Worked*

In connection with her fee petition, the plaintiff submitted computer generated time-sheets from the law offices of Hunt & Scaramella, P.C. and the law offices of Kathleen A. Frederick, Esq. The time sheets provide a brief description of the tasks performed by each attorney and the number of hours the attorney billed for the tasks.

National Liberty objects to the number of attorney work-hours submitted in the fee petition on the ground that the plaintiff "failed to expunge excessive, redundant and otherwise unnecessary hours from her fee petition request." In particular, National Liberty contends that the plaintiff's decision to retain two separate law firms has resulted in the "double billing" of excessive, redundant, duplicative, and unnecessary hours. Moreover, National Liberty contends that the number of attorney work-hours should be reduced to reflect the number of hours billed for time spent working on those claims for which the plaintiff failed to achieve a successful result.

The United States Supreme Court has made clear that in determining the number of hours expended on the litigation under the lodestar formula, "[t]he district court should also exclude from this initial fee calculation hours that are were not 'reasonably expended," ' such as "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart,* 461 U.S. 424, 433-34, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Moreover, it is also clear that the district court "can reduce the hours claimed by the number of hours 'spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." ' *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990).

The court does not hesitate to point out that it would be unreasonable to award the plaintiff the full amount of attorney fees and costs submitted for the services of two separate law offices in this litigation wherein it is determined that such fees are duplicative and unreasonable. In particular, it would be unreasonable for the court to award attorney fees for the duplicative services of Mr. Hunt and Ms. Frederick, whose hourly billing rates are $195 and $175 respectively.

***5** As the attorney time-sheets reflect, Mr. Hunt and Ms. Frederick jointly participated in virtually every aspect of this case. They jointly attended all depositions, conferences, and trial days. Moreover, Mr. Hunt and Ms. Frederick billed their time for working on the same legal issues, such as researching and drafting a brief in opposition to the defendants' motion for summary judgment. Furthermore, they billed for their telephone conversations and conferences with each other wherein they discussed scheduling matters among themselves, shared their case strategies, updated each other as to status of the case, and reviewed each other's written work-product. The court finds that it would be unreasonable to compensate the plaintiff for the duplicative time and efforts billed by two experienced attorneys, where one attorney's time and efforts would have sufficed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The court has carefully reviewed the hourly time-sheets of Mr. Hunt and Ms. Frederick and, as hereinafter set forth, the court will reduce the submitted number of attorney work-hours in those instances where it appears that such hours were not reasonably expended in that they were excessive, redundant, duplicative, or otherwise unnecessary. *Hensley v. Eckerhart,* 461 U.S. 424, 433-34, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

*Mr. Hunt's Hours*

After reviewing Mr. Hunt's time-sheets, the court will reduce 52.6 hours billed for telephone conversations and conferences with Ms. Frederick and for reviewing Ms. Frederick's written work-product wherein the court has determined that such hours were not reasonable expended in that they were excessive, redundant, duplicative, or otherwise unnecessary.

According to Mr. Hunt's own description in his time-sheets, his 52.6 hours of telephone conversations and conferences with Ms. Frederick were in connection with discussing scheduling matters, sharing case strategies, updating each other as to status of the case, and reviewing Ms. Frederick's written work-product. For example, Mr. Hunt's time-sheets reflect such entries as: " 1/9/95 Telephone Attorney K. Frederick re: case status-.2 [hours]"; "3/28/95 Telephone Attorney K. Frederick re: scheduling issues-.2 [hours]"; and " 2/22/95 Document Examine/Review Frederick memorandum re: motion to dismiss; correspondence to Frederick re: memo-.3 [hours]."

The court wishes to make clear that it will not reduce hours submitted for Mr. Hunt and Ms. Frederick's joint-conferences with their client. The 52.6 hours which the court will reduce, therefore, represent those hours of telephone conversations and conferences between Mr. Hunt and Ms. Frederick, in which Mr. Hunt generally discussed scheduling matters, updated Ms. Frederick as to the status of the case, and reviewed Ms. Frederick's work-product.

The monetary value of the 52.6 hours billed at Mr. Hunt's hourly rate of $195 is $10,257. Accordingly, the court will subtract $10,257 from the total amount of fees the plaintiff seeks in her fee petition.

*6 The court has further calculated that Mr. Hunt submitted 67.2 hours in connection with his own work on a brief in opposition to the defendants' motion for summary judgment, which includes many hours researching and drafting. The court will reduce Mr. Hunt's hours in connection with his summary judgment work by 50 hours on the ground that these hours are excessive, redundant, duplicative, or otherwise unnecessary, particularly in view of the fact that Mr. Hunt's associate submitted 37.2 hours for his summary judgment research and drafting time, Ms. Frederick submitted 104.8 hours for her summary judgment research and drafting time, and Ms. Frederick's associate submitted 19.8 hours for her summary judgment research time.

