## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORPORAL B. KURT PRICE, et a., | : | |
| | : | C.A. No. 04-956-GMS |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| COLONEL L. AARON CHAFFINCH, et al. | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| SERGEANT CHRISTOPHER D. FORAKER, | : | |
| | : | |
| Plaintiff, | : | C. A. No. 04-1207-GMS |
| | : | |
| v. | : | |
| | : | |
| COLONEL L. AARON CHAFFINCH, et al. | : | |
| | : | E-Filed |
| Defendants. | : | |

### PLAINTIFF FORAKER'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SANCTIONS/CONTEMPT

**MARTIN D. HAVERLY, ATTORNEY AT LAW**
**MARTIN D. HAVERLY, ESQUIRE**
Two East Seventh Street, Suite 201
Wilmington, Delaware 19801-3707
Del. Bar Number 3295
(302) 654-2255

DATED: July 14, 2006

## TABLE OF CONTENTS

Page

Table of Contents..................................................................................... i

Table of Authorities................................................................................ iii

Argument.................................................................................................. 1

I.    Plaintiff Foraker Properly Brought This Contempt Issue Before the
      Delaware District Court.................................................................. 1

II.   The Defendants Violated The Stipulated Order................................ 3

      A.  Actual Damages Are Not An Element of Contempt................. 3

      B.  The Merits.......................................................................... 4

      1.  The Weight of the Evidence Clearly and Convincingly Proves That
          The Delaware State Police, Defendant Chaffinch and Defendant
          MacLeish Violated the Stipulated Order.................................. 4

      2.  The Lack of Credibility of Defendants' Witnesses.....................6

III.  Foraker's Requests For Relief Are Proper For A Civil Contempt
      Proceeding....................................................................................... 8

      A.    A Ruling of Contempt Would Not Cause a Duplicative
            Recovery Which Would Forestall A Finding a
            Contempt.................................................................................. 8

      B.    This Court Should Award Emotional Distress Damages
            to Compensate Foraker for Defendants' Action of
            Civil Contempt......................................................................... 9

      C.    Foraker's Requests for Injunctive Relief are Valid............................ 10

      D.    The Court Should Award Compensatory Damages for
            Foraker's Economic Loss.......................................................... 12

Conclusion................................................................................................ 12

## TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE**

American Fidelity Ins. Co. v. Construcciones Werl, Inc.,
    407 F. Supp. 164 (D.V.I. 1975)........................................................... 2

Bauchman v. West High Sch.,
    906 F. Supp. 1483 (D. Utah 1995).......................................................... 9

Com. of Pa. v. Local 542 International Union of Operating Engineers,
    807 F.2d 330 (3d Cir. 1986).................................................................. 11

Com. of Pa. v. Local 542 International Union of Operating Engineers,
    619 F. Supp. 1273 (E.D. Pa. 1985)........................................................ 11

Delaware Valley Citizens Council for Clean Air v. Pennsylvania,
    678 F.2d 470 (3d Cir. 1982).................................................................. 4

Fairview Park Excavating Co. v. Al Monzo Constr. Co.,
    560 F.2d 1122 (3d Cir. 1977)................................................................ 8

Garcetti v. Ceballos,
    ---U.S.---, 126 S. Ct. 1951 (2006) ....................................................... 12

Harris v. City of Philadelphia,
    47 F.3 1311 (3d Cir. 1994).................................................................... 3

In Re: General Datacomm Indus., Inc.,
    407 F.3d 616 (3d Cir. 2005).................................................................. 2

In Re: Walters,
    868 F.2d 665 (4th Cir. 1989)................................................................. 9

Kuahulu v. Employers Ins. of Wausau,
    557 F.2d 1334 (9th Cir. 1977)............................................................... 8

Latrobe Steel Company v. United Steel Workers of America,
    545 F.2d 1336 (3d Cir. 1976)................................................................ 10

McBride v. Coleman,
    955 F.2d 571 (8th Cir. 1992)................................................................. 9

Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,
    2006 WL 623074 (3d Cir. 2006).......................................................................... 2

Powell v. Ward,
    643 F.2d 924 (2d Cir. 1981).............................................................................. 4

Powell v. Ward,
    487 F. Supp. 917 (S.D.N.Y. 1980)............................................................... 9, 11

