**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| B. KURT PRICE, et al., | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 04-956-GMS |
| v. | : | |
| | : | |
| L. AARON CHAFFINCH, et al., | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2006, upon

consideration of Plaintiffs' Fed.R.Civ.P. 15(b) Motion to Amend the First Amended Complaint

to Conform to the Evidence Presented at Trial, and defendants' response thereto, it is hereby

ORDERED that the Motion is DENIED.


**BY THE COURT**

_____
GREGORY M. SLEET, U.S.D.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| B. KURT PRICE, et al. | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 04-956-GMS |
| v. | : | |
| | : | |
| L. AARON CHAFFINCH, et al., | : | |
| | : | |
| Defendants. | : | |

## ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' FED.R.CIV.P. 15(b) MOTION TO AMEND THE FIRST AMENDED COMPLAINT TO CONFORM TO THE EVIDENCE PRESENTED AT TRIAL

Date:  August 4, 2006

Richard M. Donaldson (DE Bar No. 4367)
Noel C. Burnham (DE Bar No. 3483)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE  19801
(302) 504-7840

Edward T. Ellis (Admitted Pro Hac Vice)
Robert J. Fitzgerald (Admitted Pro Hac Vice)
Carmon M. Harvey (Admitted Pro Hac Vice)
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

*Counsel for Defendants L. Aaron Chaffinch, Thomas F. MacLeish, David B. Mitchell, and the Division of State Police, Department of Safety and Homeland Security, State of Delaware*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................ 3

II.    SUMMARY OF THE ARGUMENT ................................................................ 4

III.   CONCISE STATEMENT OF FACTS .............................................................. 5

IV.    ARGUMENT:  THE COURT SHOULD DENY PLAINTIFFS' POST-
       JUDGMENT RULE 15(B) MOTION TO ADD NEW CLAIMS TO THE
       AMENDED COMPLAINT BECAUSE THE DEFENDANTS DID NOT AT
       TRIAL CONSENT TO TRY UNPLEADED ISSUES OR CLAIMS. ............................ 6

       A.     Requirements For A Rule 15(b) Amendment Under Third Circuit Law .............. 6

       B.     Plaintiffs' Motion To Amend The First Amended Complaint Does Not
              Meet The Requirements Of Rule 15(b).. .............................................. 7

              1.     There Was No Express Consent To Trial Of An Unpleaded Issue ........... 7

              2.     There Was No "Implied Consent" To Try Issues Not In The
                     Pleadings ...................................................................... 9

V.     CONCLUSION ...................................................................... 12

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Connick v. Myers*, 461 U.S. 138 (1983) ..................................................................... 10

*Douglas v. Owens*, 50 F.3d 1226 (3d Cir. 1995) ................................................. passim

*DRR, Inc. v. Sears, Roebuck & Co.*, 171 F.R.D. 162 (D. Del. 1997) .................................. 6, 7, 11

*Gamma-10 Plastics v. Am. President Lines*, 32 F.3d 1244 (8th Cir. 1994) .................................... 7

*Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006) .................................................................. 3

*Hart v. Knox County*, 79 F. Supp. 654 (E.D. Tenn. 1948) ............................................... 6

*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) ........................................................ 12

*Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216 (1st Cir. 2003) .......................... 5

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) ........................................................ 8, 10

*Portis v. First Nat'l Bank*, 34 F.3d 325 (5th Cir. 1994) ........................................... 4, 7, 11

*Yellow Freight Sys. v. Martin*, 954 F.2d 353 (6th Cir. 1992) ........................................... 11

**OTHER AUTHORITIES**

3 James Wm. Moore et al., Moore's Federal Practice § 15.18[1] (3d ed. 2006) ....................... 5, 7

6A Charles A. Wright, et al., Federal Practice & Procedure § 1494 (2d ed. 1990) ....................... 4

*Aside, The Common Law Origins of the Infield Fly Rule*, 123 U. Pa. L. Rev. 1474 (1975) ........ 12

**RULES**

Fed. R. Civ. P. 15(b). ........................................................................................... 4, 6

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS[1]

The Court is no doubt familiar with the procedural history of this case; accordingly, the following is a summary only of the points pertinent to this motion. The Court consolidated this action with plaintiff Chris Foraker's separate action (Civil Action No. 04-1207-GMS) and tried it to a jury for twelve days beginning May 15, 2006. The plaintiffs are three Delaware state troopers who allege that the defendants violated their First Amendment rights by retaliating against them for reporting on problems at the Delaware State Police ("DSP") firing range. On May 30, 2006, the day the Court charged the jury, the United States Supreme Court decided *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006), which circumscribes the scope of First Amendment protection afforded public employees who speak on matters of public concern pursuant to their duties as public employees. The parties and the Court did not have the benefit of *Garcetti* until after the jury had begun deliberations. The jury answered the following question in the affirmative as to each plaintiff:

> Do you find that Plaintiff [Price/Warren/Foraker] has proven that his protected activity under the First Amendment (speaking out about the conditions at the DSP indoor firing range) was a substantial or motivating factor in the adverse action taken against him by the defendant?