Moreover, the plaintiff did not achieve a completely successful result in defending against the defendants' motion for summary judgment. As heretofore pointed out, the court on June 14, 1996 granted the defendants' motion for summary judgment as to count III of the complaint, which alleged violations of the Federal Equal Pay Act.

The monetary value of 50 hours billed at Mr. Hunt's hourly rate of $195 is $9,750. Accordingly, the court will subtract $9,750 from the total amount of fees the plaintiff is seeking in her fee petition.

The court has further calculated that Mr. Hunt submitted 3.3 hours for his time researching and drafting a brief objecting to the court's ruling to bifurcate the trial. As heretofore pointed out, Mr. Hunt's efforts did not persuade the court to change its ruling on the bifurcation issue. The court will reduce 3.3 hours from the plaintiff's fee petition on the ground that the plaintiff was not successful in convincing the court to reverse its ruling to bifurcate the trial. The monetary value of 3.3 hours at an hourly rate of $195 is $644. Accordingly, the court will subtract $644 from the total amount of fees the plaintiff seeks in her fee petition.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The time-sheets further reflect that Mr. Hunt's partner, Mr. Scaramella, submitted 5 hours for his attendance at the first day of trial, which consisted of the jury voir dire. Mr. Scaramella's time will be reduced as excessive, duplicative, and unnecessary. Mr. Hunt carefully and competently conducted the voir dire in this trial and has failed to explain why Mr. Scaramella's presence at the jury voir dire was necessary or reasonable.

The monetary value of 5 hours billed at Mr. Scaramella's hourly rate of $185 is $925. Accordingly, the court will subtract $925 from the total amount of fees and costs which the plaintiff seeks in her fee petition.

The court has calculated that Mr. Hunt submitted 73 hours for witness preparation time during the course of the trial. Likewise, Ms. Frederick submitted 43.2 hours for witness preparation time. Many of the hours Mr. Hunt and Ms. Frederick billed for witness preparation are duplicative. For example, on January 14, 1997 both Mr. Hunt and Ms. Frederick traveled to Douglasville, Pennsylvania for witness preparation. Mr. Hunt's time-sheet reflects: "1/14/97 Conference with witness travel to Covatta's to prepare L. Covatta; prepare Marge Tracey-6.0 [hours]." Ms. Frederick's time-sheet of the same date reflects: "1/14/97 KAF Travel to and from Douglasville, PA, for trial preparation session with Lori Covatta and T. Hunt 4.1 [hours]."

*7 The court will reduce by one-half the number of hours Mr. Hunt submitted for witness preparation time on the ground that many of his witness preparation hours are duplicative of Ms. Frederick's witness preparation hours. Mr. Hunt submitted 73 hours for witness preparation time and the court will reduce this amount by 36 hours.

The monetary value of 36 hours billed at Mr. Hunt's hourly rate of $195 is $7,020. Accordingly, the court will subtract $7,020 from the total amount of fees and costs the plaintiff seeks in her fee petition.

The court has further calculated that Mr. Hunt submitted 56.1 hours in connection with the preparation of the fee petition, and supplements thereto. The Plaintiff's fee petition and supplements includes Mr. Hunt's time-sheets, several affidavits, as well as a memorandum of law in support of the fee petition and a reply memorandum. The Third Circuit has pointed out that "[f] ee petition litigation should be treated as a ' separate entity subject to lodestar and Hensley reduction analysis." ' *Rode v. Dellarciprete,* 892 F.2d 1177, 192 (3d Cir.1990).

It appears from the court's review of Mr. Hunt's time-sheets that 56.1 hours is an excessive number of hours for the preparation of the fee petition. Generally, a fee petition requires several affidavits, computer-generated time-sheets, and a legal memorandum. The affidavits are prepared by other attorneys for the purpose of supporting the reasonableness of the requested hourly rates of the plaintiff's attorney. Moreover, the computer time-sheets are generally prepared and generated by a legal assistant and not by a partner billing at an hourly rate of $195.

Therefore, the court will reduce 28 hours of Mr. Hunt's time billed for preparing the fee petition on the ground that these hours are not reasonably expended in that they are excessive, redundant, duplicative, or otherwise unnecessary. These hours largely reflect administrative work which could have been performed by an administrative assistant in Mr. Hunt's office.

The monetary value of 28 hours billed at Mr. Hunt's hourly rate of $195 is $5,460. Accordingly, the court will subtract $5,460 from the total amount of fees the plaintiff is seeking in her fee petition.

The court has further calculated that Mr. Hunt submitted 4.8 hours for telephone calls made after the trial to this court's chambers checking the status of the fee petition, to his client informing her of the status of the fee petition, and to former jurors for purpose of interviewing them. The court finds that such time is unnecessary and will reduce these 4.8 hours from the fee petition.