Schiavone v. Fortune,
    477 U.S. 21 (1986)........................................................................................... 2

Welch v. Spangler,
    939 F.2d 570 (8th Cir. 1991)............................................................................ 4

## STATUTES & OTHER AUTHORITIES

None

## RULES

Fed. R. Civ. P. Rule 53.......................................................................................... 11

## ARGUMENT

I.    **PLAINTIFF FORAKER PROPERLY BROUGHT THIS CONTEMPT ISSUE BEFORE THE DELAWARE DISTRICT COURT.**

Defendants appear to argue that a contempt finding would be procedurally improper in this case because (1) Judge Farnan will not be the Judge making the decision, and/or (2) a Motion for Contempt must be made with the Civil Action No. 02-302-JJF in the caption of the motion.[1] The defendants (a) cite no precedent which would force this Court to stay its hand concerning defendants' contempt, (b) completely disregard plaintiff Foraker's ("Foraker") statement on the Civil Cover Sheet imploring Judge Farnan to "enforce his November 20, 2003 Stipulated Order," (c) disregard the fact that this Court transferred this case from the originally assigned Judge Farnan to Judge Sleet, and (d) disregard paragraphs in the Complaint. Simply put, defendants' argument amounts to an inadequate form over substance argument.

The Complaint refers to the Stipulated Order in great detail. D.I. 1 ¶ ¶ 2, 12-16. In addition, the second page of Foraker's Civil Cover Sheet specifically indicated that number C. A. No. 02-302-JJF was a related case. See Cover Sheet attached as Ex. A at 2. Indeed, Section VIII of this Civil Cover Sheet identifies Judge Farnan as the Judge and implores Judge Farnan to enforce the Order. Paragraph 2 of Section VIII specifically states "Plaintiff now invokes the jurisdiction that the Court retained to enforce the Order which defendants have violated."[2] Paragraph 4 states, "Because the Court has already overseen the initial lawsuit from filing to trial

---

[1] These two items encapsulate all of defendants' procedural arguments against this Court reaching the merits of Foraker's contempt motion.

[2] To state that this matter was never about the defendants' violation of the stipulated order would be incorrect.

1

to reinstatement and settlement - judicial economy, efficiency and consistency would be served by assignment of the case to Judge Farnan." See Ex. A attached. Initially, this case was docketed as C.A. 02-1207 and assigned to Judge Farnan on September 8, 2004. Foraker D.I. 2.[3] However, case C.A. No. 04-956-GMS also involving Foraker had been filed just prior to this case, and on January 5, 2005, C.A. No. 04-1207 was reassigned to Judge Sleet. Foraker D.I. 9. Defendants never complained about this reassignment. Like Judge Farnan, Judge Sleet is a District Judge for this Court.

The Third Circuit does not countenance such form over substance arguments as argued by defendants. See In Re General Datacomm Indus., Inc., 407 F. 3d 616, 621 (3d Cir. 2005); American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc. 407 F. Supp. 164, 187 (D.V.I. 1975). "Decisions on the merits are not to be avoided on the basis of mere technicalities." Schiavone v. Fortune, 477 U.S. 21, 27 (1986) (citations omitted); Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 2006 WL 623074, at *2 (3d Cir. Mar. 14, 2006).

Certainly such a form over substance argument has even less weight when the Petitioner invokes the authority of the same trial court to enforce the same court's Stipulated Order which has been violated. Indeed, according to defendants' argument an aggrieved party would be forced to suffer further violations of a court order simply because its motion or petition was not captioned with the original Civil Action Number.

---

[3]Docket items from C.A. 02-1207 will be referred to as "Foraker D.I. ___" and docket items from C.A. 04-956-GMS will be referred to as Price D.I. ___."

## II.    THE DEFENDANTS VIOLATED THE STIPULATED ORDER.

### A. Actual Damages Are Not An Element of Contempt.

Contrary to defendants' argument, Foraker does not need to prove actual damages for this Court to find defendants in contempt. This is not a tort claim. Rather, it is a Motion for Contempt. Foraker need only prove the following: (1) a valid Court Order existed, (2) that the defendants had knowledge of the Order, and (3) they disobeyed the Order. <u>Harris v. City of Philadelphia</u>, 47 F.3 1311, 1326 (3d Cir. 1994).[4]  If this Court finds that there were no actual damages, then this Court still should find defendants in contempt and fashion a remedy based on the coercive injunctive relief requested by Foraker.[5]   If this Court cannot in the exercise of its

_____

[4]Defendants agree that a valid court order existed and that defendants had knowledge of the order. <u>Price</u> D.I. 213 at 6-7. They only disagree as to element three.