The Court has entered judgment on the jury's verdict in favor of the plaintiffs.

The defendants submitted post-trial motions on June 19, 2006, including a motion on the *Garcetti* issue. Post-trial briefing on the *Garcetti* issue was closed on July 14, 2006. The Court held oral argument on August 1, 2006.

---

[1]    For a more detailed summary of the Nature and Stage of the Proceedings, see Section I of Defendants' Motion for Judgment as a Matter of Law or in the Alternative, to Amend the Judgment or for a New Trial. (D.I. #194.)

On July 31, 2006, the night before the scheduled oral argument on post-trial motions, the plaintiffs, perhaps recognizing that *Garcetti* had placed their verdict in jeopardy, filed this motion under Rule 15(b), Fed. R. Civ. P., to amend the pleadings to conform to evidence they say they submitted at trial. They seek to add a new First Amendment count and an Equal Protection count arising under the Fourteenth Amendment.

The defendants oppose the plaintiffs' attempt to retroactively reconstruct the proceedings in this case to avoid the obvious implications of *Garcetti*. For the reasons set forth below, the defendants request that the Court deny the Rule 15(b) motion to amend the pleadings.

## II.    SUMMARY OF THE ARGUMENT

1.    Rule 15(b), Fed. R. Civ. P. allows a post-trial amendment of the pleadings to conform to the evidence only when at trial the parties expressly or impliedly consented to try the unpleaded claims. "If the issue … has not been tried with the consent of the parties, then an amendment to conform to the pleadings will not be permitted *no matter when made*." *Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995) (citing 6A Charles A. Wright, et al., Federal Practice & Procedure § 1494, at 53 (2d ed. 1990)) (emphasis in original).

2.    The court can find implied consent only when (a) the parties recognized that the unpleaded issue entered the case at trial, (b) the evidence that supports the unpleaded issue was introduced without objection, and (c) the opposing party would not be prejudiced by a finding of trial by consent. *Douglas*, 50 F.3d at 1236 (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 332 (5th Cir. 1994)).

3.    The defendants Chaffinch and MacLeish did not expressly consent to trial of a new First Amendment Free Speech issue or a Fourteenth Amendment Equal Protection claim.

4.    The defendants did not impliedly consent to trial of a new First Amendment Free Speech issue or a Fourteenth Amendment Equal Protection claim because:

(a)    contrary to the representations in plaintiffs' motion, the new First Amendment and Fourteenth Amendment claims did not enter the case at trial;

(b)    as to the new Free Speech claim that their attorney was speaking for them, key evidence was not offered in discovery or at trial, possibly because the plaintiffs would have subjected themselves to internal discipline if their superiors knew that they had authorized their attorney to bypass legitimate divisional constraints by publicizing internal DSP matters;

(c)    any evidence relevant to the Equal Protection claim was also relevant to the Free Speech claim that the parties actually tried, thereby invoking the principle that the court cannot find "consent when evidence supporting an issue allegedly tried by implied consent is also relevant to other issues actually tried." 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.18[1], at 15–77 (3d ed. 2006); *see also Douglas*, 50 F.3d at 1236; *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 231-232 (1st Cir. 2003); and

(d)    a finding of implied consent would prejudice the defendants.

## III.    CONCISE STATEMENT OF FACTS

See Section III of Defendants' Motion for Judgment as a Matter of Law or in the Alternative, to Amend the Judgment or for a New Trial.  (*See* D.I. #194.)