The monetary value of 4.8 hours billed at Mr. Hunt's hourly rate of $195 is $936. Accordingly, the court will subtract $936 from the total amount of fees the plaintiff is seeking in her fee petition.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Ms. Frederick's Hours*

After reviewing Ms. Frederick's time-sheets, the court will reduce 20.1 hours submitted for telephone conversations and conferences with Mr. Hunt in 1995, as well as 43.1 hours submitted for telephone conversations and conferences with Mr. Hunt in 1996, wherein the court has determined that such hours were not reasonably expended in that they were excessive, redundant, duplicative, or otherwise unnecessary.

***8** The monetary value of the 20.1 hours for the 1995 telephone conversations and conferences billed at Ms. Frederick's 1995 hourly rate of $150 is $3,015. Accordingly, the court will subtract $3,015 from the total amount of fees the plaintiff seeks in her fee petition.

The monetary value of the 43.1 hours for the 1996 telephone conversations and conferences billed at Ms. Frederick's 1996 hourly rate of $175 is $7,543. Accordingly, the court will subtract $7,543 from the total amount of fees and costs the plaintiff seeks in her fee petition.

The court has calculated that Ms. Frederick submitted 104.8 hours for her time researching and drafting a brief in opposition to the defendants' motion for summary judgment. Moreover, the court has calculated that Ms. Frederick's associate submitted 19.8 hours for her time researching the legal issues related to the plaintiff's brief in opposition to the defendants' summary judgment motion. In addition, Ms. Frederick submitted costs in the amount of $160 for the "contract work" of Judith B. Wait, Esq., who researched legal issues in connection with the plaintiff's brief in opposition to the defendants' motion for summary judgment.

The court will reduce Ms. Frederick's summary judgment time by 80 hours on the ground that these hours are excessive, redundant, duplicative, or otherwise unnecessary, particularly in view of the fact that Ms. Frederick's associate submitted 19.8 for her summary judgment research, Mr. Hunt submitted 67.2 hours for his summary judgment research and drafting work, and Mr. Hunt's associate submitted 37.1 hours for his summary judgment research and drafting work.

Moreover, the plaintiff did not achieve a completely successful result in defending against the defendants' motion for summary judgment. As heretofore pointed out, the court on June 14, 1996 granted the defendants' motion for summary judgment as to count III of the complaint, which alleged violations of the Federal Equal Pay Act.

The monetary value of the 80 hours billed in 1996 for Ms. Frederick's summary judgment work at an hourly rate of $175 is $14,000. Accordingly, the court will subtract $14,000 from the total amount of fees the plaintiff seeks in her fee petition.

The court has determined to exclude from the fee petition the number of hours Ms. Frederick submitted for her appearances with Mr. Hunt at depositions, court settlement conferences, discovery hearings, and the trial, on the ground that this time constitutes unnecessary duplicative attorney billing hours. The Third Circuit has stated that " duplication in hours billed" by attorneys for their work and joint-attendance at depositions, conferences, and trial are subject to reduction in calculating attorney fees. *Daggett v. Kimmelman,* 811 F.2d 793, 797 (3d Cir.1987). *See also Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986) (recognizing that "the time for two or three lawyers in a courtroom or conference, when one would do, ' may obviously be discounted." ').

***9** The court wishes to make clear that it will not subtract Mr. Hunt's time which he billed for his attendance at depositions, court settlement conferences, discovery hearings, and trial for the reasons that Mr. Hunt served as trial counsel in this case. He addressed the court on behalf of the plaintiff, delivered the opening statements, closing arguments, and conducted the direct and cross-examinations of all witnesses.

In her fee petition, the plaintiff did not submit hours for the duplicative attendance time of Ms. Frederick at the depositions of the following individuals: Tracey, Dawson, Boland/Petsko, Peters/Mazzuca, Gardner, Agnew, and Covatta. However, the plaintiff did submit hours for the duplicative

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

attendance time of Ms. Frederick at the deposition of Judy Herkalo, Michael Boyle, and Richard Smith. The court will, therefore, reduce the number of hours Ms. Frederick submitted for her attendance at the depositions of Judy Herkalo, Michael Boyle, and Mr. Smith on the ground that such time constitutes duplicative billing hours which are more reasonably billable to one attorney. As pointed out by Judge Weis in *Halderman v. Pennhurst State School & Hospital,* 49 F.3d 939, 943 (3d Cir.1995):

In many case, the attendance of additional counsel representing the same interests as the lawyers actually conducting the deposition is wasteful and should not be included in a request for counsel fees from an adversary. The fact that a private client may accede to the practice and pay the additional fees does not necessarily make them reasonable nor necessary when they are to paid by the other party to the proceedings.