[5]In light of defendants' contempt and in order to coerce future compliance, this court should do the following:

    A.  Refer this matter to the U.S. Attorney General's office to determine if a criminal contempt has taken place.

    B. Issue a mandatory injunction directing defendant Mitchell and his successors as Secretary of the Department of Safety and Homeland Security to act as a monitor of defendants Chaffinch and MacLeish, or any future Colonels, to prohibit any retaliation or harassment of Foraker by overseeing and approving any action or statements made by defendants Chaffinch and MacLeish concerning Foraker upon penalty of finding Mitchell and/or his successors in contempt of court. Such injunction is to run for so long as Foraker remains with the Delaware State Police.

    C. Enter an order enjoining the defendants from retaliating against Foraker now or in the future.

    D. Enter an order indicating that defendants will be fined for any future noncompliance, identifying an amount for each violation.

    E.  Enter an order for attorney's fees and costs.

wide discretion[6] fashion an adequate remedy, then this Court should award nominal damages to

vindicate the deprivation of Foraker's rights. Powell v. Ward, 643 F.2d 924, 936 (2d Cir. 1981)

(affirming an award of nominal damages to inmates in response to the violation of an earlier

court order, although the inmates had not suffered any actual damages); Welch v. Spangler, 939

F.2d 570, 573 (8th Cir. 1991).

    **B.**    **The Merits.**

    **1.**    **The Weight of the Evidence Clearly and Convincingly Proves That the Delaware State Police, Defendant Chaffinch and Defendant MacLeish Violated the Stipulated Order.**

Foraker has already provided a listing of eight different ways in which the Delaware

State Police, through defendants Chaffinch and MacLeish, have reduced Foraker's rights,

privileges, responsibilities and supervisory authority as the Section Chief of the FTU. D. I. 217

at 4-5. The evidence includes testimony from Ret. Maj. Baylor[7], Capt. McQueen, Capt. Davis,

Ret. Capt. Gregory Warren, Lt. Hagan, Ret. Cpl. Price, Ret. Cpl. Warren, and Foraker himself.

Moreover, the record includes a plethora of emails identifying Foraker as a Section Chief and

inviting him to Commander and Section Chief meetings. PX 45, complimentary copy attached

as Ex. B.

Ultimately, this Court must decide whether Foraker has proven the factual underpinnings

about Foraker's diminished job duties by clear and convincing evidence. So, the Court will need

---

[6]Delaware Valley Citizens Council for Clean Air v. Pennsylvania, 678 F.2d 470, 478 (3d Cir. 1982).

[7]Baylor's testimony is extremely probative, as he served on Chaffinch's staff and Chaffinch promoted him. He had no axe to grind but testified about Chaffinch's animosity towards Foraker. His demeanor on the stand further proved his veracity.

to weigh the credibility of witnesses based on their demeanor, any biases they may have, any inconsistencies in their testimony and/or whether they were impeached. When compared to these standards, Foraker's witnesses and other evidence clearly and convincingly outstrips defendants' evidence.

Given the statements made by Chaffinch and MacLeish indicating their disgust towards Foraker along with Chaffinch's "if looks could kill" reaction at the Section Chief Meeting, (McQueen 1308- 309, 1320-321), the fact that other sergeants were allowed to attend the Section Chief meetings, (Baylor 622-23), and the fact that Foraker attended these meetings during his first stint at the FTU (Baylor 620-21; C. Foraker 1456) this Court should conclude that Foraker's job rights, privileges, responsibilities and supervisory authority were diminished by defendants. Indeed, the defamatory comments made by Chaffinch certainly were personal. As for both being involved, even MacLeish testified that Chaffinch and MacLeish are "joined at the hip," (MacLeish 1727) and Chaffinch's last day of work was not until May 5, 2005. (Chaffinch 1654-657).

A plain reading of the Stipulated Order indicates that Foraker's job rights, privileges, responsibilities and supervisory authority were to be preserved. Otherwise, the Stipulated Order would merely have stated that he was to be reinstated.