**IV.     ARGUMENT:  THE COURT SHOULD DENY PLAINTIFFS' POST-JUDGMENT RULE 15(b) MOTION TO ADD NEW CLAIMS TO THE AMENDED COMPLAINT BECAUSE THE DEFENDANTS DID NOT AT TRIAL CONSENT TO TRY UNPLEADED ISSUES OR CLAIMS.**

**A.     Requirements For A Rule 15(b) Amendment Under Third Circuit Law.**

Rule 15(b) of the Federal Rules of Civil Procedure recognizes that the parties to an action may agree to place issues before the jury that are not raised in the pleadings.  The rule states:

> Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Rule 15(b), Fed. R. Civ. P.  The rule requires the "express or implied consent of the parties" for the court to treat the new issue as if it had been raised in the pleadings.  Rule 15(b) is not a vehicle by which the losing party can keep its case alive by "trying one theory of recovery or defense after another, in the hope of finally hitting upon a successful one."  *Hart v. Knox County*, 79 F. Supp. 654, 658 (E.D. Tenn. 1948); *accord*, *DRR, Inc. v. Sears, Roebuck & Co.*, 171 F.R.D. 162, 164 (D. Del. 1997).  Rather, it is meant to bring the pleadings in line with the actual issues in the case; thus, the requirement of consent.

The parties may consent expressly or impliedly.  Consent will be implied under Third Circuit law only when the movant under Rule 15(b) satisfies the court that:

(a)     the parties recognized that the unpleaded issue entered the case at the trial;

(b)     the evidence that supports the unpleaded issue was introduced without objection; and

(c)     a finding of implied consent would not prejudice the opposing party's opportunity to respond.

-6-

*Douglas*, 50 F.3d at 1236; *Portis v. First Nat'l Bank*, 34 F.3d at 332; *DDR, Inc.*, 171 F.R.D. at

164.  The second requirement carries the further caveat that:

> an issue has not been tried by implied consent if evidence relevant
> to the new claim is also relevant to the claim originally pled,
> because the plaintiff does not have any notice that the implied
> claim was being tried.

*Douglas*, 50 F.3d at 1236; *Gamma-10 Plastics v. Am. President Lines*, 32 F.3d 1244, 1256 (8th

Cir. 1994), *cert. denied*, 513 U.S. 1198 (1995); *Acequia, Inc. v. Clinton*, 34 F.3d 800, 814 (9th Cir.

1994); 3 James Wm. Moore et al., Moore's Federal Practice § 15.18[1], at 15–77 (3d ed. 2006).

Thus, in order to meet the evidentiary requirement of the rule, a party must establish that its

evidence was uniquely relevant to the issue not found in the pleadings.

Because they did not submit a brief in support of their motion, it is not clear how plaintiffs

Price, Warren, and Foraker think they can satisfy the *Douglas* requirements.  Defendants submit

that they cannot.

**B.     Plaintiffs' Motion To Amend The First Amended Complaint Does Not
         Meet The Requirements Of Rule 15(b).**

There is no basis in the record for the plaintiffs' contention that the parties agreed to try

either a First Amendment claim of retaliation for something their attorney Tom Neuberger said to

a newspaper reporter or a Fourteenth Amendment Equal Protection claim for disparate treatment.

**1.     There Was No Express Consent To Trial Of An Unpleaded Issue.**

A jury heard this case for twelve days and awarded its verdict to the plaintiffs based on the

law as it existed on the day before the court delivered its jury charge.  Plaintiffs Price, Warren,

and Foraker made a voluminous record on two theories:

> (1)     the defendants took employment and other action against them because they
>         reported up the chain of command on environmental and other conditions at the
>         firing range; and
>
> (2)     the defendants took employment and other action against them because they spoke
>         to the Delaware State Auditor of Accounts about environmental conditions and
>         other aspects of the firing range.

The Joint Pre-Trial Order for this case is about three inches thick.  The parties generated twelve volumes of trial transcript and introduced hundreds of trial exhibits.  Nowhere in this record did the plaintiffs hint that they contended Chaffinch or MacLeish acted because of statements Tom Neuberger read to the news media after their interviews with the State Auditor.  The record of the trial does not even contain evidence that the plaintiffs directed or authorized their attorney to speak to the media or to read their statements to the media, and there is certainly no evidence that defendants Chaffinch and MacLeish were aware of such direction or authorization.[2]  Thus, there is no basis on which to suggest that the parties expressly consented to trial of the issue plaintiffs now seek to assert as Count Three.