The court has calculated that Ms. Frederick submitted 21.5 hours for her attendance with Mr. Hunt at Judy Herkalo's deposition. The monetary value of 21.5 hours billed at Ms. Frederick's 1995 hourly rate of $150 is $3,225. Accordingly, the court will subtract $3,225 from the total amount of fees the plaintiff seeks in her fee petition.

The court has calculated that Ms. Frederick submitted 13.2 hours for her attendance with Mr. Hunt at the depositions of Michael Boyle and Richard Smith. The monetary value of 13.2 hours billed at Ms. Frederick's 1995 hourly rate of $150 is $1,980. Accordingly, the court will subtract $1,980 from the total amount of fees and costs the plaintiff seeks in her fee petition.

The court has further calculated that Ms. Frederick submitted 84.3 hours for her attendance at court settlement conferences, discovery hearings, and in particular at the trial. Mr. Hunt was also in attendance during the settlement conferences, discovery hearings, and as heretofore pointed out, served as the trial counsel.

The court will reduce from the fee petition the 84.3 hours submitted by Ms. Frederick for her attendance at court settlement conferences, discovery hearings, and the trial on the ground that these hours constitute duplicative attorney billing hours which are more reasonably billable to one attorney.

***10** The monetary value of 84.3 hours billed at Ms. Frederick's 1996 hourly rate of $175 is $14,753. Accordingly, the court will subtract $14,753 from the total amount of fees the plaintiff seeks in her fee petition.

As heretofore pointed, the plaintiff failed to achieve a successful result as to her PHRA aiding and abetting claim against defendant Boyle and her claim for punitive damages. The court has calculated that Ms. Frederick submitted 6.9 hours for time researching issues related to plaintiff's PHRA aiding and abetting claim against Mr. Boyle and her claim for punitive damages. Furthermore, the court has determined that Ms. Frederick's associate, Ms. Greene, billed 44.2 hours for researching issues related to plaintiff's PHRA aiding and abetting claim against Mr. Boyle and her claim for punitive damages.

As heretofore pointed out, "the court can reduce the hours claimed by the number of hours 'spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." ' *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990).

The court will reduce 6.9 hours submitted by Ms. Frederick for her PHRA and punitive damages research and drafting time. The monetary value of 6.9 hours billed at Ms. Frederick's 1996 hourly rate of $175 is $1,208. Accordingly, the court will subtract $1,208 from the total amount of fees the plaintiff seeks in her fee petition.

Likewise, the court will reduce 44.2 hours submitted by Ms. Greene for her PHRA and punitive damages research and drafting time. The monetary value of 44.2 hours billed at Ms. Greene's hourly rate of $85 is $3,757. Accordingly, the court will subtract $3,757 from the total amount of fees the plaintiff seeks in her fee petition.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

As heretofore pointed out, Ms. Frederick submitted 43.2 hours for her witness preparation time during the course of the trial, much of which was duplicated by Mr. Hunt's witness preparation time. As the court did with Mr. Hunt's witness preparation time, the court will reduce by one-half Ms. Frederick's witness preparation time on the ground that many of these hours are duplicative of Mr. Hunt's hours.

The monetary value of 21.5 hours billed at Ms. Frederick's hourly rate of $175 is $3,763. Accordingly, the court will subtract $3,763 from the total amount of fees the plaintiff seeks in her fee petition.

*Costs*

The plaintiff submitted costs in the amount of $9,017 from Mr. Hunt's office and costs in the amount of $4,846 from Ms. Frederick's office. The court will subtract $1,232 in costs from Mr. Hunt's office on the ground that these costs represent excessive, redundant, duplicative, or otherwise unnecessary costs for travel expenses to Ms. Frederick's office in Plymouth Meeting, Pennsylvania, as well as for meals for himself and Ms. Frederick during their meetings. Moreover, the court will subtract $895 in costs from Ms. Frederick's office on the ground that these costs represent excessive, redundant, duplicative, or otherwise unnecessary costs for travel expenses to Mr. Hunt's office in New Jersey, for meals for herself and Mr. Hunt during their meetings, as well as for travel expenses to and from depositions and court.

*Conclusion*

***11** For the reasons heretofore stated, the court will reduce plaintiff's fee petition request for $458,576 by the amount of $90,363. Accordingly, the court will award the plaintiff $368,213 in fees and costs.

*ORDER*

AND NOW, this 7th day of August, 1997; for the reasons stated in this court's memorandum of August 7, 1997;

IT IS ORDERED: Plaintiff's petition for attorney fees and costs is GRANTED in the amount of $368,213.

E.D.Pa.,1997.
Herkalo v. National Liberty Corp.
Not Reported in F.Supp., 1997 WL 539754 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:94cv07660 (Docket) (Dec. 21, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.