Defendants' skewed interpretation of the Stipulated Order would require the Order to identify ways defendants would defy the Order within the text of the Order itself. Defendants have provided no legal authority requiring such a detailed Order. Indeed, the Stipulated Order is already quite clear. Foraker is to have the same "rights, privileges, responsibilities, and supervisory authority" as he had when he was previously the NCIOC of the FTU. If for

5

argument's sake policies and procedures had been changed relating to the eight separate items identified by Foraker as violating the Stipulated Order, then nothing was provided to Foraker indicating such changes prior to his return to the FTU in December of 2003. Moreover, the eight changes to his rights, privileges, responsibilities and supervisory authority took place within only a few months of his return to the FTU.

### 2.    The Lack of Credibility of Defendants' Witnesses.

In addition to the credible testimony of Foraker's witness and the demeanor of defendants' witnesses on the stand, there are other reasons to question the credibility of defendants' witnesses.

First the defense argues that the trial testimony of Ret. Major Swiski and Major Homiak reveals that sergeants do not attend the commanders and section chief meetings and that as such Foraker has no right to attend the July 2004 meeting. However, this testimony should hold little weight. Major Swiski is biased since he was on defendant Chaffinch's executive staff and is presently employed by defendant Mitchell. Likewise, Homiak is biased because defendant MacLeish is currently his boss and is responsible for his promotion to Major in the State Police. (Homiak 2158). As such, neither Swiski nor Homiak would want to say anything which would hinder their relationships with the defendants. Thus their testimony bears little credence compared to the testimony of Ret. Major Baylor, Captain McQueen, Captain Davis, Corporal Warren, and Foraker.

Similarly, the testimony of Lieutenant Parton and Ret. Sergeant Ashley should have no bearing on whether Foraker had a right to attend the commanders and section chiefs meetings. Parton is presently employed with the Delaware State Police and so he would not say anything

6

which could possibly jeopardize his employment. (Parton 2243). Meanwhile, Chaffinch gave the first speech at Ashley's retirement party. (Chaffinch 1642-644). Moreover, by entering into the Stipulated Order, Foraker supplanted Ashley as the NCIOC of the FTU.   Also, the fact that the condition of the FTU got worse during the time he was in charge affects any credibility his testimony might have. (W. Warren 233).   As such, defendants' throwing Foraker out of the section chief meeting singled out Foraker and is prohibited by the Stipulated Order.

Next the defense argues that the testimony of the budget Majors- Swiski and Eckrich-establishes that the NCOIC of the FTU only directly dealt with them in order to provide financial information and that even in that instance the NCOIC still had to keep his chain of command informed as well. Once again Swiski's testimony is biased due to his relationship with defendant Chaffinch. Similarly, Eckrich is on the executive staff of defendant MacLeish and MacLeish also assumes the position of his boss; Eckrich would not want to hinder his relationship with the defendant nor risk his job by saying the wrong thing.(Eckrich 2359).

The defense argues that the testimony of Eckrich and Major Papili indicate that the FTU operates no differently that the other DSP cost centers. However, Papili's testimony lacks credibility for at least  three reasons: (1) Defendant MacLeish is his boss (Papili 2333), (2) Papili is interested in becoming a lieutenant colonel or colonel, (Papili 2333-34) and  (3) Papili has said conflicting things concerning the term "light duty" on two separate occasions while under oath. (Papili 2335-39).   Judging by his testimony and demeanor, he obviously does not want to jeopardize his career.

Lastly, the defense claims that Eckrich only began inviting superior officers to the budget meetings in 2004 and that as such Foraker was in no way being singled out. However, as

7

previously established, Eckrich's testimony is biased due to his relationship with defendant MacLeish. (Eckrich 2359). Given all of the above, the defense's argument concerning Foraker's budgetary role lacks merit.

## III. FORAKER'S REQUESTS FOR RELIEF ARE PROPER FOR A CIVIL CONTEMPT PROCEEDING.

### A. A Ruling of Contempt Would Not Cause a Duplicative Recovery Which Would Forestall a Finding of Contempt.

To the extent a contempt award might be considered duplicative, this Court is fully capable of making the appropriate calculation insuring that there is no duplicative recovery when issuing a final judgment.