    There is also no suggestion in the record that the parties were trying a Fourteenth Amendment Equal Protection case.  A claim so drastically different from the First Amendment claims asserted in the First Amended Complaint would have required a separate section in the pre-trial order, briefing on Equal Protection law, jury instructions on Equal Protection, and a

---

[2]     A case based on counsel's deliberate and client-authorized contact with the media would have presented a much different issue for trial – if it ever reached trial.  The DSP has a standing order barring unauthorized media contact by troopers on state police business.  The defendants had ordered plaintiff Foraker not to discuss range issues with the media because publicity from troopers like Capt. Greg Warren had injured the DSP's working relationship with Facilities Management, the entity that was responsible for fixing problems with the range.  Had the plaintiffs taken the position that their authorization to counsel to speak on their behalf was an exercise of free speech, then the defendants could have disciplined them for (1) using their attorney to circumvent a legitimate divisional order; and (2) disrupting the relationship between two state agencies by making inflammatory statements to the press.  *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) (a state, as an employer, has an interest "in promoting the efficiency of the public services it performs through its employees").

verdict form breaking out the Equal Protection claims from the Free Speech claims. Since none of this occurred, there is certainly no express consent to trial of an issue not in the pleadings.[3]

> **2.    There Was No "Implied Consent" To Try Issues Not In The Pleadings.**

Nothing in the record suggests that the parties "impliedly consented" to try two issues not framed in any pleading, the voluminous pre-trial order, the opening and closing statements, or the jury charge. The plaintiffs cannot satisfy any of the three requirements set out in the Third Circuit's *Douglas* decision.

First, the plaintiffs cannot establish that both parties recognized that the Free Speech authorization-of-counsel issue or the Equal Protection issue ever entered the case. The plaintiffs certainly never announced them, the defendants did not acknowledge them, and, as noted above, the trial record would have been much different had either party presented those issues.

Second, evidence to support the unpleaded issues was not introduced at the trial, much less introduced without objection, as *Douglas* requires. With respect to the authorization-of-counsel issue, the plaintiffs would have had to prove (a) that the plaintiffs told their lawyer to speak on their behalf, (b) that the lawyer did so, and (c) that the defendants knew enough about the relationship between the plaintiffs and their lawyer to know that it was really the client

---

[3]    It is not clear how the plaintiffs would describe the "suspect classification" they claim the defendants established because the plaintiffs have not submitted a brief in support of their motion. However, it appears from the motion to be a class of state employees who speak out on safety and environmental issues in the course of their duties. Since *Garcetti* holds that discipline of such employees is not circumscribed under the First Amendment, it is difficult to see how this classification is "suspect." Even more difficult to understand is how it is a classification at all when two of the four DSP "whistleblowers" (plaintiff Foraker and Cpl. James Warwick) received no discipline or adverse employment action.

speaking and not just the publicity-seeking lawyer.[4]  Then the court would have had to decide whether such a vicarious exercise theory was viable under the First Amendment and whether a subterfuge of this type subjected the plaintiffs to legitimate discipline for violation of DSP rules and regulations against contacting the media.  Under *Pickering* and its progeny, there is ample law to the effect that speech that disrupts the operation of a governmental agency is not protected under the First Amendment.  *See, e.g.*, *Connick v. Myers*, 461 U.S. 138, 154 (1983) (a government employer need not "tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships").

There are other deficiencies of proof as well.  Plaintiffs' motion says that the defendants Chaffinch and MacLeish testified that they were "angry that [the plaintiffs] spoke to the media." Rule 15(b) Motion, p. 3.  The citations to the record, however, do not support the plaintiffs' description.  Chaffinch and MacLeish testified that they were unhappy "at how the media ran the story" and that the media's coverage of the story brought "negative light" to the Division of State Police.  *See id.*  Never did Chaffinch or MacLeish say that the plaintiffs' speech to the media angered them.  Indeed, the plaintiffs themselves did not speak to the media and the defendants were acting under the assumption that the plaintiffs were observing the departmental restrictions on media contact.  In short, the plaintiffs did not introduce enough evidence at trial even to raise the issue of their lawyer's contact with the media, and they have no basis for the suggestion that it was tried by consent.

An additional basis to reject this thirteenth-hour motion is that the evidence to which the plaintiffs point does not satisfy the uniqueness requirement of *Douglas*.  The evidence of the

---

[4]     As Mr. T. Neuberger stated during questioning of his client Wayne Warren on this point: "I have lots of press conferences."  *See* Dep. Tr. of W. Warren, at p. 220, attached hereto as Ex. 1.

defendants' reactions to the plaintiffs' free speech claims was offered at trial because, as Mr. Neuberger argued in his closing speech, it tended to show the defendants' concern about the issue the plaintiffs had raised internally.  "That is insight into their mind," he said.  *See* Closing Argument of T. Neuberger, at 2522, attached hereto as Ex. 2.  Because it is relevant to an issue actually pleaded, this evidence cannot be notice of a new, unpleaded issue for purposes of Rule 15(b).  *See Douglas*, 50 F.3d at 1236; *Acequia, Inc.*, 34 F.3d at 814; *Yellow Freight Sys. v. Martin*, 954 F.2d 353, 358 (6th Cir. 1992); *DRR, Inc.*, 171 F.R.D. at 165.