Although defendants argue that Foraker has no loss because he was already awarded compensatory damages by the jury, elsewhere defendants have filed a Motion and argued that Foraker should not be compensated under all the other legal theories upon which he has succeeded before this Court. See D. I. 193,194 & 196. Thus, granting defendants' motion while denying contempt because the jury awarded Foraker compensatory damages would be nonsensical.

Moreover, as stated previously, whether the victim of contempt suffered actual damages does not affect a finding of contempt because actual damages are not one of the three elements required to prove contempt.

Significantly, neither of the cases cited by defendants concern duplicative recovery involving allegations of contempt.[8]

---

[8] See Fairview Park Excavating Co. v. Al Monzo Constr. Co., 560 F.2d 1122 (3d Cir. 1977); Kuahulu v. Employers Ins. of Wausau, 557 F.2d 1334 (9th Cir. 1977).

Based on the record, this Court should identify an amount for Foraker's emotional distress in order to make him whole.

**B.     This Court Should Award Emotional Distress Damages to Compensate Foraker for Defendants' Action of Civil Contempt.**

Contrary to defendants' argument the Stipulated Order did contemplate emotional distress damages.  If the Stipulated Order only contemplated economic loss, then it would have simply ordered him reinstated to the FTU position. However, it includes a clause preserving his "rights, privileges, responsibilities and supervisory authority."  These terms inherently touch on issues of self-esteem and emotional well-being.  In order to make himself whole after defendants violated these terms, Foraker needs to receive emotional distress damages.  Indeed, if there were only economic gain contemplated, then the Stipulated Order would identify reinstatement and/or same salary, but such is not the case.

Defendants' reliance upon In Re: Walters, 868 F.2d 665 (4th Cir. 1989), and McBride v. Coleman, 955 F2d 571 (8th cir. 1992), is misplaced.  In Re: Walters is a Fourth Circuit case which was decided before the plethora of cases allowing for emotional damages in contempt proceedings were decided.  The same can be said of McBride which only discusses the issue of emotional distress damages within the context of contempt in dicta.  Moreover, McBride points out that in the case of Powell v. Ward, 487 F. Supp. 917, 936 (S.D.N.Y 1980), the Court looked favorably upon the awarding of emotional damages to prisoners who were not receiving due process rights hearings in violation of Court orders and would no doubt have awarded emotional damages if there had been a sufficient showing of actual injury in evidence.  Meanwhile, Bauchman v. West High Sch., 906 F. Supp. 1483 (D.Utah 1995), simply follows McBride and In Re: Walters in a footnote without further commentary.

9

Moreover, to the extent that bankruptcy courts require proof of intent to find civil contempt, Foraker certainly has proven intent on the part of defendants. Look at the jury verdict and the testimony of Ret. Major Baylor, Captain McQueen, Captain Dixon and others in this regard (Baylor 537, 546, 554, 556-58; Dixon 1053, 1055-58, 1063-65; McQueen 1308-309, 1320-321).

This Court should identify an amount for Foraker's injury based upon the record[9] and compensate him in order to make him whole.

### C.    Foraker's Requests for Injunctive Relief are Valid.

The injunctive relief requested by Foraker is in keeping with this Court's broad discretion to fashion a remedy to coerce the defendants into complying with this Court's Stipulated Order. See Latrobe Steel Company v. United Steel Workers of America, 545 F.2d 1336, 1344 (3d Cir. 1976).  Contrary to defendants' protestations, the Stipulated Order has been violated.  Moreover, Foraker certainly has shown a propensity on the part of defendants Chaffinch, MacLeish and the Delaware State Police  to continue to engage in contumacious behavior in the future.  A jury found that defendant Chaffinch violated Foraker's First Amendment rights to be free from retaliation in the previous lawsuit which Foraker brought.  Thereafter, a second jury again found that Chaffinch, as the head of the Delaware State Police, had retaliated against  Foraker for exercising his First Amendments rights.  In both instances the juries thought that Chaffinch's actions were so malicious that they awarded punitive damages.  Similarly, MacLeish also was found to have violated Foraker's First Amendment rights to be free from retaliation in such a malicious way that the jury awarded punitive damages.  This case cries out for this Court to

---

[9]See D.I. 217 at 5-6.

fashion an Order which will more sufficiently coerce MacLeish, Chaffinch, their successors and the Delaware State Police to obey the Stipulated Order.