With respect to evidence that might support an unpleaded Equal Protection theory, it is difficult to determine what that evidence might have been because the plaintiffs did not define their "suspect classification" in their Rule 15(b) motion.  They did, however, reference evidence about trooper hearing loss, trooper medical problems, and "light duty."  Rule 15(b) Motion, p. 4.  This evidence may well be relevant to the unpleaded Equal Protection claim, but it was admitted at trial because it was relevant to the Free Speech claim under the First Amendment.  Because it was not uniquely relevant to the unpleaded claim, it cannot satisfy the second requirement of *Douglas*.

Finally, a finding of implied consent would work an obvious prejudice on the defendants because the claims the plaintiffs seek to introduce invoke both factual and legal defenses that neither party raised or explored during discovery or at trial.  As set forth above, the record contains no indication that the plaintiffs authorized or instructed their attorney to talk to the media; had the plaintiffs alleged such authorization in 2004 they would likely have subjected themselves to serious internal discipline for violating the DSP's policy prohibiting unauthorized communications with the press.  The introduction of an Equal Protection claim would have had

drastic consequences for the preparation and briefing of the case because it is entirely foreign to the First Amendment Free Speech issue being litigated.[5]

## V.     CONCLUSION

The plaintiffs have not satisfied the requirements of Rule 15(b) as articulated by the Third Circuit in *Douglas v. Owens*.  Accordingly, defendants request that the Court deny the plaintiffs' Rule 15(b) Motion to Amend the First Amended Complaint.

                                        Respectfully submitted,


Date:  August 4, 2006                          */s/ Richard M. Donaldson*
                                        Richard M. Donaldson (DE Bar No. 4367)
                                        Noel C. Burnham (DE Bar No. 3483)
                                        Montgomery, McCracken, Walker & Rhoads, LLP
                                        300 Delaware Avenue, Suite 750
                                        Wilmington, DE 19801
                                        Telephone:  (302) 504-7840
                                        Facsimile:  (302) 504-7820


                                        Edward T. Ellis
                                        Robert J. Fitzgerald
                                        Carmon M. Harvey
                                        Montgomery, McCracken,
                                          Walker & Rhoads, LLP
                                        123 South Broad Street
                                        Philadelphia, PA  19109
                                        (215) 772-1500

                                        *Counsel for Defendants*

---

[5]      As a legal matter, it is also difficult to imagine that the Supreme Court that decided *Garcetti* on First Amendment grounds would allow a public employee to plead around *Garcetti* by calling himself a class of whistleblower and then demanding equal protection under the Fourteenth Amendment.  The Supreme Court has, in comparable circumstances, rejected the recasting of tort claims to avoid established principles of constitutional law.  *See Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) (plaintiff cannot plead state law tort of intentional infliction of emotional distress to get around First Amendment protections against libel claims); *see also Aside, The Common Law Origins of the Infield Fly Rule*, 123 U. Pa. L. Rev. 1474, 1477-78 (1975) (Infield Fly Rule of Baseball was a response to double-play-by subterfuge that players employed under the previous "trap ball" rule) (attached hereto as Ex. 3).

## CERTIFICATE OF SERVICE

I, Noel C. Burnham, hereby certify that on the 4th day of August 2006, I electronically filed the foregoing Notice of Service of Defendants' Motion For Judgment As A Matter Of Law or, In The Alternative, To Amend The Judgment Or For A New Trial with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Thomas Stephen Neuberger, Esq.
Stephen J. Neuberger, Esq.
The Neuberger Firm, P. A.
Two East Seventh Street, Suite 302
Wilmington, DE 19801

Martin D. Haverly, Esquire
Martin Duane Haverly, Attorney At Law
Two East Seventh Street, Suite 302
Wilmington, DE 19801

*Counsel for Plaintiffs*

_____/s/ Richard M. Donaldson_____
Richard M. Donaldson (DE Bar No. 4367)