Of course, defendants cite no law which requires a finding that the violators of a Court order must show a propensity towards bad behavior in the future in order for a Court to fashion an injunctive remedy. In this case, like during Foraker's first case, it is apparent that the defendants have curtailed their contumacious actions during court proceedings but no doubt will act quite differently after this case has ended, just like before.

The appointment of a monitor after a contempt proceeding is by no means without precedent. For example, in Com. of Pa. v. Local 542 International Union of Operating Engineers, 619 F. Supp. 1273, 1277-279 (E.D. Pa. 1985), the Court appointed a full-time hiring hall monitor when a Union used a hiring hall as a tool of discrimination and failed to satisfy Court orders. On Appeal, Third Circuit looked upon the District Court's appointment of the hiring hall monitor in a favorable light. Com. of Pa. v. Local 542 International Union of Operating Engineers, 807 F.2d 330, 336 (3d Cir. 1986).

As to the wide discretion a District Court has in fashioning a remedy, where defendants violated a court order and failed to provide prisoners with due process hearings, the court used its authority under Fed. R. Civ. P. Rule 53 to appoint a special master and further pointed out that "Courts have inherent authority to appoint non-judicial officers to aid in carrying out their judicial functions." Powell v. Ward, 487 F. Supp. 917, 934-35 (S.D.N.Y. 1980).

Moreover, defendants do not explain how Foraker's proposed injunctive remedies are too confusing or ambiguous to be enforced. The only specific terms which defendants identifies as being ambiguous are the words "retaliation" and "harassment." These are words whose meaning

11

has been defined and refined over decades of civil rights jurisprudence. Although they may be flexible, they are not vague.

In addition, Foraker is requesting the Court to identify an amount for defendants to be fined for future noncompliance. See Conclusion section to this brief, Price D.I. 198 at 15 and Price D.I. 217 at 15. The amount should be enough per violation to coerce them into compliance.

Defendants' reliance upon Garcetti v. Ceballos, --- U.S.---, 126 S. Ct. 1951 (2006) is misplaced. Garcetti does not address employers found in contempt of Stipulated Orders entered into by employer defendants to settle a lawsuit who violate said Stipulated Order within months of entering into it. It is a First Amendment free speech case.

**D.    The Court Should Award Compensatory Damages for Foraker's Economic Loss.**

Just as the jury compensated Foraker for the loss of his benefits because he has not been able to work since the Fall of 2005 to the present, this Court should compensate Foraker for his economic loss. In addition, this Court should compensate him for his future losses should he be unable to return to work as a result of defendants' contempt.

**CONCLUSION**

For the reasons contained herein and in D.I. 198/D.I. 217[10] defendants should be found in contempt and the following relief should be granted:

A. Enter an order requiring defendants to pay Sgt. Foraker for the emotional distress and economic loss he suffered as a result of their contempt.

B. Enter an order for attorney's fees and costs

---

[10]D.I. 217 is the annotated version of Foraker's opening brief. D.I. 198 is the unannotated version.

12

C. Refer this matter to the U.S. Attorney General's office to determine if a criminal contempt has taken place.

D. Issue a mandatory injunction directing defendant Mitchell and his successors as Secretary of the Department of Safety and Homeland Security to act as a monitor of defendants Chaffinch and MacLeish, or any future Colonels, to prohibit any retaliation or harassment of Foraker by overseeing and approving any action or statements made by defendants Chaffinch and MacLeish concerning Foraker upon penalty of finding Mitchell and/or his successors in contempt of court. Such injunction is to run for so long as Foraker remains with the Delaware State Police.

E. Enter an order enjoining the defendants from retaliating against Foraker now or in the future.

F. Enter an order indicating that defendants will be fined for any future noncompliance, identifying an amount for each violation.

> **MARTIN D. HAVERLY, ATTORNEY AT LAW**
> /s/ Martin D. Haverly
> **MARTIN D. HAVERLY, ESQUIRE**
> Del. Bar No. 3295
> Two East Seventh Street, Suite 302
> Wilmington, Delaware 19801
> (302) 654-2255
> Attorney for Plaintiff

Dated: July 14, 2006

13